1  LATHAM & WATKINS LLP
       Alfred C. Pfeiffer, Jr. (State Bar No. 120965)
2      Melissa N. Chan (State Bar No. 240228)
       Robert P. Lynch (State Bar No. 250557)
3      Mary Elizabeth Heard (State Bar No. 255793)
   505 Montgomery Street, Suite 2000
4  San Francisco, California  94111
   Telephone:  (415) 391-0600
5  Facsimile:  (415) 395-8095
   Email: al.pfeiffer@lw.com
6  Email: melissa.chan@lw.com
   Email: robert.lynch@lw.com
7  Email: maryelizabeth.heard@lw.com

8  Julia Harumi Mass (State Bar No. 189649)
   Alan L. Schlosser (State Bar No. 49957)
9  AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF NORTHERN CALIFORNIA
10 39 Drumm Street
   San Francisco, California  94111
11 Telephone:  (415) 621-2493
   Facsimile:  (415) 255-8437
12 Email: jmass@aclunc.org
   Email: aschlosser@aclunc.org

13
   Attorneys for Plaintiffs
14
                UNITED STATES DISTRICT COURT
15
              NORTHERN DISTRICT OF CALIFORNIA
16
   COMMITTEE FOR IMMIGRANT RIGHTS OF       CASE NO.        4220
17 SONOMA COUNTY, FRANCISCO                CV 08
   SANCHEZ-LOPEZ, CHRISTYAN SONATO-        COMPLAINT FOR DECLARATORY AND
18 VEGA, and SAMUEL MEDEL MOYADO,          INJUNCTIVE RELIEF AND DAMAGES

19             Plaintiffs,                 DEMAND FOR JURY TRIAL

20          v.

21 COUNTY OF SONOMA; SHERIFF-
   CORONER BILL COGBILL and DEPUTY
22 SHERIFF MORRIS ERIC SALKIN,
   individually and in their official capacities; U.S.
23 DEPARTMENT OF HOMELAND SECURITY,
   BUREAU OF IMMIGRATION AND
24 CUSTOMS ENFORCEMENT; SPECIAL
   AGENT-IN-CHARGE MARK WOLLMAN,
25 SPECIAL AGENT MARIO HUELGA and
   SPECIAL AGENT CHRIS MERENDINO,
26 individually and in their official capacities;
   DOES 1-50; and ROES 1-50, inclusive,

27
               Defendants.
28

ORIGINAL
FILED

E-filing   SEP  5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PJH

## INTRODUCTION

1.      This is an action to challenge ongoing policies and practices of Immigration and Customs Enforcement ("ICE") agents and Sonoma County Sheriff's Department personnel that exceed both agencies' lawful authority and violate the constitutional and statutory rights of Latino residents in Sonoma County.  The policies and practices challenged in this lawsuit include:

- Sheriff's deputies and ICE agents using race as a motivating factor for traffic stops and other detentions, in violation of constitutional and statutory guarantees of equal protection;

- Sheriff's deputies and ICE agents stopping, interrogating, searching, and arresting persons without warrants or adequate justification;

- Sheriff's deputies arresting and holding individuals in the County jail without any lawful basis for detention; and

- Denial of due process to people arrested on suspected immigration violations and improperly held in the custody of the Sheriff.

2.      This action is brought by the Committee for Immigrant Rights of Sonoma County, which has waged a long-standing campaign to promote the rights of immigrants and to end local immigration enforcement practices that undermine public safety and the willingness of Sonoma County's large immigrant community to report crime to local law enforcement agencies.  This action is also brought by individual members of the Committee who have been subjected to the Defendants' discriminatory practices and unreasonable searches and seizures.

3.      Plaintiffs seek an end to Defendants' unlawful and discriminatory policies and practices.  Secondarily, this action seeks monetary damages for the individual plaintiffs.

## JURISDICTION

4.      This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), 42 U.S.C. § 1983, and 5 U.S.C. § 702 (Administrative Procedure Act). Supplemental jurisdiction over the pendant state law claims is proper pursuant to 28 U.S.C. §

1  1367.

2  **VENUE AND INTRA-DISTRICT ASSIGNMENT**

3      5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because

4  Defendant U.S. Department of Homeland Security, Bureau of Immigration and Customs

5  Enforcement resides in and can be found in this judicial district.  This action arises in Sonoma

6  County and assignment in either the Oakland Division or San Francisco division is appropriate

7  pursuant to Local Rule 3-2.

8  **PARTIES**

9      6.      Plaintiff Committee for Immigrant Rights of Sonoma County ("Committee") is a

10  community-based, non-profit membership organization, comprised of Sonoma County residents

11  and organizations whose mission is to educate and mobilize the community around legal and

12  social issues related to the rights of immigrants in Sonoma County.  The Committee's

13  membership includes persons who have been and/or are imminently susceptible to being injured

14  by Defendants' unlawful practices, as well as family members of such persons.

15      7.  .   Plaintiff Francisco Sanchez-Lopez is a 21-year old Latino male who resides in

16  Sonoma County, in the State of California.  He resided in Sonoma County during the events

17  relevant to this Complaint and described herein.

18      8.      Plaintiff Christyan Sonato-Vega is a 23-year old Latino male who resided in

19  Sonoma County, in the State of California, during the events relevant to this Complaint and

20  described herein.

21      9.      Plaintiff Samuel Medel Moyado is a 22-year old Latino male who resided in

22  Sonoma County, in the State of California, during the events relevant to this Complaint and

23  described herein.

24      10.     Defendant County of Sonoma ("Sonoma County" or "County") is a political

25  subdivision of the State of California that can sue and be sued in its own name.  Upon

26  information and belief, Defendant Sonoma County includes, operates, governs, and is

27  responsible for the Sonoma County Sheriff's Department ("Sheriff's Department") pursuant to

28  the laws of the State of California and Sonoma County.

1    11.    Defendant Sheriff Bill Cogbill is Sheriff-Coroner of the Sonoma County Sheriff's

2  Department and is responsible for the policies, practices and customs of the Sonoma County

3  Sheriff's Department.  Defendant Cogbill also is responsible for the hiring, screening, training,

4  retention, supervision, discipline, counseling and control of the deputy sheriffs under his

5  supervision and command.  At all relevant times, Defendant Cogbill was acting under color of

6  law.  He is sued in his individual and official capacities.

7    12.    Defendant Deputy Sheriff Morris E. (Eric) Salkin is a deputy sheriff with the

8  Sonoma County Sheriff's Department.  At all relevant times, Defendant Salkin was acting under

9  color of law.   He is sued in his individual and official capacities.

10    13.    Defendant United States Bureau of Immigration and Customs Enforcement

11  ("ICE"), a federal agency charged with the administration, investigation and enforcement of

12  federal immigration laws as adopted in the Immigration and Nationality Act, 8 U.S.C. § 1101 *et*

13  *seq.*, is a division of the United States Department of Homeland Security ("DHS").

14    14.    Defendant Special Agent-in-Charge Mark Wollman is the special agent-in-charge

15  ("SAC") for the San Francisco Office of Investigations, which is responsible for the

16  administration and management of all ICE enforcement activities within northern California,

17  including Sonoma County.  At all relevant times, Defendant Wollman was acting under color of

18  law.  He is sued in his individual and official capacities.

19    15.    Defendant Special Agent Christopher Merendino is a senior special agent of ICE.

20  At all relevant times, Defendant Merendino was acting under color of law.  He is sued in his

21  individual and official capacities.

22    16.    Defendant Special Agent Mario Huelga is a special agent of ICE.  At all relevant

23  times, Defendant Huelga was acting under color of law.  He is sued in his individual and official

24  capacities.

25    17.    At all relevant times, Defendants DOES 1 through 50 (also "DOE defendants")

26  were agents, employees, or otherwise representatives of the Sheriff and/or County.  At all

27  relevant times, DOES 1 through 50 were acting under color of law.  Upon information and

28  belief, Plaintiffs allege that that many, if not all, of DOES 1 through 50 are residents of the

1   Northern District of California. Upon information and belief, Plaintiffs allege that DOES 1

2   through 50, inclusive, are legally responsible for the wrongs committed against Plaintiffs, as

3   alleged herein. When Plaintiffs become aware of the true identities of one or more DOE

4   defendants, Plaintiffs will amend this complaint to add or substitute them as named Defendants.

5          18.    At all relevant times, Defendants ROES 1 through 50 (also "ROE defendants")

6   were agents, employees, or otherwise representatives of ICE. At all relevant times, ROES 1

7   through 50 were acting under color of law. Upon information and belief, Plaintiffs allege that

8   that many, if not all, of ROES 1 through 50 are residents of the Northern District of California.

9   Upon information and belief, Plaintiffs allege that ROES 1 through 50, inclusive, are legally

10  responsible for the wrongs committed against Plaintiffs, as alleged herein. When Plaintiffs

11  become aware of the true identities of one or more ROE defendants, Plaintiffs will amend this

12  complaint to add or substitute them as named Defendants.

13         19.    Plaintiffs are informed and believe and thereon allege that each of the Defendants

14  caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries, by,

15  among other things, personally participating in said conduct or acting jointly with others who did

16  so; by authorizing, acquiescing or setting in motion policies, plans or actions that led to the

17  unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing or refusing

18  with deliberate indifference to maintain adequate training and supervision; and/or by ratifying

19  the unlawful conduct taken by employees under his or her direction and control. Plaintiffs are

20  informed and believe and thereon allege that Defendants' actions were pursuant to a policy,

21  custom, or usage of the Sheriff's Department or ICE or other related agencies.

22         **DEFENDANTS' UNLAWFUL POLICIES, CUSTOMS, AND PRACTICES**

23         20.    For at least the past three years, the Sonoma County Sheriff's Department has

24  been working with ICE and its officers to enforce civil immigration law against Latino persons

25  in Sonoma County, in excess of local authority. This collaboration takes place in two ways: (1)

26  by Sheriff's deputies participating in joint patrols with ICE agents that specifically target Latino

27  residents of Sonoma County, and (2) by Sheriff's deputies identifying and arresting persons

28  suspected of being unauthorized noncitizens outside the presence of ICE officers, but with the

1  agency's approval.

2  **Joint Patrols Staffed By Local and Federal Officers**

3      21.     Sheriff's deputies participate in joint operations with ICE agents on a regular

4  basis. Defendants contend that these joint operations target Latinos who are criminal gang

5  members. But in reality, in the course of carrying out these enforcement efforts, Defendants

6  enter areas of Sonoma County that have high Latino populations and encounter people who have

7  not been previously identified as targets, much less as criminal gang members. With respect to

8  such individuals, Defendants have adopted the unlawful, racially-biased policy, practice and

9  custom of relying on the impermissible factors of race, color and/or ethnicity to stop, detain,

10 question and/or search persons who are or appear to be Latino and to probe into their

11 immigration status without reasonable suspicion or probable cause to suspect that they have

12 committed a crime or are noncitizens without lawful immigration status.

13     22.     These racially-motivated stops are frequently unsupported by reasonable

14 suspicion or probable cause to believe that the detainees are acting in violation of law.

15     23.     After such initial stops and searches, Defendants have the policy and practice of

16 arresting and placing numerous Latino residents in the County jail without criminal charges or

17 any actual or purported criminal basis, simply because they are suspected of violating civil

18 immigration laws. Frequently, the sole basis for their detention is an immigration detainer from

19 ICE, issued after the arrest has been effectuated.

20     24.     In these instances, Defendants have adopted the policy, practice and custom of

21 placing arrestees in local custody without meeting federal requirements for the warrantless arrest

22 of noncitizens suspected of violating federal immigration laws, *i.e.,* probable cause and a

23 determination that the person is likely to escape before an arrest warrant can be obtained. 8

24 U.S.C. § 1357.

25 **Civil Immigration Enforcement By Sheriff's Deputies Unaccompanied By ICE Agents**

26     25.     In addition to the joint operations described above, Defendants Cogbill and

27 County employees working under his supervision have adopted the unlawful, racially-biased

28 policy, practice and custom of stopping, detaining, questioning and/or searching persons who are

1 | or appear to be Latino to interrogate them about their immigration status based on their race,

2 | color and/or ethnicity outside the presence of ICE agents, but with the approval of ICE.

3 |      26.    These racially-motivated stops are frequently unsupported by reasonable

4 | suspicion or probable cause that the detainee has violated any criminal law.

5 |      27.    Even where such stops may be initially supported by reasonable suspicion of

6 | criminal activity or traffic infraction, Defendants Cogbill and the County employees under his

7 | supervision have adopted the policy, practice and custom of prolonging the initial stop to

8 | interrogate individuals about their immigration status, telephoning ICE agents to seek approval

9 | to execute warrantless arrests for civil immigration violations, and conducting searches of their

10 | persons and vehicles despite having neither any criminal basis to prolong the detention nor any

11 | investigatory or safety justification for the searches.  Upon information and belief, the

12 | individual's actual or apparent race, ethnicity or color is a motivating factor for Sheriff's

13 | deputies' prolonged detention, interrogation, and search of such individuals.

14 |      28.    Defendants Cogbill and the County employees under his supervision have

15 | adopted the policy, practice and custom of arresting Latinos based on suspected civil

16 | immigration violations, frequently on the sole purported authority of an ICE immigration

17 | detainer, and holding them in the County jail for several days before transferring them to ICE's

18 | custody without any criminal charges or a criminal basis for initial arrest.

19 |      29.    Defendants do not provide training to the deputy sheriffs who patrol with ICE

20 | agents or otherwise assess the immigration status of individuals in the field regarding the types

21 | of evidence necessary to establish reasonable suspicion or probable cause that a person is a

22 | noncitizen in the United States without authorization or that the person poses a flight risk as

23 | required for warrantless arrests based on suspected civil immigration violations.

24 | **Local Law Enforcement Agencies' Lack of Authority to Enforce Immigration Law**

25 |      30.    State and federal law do not authorize local authorities such as Defendants

26 | Sonoma County and Sheriff Cogbill and the employees under their supervision to arrest or detain

27 | individuals based on civil immigration violations.  Pursuant to state law, local authorities may

28 | make warrantless arrests only for crimes committed in their presence, felony offenses committed

7

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES

1   outside their presence, and felony offenses that they have probable cause to believe were

2   committed by the arrestee.  California Penal Code § 836.

3        31.    Neither the County nor the Sonoma County Sheriff's Department have entered

4   into a written agreement with ICE pursuant to 8 U.S.C. § 1357(g) to authorize County employees

5   to enforce civil immigration law.

6        32.    According to Protocol 99-1 of the Sonoma County Law Enforcement Chiefs'

7   Association, "Sonoma County Law Enforcement personnel shall not arrest or detain any person

8   based solely on violation of Title 8, United States Code, Section 1325 (illegal entry)" and

9   "Sonoma County law enforcement personnel shall not undertake any interrogation of any person

10  for the sole purpose of ascertaining his/her immigrant status."  According to Section 428 of the

11  Sonoma County Sheriff's Department policies, "The fact that an individual is suspected of being

12  an undocumented alien alone shall not be the basis for contact, detention, or arrest."  On

13  information and belief, Defendants Sonoma County and Cogbill have officially abandoned,

14  ignored and contravened these written policies to the extent that they conflict with the other

15  polices, practices and conduct described in this Complaint.

16  **Invalid Use of Immigration Detainers**

17       33.    Defendants purport to justify holding individuals in the County jail without

18  criminal charges—whether arrested by joint patrols or by Sheriff's deputies acting on their

19  own—by the issuance of immigration detainers pursuant to 8 C.F.R. § 287.7.  However, by the

20  express terms of that regulation, local authorities may only use immigration detainers to retain

21  custody over individuals who are already in local custody pursuant to a valid criminal arrest after

22  they would otherwise be released from local custody.  In addition, 8 CFR 287.7 itself facially

23  exceeds the authority granted by Congress regarding local authorities' use of immigration

24  detainers to justify continued custody of noncitizens.  Congress authorized the issuance of

25  immigration detainers only to detain noncitizens who have been arrested for controlled substance

26  violations.  8 U.S.C. § 1357(d).

27  **Denial of Procedural Protections**

28       34.    With respect to persons arrested for immigration violations—whether by joint

1 ICE/Sheriff's Department teams or by Sheriff's deputies alone—Defendants have adopted the
2 policy, practice and custom of maintaining local custody for three to five days before transferring
3 the arrestees to ICE for the initiation of removal proceedings under federal immigration law.
4 Once booked into the County jail, arrestees are—by policy, practice and custom—denied notice
5 of any charges against them, examination by a neutral magistrate or non-arresting ICE officer,
6 notice that statements they make may be used against them in removal proceedings, a list of low
7 or no-cost immigration legal services, or notice that they have a right to a hearing or bond
8 determination.  Such procedural protections are required for individuals arrested without a
9 warrant on suspected immigration violations pursuant to 8 U.S.C. § 1357 and 8 C.F.R. § 287.3.

10     35.     Upon information and belief, after being denied their procedural rights for several
11 days before being transferred into ICE custody, arrestees are more easily coerced into waiving
12 their constitutional right to a hearing than they would be if provided the procedural protections
13 which are due them in immigration detention.

14 **Sheriff's Acknowledgement of Challenged Policies, Practices and Customs**

15     36.     On October 5, 2007, at a meeting with representatives of Plaintiff Committee for
16 Immigrant Rights of Sonoma County, Defendant Sheriff Cogbill and other members of the
17 Sonoma County Sheriff's Department, with counsel, confirmed that Defendant Sheriff's
18 Department had regularly engaged in joint patrols with ICE for the previous three years, had
19 arrested individuals based on suspected immigration violations without a criminal basis for arrest
20 outside the presence of ICE agents, and has adopted the policy and practice of holding
21 individuals in the County jail based on suspected civil immigration violations, and without any
22 criminal basis for arrest, at the request of ICE agents.

23                    **INDIVIDUAL PLAINTIFFS' EXPERIENCES**
24 **Ongoing Injury to the Committee for Immigrant Rights and Its Members**

25     37.     Plaintiff Committee for Immigrant Rights of Sonoma County ("Committee") was
26 founded in 2006 in response to federal immigration reform proposals that would have raised
27 penalties for illegal immigration and classified undocumented immigrants and those who assist
28 them as felons.  The Committee's mission has been to oppose anti-immigrant legislation and

1   policies at both federal and local levels.  Since its inception, the Committee has worked to

2   educate the public, including immigrant communities in Sonoma County, about immigration law

3   and policies and to inform them about their rights.

4       38.     Through its Know Your Rights Campaign, the Committee has held a series of

5   house meetings and public forums to distribute information to the Latino community in Sonoma

6   County concerning individual rights, including the right to be free from unreasonable searches

7   and detentions, the right to remain silent when questioned by police or immigration agents, and

8   the right to be represented by a lawyer when accused or interrogated in custody.

9       39.     The Committee launched a County of Refuge Campaign in 2007, calling for an

10  end to local law enforcement's assistance in civil immigration enforcement through weekly

11  vigils and public forums.  This campaign was the Committee's response to the Sonoma County

12  Sheriff's Department practice of arresting and detaining young Latino members of the

13  community based solely on their immigration status, which is the product of an active and open

14  collaboration between the Sheriff and ICE.

15      40.     Members of the Committee have personally witnessed and been subjected to

16  Defendants' unlawful practices, and the Committee's membership includes a constituency of

17  persons, namely Latino residents of Sonoma County, who are especially likely to be subjected to

18  these practices.  The Committee's membership includes several Latino families who live in the

19  neighborhoods of Sonoma County where Defendants' regularly patrol.  In addition, the

20  Committee itself has been, and continues to be, harmed by Defendants' practices because those

21  practices undermine the Committee's organizational mission and divert the Committee's

22  resources from the pursuit of other, related goals.

23  **The Unlawful Stop and Detention of Francisco Sanchez-Lopez**

24      41.     On September 28, 2006, Plaintiff Francisco Sanchez-Lopez ("Francisco") was

25  riding as a passenger in a car that was stopped by a group of officers which included ICE agents,

26  Sherriff's deputies, and at least one California Highway Patrol officer.  Two officers approached

27  the car – one officer approached the driver, while another officer approached Francisco on the

28  passenger side.  One officer told the driver that he was not permitted to have a "For Sale" sign in

1  the car's rear window, and proceeded to interrogate the driver about whether he had gang

2  affiliations. The driver did not receive a ticket for the "For Sale" sign.

3      42.    Meanwhile, though Francisco had committed no crime and posed no threat, an

4  officer asked Francisco for his name and identification and then asked him if he was on

5  probation. Francisco provided his name and admitted that he was on probation. The officer did

6  not ask the reasons behind Francisco's probation, nor did he seek to verify Francisco's name or

7  probation terms by radio or with other officers. The terms of Francisco's probation did not

8  require him to submit to searches by law enforcement. Instead, and without probable cause or

9  reasonable suspicion of any civil or criminal violation, and without any reason to believe that

10  Francisco was armed or dangerous, the officer ordered Francisco out of the car. He then

11  interrogated Francisco about gang affiliations. During this interrogation, the officer asked

12  Francisco if he had any tattoos. Without reasonable suspicion or Francisco's consent, the officer

13  subjected Francisco to a pat-down search and confiscated his wallet. Without looking at the

14  wallet, the officer ordered Francisco to talk to an ICE agent who had accompanied the officer.

15      43.    Following the ICE officer's interrogation and search of Francisco's wallet,

16  Sheriff's Department personnel arrested Francisco and booked him into custody at the Sonoma

17  County jail based solely on his suspected immigration status. There was no actual or even

18  purported criminal basis for Francisco's arrest.

19      44.    Francisco spent four days in the County jail before being transferred to ICE

20  custody. During this time Francisco did not receive notice of any charges against him,

21  examination by a neutral magistrate or non-arresting ICE officer, notice that statements he made

22  could be used against them in removal proceedings, a list of low or no-cost immigration legal

23  services, or notice that he had a right to a hearing or a bond determination.

24      45.    Francisco and members of his family have been members of the Committee for

25  approximately two years. Francisco's only previous law enforcement record had been in

26  connection to violations for driving without a license. Francisco is not, and has never been, a

27  gang member. Francisco is and appears to be of Latino descent and a person of color.

28  //

**The Unlawful Stop and Detention of Christyan Sonato-Vega**

46.     In or about July, 2007 Christyan Sonato-Vega ("Christyan") and his fiancée parked their car and got out at a bakery in Santa Rosa, intending to purchase a cake. They were ordered to stop by two deputy sheriffs including Defendant Salkin, who stated that the car had a crack in its windshield. The deputies questioned Christyan—who was a passenger in the car—about his immigration status, his tattoos, and whether he was a gang member. During this interrogation, the deputies searched Christyan, including a search of his wallet, without Christyan's consent or reasonable suspicion of imminent danger or criminal activity. Christyan told the officer that he was not a gang member and exercised his legal right not to answer the deputies' questions about his immigration status.

47.     On or about Thursday, August 2, 2007, Defendant Salkin and Defendant Huelga approached Christyan at his place of employment. Defendants arrested Christyan and booked him into the County jail based on suspected immigration status alone and without any actual or even purported criminal basis for arrest. Upon information and belief, Defendants made this warrantless arrest without probable cause to believe that Christyan was a noncitizen without authorization to be in the United States, much less a determination that he was likely to escape before an arrest warrant could be obtained.

48.     Defendants held Christyan at the Sonoma County jail until on or about Monday, August 6, 2007, when they transferred him to San Francisco's ICE facility. While he was in custody at the County jail, Christyan did not receive notice of the charges against him, an examination by a neutral magistrate or non-arresting ICE officer, a list of low or no-cost immigration legal services, or notice that he had a right to a hearing or a bond determination.

49.     Christyan's sister is a member of the Committee. Prior to August 2007, Christyan had no prior police record other than for driving without a license. Christyan is not, and never has been, a gang member. Christyan is and appears to be of Latino descent and a person of color.

**The Unlawful Detention of Sammy Medel Moyado**

50.     On the evening of August 8, 2007, Plaintiff Samuel Medel Moyado ("Sammy")

1    was arrested on a minor charge, pursuant to Penal Code § 647(f). At Sammy's court hearing on

2    the morning of August 10, the judge told Sammy he was free to leave because no charges had

3    been filed against him. However, relying on 8 C.F.R. § 287.7(d), the validity of which is

4    challenged in this action, Sheriff's Department personnel continued to detain Sammy based on

5    his suspected immigration status, transferred him to another Sheriff's facility and kept him in

6    custody until August 14, when they transferred him to ICE's custody.

7        51.    While he was in custody at the County jail, Sammy did not receive notice of the

8    any immigration charges against him, notice that statements he made could be used against him

9    in removal proceedings, a list of low or no-cost immigration legal services, or notice that he had

10   a right to a bond determination.

11       52.    Defendants did not give Sammy the opportunity to post bond until after they

12   transferred him to ICE's Eloy Detention Center in Arizona, over a week after his arrest.

13   Defendants did not release Sammy until the evening of Thursday, August 16, 2007, in Arizona,

14   after he posted bond.

15       53.    Sammy has been an active member of the Committee for the last eleven months.

16   Prior to August 8, 2007, Sammy had no police record as an adult. Sammy is not, and never has

17   been, a gang member. Sammy is and appears to be of Latino descent and a person of color.

18                              **REQUISITES FOR RELIEF**

19       54.    As a result of the general and specific conduct of Defendants described above,

20   Plaintiffs have been denied their constitutional and civil rights. Defendants' conduct is the result

21   of ongoing policies, practices, conduct and acts that have resulted and will continue to result in

22   irreparable injury to Plaintiffs, including but not limited to further threats to and violations of

23   their constitutional and civil rights. Plaintiffs have no plain, speedy, or adequate remedy at law

24   to redress the violations alleged herein, and therefore seek injunctive relief restraining

25   Defendants from continuing to engage in the unlawful and unconstitutional policies, practices,

26   conduct and acts described in this Complaint.

27       55.    An actual and substantial controversy exists between Plaintiffs and Defendants as

28   to their respective legal rights and duties. Plaintiffs contend that Defendants' policies, practices,

conduct and acts alleged herein violate Plaintiffs' constitutional and civil rights. Defendants contend the opposite and have indicated their intent to continue engaging in the challenged conduct.

56.     On or about January 29, 2008, Sammy filed an administrative claim with Defendant Sonoma County pursuant to California Government Code § 910 *et seq.* Sonoma County rejected Sammy's claim on or about March 5, 2008.

57.     On or about January 29, 2008, Christyan filed an administrative claim with Defendant Sonoma County pursuant to California Government Code § 910 *et seq.* Sonoma County rejected Christyan's claim on or about April 2, 2008.

58.     The acts of Defendants were willful, wanton, malicious and oppressive and done with conscious disregard and deliberate indifference for Plaintiffs and their rights.

59.     As a direct and proximate result of Defendants' knowing and intentional conduct with deliberate or reckless indifference to Plaintiffs' civil and constitutional rights, Plaintiffs Francisco Sanchez-Lopez, Christyan Sonato-Vega and Sammy Medel Moyado have been injured and suffered damages in an amount according to proof. Defendants are liable for these damages.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 (Unreasonable Search and Seizure)

### Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50

60.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

61.     The above-described policies, practices and conduct of Defendants Sonoma County, Cogbill, Salkin and DOES 1-50 ("Local Defendants") have violated and will violate Plaintiffs' right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 (Equal Protection)

### Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50

62.     Plaintiffs incorporate by reference the allegations in the paragraphs above as

1   though fully set forth here.

2       63.    As Latinos, the individual Plaintiffs and many members of the Committee are

3   members of a protected class.

4       64.    Local Defendants' above-described polices, practices and conduct intentionally

5   targeted Plaintiffs based on their race, color and/or ethnicity and discriminatorily impacted and

6   continue to impact Latinos in Sonoma County in violation of Plaintiffs' rights under the equal

7   protection clause of the Fourteenth Amendment to the Constitution of the United States.

8   **THIRD CLAIM FOR RELIEF**

9   **42 U.S.C. § 1983 (Due Process)**

10  **Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

11      65.    Plaintiffs incorporate by reference the allegations in the paragraphs above as

12  though fully set forth here.

13      66.    Local Defendants' above-described policies, practices and conduct have violated

14  and will violate Plaintiffs' right to due process of law under the Fourteenth Amendment of the

15  United States Constitution.

16  **FOURTH CLAIM FOR RELIEF**

17  ***Bivens*, Fourth Amendment, 8 U.S.C. § 1357**

18  **(Unreasonable Searches and Seizures)**

19  **Against Defendants ICE, Wollman, Huelga, Merendino, and ROES 1-50**

20      67.    Plaintiffs incorporate by reference the allegations in the paragraphs above as

21  though fully set forth here.

22      68.    The above-described policies, practices and conduct of Defendants ICE,

23  Wollman, Huelga, Merendino and ROES 1-50 ("Federal Defendants") have violated and will

24  violate Plaintiffs' right to be free from unreasonable searches and seizures under the Fourth

25  Amendment to the United States Constitution and their statutory rights under 8 U.S.C. § 1357.

26  //

27  //

28  //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIFTH CLAIM FOR RELIEF**

***Bivens*, Fifth Amendment (Equal Protection)**

**Against Defendants ICE, Wollman, Huelga, Merendino, and ROES 1-50**

69.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

70.     Federal Defendants' above-described polices, practices and conduct intentionally targeted Plaintiffs based on their race, color and/or ethnicity and discriminatorily impacted and continues to impact Latinos in Sonoma County in violation of Plaintiffs' rights under the equal protection clause of the Fifth Amendment to the United States Constitution.

**SIXTH CLAIM FOR RELIEF**

***Bivens*, Fifth Amendment (Due Process)**

**Against Defendants ICE, Wollman, Huelga, Merendino, and ROES 1-50**

71.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

72.     Federal Defendants' above-described policies, practices and conduct have violated and will violate Plaintiffs' right to due process of law under the Fifth Amendment of the United States Constitution.

**SEVENTH CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 2000d *et seq.* (Title VI)**

**Against Defendant Sonoma County**

73.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

74.     Upon information and belief, Sonoma County and the Sonoma County Sheriff's Department and their programs or activities receive financial assistance and funding from the United States government.  As a recipient of federal financial assistance, Sonoma County is required to conduct its activities in a racially non-discriminatory manner pursuant to Title VI of the Civil Rights Act of 1964.

75.     Local Defendants' above-described policies, practices, and conduct have denied

1   and will deny Plaintiffs of their right to be free from discriminatory treatment under 42 U.S.C. §

2   2000d.

3                                   **EIGHTH CLAIM FOR RELIEF**

4                                   **5 U.S.C. § 706, 8 U.S.C. § 1357**

5                          **(*Ultra Vires* Agency Action, Administrative Procedures Act)**

6               **Against Defendants ICE, Wollman, Huelga, Merendino, and ROES 1-50**

7               76.     Plaintiffs incorporate by reference the allegations in the paragraphs above as

8   though fully set forth here.

9               77.     Defendant ICE's predecessor agency, the Immigration and Naturalization Service

10  ("INS"), promulgated 8 C.F.R. § 287.7.

11              78.     8 C.F.R. § 287.7, and the actions taken by ICE to issue immigration detainers to

12  hold individuals who are not already in custody for controlled substances violations, are

13  inconsistent with the governing statute, 8 U.S.C. § 1357, and *ultra vires* in excess of the statutory

14  authority granted to ICE by Congress, and therefore violate the Administrative Procedures Act

15  ("APA"), 5 U.S.C. § 706, and 8 U.S.C. § 1357.

16              79.     Defendant ICE's predecessor agency, the INS, promulgated 8 C.F.R. § 287.7

17  without notice and an opportunity to comment by the public and in violation of the rule-making

18  process specified by the APA, 5 U.S.C. § 553.

19              80.     Defendant's actions in issuing 8 C.F.R. § 287.7 were arbitrary, capricious, an

20  abuse of discretion, or otherwise not in accordance with law, in excess of statutory jurisdiction,

21  authority, or limitations, and without observance of procedure required by law, and should be set

22  aside as unlawful pursuant to 5 U.S.C. § 706.

23              81.     Federal Defendants' denial of Plaintiffs' procedural rights under 8 U.S.C. § 1357

24  and 8 C.F.R. § 287.3 constitute agency actions unlawfully withheld or unreasonably delayed and

25  agency actions without observance of procedure required by law pursuant to 5 U.S.C. § 706.

26  //

27  //

28  //

1

**NINTH CLAIM FOR RELIEF**

2

**42 U.S.C. § 1983, 42 U.S.C. § 1985(3) (Conspiracy)**

3

**Against All Defendants**

4        82.     Plaintiffs incorporate by reference the allegations in the paragraphs above as

5   though fully set forth here.

6        83.     Defendants and their agents conspired to violate Plaintiffs' constitutional and

7   statutory rights, including their right to equal protection under law, in violation of 42 U.S.C. §

8   1985(3).

9        84.     Each of the Defendants, individually and through their agents, has performed at

10   least one overt act in furtherance of said conspiracy.

11

**TENTH CLAIM FOR RELIEF**

12

**California Constitution, Art. I, § 13 (Unreasonable Search and Seizure)**

13

**Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

14        85.     Plaintiffs incorporate by reference the allegations in the paragraphs above as

15   though fully set forth here.

16        86.     Local Defendants' above-described policies, practices and conduct have violated

17   and will violate Plaintiffs' right to be free from unreasonable searches and seizures under the

18   Article 1, § 13 of the California Constitution.

19

**ELEVENTH CLAIM FOR RELIEF**

20

**California Constitution, Art. I, § 7(a) (Equal Protection)**

21

**Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

22        87.     Plaintiffs incorporate by reference the allegations in the paragraphs above as

23   though fully set forth here.

24        88.     Local Defendants' above-described polices, practices and conduct intentionally

25   targeted Plaintiffs based on their race, color and/or ethnicity and discriminatorily impacted and

26   continues to impact Latinos in Sonoma County in violation of Plaintiffs' rights under the equal

27   protection clause of the Article I, § 7(a) of the California Constitution.

28   //

**TWELFTH CLAIM FOR RELIEF**

**California Constitution Art. I, § 7(a) (Due Process)**

**Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

89.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

90.     Local Defendants' above-described policies, practices and conduct have violated and will violate Plaintiffs' right to due process of law under Article I, § 7(a) of the California Constitution.

**THIRTEENTH CLAIM FOR RELIEF**

**Violation of Bane Act, California Civil Code § 52.1**

**Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

91.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

92.     Local Defendants' above-described policies, practices, and conduct against Plaintiffs Francisco Sanchez-Lopez, Christyan Sonato-Vega, and Sammy Medel Moyado constitute interference, by threats, intimidation, and coercion, with Plaintiffs' exercise and enjoyment of rights secured by the Constitutions and laws of the United States and California, in violation of California Civil Code § 52.1.

93.     As a direct and proximate cause of Defendants' actions, Plaintiffs Francisco Sanchez-Lopez, Christyan Sonato-Vega, and Sammy Medel Moyado have suffered injury, including actual damages and emotional distress, in an amount according to proof, and said damages may be trebled.

**FOURTEENTH CLAIM FOR RELIEF**

**California Government Code § 11135 and Its Implementing Regulations**

**Against Defendant Sonoma County**

94.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

95.     California Government Code § 11135 provides, in relevant part: "No person in

the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

96.     California Code of Regulations §§ 98101(i)(1) and (2) prohibit recipients of state funding from utilizing criteria or methods of administration which have the effect of discriminating against protected groups.

97.     Upon information and belief, Defendant Sonoma County receives financial assistance from the State of California, thus subjecting it to the prohibitions of Cal. Gov't Code § 11135 and its implementing regulations.

98.     Defendant Sonoma County's above-described policies, practices and conduct have subjected Plaintiffs to discrimination on the basis of race and the adverse effect of those activities fall disproportionately on Latinos, and therefore have had, and will continue to have, the effect of discriminating against Plaintiffs and Latino members of Plaintiff Committee for Immigrant Rights of Sonoma County, in violation of Cal. Gov't Code § 11135 and its implementing regulations.

### FIFTEENTH CLAIM FOR RELIEF

### False Arrest and Imprisonment

### Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50

99.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

100.    Through the above-described polices, practices and conduct, Local Defendants falsely arrested and/or imprisoned Plaintiffs Francisco Sanchez-Lopez, Christyan Sonato-Vega, and Sammy Medel Moyado.  Local Defendants intended to stop, arrest, detain, confine, restrain, and/or seize Plaintiffs without their consent, without arrest warrants, without lawful authority and without probable cause.

//

1

**SIXTEENTH CLAIM FOR RELIEF**

2

**Intentional Infliction of Emotional Distress**

3

**Against Defendants Sonoma County, Cogbill, Salkin, and Does 1-50**

4      101.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

5   though fully set forth here.

6      102.   Local Defendants' conduct directed at Plaintiffs Francisco Sanchez-Lopez,

7   Christyan Sonato-Vega, and Sammy Medel Moyado was outrageous.  That conduct was intended

8   to cause injury and was undertaken in reckless disregard of the probability of causing injury to

9   Plaintiffs, and did, in fact cause Plaintiffs serious emotional distress.

10

**SEVENTEENTH CLAIM FOR RELIEF**

11

**Negligence**

12

**Against Defendants Sonoma County, Cogbill, Salkin, and Does 1-50**

13      103.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

14   though fully set forth here.

15      104.   Local Defendants owed Plaintiffs Francisco Sanchez-Lopez, Christyan Sonato-

16   Vega, and Sammy Medel Moyado a duty of care not to cause them the harms alleged herein.  By

17   engaging in the above-described conduct, Local Defendants breached their duty of care and

18   proximately caused harm to Plaintiffs.

19

**PRAYER FOR RELIEF**

20   WHEREFORE, Plaintiffs pray that the Court:

21      1.   Issue preliminary and permanent injunctions against the Local Defendants and

22         any of their officers, agents, successors, employees, representatives and any and

23         all persons acting in concert with them, prohibiting them from:

24            a.   Targeting individuals in Sonoma County on the basis of race (and/or

25               specifically of Latino descent) for stops, detentions, interrogations,

26               searches, arrests, and jailing;

27            b.   Engaging in stops, detentions, searches and arrests without reasonable

28               suspicion or probable cause that individuals stopped, detained or arrested

1     are in violation of any criminal law; and

2           c.   Stopping, interrogating, detaining, searching, arresting, and/or holding

3                individuals with respect to suspected immigration violations without a

4                criminal law justification for the action;

5     2.   Issue preliminary and permanent injunctions against the Federal Defendants and

6          any of their officers, agents, successors, employees, representatives and any and

7          all persons acting in concert with them, prohibiting them from:

8           a.   Targeting individuals in Sonoma County on the basis of race (and/or

9                specifically of Latino descent) for stops, detentions, interrogations,

10               searches, arrests, and jailing;

11          b.   Engaging in stops, detentions, searches and arrests without reasonable

12               suspicion or probable cause that individuals stopped, detained or arrested

13               are in violation of any criminal or immigration law; and

14          c.   Issuing immigration detainers for or otherwise requesting that local law

15               enforcement agencies hold persons who are not already in local custody

16               due to a valid arrest for a controlled substance violation;

17    3.   Issue a judicial declaration that Defendants' actions as alleged in this Complaint

18         violate the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution; 42

19         U.S.C. § 1983; 42 U.S.C. § 2000d; 5 U.S.C. § 706, 42 U.S.C. § 1985(3), Article I,

20         Sections 7, 13, and 15 of the California Constitution; California Civil Code §

21         52.1; and California Government Code § 11135 and its implementing regulations.

22    4.   Declare that 8 C.F.R. § 287.7 is invalid and *ultra vires* to the Immigration and

23         Nationality Act, and enter a permanent injunction to prohibit Defendants from

24         implementing or relying on 8 C.F.R. § 287.7;

25    5.   Declare that 8 C.F.R. § 287.7 is arbitrary, capricious and an abuse of discretion, in

26         excess of statutory jurisdiction, authority, or limitations, or without observance of

27         procedure required by law and therefore unlawful and invalid, and issue an order

28         setting aside 8 C.F.R. § 287.7 under the Administrative Procedures Act;

1    6.    Award Plaintiffs nominal, compensatory, special, statutory, and punitive damages

2          under 42 U.S.C. § 1983, 42 U.S.C. § 2000d, California Civil Code § 52.1, and

3          California Government Code § 11135;

4    7.    Award pre-judgment and post-judgment interest to the extent permitted by law;

5    8.    Award Plaintiffs their costs and expenses, including reasonable attorneys' fees

6          under 42 U.S.C. § 1988 and the Equal Access to Justice Act, 5 U.S.C. § 504, 28

7          U.S.C. § 2412; and

8    9.    Award such further and additional relief as is just and proper.

9                               **DEMAND FOR JURY TRIAL**

10          In accordance with Fed. R. Civ. P. 38(b), and Northern District Local Rule 3-6(a),

11   plaintiffs hereby demand a jury trial on all issues triable by a jury.

12

13   Dated:  September 5, 2008

14                                                  By
                                                        Alfred C. Pfeiffer, Jr.

15

16                                                  LATHAM & WATKINS LLP
                                                        Alfred C. Pfeiffer
17                                                      Melissa N. Chan
                                                        Robert P. Lynch
                                                        Mary Elizabeth Heard
18

19                                                  Julia Harumi Mass
                                                    Alan L. Schlosser
20                                                      AMERICAN CIVIL LIBERTIES
                                                        UNION FOUNDATION OF
21                                                      NORTHERN CALIFORNIA

22                                                  Attorneys for Plaintiffs

23

24

25

26

27

28