1  LATHAM & WATKINS LLP
   Alfred C. Pfeiffer, Jr. (State Bar No. 120965)
2     Melissa N. Chan (State Bar No. 240228)
   Robert P. Lynch (State Bar No. 250557)
3     Mary Elizabeth Heard (State Bar No. 255793)
   505 Montgomery Street, Suite 2000
4  San Francisco, California 94111
   Telephone: (415) 391-0600
5  Facsimile: (415) 395-8095
   Email: al.pfeiffer@lw.com
6  Email: melissa.chan@lw.com
   Email: robert.lynch@lw.com
7  Email: maryelizabeth.heard@lw.com

8  Julia Harumi Mass (State Bar No. 189649)
   Alan L. Schlosser (State Bar No. 49957)
9  Andre I. Segura (State Bar No. 247681)
   AMERICAN CIVIL LIBERTIES UNION
10 FOUNDATION OF NORTHERN CALIFORNIA
   39 Drumm Street
11 San Francisco, California 94111
   Telephone: (415) 621-2493
12 Facsimile: (415) 255-8437
   Email: jmass@aclunc.org
13 Email: aschlosser@aclunc.org

14 Attorneys for Plaintiffs

15                UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17 COMMITTEE FOR IMMIGRANT RIGHTS OF | CASE NO. CV 08-04220 (PJH)
   SONOMA COUNTY, FRANCISCO
18 SANCHEZ-LOPEZ, CHRISTYAN SONATO- | **PLAINTIFFS' NOTICE OF MOTION**
   VEGA, and SAMUEL MEDEL MOYADO, | **AND MOTION FOR A PROTECTIVE**
19                     | **ORDER REGARDING DISCOVERY OF**
                    | **IMMIGRATION STATUS AND FOR**
20         Plaintiffs, | **BIFURCATION OF DAMAGES ISSUES**

21         v. | Date:     January 21, 2009
                    | Time:    9:00 AM
22 COUNTY OF SONOMA; SHERIFF- | Place:   Courtroom 3, 17th Floor
   CORONER BILL COGBILL and DEPUTY | Judge:   The Hon. Phyllis J. Hamilton
23 SHERIFF MORRIS ERIC SALKIN,
   individually and in their official capacities; U.S.
24 DEPARTMENT OF HOMELAND SECURITY,
   BUREAU OF IMMIGRATION AND
25 CUSTOMS ENFORCEMENT; SPECIAL
   AGENT-IN-CHARGE MARK WOLLMAN,
26 SPECIAL AGENT MARIO HUELGA and
   SPECIAL AGENT CHRIS MERENDINO,
27 individually and in their official capacities;
   DOES 1-50; and ROES 1-50, inclusive,
28         Defendants.

1

**NOTICE OF MOTION AND MOTION**

2    Please take notice that Plaintiffs Committee for Immigrant Rights of Sonoma County,

3 Francisco Sanchez-Lopez, Christyan Sonato-Vega, and Samuel Medel Moyado  ("Plaintiffs")

4 hereby move for a protective order to shield discovery of the immigration status of the plaintiffs,

5 witnesses, and deponents on the ground that good cause exists to believe that disclosure of this

6 information could cause injury to the individuals from whom it is sought, undermine the

7 plaintiffs' ability and willingness to bring this case, and result in an undue and oppressive burden

8 upon plaintiffs, witnesses, and others.

9    This motion is based on this Notice, the following Memorandum of Points and

10 Authorities, and all pleadings and records on file in this case.

11

12 Dated:  December 15, 2008     Respectfully submitted,

13            LATHAM & WATKINS LLP
              Alfred C. Pfeiffer

14              Melissa N. Chan
              Robert P. Lynch

15              Mary Elizabeth Heard

16

17         By _____/s/ Alfred C. Pfeiffer, Jr._____
              Alfred C. Pfeiffer, Jr.

18              Julia Harumi Mass

19              Alan L. Schlosser
              Andre I. Segura

20               AMERICAN CIVIL LIBERTIES
               UNION FOUNDATION OF

21               NORTHERN CALIFORNIA

22            Attorneys for Plaintiffs

23

24

25

26

27

28

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    FACTUAL BACKGROUND**

3        For at least the past four years, defendants U.S. Department of Homeland Security,

4    Bureau of Immigration and Customs Enforcement ("ICE") and the County of Sonoma Sheriff's

5    Department ("Sheriff") have worked together to enforce civil immigration laws.  Among other

6    things, ICE agents and Sheriff's deputies regularly engage in joint patrols in which they stop,

7    search, and question individuals regarding their immigration status.  Sheriff's deputies also

8    identify persons whom they suspect of civil immigration violations — but for whom there is no

9    criminal basis for arrest — and either contact ICE for permission to arrest them or later seek out

10   such individuals during their joint patrols with ICE.  As part of those joint enforcement activities,

11   it is the Sheriff's practice and policy to take custody of individuals in the field and hold them in

12   the County jail based upon suspected civil immigration violations with ICE's approval.  The

13   Sheriff does so without any criminal basis for arrest and without ICE having first booked or

14   otherwise processed the individuals.  Plaintiffs allege that in carrying out these joint operations,

15   defendants target individuals based on their race, engage in unlawful searches and seizures, and

16   violate individuals' rights to due process, among other claims.

17       The membership of plaintiff Committee for Immigrant Rights of Sonoma County

18   ("Committee") includes families who live in the neighborhoods of Sonoma County where those

19   joint enforcement activities take place.  The Committee has devoted substantial resources to

20   opposing the practices challenged in this action through public education, community

21   organizing, and appeals to County officials.  Plaintiffs Francisco Sanchez-Lopez and Christyan

22   Sonato-Vega were separately stopped by joint patrols including ICE agents and Sheriff's

23   deputies and held in the Sonoma County jail on suspected civil immigration violations without

24   any purported criminal basis for arrest.  Plaintiff Samuel Medel Moyado was arrested on a minor

25   criminal charge, but the Sheriff held him in custody for approximately four days after a judge

26   ordered him released, based on suspected immigration violations and an ICE detainer.  Plaintiffs

27   seek injunctive and declaratory relief against the challenged practices and damages for the

28   named individual plaintiffs who have been subjected to these practices.

## II.     LEGAL STANDARD

Courts may impose limits on discovery, whenever justice so requires, upon a showing of good cause by the applicant.  Fed. R. Civ. P. 26(c); *see also, Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).  Such protective orders are intended "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…"  Fed. R. Civ. P. 26(c).  "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Estates of Byrd*, 307 F.3d 1206 at 1211.  A party may apply for a protective order after certifying that the parties have met in a good faith effort to resolve the dispute, but failed to do so.  Fed. R. Civ. P. 37(a); Civ. Local R. 37-1.  The parties in this case have met and conferred in an attempt to resolve this issue, but have been unable to reach a mutually acceptable resolution.  Docket No. CV 08-04220-PJH, Joint 26(f) Report, at 4.

## III.    GOOD CAUSE EXISTS FOR A PROTECTIVE ORDER BARRING DISCOVERY OF IMMIGRATION STATUS

Plaintiffs respectfully request a protective order limiting defendants' ability to conduct discovery as to the immigration status of witnesses, to avoid the prejudicial effects that such discovery would have upon the plaintiffs' ability to effectuate their rights. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (upholding protective order barring discovery of plaintiffs' immigration status in civil rights case).  The Ninth Circuit has recognized that permitting discovery regarding immigration status could, if a witness is undocumented, lead to "criminal prosecution and deportation" with obvious chilling effects. *Id.,* 364 F.3d 1057 at 1064. That could lead witnesses to withhold relevant information.  Such discovery may even discourage participation of documented immigrants, because it could reasonably create "fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends; [and even] new legal residents or citizens may feel intimidated by the prospect of having their immigration history examined in a public proceeding." *Id.*, 364 F.3d 1057 at 1065.  Here both party and non-party witnesses would be

subject to the same chilling effect and may become unwilling or unable to participate fully in the case.  Allowing discovery relating to immigration status would prevent plaintiffs from securing important testimony and evidence, thus denying them effective access to the courts.  Declaration of Richard Coshnear ("Coshnear Decl."), ¶ 4, 5.

Discovery directed to immigration status would also harm the public interest.  "Courts have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to any material claim. … [A]llowing parties to inquire about the [plaintiffs'] immigration status … would present a danger of intimidation that would inhibit plaintiffs in pursuing their rights." *Topo v. Dhir*, 210 F.R.D. 76, 76 (S.D.N.Y. 2002) (upholding protective order barring discovery of plaintiffs' immigration status) (citations and internal quotations omitted); *see also Rivera,* 364 F.3d 1057 at 1064 ("requiring the plaintiffs to answer such questions [concerning immigration status] in the discovery process would likely deter them, and future plaintiffs, from bringing meritorious claims.").

Indeed, failing to provide relief from discovery as to immigration status "would constitute [an] unacceptable burden on [the] public interest due to [the] chilling effect" it would have on all potential claimants.  *EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 404, 406 (E.D.N.Y. 2004) (upholding protective order barring discovery of immigration status).  Many constitutional and statutory rights are monitored and maintained through a private plaintiff system, including those at issue in this case.  *See  Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 45 (1974) ("[T]he private right of action remains an essential means of obtaining enforcement of Title VII… In such cases the private litigant not only redresses his own injury but also vindicates important congressional policy….").  Permitting discovery of immigration status would fundamentally upset this system, resulting in substantial harm to the public's interest in properly monitoring and vindicating civil rights.

The plaintiffs — as individuals and as claimants seeking access to the courts — and the public interest would suffer significant harm without a protective order shielding the plaintiffs and all witnesses from discovery regarding immigration status in this case.

IV.    **A PROTECTIVE ORDER WILL NOT PREJUDICE DEFENDANTS**

The requested protective order would not materially prejudice the defendants.  None of plaintiffs' claims, nor any of defendants' available defenses, depends on anyone's immigration status — even illegal immigrants are entitled to the basic civil rights plaintiffs seek to enforce in this action.  *See, e.g., Pyler v. Doe*, 457 U.S. 202, 210 (1982) ("Whatever his status under the immigration laws, an alien is surely a 'person' in any ordinary sense of that term.  Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments.");  *see also Papa v. United States I.N.S.*, 281 F.3d 1004, 1010 (9th Cir. 2002) ("Limited rights under the Due Process Clause extend to detained aliens.").  The probative value of any witnesses' immigration status is nominal at best.  Although defendants might argue that a plaintiff's immigration status may be relevant with respect to damages, *see Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147-52 (2002) (holding immigration status relevant to back-pay claims where there existed a statutory bar to the wages), this is easily cured by a bifurcation of the liability and the damage phases of the case.  Shielding the discovery of plaintiffs' and witnesses' immigration status will have no prejudicial impact on defendants' ability to effectively litigate plaintiffs' claims for liability.  Any potential impact with respect to damages is curable by bifurcating liability and remedy.

V.    **THE COURT SHOULD BIFURCATE LIABILITY AND DAMAGES**

In order to protect the plaintiffs and their witnesses from the chilling effects described above, plaintiffs respectfully request that the court bifurcate the liability and damages phases of this proceeding.

Bifurcating liability and damages is appropriate wherever it "(1) serves the interests of judicial economy or is done to prevent prejudice to a party; (2) does not unfairly prejudice the non-moving party; and (3) does not violate the Seventh Amendment." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).  The Ninth Circuit has recognized that bifurcation is an appropriate step in situations involving discovery relating to immigration status:

1

2

> a separation between liability and damages would be consistent
> with [Ninth Circuit] prior case law and would satisfy the concern
> that [these causes of action] not be dismissed, or lost through
> intimidation on account of particular remedies.

3

4

*Rivera,* 364 F.3d 1057 at 1070.  For the same reasons, the Court should bifurcate damages and

5

liability here.

6

**VI.     CONCLUSION**

7

For the foregoing reasons, we respectfully request that the Court enter the proposed

8

protective order barring discovery of plaintiffs' and witnesses' immigration status.

9

10

Dated:  December 15, 2008                              Respectfully submitted,

LATHAM & WATKINS LLP

11

Alfred C. Pfeiffer
Melissa N. Chan

12

Robert P. Lynch
Mary Elizabeth Heard

13

14

By  _____/s/ Alfred C. Pfeiffer, Jr._____

15

Alfred C. Pfeiffer, Jr.

16

Julia Harumi Mass
Alan L. Schlosser

17

Andre I. Segura
AMERICAN CIVIL LIBERTIES

18

UNION FOUNDATION OF
NORTHERN CALIFORNIA

19

Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28