JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
ELLEN M. FITZGERALD (NY 2408805)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102-3495
Tel: (415) 436-7314
Fax: (415) 436-6748
E-mail: ellen.fitzgerald@usdoj.gov

Attorneys for the United States and Individual Federal Defendants Wollman, Huelga, and Merendino

GREGORY G. KATSAS
Assistant Attorney General, Civil Division
JOSHUA E.T. BRAUNSTEIN
Assistant Director
COLIN A. KISOR (DC 497145)
Trial Attorney
Office of Immigration Litigation
Civil Division, Justice Department
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 231-4331
Fax: (202) 305-7000
E-mail: colin.kisor@usdoj.gov

Attorneys for the United States.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY, FRANCISCO SANCHEZ-LOPEZ, CHRISTYAN SONATO-VEGA, and SAMUEL MEDEL MOYADO<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA; SHERIFF-CORONER BILL COGBILL and DEPUTY SHERIFF MORRIS ERIC SALKIN, individually and in their official capacities; U.S. DEPARTMENT OF HOMELAND SECURITY BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT; SPECIAL- | Case No. C 08-4220 PJH<br><br>**FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER REGARDING DISCOVERY OF IMMIGRATION STATUS AND FOR BIFURCATION OF DAMAGES ISSUES**<br><br>Date: January 28, 2009<br>Time: 9:00am<br>Place: Courtroom 3, 17th Floor<br>Judge: The Hon. Phyllis J. Hamilton |

AGENT-IN-CHARGE MARK WOLLMAN, )
SPECIAL AGENT MARIO HUELGA and )
SPECIAL AGENT CHRIS MERENDINO, )
individually and in their official capacities; )
                                                )
DOES 1-50; and ROES 1-50, inclusive, )
                                                )
           Defendants. )

**Table of Contents**

**PRELIMINARY STATEMENT** .................................................... 2

    I.      BACKGROUND ............................................................. 1

    II.     ARGUMENT ................................................................ 3

           A.    Legal Standards ........................................................ 3

           B.    Plaintiffs cannot establish good cause for a protective order barring discovery of their immigration status because this information is particularly relevant to the resolution of the claims and defenses in this case. .......................................................... 4

           C.    The requested protective order is overbroad and would prejudice the Defendants' ability to obtain a fair trial because it would preclude discovery of relevant impeachment evidence. ..................... 7

           D.    This Court should decline to bifurcate this litigation. ............ 10

    III. CONCLUSION ............................................................. 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Abel*, 469 U.S. 45 (1984) .................................................................................. 9

*Airas v. U.S. Immigration and Customs Enforcement, et al.* ............................................... 5, 7

*Alvidres-Reyes v. Reno*, 180 F.3d 199 (5th Cir. 1999) ......................................................... 6

*Beckman Industries, Inc. v. International Insurance Co.*, 966 F.2d 470 (9th
    Cir. 1992) ........................................................................................................... 3, 5, 9, 10

*DANJAQ et. al., v. Sony*, 263 F.3d 942 (9th Cir. 2001) ........................................................ 7

*Gonzalez v. INS*, 353 F.3d 1077 (9th Cir. 2003) ................................................................ 6

*Kroka v. City of Chicago*, 203 F.3d 507 (7th Cir. 2000) ................................................... 11

*Oguachuba v. INS*, 706 F.2d 93 (2nd Cir. 1983) ................................................................ 6

*Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) ................. 6

*Rivera v. NIBCO*, 364 F.3d 1057 (9th Cir. 2004) ...................................................... Passim

*Roden Properties-Shore Mall N.V. v. Cushman, et al.*, 49 F. Supp. 2d 709
    (D. N.J. 1999) ..................................................................................................... 12

*United States v. The City Of Torrence, et al.*, 164 F.R.D. 493, 495
    (C. D. Cal. 1995) ................................................................................................. 7

## FEDERAL STATUTES

8 U.S.C. § 1101 ............................................................................................................ Passim

8 U.S.C. § 1231(a)(5) .......................................................................................................... 5

8 U.S.C. § 1252(g) .............................................................................................................. 6

## FEDERAL REGULATIONS

8 C.F.R. § 287.7 ............................................................................................................ Passim

## PRELIMINARY STATEMENT

Defendants, U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, Special-Agent-in-Charge Mark Wollman, Deportation Officer Mario Huelga, and Special Agent Chris Merendino ("Federal Defendants"), by and through their undersigned counsel, submit the following memorandum in opposition to Plaintiffs' motion for a protective order precluding any discovery on immigration status of Plaintiffs and unnamed witnesses and seeking bifurcation of damages issues in this case.

As set forth more fully below, this Court should deny Plaintiffs' motion in its entirety. The immigration status of Plaintiffs is plainly relevant to the claims and defenses. Additionally, whether any particular fact witness' "immigration status" in and of itself is a relevant fact, any past or ongoing actions by any Plaintiff or witness to engage in fraud, execute false employment documents, misrepresent his or her identity, knowingly carry fraudulent or counterfeit identification documents, passports, social security cards, drivers licenses, or to make misrepresentations to the United States Government on immigration applications and forms, and the like would be relevant evidence and would be admissible under Federal Rules of Evidence 608(b), 609(a)(2), 613, 801(d), 404(b). Thus, an order preventing discovery of potential impeachment information (as set forth in Plaintiffs' draft protective order) would unfairly prejudice Defendants by precluding discovery of relevant information related to the credibility of Plaintiffs' witnesses and would thus deprive Defendants of a fair trial.

I.   **FACTUAL BACKGROUND**

This is an immigration case of first impression presenting the question of whether under the Immigration and Nationality Act ("INA"), 8 U.S.C § 1101 *et. seq.*, Congress's broad grant of authority to the Secretary of Homeland Security to carry out his obligation to enforce federal immigration laws includes the power to issue detainers for any illegal aliens in the custody of

State or local law enforcement agencies. Plaintiffs contend that the INA only narrowly permits the Secretary to issue detainers for those illegal aliens who have committed controlled substance violations. (Complaint at ¶ 33). Plaintiffs Francisco Sanchez-Lopez, Christian Sonato-Vega, and Samuel Medel Moyado are illegal aliens who were briefly detained in the Sonoma County Jail (but not for controlled substance violations) prior to being transferred to Immigration and Customs Enforcement ("ICE") custody pursuant to I-247 detainers issued by ICE agents in accordance with 8 C.F.R. § 287.7.

According to the Complaint, on September 28, 2006, Plaintiff Francisco Sanchez-Lopez was a passenger in a car that was stopped by a Sonoma County Sheriff's Deputy for a traffic violation. (Complaint at ¶ 41). He was questioned on the scene by an ICE officer, who was present with the Sheriff's Deputy. He was then detained as an illegal alien by the Sonoma County Sheriff at ICE's request and held in the County facility until he was transferred to ICE custody. (Complaint at ¶ 44). Plaintiff Chrystian Sonato-Vega was taken into custody by a Sonoma County Sheriff's Deputy and an ICE Agent on August 2, 2007, for being an illegal alien and held at the Sonoma County Jail until he was transferred to an ICE facility. (Complaint at ¶¶ 47-48). Plaintiff Samuel Medel Moyado was arrested on August 8, 2007, for violating California Penal Code § 647(f),[1] but he was not charged. According to the Complaint, at a court hearing on August 10, 2007, a California state court judge informed him that he was "free to leave" but he was subsequently held pursuant to an 8 C.F.R. § 287.7 immigration detainer, and transferred to ICE custody on August 14, 2007. (Complaint at ¶¶ 50-51). Plaintiffs allege, *inter alia*, that ICE lacked the authority to issue the I-247 detainers in each of these cases authorized by 8 C.F.R. § 287.7 because none of the Plaintiffs was being held for a controlled substance violation.

According to the Complaint, Plaintiff "Committee for Immigrant Rights of Sonoma County" ("Committee") is a "community-based" organization "comprised of Sonoma County

---

[1] Cal. Penal Code § 647(f) generally prohibits being drunk and disorderly in public.

FEDERAL DEFENDANTS' OPPOSITION TO PROTECTIVE ORDER
Case No. C 08-4220 PJH                                            2

residents and organizations" which was founded in 2006. (Complaint at ¶¶ 6 and 9). Plaintiffs assert that the Committee is being harmed because its members have witnessed, and been subjected to, Defendants' alleged "unlawful activity," because they reside in Sonoma County where Defendants "regularly patrol." (Complaint at ¶ 40). The Committee is also harmed, Plaintiffs allege, because Defendants' practices "undermine the Committee's organizational mission" and "divert the Committee's resources" from the pursuit of its goals. (Complaint at ¶ 40). Plaintiffs have filed a motion seeking a protective order barring discovery of Plaintiffs' and witnesses' immigration status and "any information that would provide an alternate means of ascertaining the immigration status of Plaintiffs or witnesses." (Plaintiff's Proposed Protective Order at 1).

## II.   ARGUMENT

### A.   Legal Standards

Under Federal Rule of Civil Procedure 26(b), parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . including the identity and location of persons who know of discoverable matter." Fed. R. Civ. P. 26(b)(1). Further, "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The scope of discovery may be limited by court order, but the court may issue a protective order only upon a showing of "good cause." Fed. R. Civ. P. 26(c). In deciding whether a party has made a showing of good cause, a court should undertake a two step analysis. First, a court must decide if "particularized harm will result from disclosure of information to the public." *Rivera v. NIBCO*, 364 F.3d 1057, 1063 (9th Cir. 2004). If a particularized harm will result, then the Court should balance the public and private interests to decide whether a protective order is necessary." *Id.* at 1063-4. Further, "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d. 470,

476 (9th Cir. 1992).

### B. Plaintiffs cannot establish good cause for a protective order barring discovery of their immigration status because this information is particularly relevant to the resolution of the claims and defenses in this case.

Plaintiffs seek a broad protective order to "shield discovery of the immigration status of the plaintiffs, witnesses, and deponents." (Plaintiffs' Motion for a Protective Order ("Pl. Mot.") at 1). In particular, Plaintiffs want an order that "encompasses all direct questions about immigration status as well as questions or discovery that seek to elicit information closely bearing on or calculated to reveal protected information." (Plaintiffs' Proposed Protective Order at 1). Plaintiffs cannot meet their burden for a protective order because they allege only general harm which may result rather than the particularized harm required. Moreover, the information Plaintiffs wish to keep from Defendants and the Court is relevant to a number of issues in this case, including the jurisdiction of this Court with respect to individual Plaintiffs in removal proceedings. Accordingly, the Court should decline to issue the requested protective order.

Preliminarily, this issue has been overtaken by events with respect to the named Plaintiffs. Federal Defendants are already aware of the immigration status of the three named Plaintiffs. Plaintiff Sanchez-Lopez is in removal proceedings and has no legal status to be in the United States. Plaintiff Sonato-Vega agreed to a voluntary departure in lieu of removal and was returned to Mexico on April 11, 2008; if he is in the United States now, he is illegally present and subject to the reinstatement provisions of 8 U.S.C. § 1231(a)(5). Plaintiff Moyado has applied for adjustment of status based on his marriage to a U.S. citizen and his removal hearing has been continued to January 26, 2009.

The Committee For Immigrant Rights of Sonoma County, as an organization, does not have an immigration status, although its members do. According to the declaration of immigration lawyer/Committee founder Richard Coshnear, appended to Plaintiffs' Motion, some of the Committee members and/or their family members are not legal residents of the United

FEDERAL DEFENDANTS' OPPOSITION TO PROTECTIVE ORDER
Case No. C 08-4220 PJH            4

States. (Coshnear Decl. at ¶ 2).

Plaintiffs' assertion that "none of plaintiffs' claims, nor any of the defendants' available defenses, depends on anyone's immigration status" is profoundly mistaken. (Pl. Mot at page 4). The immigration status of any individual Plaintiff who is in removal proceedings is relevant for several reasons. First, this Court lacks jurisdiction over the three named alien Plaintiff's claims because all of them arise from the ICE's decision to initiate removal proceedings against them. *See* 8 U.S.C. § 1252(g). That statute states,

> except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 477-78 (1999). The Fifth Circuit Court of Appeals has further added:

> Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders . . . [further], § 1252(g) protects from judicial intervention the Attorney General's exercise of her executive discretion whether to prosecute and adjudicate removal cases by depriving the courts of jurisdiction to hear such litigation or any cause arising therefrom.

*Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999). Further, the United States District Court for the District of Minnesota has dismissed *Bivens* claims under § 1252(g) in the case of aliens who were removed because the plaintiffs claims arose "from conduct that was a direct result of the DHS Secretary's decision to commence removal proceedings against them." *See Airas v. U.S. Immigration and Customs Enforcement, et al.*, No. 07-1959, 2008 U.S. Dist Lexis 34072 at *22-23 (D. Minn Apr, 23, 2008). Here, too, the named Plaintiffs have instituted *Bivens* lawsuits against the agents who issued detainers for them, the first step in the removal

FEDERAL DEFENDANTS' OPPOSITION TO PROTECTIVE ORDER
Case No. C 08-4220 PJH                                                         5

proceedings of these illegal aliens. Accordingly, to the extent that any Plaintiff asserts a *Bivens* claim related to an ICE agent issuing an I-247 immigration detainer, that Plaintiff's immigration status would be central to this Court's jurisdiction to hear the complaint.

Second, should this Court reach the merits of the *Bivens* claims, certainly the Plaintiffs' immigration status would be relevant to whether or not the detainer was proper. (ICE Agents cannot issue I-247 detainers to hold U.S. Citizens in custody, for example). In fact, the immigration status of the plaintiffs in this case is what gives rise to the action. (*See generally* Plaintiffs' Complaint.) Moreover, Federal Defendants note that Plaintiffs seek equitable relief in this case in the form of preliminary and permanent injunctions. (Complaint at pp. 21-22); *see also Gonzalez v. INS*, 353 F. 3d 1077, 1079 (9th Cir. 2003) (noting that an injunction is one of a courts general equitable powers). It bears consideration that Federal courts, including the Ninth Circuit Court of Appeals, have applied the general equitable principle that "he who comes into equity must come with clean hands." *DANJAQ et. al., v. Sony,* 263 F. 3d 942, 956-57 (9th Cir. 2001) (applying laches to cases of copyright infringement involving the James Bond movies); *see Oguachuba v. INS,* 706 F. 2d 93, 99 (2nd Cir. 1983) (denying attorneys fees for an illegal alien because of his "notorious and repeated violations of United States immigration law" which rendered the alien "in classic equitable terms . . . without clean hands.). Here too, Plaintiffs who violate immigration laws should be considered to be without clean hands when seeking equitable relief.

Finally, any individual Plaintiff's immigration status is relevant with respect to any *Bivens* liability or damages, and Plaintiffs propose that this litigation be bifurcated for that reason. (Pl. Mot. at 4). Because Plaintiffs' immigration status is central to the jurisdiction of this Court to hear *the Bivens* claims, the factual issues relating to the claims, and the damages (if any) in this case, this Court should decline to issue the requested protective order.

### C. The requested protective order is overbroad and would prejudice the Defendants' ability to obtain a fair trial because it would preclude discovery of relevant impeachment evidence.

Plaintiffs cannot establish good cause for their proposed order because, even if immigration status of Plaintiffs were somehow deemed not relevant, the proposed order is still overbroad and unwaranted. Plaintiffs seek an order which would, essentially, allow Plaintiffs and their witnesses to testify without identifying themselves. (Plaintiffs' Proposed protective Order at ¶3, page 1-2). It is axiomatic that the credibility of witnesses is of central relevance to a trial. Issuing the requested order to preclude the Defendants from conclusively establishing the identity of the Plaintiffs, (to the extent that the Plaintiffs add new individual plaintiffs or identify Committee members) or the Plaintiffs' witnesses would effectively preclude Defendants from cross examining the witnesses as to their credibility. This would, without question, deprive all Defendants of a fair trial. Although a person's status as an illegal alien may not, in and of itself, necessarily implicate that person's credibility, it is beyond dispute that any past or present actions on the part of any witness to engage in fraud, execute false employment documents, misrepresent his or her identity, knowingly carry fraudulent or counterfeit identification documents, passports, social security cards, drivers licenses, or made false representations to the U.S. Government on immigration applications and forms, and the like would be relevant discovery and arguably admissible evidence under Federal Rules of Evidence 607 (credibility), 608(b) "specific instances of conduct" (if probative as to truthfulness), 609(a)(2) "impeachment by evidence of conviction of crime" (if the crime involved an act of dishonesty or false statement), 613 "prior statements of a witness" (in removal proceedings for example), 801(d) (prior statements), 404(b) (character evidence). Defendants are entitled to discover this information even if it is only potentially relevant evidence for impeachment. *See United States v. The City Of Torrence, et al.*, 164 F.R.D. 493, 495(C. D. Cal. 1995) (noting that Rule 26 permits the discovery of information which may simply relate to the credibility of a witness or other evidence in the case) (internal quotations and further citations omitted).

FEDERAL DEFENDANTS' OPPOSITION TO PROTECTIVE ORDER
Case No. C 08-4220 PJH               7

Further, Plaintiffs' proposed order barring discovery of any verifiable identifying information of Plaintiff's unnamed witnesses would also unfairly preclude Defendants from discovering any bias on the part of the witness. Though it is not a numbered Rule, the Federal Rules of Evidence permit cross examination of a witness as to his or her bias because "a successful showing of bias on the part of the witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *United States v. Abel*, 469 U.S. 45, 51 (1984). In this case, the Complaint states that "members of the Committee have personally witnessed and been subjected to Defendants' unlawful practices" and the Committee "has itself been, and continues to be, harmed by Defendants' practices." (Complaint at ¶ 40, page 10). And in his declaration Mr. Coshnear avers that, through his work with the Committee, he has interacted with witnesses who have relevant information, and are either not legal residents of the United States, or who have family members who are not legal residents of the United States.[2] (Coshnear Decl. at ¶ 1-4.) Mr. Coshnear is a founding member of the Committee (Coshnear Decl. at ¶ 1). The Defendants are entitled to discovery related to the potential bias of any witness against Defendants based upon Defendants' prior interactions with them, with their family members, or generated by the Committee's "house meetings" and "public forums" related to its "Know Your Rights Campaign" (Complaint at ¶ 38) or its "County of Refuge Campaign" including its concomitant "weekly vigils." (Complaint at ¶ 40). Defendants would naturally seek to expose any bias on cross-examination at trial in accordance with the Rules of Evidence.

Moreover, requiring Plaintiffs to identify each witness, and allowing the Defendants to verify the witness' identity (which will allow Defendants to determine whether the witness may be impeached with his or her criminal record or by any of the other means contemplated by the

---

[2] Obviously, an alien can be lawfully present in the United States without being a legal resident (a student or tourist with an unexpired visa as examples). Federal Defendants assume Mr. Coshnear is referring to aliens not lawfully present when he refers to witnesses who "are not legal residents."

FEDERAL DEFENDANTS' OPPOSITION TO PROTECTIVE ORDER
Case No. C 08-4220 PJH            8

Federal Rules of Evidence), does not constitute the type of particularized harm justifying relief because that would be the circumstance in any case where a witness was an illegal alien. Thus, merely asserting, as a general proposition, that illegal aliens may be reluctant to testify in court proceedings is exactly thy type of "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, [which] do not satisfy the Rule 26(c) test." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d. 470, 476 (9th Cir. 1992). What Plaintiffs seek, essentially, is an enactment of a new Rule of Procedure barring discovery of immigration status in every case, because it will always be the case that an illegal alien may be reluctant to testify.

Plaintiffs cite *Rivera v. NIBCO*, 364 F.3d 1057, 1063 (9th Cir. 2004) in support of their requested order "limiting defendants' ability to conduct discovery as to the immigration status of *witnesses*, to avoid the prejudicial effects that such discovery would have upon the *plaintiffs'* ability to effectuate their rights." (Pl. Mot at 2) (emphasis added).[3] But *Rivera* is easily distinguishable from this case. *Rivera* involved a labor law dispute in which a factory had exploited undocumented workers, and was thus not entitled to used its employees'

---

[3] It is not at all clear on what basis Plaintiffs' counsel has standing to represent the interest of unnamed non-party witnesses. Federal Defendants also note that it appears that Mr. Coshnear, Plaintiffs' Declarant, is both a founding member of a party to this litigation and also is providing, or has provided, legal advice to other Plaintiffs and potential witnesses regarding the decision of whether or not to testify. (Coshnear Decl.). Mr. Coshnear asserts that "in the course of my work for the Committee and in my law practice" he has "privileged attorney client communications" which form the basis for his evidentiary declaration. (Coshnear Decl.) His declaration is appended to Plaintiffs' motion. In his declaration he avers that he is an immigration lawyer who represents clients who "have been injured by the policies and practices challenged in this lawsuit." (Coshnear Decl.). Mr. Coshnear also represented Plaintiff Christian Sonato-Vega and Plaintiff Sanchez-Lopez in their removal proceedings. Mr. Coshnear further avers that "as an immigration lawyer, I would advise [potential witnesses] not to participate as witnesses in this lawsuit unless a protective order is in place barring discovery of information that could directly or indirectly reveal their immigration status." (Coshnear Decl.). From this he concludes, "as a result, the Committee believes it is necessary to withhold in plaintiffs' initial disclosures the names of those potential witnesses not already reasonably known to defendants." (Coshnear Decl.).

FEDERAL DEFENDANTS' OPPOSITION TO PROTECTIVE ORDER
Case No. C 08-4220 PJH                                              9

undocumented status against them in court proceedings. The Ninth Circuit Court of Appeals upheld a protective order by which the defendant employer was precluded from learning in discovery the plaintiff factory workers' immigration status (although the defendant could conduct its own, independent, investigation into their status). And although Plaintiffs in this case assert that there will be a "chilling effect" which may cause some "party and non party witnesses . . . to become unwilling or unable to participate fully in this case," Plaintiffs do not articulate any "particularized harm" apart from the potential for lawful immigration consequences for witnesses who happen to be undetected illegal aliens. (Pl. Mot at 2-3). As such, Plaintiffs claims are only "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" and do not satisfy the Rule 26(c) test. *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d. 470, 476 (9th Cir. 1992). Further, to the extent that being discovered as an illegal alien constitutes "particularized harm" in an immigration case, it cannot, on balance, outweigh the defendants' right in this action to confront all witnesses on evidentiary issues of credibility and bias, thus ensuring a fair trial.

Indeed, Plaintiffs cite no immigration case -- and Defendants' research has uncovered none -- where a federal court entered a broad based protective order of this kind covering unnamed witnesses. And precluding the Federal Defendants from exploring the potential bias of the witnesses by allowing them to only minimally identify themselves, without allowing Defendants to ascertain their identities with certainty (thereby discovering any relevant information the witnesses may be reluctant to disclose which would affect their credibility in the eyes of the jury) would improperly balance the public and private interests in this case. Accordingly, this Court should decline to issue the requested protective order.

### D. This Court should decline to bifurcate this litigation.

#### 1. Legal Standard.

A district court may bifurcate a trial for convenience, to avoid prejudice, or to expedite

and economize, as long as the court preserves the federal right to a jury trial. *See* Fed. R. Civ. P. 42(b). Courts have distilled Rule 42(b) into a tripartite analysis. Courts may bifurcate trials as long as it (1) serves the interests of judicial economy or is done to prevent prejudice to a party; 2) does not unfairly prejudice the non-moving party and 3) does not violate the Seventh Amendment to the U.S. Constitution. *See e.g. Kroka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Generally, the party seeking bifurcation bears the burden to show that it is proper. *See e.g. Roden Properties-Shore Mall N.V. v. Cushman, et al.*, 49 F. Supp. 2d 709, 721 (D. N.J. 1999).

### 2. Plaintiffs have not met their burden to show why bifurcation is warranted in this case.

In their motion, Plaintiffs ask this Court to bifurcate the liability and damages phases of this litigation "in order to protect Plaintiffs and their witnesses from the chilling effects" of the Defendants being able to discover their immigration status or further identify them through documentation. (Pl. Mot. At 4). Plaintiffs' cursory treatment of this issue without any meaningful analysis does little to illuminate why this Court should grant the requested relief.

First, Plaintiffs do not explain how bifurcation of liability and damages would alleviate the chilling effect it perceives. Although Plaintiffs cite *Krocka v. City of Chicago*, a Seventh Circuit case which articulates a the three-part test for bifurcation, Plaintiffs make no attempt to apply the facts of this case to the *Krocka* test. (Pl. Mot. at 4). Significantly, Plaintiffs do not adequately explain why bifurcation either "serves the interest of judicial economy or is done to prevent prejudice to a party." Second, Plaintiffs do not articulate why bifurcation "does not unfairly prejudice the non-moving party." So, top the extent that *Krocka* applies to this case, the Court is left to imagine the answers to these questions. Plaintiffs merely conclude that this Court should bifurcate liability and damages "for the same reasons" that the Ninth Circuit acknowledged in *Rivera* that,

The district court has not yet ruled on Plaintiffs' proposed bifurcated proceedings. Although we do not order such proceedings here, it is clear that a separation between liability and damages would be consistent with our prior case law and would satisfy the concern that causes of action under Title VII not be dismissed, or lost through intimidation, on account of particular remedies.

*Rivera*, 364 F.3d 1057 at 1070 (emphasis added). *Rivera* was a labor case and the issue of damages related to whether or not undocumented aliens could receive back pay for wrongful discharge under certain labor statutes, not applicable here.

In any event, Plaintiffs' request for bifurcation appears to be dependent on the Court issuing a protective order. Thus, should this Court deny Plaintiffs' motion for a protective order, the need for bifurcation would also dissolve.

## III. CONCLUSION

For the foregoing reasons Plaintiffs' motion for a protective order regarding discovery of immigration status and for bifurcation of damages issues should be DENIED in all respects and the Court should grant such other and further relief as the Court may deem just and proper.

Dated: January 7, 2009

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

By:       /s/
ELLEN M. FITZGERALD
Assistant United States Attorney

Attorneys for the United States and Individual Federal Defendants Wollman, Huelga, and Merendino

GREGORY G. KATSAS
Assistant Attorney General
Civil Division
JOSHUA E.T. BRAUNSTEIN
Assistant Director
COLIN A. KISOR
Trial Attorney
Office of Immigration Litigation
Civil Division, Justice Department

By: /s/
COLIN A. KISOR
Trial Attorney

Attorneys for the United States

FEDERAL DEFENDANTS' OPPOSITION TO PROTECTIVE ORDER
Case No. C 08-4220 PJH                    13