THOMAS F. BERTRAND, State Bar No. 056560
RICHARD W. OSMAN, State Bar No. 167993
BERTRAND, FOX, & ELLIOT
The Waterfront Building
2749 Hyde Street
San Francisco, California   94109
Telephone: (415) 353-0999
Facsimile: (415) 353-0990

STEVEN M. WOODSIDE, State Bar No. 58684
County Counsel
ANNE L. KECK, State Bar No.  136315
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105
Santa Rosa, California 95403-2815
Telephone: (707) 565-2421
Fax: (707) 565-2624

Attorneys for Defendants
COUNTY OF SONOMA, SHERIFF-CORONER WILLIAM
COGBILL, DEPUTY SHERIFF MORRIS ERIC SALKIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY, FRANCISCO SANCHEZ-LOPEZ, CHRISTY AN SONATO-VEGA and SAMUEL MEDEL MOYADO,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>COUNTY OF SONOMA; SHERIFF-CORONER BILL COGBILL and DEPUTY SHERIFF MORRIS ERIC SALKIN, individually and in their official capacities; U.S. DEPARTMENT OF HOMELAND SECURITY; BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT; SPECIAL AGENT IN-CHARGE MARK WOLLMAN, SPECIAL AGENT MARIO HUELGAS and SPECIAL AGENT CHRIS MERENDINO, individually and in their official capacities; DOES 1-50 and ROES 1 – 50, inclusive<br><br>                    Defendants. | Case No.:  CV-08-4220-PJH<br><br>COUNTY DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTIONS: (1) FOR PROTECTIVE ORDER REGARDING DISCOVERY OF IMMIGRATION STATUS; AND (2) FOR BIFURCATION OF DAMAGES ISSUES<br><br>_____<br><br>Date:    January 28, 2009<br>Time:    9:00 a.m.<br>Place:   Courtroom 3, 17th Floor<br>Judge:  The Honorable Phyllis J. Hamilton |

1    Defendants the County of Sonoma, Sheriff-Coroner William Cogbill, and Deputy Sheriff

2    Morris Eric Salkin (together, "County Defendants") hereby respectfully submit their Memorandum of

3    Points and Authorities in Opposition to Plaintiffs' Motions: (1) For Protective Order regarding

4    Discovery of Immigration Status; and (2) for Bifurcation of Damages Issues (hereinafter, the

5    "motion"), and request that the Court deny plaintiffs' motion in its entirety, based on the following.

## I.    INTRODUCTION

7    Three individual Plaintiffs and an organization have filed the present lawsuit to challenge law

8    enforcement actions by Immigration and Customs Enforcement ("ICE") agents and Sonoma County

9    Sheriff's Department personnel in taking and/or holding persons in custody for suspected civil

10   immigration violations, and housing them in the county jail under federal immigration detainers

11   pending transfer to ICE.  In their complaint, plaintiffs allege, *inter alia*, that Sheriff's deputies and

12   ICE agents violate the constitutional and statutory rights of Latino residents in Sonoma County

13   because they use race as a motivating factor for traffic stops and other detentions and that they stop,

14   interrogate, search and arrest persons for civil immigration violations without warrants or adequate

15   justification.

16   Plaintiffs now seek a protective order and to bifurcate damages in an effort to bar defendants

17   from seeking discovery of any and all facts that could reveal a plaintiffs or any of their witnesses'

18   immigration status, including their:

19
20        a.   immigration status,
          b.   social security numbers, individual tax identification numbers, or work authorization,
21        c.   passports, driver's licenses, identification cards and related documentation,
          d.   citizenship or place of birth,
22        e.   veracity of documents with respect to passport, social security numbers, driver's license,
               place of birth or related information,
23        f.   whether, when, where or how an individual has ever left or entered the United states or
               otherwise traveled,
24        g.   applications, if any to the Immigration and Naturalization Service for the individuals or
               family members thereof, and
25        h.   whether an individual has ever worked without authorization in the United States under a
               different name or with false documentation.
26

27   [See, Plaintiff's (Proposed) Protective Order (Docket No. 20).]

28

Yet, a review of the issues reveals that plaintiffs' motion seeks to prevent defendants from obtaining discovery on issues that are relevant and material to the allegations contained in plaintiffs' complaint.  Plaintiffs' allegations that they were wrongfully detained, and that immigration laws were enforced against them wrongfully, require delving into the very types of facts that plaintiffs seek to bar defendants from discovering.

If plaintiffs' requested protective order were to be granted, defendants would be prevented from adequately defending this action as they would be unable to uncover plaintiffs' version of the facts and events that gave rise to the immigration holds.  Plaintiffs' requested protective order is thus contrary to the interests of justice in that it would prevent defendants from discovering the truth underlying plaintiffs' allegations, and accordingly should be denied.

## II.    STATEMENT OF FACTS

The complaint contains seventeen claims for relief that arise from plaintiffs' allegations concerning cooperative law enforcement actions between County Defendants and the named federal defendants, including the U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"), et al.  These claims are alleged to be based on constitutional principles including equal protection, due process, and the right to be free from unreasonable searches and seizures, and also include related federal and state law damages claims.

At the core of the complaint is plaintiffs' claim that ICE does not have the authority to request the Sheriff to take and/or hold persons in custody for civil immigration violations via immigration detainers *unless* such persons were arrested for a controlled substance violation.  Plaintiffs contest the Sheriff's ability to work with ICE in law enforcement activities, and allege that Sheriff deputies conduct law enforcement stops against Latino residents based solely on suspected civil immigration violations, with ICE's approval and without any criminal bases for arrest, and without ICE having first booked or otherwise processed the persons.  Plaintiffs allege that in carrying out these joint operations, defendants target individuals based on their race, engage in unlawful searches and seizures, and violate individuals' rights to due process.

Each of the three individual plaintiffs allege facts relating to defendants' law enforcement

actions with respect immigration issues.  Examples of these allegations include the following:

1. Plaintiff Francisco Sanchez-Lopez alleges that "without probable cause or reasonable suspicion of any civil or criminal violation, …, the [Sheriff's] officer ordered Francisco out of the car…[and] ordered Francisco to talk to an ICE agent who had accompanied the officer."[Complaint, ¶44, 11;8-14]   Further, Sanchez-Lopez alleges that an ICE officer interrogated and searched his wallet, after which time he was booked into the Sonoma County jail, "based solely on his suspected immigration status." [Complaint, 11:15-18];

2. Plaintiff Christyan Sonato-Vega alleges that Sheriff deputies stopped him and questioned him about his immigration status and gang membership. [Complaint, 2:5-6]  Sonato-Vega further alleges that, "[d]efendants arrested Christyan and booked him into the County jail based on suspected immigration status alone and without any actual or even purported criminal basis for arrest.  Upon information and belief, Defendants made this warrantless arrest without probable cause to believe that Christyan was a noncitizen without authorization to be in the United States…" [Complaint, 12:12-16.]; and

3. Plaintiff Samuel Medel Moyado was arrested by local law enforcement for violating Penal Code Section 647(f) (disorderly conduct due to intoxication).  Moyado alleges that, while no charges were filed against him, the Sheriff's Department "continued to detain Sammy [Moyado] based on his suspected immigration status," and kept him in custody until he was transferred to ICE's custody. [Complaint, 13:4-6.]

Each of these plaintiffs claim, *inter alia*, that defendants' actions violated plaintiffs' rights to be free from unreasonable searches and seizures (see First,  Fourth, and Tenth Claims for Relief) as well as their right to be free from False Arrest and Imprisonment (see Fifteenth Claim for Relief).  To defend against such claims, defendants will demonstrate that they had reasonable cause to stop plaintiffs, as well as reasonable cause to detain them based for suspected immigration violations – which require the parties to delve into the facts relating to plaintiffs' immigration status.  In addition, plaintiffs' claims that they were not accorded their due process rights in connection with their immigration holds (see Complaint, ¶¶ 34-35, and the Third, Sixth and Twelfth Claims for Relief) will require delving into plaintiffs' immigration status and related proceedings.

In addition, on September 20, 2008, plaintiffs' counsel sent a request to defense counsel to preserve documents that they determined were relevant to the issues alleged in this lawsuit.  Included in the letter was a request to preserve all records related to 20 named individuals (including plaintiffs), as well as a request to preserve "any individual immigration or criminal proceedings

regarding any of the individuals enumerated."[1]   By virtue of such a request, plaintiffs admitted the

relevance of immigration status information regarding plaintiffs and identified witnesses.  Plaintiffs'

request for a protective order under these circumstances is unwarranted, as discussed below.

### III.   ARGUMENT

**A.   Legal Standard**

Federal Rule of Civil Procedure 26 states generally that any matter relevant to a claim or

defense is discoverable.  If a party seeks to limit this general principle, they must move for a

protective order and must make a showing of good cause for a protective order to issue, "which

justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense."  FRCP 26 (c).

"The burden is upon the party seeking the order to 'show good cause' by demonstrating harm

or prejudice that will result from the discovery."  *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th

Cir. 2004).  Before the protective order may issue, the court must find that substantial and

particularized harm will result from disclosure of the information.  *Id*. at 1063-1064.

**B.   Plaintiffs Fail to Show Good Cause for a Protective Order, As They Have Put in Issue the Very Facts They Seek to Bar Defendants From Discovering**

Plaintiffs seek to prevent defendants from discovering a myriad of information that bears

upon the immigration status of themselves and their witnesses.  The basis for such a request is an

alleged "chilling effect," as well as plaintiffs' claim that disclosing such information would inhibit

them from pursuing their rights.  No specific information of such effects was included in the motion[2]

---

[1]      See Exhibit "A" to the Declaration of Anne L. Keck in Support of County Defendants' Opposition to Plaintiffs' Motion for Protective Order Regarding Discovery of Immigration Status and for Bifurcation of Damages Issues, filed herewith.

[2]      The statements proffered in the Declaration of Richard Coshnear submitted with  Plaintiffs' motion are entirely disingenuous: Mr. Coshnear states that some witnesses will not come forward in the case absent a protective order because he would tell them not to do so: "As an immigration lawyer, I  would advise them not to participate as witnesses in this lawsuit unless a protective order is in place barring discovery of information that could directly or indirectly reveal their immigration status." [Coshnear Declaration, 1:25-27.] Mr. Coshnear's self-serving statements are thus insufficient to satisfy the good cause requirement under Rule 26(c).

1    – indeed, plaintiffs are presently pursuing this action in the absence of a protective order.  Failure to

2    provide specific information demonstrating that plaintiffs themselves will be unduly prejudiced

3    absent a protective order, in and of itself, warrants denial of plaintiffs' motion: "broad allegations of

4    harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c)

5    test." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (internal quotes

6    omitted.)

7            Plaintiffs not only fail to demonstrate sufficient facts in support of their request for a

8    protective order, but the case law they rely upon fails to support their claims. Specifically, the three

9    cases plaintiffs cite in support of their motion were decided solely in the employment context, and

10   expressly found that immigration status was not relevant to the plaintiffs' claims. (See *Rivera v.*

11   *NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004); *Topo v. Dhir*, 210 F.R.D. 76 (S.D. N.Y. 2002); and

12   *EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 404 (E.D. N.Y. 2004).)

13           In *Rivera,* plaintiff former employees alleged claims against their employer for disparate

14   impact discrimination based on national origin (under Title VII, 42 U.S.C. Section 2000, et seq., and

15   applicable state laws) based on the employer's English language testing policy.  *Rivera*, 364 F.3d at

16   1061.  Plaintiffs sought a protective order to prohibit defendant employer from inquiring into their

17   immigration status and eligibility for employment.  Plaintiffs reasoned in their motion that defendant

18   already verified each plaintiff for employment at the time of hiring and, therefore, discovery related

19   to immigration status was not relevant to their claims.  *Id*. at 1061. The Ninth Circuit held that the

20   trial court properly granted the order because allowing defendant to obtain such information through

21   discovery would unnecessarily chill legitimate claims of undocumented workers under Title VII.  *Id*.

22   at 1064.  More importantly for our purposes, the Court found that immigration status was not relevant

23   to whether defendant employer had committed national origin discrimination under Title VII, and

24   public policy weighed heavily against permitting an employer from alleging immigration violations

25   as a defense to paying damages. *Id*. at 1069-1072.

26

27

28

Likewise in *Topo*, an employee obtained a protective order to prohibit her employer from inquiring about her immigration status in a case alleging violations of the Alien Tort Claims Act, involuntary servitude, false imprisonment and violations of minimum wage laws. The Court expressly held that the defendants could not inquire into the former employee's immigration status because it was a collateral issue and not relevant to any material aspect of the claim. *Topo*, 210 F.R.D. at 78. Significantly, the Court also stated, "[w]ere plaintiff's immigration status relevant to prove a material aspect of the defense, a protective order would not be appropriate." *Id.*

Finally, in *EEOC v. First Wireless Group, Inc.*, another employment discrimination case, the Court found that if it did not "suppress discovery into the Charging Parties' immigration status, it would significantly discourage employees from bringing actions against their employers who engage in discriminatory employment practices." *EEOC v. First Wireless Group, Inc.*, 225 F.R.D. 406. The Court also stated that it could not allow defendant to ignore immigration laws when hiring a staff and then try to enforce those same laws when employees complain. *Id.* at 407.

These cases all support a sound public policy prohibiting employers from hiding behind their employees' immigration status to defend against unlawful employment practices, particularly when those employers failed to confirm the employees' immigration status upon hiring. County Defendants can find no case law that supports plaintiffs' application of this body of employment law to the instant case, in which plaintiffs have raised their immigration status, information they provided to defendants regarding their immigration status, and application of immigration law in their complaint, and which serves as the bases for their claims for relief. As plaintiffs have presented neither facts nor law in support of their request to bar defendants from discovering facts related to immigration status of plaintiffs and their witnesses, County Defendants request that their proposed protective order be denied.

**C.    A Protective Order Barring Discovery of Immigration Status Would Materially Prejudice Defendants**

Despite the substantial allegations plaintiffs make in their complaint regarding facts

surrounding immigration issues and application of immigration law, plaintiffs argue that barring defendants from discovering any information that would have a bearing on plaintiffs' and other witnesses' immigration status would not prejudice defendants, except as to the issue of damages. Plaintiffs' contention is difficult to reconcile with the allegations contained in their complaint, which challenge defendants' law enforcement actions with related to plaintiffs' immigration status. For example, plaintiffs allege that defendants made a warrantless arrest of Plaintiff Sonata-Vega, "without probable cause to believe that Christyan [Sonata-Vega] was a noncitizen without authorization to be in the United States…" [Complaint, 12:12-16.] This allegation raises plaintiff Sonata-Vega's immigration status, and facts that could be used to determine such status.

By seeking to bar defendants from discovering facts related to plaintiffs and their witnesses' immigration status, defendants will be unable to adequately defend themselves against both the factual allegations (such as the one quoted above) as well as the legal claims relating to unreasonable search and seizure, due process violations, and false arrest/imprisonment, among others. Indeed, defendants would be materially prejudiced in this case if they were prohibited from exploring all of the bases of plaintiffs' claims regarding their immigration status, immigration holds, and related proceedings. The interests of justice would be disserved by preventing discovery of the truth of events that occurred, and could lead to surprise at trial – which the liberal federal discovery rules were designed to prevent. For these reasons, the material prejudice to defendants that would result from plaintiffs' requested protective order outweighs their proffered bases for the request, warranting denial of the motion.

**D.    Bifurcation of Liability And Damages Will Not Avoid Prejudice To Defendants Because Immigration Issues Permeate Both Liability And Damage Issues In This Case**

Plaintiffs' failure to demonstrate good cause for their requested protective order makes their request for a bifurcation of liability and damages issue moot. Plaintiffs do not seek to argue that a bifurcation of damages will serve the interests of Federal Rule of Civil Procedure 42(b) (such as expediting or economizing proceedings), but request it only as a means to justify their motion for a protective order.

1    Federal Rule of Civil Procedure 43(b) allows the Court to bifurcate issues "for convenience,

2    to avoid prejudice, or to expedite and economize,…." FRCP 43(b).  Any bifurcation order must be

3    intended to achieve the purposes of the rule.  See *Hangarter v. Paul Revere Life Ins. Co.*, 236 F.

4    Supp. 2d 1069, 1095 (N.D. Cal. 2002), aff'd in part, rev'd in part on other grounds, 373 F.3d 998 (9th

5    Cir. 2004).

6    Bifurcating the damages issues from liability issues in this case will not serve the interests of

7    Rule 43(b), as the issue of immigration status permeates the entire case: damages and liability are

8    inextricably linked to the issue of immigration status.  Requiring the parties to separate the damages

9    issue out of the first phase of the case will necessarily lead to additional discovery (e.g., defendants

10   will have to depose plaintiffs twice) and will lengthen this proceeding.  These expected results are

11   contrary to the purposes and intent of Rule 43(b), and thus warrant denial of plaintiffs' motion to

12   bifurcate.

## IV.    CONCLUSION

Based on the foregoing, the County Defendants respectfully request that this Court deny

plaintiffs' motion for a protective order barring all discovery related to immigration information,

deny plaintiffs' motion to bifurcate liability and damages, and for such other and further relief as this

Court deems just and proper.

Dated:  January 7, 2009                              Respectfully submitted,
                                                     Stephen M. Woodside, County Counsel

                                                     By _____/s/ Anne L. Keck_____
                                                        Anne L. Keck, Deputy County Counsel
                                                        Sonoma County

                                                     BERTRAND, FOX & ELLIOT

                                                     By _____/s/ Richard W. Osman_____
                                                        Thomas F. Bertrand
                                                        Richard W. Osman

                                                     Attorneys for Defendants COUNTY OF SONOMA,
                                                     SHERIFF-CORONER WILLIAM COGBILL, and
                                                     DEPUTY SHERIFF MORRIS ERIC SALKIN