1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2  JOANN M. SWANSON (CSBN 88143)
   Chief, Civil Division
3  ELLEN M. FITZGERALD (NY 2408805)
   Assistant United States Attorney
4  450 Golden Gate Avenue, Box 36055
   San Francisco, CA 94102-3495
5  Tel: (415) 436-7314
   Fax: (415) 436-6748
6  E-mail: ellen.fitzgerald@usdoj.gov

7  Attorneys for the United States and
   Defendants Wollman, Huelga and Merendino
8
   MICHAEL F. HERTZ
9  Acting Assistant Attorney General, Civil Division
   DAVID J. KLINE
10 Director
   JOSHUA E.T. BRAUNSTEIN
11 Assistant Director
   COLIN A. KISOR (DC 497145)
12 Trial Attorney
   Office of Immigration Litigation
13 Civil Division, Justice Department
   P.O. Box 878, Ben Franklin Station
14 Washington, D.C. 20044
   Tel: (202) 532-4331
15 Fax: (202) 305-7000
   E-mail: colin.kisor@usdoj.gov
16
   Attorneys for the United States
17

18              UNITED STATES DISTRICT COURT

19            NORTHERN DISTRICT OF CALIFORNIA

20 COMMITTEE FOR IMMIGRANT RIGHTS          )
   OF SONOMA COUNTY, FRANCISCO             )   Case No. CV 08-4220 PJH
21 SANCHEZ-LOPEZ, CHRISTYAN SONATO-        )
   VEGA, and SAMUEL MEDEL MOYADO           )   FEDERAL DEFENDANTS'
22                                         )   NOTICE OF MOTION TO
                                           )   DISMISS; MEMORANDUM OF
23              Plaintiffs,                 )   POINTS AND AUTHORITIES
                                           )   IN SUPPORT THEREOF
24      v.                                 )
                                           )
25 COUNTY OF SONOMA; SHERIFF-             )
   CORONER BILL COGBILL and DEPUTY        )   Date:  April 22, 2009
26 SHERIFF MORRIS ERIC SALKIN,            )   Time:  9:00 am
   individually and in their official capacities; U.S. )   Place: Courtroom 3--17th Floor
27 DEPARTMENT OF HOMELAND SECURITY        )   Judge: The Hon. Phyllis J. Hamilton

28

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT
THEREOF
Case No. C 08-4220 PJH

1  BUREAU OF IMMIGRATION AND                    )
   CUSTOMS ENFORCEMENT; SPECIAL-                 )
2  AGENT-IN-CHARGE MARK WOLLMAN,                 )
   SPECIAL AGENT MARIO HUELGA and                )
3  SPECIAL AGENT CHRIS MERENDINO,                )
   individually and in their official capacities; )
4  DOES 1-50; and ROES 1-50, inclusive,          )
                                                  )
5                   Defendants.                   )
                                                  )
6  _____ )

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT
THEREOF
Case No. C 08-4220 PJH

TABLE OF CONTENTS

NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . 2

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    UNDER 8 U.S.C. § 1252(g), THIS COURT LACKS JURISDICTION TO
            ADJUDICATE PLAINTIFFS SANCHEZ-LOPEZ, SONATO-VEGA, AND
            MEDEL MOYADO'S *BIVENS* CLAIMS BECAUSE THEY ARISE FROM
            ICE'S DECISION TO INITIATE REMOVAL PROCEEDINGS AGAINST
            THEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    THIS COURT LACK JURISDICTION TO HEAR PLAINTIFFS'
            CONSTITUTIONAL CLAIMS AGAINST DEFENDANT ICE AND
            THE INDIVIDUAL FEDERAL DEFENDANTS IN THEIR OFFICIAL
            CAPACITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      D.    THE COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY
            LACKS STANDING TO RAISE THE CLAIMS
            ASSERTED IN THE COMPLAINT, AND ALL OF THE COMMITTEE'S
            CLAIMS MUST BE DISMISSED FOR LACK OF JURISDICTION . . . . . . . 8

      E.    ALL PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR
            INJUNCTIVE RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      F.    ICE HAS THE BROAD LEGAL AUTHORITY TO DETAIN
            ILLEGAL ALIENS AND ISSUE DETAINERS FOR ILLEGAL
            ALIENS TO OTHER LAW ENFORCEMENT AGENCIES . . . . . . . . . . . . 12

      G.    ANY CLAIM THAT THE INS DID NOT COMPLY WITH THE NOTICE
            AND COMMENT PROCEDURE OF THE APA IS BARRED BY THE
            SIX-YEAR STATUTE OF LIMITATIONS. . . . . . . . . . . . . . . . . . . . . . . . 17

      H.    THE INS PROPERLY PROMULGATED 8 C.F.R. § 287.7 IN
            ACCORDANCE WITH THE APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            1.    Plaintiffs' Complaint fails to explain any putative defect in
                  the promulgation of 8 C.F.R. § 287.7; the INS promulgated
                  8 C.F.R. § 287.7 after notice and comment . . . . . . . . . . . . . . . . . . 18

            2.    The DHS 2003 Final Rule which republished 8 C.F.R. § 287.7
                  did not require notice and comment because the Rule related to
                  agency organization and management . . . . . . . . . . . . . . . . . . . . . . 20

I.    DEFENDANTS WOLMAN, HUELGA AND MERENDINO ARE ENTITLED
      TO QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

J.    THE COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST
      THE INDIVIDUAL FEDERAL DEFENDANTS FOR ALLEGED
      VIOLATIONS OF 42 U.S.C. § 1983 AND 42 U.S.C. § 1985(3) . . . . . . . . . . 23

IV.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Airas v. U.S. Immigration and Customs Enforcement, et al.,*
No. 07-1959, 2008 U.S. Dist. LEXIS 34072 (D. Minn. Apr. 23, 2008) . . . . . . . . . . . . 6

*Allen v. Wright,*
468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Alvidres-Reyes v. Reno,*
180 F.3d 199 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*American Mining Congress, et al. v. United States EPA,*
965 F.2d 759 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Anderson v. Creighton,*
483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ashoff v. City of Ukiah,*
130 F.3d 409 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Balistreri v. Pacifica Police Department,*
901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*Barnes v. Babbit,*
329 F. Supp. 2d 1141 (D. Ariz. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Barren v. Harrington,*
152 F.3d 1193 (9th Cir. 1998), *cert. denied,* 525 U.S. 1154 (1999) . . . . . . . . . . . . . . 22

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bibeau v. Pacific Northwest Research Foundation,*
188 F.3d 1105 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Bray v. Alexandria Womens' Health Clinic,*
506 U.S. 263 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Brotherhood of Railroad Trainmen v. Baltimore and Ohio Railroad Co., et al.,*
331 U.S. 519 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Butler v. Elle,*
281 F.3d 1014 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Caldeira v. County of Kauai,*
866 F.2d 1175 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Chevron U.S.A. v. NRDC,*
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chrysler Corp. v. Brown,*
    441 U.S. 281 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Closeout, Inc. v. Department of Homeland Security,*
    513 F.3d 940 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Epstein v. Arsers,*
    83 F.3d 1136 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fair Housing of Marin v. Combs,*
    285 F.3d 899 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Federal Deposit Insurance Corp. v. Meyer,*
    510 U.S. 471 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Federal Housing Administration v. Burr,*
    309 U.S. 242 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Flores v. Morgan Hill Unified Sch. District,*
    324 F.3d 1130 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Fogel v. Collins,*
    531 F.3d 824 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Foster v. Townsley,*
    243 F.3d 210 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Friends of the Earth, Inc. v. Laidlaw Environmental Servc.,*
    528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gritchen v. Collier,*
    254 F.3d 807 (9th Cir. 2201) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Gros Ventre Tribe v. United States,*
    469 F.3d 801 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Grossman v. City of Portland,*
    33 F.3d 1200 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Harris v. Gonzalez,*
    2005 U.S. Dist. LEXIS 41525 (N. D. Cal. Aug. 2, 2005) . . . . . . . . . . . . . . . . . . 12

*Harris v. Roderick*,
    126 F.3d 1189 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hodge v. Dalton*,
    107 F.3d 705 (9th Cir. 1988), *cert. denied*, 522 U.S. 815 (1997) . . . . . . . . . . . . . . 8

*Humphries v. Various Federal USINS Employees*,
    164 F.3d 936 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Ivey v. Board of Regents*,
    673 F.2d 266 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lake Mohave Boat Owners Association v. National Park Service*,
    78 F.3d 1360 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Loeffler v. Frank*,
    486 U.S. 549 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 9

*Massachusetts v. Mellon*,
    262 U.S. 447 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mancha v. ICE*,
    2007 WL 4287766 (N.D. Ga. December 5, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Moreno v. Baca*,
    431 F.3d 633 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Morse v. North Coast Opportunities, Inc.*,
    118 F.3d 1338 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*National Cable & Telecommunications Association, et al. v. Brand X Internet Services et al.*,
    545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Northeastern Fla. Chapter, Associated General Contractors of America v. Jacksonville*,
    508 U.S. 656 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Olsen v. Idaho State Board of Medicine*,
    363 F.3d 916 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Osolinski v. Kane*,
    92 F.3d 934 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Reno v. American-Arab Anti-Discrimination Committee,*
        525 U.S. 471 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Rivera v. United States,*
        924 F.2d 948 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Robertson v. Dean Witter Reynolds, Inc.,*
        749 F.2d 530 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Romero v. Kitsap County,*
        931 F.2d 624 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Saucier v. Katz,*
        533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Scheuer v. Rhodes,*
        416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Secretary of Labor v. Health Review Commission, et al.,*
        980 F.2d 1273 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sissoko v. Rocha,*
        509 F.3d 947 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stack v. Lobo,*
        903 F. Supp. 1361 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thomas-Lezear v. Federal Bureau of Investigation,*
        851 F.2d 1202 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Mitchell,*
        463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Verifone Sec. Litigation,*
        11 F.3d 865 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Warth v. Seldin,*
        422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*White v. Lee,*
        227 F.3d 1214 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## FEDERAL STATUTES, REGULATIONS, RULES

5 U.S.C. § 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

5 U.S.C. § 553(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5 U.S.C. § 553(b)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5 U.S.C. § 553(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5 U.S.C. § 706(2)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8 U.S.C. § 1101 *et. seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. § 1103(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

8 U.S.C. § 1103(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8 U.S.C. § 1226(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23

8 U.S.C. § 1252(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, 7

8 U.S.C. § 1357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 23

8 U.S.C. § 1357(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8 U.S.C. § 1357(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8 U.S.C. § 1357(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1985(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I, 23, 24

8 C.F.R. § 287.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

8 C.F.R. § 287.7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

8 C.F.R. § 287.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

52 Fed. Reg. 16,370 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

53 Fed. Reg. 9,281 (Mar. 22, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

59 Fed. Reg. 42,406 (Aug 17, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

62 Fed. Reg. 44 (Jan. 3, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

62 Fed. Reg. 10312 (Mar. 6, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

68 Fed. Reg. 35,273 (Jun. 13, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Anti Drug Abuse Act, 100 Stat. 3207 (Oct. 27, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Homeland Security Act, Public Law 107-296, Section 1512, 116 Stat. 2310 (Nov. 25, 2002) . 20

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

1

## STATE STATUTES

California Penal Code § 647(f),Cal. Penal Code § 647(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION

2

PLEASE TAKE NOTICE that on April 22, 2009, at 9:00 am in Courtroom 3, 17th Floor,

3

450 Golden Gate Avenue, San Francisco, California, Defendants, the U.S. Department of

4

Homeland Security, United States Immigration and Customs Enforcement ("ICE"), Special-

5

Agent-in-Charge Mark Wollman, Special Agent Mario Huelga and Special Agent Chris

6

Merendino (collectively, "Federal Defendants") will move this Court for an order dismissing the

7

Complaint for lack of jurisdiction and failure to state a claim upon which relief may be granted

8

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is

9

based on this notice, the following memorandum of points and authorities, the pleadings and

10

papers on file in this action, the reply, and such oral argument as the Court may permit.

11

## ISSUES TO BE DECIDED

12

13

1. Does this Court lack jurisdiction to hear the *Bivens* claims made by Plaintiffs Sanchez-Lopez, Sonato-Vega and Medel Moyado because they arose as part of the commencement of removal proceedings against them?

14

15

2. Does this Court lack jurisdiction to hear the *Bivens* claims against ICE?

16

3. Should this Court dismiss the Committee for Immigrant Rights of Sonoma County as a plaintiff in this case because it lacks standing?

17

18

4. Do all Plaintiffs lack standing to assert claims for injunctive relief?

19

5. Does ICE have the authority to issue detainers for illegal aliens who are in the custody of State or local law enforcement agencies and have not been charged with controlled substance violations?

20

21

6. Is Plaintiffs' claim that the INS promulgated 8 C.F.R. § 287.7 in violation of the APA barred by the statute of limitations?

22

23

7. Did the INS properly promulgate 8 C.F.R. § 287.7 in accordance with the notice and comment provisions of the APA?

24

8. Are Defendants Wolman, Huelga and Merendino entitled to dismissal of all claims against them in their personal capacities based on qualified immunity?

25

26

9. Should this Court dismiss plaintiffs' claims against Defendants Wolman, Huelga and Merendino for alleged violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) for failure to state a claim?

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3       The Federal Defendants move to dismiss Plaintiffs' Complaint without leave to amend.

4   The Court should grant this motion for the following reasons: First, this Court lacks jurisdiction

5   to hear a *Bivens*[1] claim by any alien whom ICE detained as part of the decision to initiate

6   removal proceedings.  Second, this Court should dismiss the *Bivens* claims against Defendant

7   U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement

8   because the United States has not waived its sovereign immunity for *Bivens* claims, and *Bivens*

9   does not provide a claim for relief against a federal agency.  Third, this Court should dismiss

10  Plaintiff Committee for Immigrant Rights of Sonoma County ("Committee") because the

11  Committee lacks standing to seek relief in this Court.  Fourth, all Plaintiffs lack standing to

12  assert claims for injunctive relief.  Fifth, the Secretary of Homeland Security ("the Secretary")

13  has the broad statutory authority to promulgate regulations relating to his obligation to enforce

14  the immigration laws.  Finally, the former Immigration and Naturalization Service properly

15  promulgated the regulation at issue in this case, 8 C.F.R. § 287.7, pursuant to that authority.

16
## II.  BACKGROUND
17

18      At its core, this is a case of first impression presenting the question of whether the

19  Immigration and Nationality Act ("INA"), 8 U.S.C § 1101 *et. seq.*, broadly authorizes the

20  Secretary of Homeland Security to issue detainers for any illegal aliens in the custody of State

21  or local law enforcement agencies, or only narrowly permits the Secretary to issue detainers for

22  those illegal aliens who have committed controlled substance violations.  Plaintiffs, Francisco

23  Sanchez-Lopez, Christian Sonato-Vega, and Samuel Medel Moyado, are illegal aliens who

24  were detained in the Sonoma County Jail (but not for controlled substance violations) prior to

25  being transferred to ICE custody pursuant to detainers issued against them by ICE agents under

26

27      [1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388
    (1971).

28

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT
THEREOF
Case No. C 08-4220 PJH                                            2

8 C.F.R. § 287.7.[2]

According to the Complaint,[3] on September 28, 2006, Plaintiff Sanchez-Lopez was a passenger in a car that was stopped by a Sonoma County Sheriff's Deputy for a traffic violation. (Complaint at ¶ 41). He was questioned on the scene by an ICE officer who was present with the Sheriff's Deputy, and was detained as an illegal alien by the Sonoma County Sheriff at ICE's request and held until he was transferred to ICE custody. (Complaint at ¶ 44). Plaintiff Sonato-Vega was taken into custody by a Sonoma County Sheriff's Deputy and an ICE Agent on August 2, 2007, for being an illegal alien and held at the Sonoma County Jail until he was transferred to an ICE facility. (Complaint at ¶¶ 47-48). Plaintiff Medel Moyado was arrested on August 8, 2007, for violating California Penal Code § 647(f),[4] but he was not charged. At a state court hearing on August 10, a California judge informed Medel Moyado that he was "free to leave" but he was subsequently held pursuant to an 8 C.F.R. § 287.7 immigration detainer, until he was transferred to ICE custody on August 14. (Complaint at ¶¶ 50-51). Plaintiffs allege, *inter alia*, that in each of these cases ICE lacked the power to issue the detainer authorized by 8 C.F.R. § 287.7 (requiring the County to hold them in custody pending transfer to ICE) because Plaintiffs were not being held for controlled substances violations. Plaintiffs further allege that 8 C.F.R. § 287.7 itself is void because it was not promulgated in accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. § 553.

---

[2] An immigration judge terminated Sanchez-Lopez's removal proceedings and DHS has appealed the termination to the Board of Immigration Appeals. Plaintiff Sanchez-Lopez has no legal status to be in the United States. Plaintiff Sonato-Vega agreed to a voluntary departure in lieu of removal and was returned to Mexico on April 11, 2008; if he is in the United States now, he is illegally present. Plaintiff Moyado is currently in removal proceedings, but he has applied to adjust his status to that of a legal permanent resident based on his marriage to a U.S. citizen and his removal hearing was continued to January 26, 2009. (*See* Decl. of Daniel Bible, Appendix A). Upon information and belief, Mr. Medel-Moyado has now had his status lawfully adjusted.

[3] Because this is a motion to dismiss filed at the pleadings stage, the facts set forth herein are as alleged in the Complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

[4] Cal. Penal Code § 647(f) generally prohibits being drunk and disorderly in public.

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT THEREOF
Case No. C 08-4220 PJH                              3

1    Also, according to the Complaint, Plaintiff Committee is a "community-based"

2    organization "comprised of Sonoma County residents and organizations" and was founded in

3    2006. (Complaint at ¶¶ 6 and 9). The Committee's mission has been "to oppose anti-

4    immigrant legislation," and in particular to "reform proposals that would have raised penalties

5    for illegal immigration and classified undocumented immigrants and those who assist them as

6    felons." (Complaint at ¶ 37). The Committee has held a series of "house meetings" and "public

7    forums" to "distribute information to the Latino Community" relating to individual aliens

8    putative right to not cooperate with law enforcement. (Complaint at ¶ 38). Although Plaintiff

9    Francisco Sanchez-Lopez is a member of the Committee, Plaintiff Christian Sonato-Vega is not,

10   and Plaintiff Samuel Medel Moyado only joined the Committee sometime after his release from

11   immigration detention in August, 2007.  Plaintiffs assert that the Committee (as a whole) is

12   being harmed because its members have witnessed, and been subjected to, Defendants' alleged

13   "unlawful activity."  Plaintiffs allege that the unidentified Committee members reside in

14   Sonoma County where Defendants "regularly patrol," and that  Defendants' practices

15   "undermine the Committee's organizational mission" and "divert the Committee's resources."

16   (Complaint at ¶ 40).  Plaintiffs also contend, in a separate motion for a protective order, that

17   they should not have to disclose identity information of Committee members and witnesses.

18

19   **III. ARGUMENT**

20   **A. LEGAL STANDARDS**

21        Under Federal Rule of Civil Procedure 12(b)(1), a court should dismiss a complaint

22   where a plaintiff has failed to establish the court's subject matter jurisdiction. *See Ashoff v. City*

23   *of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997).  In determining whether it has subject matter

24   jurisdiction, a court is not limited to the allegations of the complaint. *See White v. Lee*, 227

25   F.3d 1214, 1242 (9th Cir. 2001).  Rather, the court is permitted to look beyond the complaint to

26   extrinsic evidence, and need not assume the truth of the complaint's allegations. *Id.*  Whether a

27   party has standing in a case is a jurisdictional question. *See Lujan v. Defenders of Wildlife*, 504

28

1   U.S. 555, 560 (1992).

2   A court should grant a motion to dismiss pursuant to Federal Rule of Civil Procedure

3   12(b)(6) where there is either a "lack of a cognizable legal theory" or "the absence of sufficient

4   facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F. 2d

5   696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.* 749 F.2d 530, 533-34

6   (9th Cir. 1984). That standard "requires more than labels and conclusions, and a formulaic

7   recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.

8   S. 544, 127 S. Ct. 1955, 1964-65 (2007). While the material factual allegations are construed in

9   the non-movant's favor, allegations that are conclusory, vague or speculative are insufficient to

10  survive a motion to dismiss. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982);

11  *Stack v. Lobo*, 903 F. Supp. 1361, 1369 (N.D. Cal. 1995).

12

13  **B.    UNDER 8 U.S.C. § 1252(g), THIS COURT LACKS JURISDICTION TO
           ADJUDICATE PLAINTIFFS SANCHEZ-LOPEZ, SONATO-VEGA, AND
14         MEDEL MOYADO'S *BIVENS* CLAIMS BECAUSE THEY ARISE FROM ICE'S
           DECISION TO INITIATE REMOVAL PROCEEDINGS AGAINST THEM**

15        Although its not entirely clear what type of harm each named plaintiff has suffered

16  because of any of the individuals Federal Defendants' conduct, this Court nonetheless lacks

17  jurisdiction over the three named alien Plaintiffs' *Bivens* claims because all of them arise from

18  ICE's decision to initiate removal proceedings against them. *See* 8 U.S.C. § 1252(g). That

19  statute states, in pertinent part:

20      [E]xcept as provided in this section and notwithstanding any other provision of
        law (statutory or nonstatutory), including section 2241 of Title 28, United States
21      Code, or any other habeas corpus provision, and sections 1361 and 1651 of such
        title, no court shall have jurisdiction to hear any cause or claim by or on behalf of
22      any alien arising from the decision or action by the Attorney General to
        commence proceedings, adjudicate cases, or execute removal orders against any
23      alien under this chapter.

24  8 U.S.C. § 1252(g); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471,

25  477-78 (1999). In fact, as the Supreme Court observed in *American-Arab*, "many provisions of

26  IIRIRA (the statute that enacted § 1252(g)) are aimed at protecting the Executive's discretion

27  from the courts – indeed, that can fairly be said to be the theme of the legislation." 525 U.S. at

28

486. According to the Supreme Court, "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 477-8 n. 9. The Fifth Circuit Court of Appeals has also stated:

> Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders . . . [further], § 1252(g) protects from judicial intervention the Attorney General's exercise of her executive discretion whether to prosecute and adjudicate removal cases by depriving the courts of jurisdiction to hear such litigation or *any cause arising therefrom.*

*Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999) (emphasis added). The Ninth Circuit Court of Appeals has also stated that where an alien's detention arises from an agent's decision to commence expedited removal proceedings, 8 U.S.C. § 1252(g) applies to deprive the Court of jurisdiction. *See Sissoko v. Rocha*, 509 F.3d 947, 949, (9th Cir. 2004) (stating "we are not persuaded . . . that 8 U.S.C. § 1252(g) must nevertheless be read to allow [plaintiffs] a *Bivens* damages remedy for false arrest"). Although the Ninth Circuit in *Sissoko* acknowledged its holding addressed the "limited context" of those plaintiffs' *Bivens* claims, it cited with approval the general rule, adopted by other circuits, that where Plaintiffs have other remedies available, 8 U.S.C. § 1252(g) should be read to preclude *Bivens* actions. *See id.* Specifically, "aliens wishing to raise [constitutional] challenges in the future should do so either in a petition for review or for habeas corpus." *Id.* (quoting *Humphries v. Various Federal USINS Employees,* 164 F.3d 936, 945 (5th Cir. 1999)). In this case as well, Plaintiffs who wished to challenge the constitutionality of their detention or removal should have done so through those legal mechanisms, because § 1252(g) prevents this Court from exercising jurisdiction over their *Bivens* claims.

Further, the United States District Court for the District of Minnesota has dismissed *Bivens* claims under § 1252(g) in the case of aliens who were removed because those plaintiffs' claims arose "from conduct that was a direct result of the DHS Secretary's decision to commence removal proceedings against them." *See Airas v. U.S. Immigration and Customs*

1   *Enforcement, et al.,* No. 07-1959, 2008 U.S. Dist. Lexis 34072 at *22-23 (D. Minn. Apr. 23,

2   2008).   Here, too, the named Plaintiffs have instituted *Bivens* lawsuits against the agents who

3   issued detainers for them, which was the ICE agents' first decision and action in the

4   commencement of removal proceedings against them.  Thus, in the cases of Plaintiffs Sanchez-

5   Lopez, Sonato-Vega and Medel Moyado, the issuance of a detainer unquestionably resulted

6   from a prosecutorial decision by the agency to commence removal proceedings.  Plaintiffs'

7   *Bivens* claims accordingly arise from the issuance of those detainers. 8 U.S.C. § 1252(g).  The

8   Fifth Circuit Court of Appeals has stated that "[c]laims that are clearly included within the

9   definition of 'arising from' . . . [are] those claims connected directly and immediately with a

10  'decision or action by the Attorney General to commence proceedings, adjudicate cases, or

11  execute removal orders." *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001) (quoting

12  *Humphries*, 164 F.3d at 943) (holding that under 8 U.S.C. § 1252(g) plaintiff's claims of

13  excessive force, denial of due process, denial of equal protection, and retaliation were all

14  connected to the execution of his deportation order).  This Court should find that the *Bivens*

15  Defendants' issuance of I-247 detainers in the cases of Plaintiffs Sanchez-Lopez, Sonato-Vega

16  and Medel Moyado constitute the type of prosecutorial actions related to the decision to

17  commence of removal proceedings that § 1252(g)  protects from judicial intervention. *See*

18  *Alvidres-Reyes v. Reno*, 180 F.3d at 201.  Accordingly, this Court should dismiss the *Bivens*

19  claims of Plaintiffs Sanchez-Lopez, Sonato-Vega and Medel Moyado.

20  **C.   THIS COURT LACK JURISDICTION TO HEAR PLAINTIFFS'**
21       **CONSTITUTIONAL CLAIMS AGAINST DEFENDANT ICE AND**
         **THE INDIVIDUAL FEDERAL DEFENDANTS IN THEIR OFFICIAL**
22       **CAPACITIES**

23       Absent a waiver, sovereign immunity shields the Federal Government and its agencies

24  from civil actions. *See Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Federal Housing*

25  *Administration v. Burr,* 309 U.S. 242, 244 (1940).  Sovereign immunity is jurisdictional in

26  nature. *See United States v. Mitchell,* 463 U.S. 206, 212 (1983) ("It is axiomatic that the United

27  States may not be sued without its consent and that the existence of consent is a prerequisite of

28

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT
THEREOF
Case No. C 08-4220 PJH                                    7

1   jurisdiction"). The United States has neither waived its immunity nor consented to suit for

2   damages based on constitutional claims, and thus all of Plaintiffs claims against ICE must be

3   dismissed. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991); *Thomas-Lezear v.*

4   *Federal Bureau of Investigation*, 851 F.2d 1202, 1207 (9th Cir. 1988). Because suits against

5   individual federal agents in their official capacities are essentially suits against the United

6   States, and thus subject to sovereign immunity, all of Plaintiffs' constitutional claims against

7   defendants Wolman, Huelga and Merendino in their official capacities must also be dismissed.

8   *See Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1988), *cert. denied*, 522 U.S. 815 (1997)

9   (doctrine of sovereign immunity extends to federal employees in their official capacities).

10       Even assuming, *arguendo*, that ICE had waived it sovereign immunity, Plaintiffs' claims

11   against ICE for alleged constitutional violations based upon *Bivens v. Six Unknown Named*

12   *Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), must still be dismissed because

13   Plaintiffs do not have a *Bivens*-type implied remedy for damages against ICE. *See Federal*

14   *Deposit Insurance Corp. v. Meyer*, 510 U.S. 471 (1994). The Supreme Court expressly rejected

15   an extension of the category of defendants against whom *Bivens*-type actions may be brought;

16   indeed only federal *agents*, not federal *agencies*, may be sued for damages in a *Bivens* action.

17   *Federal Deposit Insurance Corp.*, 510 U.S. 471, 484-486 (no *Bivens* cause of action for

18   damages against federal agency). This Court therefore lacks subject matter jurisdiction over

19   Plaintiffs' *Bivens* claims against ICE, and all of those claims must be dismissed.

20   **D.    THE COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY**
         **LACKS STANDING TO RAISE THE CLAIMS ASSERTED**
21       **IN THE COMPLAINT, AND ALL OF THE COMMITTEE'S CLAIMS**
         **MUST BE DISMISSED FOR LACK OF JURISDICTION**
22

23       Plaintiff Committee lacks both representational and organizational standing in this case.

24   Article III, Section 2 of the Constitution limits the subject matter jurisdiction of this Court to

25   certain "cases" and "controversies." The doctrine of standing "is an essential and unchanging

26   part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504

27   U.S. 555, 560 (1992). At an "irreducible constitutional minimum," plaintiffs who bring suit in

28

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT
THEREOF
Case No. C 08-4220 PJH                                 8

federal court must demonstrate the following three elements to establish their standing to seek

the relief sought in their complaint:

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal citations omitted). The party invoking the Court's

jurisdiction bears the burden of establishing all three elements. *See, e.g., Northeastern Fla.*

*Chapter, Associated General Contractors of Am. v. Jacksonville*, 508 U.S. 656, 663 (1993).

Where, as here, the Committee bases its claim on injury to third parties on whose behalf

it claims to be acting, its burden on the issue of standing is "substantially more difficult." *Allen*

*v. Wright*, 468 U.S. 737, 758 (1984); *see also Lujan*, 504 U.S. at 562; *Warth v. Seldin*, 422 U.S.

490, 505 (1975). Thus, organizations suing in a representational capacity face special scrutiny.

*See Warth*, 422 U.S. at 500.

It is axiomatic that an organization such as the Committee has standing to sue on behalf

of its members ("representational standing") only where (1) "its members would otherwise have

standing to sue in their own right," (2) "the interests at stake are germane to the organization's

purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation

of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental*

*Serv.*, 528 U.S. 167, 180-81 (2000); *see also Warth*, 422 U.S. at 511.

According to the Complaint, the Committee is an organization which claims to have

among its members unidentified individuals who "have been and/or are imminently susceptible

to being injured" by Defendants' alleged practices or who are "especially likely to be subjected

to" Defendants' practices -- as well as "their family members." (Complaint ¶¶ 6, 37, 40).

Plaintiff, Francisco Sanchez-Lopez and Plaintiff, Samuel Medel Moyado, are allegedly

members of the Committee. (*Id.* ¶¶ 45, 53.) By alleging that at least one of its individual

members have suffered an injury-in-fact, the Committee has satisfied the first requirement of

1   standing.

2        The Committee, however, fails to establish its standing to sue because representational

3   standing does not exist where "claims are not common to the entire membership, nor shared by

4   all in equal degree . . . and both the fact and the extent of the injury would require

5   individualized proof." *Lake Mohave Boat Owners Association v. National Park Service*, 78

6   F.3d 1360, 1367 (9th Cir. 1996).  Individualized proof is required here to determine, *e.g.*,

7   whether any of the challenged regulations or practices actually caused any cognizable harm;

8   whether there was an underlying criminal charge; what were the specific circumstances of the

9   alleged detention; and whether the relief the Committee requested would redress any such

10  individualized harm.  Therefore, "the individual participation of each injured party is

11  indispensable to proper resolution of the case." *Warth*, 422 U.S. at 511.  For these reasons, the

12  Committee lacks Article III standing to maintain its claims, and its claims must be dismissed for

13  lack of jurisdiction.

14       The Committee's organizational standing is separate and apart from the standing of its

15  members, turning instead on whether the organization has suffered an injury-in-fact.  *See*

16  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982).  An organization may satisfy

17  the Article III requirement of injury in fact if it can demonstrate: (1) a frustration of its

18  organizational mission; and (2) a diversion of is resources.  *See Fair Housing of Marin v.*

19  *Combs*, 285 F.3d 899, 905 (9th Cir. 2002).  Here, the Committee describes itself as an

20  organization founded to respond to "federal immigration reform proposals" whose "mission" is

21  "to oppose anti-immigrant legislation and policies at both federal and local levels." (Complaint

22  ¶ 37).  It claims that this mission has been "undermined" and its resources "diverted" by the

23  Federal Defendants' alleged practices.  These bald allegations do not identify any particular

24  harm or injury that the Committee has suffered.  Indeed, Federal Defendants' alleged practices

25  do not frustrate the Committee's mission, but rather permit the Committee to pursue, if not

26  accomplish, its mission of opposing the policies through federal litigation.  In the absence of

27  any showing of a concrete injury, the Committee has no organizational standing to seek relief,

28

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT
THEREOF
Case No. C 08-4220 PJH                                    10

and this Court must dismiss its claims for lack of jurisdiction.

## E.   ALL PLAINTIFFS LACK STANDING TO ASSERT CLAIMS FOR INJUNCTIVE RELIEF

In their Complaint, Plaintiffs seek injunctive relief against the Federal Defendants, including an order prohibiting them from stopping individuals and issuing immigration detainers. (Complaint, p. 21-22). Plaintiffs must demonstrate that they have sustained or are immediately in danger of sustaining some direct injury to establish their standing to seek injunctive relief. *See Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). "The injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Past exposure to illegal conduct, "if unaccompanied by any continuing, present adverse effects," does not create a case or controversy regarding injunctive relief. *O'Shea*, 414 U.S. at 495-96.

In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court expressly addressed the requirements of standing for claims for injunctive relief. Lyons claimed that Los Angeles police officers placed him in a chokehold without provocation; and he alleged that the police department had a policy of applying such chokeholds. 461 U.S. at 97-98. Lyons sought damages as well as an injunction prohibiting the police from using chokeholds except in limited circumstances. 461 U.S. at 98. The Supreme Court held that Lyons had no standing to seek injunctive relief because his allegations did "nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." 461 U.S. at 105. Even assuming that the Los Angeles police had a policy that permitted officers to use chokeholds without provocation, the Supreme Court determined that Lyons' claim for injunctive relief would fail for lack of standing unless he "could credibly allege that he faced a realistic threat from the future application of the City's policy." 461 U.S. at 106 n. 7.

Here, Plaintiffs have alleged past injuries, but they have not identified any realistic

future threat or facts that show a likelihood that they again will be stopped or subjected to immigration detainers, and thus they have no standing to seek an injunction. *See Mancha v. ICE*, 2007 WL 4287766, at *1 (N.D. Ga. December 5, 2007) (noting that plaintiffs lacked standing to bring claim for injunctive relief against ICE agents who detained them where plaintiffs had shown no real and immediate threat of future harm). Here, Plaintiffs' allegation that Federal Defendants have a "policy and practice" of stopping immigrants and issuing detainers is unavailing: they have not alleged any facts demonstrating a realistic threat that they imminently will be stopped or subjected to a detainer. *See Mancha*, 2007 WL 4287766 at *2 ("Allegations with respect to a policy of discriminating against Latinos do not allege a future injury that is imminent and concrete enough for judicial consideration.") Because their allegations of future harm are too speculative and remote, Plaintiffs have no standing to sue for injunctive relief, and their claims for injunctive relief must be dismissed for lack of subject matter jurisdiction.

**F.   ICE HAS THE BROAD LEGAL AUTHORITY TO DETAIN ILLEGAL ALIENS AND ISSUE DETAINERS FOR ILLEGAL ALIENS TO OTHER LAW ENFORCEMENT AGENCIES**

Plaintiffs' assertion that ICE lacked the authority to issue detainers for Plaintiffs while they were in the custody of Sonoma County Sheriffs is premised upon an incorrect interpretation of the statute it cites. Accordingly, this Court must dismiss Plaintiffs's Complaint because it lacks a "cognizable legal theory" upon which relief can be granted. *See Balistreri v.* 901 F. 2d at 699; (stating that dismissal under Fed. R. Civ. P. 12(b)(6) can be based upon the lack of a cognizable legal theory); *see also Harris v. Gonzalez*, 2005 U.S. Dist. Lexis 41525 (N. D. Cal. Aug. 2, 2005), at *25 (dismissing a complaint with prejudice because plaintiff's claim against the United States did not rest upon a cognizable legal theory). Plaintiffs specifically assert that "8 C.F.R. § 287.7, and the actions taken by ICE to issue immigration detainers to hold individuals who are not already in custody for controlled substances violations, are inconsistent with the governing statute, 8 U.S.C. § 1357, and *ultra vires* in excess of the statutory authority granted to ICE by Congress." (Complaint at ¶ 78). Clearly, a reviewing

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT THEREOF
Case No. C 08-4220 PJH                              12

1  court must hold unlawful an agency action taken in excess of statutory jurisdiction, authority, or
2  limitations. *See* 5 U.S.C. § 706(2)(c). However, the Supreme Court has stated that a grant of
3  legislative authority to a federal agency need not be specific before regulations promulgated can
4  be binding on courts, so long as "the reviewing court [can] reasonably be able to conclude that
5  the grant of authority contemplates the regulation issued." *Chrysler Corp. v. Brown*, 441 U.S.
6  281, 308 (1979).

7      Plaintiffs are mistaken that 8 C.F.R. § 287.7 is either inconsistent with, or in excess of,
8  the INA, and a large portion of Plaintiffs' claims flow from their erroneously restrictive
9  interpretation of the statutorily authorized scope of the regulation. 8 C.F.R. § 287.7 explicitly
10  indicates the broad statutory basis for its authority: "[d]etainers are issued pursuant to sections
11  236 and 287 of the Act [the INA] and this chapter 1." 8 C.F.R. § 287.7(a). Section 236 of the
12  INA deals with the apprehension and detention of aliens, and contemplates that the Attorney
13  General may issue a warrant to arrest and detain an alien "pending a decision on whether the
14  alien is to be removed from the United States." 8 U.S.C. § 1226(a). Further, Congress has
15  authorized any immigration officer or agent to arrest any alien "in the United States, if he has
16  reason to believe that the alien so arrested is in the United States [illegally] and is likely to
17  escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). In the INA,
18  Congress further directs the Secretary to "establish such regulations . . . and perform such other
19  acts as he deems necessary for carrying out his authority under the provisions of this chapter."
20  8 U.S.C. § 1103(a)(3).

21      The law is clear that ICE agents may detain, and require other law enforcement agencies
22  to detain, illegal aliens. *See generally* 8 U.S.C. § 1357. Indeed, any ICE officer or special
23  agent may "interrogate any alien or person believed to be an alien as to his right to be or remain
24  in the United States," and may arrest illegal aliens. 8 U.S.C. § 1357(a)(1) and § 1357(a)(2).
25  The mechanism by which ICE obtains custody of an illegal alien who has been arrested or
26  detained by a state or local law enforcement agency is by issuing a "detainer" to the state or
27  local law enforcement agency for the alien, as authorized by 8 C.F.R. § 287.7. In the case of

28

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT
THEREOF
Case No. C 08-4220 PJH                     13

1    aliens who are arrested for violating controlled substances laws, and for whom ICE issues a

2    detainer, ICE is explicitly required to "effectively and expeditiously take custody of the alien."

3    8 U.S.C. § 1357(d).[5]  Thus, because 8 C.F.R. § 287.7 is a valid expression of the Secretary's

4    broad statutory authority and lawfully authorizes immigration officers to issue detainers to other

5    Federal, State or local law enforcement agencies "at any time," this Court should dismiss

6    Plaintiff's "Eighth Claim for Relief."

7         Plaintiffs' misapprehension of ICE's broad authority may be because the caption to

8    8 C.F.R. § 287.7 references "detainer provisions under section 287(d)(3) of the Act."  The

9    caption itself is descriptive, but not complete.  It is beyond dispute that the caption to a statute

10   or regulation cannot limit the broader, and unambiguous, language of the regulation.  *See*

11   *Brotherhood of Railroad Trainmen v. Baltimore and Ohio Railroad Co., et al.*, 331 U.S. 519,

12   528-29 (1947) (stating the "wise rule [of statutory interpretation] that the title of a statute and

13   the heading of a section cannot limit the plain meaning of the text."); *see also Secretary of*

14   *Labor v. Health Review Commission, et al.*, 980 F.2d 1273, 1275 (9th Cir. 1992) (applying the

15   canon of statutory construction of *Brotherhood of Railroad Trainmen* to administrative

16   regulations).  In this case, the plain language of 8 C.F.R. § 287.7 authorizes immigration

17   officers to issue immigration detainers "at any time . . . to any other Federal, State, or local law

18   enforcement agency."  The caption does not, as a matter of law, limit the application of the

19   regulation solely to controlled substances cases.

20        But regardless of the scope of the regulation, the gravamen of Plaintiffs' Complaint is

21   that Congress never authorized ICE to issue detainers for illegal aliens who are being held for

22   reasons other than controlled substance violations.  Indeed, Plaintiffs ask this Court to issue

23

24        [5] Congress enacted 8 U.S.C. § 1357(d) as part of the Anti-Drug Abuse Act of 1986, 99
     P.L. 570; 100 Stat. 3207 (Oct. 27, 1986).  The Act was designed, in part "to improve
25   enforcement of Federal drug laws and enhance interdiction of illicit drug shipments."  *See id.*
     Rather than limiting the use detainers, § 1357(d) imposes additional requirements on the agency
26   in drug cases to promptly determine whether to take custody of an alien held by another law
     enforcement agency and, if the detainer is issued, to promptly take custody of the alien.  *See*
27   8 U.S.C. § 1357(d).

28

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT
THEREOF
Case No. C 08-4220 PJH                                14

1   preliminary and permanent injunctions prohibiting Federal Defendants from "issuing

2   immigration detainers for or otherwise requesting that local law enforcement agencies hold

3   persons who are not already in local custody due to a valid arrest for a controlled substance

4   violation." (Complaint at page 22, lines 14-16). Plaintiffs' interpretation of the Secretary's

5   authority to issue detainers is incorrect; and this Court should dismiss this case, recognizing that

6   the Plaintiffs' requested injunctive relief would lead to absurd results. For example, under

7   Plaintiff's theory, ICE lacks statutory authority to issue a detainer for any illegal alien being

8   held on suspicion of burglary, rape, counterfeiting money, child abuse, or any other crime not

9   involving controlled substances. In Plaintiff's view, the agency charged with enforcing the

10  federal immigration laws lacks authority to issue detainers, except in controlled substance

11  cases.

12          In promulgating 8 C.F.R. § 287.7 the Secretary did not limit ICE's authority to issue

13  detainers only to those aliens who had committed controlled substances violations. Nor did the

14  Secretary exempt illegal aliens who did not have underlying criminal charges from being

15  subject to detainers. In fact, when this regulation was published for comment in 1994, one

16  commenter posited that it may be that the detainer regulation was overly broad in relation to the

17  statute. *See* 59 Fed. Reg. 42,406, 42,411 (August 17, 1994). But the Immigration and

18  Naturalization Service never interpreted the obligations in section 287(d) of the INA as limiting

19  the agency's general detainer authority under sections 236 and 103 of the INA. In 1994, the

20  preamble to regulatory revisions discussed the statutory basis for legacy INS' general authority

21  to issue immigration detainers:

22          The commenters stated that the authority for issuance of detainers . . . was overly
23          broad because the authority to issue detainers . . . to persons arrested
            for controlled substances offenses. This comment overlooked the general
24          authority of the Service to detain any individual subject to exclusion or
            deportation proceedings. *See* 8 U.S.C. 1225(b), 1252(a)(1). The detainer
25          authority of these sections of the proposed rule were promulgated pursuant to
            this general authority. The statutory provision cited by the commenters places
26          special requirements on the Service regarding the detention of individuals
            arrested for controlled substance offenses, but does not delimit the general
27          detainer authority of the Service.

28

59 Fed. Reg. 42,406, 42,411 (August 17, 1994) (codified at 8 C.F.R. § 287.7).

Thus, the scope of 8 C.F.R. § 287.7 reflects the Secretary's broad authority, and responsibility, to "establish such regulations . . . and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter" including, implicitly, detaining illegal aliens and taking custody of those illegal aliens who are detained by local law enforcement. *See* 8 U.S.C. § 1103(a)(3). This is because the Secretary has "the power and duty to control and guard the boundaries and borders of the United States against the illegal entry of aliens." 8 U.S.C. § 1103(a)(4).

And, even if 8 C.F.R. § 287.7 were not pellucid on its face, Plaintiff's Complaint would still lack a cognizable legal theory for relief because the agency's interpretation of the statutes relating to the administration of immigration laws and the powers to detain illegal aliens is entitled to deference under *Chevron U.S.A. v. NRDC,* 467 U.S. 837 (1984); *see also Closeout, Inc. v. Department of Homeland Security,* 513 F.3d 940 (9th Cir. 2008). To the extent that there is an ambiguity as to whether or not the statutes authorize ICE to issue detainers for any illegal aliens, *Chevron* requires a federal court to accept an agency's construction of an ambiguous statute if the particular statute is within the agency's jurisdiction to administer, and the agency's construction is reasonable. See *National Cable & Telecommunications Assn., et al. v. Brand X Internet Services et al.,* 545 U.S. 967, 980 (2005). Without question, it is within the Department of Homeland Security's jurisdiction to administer the INA. Similarly, it is reasonable for the Secretary to authorize ICE to issue detainers for illegal aliens, even those who have committed no crime apart from entering illegally, because the Secretary explicitly has both the power and the duty to prevent illegal entry into this country. *See* 8 U.S.C. § 1103(a)(4).

Moreover, 8 C.F.R. § 287.12 states,

with regard to this part, these regulations provide internal guidance on specific areas of law enforcement authority. These regulations do not, are not intended to, and shall not be construed to exclude, supplant, or limit otherwise lawful activities of the Department or the Secretary. These regulations do not, are not intended to, shall not be construed to, and may not be relied on to create any

rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal. The Secretary shall have exclusive authority to enforce these regulations through such administrative and other means as he may deem appropriate.

8 C.F.R. § 287.12. Here, Plaintiffs seek a ruling which would improperly abrogate the Secretary's authority to enforce immigration law by limiting ICE's ability to issue detainers for illegal aliens in state custody, and, in effect, create an enforceable right for an illegal alien to assert. Plaintiffs improperly read into the INA a right for illegal aliens not to be detained by local law enforcement at ICE's request, absent a controlled substance violation. Because Plaintiffs' proposed interpretation of the statutory and regulatory scheme of the INA and its implementing regulations would prohibit the Secretary, and ICE, from effectively enforcing the immigration law as mandated by Congress, this Court should reject Plaintiffs' interpretation.

Since 8 C.F.R. § 287.7 does not exceed the scope of the Secretary's broad authority to implement regulations to enforce immigration law, it is not *ultra vires* or in excess of the statutory grant of authority. Consequently, this Court cannot grant relief to Plaintiffs on any claim which rests on the erroneous proposition that 8 C.F.R. § 287.7 is unenforceable against illegal aliens who are not in local custody for a controlled substance violations. Accordingly, Plaintiffs' claim lacks a cognizable legal theory under Fed. R. Civ. P. 12(b)(6) and this Court should dismiss the Complaint with prejudice.

**G.      ANY CLAIM THAT THE INS DID NOT COMPLY WITH THE NOTICE AND COMMENT PROCEDURE OF THE APA IS BARRED BY THE SIX-YEAR STATUTE OF LIMITATIONS.**

From the Complaint, is not clear which action by the INS Plaintiffs take issue with, but it is clear that Plaintiffs are not challenging the 2003 Final Rule promulgated by DHS because Plaintiffs specifically reference action by "defendant's ICE's predecessor agency, the INS." (Complaint at ¶ 79). However, "Civil actions against the United States, including actions under the APA 'shall be barred unless the complaint is filed within six years after the right of action first accrues.'" *Barnes v. Babbit*, 329 F. Supp. 2d 1141, 1158 (D. Ariz. 2004) (citing

28 U.S.C. § 2401(a)); *See, e.g. Gros Ventre Tribe v. United States,* 469 F.3d 801, 814 n.12 (9th Cir. 2006) (the "general six-year statute of limitations for civil actions brought against the United States, *see* 28 U.S.C. § 2401(a), applies to actions for judicial review brought pursuant to the [APA].") (quoting *Wind River Mining Corp. v. United States,* 946 F.2d 710, 712-13 (9th Cir. 1991)).  Further, a claim under the APA accrues when the agency has taken final action.  Which depends on whether the agency has completed its decision-making process and whether the result of the process is one that will directly affect the parties.  *See Barnes,* 329 F. Supp. at 1158 (citing *Franklin v. Massachusetts,* 505 U.S. 788, 797 (1992)).  Thus, to the extent that Plaintiff is challenging any action of the INS in promulgating 8 C.F.R. § 287.7 in violation of the APA prior to 2002, that claim is barred by the statute of limitations of  28 U.S.C. § 2401(a).  Accordingly, this Court must dismiss this claim with prejudice.

## H.   THE INS PROPERLY PROMULGATED 8 C.F.R. § 287.7 IN ACCORDANCE WITH THE APA

### 1.   Plaintiffs' Complaint fails to explain any putative defect in the promulgation of 8 C.F.R. § 287.7; the INS promulgated 8 C.F.R. § 287.7 after notice and comment.

Plaintiffs' claim the INS promulgated 8 C.F.R. § 287.7 in violation of the APA that is legally insufficient and therefore lacks a "congizable legal theory" under which this Court can grant relief.  Plaintiffs baldly assert that "defendant's ICE's predecessor agency, the INS, promulgated 8 C.F.R. § 287.7 without notice and an opportunity to comment by the public and in violation of the rule-making process specified by the APA, 5 U.S.C. § 553." (Complaint at ¶ 79).  In addition to being incorrect (as discussed below) this is exactly the kind of a "conclusory allegation of law" which will not survive a motion to dismiss.  *Epstein v. Arsers,* 83 F.3d 1136, 1140 (9th Cir. 1996) (citing *In re Verifone Sec. Litig.,* 11 F.3d 865, 868 (9th Cir. 1993).  Accordingly, this Court should dismiss this claim under Fed. R. Civ. P. 12(b)(6).

In any event, even if Plaintiffs' claim that the former INS promulgated 8 C.F.R. § 287.7 without notice and comment were not statute barred, it remains without merit.  The APA

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT THEREOF
Case No. C 08-4220 PJH                                        18

1    requires that an administrative agency publish general notice of proposed rules in the Federal

2    Register. *See* 5 U.S.C. § 553(b). Interested parties may then submit comments to the agency

3    which the agency considers in the rules it ultimately adopts. *See* 5 U.S.C. § 553(c); *see also*

4    *American Mining Congress, et al. v. United States EPA*, 965 F.2d 759, 770 (9th Cir. 1992)

5    (citing the APA and explaining that to satisfy the notice requirement of the APA, the

6    rulemaking agency must publish the terms or substance of the proposed rule or a description of

7    the subjects and issues involved). The INS first published 8 C.F.R. § 287.7 as an interim final

8    rule on May 5, 1987, and adopted it as a final rule on March 22, 1988. *See* 52 Fed. Reg.

9    16,370; 16,373 (May 5, 1987); 53 Fed. Reg. 9,281, 9,283 (Mar. 22, 1988) (then codified at

10   8 C.F.R.§ 287.7). Then in 1994, the INS amended 8 C.F.R. § 287.7, with notice, and after it

11   received comments. In fact, as discussed *supra*, (subsection F of this brief), commenters on

12   8 C.F.R. § 287.7(a) expressly questioned the authority of the agency to issue detainers in non-

13   narcotics cases, and the agency responded, "This comment overlooked the general authority of

14   the Service to detain any individual subject to exclusion or deportation proceedings. The

15   detainer authority of these sections of the proposed rule were promulgated pursuant to this

16   general authority." 59 Fed. Reg. 42,406, 42,411 (August 17, 1994) (then codified at

17   8 C.F.R.§ 287.7). 8 C.F.R.§ 287.7(a) was subsequently amended to its current language in 1997

18   (after enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996),

19   when it was first published within a proposed rule on January 3, 1997, with a request for

20   comments. *See* 62 Fed. Reg. 44 (Jan. 3, 1997). Due to the short (30 day) comment period, the

21   rule was republished in the Federal Register as an interim final rule on March 6, 1997, again

22   with a request for comments. *See* 62 Fed. Reg. 10312, 10392-93 (Mar. 6, 1997). Accordingly,

23   any claim that the present text of 8 C.F.R. § 287.7(a) was promulgated without notice and

24   comment is incorrect.

25   //

26   //

27

28

2. **The DHS 2003 Final Rule which republished 8 C.F.R. § 287.7 did not require notice and comment because the Rule related to agency organization and management.**

Although the Plaintiffs do not challenge the DHS promulgation of 8 C.F.R.§ 287.7 as a Final Rule in 2003, if is worth noting that notice and comment were not required for republication of INS regulations as DHS regulations.  After the President signed into law the Homeland Security Act of 2002[6] which created the Department of Homeland Security and abolished the INS, former INS regulations were republished in 2003 as DHS regulations, via DHS final rules, (but in 2003 the text of 8 C.F.R. § 287.7(a) did not change.)  *See* 68 Fed. Reg. 35,273 (Jun. 13, 2003).  The APA specifically provides that rules of agency organization, procedure, or practice are specifically exempt from the APA notice and comment requirements. *See* 5 U.S.C. § 553(b)(A).  Additionally, where the agency finds "good cause" for not publishing a proposed rule (and briefly explains why), notice and comment are not required if that procedure would be impracticable, unnecessary, or contrary to the public interest.  *See* 5 U.S.C. § 553(b)(B).  With respect to the 2003 final rule, DHS found both.  *See* 68 Fed. Reg. 35,273 (Jun. 13, 2003).  DHS stated in the "summary" that "DHS is promulgating this rule to continue the process of conforming the text of Title 8 of the Code of Federal Regulations to the governmental structures established in the [Homeland Security Act] and Reorganization Plan." 68 Fed. Reg. 35,273 (Jun. 13, 2003).  Thus, the 2003 final rule, which contained numerous other regulations in addition to C.F.R.§ 287.7, was not published for comment because DHS determined that the final rule related to agency organization.  This statement also constitutes the "brief statement of reasons" for which the notice and comment requirements are unnecessary. *See* 5 U.S.C. § 553(b)(B).  In fact, DHS specifically stated, "Compliance with 5 U.S.C. as to notice of proposed rulemaking or delayed effective date is unnecessary as this rule relates to agency organization and management." 68 Fed. Reg. 35,273, 35,274 (Jun. 13, 2003).

[6] Public Law 107-296, Section 1512, 116 Stat. 2310 (Nov. 25, 2002).

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT THEREOF
Case No. C 08-4220 PJH                                                20

Accordingly, any argument that 8 C.F.R.§ 287.7 was promulgated (either by the INS or by the DHS) in violation of the APA fails. Therefore, Plaintiffs' claim that the former INS promulgated C.F.R.§ 287.7 in violation of the APA is fatally vague, barred by the statute of limitations, and factually incorrect. Therefore, this claim lacks a cognizable legal theory under which this Court can grant relief, and this Court should dismiss this claim with prejudice under Fed. R. Civ. P. 12(b)(6).

## I.   DEFENDANTS WOLMAN, HUELGA AND MERENDINO ARE ENTITLED TO QUALIFIED IMMUNITY

Federal Defendants, like all federal officials, are entitled to qualified immunity as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, regardless of whether the constitutional violation occurred, a federal official should prevail if the right asserted by plaintiff was not 'clearly established' or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). The test to determine whether a federal official is entitled to qualified immunity involves a two-step analysis. *See Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First, the court must determine whether, taking the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right. *Id.* at 638. If the officer violated the Plaintiff's constitutional rights, the court must determine whether the right was clearly established at the time the alleged violation occurred as part of its consideration of the "objective legal reasonableness" of the Defendant's conduct. *Id.*

In order for a court to find that a right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While this Court "need not find a prior case with identical, or even 'materially similar' facts," the right must be established with sufficient specificity, and in a "particularized

[ ] sense," such that "the government officials have 'fair and clear warning' that their conduct is unlawful." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003). The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. In assessing established law, this Court will turn to Supreme Court and Ninth Circuit precedent existing at the time of the challenged conduct. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, the Court should look to available decisions of other circuits to ascertain whether the law is clearly established. *Id.*

Here, Plaintiffs have failed to allege sufficient facts to make a threshold showing that the conduct of the individual Federal Defendants violated their constitutional rights. Defendant Wolman is the Special Agent-in-Charge of ICE's San Francisco Office of Investigations; as a supervisory official, he cannot be held liable for civil rights violations under the doctrine of *respondeat superior*. *Bibeau v. Pacific Northwest Research Foundation*, 188 F.3d 1105, 1114 (9th Cir. 1999). To state a claim against Defendant Wolman and Defendants Huelga and Merendino in their personal capacities, Plaintiffs must allege facts indicating that each of them participated in or personally directed the alleged constitutional violation, or had personal knowledge of the violation and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.") Plaintiffs have asserted only vague, conclusory allegations about the involvement of the individual Federal Defendants. The complaint does not contain a single, specific allegation as to how Defendants Wolman or Merendino had contact of any kind with Plaintiffs.[7] In the absence of sufficient allegations of personal involvement, Plaintiffs have failed to state a claim for violation of a constitutional right.

---

[7]    Defendant Huelga is mentioned once by name in the complaint: "On or about Thursday, August 2, 2007, Defendant Salkin and Defendant Huelga approached Christyan at his place of employment." Complaint ¶ 47.

FEDERAL DEFENDANTS' NOTICE OF MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT THEREOF
Case No. C 08-4220 PJH                    22

1  It was reasonable, moreover, for Federal Defendants to believe that their issuance of
2  detainers pursuant to 8 C.F.R. § 287.7 for the named alien Plaintiffs was lawful because, as set
3  forth more fully above, ICE has broad legal authority to detain illegal aliens and issue detainers
4  for illegal aliens to other law enforcement agencies. *See* Section F.   The INA addresses the
5  apprehension and detention of aliens, and contemplates that the Attorney General may issue a
6  warrant to arrest and detain an alien "pending a decision on whether the alien is to be removed
7  from the United States." 8 U.S.C. § 1226(a). The Federal Defendants have the legal authority
8  to detain, and require other law enforcement agencies to detain, illegal aliens. *See generally*
9  8 U.S.C. § 1357. It was reasonable for Federal Defendants to believe that their decision to issue
10 detainers pursuant to 8 C.F.R. § 287.7 was lawful because no comparable set of facts existed in
11 the Supreme Court or Ninth Circuit to alert Federal Defendants that doing so was inconsistent
12 with statutory authority or violated Plaintiffs' Constitutional rights. "[T]here must be some
13 parallel or comparable factual pattern to alert an officer that a series of actions would violate an
14 existing constitutional right." Fogel v. Collins, 531 F.3d 824 (9th Cir. 2008). Where, as here,
15 the Federal Defendants have reasonably relied on the legislature's determination that a statute is
16 constitutional, they should be shielded from personal liability.  Grossman v. City of Portland, 33
17 F.3d 1200, 1209 (9th Cir.  1994) (citations and footnote omitted).  As such, the individual
18 Federal Defendants are entitled to dismissal of all of Plaintiffs' claims against them in their
19 personal capacities based on qualified immunity.

20 **J.   THE COURT MUST DISMISS PLAINTIFFS' CLAIMS AGAINST THE**
21 **INDIVIDUAL FEDERAL DEFENDANTS IN THEIR PERSONAL CAPACITIES**
    **FOR ALLEGED VIOLATIONS OF 42 U.S.C. § 1983 AND 42 U.S.C. § 1985(3)**
22      Section 1983 provides a cause of action against any person acting under color of state
23 law who causes the deprivation of Plaintiffs' federal constitutional rights. *Morse v. North Coast*
24 *Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997). Thus, to state a claim under Section
25 1983, Plaintiffs "must allege a violation of [their] constitutional rights and show that the
26 defendants' action were taken under color of state law." *Gritchen v. Collier*, 254 F.3d 807, 812
27
28

(9th Cir. 2201) (emphasis added).  Here, at all times relevant to the allegations in the Complaint, Defendants Wolman, Huelga and Merendino were federal agents performing their official duties under federal law.  Plaintiffs' Section 1983 claims against the individual Federal Defendants are thus invalid on their face and must be dismissed.  *Morse*, 118 F.3d at 1343 ("Lest there be any continuing confusion, we take this opportunity to remind the Bar that by its very terms, Section 1983 precludes liability in federal government actors.")

Plaintiffs' claims against the individual Federal Defendants for alleged conspiracy in violation of 42 U.S.C. § 1985(3) must also be dismissed.  To state a claim under Section 1985(3), Plaintiffs must allege a conspiracy to deprive them of their civil rights, motivated by race-based animus.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-8 (1993); *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002).  Plaintiffs must state specific facts to support the existence of the claimed conspiracy and must plead with particularity "as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of [their] constitutional rights . . ." *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1989). Here, the complaint fails to provide sufficient allegations of a conspiracy.  Plaintiffs have proffered no specific allegations of agreement between the parties, and, as such, the claim must be dismissed.  The viability of any Section 1985 claim against the Federal Defendants, moreover, is premised upon a cognizable Section 1983 claim against them based on the same allegations.  *Olsen v. Idaho State Board of Medicine*, 363 F.3d 916 (9th Cir. 2004); *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989).  Where, as here, Plaintiffs have failed to state a Section 1983 claim against the individual Federal Defendants, their claim based on Section 1985(3) also fails and must be dismissed.

## IV.   CONCLUSION

This Court should DISMISS entirely Plaintiffs' "FOURTH," "FIFTH," "SIXTH" and "EIGHTH" claims for relief; DISMISS the Federal Defendants from Plaintiffs' "NINTH" claim for relief; and DENY Plaintiffs' related prayers for relief numbered 2(a), 2(b), 2(c), 3, 4, and 5. (Complaint at pages 15, 17, 21 and 22).  This Court should also dismiss the Plaintiff

1   "Committee for Immigrant Rights of Sonoma County" from this action, and further dismiss the

2   *Bivens* claims against the United States Department of Homeland Security, Bureau of

3   Immigration and Customs Enforcement, and its agents, Defendants Merendino, Wollman, and

4   Huelga.

5

6   DATED: January 28, 2009                      Respectfully submitted,

7                                                JOSEPH P. RUSSONIELLO
                                                 United States Attorney
8
                              By:        /s/
9                                        ELLEN M. FITZGERALD
                                         Assistant United States Attorney
10
                                         Attorneys for the United States
11                                       and Defendants Wolman, Huelga
                                         and Merendino
12

13                                       MICHAEL F. HERTZ
                                         Acting Assistant Attorney General, Civil Division
14
                                         DAVID J. KLINE
15                                       Director

16                                       JOSHUA E.T. BRAUNSTEIN
                                         Assistant Director
17
                              By:        /s/
18                                       COLIN A. KISOR
19                                       Trial Attorney

20                                       Attorneys for the United States

21

22

23

24

25

26

27

28