1    THOMAS F. BERTRAND, State Bar No. 056560
     RICHARD W. OSMAN, State Bar No.  167993
2    BERTRAND, FOX, & ELLIOT
     The Waterfront Building
3    2749 Hyde Street
     San Francisco, California   94109
4    Telephone: (415) 353-0999
     Facsimile: (415) 353-0990
5
     STEVEN M. WOODSIDE, State Bar No. 58684
6    County Counsel
     ANNE L. KECK, State Bar No.  136315
7    Deputy County Counsel
     County of Sonoma
8    575 Administration Drive, Room 105
     Santa Rosa, California 95403-2815
9    Telephone: (707) 565-2421
     Fax: (707) 565-2624

10   Attorneys for Defendants
     COUNTY OF SONOMA, SHERIFF-CORONER WILLIAM
11   COGBILL, DEPUTY SHERIFF MORRIS ERIC SALKIN

12                 UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14   COMMITTEE FOR IMMIGRANT RIGHTS OF )   Case No.:  CV-08-4220-PJH
     SONOMA COUNTY, FRANCISCO SANCHEZ- )
15   LOPEZ, CHRISTY AN SONATO-VEGA and )
     SAMUEL MEDEL MOYADO, )   **COUNTY DEFENDANTS' NOTICE OF**
16                               )   **MOTION AND MOTION TO DISMISS;**
17           Plaintiffs, )   **MEMORANDUM OF POINTS AND**
                      )   **AUTHORITIES IN SUPPORT THEREOF**
18      vs. )

19   COUNTY OF SONOMA; SHERIFF-CORONER )
     BILL COGBILL and DEPUTY SHERIFF )   Date:    April 22, 2009
20   MORRIS ERIC SALKIN, individually and in )   Time:    9:00 a.m.
     their official capacities; U.S. DEPARTMENT )   Place:   Courtroom 3, 17th Floor
21   OF HOMELAND SECURITY; BUREAU OF )   Judge:  The Honorable Phyllis J. Hamilton
     IMMIGRATION AND CUSTOMS )
22   ENFORCEMENT; SPECIAL AGENT IN- )
     CHARGE MARK WOLLMAN, SPECIAL )
23   AGENT MARIO HUELGAS and SPECIAL )
     AGENT CHRIS MERENDINO, individually and )
24   in their official capacities; DOES 1-50 and ROES )
     1 – 50, inclusive )
25                               )
26           Defendants. )
27   _____ )

28

# TABLE OF CONTENTS

NOTICE ........................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.    INTRODUCTION AND ISSUES ...................................................................1

II.   STATEMENT OF FACTS .............................................................................3

III.  LEGAL ARGUMENT....................................................................................5

A.   Plaintiffs' Complaint Lacks Subject Matter Jurisdiction as to County
     Defendants, Requiring Dismissal Under FRCP 12(b)(1) ..............................5

     1.   Plaintiff CIRSC Lacks Standing to Assert Any Claims In
          This Case.........................................................................................5

     2.   None of the Plaintiffs Have Standing to Request Injunctive
          Relief Herein .................................................................................. 9

     3.   Plaintiffs Francisco Sanchez-Lopez and the Committee
          Failed to Comply With the Tort Claims Act, Which Bars
          Them From Claiming Damages Against County Defendants ................10

     4.   Plaintiff Sonato-Vega's State Law Claims for Relief Based
          on Incidents Occurring Before July 29, 2008, Are Barred By
          the Statute of Limitations Due to His Failure To File A
          Timely Claim ...............................................................................11

B.   Plaintiffs' Complaint Fails to State a Claim Upon Which Relief Can Be
     Granted as to County Defendants, Requiring Dismissal Under Federal
     Rule of Civil Procedure 12(b)(6) .................................................................11

     1.   ICE Has Authority to Issue Immigration Detainers that
          Require County Defendants to Take and Hold Persons in
          Local Custody, Even in the Absence of an Arrest for a
          Controlled Substance Violation ....................................................12

     2.   County Defendants are Authorized to Cooperate with ICE
          and Can Justifiably Rely on the Facial Validity of
          Immigration Detainers ICE Issues, Even If Such Detainers
          are Ultimately Deemed Legally Inadequate .............................17

     3.   Plaintiffs Fail to Allege Facts Sufficient to State a Claim for
          Relief Under 42 U.S.C. Section 2000d, *et seq.*  (Title VI) ....................19

4.   Plaintiffs Fail to Allege Facts to State a Claim for Relief for Violation of California Government Code Section 11135 and Its Implementing Regulations ............................................................ 20

5.   Plaintiffs Fail to Allege a Statutory Bases for Several State Law Claims for Relief, Which Are Required to Overcome Grant of Governmental Immunity ........................................................21

6.   Plaintiffs' Prayer for Punitive Damages Against The County Is Improper ...................................................................................22

C.   Alternatively, Defendants Request that the Court Require Plaintiffs to File a More Definite Statement, Due to the Complaints' Vagueness, Ambiguity and Uncertainty ................................................................................22

IV.   CONCLUSION ........................................................................................24

COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Albrecht v. Lund*
   845 F.2d 193 (9th Cir. 1988) ...........................................................................................12

4

5

*Ashoff v. City of Ukiah*
   130 F.3d 409 (9th Cir. 1997) ............................................................................................5

6

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990) .......................................11

7

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544
   127 S.Ct. 1955 (2007).................................................................................................12, 20

8

9

*Boske v. Comingore*
   177 U.S. 459 (1900)........................................................................................................16

10

*Brown v. Poway Unified School Dist.*
   4 Cal.4th 820 (1993).......................................................................................................22

11

12

*Calatayud v. State of California*
   18 Cal.4th 1057 (Cal.,1998)...........................................................................................18

13

*City of Los Angeles v. Lyons*
   461 U.S. 95 (1983)...........................................................................................................9

14

15

*Conley v. Gibson*
   355 U.S. 41 (1957).........................................................................................................11

16

*De La Cruz v. Tormey*
   582 F.2d 45 (9th Cir. 1978) ...........................................................................................11

17

18

*Dominguez v. Solano Irrigation Dist.*
   228 Cal. App. 3d 1098 (1991.) .......................................................................................21

19

*Fall River Joint Unified School Dist. v. Sup. Court*
   206 Cal.App.3d 431 (1998) ...........................................................................................10

20

21

*Fields v. Palmdale School District*
   427 F.3d 1197 (9th Cir. 2005) ........................................................................................20

22

*Forbes v. County of San Bernardino*
   101 Cal.App.4th 48 (2002) .............................................................................................21

23

24

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*
   528 U.S. 167 (2000)..........................................................................................................6

25

*Gatto v. County of Sonoma*
   98 Cal.App.4th 744 (2002) .............................................................................................10

26

27

*Hunt v. Washington State Apple Advertising Comm'n.*
   432 U.S. 333 (1977)..........................................................................................................6

28

*Karim-Panahi v. Los Angeles Police Dept.*
  839 F.2d 621 (9th Cir. 1988) ................................................................10

*Kokkonen v. Guardian Life Ins. Co. of America*
  511 U.S. 375 (1994) ..........................................................................5

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*
  507 U.S. 163 (1993) ..........................................................................12

*Loehr v. Ventura County Comm. College Dist.*
  147 Cal.App.3d 1071 (1983) ...............................................................10

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) .........................................................................5, 6

*Narenji v. Civiletti*
  617 F.2d 745 (D.C. Cir. 1980) (as amended), *cert. denied*, 446 U.S. 957 (1980) ..........................16

*Northeastern Fla. Chptr., Associated General Contractors of Am. v. Jacksonville*
  508 U.S. 656 (1993) ..........................................................................5

*O'Shea v. Littleton*
  414 U.S. 488 (1974) ..........................................................................9

*Pacific Tel. & Tel. Co. v. County of Riverside*
  106 Cal.App.3d 183 (1980) ...............................................................10

*People v. Levinson*
  155 Cal.App.3d Supp. 13 (1984) .....................................................20, 21

*Ramirez v. Immigration & Naturalization Service*
  550 F.2d 560 (9th Cir. 1977) ..............................................................16

*Sam Andrews' Sons, etc. v. Mitchell*
  457 F.2d 745 (9th Cir. 1972) ..............................................................16

*SEC v. Seaboard Corp.*
  677 F.2d 1315 (9th Cir. 1982) ............................................................11

*State of Cal. Ex Rel. Dept. of Trans. v. Sup. Court*
  159 Cal.App.3d 331 (1984) ...............................................................10

*Swaner v. City of Santa Monica*
  (1984) 150 Cal.App.3d 789 ...............................................................22

*Vallindras v. Massachusetts Bonding & Ins. Co.*
  42 Cal.2d 149 (1954) ........................................................................19

*Warth v. Seldin*
  422 U.S. 490 (1975) ..........................................................................8

*Weisbuch v. County of Los Angeles*
  119 F.3d 778 (9th Cir. 1997) ..............................................................12

COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Western Mining Council v. Watt*
   643 F.2d 618 (9th Cir. 1981) ................................................................11

**Statutes**

42 U.S.C., § 2000d .................................................................................3, 19, 20

6 U.S.C., § 1, et seq ....................................................................................18

6 U.S.C., § 112 ...........................................................................................15

8 C.F.R., § 100.6 ........................................................................................16

8 C.F.R., § 103.1 ........................................................................................15

8 C.F.R., § 105 ........................................................................................9, 15

8 C.F.R., § 2.1 ...........................................................................................15

8 C.F.R., § 287.7 ..................................................................2, 13, 14, 16, 18, 19

8 C.F.R., § 287.7(a) ....................................................................................14

8 C.F.R., § 287.8(b)(2) ................................................................................16

8 C.F.R., § 287.7(d) ................................................................................14, 19

8 U.S.C., § 1103 .........................................................................................18

8 U.S.C., § 1103(a)(1) ................................................................................18

8 U.S.C., § 1103(a)(3) ................................................................................15

8 U.S.C., §1103(a)(4) .................................................................................15

8 U.S.C., § 1103(a)(5) ................................................................................15

8 U.S.C., § 1226 .........................................................................................14

8 U.S.C. § 1357 .....................................................................................13, 14

8 U.S.C., § 1357(d) ................................................................................13, 14

8 U.S.C., § 1357(g) ................................................................................17, 18

8 U.S.C., § 1373 .........................................................................................17

8 U.S.C., § 1644 .........................................................................................17

Cal. Code of Civ. Proc., § 262.1 ....................................................................19

Cal. Gov. Code, § 11135 .......................................................................3, 20, 21

California Government Code Section 818 .........................................................23

COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

California Government Code section 911.2(a) ...............................................................................11

California Government Code Section 945.4 ..................................................................................10

Federal Rule of Civil Procedure 12(b)(1) ................................................................................2, 5

Federal Rules of Civil Procedure Rule 12(b)(6) ...........................................................................2

Federal Rule of Civil Procedure Rule 12(e) ................................................................................22

Government Code Section 815(a).................................................................................................21

Government Code Section 818 .....................................................................................................22

**Other Authorities**

Article III, Section 2 of the U.S. Constitution ...............................................................................5

Cal. Const., Art. V, §1 .................................................................................................................18

COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 22, 2009, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 3, 17th Floor, of the above-entitled Court, Defendants County of Sonoma, Sheriff-Coroner William Cogbill and Deputy Sheriff Morris Eric Salkin, in their individual and official capacities (collectively, "County Defendants"), will and hereby do move this Court for an order granting dismissal of the claims alleged against County Defendants contained in the Complaint for Declaratory and Injunctive Relief and Damages, filed herein on September 5, 2008 (the "Complaint").

This motion is brought pursuant to Federal Rules of Civil Procedure, Rule 12(b), subsections (1) and (6), on the grounds that dismissal as to County Defendants is appropriate because the court lacks subject matter jurisdiction over plaintiffs' Complaint, and such Complaint fails to allege facts sufficient to state any claim upon which relief can be granted against County Defendants.  Alternatively, County Defendants also move for a more definite statement pursuant to Federal Rule of civil Procedure 12(e), due to the complaint's vagueness, ambiguity and uncertainty.

This motion is based on this notice, the memorandum of points and authorities in support thereof, the papers and pleadings on file herein, and on such oral arguments and documentary evidence as may be adduced at the hearing of this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND ISSUES**

Plaintiffs Committee for Immigrant Rights of Sonoma County ("CIRSC"), Francisco Sanchez-Lopez, Christyan Sonato-Vega and Samuel Medel Moyado brought this action for declaratory and injunctive relief and damages against Defendants County of Sonoma, Sheriff-Coroner William Cogbill and Deputy Sheriff Morris Eric Salkin (collectively, "County Defendants"), and also against the U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, Special Agent-In-Charge Mark Wollman, Special Agent Mario Huelga and Special Agent Chris Merendino (collectively, "Federal Defendants").  Plaintiffs challenge law enforcement actions by Immigration and Customs Enforcement ("ICE") agents and Sonoma County Sheriff's Department personnel in taking

1

and/or holding persons in custody for suspected civil immigration violations, and housing them in the county jail under federal immigration detainers pending transfer to ICE.  In their Complaint, plaintiffs allege, *inter alia*, that Sheriff's deputies and ICE agents violate the constitutional and statutory rights of Latino residents in Sonoma County because they use race as a motivating factor for traffic stops and other detentions and that they stop, interrogate, search, detain and arrest persons for civil immigration violations without warrants or adequate justification.

County Defendants dispute many of the factual allegations set forth in the Complaint, but acknowledge that they are to be assumed for the purposes of this motion to dismiss.  Even assuming the truth of such allegations, it is apparent that the Complaint must be dismissed as to County Defendants pursuant to the Federal Rules of Civil Procedure (FRCP), based on lack of subject matter jurisdiction (FRCP 12(b)(1)) as well as the Complaint's failure to state a claim upon which relief can be granted (FRCP 12(b)(6)), as follows:

A.    The Court lacks subject matter jurisdiction over the Complaint as to the claims against County Defendants and should be dismissed under FRCP 12(b)(1) for the following reasons:

(1)    Plaintiff CIRSC lacks standing to assert any claims in this case;

(2)    All plaintiffs lack standing to request injunctive relief in this case;

(3)    Plaintiffs CIRSC and Sanchez-Lopez failed to comply with the Tort Claims Act, thereby barring their state law damages claims; and

(4)    Plaintiff Sonato-Vega's state law claims based on incidents occurring before July 29, 2007, are barred by the statute of limitations.

B.    Plaintiffs' Complaint fails to state a claim upon which relief can be granted against County Defendants, rendering the Complaint subject to dismissal under FRCP 12(b)(6), for the following reasons:

(1)    ICE can lawfully issue immigration detainers to direct County Defendants to take or hold persons in their custody pursuant to 8 C.F.R. §287.7, even in the absence of an arrest for controlled substance violations;

(2)    County Defendants are authorized to cooperate with ICE and can justifiably rely on the facial validity of immigration detainers ICE issues, even if such detainers are ultimately deemed legally inadequate;

(3)     Plaintiffs fail to allege facts showing they were subjected to discrimination under a program run by County Defendants that receives federal funding, as required to establish a claim under 42 U.S.C. Section 2000d, *et seq.* (Title VI);

(4)     Plaintiffs fail to allege facts showing that a program run by County Defendants, and for which it receives state funding, has discriminated against plaintiffs, as required to establish a claim under California Government Code § 11135 and its implementing regulations;

(5)     Plaintiffs fail to allege statutory bases for their state law claims for false arrest and imprisonment, intentional infliction of emotional distress, and negligence, as required to overcome the guarantee of governmental immunity per California Government Code Section 815(a); and

(6)     Plaintiffs' prayer for punitive damages against the County is improper and unsupported by law.

C.     Alternatively, County Defendants move the Court to order plaintiffs to file a more definite statement under FRCP 12(e), as the Complaint is vague, ambiguous and uncertain.

## II.     STATEMENT OF FACTS

Plaintiff Committee for Immigrant Rights of Sonoma County ("CIRSC") has waged a long-standing campaign to end the Sonoma County Sheriff Department's cooperation with the U.S. Department of Homeland Security, Bureau of Immigration of Customs Enforcement ("ICE") regarding immigration issues. [Complaint, p. 2, ¶2; p. 9, ¶36]. This political purpose is at the core of CIRSC's stated mission, "to oppose anti-immigration legislation and policies at both federal and state levels." [Complaint, pp. 9-10, ¶37.] In addition, CIRSC also takes it upon itself to educate the Sonoma County Latino Community regarding their rights with respect to immigration proceedings. [Complaint, p. 10, ¶¶37, 38.]

Plaintiffs claim that CIRSC membership includes people who have witnessed and been subjected to unlawful actions of Federal and County Defendants, and also includes Latino residents of Sonoma County, who are "especially likely" to be subjected to the joint operations of such defendants. [Complaint, p. 10, ¶40.] Plaintiffs also allege that CIRSC membership includes, "several Latino families who live in the neighborhoods of Sonoma County where Defendants' [sic] regularly patrol." [*Id.*] Aside from identifying plaintiffs Francisco Sanchez-Lopez and Samuel Medel Moyado as members of CIRSC (and unidentified family members of plaintiffs), plaintiffs do not specifically

3

1   identify or disclose any other member of CIRSC in the Complaint.

2        As alleged in the Complaint, the Sheriff and other members of the Sonoma County Sheriff's

3   Department have personally met with representatives of CIRSC to discuss the Department's cooperation

4   with ICE to assist it in enforcing immigration law.  [Complaint, p. 9, ¶36.]  Plaintiffs allege that, during

5   a meeting that occurred on October 5, 2007, the Sheriff confirmed that Sheriff's deputies were acting in

6   a way that plaintiffs consider to be unlawful or unreasonable.  [Complaint, p. 7, ¶30; p. 8, ¶33; p. 9,

7   ¶36.]   In response to the Sheriff Department's failure to stop cooperating with ICE and executing

8   immigration detainers ICE issues, the Committee launched a County of Refuge Campaign, calling for an

9   end to the Sheriff's assistance in immigration enforcement through weekly vigils and public forums.

10  [Complaint, p. 10, ¶39.]  Despite these attempts to change the policies and practices of the Sheriff's

11  Department through these political means, CIRSC has been unsuccessful in convincing the Sheriff's

12  Department to stop cooperating with ICE. [Complaint, p. 13, ¶¶54, 55.]  CIRSC now seeks to have this

13  Court accomplish the legislative and policy reform that it has failed to effect through political, executive

14  or legislative channels.

15       At the core of plaintiffs' Complaint is their discontent with the fact that the Sheriff's Department

16  allows ICE to participate with Sheriff deputies when on patrol, questions persons stopped regarding

17  issues bearing on immigration status, and complies with ICE requests to detain persons in the County

18  jail suspected of being illegal aliens.  [Complaint, p. 13, ¶¶54, 55.]  Though plaintiffs make non-specific

19  and conclusory allegations that these law enforcement actions are racially based, plaintiffs' underlying

20  challenge to the practices is that no person should be detained by the Sheriff's Department at ICE

21  request unless that person has already been arrested for controlled substance violations. [Complaint, p. 8,

22  ¶33; p.17, ¶78.]   Individually-named plaintiffs allege that they have been held in the custody of the

23  Sheriff's Department pursuant to ICE detainers, in the absence of an arrest for controlled substances,

24  and claim that such detention was improper. [Complaint, pp. 11-12, ¶¶43, 47.]

25       Accordingly, it can be presumed from the allegations contained in the complaint that plaintiffs

26  believe that the overwhelming majority of immigration detainers ICE issues to local law enforcement

27  across the country – and that it and its predecessor the Immigration and Naturalization Service has

28  issued for decades – exceeds ICE's lawful authority pursuant to statute.  Consequently, plaintiffs

1   contend that the Sheriff's Department unlawfully relies on ICE's immigration detainers in holding

2   persons in custody pursuant to the terms and conditions of those detainers, absent a prior arrest for a

3   controlled substance violation.

4        Plaintiffs' Complaint contains a broad and ambiguous request for declaratory and injunctive

5   relief, as well as damages against all defendants via seventeen different claims for relief, based in both

6   state and federal law.  Plaintiffs' claims for relief against County Defendants fail on several grounds,

7   and should be dismissed, based on the following.

8

9   ### III.     LEGAL ARGUMENT

10  **A.     Plaintiff's Complaint Lacks Subject Matter Jurisdiction as to County Defendants, Requiring Dismissal Under FRCP 12(b)(1)**

11

12       Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint should be dismissed if the

13  plaintiff has failed to establish the court's subject matter jurisdiction.  (*Ashoff v. City of Ukiah*, 130 F.3d

14  409, 410 (9th Cir. 1997).)  Whether a party has standing in a case is a jurisdictional question.  (*Lujan v.*

15  *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).)  Plaintiff always bears the burden of establishing

16  subject matter jurisdiction; in effect, the court presumes lack of jurisdiction until plaintiff proves

17  otherwise.  (*Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 1675

18  (1994).)  In the instant case, plaintiffs have failed to demonstrate subject matter jurisdiction in the

19  following four separate areas.

20

21  #### 1.     Plaintiff CIRSC Lacks Standing to Assert Any Claims In This Case

22       To invoke the Court's subject matter jurisdiction, each plaintiff must satisfy the case-or-

23  controversy requirement of Article III, Section 2 of the U.S. Constitution. (*Northeastern Fla. Chptr.,*

24  *Associated General Contractors of Am. V. Jacksonville*, 508 U.S. 656, 663 (1993).) "[T]o satisfy Article

25  III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a)

26  concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is

27  fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

28

1   speculative, that the injury will be redressed by a favorable decision.  An association has standing to

2   bring suit on behalf of its members when its members would otherwise have standing to sue in their own

3   right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor

4   the relief requested requires the participation of individual members in the lawsuit."  (*Friends of the*

5   *Earth, Inc. v.  Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180-181 (2000), *citing Lujan v.*

6   *Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) and *Hunt v. Washington State Apple Advertising*

7   *Comm'n.*, 432 U.S. 333, 343 (1977).)

8           "The party invoking federal jurisdiction bears the burden of establishing these elements. . . .

9   Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case,

10  each element must be supported in the same way as any other matter on which the plaintiff bears the

11  burden of proof."  (*Lujan*, 504 U.S. at 561.)  Moreover, "when the plaintiff is not himself the object of

12  the government action or inaction he challenges, standing . . . is ordinarily 'substantially more difficult'

13  to establish."  (*Id*. at 562.)

14          In the instant case, CIRSC does not have standing to bring this action on its own behalf

15  (organizational standing) or on behalf of its purported members (representational standing), for two

16  reasons.  First, plaintiffs fail to state facts to establish organizational standing on behalf of CIRSC itself

17  because the allegations of the Complaint fail to satisfy each of Article III's standing requirements.

18  Plaintiffs allege only that:

19          The Committee [CIRSC] itself has been, and continues to be, harmed by Defendants'
20          practices because those practices undermine the Committee's [CIRSC'S] organizational
            mission and divert the Committee's resources from the pursuit of other, related goals.
21

22  [Complaint, p. 10, ¶ 40.]

23          These allegations are insufficient to establish that CIRSC has suffered any "injury in fact" as a

24  result of defendants' alleged conduct.  Allegations that defendants' practices "undermine the CIRSC's

25  organizational mission" and prevent CIRSC from pursuing other goals by diverting resources do not

26  show a "concrete and particularized," or "actual or imminent" injury.  Indeed, it appears that challenging

27  immigration practices of local and federal governments is precisely within the parameters of CIRSC and

28  its *raison d'etre*. [See Complaint, pp.9-10, *et seq*.]  The alleged injury to CIRSC is thus so conjectural

1    and hypothetical that it is simply inadequate to satisfy the Article III standing requirement that a plaintiff

2    show an "injury in fact." [1]

3            Second, CIRSC also lacks representational standing to assert claims on behalf of its members

4    because its members do not have standing to sue in their own right, the interests at stake are not germane

5    to CIRSC's purpose and the claims asserted and relief requested require the participation of individual

6    members in the lawsuit.  Plaintiffs assert that CIRSC, "is a community-based, non-profit membership

7    organization, comprised of Sonoma County residents and organizations whose mission is to educate and

8    mobilize the community around legal and social issues related to the rights of immigrants in Sonoma

9    County.   The Committee's [CIRSC's] membership includes persons who have been and/or are

10   imminently susceptible to being injured by Defendants' unlawful practices, as well as family members

11   of such persons."  [Complaint, pp.3,10 ¶¶6, 40.]  Plaintiffs allege that defendants have unlawfully

12   enforced civil immigration laws against Latino persons by stopping and arresting people who are or

13   appear to be Latino to probe into their immigration status without reasonable suspicion or probable

14   cause to suspect they have committed a crime or that they have an illegal immigration status.

15   [Complaint, pp. 5-6  ¶¶ 20-21.]  CIRSC members, however, do not have standing to sue for such

16   violations in their own right because its members include natural persons and "organizations", persons

17   who are "susceptible to being injured" and "family members of such persons."  "Organizations" are not

18   Latino persons who could be injured by the alleged conduct, and under the facts pled, could not sue in

19   their own right, and unspecified individuals who are "susceptible to being injured" and their undefined

20   "family members" are too vaguely identified to permit defendants or this Court to determine whether

21   these purported members could have standing to sue in their own right.

22           Importantly, the Complaint also fails to allege facts showing that the interests at stake in this

23   action are germane to CIRSC's purpose.  Plaintiffs allege CIRSC's "mission is to educate and mobilize

24

25           [1]  Further, whether CIRSC's vaguely defined injury based on its organizational mission being
26   undermined or its resources being diverted away from other goals is not fairly traceable to any action by
     defendants.  There are myriad reasons the Committee's mission may be undermined, or that it chooses to
27   allocate its resources in a certain manner, and no allegations in the complaint fairly attribute any such
     "injury" to defendants.  Additionally, it is speculative, and even unlikely, that a favorable decision could
28   remedy the Committee's hypothetical injuries.  The Committee fails to meet each of the necessary

the community around legal and social issues related to the rights of immigrants in Sonoma County" and that it works "to educate the public . . . and inform them about their rights." [Complaint, pp. 3, 9, ¶¶ 6, 37.] CIRSC's purposes and functions are thus political and educational. There are no facts indicating that the CIRSC's purpose is to represent the interests of its members in legal actions or in any other capacity, or that it acts to secure legal redress or prosecute legal actions for civil rights violations.

Further, the claims asserted and the relief requested requires the participation of individual members in the lawsuit. CIRSC cannot establish that persons who are or appear to be Latino have been unlawfully stopped without showing that particular individuals have been wrongfully stopped, thus the claims asserted require participation of individual members of CIRSC in the lawsuit. The relief requested, specifically, monetary damages, also necessarily requires the participation of individual members in this action who have suffered injury. Where an association does not allege any monetary damages to itself, nor any assignment of the damages claims of its members, no award for damages can be made to the association as such. (*Warth v. Seldin*, 422 U.S. 490, 515 (1975).) Moreover, where the damages claims are not common to the entire membership, nor shared by all in equal degree, "whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member . . . who claims injury as a result of [defendants'] practices must be party to the suit and [the association] has no standing to claim damages on his behalf." (*Id.*, at 516.)

Plaintiffs in this case pray that the Court, "[a]ward Plaintiffs nominal, compensatory, special, statutory, and punitive damages". [Complaint, p. 23, lines 1-2.] Plaintiffs thus seek damages on behalf of *all* plaintiffs, including CIRSC. Given that plaintiffs do not allege any facts that would support Article III standing on behalf of CIRSC itself, no damage award could be made to CIRSC for any injury. Plaintiffs identify three separate instances of alleged unconstitutional acts against the three individual plaintiffs and no particular instances related to other CIRSC members. There are no facts indicating that the damage claims are common to the entire CIRSC membership, or shared by all in equal degree. Any injury that may have occurred because of an unlawful stop, seizure or detention is necessarily peculiar to

requirements for Article III standing and has no standing to assert claims in this action on its own behalf.

any individual persons or CIRSC members concerned, and both the fact and extent of injury requires individualized proof by the individuals.  CIRSC, therefore, does not have standing to claim damages on behalf of its members – whether identified or not.

Accordingly, plaintiffs' Complaint fails to establish that CIRSC has either representational or organizational standing to assert the claims made therein, and all claims brought by CIRSC should be dismissed.

### 2.   None of the Plaintiffs Have Standing to Request Injunctive Relief Herein

Plaintiffs seek injunctive relief against all defendants to prevent them from stopping, interrogating, searching and detaining persons on the basis of race with respect to suspected immigration violations without a criminal arrest, and to prevent ICE from issue immigration detainers for persons not already in custody for controlled substances violations. [Complaint, p. 13, ¶54; pp. 21-22, ¶¶1-2.] Plaintiffs must demonstrate standing to seek this type of injunctive relief by showing that they face a credible threat of being injured by this conduct in the future; allegations of past illegal law enforcement conduct – if unaccompanied by any showing of continuing, present adverse effects – are insufficient to establish a claim for injunctive relief. (*O'Shea v. Littleton*, 414 U.S. 488, 494-96 (1974).)  In other words, allegations of past unlawful conduct do not demonstrate standing for a request for injunctive relief unless there is a realistic threat that plaintiffs will be subject to future unlawful conduct that could be enjoined. (See, *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).)

In the instant case, though the individually-named plaintiffs have alleged that they have been harmed by past unlawful conduct related to their immigration detention, they have not alleged that they face any realistic possibility of suffering any such conduct or being injured in the future; accordingly, such plaintiffs have failed to establish a "case or controversy" necessary to seek injunctive relief.  In addition, plaintiff CIRSC does not represent any other identified member who has alleged that he/she faces a realistic threat of any unlawful police conduct, which deprives CIRSC of standing to seek injunctive relief.   For these reasons, all claims for injunctive relief should be dismissed from the Complaint.

### 3. Plaintiffs Francisco Sanchez-Lopez and the Committee Failed to Comply With the Tort Claims Act, Which Bars Them From Claiming Damages Against County Defendants

The essence of the California Tort Claims Act is set forth in California Government Code Section 945.4, which provides in relevant part that, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . ." The term *money or damages* "is not defined in the act, [however,] it is comprehensive in scope and includes tort claims, arising out of negligence, nuisance, breach of statutory duties and intentional wrongs". (*Loehr v. Ventura County Comm. College Dist.* 147 Cal.App.3d 1071, 1079 (1983).) Claims for damages for violation of California Civil Code Section 52.1 also are subject to the Tort Claims Act. (*Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 763 (2002).)

It is well settled that failure to comply with the claim presentation requirements of the Tort Claims Act precludes any civil action against the public entity. (*Karim-Panahi v. Los Angeles Police Dept.,* 839 F.2d 621, 627 (9th Cir. 1988); *Fall River Joint Unified School Dist. v. Sup. Court,* 206 Cal.App.3d 431, 434 (1998); *State of Cal. Ex Rel. Dept. of Trans. v. Sup. Court,* 159 Cal.App.3d 331, 334 (1984).) "Compliance with the claims statute is mandatory and failure to file a claim is fatal to the cause of action." (*Pacific Tel. & Tel. Co. v. County of Riverside*, 106 Cal.App.3d 183, 188 (1980).)

Plaintiffs in the instant case allege that, on or about January 29, 2008, Plaintiffs Medel Moyado and Sonata-Vega each, "filed an administrative claim with Defendant Sonoma County pursuant to California Government Code § 910". [Complaint, p.14, ¶¶ 56 and 57.] The Complaint contains no allegations whatsoever alleging that Plaintiffs Sanchez-Lopez or CIRSC filed any claim with Defendant County. Plaintiffs Sanchez-Lopez and CIRSC's causes of action based on state law thus are barred by their failure to comply with the claim presentation requirements of the Tort Claims Act, warranting dismissal of such claims forthwith.

///

///

4.      **Plaintiff Sonato-Vega's State Law Claims for Relief Based on Incidents Occurring Before July 29, 2007, Are Barred By the Statute of Limitations Due to His Failure To File A Timely Claim**

Even though Plaintiff Sonata-Vega does allege that he filed a claim with Defendant County under the Tort Claims Act, his delay in doing so bars him from recovering damages for incidents that arose more than six months prior to the claim submission.  As California Government Code section 911.2(a) provides, "[a] claim relating to a cause of action for . . . injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action."  Plaintiffs' Complaint alleges that Sonato-Vega filed a tort claim with the County on January 29, 2008. [Complaint, p. 14, ¶ 57.]  Sonato-Vega's claim thus was timely only for incidents occurring within six months before his claim was filed; to wit, incidents occurring on or after July 29, 2007.

The Complaint, however, alleges that Sonato-Vega was unreasonably detained, "[i]n or about July, 2007," without providing a particular date such incident occurred – which vagueness appears intentionally to assert claims for incidents that may have occurred before July 29, 2007.  [Complaint, p. 12, ¶ 46.]  To the extent Sonato-Vega asserts state law causes of action for incidents occurring before July 29, 2007, such claims are barred by his failure to file a timely tort claim for such incidents, and should be dismissed.

B.      **Plaintiffs' Complaint Fails to State a Claim Upon Which Relief Can Be Granted as to County Defendants, Requiring Dismissal Under Federal Rule of Civil Procedure 12(b)(6)**

Dismissal of claims is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  (*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).)  In determining the adequacy of the pleading, the Court must determine whether plaintiffs would be entitled to some form of relief if the facts alleged in the complaint were true.  (*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978).)  However, the Court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations or unwarranted deductions of fact contained in plaintiff's complaint. (*SEC v. Seaboard Corp.*, 677 F.2d 1315, 1316 (9th Cir. 1982); *Western Mining Council v. Watt*, 643 F.2d 618, 630 (9th Cir. 1981).)  "If the pleadings establish facts compelling a decision one way, that is

as good as if depositions and other expensively obtained evidence on summary judgment establishes the identical facts." (*Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783, fn. 1 (9th Cir. 1997).)

Although the Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," plaintiffs are required to set forth sufficient facts "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993).)   As our Supreme Court recently reiterated, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." (*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007).)   "'It is not . . . proper to assume that the plaintiff can prove facts that it has not alleged or that the defendants have violated the . . . law in ways that have not been alleged.'"  [Citations omitted.]  (*Id*. at 1969, fn. 8.)  It is not enough that plaintiffs "*might* later establish some set of undisclosed facts to support recovery."  (*Id.*)[2]

As discussed below, plaintiffs' Complaint is conclusory and fails to state facts sufficient to state claims upon which relief can be granted against defendants.

**1.    ICE Has Authority to Issue Immigration Detainers that Require County Defendants to Take and Hold Persons in Local Custody, Even in the Absence of an Arrest for a Controlled Substance Violation**

Plaintiffs challenge ICE's authority to issue immigration detainers, and County Defendants' ability to execute those detainers by taking and/or holding persons suspected of civil immigration violations in custody *unless* they have been arrested for controlled substance violations. [Complaint, p.

---

[2] Further, 'if a complaint is dismissed for failure to state a claim upon which relief can be granted, leave to amend may be denied, even if prior to a responsive pleading, if amendment of the complaint would be futile.  [Citation.]  If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper." (*Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988).)

8. ¶33.]  Since October 5, 2007, CIRSC has met with the Sonoma County Sheriff and his staff regarding the Sheriff Department's cooperation with ICE and execution of ICE immigration detainers. [Complaint, p. 9, ¶36.]  CIRSC has conveyed to County Defendants its belief that ICE does not have the authority to issue immigration detainers for persons in the absence of an arrest for a controlled substance violation, because Congress has not expressly authorized ICE to do so.  Specifically, plaintiffs argue that the language of Title 8 of the United States Codes, Section 1357 ("Section 1357"), contained within the Immigration and Naturalization Act ("INA"), does not authorize the immigration detainer provisions contained in Title 8 of the Code of Federal Regulations, Section 287.7 ("Section 287.7").

Plaintiffs' contention relies on the language of subdivision (d) of Section 1357, which provides that, when an alien has been arrested by federal, state or local law enforcement for violating a controlled substances law, and an official has reason to believe that the person is in the United States unlawfully, that official may inform ICE of the facts and status of the alien, and request ICE to determine whether to issue a detainer.  Section 1357(d) further requires that ICE shall promptly determine whether to issue a detainer, and if a detainer issues, ICE "shall effectively and expeditiously take custody of the alien." (8 U.S.C. §1357(d).)  Plaintiffs submit that because Section 1357(d) specifies the procedure by which immigration detainers may issue for persons arrested for controlled substance violations, that it *ipso facto* prohibits ICE from issuing immigration detainers in any other circumstance.  Plaintiffs' argument fails on two counts:   first, it is not supported by the language of Section 1357(d), and second, it runs contrary to express authority Congress has granted to the Secretary of Homeland Security ("DHS Secretary"), the Attorney General,  and by delegation, to ICE.

First, nothing in either the language of Section 1357(d or any case law supports plaintiffs' conclusion that the provisions of that section were intended to limit ICE's authority to issue detainers only when an individual has been arrested for a controlled substance violation.  Instead, a review of Section 1357(d) demonstrates that Congress placed special demands on ICE to issue detainers for

suspected illegal aliens when they have been arrested by any law enforcement officer for a controlled substance violation.  The apparent intent of this provision is to limit ICE's discretion in cases where suspected aliens are arrested for controlled substance violations, and require the issuance of detainers under such circumstances as well as action by ICE to take such persons into custody "effectively and expeditiously". (8 U.S.C. §1357(d).)  The fact that Congress directs ICE to take action in the case of suspected aliens arrested for controlled substance violations does not limit or otherwise curtail ICE's authority to exercise its discretion to issue detainers in other types of cases.

Second, the Code of Federal Regulations and authority vested by Congress demonstrate that ICE has the authority to issue immigration detainers to local law enforcement in the circumstances alleged in the Complaint.  Section 287.7 provides that any authorized immigration officer may, at any time, issue an immigration detainer to any other Federal, State, or local law enforcement agency. (8 C.F.R. 287.7(a).)  Section 287.7 further allows ICE to require local law enforcement to temporarily detain an alien for investigative purposes:

> Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department [ICE].

(8 C.F.R. §287.7 (d).)  The language of Section 287.7 states that detainers are issued pursuant to sections 236 and 287 of the INA [8 U.S.C. §§1226 and 1357, respectively], as well as Chapter 1 of Title 8 of the Code of Federal Regulations, entitled "Department of Homeland Security (Immigration and Naturalization)." (8 C.F.R. §287.7(a).)   In Section 287.7's legislative history states that its authority is derived from Title 8 of the United States Codes, Sections 1103, 1182, 1225, 1226, 1251 [transferred §1227], 1252, 1357, the Homeland Security Act of 2002 (6 U.S.C. 1, et seq.), and 8 C.R.F. part 2. (See 8 C.F.R. §287.7, "Authority".)  The executive authority provided by these laws is extensive.

Specifically, both the Homeland Security Act of 2002 and Chapter 1 of the Code of Federal

14

Regulations provide extremely broad grants of authority to federal officials to administer and enforce immigration laws.  Section 112 of Title 8 of the United States Codes creates the office of the DHS Secretary as its head: all functions of all officers, employees, and organizational units of the Department of Homeland Security are vested in the Secretary. (6 U.S.C. §112.)  The DHS Secretary is vested with the following powers and duties, among many others:

(1) Administering and enforcing the INA and all other laws relating to the immigration and naturalization of aliens, except insofar as the INA or such laws relate to the powers, functions and duties conferred upon other executive branch officers (8 U.S.C. §1103(a)(1));

(2)  Establishing such regulations, issuing such instructions, and performing such other acts, *inter alia,* as he deems necessary for carrying out his authority under the provisions of the INA (8 U.S.C. §1103(a)(3));

(3) Requiring or authorizing any employee of ICE or the Department of Justice to perform or exercise any of the powers, privileges, or duties conferred or imposed by this chapter or the regulations issued hereunder upon any other employee of ICE (8 U.S.C. §1103(a)(4)); and

(4) Controlling and guarding the boundaries and borders of the United States against the illegal entry of aliens. (8 U.S.C. §1103(a)(5).)

Further, the authority described in Chapter 1 of Title 8 the Code of Federal Regulations plenary, and generally provides authority to the DHS Secretary to administer and enforce immigration laws, as well as delegate such authority to other officers or departments within the Department of Homeland Security (8 C.F.R. §2.1).[3]  Title 8, Chapter 1 of the Code of Federal Regulations also provides authority to the Attorney General to establish regulations "as he deems necessary for carrying out his authority under the provisions of the [INA]," and to delegate such authority to the Commissioner of Immigration

---

[3]  Chapter 1 of Title 8 of the Code of Federal Regulations also provides the following executive authority:  it provides direct authority to the Commissioner, subject to certain limitations, to enforce the INA and all other laws relating to immigration (including but not limited to admission, exclusion, and deportation), as well as the duty to "investigate alleged violations of immigration and nationality laws, and make recommendations for prosecutions when deemed advisable" (8 C.F.R. §.105); provides that the Attorney General has delegated to the Commissioner of the Immigration and Naturalization Service the authority to administer and enforce the INA and all other law relating to immigration, naturalization, and nationality as prescribed and limited by 28 C.F.R. 0.105; and allows the DHS Secretary to delegate functions and authority to act under immigration laws to immigration officers. (8 C.F.R. §103.1.)

COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

and Naturalization. (8 C.F.R. §100.6.)  In addition, regulations that serve as authority for Section 287.7 expressly allow immigration officers to interrogate and detain suspected illegal aliens absent arrest:

> If an immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned is, or is attempting to be, engaged in an offense against the United States or is an alien illegally in the United States, the immigration officer may briefly detain the person for questioning.

(8 C.F.R. 287.8(b)(2).)  The detainer provisions of Section 287.7 are simply a means of achieving this end when the alien is held in the custody of local law enforcement.

The Attorney General and, more recently, the DHS Secretary, have been granted extensive discretionary powers to make rules and regulations, and administer the INA.  (*Sam Andrews' Sons, etc. v. Mitchell*, 457 F.2d 745, 748 (9th Cir. 1972).)  Not every regulation adopted or action taken must be specifically authorized by statute – such actions are authorized so long as they are reasonably related to the duties imposed. (*Narenji v. Civiletti*, 617 F.2d 745, 747 (D.C. Cir. 1980) (as amended), *cert. denied*, 446 U.S. 957 (1980).)  Indeed, the Supreme Court has placed a heavy burden on those who would overturn an administrative regulation:

> A regulation … should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law.  Those who insist that such regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress

(*Boske v. Comingore*, 177 U.S. 459, 470 (1900); see also, *Ramirez v. Immigration & Naturalization Service,* 550 F.2d 560, 563-4 (9th Cir. 1977).)

Based on the broad and plenary powers that Congress granted to the Attorney General to enact regulations and the powers granted to the DHS Secretary to administer and enforce immigration laws, it is apparent that ICE has been legally authorized to issue immigration detainers, and Section 287.7 is palpably within the authority granted by Congress.  For these reasons, the claims for relief based on plaintiffs' challenges to Section 287.7 must fail.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> **2.      County Defendants are Authorized to Cooperate with ICE and Can Justifiably Rely on the Facial Validity of Immigration Detainers ICE Issues, Even If Such Detainers are Ultimately Deemed Legally Inadequate**

Plaintiffs allege in their complaint that neither state nor federal law authorizes County Defendants to detain individuals based on civil immigration violations. [Complaint, p. 7, ¶30.]  They challenge the Sheriff Department's ability to cooperate with ICE and hold persons suspected of civil immigration violations in the county jail based solely on an ICE detainer for the purpose of remanding them into ICE custody. [Complaint, p. 7, ¶28.]  Plaintiffs' claims in this regard are patently incorrect and require dismissal, for the following reasons.

Congress has recognized the importance of securing local law enforcement assistance to permit ICE to be able to carry out its functions to administer and enforce immigration laws in three separate statutes.  Sections 1373 and 1644 of Title 8 of the United State Codes both mandate that the communication of information relating to the immigration status of individuals between local government entities or officials and ICE cannot be prohibited or restricted. (8 U.S.C. §§1373, 1644.)  In addition, Section 1357 of the INA also provides a mechanism for local law enforcement to cooperate with ICE to assist in the enforcement of immigration laws: it allows for the Attorney General to enter into written agreements with local governments to allow local law enforcement officers to perform the functions of immigration officers. (See, 8 U.S.C. §1357(g).)

Plaintiffs correctly allege that the Sheriff's Department has not entered into a written agreement with ICE to permit its deputies to act as immigration officers. [Complaint, p. 8, ¶32.]  However, even in the absence of such a written agreement, local law enforcement officers are expressly authorized to cooperate with ICE. As provided in Section 1357(g:

> (10) Nothing in this subject shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State –
>
> > (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not

lawfully present in the United States; or

(B) otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

(8 U.S.C. §1357(g)(10).)[4]   Such Cooperation with ICE may result in the issuance of a detainer under Section 287.7.

Not only has Congress authorized the local law enforcement to cooperate with ICE, but the Sheriff has discretion as an executive branch officer of the government to cooperate with ICE, as well as to provide and receive mutual aid. (*Calatayud v. State of California,* 18 Cal.4th 1057, 1069 (Cal.,1998); Cal. Const., Art. V, §1.)   Plaintiffs' challenge to the Sheriff's exercise of his discretion to cooperate with other law enforcement agencies, including ICE, is a political question not appropriate for judicial resolution.

Regardless of ICE's actual legal authority to require that the Sheriff's Department detain a person suspected of violating civil immigration laws under Section 287.7 or otherwise, ICE's apparent or ostensible authority is sufficient to permit the Sheriff's Department to reasonably rely on it without risking liability for damages.   This reliance is justifiable based on the express and broad grant of authority Congress has provided to the DHS Secretary and ICE to administer and enforce immigration laws [see, e.g., 8 U.S.C. §1103], as well as the facial validity of immigration detainers ICE issues pursuant to the express provisions of Section 287.7.   The Sheriff's Department is entitled to rely upon an otherwise facially valid orders or process to detain an individual in custody, without investigating the

---

[4]   Many provisions in the INA and its implementing regulations refer to the "Attorney General" and the "INS".  However, the INS was abolished by virtue of 6 U.S.C. §291, and its functions have been transferred to the new Department of Homeland Security. (8 U.S.C. §1103(a)(1).)  In addition, the duty of the Attorney General to administer and enforce all immigration laws, with certain exceptions, have been transferred to the DHS Secretary. (*Id.*)  Although the Attorney General continues to have some involvement in the enforcement of immigration laws, most references to the "Attorney General" in statutes and regulations which survive the changes wrought by the Homeland Security Act of 2002 [6 U.S.C. §1, et seq.]  actually refer to the DHS Secretary or his subordinates in ICE; Congress has simply

legal or factual bases therefor.  (See, e.g., Cal. Code of Civ. Proc. §262.1[5]; *Vallindras v. Massachusetts Bonding & Ins. Co.,* 42 Cal.2d 149, 153 -156 (1954).)

The Sheriff is not simply entitled to rely on the facial validity of immigration detainers to maintain persons in his custody, he is required to do so.  The express language of Section 287.7 is mandatory, not discretionary: subdivision (d) provides that, upon issuance of an immigration detainer, an agency "*shall* maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department [emphasis added]." (8 C.F.R. §287.7(d).)  Unless an immigration detainer is invalid on its face, the Sheriff's Department is thus required to execute it, even if it is ultimately determined that the detainer was issued erroneously. In executing immigration detainers, the Sheriff's Department is thus fulfilling a ministerial function, for which it cannot be held liable if the detainer is later deemed invalid. (See, Cal. Code of Civ. Proc. §262.1.)

Accordingly, plaintiffs' challenges to the Sheriff's Department cooperation with ICE officials in taking or retaining persons suspected of civil immigration violations into custody pursuant to immigration detainers has no basis in law or fact, and should be dismissed.

>    **3.    Plaintiffs Fail to Allege Facts Sufficient to State  a Claim for Relief Under 42 U.S.C. Section 2000d,** *et seq.* **(Title VI)**

Title 42 of the United States Codes, Section 2000d, provides that, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  In support of their claim under Title VI, plaintiffs assert that, "[u]pon information and belief, Sonoma County and the Sonoma County Sheriff's Department and their programs or

---

not yet revised the INA to reflect such organizational changes.
[5]  California Code of Civil Procedure Section 262.1 provides, "[a] sheriff or other ministerial officer is justified in the execution of, and shall execute, all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued."

activities receive financial assistance and funding from the United States government."  [Complaint, p. 16, ¶ 74.]  Plaintiffs' allegations are entirely speculative and conclusory.  (*Fields v. Palmdale School District*, 427 F.3d 1197, 1208-1209 (9th Cir. 2005).)  There are no facts at all offered in support of plaintiffs' assertion that County receives Federal financial assistance and funding. The Court need not accept as true conclusionary allegations, and "'[i]t is not . . . proper to assume that the plaintiff can prove facts that it has not alleged".  (*Twombly, supra,* 127 S.Ct. at 1969, fn. 8.)  It is not enough that plaintiffs "*might* later establish some set of undisclosed facts to support recovery."  (*Id.* at 1969.)  Plaintiffs' assertion that the County "receives financial assistance and funding from the United States government" is wholly conclusory and not based on any supporting facts that could support such an inference.

Plaintiffs also fail to allege facts showing they were subjected to discrimination under a particular program that receives Federal financial assistance under Section 2000d.  It is not enough for plaintiffs to merely show defendants receive Federal financial assistance as such assistance could be wholly unrelated to the discrimination allegedly suffered.  The complaint thus fails to state *facts* sufficient to state a claim for relief under 42 U.S.C. Section 2000d.

### 4. Plaintiffs Fail to Allege Facts to State a Claim for Relief for Violation of California Government Code § 11135 And Its Implementing Regulations

California Government Code Section 11135 provides in relevant part that, "[n]o person in the State of California shall, on the basis of race, national origin, ethnic group identification . . . be unlawfully subjected to discrimination under, any program or activity that . . . receives any financial assistance from the state."  "[T]he apparent legislative purpose and intent in enacting Government Code section 11135 *et seq.* was to prohibit discriminatory treatment of any person on the basis of categories described in section 11135 only by those charged with effectuating programs or activities which receive directly or indirectly state support."  [Emphasis added.]  (*People v. Levinson*, 155 Cal.App.3d Supp. 13, 18 (1984).)  "That the Legislature intended only to prohibit discriminatory practices by those implementing state-assisted programs and activities is further evidenced by reference to the other statutory provisions contained within article 9.5."  (*Id.*)

Plaintiffs' complaint includes only the conclusory assertion that, "[u]pon information and belief,

Defendant Sonoma County receives financial assistance from the State of California, thus subjecting it to the prohibitions of Cal. Govt. Code § 11135 and its implementing regulations." [Complaint, p. 20, ¶ 97.) The complaint again contains no facts at all to support this conclusion or any such inference. More importantly, plaintiffs merely allege that the County receives financial assistance from the State. They include no facts indicating that any alleged financial assistance funds or is related to any particular program, or that plaintiffs were subjected to discrimination under a County program that receives financial assistance from the state. It is not enough that the County merely receives state funds to state a claim for relief under Government Code Section 11135. (*People v*. Levinson, 155 Cal.App.3d Supp. 13 (1984).) Plaintiffs' complaint thus fails to state facts to set forth the necessary causal connection between their alleged discrimination and a state funded County program. Defendants' motion to dismiss in this regard should be granted.

### 5. Plaintiffs Fail to Allege a Statutory Bases for Several State Law Claims for Relief, Which Are Required to Overcome Grant of Governmental Immunity

Plaintiffs' fifteenth claim for relief for false arrest and imprisonment, sixteenth claim for relief for intentional infliction of emotional distress and seventeenth claim for relief for negligence against the County are subject to dismissal because the complaint fails to allege a statutory basis for the County's liability. California Government Code Section 815(a) provides that *"[e]xcept as otherwise provided by statute*, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [Emphasis added.]"  Governmental immunity is the rule unless liability is imposed by statute. (*Dominguez v. Solano Irrigation Dist.,* 228 Cal. App. 3d 1098, 1102 (1991).)

"Tort liability of public entities in California is governed by the Tort Claims Act (Gov. Code §§ 810 *et seq.*). The act provides generally that public entities are not liable for injuries 'except as otherwise provided by statute . . .' (§ 815, subd. (a).) Section 815 'abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation.' . . . Accordingly, 'public entities may be held liable only if a statute . . . is found declaring them to be liable.'" (*Forbes v. County of San Bernardino,* 101 Cal.App.4th 48, 53 (2002), *citing Creason v. State Dept. of Health Services,* 18 Cal.4th

623, 630 (1998).)  "Thus, in California, 'all government tort liability must be based on statute . . .'" (*Hoff v. City of Vacaville,* 19 Cal.4th 925, 932 (1998), *citing Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 785, fn. 2 (1985).  *See also, Swaner v. City of Santa Monica,* 150 Cal.App.3d 789, 797-798 (1984) ; *Brown v. Poway Unified School Dist.,* 4 Cal.4th 820, 829 (1993).)

Plaintiffs' complaint thus fails to allege a statutory basis for their false arrest and imprisonment, intentional infliction of emotional distress and negligence claims against the County, requiring that such claims be dismissed based on the guarantees of governmental immunity.

### 6.   Plaintiffs' Prayer for Punitive Damages Against The County Is Improper

Plaintiffs pray for punitive damages against all defendants, including the County.  [Complaint, 23:1-2.]  Government Code Section 818, however, provides that, "[n]otwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."  Accordingly, punitive damages may not be awarded against the County as a matter of law.  Plaintiffs' complaint thus fails to state a valid claim for punitive damages against the County and defendants' motion to dismiss in this regard should be granted without leave to amend.

### C.   Alternatively, Defendants Request that the Court Require Plaintiffs to File a More Definite Statement, Due to the Complaint's Vagueness, Ambiguity and Uncertainty

Federal Rule of Civil Procedure 12(e) provides that, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." While defendants readily acknowledge that a motion for a more definite statement under Rule 12(e) is a disfavored motion, plaintiffs' Complaint in the instant case is so deficient that a more definite statement should be required.

Plaintiffs' Complaint, brought by three individual plaintiffs and one entity, contains 9 pages of factual allegations pertaining to: (1) policies, customs and practices of ICE; (2) policies, customs and practices of the Sheriff's Department; (3) the use of immigration detainers; (4) alleged denial of procedural protections; (5) injuries to CIRSC; and, (6) experiences of the three individual plaintiffs. Plaintiffs plead 17 causes of action against 8 defendants.  In each cause of action, rather than specifying

which facts contained in the 9-page factual recitation are applicable, plaintiffs incorporate the initial 9 pages by reference and then state that some undefined policies, practices and conduct of defendants listed in the initial 9 pages violate plaintiffs' rights.  For example, the Complaint alleges that County Defendants violated plaintiffs' federal and state constitutional rights to be free from unreasonable searches and seizures (First and Tenth Claims for Relief), their rights to equal protection (Second and Eleventh Claims for Relief), and their rights to due process (Third and Eleventh Claims for Relief). These claims include only a collective reference to "plaintiffs" as the claimants, and are based on a general reference to the numerous facts alleged in the previous 9 pages of the Complaint – many of which have no possible relevance to such claims for relief.

The Complaint does not allege which plaintiff alleges a violation of their constitutional rights, which facts support such a claim, or what harm plaintiffs have suffered as a result.  Such pleading deficiency is evidence when it appears that plaintiff CIRSC is making claims based on these constitutional rights – to which it is not entitled.  Given the complete lack of reference to specific factual allegations to support each of the 17 causes of action, defendants are required to guess which facts plaintiffs intend to rely on in support of each cause of action.  The complaint is thus so vague, ambiguous and/or uncertain that defendants cannot reasonably prepare a response.

Finally, plaintiffs' "Prayer for Relief" seeks compensatory damages, statutory damages, injunctive relief, declaratory relief, punitive damages and attorneys' fees, in many cases, without limitation as to claim or defendant.  Each form of relief sought does not apply to each defendant.  For example, punitive damages awards are not permitted against a public entity defendant for state law claims under California Government Code Section 818.  Additionally, plaintiffs' fourth prayer for relief, regarding the validity of Title 8 of the Code of Federal Regulations, Section 287.7, would appear to apply only to the Federal Defendants. Absent a claim-by-claim prayer for relief, defendants are unable to respond to each claim for relief as to each cause of action.

These pleading deficiencies render County Defendants unable to understand the nature or bases for plaintiffs' claims to answer or defend against them.  Accordingly, Defendants submit that plaintiffs should be ordered to amend their complaint and to cure the pleading deficiencies identified herein.

1

## IV.    CONCLUSION

2      For the reasons set forth above, County Defendants respectfully request that the Court dismiss

3  the claims alleged against County Defendants contained in the Complaint for Declaratory and Injunctive

4  Relief and Damages, pursuant to FRCP Rule 12(b), subsections (1) and (6); alternatively County

5  Defendants request that the Court order Plaintiffs to provide a more definite statement pursuant to FRCP

6  Rule 12(e), and for such other and further relief as this Court deems just and proper.

7  Dated:  January 28, 2009                    Respectfully submitted,
                                               Stephen M. Woodside, County Counsel
8

9                                              By  _____/s/_____

10                                                 Anne L. Keck, Deputy County Counsel
                                                   Sonoma County
11                                             BERTRAND, FOX & ELLIOT

12                                             By  _____/s/_____

13                                                 Thomas F. Bertrand
                                                   Richard W. Osman
14

15                                             Attorneys for Defendants COUNTY OF SONOMA,
                                               SHERIFF-CORONER WILLIAM COGBILL, and
16                                             DEPUTY SHERIFF MORRIS ERIC SALKIN

17

18

19

20

21

22

23

24

25

26

27

28

COUNTY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF