THOMAS F. BERTRAND, State Bar No. 056560
RICHARD W. OSMAN, State Bar No. 167993
BERTRAND, FOX & ELLIOT
The Waterfront Building
2749 Hyde street
San Francisco, CA 94109
Telephone: (415) 353-0999
Facsimile: (415) 353-0990
E-mail: rosman@bfesf.com

STEVEN M. WOODSIDE State Bar No. 58684
County Counsel
ANNE L. KECK, State Bar No. 136315
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105
Santa Rosa, California 95403-2815
Telephone: (707) 565-2421
Facsimile: (707) 565-2624
E-mail: akeck@sonoma-county.org

Attorneys for Defendants
County of Sonoma, Sheriff-Coroner William
Cogbill, Deputy Sheriff Morris Eric Salkin

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SONOMA, et al., <br><br> Defendants. | No. CV-08-4220-PJH <br><br> **COUNTY DEFENDANTS' REPLY RE MOTION TO DISMISS AND MOTION FOR MORE DEFINITE STATEMENT** <br><br> Date:  April 22, 2009 <br> Time:  9:00 a.m. <br> Place: Courtroom 3, 17th Floor <br> Judge: The Honorable Phyllis J. Hamilton |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Plaintiffs' Complaint Lacks Subject Matter Jurisdiction as to County Defendants, Requiring Dismissal under FRCP 12(b)(1) . . . . . . . . . . . . 2

        1.    Plaintiff CIRSC Lacks Standing to Assert Any Claims in this Case. . . . . 2

            a.    CIRSC Lacks Organizational Standing . . . . . . . . . . . . . . . . . . . . . 2

            b.    CIRSC Lacks Representational Standing . . . . . . . . . . . . . . . . . . . 4

        2.    None of the Plaintiffs Have Standing to Request Injunctive Relief Herein . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3.    Plaintiffs Francisco Sanchez-Lopez and the Committee Failed to Comply with the Tort Claims Act, Which Bars Them from Claiming Damages Against County Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        4.    Plaintiff Sonato-Vega's State Law Claims for Relief Based on Incidents Occurring Before July 29, 2008, Are Barred by the Statute of Limitations Due to His Failure to File a Timely Claim . . . . . . 7

    B.    Plaintiffs' Complaint Fails to State a Claim upon Which Relief Can Be Granted as to County Defendants, Requiring Dismissal under Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.    ICE Has Authority to Issue Immigration Detainers That Require County Defendants to Take and Hold Persons in Local Custody, Even in the Absence of an Arrest for a Controlled Substance Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.    County Defendants Are Authorized to Cooperate with ICE and Can Justifiably Rely on the Facial Validity of Immigration Detainers ICE Issues, Even If Such Detainers Are Ultimately Deemed Legally Inadequate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.    Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Relief under 42 U.S.C. Section 2000d, *et seq.* (Title VI) . . . . . . . . . . . . . . . . . 11

        4.    Plaintiffs Fail to Allege Facts to State a Claim for Relief for Violation of California Government Code Section 11135 and its Implementing Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        5.    Plaintiffs Fail to Allege a Statutory Bases for Several State Law Claims for Relief, Which Are Required to Overcome Grant of Governmental Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        6.    Plaintiffs' Prayer for Punitive Damages Against the County Is Improper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.    Alternatively, Defendants Request That the Court Require Plaintiffs to File a More Definite Statement, Due to the Complaint Vagueness, Ambiguity and Uncertainty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**III.**     **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bell Atlantic Corp. v. Twombly*
 550 U.S. 544; 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Darensburg v. Metro. Trans. Comm'n*
 2008 U.S. Dist. Lexis 63991 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Darrensburg v. Metro. Trans. Comm'n*
 No. 05-01597, 2008 WL 3915349 at 14 (N.D. Cal. Aug. 21, 2008) . . . . . . . . . . . . . . . . 13

*Fontana v. Haskin*
 262 F.2d 871 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*
 528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*Havens Realty Corp. v. Coleman*
 455 U.S. 363 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hodgers-Durgin v. De La Vina*
 199 F.3d 1037 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*LaDuke v. Nelson*
 762 F.2d 1318 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Lujan v. Defenders of Wildlife*
 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nelson v. King County*
 895 F.2d 1249 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*People v. Barajas*
 81 Cal.App.3d 999 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Laiwa*,
 34 Cal.3d 711 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Levinson*
 155 Cal.App.3d Supp. 13 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sierra Club v. C.B. Morton*
 405 U.S. 727 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Smith v. Pacific Properties and Development Corp.*
 358 F.3d 1097 (9th Cir. 2004), *cert denied*, 543 U.S. 869 (2004) . . . . . . . . . . . . . . . . . . 3

*Texas v. United States*, et al.
 523 U.S. 296 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Statutes and Other Sources**

8 C.F.R. §287.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

8 U.S.C. §1103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

8 U.S.C. §1325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 U.S.C. §1357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

22 Cal. Code of Regulations §98010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

22 Cal. Code of Regulations §98101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

42 U.S.C. § 2000d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Cal. Code of Civ. Proc. § 262.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Cal. Gov. Code §11135 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

Federal Rules of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Federal Rules of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

Federal Rules of Civil Procedure 12(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rules of Evidence 801-803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

United States Constitution, Article III, Section 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

## I. INTRODUCTION

Defendants the County of Sonoma, Sonoma County Sheriff-Coroner William Cogbill, and Deputy Sheriff Morris Eric Salkin (collectively, "County Defendants") hereby reply to Plaintiffs' Opposition to their Motion to Dismiss brought under Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), and their Motion for More Definite Statement brought under FRCP 12(e). In their Opposition, Plaintiffs attempt to obfuscate the issues by relying on the fact that their Complaint is overly broad, ambiguous, and unintelligible. The causes of action and prayers for relief in the Complaint do not relate to the facts actually alleged, which makes it virtually impossible to determine precisely what relief Plaintiffs seek against which defendants and the factual bases therefor. The fact that Plaintiffs felt compelled to include a chart in their Opposition (Appendix A) as well as file a declaration[1] with it, in an attempt to clarify each Plaintiff's separate claims, serves to demonstrate that the Complaint is defective on its face.

The primary difficulty in interpreting the Complaint lies in the fact that it is essentially three types of lawsuits folded into one. First, the Complaint presents a legal challenge to ICE's authority to issue immigration detainers for persons not arrested for controlled substance violations, and for the County Defendants to comply with such detainers. Second, once such detainers are issued, the Complaint alleges that ICE fails to provide certain statutory due process procedures to persons detained for removal proceedings with due speed. Third, the Complaint also alleges that both Federal and County Defendants engage in racial or national origin-based profiling to serve as a basis for an initial stop that leads to a detention. The requests for relief based on these three types of claims are ambiguous and extraordinarily broad, and seek damages as well as declaratory and injunctive relief. In their requests for injunctive relief, Plaintiffs fail to identify what type of relief they seek from this Court other than to require that Defendants comply with existing law.

---

[1] County Defendants object to the Declarations of Julia Harumi Mass submitted in support of Plaintiffs' Opposition to the Motions to Dismiss, and request that the Court exclude such Declarations and attached documents from its consideration, as they seek to admit extraneous evidence not specifically alleged in the Complaint, and the attached documents constitute inadmissible hearsay absent further proof. (Fed. Rules Evid. 801-803.)

COUNTY DEFENDANTS' REPLY RE MOTION TO DISMISS
AND MOTION FOR MORE DEFINITE STATEMENT           1            USDC Case No. CV-08-4220 PJH

1    Plaintiffs admit that their Complaint is defective in several respects, and now limit the types of
2 claims and requests for relief sought by each Plaintiff.[2] Even with an amended complaint waiting in
3 the wings, resolution of the presented issues would be beneficial to the parties at this stage in the
4 proceedings.

5    For ease of reference and to permit the Court and parties to follow the flow of arguments,
6 County Defendants have retained in this Reply the organization and headers as set forth in their
7 moving papers.  County Defendants do not respond to every argument proffered in Plaintiffs'
8 Opposition, as several of them appear to be immaterial, irrelevant, or based on inapplicable authority.
9 Any failure to respond to a specific argument presented by Plaintiffs should not be considered as
10 consent, and County Defendants reserve their right to contest such arguments and claims in the future.

## II.    LEGAL DISCUSSION

### A.    Plaintiffs' Complaint Lacks Subject Matter Jurisdiction as to County Defendants, Requiring Dismissal under FRCP 12(b)(1)

#### 1.    Plaintiff CIRSC Lacks Standing to Assert Any Claims in this Case

Contrary to the allegations contained in the Complaint, Plaintiffs now claim that CIRSC does not seek damages, but solely seeks injunctive relief on behalf of its members.  Plaintiffs argue that CIRSC has standing to request injunctive relief on behalf of its unnamed members (representational standing) as well as on its own behalf (associational standing).   However, the Complaint fails to allege facts to demonstrate CIRSC has standing under either theory, as discussed below.

##### a.    CIRSC Lacks Organizational Standing

As an initial matter, CIRSC cannot demonstrate organizational standing to sue in its own right because it lacks an "injury in fact" which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical – which factors are required to establish standing under Article III of Section 2 of the U.S. Constitution ("Article III"). (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).)  CIRSC claims it has organizational standing because it has demonstrated a "frustration of purpose" and shown that the challenged governmental actions require a "diversion of

---

[2] See, e.g., Plaintiffs' Memorandum of Points and Authorities in Opposition to County Defendants' Motion to Dismiss (the "Opposition"), at p. 4, footnotes 1 and 2, and Appendix A thereto.

resources." Such frustration and diversion may be shown by demonstrating that the alleged practices have perceptibly impaired the organizational plaintiff's ability to provide the services it was formed to provide [see *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982)] and that it has had to divert its resources away from its mission to combat the unlawful governmental action. (See *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004), *cert. denied*, 543 U.S. 869 (2004).) Yet, is apparent from a review of Plaintiffs' Opposition that they misinterpret these two requirements and have failed to satisfy them.

First, Plaintiffs have alleged only that CIRSC's mission is to "educate and mobilize the community around legal and social issues related to the rights of immigrants in Sonoma County" [Complaint, ¶6] – its purpose is not to ensure compliance with immigration or related laws. CIRSC has not alleged that Defendants have prevented it from educating and mobilizing the community regarding immigration issues. (Complaint, ¶¶6, 37.) In other words, it appears that CIRSC was formed for the very purpose of educating the public about government actions related to immigration enforcement, and thus its purpose is being fulfilled rather than frustrated. Likewise, CIRSC's own allegations demonstrate that its resources are not being diverted by any alleged governmental action, but rather are being used to educate and mobilize the community consistent with its mission.

Second, the fact that CIRSC's goal is to change existing immigration law does not confer it with standing in this action. As CIRSC alleges in the Complaint, its "mission has been to oppose anti-immigrant legislation and policies at both federal and local levels." (Complaint, ¶37) This is a political goal of legislative and executive reform, which demonstrates that CIRSC has not suffered any "injury in fact," but is rather pursuing its political values. However, an organization's mere interest in a problem is not sufficient to render the organization "adversely affected" to confer standing. (*Sierra Club v. C.B. Morton*, 405 U.S. 727, 740 (1972).) In addressing a Sierra Club challenge brought under the Administrative Procedure Act, the Supreme Court declared that an organization cannot demonstrate standing simply by pursuing its own political values:

> The requirement that a party seeking review must allege facts showing that he is himself adversely affected ... does serve at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome. That goal would be undermined were we to construe the APA to authorize judicial review at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process.

1  (*Sierra Club v. C.B. Morton*, 405 U.S. 727, 740 (1972).)

2  Likewise, in the instant case, CIRSC has suffered no damage or injury itself, nor has it diverted its resources to any purpose other than those for which it was expressly formed.  CIRSC states that it was formed in direct response to the actions of defendants alleged in the Complaint [Opposition, 13:22-26], and thus its resources have been intentionally aimed at preventing Defendants from continuing their law enforcement actions.  CIRSC thus has a political purpose of immigration reform, and since it has admittedly failed to obtain legislative or executive reform through the political process [see Complaint, ¶¶36, 39], it has now turned to the courts to effectuate its political goals.  If this were sufficient to confer standing, then any organization whose members desire to challenge governmental action would have standing to sue if such action contradicted the values or goals of the organization.  CIRSC's desire for immigration reform and to stop the Sheriff from cooperating with ICE to enforce existing immigration law thus cannot confer it with standing in this action.

### b. CIRSC Lacks Representational Standing

County Defendants also submit that CIRSC lacks standing to sue on behalf of its members, as it fails to demonstrate the three necessary elements of representational standing required by *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181 (2000).  Plaintiffs respond by stating that, to demonstrate representational standing, they modeled the allegations in the Complaint based on the case of *LaDuke v. Nelson,* 762 F.2d 1318 (9th Cir. 1985).  Yet, *LaDuke* did not analyze whether an organizational plaintiff had representational standing, but instead analyzed whether a plaintiff class certified under Federal Rule of Civil Procedure 23(b)(2) had standing based on the ruling in *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983).  The *LaDuke* Court distinguished the facts in that case from *Lyons* in four separate ways to determine that the plaintiff class had standing: (1) there was a likelihood of recurrent injury; (2) defendants engaged in a standard pattern of officially sanctioned officer behavior; (3) the absence of prudential considerations; and (4) plaintiffs constituted a certified class. (*LaDuke*, 762 F.2d at 1325.)

In the instant case, Plaintiffs can meet none of these *LaDuke* factors: (1) Plaintiffs have failed to allege that there is a likelihood of recurrent injury sufficient to demonstrate standing – which is addressed in Section II.A.2, below; (2) Plaintiffs have failed to allege that any unlawful activity (e.g., racial profiling, unreasonable stops and seizures) is part of a standard pattern of officially sanctioned

officer behavior; (3) Plaintiffs request this Court to issue injunctive relief against local law enforcement officials, which implicates federalism, comity issues, and prudential considerations; and (4) Plaintiffs are not a certified class and have not had to meet the necessary pre-requisites set forth in Federal Rule of Civil Procedure 23.

CIRSC's generalized policy arguments should not divert attention away from the specific requirements they must meet to demonstrate organizational standing herein as required by *Friends of the Earth*, as follows:

> i. *CIRSC Members do not have standing to sue in their own right:* Aside from Plaintiffs Sanchez-Lopez and Medel Moyado, it appears that none of CIRSC's other members have standing to sue in their own right. While Plaintiffs argue that the allegations of these individual plaintiffs provide CIRSC with standing, such an argument is without merit: since these two individually-named Plaintiffs have sued on their own behalf, CIRSC lacks standing to also sue as their representative.
>
> ii. *The interests at stake are not germane to CIRSC's purposes:* The Complaint alleges that CIRSC's purposes are "to oppose anti-immigration legislation policies at both federal and local levels," as well as to educate and mobilize the community – not to protect and enforce the rights of its members, nor to file lawsuits on their behalf. (Complaint, ¶¶6, 37-39)  CIRSC's claims for relief are therefore admittedly outside its mission and not germane to its purposes.
>
> iii. *Neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit:* CIRSC argues that, because it seeks only injunctive relief, participation of its individual members is not required. CIRSC is incorrect, as individuals members must demonstrate that the alleged conduct injures them as well as prove the underlying facts necessary to obtain injunctive relief. For example, CIRSC alleges that unlawful conduct is ongoing (a factor required to obtain injunctive relief), but cannot demonstrate this fact without the participation of individual CIRSC members, as all of the specific events alleged in the Complaint occurred prior to August 9, 2007.

As the Complaint lacks any allegations whatsoever regarding other CIRSC members who could possibly have standing to assert the claims herein, and participation of CIRSC members are necessary for such claims, CIRSC does not have representational standing in this action and should be dismissed therefrom.

**2. None of the Plaintiffs Have Standing to Request Injunctive Relief Herein**

Plaintiffs appear to argue that by merely alleging that they face a "credible threat" of suffering future unlawful actions at the hands of defendants, they satisfy the case-or-controversy requirement of Article III for standing purposes.  Plaintiffs further argue that, given these general allegations, granting

1 Defendants' Motion to Dismiss "would deprive [CIRSC] of a fair opportunity to develop further facts
2 to show the imminence of injury to its members." (Opposition, 10:9-10).  However, Plaintiffs have
3 not alleged even one fact sufficient to create the implication that they may be subject to unlawful
4 government actions in the future.  If Plaintiffs have to engage in a fishing expedition during discovery
5 to even allege a case-or-controversy exists, then they cannot demonstrate standing.

6       To prove standing, Plaintiffs must make an individualized showing that there is a very
7 significant possibility that they will suffer future harm. (See *Nelson v. King County*, 895 F.2d 1248,
8 (9th Cir. 1990).)  It has been repeatedly held that, "past exposure to harm is largely irrelevant when
9 analyzing claims of standing for injunctive relief that are predicated upon threats of future harm." (*Id.*)
10 While Plaintiffs have made some allegations of past conduct, the individually-named Plaintiffs cannot
11 allege that they will suffer similar harm in the future.[3]  In addition, as CIRSC has failed to make any
12 allegations sufficient to demonstrate that any of its members face a significant possibility of threat of
13 future harm, it has also failed to demonstrate standing.  In the absence of a likelihood of injury to the
14 named plaintiffs, there is no basis for granting injunctive relief against government actors that are
15 normally, and properly, overseen by the executive branch. (See *Hodgers-Durgin v. De La Vina*, 199
16 F.3d 1037, 1044 (9th Cir. 1999).)

17       CIRSC's demand for discovery to allow it to develop necessary standing allegations also
18 demonstrates that its declaratory and injunctive relief claims are not ripe for adjudication. (*Id.*)
19 Indeed, the "case or controversy" requirement of Article III requires that any federal cause of action be
20 ripe for adjudication to confer jurisdiction on a federal court.  As our Supreme Court has stated, "[a]
21 claim is not ripe for adjudication if it rests upon "'contingent future events that may not occur as
22 anticipated, or indeed may not occur at all.'" (*Texas v. United States, et al.*, 523 U.S. 296, 300 (1998),
23 quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-581 (1985) [quoted
24 citation omitted].)  Even if there is some certainty regarding future events, ripeness also requires
25 courts to "'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of

---

[3] Federal Defendants present facts demonstrating the current immigration status of the individually-named Plaintiffs, which make it highly unlikely that they will again be the subject of immigration field operations. Indeed, Plaintiffs admit that Plaintiff Sonato-Vega does not claim that he is subject to future injury, as he is no longer living in the United States.  (Opposition, p. 6, fn.3)

1  withholding court consideration.'" (*Id.*, at 301, quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136,
2  149 (1967).) As none of the Plaintiffs have alleged that any of them are likely to suffer future harm,
3  their claims for declaratory injunctive relief are unripe for adjudication at this time and should be
4  dismissed.

5        **3.    Plaintiffs Francisco Sanchez-Lopez and the Committee Failed to Comply with the Tort Claims Act, Which Bars Them from Claiming Damages**
6        **Against County Defendants**

7      Plaintiffs do not contest the fact that Plaintiffs Sanchez-Lopez and CIRSC are barred from
8  claiming state law damages against County Defendants, which allegations should be dismissed from
9  the Complaint.

10       **4.    Plaintiff Sonato-Vega's State Law Claims for Relief Based on Incidents Occurring Before July 29, 2008, Are Barred by the Statute of Limitations**
11       **Due to His Failure to File a Timely Claim**

12     Plaintiffs do not contest the fact that Plaintiff Sonato-Vega's state law claims arising before
13 July 29, 2008 are time barred, which claims should be excluded herein.

14     **B.    Plaintiffs' Complaint Fails to State a Claim upon Which Relief Can Be Granted as to County Defendants, Requiring Dismissal under Federal Rule of Civil Procedure**
15     **12(b)(6)**

16       **1.    ICE Has Authority to Issue Immigration Detainers That Require County Defendants to Take and Hold Persons in Local Custody, Even in the**
17       **Absence of an Arrest for a Controlled Substance Violation**

18     ICE's authority to issue immigration detainers for County Defendants to hold persons in local
19 custody arise out of the broad and plenary powers provided to the Department of Homeland Security
20 ("DHS") to enforce immigration laws. (See 8 U.S.C. §1103(a).) To avoid this inexorable conclusion,
21 Plaintiffs take the position that this Court should limit its review of ICE's authority to issue detainers
22 exclusively to the language of 8 U.S.C. §1357 ("Section 1357") and 8 C.F.R. §287.7 ("Regulation
23 287.7"). By doing so, Plaintiffs argue that not only is Regulation 287.7 *ultra vires* to Section 1357
24 (which Plaintiffs claim is the sole authorizing statute), but also that Defendants are not complying with
25 the specific language of Regulation 287.7 when ICE directs County Defendants to take custody for
26 persons not already detained on state law charges. Neither of these arguments have merit.
27     Contrary to Plaintiffs' assertions, Section 1357 is not the sole authority under which ICE may
28 issue immigration detainers for persons suspected of violating immigration laws, but is merely part of
a complicated (and oft amended) statutory scheme. Section 1357 provides that ICE officers may,

COUNTY DEFENDANTS' REPLY RE MOTION TO DISMISS
AND MOTION FOR MORE DEFINITE STATEMENT     7     USDC Case No. CV-08-4220 PJH

without a warrant, "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." (8 U.S.C. §1357(a)(1).) This ability to interrogate is rendered meaningless without the ability to also detain a person for the purposes of interrogation. Accordingly, it is the provisions of 8 U.S.C. §1103, among others, that authorize such detentions, as they provide the DHS and ICE with the authority, *inter alia,* to administer and enforce the Immigration and Naturalization Act (the "INA") and all laws relating to immigration [8 U.S.C. §1103(a)(1)], to establish such regulations as the DHS Secretary deems necessary for carrying out his authority under the INA [8 U.S.C. § 1103(a)(3)], and to authorize ICE employees to exercise any power, privileges, or duties conferred by Chapter 12 of Title 8, or the regulations issued [8 U.S.C. §1103(a)(4)]. Congress thus expressly authorized the DHS Secretary to enact Regulation 287.7 by virtue of 8 U.S.C. §1103(a)(3) – not Section 1357. Because the DHS Secretary has the duty of "controlling and guarding the boundaries and borders of the United States against the illegal entry of aliens," the ability to order suspected aliens to be temporarily detained in local custody for the purpose of permitting ICE to interrogate them as to their immigration status is certainly within the power and authority of the DHS.

Plaintiffs also challenge ICE's authority to issue immigration detainers for persons not already being held in local custody on state law charges, and County Defendants' ability to comply with such detainers, based on the language of Regulation 287.7, subdivision (a) (entitled "Detainers in General"). However, this argument ignores the provisions of subdivision (d) of the regulation, which expressly provides for ICE to request a "temporary detention" via a "detainer for an alien not otherwise detained by a criminal justice agency." (8 C.F.R. §287.7(d).) This sub-section of the regulation expressly allows ICE to issue a detainer to County Defendants to take custody of a person based solely on suspected immigration violations, and limits the ability of County Defendants to temporarily detain such persons for a maximum "period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department [ICE]." (*Id.*)

For these reasons, Plaintiffs are unable to state a claim for which relief can be granted with respect to the issuance and enforcement of immigration detainers as alleged in the Complaint, which claims should be dismissed.

**2. County Defendants Are Authorized to Cooperate with ICE and Can Justifiably Rely on the Facial Validity of Immigration Detainers ICE Issues, Even If Such Detainers Are Ultimately Deemed Legally Inadequate**

In their Opening Brief, County Defendants demonstrate that Congress intended for local law enforcement to assist ICE in enforcing immigration law, and authorized the Sheriff's Department to cooperate with ICE to take and hold persons suspected of civil immigration violations in the County jail based solely on an ICE detainer for the purpose of remanding them into ICE custody. In response, Plaintiffs provide a hodgepodge of arguments that can be summed up into two: (1) County Defendants do not have authority to enforce civil immigration laws by cooperating with ICE and detaining persons not held on state law charges; and (2) California Code of Civil Procedure Section 262.1 does not immunize County Defendants from liability flowing from their compliance with an ICE detainer. These arguments are addressed in turn, below.

First, the Sheriff is authorized under both State and Federal law to comply with ICE detainers to take and maintain persons in local custody who are solely suspected of violating civil immigration laws. With respect to State law, California Penal Code Section 4000 requires that the Sheriff maintain the jail and confine persons committed to the jail upon "authority of law" – which implicitly includes the legal authority vested in ICE to issue temporary immigration detainers. (Cal. Penal Code §4000.)[4] In addition, the Sheriff is required by the principles of comity to comply with such ICE detainers pursuant to the mandates of 8 U.S.C. §1103(a).

With respect to federal law, it appears that Plaintiffs misconstrue the extent of the authority Congress provided to local officials to participate in the enforcement of immigration laws and effectuation of federal immigration policy, as such authority is fairly extensive. For example, State and local law enforcement officers may make criminal immigration violation arrests, and may otherwise cooperate with federal authorities in the enforcement of immigration law. (See *People v.*

---

[4]California Penal Code Section 4000 provides in relevant part:

The common jails in the several counties of this State are kept by the sheriffs of the counties in which they are respectively situated, and are used as follows:. . .

    3. For the confinement of persons committed for contempt, or upon civil process, or by other authority of law; ....

*Barajas,* 81 Cal.App.3d 999, 1006 (1978), *disapproved on other grounds*, *People v. Laiwa*, 34 Cal.3d 711, 725 (1983).)  As the *Barajas* Court held, absent an express limitation by Congress, the Supremacy Clause of the U.S. Constitution provides authority for state law enforcement officers to enforce federal immigration law:

> It is true that under the supremacy clause, Congress has preempted the field of immigration. (See *De Canas v. Bica*, 424 U.S. 351 (1976); *Hines v. Davidowitz,* 312 U.S. 52 (1941) [duplicate citations omitted].) And ... there are reasons why Congress might choose to limit local enforcement (e.g., enforcement of immigration laws sometimes has international overtones).  But Congress has not done so.  The supremacy clause is a two-edged sword, and in the absence of a limitation, the states are bound by it to enforce violations of the federal immigration laws.  The statutory law of the United States is part of the law of each state just as if it were written into state statutory law.  [citation omitted].  Since there is no limitation relative to sections 1325 and 1326, the Lodi police officers had the power to arrest for their violations.

(*Id.*)

Recently, the California Supreme Court reiterated that "federal law 'evinces a clear invitation from Congress for state and local agencies to participate in the process of enforcing federal immigration laws.'" (*In re Jose C.,* 45 Cal.4th 534, 553 (2009) (holding, *inter alia,* that State juvenile courts may address juvenile violations of immigration laws), quoting *U.S. v. Santana-Garcia*, 264 F.3d 1188, 1193 (10th Cir. 2001).)  Indeed, the *Jose C.* Court noted that three federal circuits have concluded that "Congress has established a regime of cooperative federalism, in which local, state, and federal governments may work together to ensure the achievement of federal criminal immigration policy." (*Id.*)  The County Sheriff is thus authorized by Congress to cooperate with federal immigration officials in the enforcement of civil as well as criminal immigration laws, and may rely on facially-valid immigration detainers to take and hold persons in custody at ICE request.[5]

Second, Plaintiffs also misconstrue the immunity provided to County Defendants by California Code of Civil Procedure Section 262.1.  Contrary to their allegations, that section provides that the Sheriff is justified in executing not only court orders, but "all process and orders regular on their face and issued by competent authority...." (Cal. Code of Civ. Proc. §262.1.)  Immigration detainers are a process or order issued by a "competent authority" pursuant to the grant of authority to the DHS via

---

[5]Plaintiffs also surprisingly argue that requiring County Defendants to take or maintain custody of a person via an ICE detainer would somehow violate the Tenth Amendment, as the federal government would be commandeering state officers to implement a federal regulatory program. (Opposition, 22:7-12.)  However, complying with a detainer does not equate to implementing a federal regulatory program; hence, Plaintiffs' argument is inapplicable herein.

the INA. In other words, assuming *arguendo* that ICE did not have the authority to issue detainers under the facts alleged in the Complaint, County Defendants were able to rely on the facial validity of those detainers, and are immune from liability for doing so.

Accordingly, County Defendants' Motion to Dismiss should be granted with respect to all allegations in the Complaint that challenge County Defendants' actions in complying with ICE detainers and requests for assistance and mutual aid in the enforcement of immigration law.

**3.    Plaintiffs Fail to Allege Facts Sufficient to State a Claim for Relief under 42 U.S.C. Section 2000d, *et seq.* (Title VI)**

In their Opposition, Plaintiffs ignore recent Supreme Court authority clarifying their obligation to provide factual allegations showing the grounds for their right to relief above the speculative level. (*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007).) Plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (*Id.*) In support of their Title VI claim, plaintiffs assert, on information and belief, only that the County/Sheriff's Department "and their programs or activities receive financial assistance and funding from the United States government." Plaintiffs provide no basis for this "belief", nor indicate in what manner the County allegedly receives federal funding. The allegations are merely speculative and a "formulaic recitation" of the elements of 42 U.S.C. § 2000d. Plaintiffs thus have not pled facts showing Section 2000d applies in this case to provide them any basis for relief.

Plaintiffs erroneously assert that County Defendants seek to invoke a "heightened pleading standard" in this case and misrepresent that such defendants seek "additional specific facts regarding the source and receipt of federal and state funding to the County, including the distribution of that funding to particular County programs."[6] (Opposition, 24:4-7) Contrary to such assertions, County Defendants simply request that Plaintiffs provide some sort of factual basis for their conclusory assertion that the County receives federal funding, as their Complaint fails to provide <u>any</u> basis at all for this conclusion. Allegations that the County "cooperates" with ICE do not support the inferential

---

[6] Plaintiffs' authorities regarding application of "heightened pleading standards" are inapposite. Plaintiffs have not met even the liberal pleading obligations to state some factual basis for their claims. (*See Twombly,* 550 U.S. 544, 127 S.Ct. at 1964).

leap that the County receives federal funding. Plaintiffs' Complaint thus fails to state facts sufficient to state a claim for relief under Section 2000d.

### 4. Plaintiffs Fail to Allege Facts to State a Claim for Relief for Violation of California Government Code Section 11135 and its Implementing Regulations

Plaintiffs again erroneously complain that County Defendants seek to require allegations specifying "which County programs receive state funding and in what amounts." (Opposition, 24:22-23.) Rather, County Defendants seek some factual basis for Plaintiffs' wholly conclusory allegation that the County receives state funding. Plaintiffs fail to identify a single program receiving state funding or provide any facts supporting an inference that the County receives state financial assistance, and there are no facts alleged to show that the County may be subject to liability under California Government Code Section 11135.[7] Plaintiffs thus fail to meet their burden to plead some factual basis for their claim that the County receives state funding for purposes of § 11135 even under liberal pleading standards.

Further, for § 11135 to apply, Plaintiffs are required to show that the County implements "programs or activities" that are state funded and that discriminate. It is not enough that the County merely receives state funds to state a claim for relief under § 11135.[8] Plaintiffs ignore relevant case authority which specifically concludes that "[T]he apparent legislative purpose and intent in enacting Government Code section 11135 *et seq.* was to prohibit discriminatory treatment of any person on the

---

[7] Indeed, 22 Cal. Code of Regulations § 98010 specifically defines a "recipient" of state funds for purposes of Section 11135 as "any...local agency...who regularly employs five or more persons and who receives State support, as defined in this Section, in an amount in excess of $10,000 in the aggregate per State fiscal year or in an amount in excess of $1000 per transaction, by grant, contract or otherwise, directly or through another recipient...but excluding the ultimate beneficiary of the State support." Plaintiffs' vague allegations that the "county receives financial assistance from the State of California" fails to satisfy the requirements for an entity to qualify as a "recipient' of state funds under 22 Cal. Code Reg. § 98010 or to establish that the County is a "recipient" of state funds within the meaning of Govt. Code § 11135.

[8] As provided in 22 Cal. Code Reg. § 98101, "It is a discriminatory practice for a recipient, **in carrying out any program or activity** directly, or through...other arrangements, on the basis of ethnic group identification, religion, age, sex, color or a physical or mental disability:...(I) to utilize criteria or methods of administration that: (1) have the purpose or effect of subjecting a person to discrimination on the basis of ethnic group identification,...[or] color..." [Emphasis added.]

basis of categories described in section 11135 <u>only by those charged with effectuating programs or activities which receive directly or indirectly state support."</u> [Emphasis added.] (*People v. Levinson*, 155 Cal.App.3d Supp. 13, 18 (1984).)  "That the Legislature intended only to prohibit discriminatory practices by those <u>implementing state-assisted programs and activities</u> is further evidenced by reference to the other statutory provisions contained within article 9.5." [Emphasis added.] (*Id.*)  The *Levinson* court found Section 11135 did not apply to the municipal court because although it may receive state funds, the court did not "implement programs or activities which are state supported or receive state financial assistance". (*Id.,* at 19.)

      Plaintiffs' argument that the programs and activities are irrelevant and that a defendant simply needs to receive state funds for § 11135 to apply is unsupported.  Plaintiffs' reliance on *Darensburg v. Metro. Transp. Comm'n*, 2008 U.S. Dist. Lexis 63991 (N.D. Cal. 2008) is misplaced,[9] and the issue before the Court in *Darensburg* was limited to whether plaintiffs could bring a private action under Section 11135.  Plaintiffs there adequately established that the defendant was a recipient of state funds for purposes of Section 11135 and the Court stated that "a recipient of state support may not discriminate in any of its activities" does not relieve plaintiffs of their obligation to show that the County implements state funded programs or activities. (*Id.,* at 45.)  The Court went on to explain that, to the extent the defendant's conduct of which plaintiffs complained fell within the definition of "program or activity", defendants were acting with the "aid of state support" because the conduct complained of included state funding.  (*Id.,* at 46.)  Plaintiffs thus could bring a private cause of action under §11135.  The Court did not dispense with the need for plaintiffs to show that a defendant implements state-assisted programs and activities for Section 11135 to apply.

      Plaintiffs' Complaint thus fails to state facts sufficient to show that the County is a "recipient" of state funding, that it engages in a "program or activity" receiving state funding or that they have suffered discrimination by the County "in carrying out any program or activity" within the meaning of Section 11135 or 22 CCR §§ 98010 and 98101, warranting dismissal of such claims.

---

[9] Plaintiffs cite *Darensburg v. Metro. Transp. Comm'n*, No. 05-01597, 2008 WL 3915349 at * 14 (N.D. Cal. Aug. 21, 2008), however, the cited opinion is wholly inapposite and does not contain the referenced quotation.  Defendants thus presume plaintiffs' reference is to *Darensburg v. Metro. Transp. Comm'n*, 2008 U.S. Dist. Lexis 63991, 45 (N.D. Cal. 2008).

### 5. Plaintiffs Fail to Allege a Statutory Bases for Several State Law Claims for Relief, Which Are Required to Overcome Grant of Governmental Immunity

County Defendants moved for dismissal of Plaintiffs' fifteenth, sixteenth and seventeenth state law causes of action on the grounds that Plaintiffs failed to allege a statutory basis for such Defendant's liability, and governmental tort liability in California is wholly statutory. Plaintiffs offer no opposition in this regard, and Defendants' Motion should be granted.

### 6. Plaintiffs' Prayer for Punitive Damages Against the County Is Improper

Plaintiffs do not dispute that punitive damages may not be awarded against Defendant the County of Sonoma as a matter of law. The Motion to Dismiss in this regard should be granted.

### C. Alternatively, Defendants Request That the Court Require Plaintiffs to File a More Definite Statement, Due to the Complaint Vagueness, Ambiguity and Uncertainty

In an attempt to clarify the causes of action made in their Complaint, Plaintiffs attach an Appendix A to their Opposition, listing the claims made by each Plaintiff. However, Appendix A contradicts several allegations made in the Complaint (e.g., all claims for relief are made by all named Plaintiffs, yet Appendix A states that CIRSC does not seek any damages, and Plaintiff Sonato-Vega does not seek any injunctive relief). Appendix A also describes other variables and distinctions among Plaintiffs and the claims they are making that are not contained in the Complaint. Indeed, the very fact that Plaintiffs were required to "clarify" their claims via the Appendix indicates that the Complaint itself is defective and unintelligible, and does not allow County Defendants to adequately respond. (See Opposition, 23:12)

Further, Plaintiffs are incorrect in their assertion that simply incorporating 9 pages of facts into each cause of action is sufficient to provide notice of the underlying bases therefor. While Plaintiffs need not repeat verbatim the same allegations in each cause of action, the complete lack of reference of any specific factual allegations to support each of the 17 causes of action requires Defendants to guess which plaintiff asserts which claims and which facts Plaintiffs intend to rely on in support of each cause of action.[10] The extensive, diverse, and expansive nature of the Complaint's allegations

---

[10]Plaintiffs' reliance on *Fontana v. Haskin*. 262 F.3d 871, 877 (9th Cir. 2001) for the proposition that incorporation of facts by reference is proper is unavailing. While incorporation by reference may be permissible in cases with limited facts and causes of action, it does nothing to

only make the task of interpreting Plaintiffs' claims and requests for relief more daunting. Accordingly, County Defendants request that Plaintiffs be ordered to amend the Complaint to provide proper notice of the claims and requests for relief made against County Defendants.

### III. CONCLUSION

Based on the foregoing, County Defendants respectfully request that this Court dismiss the claims alleged against County Defendants contained in the Complaint pursuant to FRCP Rule 12(b), subsections (1) and (6); alternatively, County Defendants request that the Court order Plaintiffs to provide a more definite statement pursuant to FRCP 12(e), and for such other and further relief as this Court deems just and proper.

Dated: April 1, 2009

Respectfully submitted,
Stephen M. Woodside, County Counsel

By___s/s Anne L. Keck_____
    Anne L. Keck, Deputy County Counsel
    Attorneys for County Defendants

---

satisfy Plaintiffs' burden to sufficiently state facts to support their claims in such a manner that is not so vague and ambiguous such that defendants cannot reasonably prepare a response.