Case4:08-cv-04220-PJH Document71 Filed04/01/09 Page1 of 18

JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
ELLEN M. FITZGERALD (NY 2408805)
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102-3495
Tel: (415) 436-7314
Fax: (415) 436-6748
E-mail: ellen.fitzgerald@usdoj.gov

Attorneys for the United States and
Defendants Wollman, Huelga and Merendino

MICHAEL F. HERTZ
Acting Assistant Attorney General, Civil Division
DAVID J. KLINE
Director
JOSHUA E.T. BRAUNSTEIN
Assistant Director
COLIN A. KISOR (DC 497145)
Trial Attorney
Office of Immigration Litigation
District Court Section
Civil Division, Justice Department
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 532-4331
Fax: (202) 305-7000
E-mail: colin.kisor@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY, FRANCISCO SANCHEZ-LOPEZ, CHRISTYAN SONATO-VEGA, and SAMUEL MEDEL MOYADO<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA; SHERIFF-CORONER BILL COGBILL and DEPUTY SHERIFF MORRIS ERIC SALKIN, individually and in their official capacities; U.S. | Case No. CV 08-4220 PJH<br><br>**FEDERAL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date: April 22, 2009<br>Time: 9:00 am<br>Place: Courtroom 3--17th Floor<br>Judge: The Hon. Phyllis J. Hamilton |

FEDERAL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
Case No. C 08-4220 PJH

Case4:08-cv-04220-PJH Document71 Filed04/01/09 Page2 of 18

DEPARTMENT OF HOMELAND SECURITY BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT; SPECIAL-AGENT-IN-CHARGE MARK WOLLMAN, SPECIAL AGENT MARIO HUELGA and SPECIAL AGENT CHRIS MERENDINO, individually and in their official capacities; DOES 1-50; and ROES 1-50, inclusive, )

Defendants. )

FEDERAL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
Case No. C 08-4220 PJH

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . ii, iii, iv

PRELIMINARY STATEMENT . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 1

I. CONGRESS HAS DIVESTED THE COURTS OF JURISDICTION TO HEAR PLAINTIFFS' *BIVENS* CLAIMS BECAUSE THEY AROSE FROM ICE'S DECISION TO COMMENCE REMOVAL PROCEEDINGS. . . . . . . . . . . 1

II. PLAINTIFFS CONCEDE THAT ANY CLAIMS FOR MONEY DAMAGES AGAINST ICE ARE BARRED BY SOVEREIGN IMMUNITY. . . . . . . . . . . 4

III. THE COMMITTEE LACKS STANDING TO PURSUE ITS CLAIMS . . . . . . . . . . 4

IV. PLAINTIFFS' PRAYERS FOR INJUNCTIVE RELIEF FAIL FOR LACK OF STANDING . . . . . . . . . . 5

V. 8 C.F.R. § 287.7 WAS VALIDLY PROMULGATED AND IS NOT *ULTRA VIRES* TO THE INA . . . . . . . . . . 6

VI. THE INDIVIDUAL FEDERAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . 10

## TABLE OF AUTHORITIES

*Anderson v. Creighton*, 483 U.S. 635 (1987) . . . . . . . . . . 10

*Associated General Contractors v. Coalition for Economic Equity*, 950 F.2d 1401 (9th Cir. 1991) . . . . . . . . . . 4

*Bano v. Union Carbide*, 361 F.3d 696 (2d Cir. 2004) . . . . . . . . . . 4

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) . . . . . . . . . . 10

*CarePartners, LLC v. Lashway*, 545 F.3d 867 (9th Cir. 2008)(quoting *Saucier*, 533 U.S. at 202) . . . . . . . . . . 9

*Chevron U.S.A. v. NRDC*, 467 U.S. 837 (1984) . . . . . . . . . . 7

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . 5

*Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994) . . . . . . . . . . 10, 11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . 9

*Hodgers -Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) . . . . . . . . . . 5

*Humphries v. Various Federal USINS Employees*, 164 F.3d 936 (5th Cir.1999) . . . . . . . . . . 3

*Hunter v. Bryant*, 502 U.S. 224 (1991) . . . . . . . . . . 9

*INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984) . . . . . . . . . . 8

*Lake Mojave Boat Owners Association v. National Park Service*, 78 F.3d 1360 (9th Cir. 1996) . . . . . . . . . . 5

*Lujan* v. Defenders of Wildlife, 504 U.S. at 555 (1992) . . . . . . . . . . 6

*MGM Studios v. Grokster*, 518 F. Supp. 2d 1197 (C.D. Cal. 2007) . . . . . . . . . . 6

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) . . . . . . . . . . 9

*Molski v. Mandarin Touch Restaurant*,
359 F. Supp. 2d 924 (C.D. Cal. 2005) . . . . . . . . . . 5

*National Cable & Telecommunications Association, et al. v. Brand X Internet Services et al.*,
545 U.S. 967 (2005) . . . . . . . . . . 8

*Pearson v. Callahan*,
555 U.S. ___, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) . . . . . . . . . . 9

*Reno v. American-Arab Anti-Discrimination Committee*,
525 U.S. 471 (1999) . . . . . . . . . . 2, 8

*Sissoko v. Rocha*,
509 F.3d 947 (9th Cir. 2007) . . . . . . . . . . 3

*Summers v. Earth Island Institute*,
555 U.S. ___ 129 S. Ct. 1142 (2009) . . . . . . . . . . 6

*Vaccaro v. Dobre*,
81 F.3d 854 (9th Cir. 1996) . . . . . . . . . . 4

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) . . . . . . . . . . 5

*Wilson v. Layne*, 526 U.S. 603 (1999) . . . . . . . . . . 10

**STATUTES**

8 U.S.C. § 1103 . . . . . . . . . . 7

8 U.S.C. § 1103(a)(3) . . . . . . . . . . 7

8 U.S.C. § 1103(a)(4) . . . . . . . . . . 7

8 U.S.C. § 1226 (a)(2) . . . . . . . . . . 3

8 U.S.C. § 1252(a)(5) . . . . . . . . . . 3

8 U.S.C. § 1252(g) . . . . . . . . . . 1, 2, 3

8 U.S.C. § 1357 . . . . . . . . . . 10

8 U.S.C. § 1357(d) . . . . . . . . . . 7

8 U.S.C. § 1357(d)(3) . . . . . . . . . . 7

Illegal Immigration Reform and Immigrant Responsibility Act of 1996
("IIRIRA") 110 Stat. 3009-546 . . . . . . . . . . 3

**RULES AND REGULATIONS**

8 C.F.R. 1003(b)(7) . . . . . . . . . . 3

8 C.F.R. § 236.1 . . . . . . . . . . 3

8 C.F.R. § 287.7 . . . . . . . . . . 1, 6, 7, 8, 10

Fed R. Civ. P. 12(b)(6) . . . . . . . . . . 8

**PRELIMINARY STATEMENT**

Federal Defendants, by and through their undersigned counsel, hereby submit the following reply memorandum of points and authorities in further support of their motion to dismiss Plaintiffs' Complaint. As set forth more fully below, this Court should grant Federal Defendants' Motion to Dismiss in its entirety. Because Plaintiffs' *Bivens* claims arise from ICE's decision to initiate removal proceedings, this Court lacks jurisdiction to hear the claims. Plaintiff Committee has failed to establish representational standing, and because plaintiffs cannot show they will suffer a real and immediate threat of injury, their claim for prospective injunctive relief must be dismissed. Eight C.F.R. § 287.7, moreover, was validly promulgated and does not exceed the scope of the INA. Finally, the individual Federal Defendants are entitled to qualified immunity. This reply memorandum addresses several of the arguments made by Plaintiffs in their Opposition. Failure to address other arguments in the Opposition should not be construed as a concession regarding the merits of those arguments. Rather, Federal Defendants believe those arguments are adequately addressed in their Memorandum in Support of their Motion to Dismiss.

**ARGUMENT**

**I. CONGRESS HAS DIVESTED THE COURTS OF JURISDICTION TO HEAR PLAINTIFFS' *BIVENS* CLAIMS BECAUSE THEY AROSE FROM ICE'S DECISION TO COMMENCE REMOVAL PROCEEDINGS**

Eight U.S.C. § 1252(g) divests the federal courts of jurisdiction to hear any cause or claim arising from any decision or action by ICE to commence removal proceedings, including *Bivens* claims. 8 U.S.C. § 1252(g). Plaintiffs' contend that, as a matter of law, ICE's arrest of the named Plaintiffs and issuance of the I-247 detainers cannot be part of the Department of Homeland Security's decision to commence removal proceedings, because those acts allegedly occurred "long before any decision to commence removal proceedings." (Plaintiffs' Memorandum in Opposition to Federal Defendants' Motion to Dismiss ("Plaintiffs Opposition")

at 6). Plaintiffs are mistaken, and they misread *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999) as supporting their position on this issue.

In this case, the three named Plaintiffs allege they were detained based on suspected immigration status. For example, in August, 2007, Plaintiff Christyan Sonato-Vega alleges that he was arrested by Defendants ICE Agent Huelga and Sonoma County Deputy Sheriff Salkin when they "approached" him at his place of employment. (Complaint at ¶ 47). Deputy Salkin had previously stopped and identified Sonato-Vega as an illegal alien in July, 2007. (Complaint at ¶ 46). Immediately following his arrest he was booked into the Sonoma County Jail. (Complaint at ¶ 47).[1] In fact, Plaintiffs concede in their complaint that each of the named Plaintiffs was transferred to ICE custody subsequent to their detention. (Complaint at ¶ 44, 48, 52). And Plaintiffs do not dispute that at the time that ICE detained each of the Plaintiffs, each was illegally present in the United States. The declaration of Daniel Bible, appended to Federal Defendants motion to dismiss, confirms that DHS held removal proceedings for each of the named Plaintiffs. (Decl. of Daniel Bible, dated Jan. 23, 2009). (Plaintiff Sonato-Vega was, in fact, removed to Mexico in April 2008, prior to the filing of this lawsuit. In these three cases it is clear that the issuance of the detainer was the initial part of ICE's decision to initiate removal proceedings. This is so because each alien was placed in removal proceedings after he was transferred to ICE custody. It follows that this procedure falls within the judicial review preclusion in section 1252(g).

In *American Arab*, the Supreme Court explained that the "broad discretion [afforded the Executive] rests largely on the recognition that the decision to prosecute is particularly ill suited to judicial review." 525 U.S. at 489. The Supreme Court further noted that the government's need for prosecutorial discretion is "greatly magnified in the deportation context." *Id.* at 490. Plaintiffs' attempt to divorce ICE's decision to issue detainers in these three cases from ICE's

[1] A copy of the detainer signed by Agent Huelga is appended to Plaintiffs Opposition at Appendix B to that pleading.

Case4:08-cv-04220-PJH Document71 Filed04/01/09 Page9 of 18

decision to commence removal proceedings against each of them is impermissible under the Supreme Court's interpretation of 8 U.S.C. § 1252(g) in *American Arab* because it is an attempt to carve a *Bivens* exception from the statutory language: "any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General[2] to commence removal proceedings. . . ." 8 U.S.C. § 1252(g). Allowing additional judicial review of immigration detainers generally for aliens in removal proceedings (outside of the already existing mechanism for habeas relief and the petition for review process) would dilute the Executive's discretion that Congress intended to preserve by enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") 110 Stat. 3009-546.

The Court of Appeals for the Ninth Circuit has stated that where 8 U.S.C. § 1252(g) and *Bivens* claims collide, the availability of alternative remedies precludes damages remedies under *Bivens*. *See Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007). Without question, aliens detained by ICE as part of ICE's decision to commence removal proceedings already have abundant relief available to challenge their detention, and in light of the Ninth Circuit's decision in *Sissoko*, this Court should find that Section 1252(g) bars Plaintiffs' *Bivens* claims. A detained alien will have a bond hearing and may dispute continued custody before an immigration judge. *See* 8 U.S.C. § 1226 (a)(2); 8 C.F.R. § 236.1. In this case, the Complaint reflects that Plaintiff Sammy Medel Moyado did in fact post bond and was released. (Complaint at ¶ 48). Further, an alien retained in custody may appeal an immigration judge's custody determination to the Board of Immigration Appeals. *See* 8 C.F.R. 1003(b)(7). Where an alien believes ICE custody is unlawful the alien may also file a petition for a writ of habeas corpus in the federal district court challenging his continued detention. *See Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 945 (5th Cir. 1999). If the proceedings in immigration court result in a final removal order, the alien may file a petition for review in the appropriate court of

---

[2] Prior to the Homeland Security Act of 2002, the cabinet official responsible for immigration matters was the United States Attorney General.

FEDERAL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
Case No. C 08-4220 PJH 3

appeals. *See Humphries* 164 F.3d at 945; 8 U.S.C. § 1252(a)(5). Because aliens like Plaintiffs had alternative remedies to challenge both the decision to detain them and to avail themselves of administrative and judicial remedies at every step of the removal process, this Court should find that it lacks jurisdiction to hear Plaintiff's *Bivens* claims.

## II. PLAINTIFFS CONCEDE THAT ANY CLAIMS FOR MONEY DAMAGES AGAINST ICE ARE BARRED BY SOVEREIGN IMMUNITY

Plaintiffs' Complaint asserts *Bivens* claims against ICE for alleged violations of the Fourth and Fifth Amendments of the United States Constitution. (Complaint at ¶¶ 68, 70, 72). A *Bivens* claim is, by definition, a claim only against an individual federal official in his or her personal capacity for money damages. *See Vaccaro v. Dobre*, 81 F.3d 854, 856 (9th Cir. 1996). Plaintiffs' Complaint is drafted in such a way that it is impossible to correlate the various claims to the individual Plaintiffs and Defendants; but in their opposition to Federal Defendants' motion to dismiss, Plaintiffs do not contest that *Bivens* claims against ICE fail as a matter of law. (*See* Plaintiffs' Opposition at 23). Indeed, Plaintiffs are apparently withdrawing these claims altogether. (*See* Plaintiffs' Opposition at 23, n. 20). Accordingly, this Court should dismiss any *Bivens* claim against ICE.

## III. THE COMMITTEE LACKS STANDING TO PURSUE ITS CLAIMS

To establish representational standing, the Committee must show that "neither the *claim asserted nor the relief requested* requires the participation of individual members in the lawsuit." *Associated Gen. Contractors v. Coalition for Econ. Equity*, 950 F.2d 1401, 1406 (9th Cir. 1991) (emphasis added). The fact that the Committee seeks only injunctive relief does not relieve it of this burden. *See Bano v. Union Carbide*, 361 F.3d 696, 714 (2d Cir. 2004) (noting that a request for injunctive relief does not automatically confer representational standing). The Committee alleges it is "comprised of Sonoma County residents and organizations." (Complaint at 6). But the Committee fails to establish its standing because the Committee makes no allegation that its general membership of Sonoma County residents and organizations have been unlawfully

Case4:08-cv-04220-PJH Document71 Filed04/01/09 Page11 of 18

detained by ICE. Individual members of the Committee such as Plaintiff Sanchez-Lopez who are illegal aliens may have been placed in removal proceedings, but those experiences are necessarily individual – not common to the entire membership, nor shared by all in equal degree. *See Lake Mojave Boat Owners Association v. National Park Service*, 78 F.3d 1360, 1367 (9th Cir. 1996). Here, the personal participation of the allegedly aggrieved Committee members is necessary to determine both if they have standing to sue in their own right, and whether this Court could grant relief to address the harm each individual allegedly suffered. *See, e.g., Molski v. Mandarin Touch Rest.*, 359 F.Supp. 2d 924, 935 (C.D. Cal. 2005) (denying representational standing because individual plaintiff's participation was required to establish standing).[3] As such, the Committee itself has no representational standing to seek relief in this case.

## IV. PLAINTIFFS' PRAYERS FOR INJUNCTIVE RELIEF FAIL FOR LACK OF STANDING

Plaintiffs' allegations of past exposure to illegal conduct do not constitute a real and immediate threat of injury and therefore do not make out a case of controversy required for federal jurisdiction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The fact that plaintiffs may have standing to assert a claim for money damages does not automatically impart standing for a claim for equitable relief. *See Hodgers -Durgin v. De La Vina*, 199 F.3d 1037, 1041 n. 1 (9th Cir. 1999).

Here, there is no credible threat that the injury Plaintiffs allege will be repeated imminently. The underlying arrests and detentions at issue here took place during anti-gang operations conducted by the Sonoma County Sheriff's Office, the California Highway Patrol, and ICE in 2006 and 2007. Plaintiff Sonato-Vega was returned to Mexico in April 2008, and

---

[3] Where, as here, the involvement of individual members of an association is necessary, the association has no standing to press its claims, where it seeks to do so as a putative class representative. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) (associational standing carves out only narrow exception from ordinary rule that litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").

FEDERAL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
Case No. C 08-4220 PJH 5

Plaintiff Medel-Moyado now has legal status to be in the United States. An immigration judge terminated removal proceedings against Plaintiff Sanchez-Lopez. Accordingly, any alleged threat of future harm is too abstract, hypothetical and speculative to constitute a case or controversy necessary for the exercise of subject matter jurisdiction. *See Summers v. Earth Island Institute*, 555 U.S. ___ , 129 S.Ct. 1142 (2009) (absent a live dispute over concrete application of regulations in question, plaintiff lacked standing to challenge regulations). Because Plaintiffs have failed to meet these standing requirements, this Court has no jurisdiction over Plaintiffs' claims for injunctive relief, and the Court must dismiss them.

Plaintiffs' claims for injunctive relief against the Federal Defendants also fail to satisfy the redressability requirement. Plaintiffs must show it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. A blanket injunction demanding that a party do nothing more than obey the law is disfavored. *See e.g. MGM Studios v. Grokster,* 518 F.Supp. 2d 1197, 1126 (C.D. Cal. 2007). Here, Plaintiffs are asking the Court to stop "targeting individuals on the basis of race . . ." and to stop "engaging in stops, detentions . . . without reasonable suspicion or probable cause . . . ." (Complaint, Prayer for Relief, p. 22.) The inchoate nature of the Plaintiffs' claims mean that any injunction fashioned by the Court will do little more than abstractly command Federal Defendants to obey the Fourth Amendment. As such, Plaintiffs have no standing to assert a claim for injunctive relief, and the Court must dismiss these claims for this reason, as well.

## V. 8 C.F.R. § 287.7 WAS VALIDLY PROMULGATED AND IS NOT *ULTRA VIRES* TO THE INA

As a preliminary matter, Plaintiffs' Complaint states that "Defendant ICE's predecessor agency, the INS, promulgated 8 C.F.R. § 287.7 without notice and an opportunity to comment by the public and in violation of the rule-making process specified by the APA" (Complaint at ¶ 79). However, in their opposition brief, Plaintiffs apparently recognize that the notice, and responses to the comments were both properly published in the Federal Register as stated by

Federal Defendants in their Motion to Dismiss at pages 18-19. Accordingly, Plaintiffs state that they "intend to withdraw the allegations related to notice and comment requirements under 5 U.S.C. §553 as described in paragraph 79 of their Complaint." (Plaintiffs' Opposition at 8, n.5). This Court should, therefore, dismiss that portion of Plaintiff's Complaint outright.

The Immigration and Nationality Act ("INA") confers broad authority to the Secretary of Homeland Security to enforce the immigration laws. This is because the Secretary has "the power and duty to control and guard the boundaries and borders of the United States against the illegal entry of aliens." 8 U.S.C. § 1103(a)(4). Recognizing the immense nature of the Secretary's responsibilities, Congress conferred upon the Secretary the discretion to "establish such regulations . . . and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." *See* 8 U.S.C. § 1103(a)(3). The Secretary has determined that one of the regulations necessary to control the borders includes authorizing ICE Agents to issue detainers to other law enforcement agencies that have identified illegal aliens. Accordingly, 8 C.F.R. § 287.7 is in no way *ultra vires* to the INA. Put simply, the Secretary's interpretation of the INA generally, and her powers under 8 U.S.C. § 1103 are entitled to deference under *Chevron U.S.A. v. NRDC*, 467 U.S. 837 (1984).

Congress has mandated that the Secretary promptly cooperate with state and local law enforcement agencies in controlled substance cases. *See* 8 U.S.C. § 1357(d). In enacting 8 U.S.C. § 1357(d), Congress sought to ensure that, in controlled substance cases, the agency "promptly" determine whether to issue a detainer, and to "effectively and expeditiously take custody of the alien." 8 U.S.C. § 1357(d)(3). The crux of this case is that Plaintiffs misread this subsection as confining detainer authority to controlled substance cases, rather than mandating special cooperation with other law enforcement in controlled substance cases and leaving other situations to the Secretary's discretion.

However, to the extent that there is an ambiguity as to whether or not the INA authorizes ICE to issue detainers for illegal aliens who are in custody for a crime not involving controlled

substances, *Chevron* requires that this Court accept the Secretary's interpretation of the statute if the particular statute is within the agency's jurisdiction to administer, and the agency's construction is reasonable. *See National Cable & Telecommunications Assn., et al. v. Brand X Internet Services et al.*, 545 U.S. 967, 980 (2005). It is certainly reasonable for the Secretary to interpret the INA to include the authority to issue detainers for illegal aliens because, as the Supreme Court has repeatedly stated, an illegal alien's presence in the United States is a continuing violation of the immigration laws. *American Arab*, 525 U.S. at 489 (noting that "in deportation proceedings the consequence [of the potential for delay] is to permit and prolong a continuing violation of United States law."); *see also INS v. Lopez-Mendoza,* 468 U.S. 1032, 1039 (1984) (stating that "the purpose of deportation is not to punish past transgressions but rather to put an end to a continuing violation of immigration laws.")

Plaintiffs ask this Court to enjoin ICE from "issuing immigration detainers for or otherwise requesting that local law enforcement agencies hold persons who are not already in custody for a controlled substances violation." (Complaint at 22). Plaintiffs further ask this Court to declare that 8 C.F.R. § 287.7 is *ultra vires* to the INA and to order a permanent injunction that would prohibit ICE from issuing detainers for broad categories of illegal aliens. (*Id.*) This would obviously produce absurd results not intended by Congress and wreak havoc on ICE's ability to carry out its statutory mission. Congress authorized the Secretary to promulgate regulations necessary to enforce the INA and the Secretary has properly done so under the notice and comment provisions of the APA. This Court should, therefore, dismiss Plaintiff's claim that 8 C.F.R. § 287.7 is *ultra vires* to the INA because Plaintiff's claim is based upon a misreading of the law. It is, therefore, devoid of a cognizable legal theory upon which this Court can grant relief and this Court should dismiss it under Fed R. Civ. P. 12(b)(6).

//

//

//

Case4:08-cv-04220-PJH Document71 Filed04/01/09 Page15 of 18

## VI. THE INDIVIDUAL FEDERAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." 129 S.Ct. at 815. Because qualified immunity is "an immunity *from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added). Indeed, the Supreme Court has identified the desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery" as the "driving force" behind creation of the qualified immunity doctrine. *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

The doctrine of qualified immunity protects the individual Federal Defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Pearson v. Callahan*, 555 U.S. ___, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 573 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The Supreme Court has concluded that while the two-step sequence for resolving qualified immunity claims expressed in *Saucier v. Katz* "is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 129 S.Ct. at 818, 172 L.Ed.2d at 576 ( "The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.") Here, the dispositive inquiry is "'whether it would be clear to a reasonable [ICE agent] that his conduct was unlawful in the situation he confronted.'" *CarePartners, LLC v. Lashway*, 545 F.3d 867, 883 (9th Cir. 2008)(quoting *Saucier*, 533 U.S. at 202); *Harlow*, 457 U.S. at 819 (whether an official protected

FEDERAL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
Case No. C 08-4220 PJH 9

by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the "objective legal reasonableness" of the action in light of pre-existing case law).

As a threshold matter, Plaintiffs have failed to allege facts sufficient to demonstrate the requisite personal involvement of each of the individual Federal Defendants in the alleged constitutional violations. In fact, Plaintiffs concede that they have failed to connect Agent Merendino to the allegations in their Complaint. (*See* Plaintiff's Opposition at 20, n. 18). Plaintiffs also fail to make specific allegations regarding how the individual Federal Defendants were *personally* involved in the alleged due process violations. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Although Plaintiffs readily concede that "there is no case law specifically interpreting the regulation at issue," they assert that this fact "is of no moment." (Plaintiffs' Response, at 22). On the contrary, in order for a right to be "clearly established," its "contours must be sufficiently clear that [at the time of the alleged conduct] a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus the Supreme Court has held that although a "media ride-along" when police officers deliver of a warrant violated the Fourth Amendment, the officers were entitled to qualified immunity because the state of the law was not clearly established at the time the action took place. *Wilson v. Layne*, 526 U.S. 603 (1999). The Supreme Court refused to hold the officers personally liable because plaintiffs had not brought to the Court's attention "any cases of controlling authority in their jurisdiction at the time of the incident which clearly establishe[d] the rule on which they [sought] to rely." *Wilson*, 526 U.S. at 617.

Where, as here, ICE agents detained individuals who are illegal aliens pursuant to an authorizing statute and regulation that a reasonable agent would believe was constitutional, the ICE agents are immune from suit, even if the regulation is later held to be unconstitutional or in excess of statutory authority. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Plaintiffs' contention that the individual Federal Defendants should have conducted their own

Case4:08-cv-04220-PJH Document71 Filed04/01/09 Page17 of 18

individual statutory analysis and concluded that 8 C.F.R. § 287.7 exceeded the scope of 8 U.S.C. § 1357 is absurd. ICE agents are entitled to rely on the assumption that Section 287.7 is a valid and constitutional exercise of authority. *Grossman*, 33 F.3d at 1209. "The existence of statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable officer would find the conduct constitutional." *Id.* Thus, even assuming, *arguendo*, that this Court should determine that Section 287.7 is *ultra vires* to the INA, the individual Federal Defendants are entitled to qualified immunity.

The INA and Section 287.7, moreover, do not authorize conduct that is "patently violative of constitutional principles." *Grossman*, 33 F.3d at 1209. Nor have the individual Federal Defendants enforced the regulation in a manner in which a reasonable officer would know exceeded the bounds of the statute. Plaintiffs' contentions to the contrary are unavailing. A reasonable ICE agent would believe that he had the authority under 8 C.F.R. § 287.7, consistent with the responsibility given to the Secretary to control the borders against illegal entry of aliens, to issue detainers to those aliens suspected of immigration violations, even in the absence of an underlying drug offense. Section 287.7, duly promulgated pursuant to statutory authority, is not so obviously unconstitutional as to require a reasonable ICE agent to refuse to enforce it. Because the individual Federal Defendants reasonably relied on the regulation, this Court should shield them from personal liability.

//

//

//

//

//

//

//

FEDERAL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
Case No. C 08-4220 PJH 11

**CONCLUSION**

For the foregoing reasons, and the reasons set forth in Federal Defendants' main memorandum, Federal Defendants' Motion to Dismiss should be granted in all respects and the Court should grant such other and further relief as the Court may deem just and proper.

DATED: April 1, 2009

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

By: ________/s/______________
ELLEN M. FITZGERALD
Assistant United States Attorney

Attorneys for the United States
and Defendants Wolman, Huelga
and Merendino

MICHAEL F. HERTZ
Acting Assistant Attorney General, Civil Division

DAVID J. KLINE
Director, District Court Section
Office of Immigration Litigation

JOSHUA E.T. BRAUNSTEIN
Assistant Director

By: ______/s/_________
COLIN A. KISOR
Trial Attorney

Attorneys for the United States