1

2            UNITED STATES DISTRICT COURT

3            NORTHERN DISTRICT OF CALIFORNIA

4

5

6

7

8  COMMITTEE FOR IMMIGRANT            No. C 08-4220 PJH
   RIGHTS OF SONOMA COUNTY, et al.,

9            Plaintiffs,              **ORDER GRANTING IN PART AND
                                      DENYING IN PART DEFENDANTS'
                                      MOTIONS TO DISMISS; GRANTING
10     v.                            COUNTY DEFENDANTS' MOTION FOR
                                      A MORE DEFINITE STATEMENT;
11 COUNTY OF SONOMA, et al.,          GRANTING COUNTY DEFENDANTS'
                                      MOTION FOR PROTECTIVE ORDER;
12           Defendants.              DENYING PLAINTIFFS' MOTION TO
                                      COMPEL**; **AND VACATING PRETRIAL
13 _____/   ORDER**

14       Before the court are a motion to dismiss filed by Federal Defendants and a motion to

15 dismiss or, in the alternative, motion for a more definite statement, filed by County

16 Defendants.  Also before the court are a motion for protective order filed by County

17 Defendants and a motion to compel filed by plaintiffs.  The motions to dismiss came on for

18 hearing before this court on April 22, 2009.  Federal Defendants appeared through their

19 counsel, Colin Kisor and Ellen Fitzgerald.  County Defendants appeared through their

20 counsel, Ann Keck and Richard Osman.  Plaintiffs appeared through their counsel, Julia

21 Mass and Melissa Chan.  Because the court finds that County Defendants' motion for

22 protective order and plaintiffs' motion to compel are suitable for resolution without oral

23 argument, the hearing dates of July 29, 2009 and August 12, 2009 are VACATED pursuant

24 to Civil Local Rule 7-1(b).  Having carefully read the parties' papers and considered the

25 relevant legal authority, the court GRANTS in part and DENIES in part defendants' motions

26 to dismiss, GRANTS County Defendants' motion for a more definite statement, GRANTS

27 County Defendants' motion for protective order, and DENIES plaintiffs' motion to compel,

28 for the reasons stated below.

**BACKGROUND**

A.     General Allegations

        On September 5, 2008, plaintiffs, Committee for Immigrant Rights of Sonoma County ("Committee"), Francisco Sanchez-Lopez ("Sanchez-Lopez"), Christyan Sonato-Vega ("Sonato-Vega") and Samuel Medel Moyado ("Medel Moyado") (collectively "plaintiffs"), brought this action against the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE"), Special Agent-In-Charge Mark Wollman ("Wollman"), Special Agent Mario Huelga ("Huelga"), Special Agent Chris Merendino ("Merendino") (collectively "Federal Defendants"), the County of Sonoma ("County"), Sheriff-Coroner Bill Cogbill ("Cogbill") and Deputy Sheriff Morris Eric Salkin ("Salkin") (collectively "County Defendants").  The complaint asserts seventeen causes of action including, civil rights violations under 42 U.S.C. § 1983 (e.g., unreasonable search and seizure, equal protection, due process), Bivens[1] claims (e.g., unreasonable search and seizure, equal protection, due process) and various state law claims.  See Compl.

        Plaintiffs allege that ICE and the Sonoma County Sheriff's Department have been working together over the past three years to enforce civil immigration laws against Latino residents of Sonoma County in violation of their constitutional and statutory rights.  Compl. ¶¶ 1, 20.  According to plaintiffs, the collaboration takes place in two ways: (1) Sheriff's Deputies participate in joint patrols with ICE agents that specifically target Latino residents of Sonoma County, and (2) Sheriff's Deputies identify and arrest persons suspected of being unauthorized non-citizens outside the presence of ICE officers, but with ICE's approval.  Id. ¶ 20.

        Through this action, plaintiffs challenge the following policies: (1) Sheriff's Deputies and ICE agents using race as a motivating factor for traffic stops and other detentions; (2) Sheriff's Deputies and ICE agents stopping, interrogating, searching, and arresting individuals without warrants or adequate justification; (3) Sheriff's Deputies arresting and holding individuals in the County jail without any lawful basis for detention; and (4) denial of due process of individuals arrested on suspected immigration violations and improperly

---

[1]   Bivens v. Six Unknown Named Fed. Narcotics Agents, 403 U.S. 388 (1971).

1   held in the custody of the Sheriff.  Compl. ¶ 1.  Plaintiffs seek declaratory and injunctive

2   relief as well as monetary.

3   B.      Joint Patrol Allegations

4          Plaintiffs allege that Sheriff's Deputies participate in joint operations with ICE agents

5   on a regular basis, and that defendants have adopted an unlawful policy, practice and

6   custom of relying on race, color and/or ethnicity to stop, detain, question and/or search

7   persons who are or appear to be Latino and to probe their immigration status without

8   reasonable suspicion or probable cause to suspect that they have committed a crime or are

9   non-citizens without lawful immigration status.  Compl. ¶¶ 21-22.  In addition, plaintiffs

10  allege that defendants have a policy and practice of arresting and placing persons in the

11  County jail, without criminal charges or any actual or purported criminal basis, simply

12  because they are suspected of violating immigration laws.  Id. ¶ 23.  Plaintiffs assert that

13  the detention of these individuals is frequently based solely on an immigration detainer

14  issued by ICE after an arrest has been effectuated.  Id.  Plaintiffs maintain that such

15  conduct constitutes a policy, practice and custom of placing persons in local custody

16  without meeting the requirements for the warrantless arrest of non-citizens suspected of

17  violating immigration law under 8 U.S.C. § 1357; namely, probable cause that a person is a

18  non-citizen and a determination that he or she is likely to escape before an arrest warrant

19  can be obtained.  Id. ¶ 24.

20  C.      Immigration Enforcement by Sheriff's Deputies Allegations

21         Plaintiffs allege that, in addition to joint operations with ICE agents, Cogbill and

22  County employees working under his supervision have adopted an unlawful, race-based

23  policy, practice and custom of stopping, detaining, questioning and/or searching persons

24  who are or appear to be Latinos to interrogate them about their immigration status, outside

25  the presence of ICE agents, but with the approval of ICE.  Compl. ¶ 25.  Plaintiffs assert

26  that these racially-motivated stops are frequently unsupported by reasonable suspicion or

27  probable cause that the detainee had violated any criminal law.  Id. ¶ 26.

28         Plaintiffs further allege that, even when the initial stops are supported by reasonable

suspicion, Cogbill and the County employees working under his supervision, have adopted a policy, practice and custom of prolonging the initial stop to interrogate these persons about their immigration status, telephoning ICE agents to seek approval to execute warrantless arrests for civil immigration violations and conducting searches of their persons and vehicles despite having neither any criminal basis to prolong the detention nor any investigatory or safety justification for the searches.  Compl. ¶ 27.  Plaintiffs assert, on information and belief, that an individual's actual or apparent race, ethnicity or color is a motivating factor for the prolonged detention, interrogation and search of these persons. Id.

In addition, plaintiffs allege that Cogbill, and the County employees working under his supervision, have adopted a policy, practice and custom of arresting Latinos based on suspected civil immigration violations, frequently on the sole purported authority of an ICE immigration detainer, and holding these persons in County jail for several days before transferring them to ICE's custody without any criminal charges or a criminal basis for the initial arrest.  Compl. ¶ 28.  According to plaintiffs, Sheriff's Deputies that patrol with ICE agents are not trained on how to assess the immigration status of persons, including the type of evidence necessary to determine whether reasonable suspicion or probable cause exists that a person is a non-citizen and whether a person suspected of immigration violations poses a flight risk, to justify a warrantless arrest.  Id. ¶ 29.

Plaintiffs assert that neither state nor federal law authorizes local authorities such as Cogbill, and the County employees working under his supervision, to arrest or detain persons based on suspected civil immigration violations.  Compl. ¶ 30.  Nor have the County of Sonoma or the Sonoma County Sheriff's Department entered into a written agreement with ICE pursuant to 8 U.S.C. § 1357(g), authorizing County employees to enforce civil immigration law.  Id. ¶ 31.  Plaintiffs further assert that written policies governing Sonoma County Sheriff's Deputies prohibit Cogbill and other County employees from arresting or detaining persons based solely on a violation of 8 U.S.C. § 1325 (illegal entry), or interrogating any person for the sole purpose of ascertaining his or her immigration status, or contacting, detaining or arresting a person based on the suspicion that he or she is an undocumented alien.  Id. ¶ 32.

4

1    D.      Immigration Detainer Allegations

2            Plaintiffs allege that defendants, whether persons are arrested by joint patrols or by

3 Sheriff's Deputies acting alone, unlawfully hold arrestees in the County jail without criminal

4 charges by the issuance of immigration detainers pursuant to 8 C.F.R. § 287.7.  Compl. ¶

5 33.  Plaintiffs assert that under the express terms of § 287.7, local authorities are only

6 permitted to issue immigration detainers to retain custody over persons already in local

7 custody pursuant to a valid arrest after the person would otherwise be released from local

8 custody.  Id.  Plaintiffs further assert that to the extent § 287.7 authorizes the use of

9 immigration detainers to detain non-citizens in local custody who have been arrested for an

10 offense other than a controlled substance violation, it exceeds the authority granted by

11 Congress under 8 U.S.C. § 1357(d).  Id.

12    E.      Procedural Protections Allegations

13            With respect to persons arrested for immigration violations, plaintiffs allege that

14 defendants have adopted the policy, practice and custom of maintaining local custody for

15 three to five days before transferring these persons to ICE for initiation of removal

16 proceedings.  Compl. ¶ 34.  Plaintiffs further allege that once these individuals are booked

17 into County jail, they are, by policy, practice and custom, denied notice of any charges

18 against them, examination by a neutral magistrate or non-arresting ICE officer, notice that

19 statements they make may be used against them in removal proceedings, a list of no-cost

20 immigration legal services, or notice that they have a right to a hearing or bond

21 determination, in violation of 8 U.S.C. § 1357 and 8 C.F.R. §  287.3.  Id.  Plaintiffs assert,

22 upon information and belief, that after being denied their procedural rights for several days

23 prior to being transferred to ICE custody, individuals are more easily coerced into waiving

24 their constitutional right to a hearing than they would be if the procedural protections they

25 are entitled to were provided.  Id. ¶ 35.

26    F.      Individual Plaintiffs Allegations

27         1.      Sanchez-Lopez

28            Plaintiffs allege that on September 26, 2006, Sanchez-Lopez was a passenger in a

1  car that was stopped by several officers, including ICE agents, Sheriff's Deputies and at

2  least one California Highway Patrol officer.  Compl. ¶ 41.  Sanchez-Lopez and the driver

3  were approached by only two of the officers.  Id.  The officer that approached the driver told

4  him that he was not permitted to have a "For Sale" sign in the car's rear window, and then

5  proceeded to interrogate him about whether he had any gang affiliations.  Id.  Meanwhile,

6  the other officer asked Sanchez-Lopez for his name, identification, and whether he was on

7  probation.  Id.  After Sanchez-Lopez informed the officer of his name and that he was on

8  probation, the officer, without verifying his name or probation terms, ordered Sanchez-

9  Lopez out of the car, interrogated him about whether he had any gang affiliations or tattoos,

10  and then subjected him to a pat-down search, confiscating his wallet without reasonable

11  suspicion or consent.  Id.  The officer, then, without looking at the contents of the wallet,

12  ordered Sanchez-Lopez to talk to an ICE agent who had accompanied the officer.  Id.

13       Following the ICE agent's interrogation and search of his wallet, Sanchez-Lopez was

14  arrested by Sheriff's Department personnel and booked into custody at the Sonoma County

15  jail based solely on his suspected immigration status.  Compl. ¶ 43.  During his four-days in

16  County jail before being transferred to ICE's custody, Sanchez-Lopez did not receive notice

17  of any charges against him, examination by a neutral magistrate or non-arresting ICE

18  agent, notice that statements he made could be used against him in removal proceedings,

19  a list of low or no-cost immigration legal services, or notice that he had a right to a hearing

20  or a bond determination.  Id. ¶ 44.

21       2.       Sonato-Vega

22       Plaintiffs allege that in or about July 2007, Sonato-Vega and his fiancee were

23  approached by two deputy sheriffs in a parking lot, including Salkin, who stated that their

24  car had a crack in its windshield.  Compl. ¶ 46.  The deputies then questioned Sonato-

25  Vega about his immigration status, his tattoos, and whether he was a gang member.  Id.

26  The deputies also searched Sonato-Vega, including his wallet, without reasonable

27  suspicion or consent.  Id.  Sonato-Vega, apparently, was not arrested.

28

6

On or about August 2, 2007, Salkin and Huelga arrested Sonato-Vega at his work place and booked him into Sonoma County jail based on suspected immigration status alone.  Compl. ¶ 47.  Plaintiffs assert, on information and belief, that Salkin and Huelga arrested Sonato-Vega without probable cause to believe that he was a non-citizen, much less a determination that he was likely to escape before an arrest warrant could be obtained.  Id.

Sonato-Vega was held in custody in Sonoma County jail until on or about August 6, 2007.  Compl. ¶ 48.  During his four-days in County jail before being transferred to ICE's custody, Sonato-Vega did not receive notice of any charges against him, examination by a neutral magistrate or non-arresting ICE agent, a list of low or no-cost immigration legal services, or notice that he had a right to a hearing or a bond determination.  Id.

3.    Medel Moyado

Plaintiffs allege that on August 8, 2007, Medel Moyado was arrested for violating California Penal Code § 647(f), disorderly conduct.[2]  Compl. ¶ 50.  Plaintiffs further allege that although Medel Moyado was told that he was free to leave by a judge on August 10, 2007, based on the fact that no charges had been filed against him, Sheriff's Department personnel continued to detain Medel Moyado based on his suspected immigration status pursuant to 8 C.F.R. § 287.7(d).  Id.  Medel Moyado was subsequently transferred to another Sheriff's facility before being transferred to ICE's custody on August 14, 2007.  Id.  Prior to his transfer to ICE's custody, Medel Moyado did not receive notice of the immigration charges against him, notice that the statements he made could be used

_____

[2] Section 647(f) provides:

Who is found in any public place under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in a condition that he or she is unable to exercise care for his or her own safety or the safety of others, or by reason of his or her being under the influence of intoxicating liquor, any drug, controlled substance, toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way.

Cal. Penal Code § 647(f).

7

1    against him in removal proceedings, a list of low or no-cost immigration legal services, or

2    notice that he had a right to a hearing or a bond determination. Id. ¶ 51.  Finally, plaintiffs

3    allege that defendants did not give Medel Moyado an opportunity to post bond until over a

4    week after he was arrested, and did not release him until August 16, 2007, after he posted

5    bond. Id. ¶ 52.

6                                    **DISCUSSION**

7          On January 28, 2009, a motion to dismiss was filed by Federal Defendants, and a

8    motion to dismiss or, in the alternative, a motion for a more definite statement was filed by

9    County Defendants  The court will address these motions in turn below.

10   A.     Standards

11          1.     Rule 12(b)(1)

12          A complaint must be dismissed if there is a "lack of jurisdiction over the subject

13   matter." Fed.R.Civ.P. 12(b)(1).  "A motion to dismiss for lack of subject matter jurisdiction

14   may either attack the allegations of the complaint or may be made as a 'speaking motion'

15   attacking the existence of subject matter jurisdiction in fact." Thornhill Publ'g Co. v.

16   General Tel. & Elecs., 594 F.2d 730, 733 (9th Cir. 1979).

17          In a facial attack, the moving party asserts that the allegations contained in the

18   complaint are insufficient on their face to invoke federal jurisdiction. Safe Air for Everyone

19   v. Meyer, 373 F.3d 1035, 1039 (9th Cir.  2004).  In evaluating a facial attack to jurisdiction,

20   the court must accept the factual allegations in plaintiff's complaint as true. Whisnant v.

21   United States, 400 F.3d 1177, 1179 (9th Cir. 2005).  In a factual attack, the moving party

22   disputes the truth of the allegations in the complaint, which otherwise would be sufficient to

23   invoke federal jurisdiction. Safe Air, 373 F.3d at 1039.  In evaluating a factual attack, the

24   court need not presume the truthfulness of the allegations set forth in the complaint and

25   may consider evidence beyond the face of the complaint without converting the motion to

26   dismiss into a motion for summary judgment. Id.

27          The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists

28

                                          8

1   over the complaint when challenged under Rule 12(b)(1).  See, e.g., Tosco Corp. v.

2   Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).  "A plaintiff suing in a

3   federal court must show in his pleading, affirmatively and distinctly, the existence of

4   whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having

5   the defect called to its attention or on discovering the same, must dismiss the case, unless

6   the defect [can] be corrected by amendment."  Id.

7          2.      Rule 12(b)(6)

8          To survive a motion to dismiss for failure to state a claim, a complaint generally must

9   satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

10  Rule 8 requires only that the complaint include a "short and plain statement of the claim

11  showing that the pleader is entitled to relief."  Fed.R.Civ.P 8(a)(2).  Specific facts are

12  unnecessary – the statement need only give the defendant "fair notice of the claim and the

13  grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In

14  order to survive a motion to dismiss, a plaintiff must allege facts that are enough to raise his

15  right to relief "above the speculative level."  Id.  While the complaint "does not need detailed

16  factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his

17  'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic

18  recitation of the elements of a cause of action will not do."  Id.  Nor does a complaint suffice

19  if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.  In

20  short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its

21  face," not just conceivable.  Id. at 570.

22         "A claim has facial plausibility when the plaintiff pleads factual content that allows the

23  court to draw the reasonable inference that the defendant is liable for the misconduct

24  alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

25  "The plausibility standard is not akin to a probability requirement, but it asks for more than a

26  sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. at 1949 (citing

27  Twombly, 550 U.S. at 556) (quotation marks omitted).  "Where a complaint pleads facts

28  that are merely consistent with a defendant's liability, it stops short of the line between

9

1  possibility and plausibility of 'entitlement to relief." Iqbal, 129 S.Ct. at 1949 (citing Twombly,

2  550 U.S. at 557) (quotation marks omitted).

3      Two working principles underlie Twombly: (1) the tenet that a court must accept a

4  complaint's allegations as true is inapplicable to legal conclusions, threadbare recitals of a

5  cause of action's elements, supported by mere conclusory statements, do not suffice; and

6  (2) only a complaint that states a plausible claim for relief survives a motion to dismiss.

7  Iqbal, 129 S.Ct. at 1949-50 (citing Twombly, 550 U.S. at 555-56 ).  In considering a motion

8  to dismiss, a court may begin by identifying allegations that, because they are mere

9  conclusions, are not entitled to the assumption of truth.  Iqbal, 129 S.Ct. at 1950.  Legal

10  conclusions can provide the complaint's framework, but they must be supported by factual

11  allegations.  Id.  When a complaint contains well-pleaded factual allegations, a court should

12  assume their veracity and then determine whether they plausibly give rise to an entitlement

13  to relief.  Id.

14      3.    Rule 12(e)

15      Under Rule12(e), "[a] party may move for a more definite statement of a pleading to

16  which a responsive pleading is allowed but which is so vague or ambiguous that the party

17  cannot reasonably prepare a response."  Fed.R.Civ.P. 12(e).  The motion requesting a

18  more definite statement must identify defects and specify the details desired.  Id.

19      A Rule 12(e) motion for a more definite statement must be considered in light of the

20  liberal pleading standards set forth in Rule 8(a)(2).  See, e.g., Bureerong v. Uvawas, 922

21  F.Supp. 1450, 1461 (C.D. Cal. 1996) (citing Sagan v. Apple Computer, Inc., 874 F.Supp.

22  1072, 1077 (C.D. Cal. 1994) ("Motions for a more definite statement are viewed with

23  disfavor and are rarely granted because of the minimal pleading requirements of the

24  Federal Rules.")).  A motion for a more definite statement is proper only where the

25  complaint is "so vague or ambiguous that the opposing party cannot respond, even with a

26  simple denial, in good faith or without prejudice to himself."  Cellars v. Pacific Coast

27  Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999) (internal quotations and citation

28  omitted); Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F.Supp. 940, 949 (E.D. Cal.

1    1981) (a motion for a more definite statement is proper if defendant cannot frame a

2    responsive pleading).

3         A Rule 12(e) motion is not a substitute for discovery; such a motion attacks

4    unintelligibility in a pleading, not mere lack of detail.  Wood v. Apodaca, 375 F.Supp.2d

5    942, 949 (N.D. Cal. 2005).  If the detail sought by a motion for more definite statement is

6    obtainable through discovery, the motion should be denied.  Beery v. Hitatchi Home Elecs.

7    (America), Inc., 157 F.R.D. 477, 480 (C.D. Cal. 1993).

8    B.    Federal Defendants' Motion to Dismiss

9         1.    8 U.S.C. § 1252(g)

10        Federal Defendants argue that the court lacks jurisdiction under 8 U.S.C. § 1252(g)

11   to adjudicate plaintiffs' Bivens claims because these claims arise from ICE's decision to

12   initiate removal proceedings against them.

13        Section 1252(g) provides:

14        Except as provided in this section and notwithstanding any other provision
          of law (statutory or nonstatutory), including section 2241 of title 28, United
15        States Code, or any other habeas corpus provision, and sections 1361 and
          1651 of such title, no court shall have jurisdiction to hear any cause or claim
16        by or on behalf of any alien arising from the decision or action by the Attorney
          General to commence proceedings, adjudicate cases, or execute removal
17        orders against any alien under this chapter.

18   8 U.S.C. § 1252(g).

19        Section 1252(g) applies only to three discrete actions that the Attorney General may

20   take: his decision or action to commence proceedings, adjudicate cases, or execute

21   removal orders.  See Kwai Fun Wong v. United States, 373 F.3d 952, 963-65 (9th Cir.

22   2004).  The Ninth Circuit has narrowly construed § 1252(g).  Id. at 964.  Section 1252(g)

23   does not bar review of the actions that occurred prior to any decision to "commence

24   proceedings."  Id. at 965; see also Wong v. U.S. Immigration & Naturalization Serv., 373

25   F.3d 952, 965 (9th Cir. 2004). ("§ 1252(g) does not bar review of the actions that occurred

26   prior to any decision to 'commence proceedings,' if any, against her or to execute the

27   removal order").

28        Because Federal Defendants failed to cite controlling authority in support of the

                                              11

1   proposition that the issuance of an immigration detainer, or any of the other conduct

2   alleged in the complaint, constitutes a decision by the Attorney General to commence

3   proceedings, adjudicate a case, or execute a removal order under § 1252(g), their motion

4   to dismiss for lack of jurisdiction pursuant to § 1252(g) must be denied.  Plaintiffs assert

5   that they do not seek review of, or relief from, their respective immigration proceedings, nor

6   do they challenge the basis for the decision to commence proceedings.  Rather, plaintiffs

7   assert that their claims against Federal Defendants arise from the discriminatory animus

8   that motivated the stops, searches, detentions and denials of due process that occurred

9   prior to their transfer to ICE's custody.  See Wong, 373 F.3d at 964 (finding jurisdiction in a

10  civil case where plaintiff disclaimed any challenge to the execution of the removal itself, but

11  rather asserted that her claims alleging discrimination implicated only actions other than

12  removal, or the commencement of proceedings, if any, leading to that removal); see also

13  Madu v. United States AG, 470 F.3d 1362, 1367-68 (11th Cir. 2006) (finding that section

14  1252(g) did not apply to an alien's challenge to his detention pending removal); Humphries

15  v. Various Federal USINS Employees, 164 F.3d 936, 945 (5th Cir. 1999) (finding that §

16  1252(g) did not apply to an alien's Bivens claims for involuntary servitude and mistreatment

17  during detention, but did preclude a Bivens claim for retaliatory exclusion).

18          Accordingly, Federal Defendants motion to dismiss for lack of jurisdiction pursuant to

19  § 1252(g) is denied.

20          2.      Jurisdiction Over Bivens Claims

21          Federal Defendants argue that the court lacks jurisdiction over plaintiffs' claims

22  against ICE for Bivens violations because the United States has neither waived its

23  immunity nor consented to suit for damages.  In addition, Federal Defendants argue that

24  plaintiffs' Bivens claims against the federal officers in their official capacities must be

25  dismissed because suits against federal officers in their official capacities are essentially

26  suits against the United States.  Finally, Federal Defendants argue that, even assuming

27  that ICE has waived its sovereign immunity, plaintiffs' claims against ICE for Bivens

28  violations should be dismissed because plaintiffs do not have a Bivens-type implied

12

1    remedy for damages against ICE.

2          It is well-established that the United States is entitled to sovereign immunity from

3    any claim for damages unless immunity has been explicitly waived by Congress.  See Dunn

4    & Black, P.S. v. United States, 492 F.3d 1084, 1088 (9th Cir. 2007) ("Unless [the plaintiff]

5    satisfies the burden of establishing that its action [against the United States] falls

6    within an unequivocally expressed waiver of sovereign immunity by Congress, it must be

7    dismissed.").  This immunity extends to federal agencies.  See Hodge v. Dalton, 107 F.3d

8    705, 707 (9th Cir. 1997) ("The doctrine of sovereign immunity applies to federal agencies

9    and to federal employees acting within their official capacities."); Gilbert v. Da Grossa, 756

10   F.2d 1455, 1460 n. 6 (9th Cir. 1985) ("A claim for damages against a federal agency is

11   barred by sovereign immunity unless Congress has consented to suit.").  Bivens does not

12   authorize a suit against the government or its agencies for monetary relief.  See

13   FDIC, 510 U.S. at 486; Thomas-Lazear v. FBI, 851 F.2d 1202, 1207 (9th Cir. 1988);

14   Daly-Murphy, 837 F.2d at 355.

15         Congress has not explicitly waived the immunity of the United States and its

16   agencies with respect to Bivens claims, see FDIC v. Meyer, 510 U.S. 471, 486 (1994)

17   (holding that federal agencies, such as the FDIC, were immune from Bivens actions

18   alleging a violation of constitutional rights).  However, under Bivens, the Supreme Court

19   has held that an action for money damages may be brought against individual federal

20   agents acting under color of their authority for injuries caused by their unconstitutional

21   conduct.  Bivens, 403 U.S. at 397; see also Vacarro v. Dobre, 81 F.3d 854, 856 (9th Cir.

22   1996).  The purpose of Bivens is to "deter the officer," not the agency.  FDIC, 510 U.S. 471

23   at 485.  To state a private cause of action under Bivens, plaintiff must allege: (1) that a right

24   secured by the Constitution of the United States was violated, and (2) that the violation was

25   committed by a federal actor.  See Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir.

26   1988).

27         Bivens provides that "federal courts have the inherent authority to award damages

28   against federal officials to compensate plaintiffs for violations of their constitutional rights."

1   Western Center for Journalism v. Cederquist, 235 F.3d 1153, 1156 (9th Cir. 2000); Bivens,

2   403 U .S. at 394.  However, a Bivens action may only be brought against the responsible

3   federal official in his or her individual capacity.  Daly-Murphy, 837 F.2d at 355.

4          Therefore, the motion to dismiss the Bivens claims is granted in part and denied in

5   part.  To the extent that the complaint attempts to assert Bivens claims for monetary

6   damages against ICE and the DHS – federal agencies – these claims are not cognizable,

7   and are therefore dismissed with prejudice.[3]  Similarly, to the extent that plaintiffs attempt to

8   assert Bivens claims for damages against federal officers in their official capacities, these

9   claims are not cognizable, and are also dismissed with prejudice.  However, to the extent

10  that plaintiffs attempt to assert Bivens claims for damages against the individual defendants

11  in their individual capacities, such claims are cognizable.  And to the extent that plaintiffs

12  seek only injunctive and declaratory relief against ICE and the DHS, the Bivens claims are

13  not subject to dismissal on the basis of sovereign immunity.  Under the APA, federal

14  sovereign immunity is waived for suits against the federal government in which the plaintiff

15  is "*seeking relief other than money damages.*"  5 U.S.C. § 702 (emphasis added).  Federal

16  Defendants offered neither persuasive argument nor citation to controlling authority

17  establishing that plaintiffs cannot maintain an action for injunctive and declaratory relief

18  against a federal agency predicated on constitutional violations of federal agents.

19         3.     Committee's Standing

20         Federal Defendants argue that the Committee lacks both representational and

21  organizational standing to raise the claims asserted in the complaint.

22         In essence, the question of standing is whether the litigant is entitled to have the

23  court decide the merits of the dispute or of particular issues.  Warth v. Seldin, 422 U.S. 490,

24  498 (1975).  Federal Defendants challenge the Committee's  standing to bring this suit on

25  behalf of its members, (representational or associational standing), or on its own behalf,

26  (organizational standing).  See Smith v. Pac. Props. & Dev. Corp., 358 F.3d 1097, 1101

27

28         [3] The court notes that plaintiffs, in footnote 20 of their opposition, concede that they do
       not assert Bivens claims for monetary damages against ICE.

14

1   (9th Cir. 2004).  The Committee's representational standing is contingent upon the standing

2   of its members to bring suit, while the Committee's organizational standing turns on

3   whether the organization itself has suffered an injury-in-fact.  Id.

4              a.       Representational Standing

5       A litigant demonstrates standing by showing that he or she has suffered an injury in

6   fact that is fairly traceable to the challenged action and is redressable by a favorable

7   judicial decision.  Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 118

8   (1998).  To demonstrate constitutional standing, a plaintiff must prove (1) that he or she

9   suffered an injury in fact; (2) the existence of a causal connection specifically traceable to

10  the unconstitutional conduct of defendants; and (3) the likelihood that a favorable outcome

11  will redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

12      For purposes of representational standing analysis it is sufficient if the organizational

13  plaintiff meets the requirements of the Hunt test, i.e., that: (a) its members would otherwise

14  have standing to sue in their own right; (b) the interests it seeks to vindicate are germane to

15  the organization's purposes; and (c) neither the claim asserted nor the relief requested

16  requires the participation of individual members in the lawsuit.  Hunt v. Washington Apple

17  Advertising Comm'n, 432 U.S. 333, 343 (1977).  Representational standing is particularly

18  appropriate where "the association is seeking to represent the interests which are central to

19  the purpose of the organization" and "where the relief sought is some form of prospective

20  remedy, such as declaratory judgment, which will inure to the benefit of the organization's

21  membership."  Peick v. Pension Benefit Guar. Corp., 724 F.2d 1247, 1259 (7th Cir. 1983).

22      Federal Defendants do not contend that the Committee has not satisfied the first or

23  second requirement.  That is, they do not dispute that Committee members would

24  otherwise have standing to sue in their own right or that the interests sought to be protected

25  by the Committee in this litigation are relevant to the Committee's purpose, which includes

26  opposing anti-immigrant policies, educating the public about immigration law and policies,

27  and informing the public about their rights.  See Compl. ¶ 37.  Rather, Federal Defendants

28

15

1    contend that the Committee has not satisfied the third requirement because individualized

2    proof is required to determine whether the challenged conduct caused any harm.

3          However, because, in addition to damages, the complaint seeks declaratory and

4    injunctive relief, which would not require the participation of individual members, the court

5    finds that the Committee has standing as a representative of its members to pursue claims

6    seeking declaratory and injunctive relief.  Associated General Contractors of America v.

7    Associated General Contractors of America v. Metropolitan Water Dist. of Southern

8    California,159 F.3d 1178, 1181 (9th Cir. 1998) (individualized proof from the members is

9    not needed where declaratory and injunctive relief is sought rather than monetary

10   damages); see Warth v. Seldin, 422 U.S. 490, 515 (1975) (holding that an association

11   lacked standing where it sought damages rather than a declaration, injunction, or some

12   other form of prospective relief).  The prayer for relief includes injunctive and declaratory

13   relief as well as nominal, compensatory, special, statutory and punitive damages.  Although

14   the complaint does not specify which plaintiff is seeking which type of relief from which

15   defendant, plaintiffs maintain in their opposition brief that the Committee only seeks

16   declaratory and injunctive relief on its own behalf.

17         Thus, the motion to dismiss the Committee for lack of representational standing is

18   granted in part and denied in part.  The court finds that the Committee has asserted

19   sufficient facts to establish representational standing for its claims for declaratory and

20   prospective relief.  However, the court also finds that the Committee does not have

21   standing to pursue any claim for damages.

22               b.      Organizational Standing

23         "[O]rganizations are entitled to sue on their own behalf for injuries they have

24   sustained."  Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 n. 19 (1982).  "[A]n

25   organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1)

26   frustration of its organizational mission; and (2) diversion of its resources to combat the

27   particular [problem] in question."  Smith, 358 F.3d at 1105.

28

16

1    Plaintiffs allege that the Committee's mission as a non-profit organization is to

2    educate and mobilize the community around legal and social issues related to the rights of

3    immigrants in Sonoma County and to oppose anti-immigrant legislation and policies at both

4    the federal and state levels.  Plaintiffs further allege that the Committee has had to expend

5    time and resources engaging in a campaign to end the challenged practices at issue in this

6    action, including diverting resources from the pursuit of other related goals.  Compl. ¶¶ 2,

7    6, 37-40.

8    The court finds these allegations sufficient to establish organizational standing

9    because plaintiffs allege that the Committee's mission of opposing anti-immigrant policies is

10   frustrated as a result of defendants' actions, and that the Committee has diverted

11   resources to combat defendants' policies.  Accordingly, Federal Defendants' motion to

12   dismiss the Committee for lack of organizational standing is also denied.

13        4.    Standing: Plaintiffs' Right to Assert Claims for Injunctive Relief

14   Federal Defendants argue that plaintiffs do not have standing to assert claims for

15   injunctive relief because they have only identified past injuries, and have not identified any

16   realistic future threat or facts that show a likelihood that they will be stopped again or

17   subjected to immigration detainers.  Federal Defendants maintain that plaintiffs have no

18   standing to sue for injunctive relief because plaintiffs' allegations of future harm are too

19   speculative and remote.

20   In support of their argument for dismissal Federal Defendants rely on City of Los

21   Angeles v. Lyons, 461 U.S. 95, 105 (1983).  However, Lyons is distinguishable from the

22   present case in several critical respects.  First, the decision in Lyons was based on a full

23   evidentiary record, not the untested allegations of the complaint.  Second, in Lyons, unlike

24   here, the plaintiffs did not allege a pattern and practice of unlawful racial profiling, among

25   other things.  See LaDuke v. Nelson, 762 F.2d 1318, 1324 (9th Cir. 1985) (distinguishing

26   Lyons, and affirming the grant of an injunction on the basis that the plaintiff in LaDuke had

27   shown an officially sanctioned pattern of behavior that was distinctly lacking in Lyons); see

28   also Thomas v. County of Los Angeles, 978 F.2d 504, 508 (9th Cir. 1992) ("A state law

17

1   enforcement agency may be enjoined from committing constitutional violations where there
2   is proof that officers within the agency have engaged in a persistent pattern of
3   misconduct.").

4       The court finds that plaintiffs have alleged sufficient facts to withstand Federal
5   Defendants' motion to dismiss.  The complaint alleges that Federal Defendants have
6   engaged in a pattern or practice of constitutional violations or policies promoting
7   constitutional violations, including racial profiling.  Plaintiffs have alleged that Committee
8   members are likely to have encounters with defendants in the future, including Federal
9   Defendants, insofar as the Committee's membership includes several Latino families that
10  live in the neighborhood where defendants regularly patrol.  After discovery is complete,
11  Federal Defendants may attack plaintiffs' entitlement to injunctive relief by a motion for
12  summary judgment.  See Rodriguez v. California Highway Patrol, 89 F.Supp.2d 1131, 1142
13  (N.D. Cal. 2000) (Plaintiffs alleged enough to overcome defendant's motion to dismiss
14  where they alleged a pattern and practice of illegal law enforcement activity – racial
15  profiling; noting that plaintiffs were entitled to proceed with discovery to attempt to establish
16  an evidentiary basis for their claims for injunctive relief, and that after discovery, defendants
17  may attack plaintiffs' entitlement to injunctive relief by a motion for summary judgment.).

18      Accordingly, Federal Defendants' motion to dismiss on the ground that plaintiffs do
19  not have standing to assert claims for injunctive relief is denied.

20          5.      Validity of 8 C.F.R. § 287.7

21      Plaintiffs' eighth cause of action alleges that 8 C.F.R. § 287.7 is inconsistent with 8
22  U.S.C. § 1357, and therefore *ultra vires* in excess of the statutory authority granted by
23  Congress.  Plaintiffs seek an order from this court: (1) declaring that § 287.7 is invalid and
24  *ultra vires* to the governing statute, § 1357; (2) entering a permanent injunction to prohibit
25  defendants from implementing or relying on § 287.7; and (3) declaring that § 287.7 is
26  arbitrary, capricious and an abuse of discretion, in excess of statutory jurisdiction, authority

27

28

18

1  or limitations, or without observance of procedure required by law and therefore unlawful

2  and invalid under the Administrative Procedures Act, 5 U.S.C. § 706 ("APA"). [4]

3      Under the APA, a court is authorized to "set aside agency action, findings, and

4  conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

5  accordance with the law." 5 U.S.C. § 706.  In determining whether § 287.7 is valid, the

6  court will apply the two-part test for judicial review of an administrative agency's

7  construction of a statute it administers as set forth in Chevron, U.S.A. v. Natural Res.

8  Defense Council, 467 U.S. 837 (1984).  First, the court must consider whether Congress

9  "has directly spoken to the precise question at issue."  If the intent of Congress is clear,

10  "that is the end of the matter; for the court, as well as the agency, must give effect to the

11  unambiguously expressed intent of Congress." Id. at 842-43.  In making that assessment,

12  courts not only look at the precise statutory section in question, but also analyze the

13  provision in the context of the governing statute as a whole, presuming congressional intent

14  to create a "symmetrical and coherent regulatory scheme." Food and Drug Admin. v.

15  Brown & Williamson Tobacco Corp. 529 U.S. 120, 133 (2000).

16      Second, if the statute is silent or ambiguous on the issue, courts must defer to the

17  agency's reasonable interpretation of the statute so long as the interpretation is consistent

18  with the purposes of the statute. Chevron, 467 U.S. at 843-45 (" 'The power of an

19  administrative agency to administer a congressionally created . . . program necessarily

20  requires the formulation of policy and the making of rules to fill any gap left, implicitly or

21  explicitly, by Congress.' "); Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545

22  U.S. 967, 980 (2005) ("ambiguities in statutes within an agency's jurisdiction to administer

23  are delegations of authority to the agency to fill the statutory gap in reasonable fashion").

24  "Chevron's premise is that it is for agencies, not courts, to fill statutory gaps." Id. at 982.

25  _____

26      [4] In footnote five of their brief, plaintiffs state their intent to withdraw paragraph 79 of the complaint, which alleges that ICE's predecessor agency, the Immigration and Naturalization

27  Service ("INS") promulgated § 287.7 without notice and an opportunity to comment by the public and in violation of the rule-making process specified by the APA.  Paragraph 79 is

28  therefore STRICKEN from the complaint.

19

1   In other words, if the agency's interpretation is reasonable and not contrary to the

2   discernable intent of Congress, it should be approved even though it is not the only

3   reasonable interpretation or the one the reviewing court would make if deciding the issue in

4   the first instance.  See Unemployment Compensation Comm'n v. Aragon, 329 U.S. 143,

5   153-54 (1946); see also Chevron, 467 U.S. at 842-43.  Rather, "Congress, when it left

6   ambiguity in a statute meant for implementation by an agency, understood that the

7   ambiguity would be resolved, first and foremost, by the agency, and desired the agency

8   (rather than the courts) to possess whatever degree of discretion the ambiguity allows."

9   Nat'l Cable & Telecomms. Ass'n, 545 U.S. at 982.

10   The construction of a statute by those charged with its administration is entitled to

11   substantial deference.  See United States v. Rutherford, 442 U.S. 544, 553 (1979); McKart

12   v. United States, 395 U.S. 185, 193-94 (1969) (an agency is created for purpose of

13   applying a statute in the first instance); Chevron, 467 U.S. at 844 (It is well-settled that

14   "considerable weight should be accorded to an executive department's construction of a

15   statutory scheme it is entrusted to administer, and the principle of deference to

16   administrative interpretations.") (footnote omitted).  However, an agency's interpretation of

17   a statute is not entitled to deference when it goes beyond the meaning that the statute can

18   bear.  MCI Telecomms. Corp. v. AT&T Co., 512 U.S. 218, 229 (1994).

19   8 C.F.R. § 287.7, titled "Detainer provisions under section 287(d)(3) of the Act,"

20   provides:

21   Detainers in general.  Detainers are issued pursuant to sections 236 and 287
    of the Act and this chapter 1.  Any authorized immigration officer may at any
22   time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal,
    State, or local law enforcement agency.  A detainer serves to advise another law
23   enforcement agency that the Department seeks custody of an
    alien presently in the custody of that agency, for the purpose of arresting and
24   removing the alien. The detainer is a request that such agency advise the
    Department, prior to release of the alien, in order for the Department to
25   arrange to assume custody, in situations when gaining immediate physical
    custody is either impracticable or impossible.

26   8 C.F.R. § 287.7(a).  Section 287.7 cites as authority, 8 U.S.C. §§ 1103 and 1357, among

27   other provisions.

28
                                        20

8 U.S.C. § 1103 provides:

> The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers: Provided, however, That determination and ruling by the AttorneyGeneral with respect to all questions of law shall be controlling.

8 U.S.C. §§ 1103(a)(1). Section 1103 further provides that the Secretary of Homeland Security shall establish such regulations . . . and perform such other acts as [s]he deems necessary for carrying out h[er] authority under the provisions of this chapter. 8 U.S.C. § 1103(a)(3).

8 U.S.C. § 1357, titled "Powers of immigration officers and employees," provides, in relevant part:

> (d) Detainer of aliens for violation of controlled substances laws
>
> In the case of an alien who is arrested by a Federal, State, or local law enforcement official for a violation of any law relating to controlled substances, if the official (or another official)--
>
> (1) has reason to believe that the alien may not have been lawfully admitted to the United States or otherwise is not lawfully present in the United States,
>
> (2) expeditiously informs an appropriate officer or employee of the Service authorized and designated by the Attorney General of the arrest and of facts concerning the status of the alien, and
>
> (3) requests the Service to determine promptly whether or not to issue a detainer to detain the alien,
>
> the officer or employee of the Service shall promptly determine whether or not to issue such a detainer. If such a detainer is issued and the alien is not otherwise detained by Federal, State, or local officials, the Attorney General shall effectively and expeditiously take custody of the alien.

8 U.S.C. § 1357(d).

Plaintiffs maintain that § 287.7 is facially invalid because its authorizing statute, § 1357, limits ICE's authority to issue detainers for aliens in custody for violating laws relating to controlled substances. The court is not persuaded by this argument. The fact that § 1357 does not expressly authorize ICE to issue detainers for violations of laws other than

laws relating to controlled substances hardly amounts to the kind of unambiguous expression of congressional intent that would remove the agency's discretion at <u>Chevron</u> step one.   Rather, the court finds that because Congress left a statutory gap for the agency to fill, <u>Chevron</u> step two requires the court to defer to the agency's reasonable interpretation of the statute so long as the interpretation is consistent with the purposes of the statute.

Having reviewed § 1357, as well as the statutory scheme of the governing statute, Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, ("INA"), the court finds that the agency's interpretation of § 1357 is consistent with the purpose of the statute and is not contrary to the discernable intent of Congress.  Given the broad authority vested in the Secretary of Homeland Security to establish such regulations as she deems necessary for carrying out her authority to administer and enforce laws relating to the immigration and naturalization of aliens, and in the absence of clear Congressional intent compelling a contrary result, the court concludes that § 287.7 is a permissible construction of the statute, particularly when read in light of § 1103.  Plaintiffs have not pointed to anything in the text of § 1357 or the statutory scheme expressing an unequivocal congressional intent that ICE's authority to issue detainers is limited to violations of laws relating to controlled substances.  As such, plaintiffs have failed to demonstrate that the agency's interpretation of § 1357 went beyond the meaning that the statute can bear.  Accordingly, § 287.7 is entitled to <u>Chevron</u> deference and, therefore, is not *ultra vires* to § 1357 or any other provision of the INA.

To the extent that plaintiffs urge the court to interpret § 1357 as unambiguously limiting the issuance of immigration detainers to individuals detained by local law enforcement for controlled substance violations, the court declines to do so.  There is nothing in the statute that purports to limit the issuance of immigration detainers to cases where an alien is arrested by a Federal, State, or local law enforcement official for a violation of any law relating to controlled substances.  Contrary to plaintiffs contention, the court does not read § 1357 as permitting the issuance of immigration detainers for

22

1    substance abuse offenses but not for other offenses, including violent offenses such as

2    murder, rape and robbery.  Instead, the court reads the language of § 1357 as simply

3    placing special requirements on officials issuing detainers for a violation of any law relating

4    to controlled substances, not as expressly limiting the issuance of immigration detainers

5    solely to individuals violating laws relating to controlled substances.

6           In addition, to the extent that plaintiffs' eighth cause of action alleges that Federal

7    Defendants' denial of plaintiffs' procedural rights under § 1357 and § 287.3 constitute

8    "agency actions unlawfully withheld or unreasonably delayed" and "agency actions without

9    observance of procedure required by law pursuant to 5 U. S. C. § 706," the court finds that

10   such pleading fails to state a cognizable claim under the APA.  Even assuming that Federal

11   Defendants violated § 1357 and § 287.3, these violations do not give rise to a cognizable

12   claim under the APA.

13          The APA authorizes judicial review of final agency actions "for which there is no

14   other adequate remedy in a court."  5 U.S.C. § 704.  Final agency actions are defined as

15   actions which "mark the consummation of the agency's decision making process," defined

16   as not "merely tentative or interlocutory [in] nature," and which determine "rights or

17   obligations" or from which "legal consequences will flow."  Bennett v. Spear, 520 U.S. 154,

18   177-78 (1997) (internal quotations and citations omitted).  The APA authorizes a "person

19   suffering legal wrong because of agency action, or adversely affected or aggrieved by

20   agency action," to bring suit seeking judicial review of that agency action.  5 U.S.C. § 702.

21   Agency action is statutorily defined to "include[ ] the whole or part of an agency rule, order,

22   license, sanction, relief or the equivalent or denial thereof, or failure to act."  5 U.S.C. §§

23   551(13), 701(b)(2).

24          The court finds plaintiffs' pleading insufficient to state a cognizable claim under the

25   APA insofar as the allegations in the complaint do not challenge an agency action within

26   the meaning of the APA.  First, § 1357 is a statute enacted by Congress, and therefore is

27   not an "agency action" for which the APA authorizes a person to bring suit.  Second,

28   plaintiffs are not alleging that they have suffered a legal wrong or have been adversely

23

1    affected or aggrieved by the promulgation of § 287.3.  Rather, they allege that Federal

2    Defendants' have violated § 287.3.  As such, plaintiffs are not seeking judicial review of an

3    agency action under the APA.

4         Accordingly, plaintiffs' eighth cause of action is dismissed for failure to state a claim

5    upon which relief may be granted.  Because it is clear that amendment would be futile, this

6    claim is dismissed with prejudice.

7         6.    Qualified Immunity

8         Federal Defendants argue that the federal officer defendants are entitled to qualified

9    immunity from liability for civil damages with respect to plaintiffs' <u>Bivens</u> claims because

10   plaintiffs have failed to allege sufficient facts to make a threshold showing that the federal

11   officers violated any constitutional right.  In addition, Federal Defendants argue that the

12   federal officers are entitled to qualified immunity because it was reasonable for the federal

13   officers to believe that their conduct in issuing detainers pursuant to § 287.7 was lawful.

14       "[Q]ualified immunity operates 'to ensure that before they are subjected to suit,

15   officers are on notice their conduct is unlawful.' "  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)

16   (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001)).  The defense of qualified immunity

17   protects "government officials . . . from liability for civil damages insofar as their conduct

18   does not violate clearly established statutory or constitutional rights of which a reasonable

19   person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Squaw Valley</u>

20   <u>Dev. Co. v. Goldberg</u>, 375 F.3d 936, 943 (9th Cir. 2004).

21       The threshold question in a qualified immunity analysis is whether the plaintiff's

22   allegations, if true, establish a constitutional or statutory violation.  <u>Saucier</u>, 533 U.S. at

23   201.  "If no constitutional right would have been violated were the allegations established,

24   there is no necessity for further inquiries concerning qualified immunity."  <u>Id.</u>  The second

25   prong of <u>Saucier</u> asks "whether the right was clearly established."  <u>Id.</u>  A right is "clearly

26   established" when its contours are "sufficiently clear that a reasonable official would

27   understand that what he is doing violates that right."  <u>Id.</u> at 202.  This does not mean "that

28   an official action is protected by qualified immunity unless the very action in question has

24

1    previously been held unlawful," but rather, that "in the light of pre-existing law the
2    unlawfulness must be apparent."  Hope, 536 U.S. at 739. The salient question is whether
3    the state of the law at the time gave officials "fair warning" that their conduct was
4    unconstitutional.  Id. at 740.  The issue of qualified immunity is "a pure question of law."
5    Elder v. Holloway, 510 U.S. 510, 514 (1994).

6           As to Federal Defendants argument that the complaint does not contain sufficient
7    facts showing that the individual federal officers personally violated any constitutional right,
8    the court agrees.  With respect to Wollman, the complaint does not allege any facts
9    showing how Wollman participated in the alleged constitutional violations.  Rather, the
10   complaint simply alleges that Special Agent-in-Charge Wollman is responsible for the
11   administration and management of all ICE enforcement activities within Northern California.
12   Compl. ¶ 14.  Aside from the fact that Wollman headed the San Francisco Office of
13   Investigations, plaintiffs have pled no substantial connection between Wollman and the
14   alleged constitutional violations.  This bare allegation is insufficient to withstand a motion to
15   dismiss as it provides absolutely no factual predicate as to how Wollman violated any of the
16   plaintiffs' constitutional rights.  See Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.
17   The Bivens claims asserted against Wollman are therefore dismissed for failure to state a
18   claim upon which relief may be granted.

19          With respect to Merendino, the court finds that the complaint does not allege any
20   facts showing how Merendino participated in the alleged constitutional violations.  Plaintiffs,
21   for their part, do not dispute that the complaint is devoid of factual allegations connecting
22   Merendino to the constitutional violations alleged; rather, they simply assert that it is their
23   understanding that Merendino participated in the arrest of Sanchez-Lopez.  Needless to
24   say, such pleading does not satisfy Rule 8.  See Iqbal, 129 S.Ct. at 1949; Twombly, 550
25   U.S. at 555.  The Bivens claims asserted against Merendino are therefore dismissed for
26   failure to state a claim upon which relief may be granted.

27          With respect to Huelga, the court finds that the complaint does not allege sufficient
28   facts showing that he violated any of the plaintiffs' constitutional rights.  The complaint

                                              25

1   alleges, on information and belief, that Huelga and Salkin approached Sonato-Vega at his

2   place of employment and arrested him and booked him into County jail without a warrant

3   and without probable cause to believe he was a non-citizen without authorization to be in

4   the United States, much less a determination that he was likely to escape before arrest.

5   Compl. ¶ 47.  The complaint further alleges that, during his four-days in County jail before

6   his transfer to ICE's custody, Sonato-Vega did not receive notice of any charges against

7   him, examination by a neutral magistrate or non-arresting ICE agent, a list of low or no-cost

8   immigration legal services, or notice that he had a right to a hearing or a bond

9   determination.  Id.  ¶ 48.

10          Based on these allegations, the complaint purports to asserts three Bivens claims

11  against Huelga, predicated on Hulega's alleged violation of plaintiffs' Fourth and Fifth

12  Amendment rights.  Specifically, plaintiffs' fourth cause of action titled, "Bivens, Fourth

13  Amendment, 8 U.S.C. § 1357 (Unreasonable Search and Seizures)," incorporates by

14  reference the preceding allegations of the complaint and alleges: "The above described

15  policies, practices and conduct of . . . Federal Defendants . . . have violated and will violate

16  Plaintiffs' right to be free from unreasonable searches and seizures under the Fourth

17  Amendment . . . and their statutory rights under 8 U.S.C. § 1357."  Plaintiffs' fifth cause of

18  action titled, "Bivens, Fifth Amendment (Equal Protection)," incorporates by reference the

19  preceding allegations of the complaint and alleges: "Federal Defendants' above described

20  policies, practices and conduct intentionally targeted Plaintiffs based on their race, color

21  and/or ethnicity and discriminatorily impacted and continues to impact Latinos in Sonoma

22  County in violation of Plaintiffs' rights under the equal protection clause of the Fifth

23  Amendment to the United States Constitution."  Plaintiffs' sixth cause of action titled,

24  "Bivens, Fifth Amendment (Due Process)," incorporates by reference the preceding

25  allegations of the complaint and alleges: "Federal Defendants' above described

26  practices and conduct have violated and will violate Plaintiffs' right to due process of law

27  under the Fifth Amendment of the United States Constitution."

28

                                            26

The court finds such vague and conclusory pleading insufficient to withstand a

motion to dismiss.  Under Rule 8, while a pleading does not require detailed factual

allegations, it demands more than naked assertions devoid of further factual enhancement.

Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555, 557.  Moreover, while a court must

accept a complaint's allegations as true, this tenet is inapplicable to legal conclusions

unsupported by factual allegations.  See Iqbal, 129 S.Ct. at 1949-50. (Although

well-pleaded factual content is accepted as true for purposes of determining whether the

complaint states a plausible claim for relief, this assumption of truth does not apply to legal

conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements.") (citing Twombly, 550 U.S. at

555).

Disregarding plaintiffs' conclusory allegations, the complaint does not contain

sufficient factual matter to render it plausible that Huelga personally violated any of the

plaintiffs' constitutional rights.  For example, as to Sanchez-Lopez and Medel Moyado, the

complaint contains no factual allegations whatsoever showing that Huelga personally

violated either of their Fourth or Fifth Amendment rights.  As to Sonato-Vega, while

plaintiffs allege that Huelga violated Sonato-Vega's Fourth Amendment rights by failing to

comply with § 1357, plaintiffs neither recite the relevant provision that Huelga allegedly

violated nor set forth facts explaining how Huelga violated this provision.  Such pleading

does not state a Fourth Amendment claim that is plausible on its face.  See Iqbal, 129 S.Ct.

at 1949 (in order to state a claim for relief that is plausible on its face, the complaint must

plead factual allegations that allow the court to draw the reasonable inference that

defendant is liable for the misconduct alleged).  Similarly, while plaintiffs allege that Huelga

violated Sonato-Vega's Fifth Amendment rights (e.g., equal protection, due process), these

claims are not supported by well-pleaded factual allegations that plausibly give rise to an

entitlement to relief.  The complaint, for instance, does not allege any facts showing that

Huelga personally participated in the alleged denial of Sonato-Vega's due process rights

while he was in custody at the County jail.  Instead, plaintiffs' Fifth Amendment claims are

1   supported by mere conclusory statements, which do not suffice to withstand a motion to

2   dismiss.

3       In short, plaintiffs' Bivens claims against Hulega are subject to dismissal because

4   the factual allegations in the complaint do not allow the court to draw the reasonable

5   inference that Huelga is liable for the misconduct alleged.  The complaint provides no

6   factual context or reasons to support plaintiffs unexplained legal conclusions that Huelga

7   violated the constitutional rights of "plaintiffs."  The Bivens claims asserted against Huelga

8   are therefore dismissed for failure to state a claim upon which relief may be granted.

9       In sum, the court finds that plaintiffs' vague and conclusory assertions of wrongdoing

10  scattered throughout the complaint are insufficient to establish the requisite factual

11  predicate to demonstrate that the federal officer defendants personally violated any of the

12  plaintiffs' constitutional rights.  Because plaintiffs failed to plead facts that, if true, establish

13  constitutional violations, there is no need to examine whether such rights were clearly

14  established.  The allegations, viewed in the light most favorable to the plaintiffs, do not

15  demonstrate that the federal officer defendants violated any of plaintiffs' constitutional

16  rights.  Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were

17  the allegations established, there is no necessity for further inquiries concerning qualified

18  immunity.").

19      Accordingly, plaintiffs' fourth through sixth causes of action are dismissed for failure

20  to state a claim upon which relief may be granted.  In the absence of allegations to subject

21  federal officer defendants to liability under Bivens, qualified immunity is a viable defense.

22  While the court is mindful of "the importance of resolving immunity questions at the earliest

23  possible stage in litigation," Hunter v. Bryant, 502 U.S. 224, 227 (1991), the court

24  nonetheless grants plaintiffs leave to file an amended complaint to delete the federal

25  officers as defendants in this action or to attempt to allege sufficient facts to state

26  cognizable Bivens claims against each of them.  Plaintiffs may amend their complaint if

27  they can allege specific facts demonstrating that Wollman participated in or directed

28  constitutional violations, or knew of constitutional violations of subordinates and failed to act

28

1   to prevent them.  See Iqbal, 129 S.Ct. at 1948 ("Because vicarious liability is inapplicable to

2   Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant,

3   through the official's own individual actions, has violated the Constitution."); Taylor v. List,

4   880 F.2d 1040, 1045 (9th Cir. 1989) ( "A supervisor is only liable for constitutional violations

5   of his subordinates if the supervisor participated in or directed the violations, or knew of the

6   violations and failed to act to prevent them.").[5]  Plaintiffs may also amend their complaint if

7   they can allege specific facts demonstrating that Merendino and Huelga participated in

8   constitutional violations.  See Pellegrino v. United States, 73 F.3d 934, 936 (9th Cir. 1996)

9   (Liability under Bivens must be based on the personal involvement of the defendant.).

10       The court does not reach at this time the question whether the issuance of detainers

11  in reliance on § 287.7 shields the federal officer defendants form liability for any of the

12  constitutional violations alleged by plaintiffs.  The court anticipates, however, that

13  defendants will raise this issue again, if necessary, after the complaint has been amended.

14       7.    42 U.S.C. §§ 1983 and 1985(3)

15       Federal Defendants argue that plaintiffs' ninth cause of action for conspiracy fails

16  because the federal officer defendants were not acting under color of state law with respect

17  to the constitutional violations alleged.  In addition, Federal Defendants argue that this

18  cause of action fails because plaintiffs have not pled sufficient facts to state a conspiracy

19  claim.

20       Section 1983 requires that the actionable conduct be under color of state law.

21  Gibson v. United States, 781 F.2d 1334, 1338, 1343 (9th Cir. 1986); see Morse v. North

22  Coast Opportunities, Inc., 118 F.3d 1338, 1343 (9th Cir. 1997) ("Lest there be any

23  continuing confusion, we take this opportunity to remind the Bar that by its very terms, §

24  1983 precludes liability in federal government actors.").  Federal officers acting under

25

26

27       [5] Although Taylor was an action under § 1983, actions under Bivens are identical to
    those brought under § 1983 "save for the replacement of a state actor under § 1983 by a
28  federal actor under Bivens."  Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991).

1    federal authority are immune from suit under § 1983 unless the state or its agents

2    significantly participated in the challenged activity.  Gibson, 781 F.2d at 1343.

3         To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the

4    purpose of depriving, either directly or indirectly, any person or class of persons of the

5    equal protection of the laws, or of equal privileges and immunities under the laws; and (3)

6    an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person

7    or property or deprived of any right or privilege of a citizen of the United States.  Sever v.

8    Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).  To establish the second element

9    of a Section 1985(3) claim, a plaintiff must allege and prove that the deprivation of the right

10   in question was "motivated by 'some racial, or perhaps otherwise class-based, invidiously

11   discriminatory animus behind the conspirators' action.' "  Id.  To state a claim for conspiracy

12   to violate constitutional rights, "the plaintiff must state specific facts to support the existence

13   of the claimed conspiracy."  Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989);

14   Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004); see also Sanchez

15   v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991) ("A mere allegation of conspiracy

16   without factual specificity is insufficient to support a claim.").

17        A conspiracy claim brought under § 1983 requires proof of " 'an agreement or

18   meeting of the minds to violate constitutional rights,' "  Franklin v. Fox, 312 F.3d 423, 441

19   (9th Cir. 2001), and an actual deprivation of constitutional rights.  Hart v. Parks, 450 F.3d

20   1059, 1071 (9th Cir. 2006).  " 'To be liable, each participant in the conspiracy need not

21   know the exact details of the plan, but each participant must at least share the common

22   objective of the conspiracy.' "  Franklin, 312 F.3d at 441

23        Plaintiffs' ninth cause of action alleges that "Defendants and their agents conspired

24   to violate Plaintiffs' constitutional and statutory rights, including their right to equal

25   protection under the law, in violation of § 1985(3)."  Plaintiffs further allege that "[e]ach of

26   the Defendants, individually and through their agents, has performed at least one overt act

27   in furtherance of said conspiracy."

28

Even assuming, without deciding, that the federal officers can be considered to be acting under color of state law for purposes of § 1983, plaintiffs failed to allege sufficient facts to state a cognizable conspiracy claim under § 1985(3).[6]  Plaintiffs' allegations related to conspiracy are largely conclusory.  The complaint, for instance, does not allege specific acts showing an agreement or meeting of the minds to deprive plaintiffs of their constitutional rights under § 1983.  Rather, the complaint generally alleges that Sheriff's Deputies and ICE agents participate in joint operations that target Latinos who are criminal gang members, and that defendants have adopted the unlawful policy, practice and custom of relying on race to stop, detain and question persons who appear to be Latino to probe their immigration status without reasonable suspicion or probable cause to suspect they have committed a crime or are non-citizens without lawful immigration status.  Compl. ¶¶ 21-22.

Moreover, even assuming for the sake of argument that the allegations in the complaint sufficiently allege an agreement or meeting of the minds to violate constitutional rights, this claim fails because, as stated above, plaintiffs have not pled sufficient facts to establish that the federal officer defendants violated any of plaintiffs' constitutional rights.

Accordingly, plaintiffs' ninth cause of action is dismissed for failure to state a claim upon which relief may be granted.  Because amendment does not appear futile, plaintiffs may amend this claim to allege specific facts to support the existence of the claimed conspiracy and the required state claim.

C.     County Defendants' Motion to Dismiss

1.     Standing Re Committee

County Defendants argue that the Committee lacks representational and organizational standing.  However, for the reasons stated above, the court finds that the

_____

[6]To the extent that Federal Defendants argue that they are immune from suit under § 1983, the court cannot determine at this juncture if immunity attaches given the lack of clarity in the complaint as to what each person did.  Gibson, 781 F.2d at 1343 (Federal officers acting under federal authority are immune from suit under § 1983 unless the state or its agents significantly participated in the challenged activity.).

1    complaint alleges sufficient facts to establish that the Committee has both representational

2    and organizational standing.  To the extent that County Defendants advance a different

3    argument than the Federal Defendants in this regard; namely, that the Committee lacks

4    representational standing to assert claims on behalf of its members because its members

5    do not have standing to sue in their own right, and the interests at stake in this litigation are

6    not germane to the Committee's purpose, the court is not persuaded by this argument.

7        The complaint alleges that Sanchez-Lopez and Medel Moyado are members of the

8    Committee, that they have suffered constitutional violations based on the allegedly race-

9    based policies and practices of defendants in arresting and detaining Latino members of

10   the community based solely on their immigration status, and that the Committee's mission

11   is to educate and mobilize the community around legal and social issues related to the

12   rights of immigrants in Sonoma County and to oppose anti-immigrant legislation and

13   policies at both the federal and state levels.  The court finds that the allegations in the

14   complaint are sufficient to demonstrate representational standing.  In addition, to the extent

15   that County Defendants argue that the plaintiffs do not have standing to request injunctive

16   relief, the court does not find this argument persuasive, for the reasons stated above.

17           2.      California Tort Claims Act

18       County Defendants argue that the state law claims alleged by Sanchez-Lopez and

19   the Committee are barred for failure to comply with the claims presentation requirements of

20   California's Tort Claims Act.

21       Under California's Tort Claims Act, failure to timely present a claim for money or

22   damages to a public entity bars a plaintiff from filing a lawsuit against that entity.  See Cal.

23   Gov't.Code §§ 910, 911.2, 915, 945.4; see also State v. Superior Court (Bodde), 32

24   Cal.4th 1234, 1239  (2004).  In enacting the Tort Claims Act, the California Legislature

25   intended to confine potential governmental liability to rigidly delineated circumstances so

26   that governmental immunity is waived only if the various requirements of the act are

27   satisfied.  Bodde, 32 Cal.4th at 1243.  Failure to allege facts in a complaint demonstrating

28   or excusing compliance with prelitigation governmental claims presentation requirements of

                                            32

1   the Tort Claims Act subjects the complaint to a motion to dismiss for failure to state a cause

2   of action.  Id. at 1239, 1243.

3       Because the complaint fails to allege facts demonstrating that Sanchez-Lopez or the

4   Committee complied or are excused from complying with the claims presentation

5   requirements of the Tort Claims Act, the state law tort claims asserted by Sanchez-Lopez

6   and the Committee are dismissed for failure to state a claim upon which relief may be

7   granted.  Since amendment does not appear futile, these claims are dismissed without

8   prejudice.  Plaintiffs may amend their complaint if they can allege facts demonstrating that

9   Sanchez-Lopez and/or the Committee complied or are excused from complying with the

10  claims presentation requirements of the Tort Claims Act.

11      3.      Timeliness of Sonato-Vega's State Law Claims

12      County Defendants argue that Sonato-Vega's delay in filing his claim with Sonoma

13  County under the Tort Claims Act bars him from recovering damages for incidents that

14  arose more than six months prior to the filing of his claim.

15      A claim for a personal injury must be presented within six months of accrual. Cal.

16  Gov't.Code § 911.2(a); Bodde, 32 Cal.4th at 1239.  Until a claimant has properly presented

17  a claim to a public entity, and the public entity has acted on it or it is deemed rejected in

18  accordance with the Act, the claimant may not file suit against that entity.  Gov't.Code §

19  945.4;  Bodde, 32 Cal.4th at 1239.  The failure to timely present a claim bars a person from

20  filing a lawsuit against that entity.  Bodde, 32 Cal.4th at 1239.

21      Because the complaint alleges that Sonato-Vega filed an administrative claim with

22  Sonoma County on January 29, 2008, any claim against the County Defendants predicated

23  on conduct occurring prior to July 29, 2007 is time-barred.  Thus, while it appears that

24  plaintiffs' allegation that, in or about July 2007, Sonato-Vega was questioned and searched

25  without reasonable suspicion or consent by Salkin and another Sheriff's Deputy, may be

26  time-barred, the court will not dismiss this allegation at this time as it is not apparent from

27  the face of the complaint that this allegation is in fact time-barred.

28

1      4.     Validity of 8 C.F.R. § 287.7

2          County Defendants argue that ICE has the authority to issue immigration detainers

3  that require County Defendants to take and hold persons in local custody, even in the

4  absence of an arrest for a controlled substance violation, and that the plaintiffs' claims for

5  relief based on plaintiffs' challenges to § 287.7 must fail.  While the court agrees, as found

6  above, County Defendants have not identified any claim asserted against them that is

7  subject to dismissal on this basis.  Likewise, to the extent that County Defendants argue

8  that "plaintiffs' challenges to the Sheriff's Department cooperation with ICE officials in

9  taking or retaining persons suspected of immigration violations into custody pursuant to

10 immigration detainers has no basis in law or fact, and should be dismissed," County

11 Defendants have not identified any claim asserted against them that is subject to dismissal

12 on this basis.

13     5.     42 U.S.C. § 2000d, *et seq.* (Title VI)

14         County Defendants argue that plaintiffs Title VI claim is subject to dismissal because

15 plaintiffs have failed to allege facts showing that they were subject to discrimination under a

16 particular program that receives federal financial assistance, as any such assistance could

17 be wholly unrelated to the discrimination allegedly suffered.

18         Title VI of the Civil Rights Act of 1964 provides as follows: "No person in the United

19 States shall, on the ground of race, color, or national origin, be excluded from participation

20 in, be denied the benefits of, or be subjected to discrimination under any program or activity

21 receiving Federal financial assistance."  42 U.S.C. § 2000d.  "To state a claim for damages

22 under 42 U.S.C. § 2000d, *et seq.*, a plaintiff must allege that (1) the entity

23 involved is engaging in racial discrimination; and (2) the entity involved is receiving federal

24 financial assistance.  Although the plaintiff must prove intent at trial, it need not be pled in

25 the complaint."  Fobbs v. Holy Cross Health Sys. Corp., 29 F.3d 1439, 1447 (9th Cir. 1994)

26 (citations omitted), *overruled on other grounds by,* Daviton v. Columbia/HCA Healthcare

27 Corp., 241 F.3d 1131 (9th Cir. 2001).

28

                                         34

Plaintiffs' Title VI claim alleges that Sonoma County and the Sonoma County Sheriff's Department and their programs or activities receive financial assistance and funding from the United States government, and that as a recipient of federal financial assistance, Sonoma County is required to conduct its activities in a racially non-discriminatory manner pursuant to Title VI of the Civil Rights Act of 1964 ("Title VI"). Plaintiffs further allege that County Defendants' above-described policies, practices and conduct have denied and will deny plaintiffs their right to be free from discriminatory treatment under 42 U.S.C. § 2000d.  Specifically, plaintiffs allege that Sheriff's Deputies, have "adopted the unlawful, racially-biased policy, practice and custom of relying on the impermissible factors such as race, color and/or ethnicity to stop, detain, question and/or search persons who are or appear to be Latino and to probe into their immigration status without reasonable suspicion or probable cause to suspect that they have committed a crime or are noncitizens without lawful immigration status."

The court reads defendants' motion as insisting that plaintiffs must identify in their complaint a particular program rather than simply naming the "County" or the "County Sheriffs Department."  But defendants cite no authority for this position.  Defendants also argue that plaintiffs provide no "facts" to support their assertion that the county receives federal financial assistance and funding.  Although the allegations with respect to this claim are largely conclusory, the court nonetheless finds that plaintiffs have alleged sufficient facts to withstand County Defendants' motion to dismiss.  While ultimately plaintiffs will have to prove that they were discriminated against by a program or activity that receives federal financial assistance or funding, the allegations at this juncture are sufficient to provide the County "fair notice of the claim and the grounds upon which it rests." Accordingly, County Defendants motion to dismiss plaintiffs' seventh cause of action is denied.

6.    California Gov't.Code § 11135

County Defendants similarly argue that dismissal of plaintiffs' § 11135 claim is appropriate because plaintiffs failed to allege facts showing that they were subject to

35

1    discrimination under a particular program that receives financial assistance from the State

2    of California.

3        California Government Code § 11135 provides: "No person in the State of California

4    shall, on the basis of race, national origin, ethnic group identification, religion, age, sex,

5    sexual orientation, color, or disability, be unlawfully denied full and equal access to the

6    benefits of, or be unlawfully subjected to discrimination under, any program or activity that

7    is conducted, operated, or administered by the state or by any state agency, is funded

8    directly by the state, or receives any financial assistance from the state."  See also 22

9    Cal.Code Regs. § 98101 (It is a discriminatory practice for a recipient, in carrying out any

10   program or activity directly, or through contractual, licensing or other arrangements, on the

11   basis of ethnic group identification or color).   "Program or activity" includes "any project,

12   action or procedure undertaken directly by recipients of state support . . ."  22 Cal.Code

13   Regs. § 98010; see Darensburg v. Metropolitan Transp. Com'n, 2008 WL 3915349, *14

14   (N.D. Cal. 2008) (concluding that a recipient of state support may not discriminate in any of

15   its activities).

16       Plaintiffs' § 11135 claim alleges that Sonoma County receives financial assistance

17   from the state of California and that Sonoma County's above-described policies, practices

18   and conduct have subjected plaintiffs to discrimination on the basis of race in violation of

19   Cal. Gov't.Code § 11135 and its implementing regulations.  Because the complaint alleges

20   that Sonoma County receives state funding, and that Sonoma County Sheriff's deputies

21   have engaged in a racially-biased policy, practice and custom of relying on the

22   impermissible factors such as race, color and/or ethnicity to stop, detain, question and/or

23   search persons who are or appear to be Latino, the court finds that plaintiffs have alleged

24   sufficient facts to withstand County Defendants' motion to dismiss.  Like the allegations with

25   respect to federal funding, these allegations are sufficient to provide the County "fair notice

26   of the claim and the grounds upon which it rests."  Accordingly, County Defendants motion

27   to dismiss plaintiffs' fourteenth cause of action is denied.

28

1

7.      False Arrest and Imprisonment, Intentional Infliction of Emotional Distress and Negligence

2

County Defendants argue that plaintiffs' claims for false arrest and/or imprisonment,

3

intentional infliction of emotional distress ("IIED") and negligence against the County are

4

subject to dismissal because plaintiffs failed to allege a statutory basis for these claims.

5

Plaintiffs did not oppose this argument.

6

Tort liability of public entities in California is governed by the Tort Claims Act, Cal.

7

Gov't.Code § 810 *et seq.* Forbes v. County of San Bernardino, 101 Cal.App.4th 48, 53

8

(2002).  California Government Code § 815 provides: "Except as otherwise provided by

9

statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act

10

or omission of the public entity or a public employee or any other person."  Cal. Gov't.Code

11

§ 815(a).  Accordingly, public entities may be held liable only if a statute is found declaring

12

them to be liable.  Forbes, 101 Cal.App.4th at 53; see also Munoz v. City of Union City, 120

13

Cal.App.4th 1077, 1112 (2004) (Direct tort liability of public entities under state law must be

14

based on a specific statute declaring them to be liable, or at least creating some specific

15

duty of care.).

16

The court finds that the complaint fails to allege sufficient facts to withstand County

17

Defendants' motion to dismiss.   Plaintiffs have not pled a statutory basis showing that the

18

County may be held liable for their claims for false arrest or imprisonment, IIED and

19

negligence.  Accordingly, plaintiffs' fifteenth, sixteenth and seventeenth causes of action

20

are dismissed for failure to state a claim upon which relief may be granted.  Because

21

amendment does not appear futile, these claims are dismissed without prejudice.  Plaintiffs

22

may amend their complaint to allege facts sufficient to establish the existence of statutory

23

liability with respect to these claims.

24

8.      Punitive Damages

25

County Defendants argue that punitive damages cannot be recovered against a

26

public entity.  The court agrees.  California Government Code § 818 bars the award of

27

punitive damages against a public entity.  People of California v. Kinder Morgan Energy

28

37

1   People of California v. Kinder Morgan Energy Partners, L.P., 569 F.Supp.2d 1073, 1092

2   (S.D. Cal. 2008).  The Supreme Court has also held that, with respect to federal claims

3   brought under § 1983, municipalities are immune from punitive damages.  See City of

4   Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

5          As previously noted, the complaint is not clear as to which damages are sought from

6   which defendant.  To the extent plaintiffs' prayer for relief seeks punitive damages against

7   the County, County Defendants' motion to dismiss is granted.  Any amended complaint

8   may not include a request for punitive damages that is directed at the County.

9   D.     County Defendants' Motion for More Definite Statement

10         County Defendants argue that plaintiffs should be required to file a more definite

11  statement because the complaint is so vague, ambiguous and/or uncertain that defendants

12  cannot reasonably prepare a response.  Although the motions to dismiss have been in

13  large part denied, the court finds nonetheless that a more definite statement is warranted.

14  As pled, the complaint does not properly notify defendants of the claims they are defending

15  against.  Nor does it provide the court with the clarity needed to resolve significant issues

16  including qualified immunity.  It is unclear at best.

17         The complaint is brought by three individual plaintiffs and an entity plaintiff, alleges

18  seventeen causes of action against eight defendants, including entity defendants as well as

19  individual state and federal officer defendants, but does not clearly match the specific

20  factual allegations contained in the 9-page factual recitation with specific legal claims

21  against specific defendants.  It also does not explain which defendants are liable for which

22  legal claims or how they are liable.  For example, with respect to the constitutional

23  violations alleged (e.g., first through sixth and tenth through twelfth causes of action), the

24  complaint incorporates the 9-page factual recitation by reference into each claim and then

25  generally states that "Federal Defendants' " or "Local Defendants' " "above-described

26  policies, practices and conduct" violated "plaintiffs' " constitutional rights without identifying

27  the specific factual allegations that support each plaintiff's claim against each defendant.

28

1    Specifically, while Sanchez-Lopez and Medel Moyado purport to assert Fourth

2  Amendment claims against county officers Cogbill and Salkin (first and tenth causes of

3  action), and federal officers Wollman, Huelga and Merendino (fourth cause of action), the

4  complaint does not contain specific factual allegations showing that any of these officers

5  participated in violating Sanchez-Lopez's and Medel Moyado's Fourth Amendment rights.

6  In addition, while Sanchez-Lopez and Medel Moyado purport to assert Fifth Amendment

7  equal protection claims against county officers Cogbill and Salkin (second and eleventh

8  causes of action), and federal officers Wollman, Huelga and Merendino (fifth cause of

9  action), the complaint does not contain specific factual allegations showing that any of

10 these officers personally participated in the denial of their due process rights.  Finally, while

11 Sanchez-Lopez, Sonato-Vega and Medel Moyado purport to allege Fifth Amendment due

12 process claims against county officers Cogbill and Salkin (third and twelfth causes of

13 action), and federal officers Wollman, Huelga and Merendino (fifth cause of action), the

14 complaint does not contain specific factual allegations showing that any of these officers

15 participated in violating plaintiffs' due process rights.

16    This is just an example.  The complaint is vague and difficult to reasonably decipher,

17 let alone meaningfully answer.  See McHenry v. Renne, 84 F.3d 1172 (9th Cir. 1996).  As

18 such, an amended complaint setting forth a more definite statement is necessary, so that

19 defendants are given a fair opportunity to frame a responsive pleading.  Plaintiffs are

20 ordered to amend their complaint to include simple, concise and direct averments

21 explaining what actions each defendant took and why those actions are unlawful.  The

22 amended complaint shall clearly specify which plaintiff is suing which defendant(s) under

23 which specific legal theory and include specific allegations of fact stating how each

24 defendant is alleged to have violated plaintiffs' legal rights.  Plaintiffs are also ordered to

25 clarify the type of relief, e.g., monetary, declaratory, injunctive, that each plaintiff seeks

26 against each defendant.  The court expects that the additional clarity and specificity will go

27 a long way towards minimizing motion practice concerning the pleadings.  On the other

28 hand, an amended complaint that closely resembles the current complaint will undoubtedly

1   produce more motions to dismiss.  And of course the court recalls that all defendants have

2   indicated that there are grounds that could not be asserted in these motions because the

3   complaint is so unclear.

4   E.       County Defendants' Motion for Protective Order and Plaintiffs' Motion to Compel

5           On June 19, 2009, County Defendants filed a motion for a protective order seeking

6   to stay plaintiffs' Amended Notice of Deposition of defendant County pursuant to Rule

7   30(b)(6) of the Federal Rules of Civil Procedure until such time as plaintiffs have satisfied

8   their pleading obligations under Rule 8, arguing that plaintiffs are not entitled to any

9   discovery at this time based on Iqbal.  County Defendants argue that without a complaint

10  that is certain, specific and unambiguous, they are unable to effectively prepare a defense,

11  determine the applicability of governmental privileges, or determine what information is

12  relevant to this case for discovery purposes.  County Defendants maintain that allowing

13  plaintiffs to proceed with discovery at this stage of the litigation on matters that may be

14  irrelevant would be oppressive and unduly burdensome and will result in the unnecessary

15  expenditure of scant public resources.  Although County defendants initially appeared to

16  move only for a stay of the Rule 30(b)(6) depositions, both sides argue in support of and in

17  opposition to a stay of all discovery.  On July 8, 2009, plaintiffs filed a motion to compel

18  production of documents in response to plaintiffs' Request for Production (Set One) and to

19  compel the Rule 30(b)(6) deposition of the County which was the initial focus of County

20  Defendants' motion.  Both motions raise essentially the same issues.

21          Under Rule 26(b) of the Federal Rules of Civil Procedure, a party "may obtain

22  discovery regarding any matter, not privileged, which is relevant to the subject matter

23  involved in the pending action."  Fed.R.Civ.P. 26(b)(1).  However, for "good cause shown,"

24  a court may issue a protective order "to protect a party or person from annoyance,

25  embarrassment, oppression, or undue burden or expense," including: (1) prohibiting

26  disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3)

27  preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery

28  to certain matters.  Fed.R.Civ.P. 26(c)(1)

To obtain a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance by demonstrating harm or prejudice that will result from the discovery.  Fed.R.Civ.P. 26(c); Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210-1211 (9th Cir. 2002) ("Phillips").  If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary.  See Phillips, 307 F.3d at 1211.  Whether or not a protective order is entered in any case is subject to the discretion of the court.  See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) (holding that Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required").

Although the motion to dismiss was not granted in its entirety, the motion for a more definite statement was, for the reasons stated above.  And for those reasons the court finds that the complaint is deficient and further that some protection is therefore warranted.  The parties argue at length about the applicability of Iqbal to this case in general and to discovery in particular.  As should be apparent from the court's citation to Iqbal throughout this order, the court finds that notwithstanding the factual distinctions, the Supreme Court's latest pronouncement on pleading standards applies to this case, just as does Twombly.  A quick Westlaw search reflects that Iqbal has been cited nearly 1000 times by district and appellate courts in the few months since its issuance, so the court's conclusion is no stretch.  There is little case law, however, in the wake of Iqbal elucidating the relationship between the adequacy of the pleadings and the plaintiff's right to engage in discovery and the court has not yet determined exactly how it will apply the reasoning of that case to this and the hundreds of other pending cases on the court's docket.  For now the court relies on Rule 26(c) under which County Defendants have brought their motion for a protective order, while looking to Iqbal for guidance.

In attempting to reach an appropriate balance the court has considered several factors.  Like Iqbal, this case raises significant issues of qualified immunity.  Given that the purpose of a qualified immunity defense is not only to permit the accused government

41

1   official to avoid liability, but also to free that official from the disruptions, inconvenience and

2   expense of discovery, a goal that would be defeated if discovery were permitted.  The court

3   has already found that qualified immunity is a viable defense for the individual federal

4   defendants and County defendants have indicated an intent to raise the defense after the

5   claims are clarified in an amended complaint.  On the other hand, this case, unlike Iqbal

6   involves, in addition to government officials, government agencies which are not subject to

7   qualified immunity.   Given the sheer scope of the claims and the rulings in favor of plaintiffs

8   that the court has made in this order, it is unlikely that this case will be entirely disposed of

9   on any number of motions to dismiss.  Thus, discovery is inevitable.

10          On balance, the court finds that good cause exists to impose a limited stay of

11   discovery.  Thus, County Defendants' motion for a protective order is granted and plaintiffs'

12   motion to compel is denied.  County defendants need not respond to the outstanding

13   discovery and no new discovery may be propounded pending plaintiffs' filing of the first

14   amended complaint and County Defendants' response.  Following the court's review it will

15   be determined whether discovery should proceed against either the government agencies

16   or the individual defendants or both.

17   F.     Stipulation to Vacate Case Management and Pretrial Order

18          The court grants the request of the parties to vacate the December 19, 2008 case

19   management and pretrial order.  The court declines, however, to vacate the referral to

20   Magistrate Judge Chen for a settlement conference.  A further case management

21   conference will be scheduled, not 45 days after the date of this order, but after the

22   amended complaint and a response are filed.  If another motion to dismiss is filed, the

23   conference will be held in conjunction with any hearing that might be held.  The parties are

24   free, however, to meet and confer and to submit a stipulation as to any agreed upon

25   discovery deadlines and a dispositive motions date.

26                                    **CONCLUSION**

27          For the reasons stated above, the court GRANTS in part and DENIES in part

28   defendants' motions to dismiss, GRANTS County Defendants' motion for a more definite

                                           42

statement, GRANTS County Defendants' motion for protective order, DENIES plaintiffs'

motion to compel and VACATES the case management and pretrial order.  Plaintiffs have

thirty days (30) to amend their complaint in accordance with this order.

**IT IS SO ORDERED.**

Dated: July 31, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge

43