LATHAM & WATKINS LLP
   Alfred C. Pfeiffer, Jr. (State Bar No. 120965)
   Melissa N. Chan (State Bar No. 240228)
   Mary Elizabeth Heard (State Bar No. 255793)
   Jason L. Daniels (State Bar No. 258377)
   Casey R. O'Connor (State Bar No. 261755)
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
Email: al.pfeiffer@lw.com
Email: melissa.chan@lw.com
Email: maryelizabeth.heard@lw.com
Email: jason.daniels@lw.com
Email: casey.oconnor@lw.com

Julia Harumi Mass (State Bar No. 189649)
Alan L. Schlosser (State Bar No. 49957)
Andre I. Segura (State Bar No. 247681)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California  94111
Telephone:  (415) 621-2493
Facsimile:  (415) 255-8437
Email: jmass@aclunc.org
Email: aschlosser@aclunc.org
Email: asegura@aclunc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY, FRANCISCO SANCHEZ-LOPEZ, CHRISTYAN SONATO-VEGA, and SAMUEL MEDEL MOYADO,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA; SHERIFF-CORONER BILL COGBILL and DEPUTY SHERIFF MORRIS ERIC SALKIN, individually and in their official capacities; U.S. DEPARTMENT OF HOMELAND SECURITY, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT; SPECIAL AGENT MARIO HUELGA and SPECIAL AGENT CHRIS MERENDINO, individually and in their official capacities; DOES 1-50; and ROES 1-50, inclusive,<br><br>Defendants. | CASE NO. 08-4220 PJH<br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.      This is an action to challenge ongoing policies and practices of Immigration and Customs Enforcement ("ICE") agents and Sonoma County Sheriff's Department personnel that exceed both agencies' lawful authority and violate the constitutional and statutory rights of Latino residents in Sonoma County.  The policies and practices challenged in this lawsuit include:

- Sheriff's deputies and ICE agents using race as a motivating factor for traffic stops and other detentions, in violation of constitutional and statutory guarantees of equal protection;

- Sheriff's deputies and ICE agents stopping, interrogating, searching, and arresting persons without adequate justification;

- Sheriff's deputies arresting and holding individuals in the County jail without any lawful basis for detention; and

- Denial of due process to people arrested on suspected immigration violations and improperly held in the custody of the Sheriff.

2.      This action is brought by the Committee for Immigrant Rights of Sonoma County, which has waged a long-standing campaign to promote the rights of immigrants and to end local immigration enforcement practices that undermine public safety and the willingness of Sonoma County's large immigrant community to report crime to local law enforcement agencies.  This action is also brought by individuals, including members of the Committee, who have been subjected to the Defendants' discriminatory practices and unreasonable searches and seizures.

3.       Plaintiffs seek an end to Defendants' unlawful and discriminatory policies and practices.  Secondarily, this action seeks monetary damages for the individual plaintiffs.  The specific relief sought by each Plaintiff against each Defendant is alleged herein.

**JURISDICTION**

4.      This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), 42 U.S.C. § 1983, 28 U.S.C. § 1346, 28 U.S.C. § 1651, and 5 U.S.C. § 702

1    (Administrative Procedure Act).  Supplemental jurisdiction over the pendant state law claims is

2    proper pursuant to 28 U.S.C. § 1367.

3                    **VENUE AND INTRA-DISTRICT ASSIGNMENT**

4         5.        Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because

5    Defendant U.S. Department of Homeland Security, Bureau of Immigration and Customs

6    Enforcement resides in and can be found in this judicial district.  This action arises in Sonoma

7    County and assignment in either the Oakland Division or San Francisco division is appropriate

8    pursuant to Local Rule 3-2.

9                              **PARTIES**

10        6.        Plaintiff Committee for Immigrant Rights of Sonoma County ("Committee") is a

11   community-based, non-profit membership organization, comprised of Sonoma County residents

12   and organizations whose mission is to mobilize and educate the community around legal and

13   social issues related to the rights of immigrants in Sonoma County and to promote the rights of

14   immigrants and others who are affected by immigration enforcement practices.  The

15   Committee's membership includes persons who have been and/or are imminently susceptible to

16   being injured by Defendants' unlawful practices, as well as family members of such persons.

17        7.        Plaintiff Francisco Sanchez-Lopez is a 22-year old Latino male who resides in

18   Sonoma County, in the State of California.  He resided in Sonoma County during the events

19   relevant to this Complaint and described herein.

20        8.        Plaintiff Christyan Sonato-Vega is a 24-year old Latino male who resided in

21   Sonoma County, in the State of California, during the events relevant to this Complaint and

22   described herein.  Sonato-Vega does not seek injunctive or declaratory relief against Defendants,

23   as discussed below.

24        9.        Plaintiff Samuel Medel Moyado is a 23-year old Latino male who resided in

25   Sonoma County, in the State of California, during the events relevant to this Complaint and

26   described herein.

27        10.       Defendant County of Sonoma ("Sonoma County" or "County") is a political

28   subdivision of the State of California that can sue and be sued in its own name.  Upon

1   information and belief, Defendant Sonoma County includes, operates, governs, and is

2   responsible for the Sonoma County Sheriff's Department ("Sheriff's Department") pursuant to

3   the laws of the State of California and Sonoma County.

4          11.    Defendant Sheriff Bill Cogbill is Sheriff-Coroner of the Sonoma County Sheriff's

5   Department and is responsible for the policies, practices and customs of the Sonoma County

6   Sheriff's Department. Defendant Cogbill also directs the hiring, screening, training, retention,

7   supervision, discipline, counseling and control of the deputy sheriffs under his supervision and

8   command. Defendant Cogbill also directs the processing, care and management of individuals

9   held at the Main Adult Detention Facility (MADF) or the North County Detention Facility

10  (NCDF) (collectively, "the Sonoma County jail"). At all relevant times, Defendant Cogbill was

11  acting under color of law. He is sued in his individual and official capacities.

12         12.    Defendant Deputy Sheriff Morris E. (Eric) Salkin is a deputy sheriff with the

13  Sonoma County Sheriff's Department. At all relevant times, Defendant Salkin was acting under

14  color of law.  He is sued in his individual and official capacities.

15         13.    Defendant United States Bureau of Immigration and Customs Enforcement

16  ("ICE"), a federal agency charged with the administration, investigation and enforcement of

17  federal immigration laws as adopted in the Immigration and Nationality Act, 8 U.S.C. § 1101 *et*

18  *seq*., is a division of the United States Department of Homeland Security ("DHS"). ICE was at

19  all times relevant herein a division of DHS, organized and existing under the laws of the United

20  States.

21         14.    Defendant Special Agent Christopher Merendino is a senior special agent of ICE.

22  At all relevant times, Defendant Merendino was acting under color of law, as an agent, employee

23  and/or representative of the United States. He is sued in his individual and official capacities.

24         15.    Defendant Special Agent Mario Huelga is a special agent of ICE. At all relevant

25  times, Defendant Huelga was acting under color of law, as an agent, employee and/or

26  representative of the United States. He is sued in his individual and official capacities.

27         16.    At all relevant times, Defendants DOES 1 through 50 (also "DOE defendants")

28  were agents, employees, or otherwise representatives of the Sheriff and/or County. At all

1    relevant times, DOES 1 through 50 were acting under color of law.  Upon information and

2    belief, Plaintiffs allege that many, if not all, of DOES 1 through 50 are residents of the Northern

3    District of California.  Upon information and belief, Plaintiffs allege that DOES 1 through 50,

4    inclusive, are legally responsible for the wrongs committed against Plaintiffs, as alleged herein.

5    When Plaintiffs become aware of the true identities of one or more DOE defendants, Plaintiffs

6    will amend this complaint to add or substitute them as named Defendants.

7           17.    At all relevant times, Defendants ROES 1 through 50 (also "ROE defendants")

8    were agents, employees, or otherwise representatives of ICE.  At all relevant times, ROES 1

9    through 50 were acting under color of law.  Upon information and belief, Plaintiffs allege that

10   many, if not all, of ROES 1 through 50 are residents of the Northern District of California.  Upon

11   information and belief, Plaintiffs allege that ROES 1 through 50, inclusive, are legally

12   responsible for the wrongs committed against Plaintiffs, as alleged herein.  When Plaintiffs

13   become aware of the true identities of one or more ROE defendants, Plaintiffs will amend this

14   complaint to add or substitute them as named Defendants.

15          18.    Plaintiffs are informed and believe and thereon allege that each of the Defendants

16   caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries, by,

17   among other things, personally participating in said conduct or acting jointly with others who did

18   so; by authorizing, acquiescing or setting in motion policies, plans or actions that led to the

19   unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing or refusing

20   with deliberate indifference to maintain adequate training and supervision; and/or by ratifying

21   the unlawful conduct taken by employees under his or her direction and control.  Plaintiffs are

22   informed and believe and thereon allege that Defendants' actions were pursuant to a policy,

23   custom, or usage of the Sheriff's Department or ICE or other related agencies.

24         **CIVIL IMMIGRATION ENFORCEMENT – LEGAL BACKGROUND**

25   **Local Law Enforcement Agencies' Lack of Authority to Enforce Immigration Law**

26          19.    State and federal law do not authorize local authorities such as Defendants

27   Sonoma County, including the Sonoma County Sheriff's Department, and Sheriff Cogbill and

28   the employees under his supervision, including Deputy Sheriff Salkin, to arrest or detain

individuals based on suspected civil immigration violations.

20.    Federal law preempts local law enforcement agencies from enforcing civil immigration law except as specifically provided by statute.  Local law enforcement agencies may enforce *criminal* immigration law within the restrictions of state law.

21.    In California, local law enforcement authorities may make warrantless arrests only where they have probable cause to believe the arrestee has committed a crime in their presence or a felony offense outside their presence.  California Penal Code § 836.

22.    Neither the County nor the Sonoma County Sheriff's Department have entered into a written agreement with ICE pursuant to 8 U.S.C. § 1357(g) to authorize County employees to enforce civil immigration law.

23.    Neither the County nor the Sonoma County Sheriff's Department have entered into a written agreement with ICE, known as an "Inter-Governmental Service Agreement," designating the Sonoma County Jail as a detention facility for individuals in federal immigration custody.

24.    According to Protocol 99-1 of the Sonoma County Law Enforcement Chiefs' Association, "Sonoma County Law Enforcement personnel shall not arrest or detain any person based solely on violation of Title 8, United States Code, Section 1325 (illegal entry)" and "Sonoma County law enforcement personnel shall not undertake any interrogation of any person for the sole purpose of ascertaining his/her immigrant status."  According to Section 428 of the Sonoma County Sheriff's Department policies, "The fact that an individual is suspected of being an undocumented alien alone shall not be the basis for contact, detention, or arrest."  Upon information and belief, Defendants Sonoma County and Cogbill have officially abandoned, ignored and contravened these written policies to the extent that they conflict with the other policies, practices and conduct described in this Complaint.

**Limits on ICE Agents' Authority to Make Warrantless Arrests and Issue Immigration Detainers**

25.    ICE agents are authorized to arrest individuals without a warrant only if they (a) have reason to believe that the individuals are in the United States in violation of immigration

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

law, and (b) have reason to believe that the individual is likely to escape before a warrant can be obtained for his arrest.  8 U.S.C. § 1357.

26.     ICE must provide certain procedural protections to individuals arrested for civil immigration violations without a warrant.  These protections include: the right to be examined by a non-arresting officer without unnecessary delay; notice of the charges against them and their right to a hearing with counsel at their own expense; lists of available pro bono counsel and free legal services; and notice that statements made by the arrestee may be used against him in a subsequent proceeding.  8 U.S.C. §§ 1226, 1229, 1357; 8 C.F.R. § 287.3.  A bond determination and a decision whether to issue a Notice to Appear must be made within 48 hours of arrest except in the case of emergency or extraordinary circumstances.  *Id.*

27.     8 C.F.R. § 287.7 allows ICE agents to issue immigration detainers requesting other law enforcement agencies to maintain custody of a suspected noncitizen already within that law enforcement agency's custody on an independent civil or criminal charge, to permit ICE to assume custody of the suspected noncitizen.  8 C.F.R. § 287.7 does not authorize ICE agents to issue immigration detainers to instruct local law enforcement agencies to detain or arrest individuals who are not already in the custody of those agencies.

## DEFENDANTS' UNLAWFUL POLICIES, CUSTOMS, AND PRACTICES

28.     For at least the past four years, the Sonoma County Sheriff's Department -- under the direction of Sheriff Bill Cogbill -- has been working with ICE and its officers to enforce civil immigration law against Latino persons in Sonoma County, in excess of local authority.  This collaboration takes place in two ways: (1) by Sheriff's deputies participating in joint patrols with ICE agents that specifically target Latino residents of Sonoma County, and (2) by Sheriff's deputies identifying and arresting persons suspected of being unauthorized noncitizens outside the presence of ICE officers, but with the agency's approval.

### Joint Patrols Staffed By Local and Federal Officers

29.     Defendant Sheriff Cogbill and his deputies, including Defendant Salkin, participate in joint operations with ICE agents, including Defendants Merendino and Huelga, on a regular basis as part of an ongoing enforcement initiative known as the Multi-Agency Gang

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Enforcement Team ("MAGNET") or the "Gang Task Force."  Several agencies, including the

2  Sonoma County Sheriff's Department and ICE, participate in MAGNET operations.  Defendants

3  Salkin, Huelga and Merendino are regular field participants or personnel in MAGNET

4  operations.

5          30.    MAGNET's purported primary goal is stop gang-related violence and associated

6  criminal activity.  However, MAGNET's participants, including Defendants Salkin, Merendino

7  and Huelga, do not limit their enforcement activities to such criminal activity.  Specifically, in

8  furtherance of a stated goal to arrest "undocumented alien gang members," MAGNET targets

9  Latinos in Sonoma County who are not engaged in criminal activity.  Upon information and

10  belief, Defendant Sheriff's deputies and ICE agents working together on MAGNET patrols enter

11  areas of Sonoma County that have high Latino populations and target young Latino males or

12  young males who appear to be Latino for traffic stops, often without any reasonable suspicion of

13  criminal activity or traffic infraction.  After stopping such individuals, Defendants interrogate

14  and search them, even where there is no reasonable suspicion that such individuals are engaged

15  in criminal activity or present a threat to safety.

16          31.    Defendants have adopted the policy, practice and custom of relying on the

17  impermissible factors of race, color and/or ethnicity to stop, detain, question and/or search

18  persons who are or appear to be Latino and to prolong their initial stops to probe into their

19  immigration status without reasonable suspicion that they have committed a crime or are

20  noncitizens without lawful immigration status.

21          32.    After such initial stops, prolonged detentions for immigration questioning, and

22  searches, Defendants have the policy and practice of arresting and placing individuals in the

23  Sonoma County jail without criminal charges or any actual or purported criminal basis, simply

24  because they are suspected of violating civil immigration laws.  Defendant ICE and its agents

25  also engage in the policy and practice of arresting individuals without warrants and placing them

26  in the Sonoma County jail without reason to believe that such individuals are present in the

27  United States without authorization and without reason to believe they are likely to escape before

28  a warrant can be obtained.

**Civil Immigration Enforcement By Sheriff's Deputies Unaccompanied By ICE Agents**

33.    In addition to the joint operations described above, Defendants Cogbill and County employees working under his supervision, including Defendant Salkin, have adopted the policy, practice and custom of stopping, detaining, questioning and/or searching persons who are or appear to be Latino and interrogating them about their immigration status outside the presence of ICE agents.

34.    These racially-motivated stops are frequently unsupported by reasonable suspicion or probable cause that the detainee has violated any criminal law.

35.    Even where such stops may be initially supported by reasonable suspicion of criminal activity or traffic infraction, Defendants Cogbill and the County employees under his supervision, including Defendant Salkin, have adopted the policy, practice and custom of prolonging the initial stop to interrogate individuals about their immigration status and conducting searches of their persons and vehicles despite having neither any criminal basis to prolong the detention nor any investigatory or safety justification for the searches.  Upon information and belief, the individual's actual or apparent Latino descent is a motivating factor for Sheriff's deputies' prolonged detention, interrogation, and search of such individuals.

36.    Defendants Cogbill and the County employees under his supervision, including Defendant Salkin, have also adopted the policy, practice and custom of contacting ICE agents to seek approval to execute warrantless arrests for civil immigration violations.  Upon information and belief, these calls to ICE agents are motivated by the individual's actual or apparent Latino descent, Spanish surname, or Latin American country of origin, and Latino residents of Sonoma County are disproportionately affected by this practice.

**Individuals Arrested for Civil Immigration Violations During Joint Patrols or by Sheriff's Deputies Alone Held in the Sonoma County Jail**

37.    Federal Defendants ICE, Huelga, Merendino, and unknown ROES have adopted the policy, practice and custom of requesting that Sonoma County Sheriff's Department personnel take physical custody of individuals suspected of civil immigration violations and hold them in the Sonoma County jail without any criminal basis for arrest.  This practice and custom

1  includes issuance of immigration detainers under the purported authority of 8 C.F.R. § 287.7 for

2  persons that are not already in County custody on an independent arrest pursuant to criminal law

3  or other state law.

4       38.     County Defendants County of Sonoma, Cogbill, Salkin, and DOES 1-50 have

5  adopted the policy, practice and custom of transporting, booking, and holding individuals in the

6  Sonoma County jail without a warrant or probable cause of criminal activity, based only on

7  Federal Defendants' request and issuance of an immigration detainer under the purported

8  authority of 8 C.F.R. 287.7.

9       39.     Defendants ICE, Sonoma County, and Sheriff Cogbill do not provide adequate

10  training to the deputy sheriffs regarding the law and regulations related to ICE detainers, or any

11  federal immigration law.

12  **Warrantless Civil Immigration Arrests Made Without Flight Risk Assessment**

13       40.     Whether encountered as a part of a joint MAGNET operation including ICE

14  agents or arrested by Sheriff's deputies with ICE's approval, Defendants have adopted the

15  policy, practice and custom of placing civil immigration arrestees in local custody without

16  meeting federal requirements for the warrantless arrest of noncitizens suspected of violating

17  federal immigration laws, *i.e.,* probable cause and a determination that the person is likely to

18  escape before an arrest warrant can be obtained.  8 U.S.C. § 1357.

19       41.     Upon information and belief, Defendant ICE does not provide adequate training

20  to ICE agents regarding the types of evidence necessary to establish reasonable suspicion or

21  probable cause that a person is a noncitizen in the United States without authorization or that the

22  person poses a flight risk as required for warrantless arrests based on suspected civil immigration

23  violations.

24       42.     In addition to directing the illegal enforcement of civil immigration law by deputy

25  sheriffs, Defendant Sonoma County and Sheriff Cogbill do not provide training to deputy

26  sheriffs working with ICE agents regarding the types of evidence necessary to establish

27  reasonable suspicion or probable cause that a person is a noncitizen in the United States without

28  authorization or that the person poses a flight risk as required for warrantless arrests based on

1   suspected civil immigration violations.

2   **<u>Invalid Use of Immigration Detainers</u>**

3          43.     Defendants purport to justify holding individuals in the Sonoma County jail

4   without criminal charges -- whether arrested by joint patrols or by Sheriff's deputies acting on

5   their own -- by the issuance of immigration detainers pursuant to 8 C.F.R. § 287.7.  However, by

6   the express terms of that regulation, local authorities may only use immigration detainers to

7   retain custody over individuals who are already in local custody pursuant to a valid criminal

8   arrest after they would otherwise be released from local custody.  Moreover, 8 C.F.R. § 287.7

9   does not allow ICE to issue detainers to initiate custody for persons not already in the custody of

10  a law enforcement agency on independent criminal or other state law grounds.

11         44.     A detainer is not an "arrest warrant," a "criminal detainer," *see* Pub. L. No. 91-

12  538, 84 Stat. 1397 (1970), or an "administrative warrant," *see* 8 U.S.C. § 1226, 8 C.F.R. § 236.1.

13  ICE may only issue immigration detainers to request that another law enforcement agency

14  maintain custody of an individual already held by that agency on independent grounds.  8 C.F.R.

15  § 287.7.  In violation of 8 C.F.R. §287.7, Defendants have adopted the policy, practice and

16  custom of using immigration detainers as "warrants," in an effort to allow local law enforcement

17  officers to initiate County custody of individuals without meeting applicable constitutional,

18  statutory, and regulatory requirements.

19         45.     Upon information and belief, Defendant ICE does not generally interpret 8 C.F.R.

20  § 287.7 to authorize local law enforcement to initiate custody of individuals for civil immigration

21  violations.

22         46.     Upon information and belief, Defendants' use of immigration detainers to initiate

23  custody of individuals who are not already in the custody of local law enforcement

24  independently of the detainer as described in this First Amended Complaint is not a common

25  practice elsewhere in the country.

26  **<u>Racially-Motivated Targeting of Criminal Arrestees for Immigration Detainers</u>**

27         47.     Defendants also use immigration detainers for inmates of the Sonoma County jail

28  who are in custody after arrests for independent criminal or other state law grounds.  Upon

1  information and belief, County Defendants have adopted the policy, practice and custom of

2  identifying individuals held in the Sonoma County jail based on their Latino race or appearance

3  or Spanish surname for referral to ICE for a determination of whether to issue a detainer.

4  48.   Upon information and belief, County Defendants have adopted the policy,

5  practice and custom of identifying individuals held in the Sonoma County jail based on their

6  birth in a Latin American country for referral to ICE for a determination of whether to issue a

7  detainer

8  49.   Upon information and belief, for those individuals who are already in custody of

9  local law enforcement pursuant to a purported criminal arrest, Defendant ICE and its agents use

10  Latino race or appearance, Spanish surnames, and Latin American national origin as motivating

11  factors for the issuance of immigration detainers.

12  **Denial of Procedural Protections**

13  50.   With respect to persons held in the Sonoma County jail for suspected civil

14  immigration violations -- whether by joint ICE/Sheriff's Department teams or by Sheriff's

15  deputies alone -- Defendants have adopted the policy, practice and custom of maintaining local

16  custody for approximately four days before transferring the arrestees to ICE for the initiation of

17  removal proceedings under federal immigration law.

18  51.   With respect to persons originally held in the Sonoma County jail for criminal

19  violations, Defendants have adopted the policy, practice, and custom of prolonging the detention

20  of persons against whom immigration detainers have been issued for four days (including

21  weekends) after they otherwise would have been released from local custody.  These four day

22  detentions are not justified by the original state law basis for the individuals' initial arrests and

23  are not supported by a separate probable cause determination by a non-arresting ICE officer or a

24  neutral magistrate. These immigration detainees are not provided the procedural protections

25  required by 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 individuals arrested by ICE without a warrant.

26  Upon information and belief, standards used by ICE and its agents to govern the issuance of

27  immigration detainers in Sonoma County are insufficient to establish probable cause for the

28  prolonged detentions.

52.     Once booked into the Sonoma County jail, civil immigration arrestees are -- by Defendants' policy, practice and custom -- denied notice of any charges against them, examination by a neutral magistrate or non-arresting ICE officer, notice that statements they make may be used against them in removal proceedings, a list of low or no-cost immigration legal services, or notice that they have a right to a hearing or bond determination.  Such procedural protections are required for individuals arrested without a warrant on suspected immigration violations pursuant to 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 and would be provided to arrestees taken immediately into ICE custody.  Under the policy, practice, and custom adopted by Defendants, the issuance of these procedural protections is delayed for approximately four days while civil immigration arrestees are held in the Sonoma County jail.  These procedural protections are important to allow arrestees to determine the reasons why they are being detained, to understand their rights to remain silent, to seek out legal representation and advice on the effect of criminal charges on the arrestee's immigration status, and their right to post bond such that they do not have to remain in custody pending removal proceedings.  These notices are necessary underpinnings to each civil immigration arrestee's right to a meaningful immigration hearing before deprivation of liberty through removal from the United States.

53.     In addition, the United States and California Constitutions impose requirements that are not being met under Defendants' policies, practices, and customs regarding immigration detainers.  As a matter of federal and state constitutional law, persons who are detained on immigration detainers—or whose detention is prolonged based on an immigration detainer—are entitled to a probable cause determination within 48 hours of the beginning of the immigration detainer-based detention, as well as notice of the charges against him or her and an opportunity to respond.

54.     Upon information and belief, after having been held without authorization in Sonoma County jail for four days without notice of the charges against them, their right to a hearing and counsel, their right to post bond, and other required notices before being transferred into ICE custody, civil immigration arrestees are more easily coerced into waiving their constitutional right to a hearing prior to removal than they would be if they were timely provided

1    the procedural protections which are due them as warrantless immigration arrestees.

2         55.     Upon information and belief, the financial and administrative costs of providing

3    the procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 would be insubstantial

4    relative to the harm to the due process rights of arrestees resulting from the denial or delay of

5    these procedural protections.

6         56.     Defendants' failure to provide procedural protections required by 8 U.S.C. § 1357

7    and 8 C.F.R. § 287.3 to civil immigration detainees arrested without warrant violate those

8    arrestees' due process rights, as guaranteed under the Fifth and Fourteenth Amendments of the

9    United States Constitution and Article I, section 7 of the California Constitution.  The burden on

10   the government is not outweighed by the private interest effected by an official action (or

11   inaction) taken by a government agency or official and the risk of some deprivation being

12   erroneously inflicted through the process used or if no process is used.

13   **Sheriff's Knowledge and Direction of Challenged Policies, Practices and Customs**

14        57.     Defendant Sheriff Cogbill directs the operations, staffing and investigations

15   conducted by MAGNET, and provides updates as to MAGNET and other immigration

16   enforcement activities at Sonoma County Law Enforcement Chiefs' Association meetings.

17        58.     On October 5, 2007, at a meeting with representatives of Plaintiff Committee for

18   Immigrant Rights of Sonoma County, Defendant Sheriff Cogbill and other members of the

19   Sonoma County Sheriff's Department, with counsel, confirmed that Defendant Sheriff's

20   Department had regularly engaged in joint patrols with ICE for the previous three years, had

21   arrested individuals based on suspected immigration violations without a criminal basis for arrest

22   outside the presence of ICE agents, and has adopted the policy and practice of holding

23   individuals in the Sonoma County jail based on suspected civil immigration violations, and

24   without any criminal basis for arrest, at the request of ICE agents.

25        59.     Defendant Sheriff Cogbill also has personally received memoranda from his

26   employees informing him of the practices of the Sheriff's Department, including the detention of

27   individuals without a criminal basis for the arrest.

28        60.     Defendant Sheriff Cogbill also directs the practices of deputy sheriffs in the

1    Sheriff's Department's Detention Division, which manages the processing, care and management

2    of arrestees held in the Sonoma County jail.

3         61.     Defendants Sonoma County and Sheriff Cogbill failed to train deputy sheriffs of

4    the Sonoma County Sheriff's Department including Defendant Salkin on the requirements

5    imposed on ICE agents for warrantless arrests of persons suspected of civil immigration

6    violations and the terms and limitations of 8 C.F.R. § 287.7.

7         62.     Upon information and belief, Defendants Sonoma County and Sheriff Cogbill

8    failed to train deputy sheriffs of the Sheriff's Department on the due process and equal protection

9    rights of inmates held at the Sonoma County jail.

10        63.     Plaintiffs allege that Sheriff Cogbill is liable in his personal capacity for the

11   actions of his subordinates and ICE agents acting in concert with Sheriff's Department personnel

12   as alleged herein because he was intimately familiar with, approved of, and ratified the policies,

13   practices and customs described herein and failed to take any remedial action to stop ongoing

14   constitutional violations.

15                        **INDIVIDUAL PLAINTIFFS' EXPERIENCES**

16   **Ongoing Injury to the Committee for Immigrant Rights and Its Members**

17        64.     Plaintiff Committee for Immigrant Rights of Sonoma County ("Committee") was

18   founded in 2006 in response to federal immigration reform proposals that would have raised

19   penalties for illegal immigration and classified undocumented immigrants and those who assist

20   them as felons.  The Committee's mission has been to oppose anti-immigrant legislation and

21   policies at both federal and local levels.  Since its inception, the Committee has worked to

22   educate the public, including immigrant communities in Sonoma County, about immigration law

23   and policies and to inform them about their rights.

24        65.     Through its Know Your Rights Campaign, the Committee has held a series of

25   house meetings and public forums to distribute information to the Latino community in Sonoma

26   County concerning individual rights, including the right to be free from unreasonable searches

27   and detentions, the right to remain silent when questioned by police or immigration agents, and

28   the right to be represented by a lawyer when accused or interrogated in custody.

66.     The Committee launched a County of Refuge Campaign in 2007, calling for an end to local law enforcement's assistance in civil immigration enforcement through weekly vigils and public forums.  This campaign was the Committee's response to the Sonoma County Sheriff's Department practice of arresting and detaining young Latino members of the community based solely on their immigration status, which is the product of an active and open collaboration between the Sheriff and ICE.

67.     Members of the Committee have personally witnessed and been subjected to Defendants' unlawful practices, and the Committee's membership includes a constituency of persons, namely Latino residents of Sonoma County, who are especially likely to be subjected to these practices.  The Committee's membership includes several Latino families who live in the neighborhoods of Sonoma County where Defendants' regularly patrol.  In addition, the Committee itself has been, and continues to be, harmed by Defendants' practices because those practices undermine the Committee's organizational mission and divert the Committee's resources from the pursuit of other, related goals.

68.     The Committee seeks only injunctive and declaratory relief from Defendants, as discussed below.

**The Unlawful Stop and Detention of Francisco Sanchez-Lopez**

69.     On September 28, 2006, Plaintiff Francisco Sanchez-Lopez ("Sanchez-Lopez") was riding as a passenger in a car in Santa Rosa.  A group of officers working together as part of a MAGNET team stopped the car near West 9th Avenue in Santa Rosa.  The group included ICE agents, including Defendants Huelga and Merendino; Sheriff's deputies, including Defendant Salkin; and at least one California Highway Patrol ("CHP") officer.

70.     Upon information and belief, the MAGNET team, including Defendants Merendino, Huelga, and Salkin, stopped the car in part due to the race and/or ethnicity of its occupants, including Sanchez-Lopez.

71.     After stopping the car, a CHP officer approached the driver.  The CHP officer told the driver that he was not permitted to have a "For Sale" sign in the car's rear window, and proceeded to interrogate the driver about whether he had gang affiliations.  The driver did not

receive a ticket for the "For Sale" sign.

72.     An officer, who upon information and belief was Defendant Huelga, approached Sanchez-Lopez on the passenger side of the vehicle.  Though Sanchez-Lopez had committed no crime and posed no threat, Defendant Huelga asked Sanchez-Lopez for his name and then asked him if he was on probation.  Sanchez-Lopez provided his name and admitted that he was on probation.  Huelga did not ask the reasons behind Sanchez-Lopez's probation, nor seek to verify Sanchez-Lopez's name or probation terms by radio or with other officers.  The terms of Sanchez-Lopez's probation did not require him to submit to searches by law enforcement.

73.     Without probable cause or reasonable suspicion of any civil or criminal violation, without any reason to believe Sanchez-Lopez was in the United States without documentation, and without any reason to believe that Sanchez-Lopez was armed or dangerous, Huelga ordered Sanchez-Lopez out of the car.  Huelga asked Sanchez-Lopez if he was in a gang and if he had any tattoos, and instructed him to show them the tattoos.  Sanchez-Lopez said he was not in a gang, and showed Huelga his tattoos.  Without reasonable suspicion that Sanchez-Lopez posed a threat to the officers' safety, probable cause of criminal activity, or Sanchez-Lopez's consent, Huelga subjected Sanchez-Lopez to a pat-down search and confiscated his wallet.  Huelga searched Sanchez-Lopez's wallet and removed an ID card.

74.     Huelga instructed Sanchez-Lopez to go over to Defendant Merendino. Merendino interrogated Sanchez-Lopez about his immigration status and family background.

75.     Upon information and belief, Defendants Huelga and Merendino subjected Sanchez-Lopez to prolonged detention, search, and interrogation based in part on his Latino appearance and Spanish surname.

76.     Following the interrogation and search of Sanchez-Lopez's wallet, Merendino and Huelga directed Defendant Salkin to arrest Sanchez-Lopez and book him into custody at the Sonoma County jail based solely on his suspected immigration status.  There was no actual or even purported criminal basis for Sanchez-Lopez's arrest, and neither Merendino nor Huelga made a determination that Sanchez-Lopez presented a flight risk within the meaning of 8 U.S.C. § 1357.  At the time of Sanchez-Lopez's arrest, ICE had not issued a Notice to Appear or an

arrest warrant for Sanchez-Lopez.

77.   Defendant Salkin put Sanchez-Lopez in handcuffs and walked him over to a Sonoma County Sheriff's patrol car.  No one told Sanchez-Lopez he was under arrest or why he was under arrest and no one gave Sanchez-Lopez notice of his Miranda rights.  As Salkin was walking Sanchez-Lopez to the patrol car, a passenger in the car, Sanchez-Lopez's then-girlfriend, asked why Sanchez-Lopez was being taken.  In response, several officers ridiculed and laughed at Sanchez-Lopez, including Defendant Salkin, who responded "He knows why," in a laughing manner.

78.   Defendant Salkin took physical custody of Sanchez-Lopez and drove him to the Sonoma County jail.  Merendino accompanied Salkin and Sanchez-Lopez in Salkin's vehicle. Sanchez-Lopez arrived at the jail at about 6:00 p.m. on September 28, 2006.

79.   Despite the lack of indicia of gang membership and Sanchez-Lopez's repeated denial of any gang affiliations, Defendants Salkin and Merendino characterized Sanchez-Lopez as a gang member based on his Latino appearance and descent.  He was housed with Sureño inmates in the Sonoma County jail.  Upon information and belief, Defendants have adopted the policy, practice, and custom of using race, Spanish surname, and/or national origin as factors to inaccurately classify Latino arrestees as gang members.

80.   Around the time of the arrest, Defendant Merendino issued and signed an immigration detainer, Form I-247, for Sanchez-Lopez which indicates September 28, 2006 as the date the detainer was filed.  Sonoma County jail records of Sanchez-Lopez's arrest list Merendino as the arresting officer.

81.   Sanchez-Lopez spent four nights in the custody of Defendants County and Cogbill at the Sonoma County jail before being transferred to ICE custody on October 2, 2006. During this time Sanchez-Lopez did not receive notice of any charges against him, examination by a neutral magistrate or non-arresting ICE officer, notice that statements he made could be used against them in removal proceedings, a list of low or no-cost immigration legal services, or notice that he had a right to a hearing or a bond determination.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

82.     Being in jail for four nights without any information about what was happening to him, or what would be coming next, knowing he had not violated any criminal laws, Sanchez-Lopez was extremely frightened and anxious.  No one told Sanchez-Lopez how long he could expect to stay in jail or whether he would have an opportunity to clear his name.  He feared losing his job and falling behind in school.  He did not know that he had any rights as a person who might be put into immigration proceedings, and he was very anxious about what would happen in the future.  He had trouble sleeping while he was in jail, and he ate very little because he felt so nervous.  The first day he was in County custody, he did not have access to medication for a chronic kidney condition, which also caused him worry and distress.

83.     Once in ICE custody, Sanchez-Lopez remained in custody for approximately one week, posted bond, and was issued a Notice to Appear.

84.     In his immigration proceedings, Sanchez-Lopez sought to suppress evidence regarding his immigration status that was gained during the above-described searches, seizures, and interrogations on the basis that the evidence was gained through egregious violations of the Fourth Amendment.  On or about March 17, 2008, the immigration judge presiding over Sanchez-Lopez's removal proceedings granted Sanchez-Lopez's motion to suppress and ordered his removal proceedings terminated.  On or about May 7, 2009, the Board of Immigration appeals denied ICE's appeal of the immigration judge's decision.  The deadline for the government to petition for review of the BIA's decision to the Ninth Circuit Court of Appeals lapsed on or about June 6, 2009.

85.     Sanchez-Lopez and members of his family have been settled residents of Sonoma County and members of the Committee for approximately two years.  During the relevant events alleged in paragraphs 69-84 above, Sanchez-Lopez was employed in Sonoma County, lived in Sonoma County, had friends in the community, and made no attempt to flee.  Based on these factors, Sanchez-Lopez was not a flight risk.  Sanchez-Lopez's only previous law enforcement record was in connection to violations for driving without a license.  Sanchez-Lopez is not, and has never been, a gang member.

86.     Sanchez-Lopez is and appears to be of Latino descent and a person of color.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**The Unlawful Stop and Detention of Christyan Sonato-Vega**

87.     In or about July, 2007 Christyan Sonato-Vega ("Sonato-Vega") was a passenger in a car driven by his fiancée.  She parked the car and they got out at a bakery in Santa Rosa, intending to purchase a cake.  They were ordered to stop by two MAGNET officers, Defendant Salkin and an unknown DOE Defendant, who, upon information and belief, stopped Sonato-Vega because he appeared to be of Latino descent.

88.     Without reasonable suspicion to believe Sonato-Vega was engaged in criminal activity or posed a threat of danger, Salkin immediately ordered Sonato-Vega to "stop."  Sonato-Vega continued walking, and Salkin repeated, "Stop and put your hands on your head."  Sonato-Vega, feeling he had no choice, complied with the order and stopped walking.  Defendant Salkin walked over to Sonato-Vega, held Sonato-Vega's hands on top of his head, and walked him to the car.  Salkin asked him if he had any weapons.  Sonato-Vega said, "no," and Salkin ordered Sonata-Vega to empty his pockets.  Sonato-Vega emptied his pockets and placed his hands back on his head.  Salkin searched through the contents of Sonata-Vega's pockets and did a pat-down search of his body.  Salkin asked Sonato-Vega to spread his legs for the pat-down search and Sonato-Vega complied, but Salkin kicked Sonato-Vega's legs apart further and pulled Sonato-Vega's hands back, causing Sonato-Vega pain.

89.      Salkin questioned Sonato-Vega about his immigration status, his tattoos, and whether he was a gang member.  Sonato-Vega told Salkin that he was not a gang member and exercised his legal right not to answer Salkin's questions about his immigration status.  Salkin threatened that if Sonato-Vega did not cooperate, they would arrest his fiancée.

90.     Following this search and interrogation, Salkin left Sonato-Vega and his fiancée in the care of the other deputy sheriff and searched the car without their consent.  Salkin also questioned Sonato-Vega about the contents of the car.  The entire detention lasted between 10 and 20 minutes and then Salkin told Sonato-Vega he and his fiancée were free to go.

91.     The deputy sheriffs did not issue any citation to Sonato-Vega or his fiancée during this encounter.

1     92.     On or about Thursday, August 2, 2007, Defendants Salkin and Huelga approached

2     Sonato-Vega at his place of employment, a gas station in Rohnert Park, California.  Without

3     reasonable suspicion that Sonato-Vega was engaged in criminal activity or was a non-citizen

4     without authorization to be in the United States, Defendants Salkin and Huelga detained Sonato-

5     Vega and interrogated him about his immigration status and his family.

6     93.     When Salkin and Huelga arrived at the gas station, they ordered Sonato-Vega to

7     "stop" and told him he was under arrest.  They made him empty his pockets and handcuffed him.

8     Salkin subjected Sonato-Vega to a pat-down search, searched his wallet, and asked him about his

9     immigration status and the status of his parents.  During the course of this interrogation, Sonato-

10    Vega refused to answer questions concerning his immigration status.

11    94.     Defendant Huelga also subjected Sonato-Vega to a pat-down search before

12    putting him in the patrol car.  During the encounter, Huelga ridiculed Sonato-Vega, saying, "Oh

13    look, he's shaking.  He ain't that tough."  When Sonato-Vega asked why he was being arrested,

14    Huelga responded, with profanity, that Sonato-Vega is "illegal" and "is not allowed to be here."

15    95.     Defendants Salkin and Huelga arrested Sonato-Vega and booked him into the

16    Sonoma County jail based on suspected immigration status alone and without any actual or even

17    purported criminal basis for arrest.  Upon information and belief, Salkin and Huelga made this

18    warrantless arrest without probable cause to believe that Sonato-Vega was a noncitizen without

19    authorization to be in the United States and without making a determination that he was likely to

20    escape before an arrest warrant could be obtained.  Upon information and belief, Huelga and

21    Salkin subjected Sonato-Vega to the stop, interrogation, search, and arrest because of his Latino

22    appearance and Spanish surname.

23    96.     Around the time of the arrest, Huelga issued and signed an immigration detainer,

24    Form I-247, for Sonato-Vega which indicates August 2, 2007 as the date the detainer was filed.

25    Sonoma County jail records of Sonato-Vega's arrest list Huelga as the arresting officer.  Despite

26    the lack of reliable indicia of gang membership and Sonato-Vega's denial of any gang

27    affiliations, DOE Defendants and Salkin and Huelga characterized Sonato-Vega as a gang

28    member based on his Latino appearance and descent.

97.     In response to a DOE Defendant's questions at booking about what Latino gang members Sonato-Vega would prefer to be housed with, Sonato-Vega responded that he was not a gang member, that he knew people that were both Norteños and Sureños, and that he would prefer to be housed with non-gang-affiliated inmates.  Contrary to Sonato-Vega's request, Defendants County, Cogbill, and DOE Defendants housed him with Sureño inmates who were in criminal custody.  Some of the criminal detainees told Sonato-Vega that he would end up in prison.

98.     While he was in custody at the Sonoma County jail, Sonato-Vega asked County jail employees what the charges were against him.  However, while in County custody, Sonato-Vega did not receive notice of the charges against him, an examination by a neutral magistrate or non-arresting ICE officer, a list of low or no-cost immigration legal services, or notice that he had a right to a hearing or a bond determination.

99.     Being in jail for four days without a clear sense of the charges against him, knowing he had not hurt anyone or violated any criminal laws to cause his arrest, Sonato-Vega felt angry and agitated, as well as extremely nervous and anxious.  No one told Sonato-Vega how long he could expect to stay in jail and he did not know he had any rights as a person being held for civil immigration violations.  He had trouble sleeping while he was in the Sonoma County jail and ate very little due to his emotional distress and worry.

100.     Defendants held Sonato-Vega in Defendant Cogbill's custody at the Sonoma County jail until on or about Monday, August 6, 2007, when they transferred him to San Francisco's ICE facility.

101.     While in ICE detention, Sonato-Vega was threatened by unknown ICE agents ROES with further and prolonged detention and relocation to a facility far away from his home if he did not agree to sign a form.  Defendants ROES told Sonato-Vega that he could not challenge his inevitable removal, and that if he signed the form, he would be released from jail sooner.  Upon information and belief, these ICE agents made these threats to coerce Sonato-Vega into waiving his rights to a hearing and stipulating to removal.  After an extended period of detention, and out of desperation to achieve freedom from confinement, Sonato-Vega stipulated to removal

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   without knowing, voluntary or informed consent. Sonato-Vega's experience of having spent four

2   days in the Sonoma County Jail without notice of the charges against him or his rights as a

3   warrantless civil immigration detainee contributed to his desperation and susceptibility to

4   coercion when he was transferred to ICE custody.

5          102.    Because Sonato-Vega was denied notice of the charges against him, an

6   examination by a neutral magistrate or non-arresting ICE officer, a list of low or no-cost

7   immigration legal services, or notice that he had a right to a hearing or a bond determination,

8   Sonato-Vega, through counsel, later sought to reopen his removal proceedings.  Sonato-Vega

9   ultimately negotiated a change in his removal designation from "stipulated removal" to

10   "voluntary departure."

11          103.    During the relevant events alleged in paragraphs 87-102 above, Sonato-Vega and

12   members of his family were settled residents of Sonoma County, and Sonato-Vega was

13   employed in Sonoma County.  Sonato-Vega also was engaged to a U.S. citizen.  Sonato-Vega

14   therefore was not a flight risk.

15          104.    Prior to August 2007, Sonato-Vega had no prior police record other than for

16   driving without a license.  Sonato-Vega is not, and never has been, a gang member.

17          105.    Sonato-Vega is and appears to be of Latino descent and a person of color.

18   **The Unlawful Detention of Samuel Medel Moyado**

19          106.    On the evening of August 8, 2007, Plaintiff Samuel Medel Moyado ("Medel")

20   was arrested on a minor non-drug charge, pursuant to Penal Code § 647(f).  At Medel's court

21   hearing on the morning of August 10, the judge told Medel he was free to leave because no

22   charges had been filed against him.  However, relying on 8 C.F.R. § 287.7(d), Sheriff's

23   Department personnel continued to detain Medel in Defendant Cogbill's custody, based on his

24   suspected immigration status, transferred him to another Sheriff's facility and kept him in

25   custody until August 14, when they transferred him to ICE's custody.

26          107.    Upon information and belief, Defendants ICE and a ROE Defendant issued an

27   immigration detainer for Medel based in part on his Latino appearance and Spanish surname and

28   without a determination that he presented any flight risk.  While he was in custody at the Sonoma

1    County jail, Medel did not receive notice of the any immigration charges against him, notice that

2    statements he made could be used against him in removal proceedings, a list of low or no-cost

3    immigration legal services, or notice that he had a right to a bond determination.

4        108.    Defendants did not bring Medel before a neutral magistrate or non-arresting ICE

5    officer for a probable cause determination or provide him notice of the charges against him and

6    an opportunity to respond within 48 hours of the initiation of his prolonged local custody

7    pursuant to immigration detainer.

8        109.    Upon information and belief, an unknown DOE Defendant, motivated by Medel's

9    race, national origin, and/or Spanish surname, questioned Medel about his immigration status

10   and referred him to ICE for investigation and consideration for issuance of an immigration

11   detainer.  Upon information and belief, Defendants ICE and unidentified ROE Defendants

12   interrogated Medel about his immigration status while he was in Defendant Cogbill's custody in

13   part because of his Latino appearance and Spanish surname.

14       110.    Despite a lack of indicia of gang membership and Medel's denial of any gang

15   affiliations, unknown ROE and DOE Defendants characterized Medel as a gang member based

16   on his Latino appearance and descent.  Despite the fact that Medel was wearing a red t-shirt

17   when he was arrested and that red is the color known to be associated with Norteño gang

18   members, Defendants County, Cogbill and DOES placed Medel in detention with members of

19   the Sureño gang (whose favored color is widely known to be blue).

20       111.    Although Medel attempted to post bond while he was in detention in San

21   Francisco, Defendants ICE and unidentified ROE Defendants did not give Medel the opportunity

22   until after they transferred him to ICE's Eloy Detention Center in Arizona, over a week after his

23   arrest.  Defendants did not release Medel until the evening of Thursday, August 16, 2007, in

24   Arizona, after he posted bond.

25       112.    Being in detention for days without a clear sense of the charges against him and

26   what would happen to him, Medel felt nervous and agitated and suffered emotional distress from

27   the uncertainty.

28       113.    As a result of Defendants' actions, Medel was deprived of his right post bond

1   until he had already been transferred to Arizona, was unnecessarily deprived of his liberty before

2   he was given opportunity to post bond, and was forced to incur travel expenses in returning from

3   Arizona to his home in Santa Rosa.

4       114.    Medel is a member of the Committee.  During the events alleged in paragraphs

5   106-113 above, Medel had also been a long-time resident of Sonoma County, with ties to the

6   community and in a serious relationship with a U.S. citizen.  Medel, therefore, was not a flight

7   risk.

8       115.    Prior to August 8, 2007, Medel had no police record as an adult.  Medel is not,

9   and never has been, a gang member.

10      116.    Medel is and appears to be of Latino descent and a person of color.

11                      **REQUISITES FOR RELIEF**

12      117.    As a result of the general and specific conduct of Defendants described above,

13  Plaintiffs have been denied their constitutional and civil rights.  Defendants' conduct is the result

14  of ongoing policies, practices, conduct and acts that have resulted and will continue to result in

15  irreparable injury to Plaintiffs, including but not limited to further threats to and violations of

16  their constitutional and civil rights.  Plaintiffs have no plain, speedy, or adequate remedy at law

17  to redress the violations alleged herein, and therefore seek injunctive relief restraining

18  Defendants from continuing to engage in the unlawful and unconstitutional policies, practices,

19  conduct and acts described in this First Amended Complaint.

20      118.    An actual and substantial controversy exists between Plaintiffs and Defendants as

21  to their respective legal rights and duties.  Plaintiffs contend that Defendants' policies, practices,

22  conduct and acts alleged herein violate Plaintiffs' constitutional and civil rights.  Defendants

23  contend the opposite and have indicated their intent to continue engaging in the challenged

24  conduct.

25      119.    On or about January 29, 2008, Medel filed an administrative claim with

26  Defendant Sonoma County pursuant to California Government Code § 910 *et seq.*  Sonoma

27  County rejected Medel's claim on or about March 5, 2008.

28

120.     On or about January 29, 2008, Sonato-Vega filed an administrative claim with Defendant Sonoma County pursuant to California Government Code § 910 *et seq.*  Sonoma County rejected Sonato-Vega's claim on or about April 2, 2008.

121.     The acts of Defendants were willful, wanton, malicious and oppressive and done with conscious disregard and deliberate indifference for Plaintiffs and their rights.

122.     As a direct and proximate result of Defendants' knowing and intentional conduct with deliberate or reckless indifference to Plaintiffs' civil and constitutional rights, Plaintiffs the Committee, Sanchez-Lopez, Sonato-Vega and Medel have been injured and will continue to be injured, and therefore seek injunctive relief as described below.  Also as a direct and proximate result of Defendants' conduct, Plaintiffs Sanchez-Lopez, Sonato-Vega and Medel have suffered damages in an amount according to proof, and seek damages against Defendants as described below.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment (42 U.S.C. § 1983)

### (Unreasonable Search and Seizure)

### All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50

123.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

124.     Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, including but not limited to:

        a.  Stopping persons and vehicles without reasonable suspicion of criminal activity or traffic infraction [¶¶ 24, 29-31, 33-34, 57-59];

        b.  Unreasonably prolonging traffic and other stops beyond the time they would otherwise take in order to question individuals about manners

1    unrelated to the purported purpose of the stop or other criminal activity,

2    specifically their citizenship and immigration status [¶¶ 29-31, 35, 57-59];

3    c.   Conducting personal and vehicle searches without probable cause to

4    believe that that the areas searched contain evidence of criminal activity or

5    without a reasonable belief that the person searched or car's occupants are

6    dangerous and may gain access to a weapon in the area searched [¶¶ 29-

7    31, 33-35, 57-59];

8    d.   Unreasonably arresting individuals without probable cause of criminal

9    activity and without authority to arrest for civil immigration violations [¶¶

10   19-22, 24, 32, 36, 38, 42, 57-59, 61];

11   e.   Holding persons in the County jail without a criminal basis for custody

12   and based only on suspected civil immigration violations [¶¶ 23-24, 32,

13   38, 57-59, 61];

14   f.   Arresting and holding persons in the County jail on an immigration

15   detainer for more than 48 hours without an independent probable cause

16   determination by a non-arresting ICE officer or neutral magistrate [¶¶ 26.

17   50-53, 57-61]; and

18   g.   Prolonging the local custody of individuals for more than 48 hours beyond

19   when they would otherwise be released, based on immigration detainers,

20   and without bringing them before a neutral magistrate for a probable cause

21   determination [¶¶ 26, 50-53, 57-61].

22        125.   Plaintiff Sanchez-Lopez seeks compensatory damages against Defendant Sonoma

23   County and compensatory and punitive damages against Defendants Cogbill, Salkin, and

24   unknown DOES in their personal capacities for violations of his right to be free from

25   unreasonable searches and seizures according to proof, including but not limited to:

26   a.   Detaining him without reasonable suspicion of criminal activity [¶¶ 70-73];

27   b.   Agreeing to, participating in, and/or acquiescing to a pat-down search of his

28   person and search of his wallet without lawful justification [¶¶ 73, 84];

1        c.   Unreasonably agreeing to, participating in, and/or acquiescing to his

2              prolonged detention beyond the time they would otherwise take to question

3              him about matters unrelated to the purported purpose of the stop, specifically

4              his citizenship and immigration status [¶¶ 72-75];

5        d.   Unreasonably arresting him without probable cause of criminal activity and

6              without authority to arrest for civil immigration violations [¶¶ 76-78];

7        e.   Holding him in custody for approximately four days without authority under

8              state or federal law [¶¶ 76, 81]; and

9        f.   Holding him in custody for more than 48 hours without an independent

10            probable cause determination by a non-arresting ICE officer or neutral

11            magistrate [¶¶ 26, 52-53, 81].

12     126.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma

13 County, and compensatory and punitive damages against Defendants Cogbill, Salkin and

14 unknown DOES in their personal capacities for violations of his right to be free from

15 unreasonable searches and seizures according to proof, including but not limited to:

16        a.   Detaining him without reasonable suspicion of criminal activity [¶¶ 87-88, 91,

17              92-93];

18        b.   Subjecting him to multiple pat-down searches of his person and his wallet

19              without lawful justification [¶¶ 88, 93-94];

20        c.   Unreasonably prolonging his detention beyond the time they would otherwise

21              take to question him about matters unrelated to any lawful purpose,

22              specifically, his citizenship and immigration status [¶¶ 88-91];

23        d.   Unreasonably arresting him without probable cause of criminal activity and

24              without authority to arrest for civil immigration violations [¶¶ 92-95];

25        e.   Holding him in custody for approximately four days without authority under

26              state or federal law [¶¶ 96, 100]; and

27 ///

28

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH

f.   Holding him in custody for more than 48 hours without an independent

probable cause determination by a non-arresting ICE officer or neutral

magistrate [¶¶ 26, 52-53, 98].

127.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill and unknown DOES in their personal capacities for violating his right to be free from unreasonable searches and seizures according to proof by holding him in custody for more than 48 hours after he would have been released from custody on his criminal arrest based on an immigration detainer and without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 26, 52-53, 106-108].

**SECOND CLAIM FOR RELIEF**

**14th Amendment (42 U.S.C. § 1983)**

**(Equal Protection)**

**All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

128.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

129.   As Latinos, the individual Plaintiffs and many members of the Committee are members of a protected class.

130.   Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from discrimination on the basis of race, ethnicity, or national origin including but not limited to:

a.   Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Latino [¶¶ 29-31, 33-34, 57-59];

b.   Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status [¶¶ 29-31, 33-35, 57-59];

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH

1        c.  Using race as a motivating factor in deciding to contact ICE agents to seek

2              immigration detainers for individuals County Defendants encounter in the

3              field and for whom they lack probable cause to arrest for criminal activity [¶¶

4              36, 57-59];

5        d.  Using race, Spanish surname, or national origin as motivating factors in

6              classifying arrestees as gang members and for making decisions regarding

7              placement in the jail [¶¶ 60, 62, 79, 96-97, 110];

8        e.  Using race, Spanish surname or national origin as motivating factors in

9              recommending to ICE that certain inmates in the jail be considered as subjects

10             of immigration detainers [¶¶ 47-48, 60, 62].

11       131.  Plaintiff Sanchez-Lopez seeks compensatory damages against Defendant Sonoma

12   County, and compensatory and punitive damages against Defendants Cogbill, Salkin, and

13   unknown DOES in their personal capacities for violations of his right to be free from

14   discrimination on the basis of race, ethnicity, or national origin according to proof, including but

15   not limited to:

16       a.  Stopping the car in which he was a passenger based on the race of its

17             occupants, including Sanchez-Lopez's [¶ 70];

18       b.  Agreeing to, participating in, and/or acquiescing to the use of Sanchez-

19             Lopez's race as a motivating factor for his prolonged detention, search and

20             interrogation [¶¶ 72-75];

21       c.  Using his race as a motivating factor for his arrest, inaccurate designation as a

22             gang member, and placement with other persons perceived to be Sureños in

23             the County jail [¶¶ 76-79].

24       132.  Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma

25   County, and compensatory and punitive damages against Defendants Cogbill, Salkin and

26   unknown DOES in their personal capacities for violations of his right to be free from

27   discrimination on the basis of race, ethnicity, or national origin race according to proof,

28   including but not limited to:

a. Using his race as a motivating factor to detain him [¶¶ 87-89, 92-93];

b. Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 87-90, 92-93, 95]; and

c. Using his race, Spanish surname, and/or perceived national origin as motivating factors for his arrest, inaccurate designation as a gang member, and placement with other persons perceived to be Sureños in the County jail [¶¶ 96-97].

133. Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against unknown DOES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a. Using his race as a motivating factor for his inaccurate designation as a gang member and placement with other persons perceived to be Sureños in the County jail [¶¶ 109-110]; and

b. Using his race, Spanish surname, and/or perceived national origin as motivating factors in deciding to refer Medel to ICE for consideration as the subject of an immigration detainer [¶¶ 107, 109].

**THIRD CLAIM FOR RELIEF**

**14th Amendment (42 U.S.C. § 1983)**

**(Due Process)**

**All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

134. Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

135. Arresting and detaining individuals without lawful authority is a violation of the substantive due process rights of those arrested and detained.

136. Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage the above-described policies, practices and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH

1  conduct of County Defendants violating the rights of Plaintiffs and Sonoma County residents to

2  due process of law under the 14th Amendment of the United States Constitution including but

3  not limited to:

4          a.  Arresting and detaining individuals without probable cause of criminal

5              activity and for civil immigration violations without any lawful authority, in

6              violation of the arrestees' rights to substantive due process [¶¶ 19-22, 24, 32,

7              36, 38, 42, 57-59, 61];

8          b.  Aiding and abetting ICE and its agents in denying procedural protections due

9              civil immigration arrestees who are arrested without a warrant [¶¶ 37-38, 40-

10             42, 61];

11         c.  Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3

12             due to persons who were arrested on criminal or other state law charges and

13             whose County custody is prolonged as a result of an immigration detainer [¶¶

14             50-56, 62] and;

15         d.  Detaining or prolonging the detention of individuals in custody of the County

16             pursuant to immigration violations without notice of the charges against them

17             and an opportunity to respond within a reasonable time after the initiation of

18             the immigration detainer-based detention [¶¶ 26, 50-56, 62].

19         137.  Plaintiffs Sanchez-Lopez and Sonato-Vega seek compensatory damages against

20  Defendant Sonoma County, and compensatory and punitive damages against Defendants

21  Cogbill, Salkin, and unknown DOES in their personal capacities for violations of their rights to

22  due process under the 14th Amendment to United States Constitution according to proof

23  including, but not limited to:

24         a.  Arresting and holding them in custody for four days without lawful authority

25             [¶¶ 76, 81 (Sanchez-Lopez), ¶¶ 96, 100 (Sonato-Vega)];

26         b.  Aiding and abetting ICE and its agents in denying procedural protections due

27             to them as civil immigration arrestees who were arrested without a warrant [¶

28             81 (Sanchez-Lopez); ¶ 98 (Sonato-Vega)]; and

c. Detaining them for four days without notice of the charges against them or an opportunity to respond [¶ 81 (Sanchez-Lopez); ¶ 98 (Sonata-Vega)].

138.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill and unknown DOES in their personal capacities for violations of his right to due process under the 14th Amendment to United States Constitution according to proof including, but not limited to:

a. Denying him procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 [¶¶ 107-108]; and

b. Prolonging his detention for four days based on an immigration detainer without notice of the charges underlying the prolonged detention or an opportunity to respond [¶¶ 107-108].

**FOURTH CLAIM FOR RELIEF**

**Fourth Amendment and 8 U.S.C. § 1357 (*Bivens* and 5 U.S.C. § 702)**

**(Unreasonable Search and Seizure)**

**All Plaintiffs Against Defendants ICE, Huelga, Merendino, and ROES 1-50**

139.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

140.   Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory relief against the above-described policies, practices and conduct of Defendant ICE and Defendants Huelga, Merendino, and ROES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, including but not limited to:

a. Stopping persons and vehicles without reasonable suspicion of criminal activity or of their being noncitizens present in the United States without authorization [¶¶ 25, 29-31, 41];

b. Conducting personal and vehicle searches without probable cause to believe that that the areas searched contain evidence of criminal activity or a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

reasonable belief that the person searched or car's occupants are dangerous and may gain access to a weapon in the area searched [¶¶ 29-31];

c. Unreasonably arresting individuals without warrants and without probable cause to believe they are noncitizens present in violation of civil immigration laws [¶¶ 32, 41];

d. Unreasonably arresting individuals for suspected civil immigration violations without warrants and without reason to believe they are likely to escape before a warrant can be obtained [¶¶ 25, 40-41];

e. Causing individuals to be held in the Sonoma County jail without a criminal basis for custody and based only on suspected civil immigration violations [¶¶ 27, 37];

f. Causing individuals to be held in custody on immigration detainers for more than 48 hours without a bond determination and before a decision is made whether to issue a Notice to Appear and absent any emergency or other extraordinary circumstance [¶¶ 26, 51-52];

g. Failing to bring individuals who were arrested without a warrant for civil immigration violation before a non-arresting ICE agent or neutral magistrate without unreasonable delay or within 48 hours [¶¶ 26, 51-53]; and

h. Ordering prolonged local custody of individuals beyond when they would otherwise be released through issuance of immigration detainers without an adequate probable cause determination for the immigration detention within 48 hours of the initiation of the immigration detainer-based prolonged detention [¶¶ 26, 51-53].

141.   Plaintiff Sanchez-Lopez seeks compensatory and punitive damages against Defendants Huelga and Merendino and unknown ROES in their personal capacities for violations of his right to be free from unreasonable searches and seizures according to proof, including but not limited to:

1        a.   Detaining him without reasonable suspicion of criminal activity or that he or

2            other occupants of the car in which he was a passenger were noncitizens

3            present in the United States without authorization [¶¶ 70-73];

4        b.   Subjecting him to a pat-down search of his person and search of his wallet

5            without lawful justification [¶¶ 73, 84];

6        c.   Unreasonably arresting him or causing him to be arrested for suspected civil

7            immigration violations without a warrant and without reason to believe that he

8            was likely to escape before a warrant could be obtained for his arrest [¶¶ 76-

9            78, 80];

10       d.   Causing him to be held in custody of the County for approximately four days

11           without a criminal basis for custody and based only on suspected civil

12           immigration violations without authority under state or federal law [¶¶ 76,

13           81];

14       e.   Arresting him or causing him to be arrested and held in custody for more than

15           48 hours without a probable cause determination [¶¶ 26, 50-53, 81];

16       f.   Arresting him or causing him to be arrested without a warrant and held in

17           custody without an examination by a non-arresting ICE officer without

18           unreasonable delay [¶¶ 50-53, 81]; and

19       g.   Causing him to be held in custody for more than 48 hours without a bond

20           determination and before a decision was made whether to issue a Notice to

21           Appear and absent any emergency or other extraordinary circumstance [¶¶ 26,

22           50-53, 81].

23     142.   Plaintiff Sonato-Vega seeks compensatory and punitive damages against

24 Defendant Huelga and unknown ROES in their personal capacity for Sonato-Vega's violations of

25 his right to be free from unreasonable searches and seizures according to proof, including but not

26 limited to:

27        a.   Detaining him without reasonable suspicion of criminal activity or that he or

28            he was a noncitizen present in the United States without authorization [¶¶ 92-

1      93];

2          b.   Subjecting him to a pat-down search of his person and search of his wallet

3               without lawful justification [¶¶ 93-94];

4          c.   Unreasonably arresting him or causing him to be arrested for suspected civil

5               immigration violations without a warrant and without reason to believe that he

6               was likely to escape before a warrant could be obtained for his arrest [¶¶ 92-

7               96];

8          d.   Causing him to be held in custody of the County for approximately four days

9               without a criminal basis for custody and based only on suspected civil

10              immigration violations without authority under state or federal law [¶¶ 96,

11              100];

12         e.   Arresting him or causing him to be arrested and held in custody for more than

13              48 hours without a probable cause determination [¶¶ 26, 50-53, 98];

14         f.   Arresting him or causing him to be arrested without a warrant and held in

15              custody without an examination by a non-arresting ICE officer without

16              unreasonable delay [¶¶ 50-53, 98]; and

17         g.   Causing him to be held in custody for more than 48 hours without a bond

18              determination and before a decision was made whether to issue a Notice to

19              Appear and absent any emergency or other extraordinary circumstance [¶¶ 26,

20              50-53, 98].

21     143.    Plaintiff Medel seeks compensatory and punitive damages against Defendants

22  ROES in their personal capacities for violations of his right to be free from unreasonable

23  searches and seizures according to proof, including but not limited to:

24         a.   Causing his prolonged detention in the Sonoma County jail for approximately

25              four days after he otherwise would have been released through the issuance of

26              an immigration detainer without an adequate probable cause determination to

27              support the immigration detainer-based detention [¶¶ 26, 50-53, 106-108].

28     144.    Plaintiffs do not seek damages from Defendant ICE under this claim for relief.

## FIFTH CLAIM FOR RELIEF

### Fifth Amendment (*Bivens* and 5 U.S.C. § 702)

### (Equal Protection)

### All Plaintiffs Against Defendants ICE, Huelga, Merendino, and ROES 1-50

145.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

146.   Plaintiff Committee, Sanchez-Lopez, and Medel seek declaratory and injunctive relief against Defendant ICE and Defendants Huelga, Merendino, and ROES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from discrimination on the basis of race, ethnicity, or national origin under the Fifth Amendment of the United States Constitution, including but not limited to:

    a.  Using race as a motivating factor to stop, detain, interrogate,  search and/or arrest persons who appear to be Latino [¶¶ 29-31];

    b.  Using race as a motivating factor to inaccurately designate individuals and gang members [¶¶ 79, 96-97, 110]; and

    c.  Using race, Spanish surname or national origin as motivating factors in determining whether to issue immigration detainers for persons in the custody of Sonoma County [¶ 49].

147.   Plaintiff Sanchez-Lopez seeks compensatory and punitive damages against Defendants Huelga and Merendino and unknown ROES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

    a.  Stopping the car in which he was a passenger based on the race of its occupants, including Sanchez-Lopez's [¶ 70];

    b.  Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 72-75];

c.   Using his race as a motivating factor for his arrest and inaccurate designation as a gang member [¶¶ 76-79].

148.   Plaintiff Sonato-Vega seeks compensatory and punitive damages against Defendant Huelga and unknown ROES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a.   Using his race as a motivating factor to detain him [¶¶ 92-93];

b.   Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 92-93]; and

c.   Using his race, Spanish surname, and/or perceived national origin as motivating factors for his arrest and inaccurate designation as a gang member [¶¶ 96-97].

149.   Plaintiff Medel seeks compensatory and punitive damages against unknown Defendants ROES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a.   Using his race as a motivating factor for his inaccurate designation as a gang member [¶¶ 109-110]; and

b.   Using his race, Spanish surname, and/or perceived national origin as motivating factors in their decisions to subject him to interrogation and to issue an immigration detainer ordering his prolonged detention in the Sonoma County Jail [¶ 107].

150.   Plaintiffs do not seek damages from ICE under this claim for relief.

///

# SIXTH CLAIM FOR RELIEF

## Fifth Amendment, 8 U.S.C. § 1357, 8 C.F.R. § 287.3, 8 C.F.R. § 287.7

### (*Bivens* and 5 U.S.C. § 702)

### (Due Process)

### All Plaintiffs Against Defendants ICE, Huelga, Merendino, and ROES 1-50

151.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

152.    A federal agency's failure to follow its own governing statutes and regulations violates due process of law guaranteed by the Fifth Amendment of the United States Constitution.

153.    Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory relief against Defendant ICE and Defendants Huelga, Merendino, and ROES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to due process under the Fifth Amendment of the United States Constitution, including but not limited to:

        a.   Violating 8 U.S.C. § 1357 by making warrantless arrests without reason to believe that the person arrested is likely to escape before a warrant can be obtained [¶¶ 25, 40-41];

        b.   Violating the terms of 8 C.F.R. § 287.7 by issuing immigration detainers to Defendants County and Cogbill for persons not already in County custody pursuant to an independent criminal or other state law arrest [¶¶ 27, 32, 37, 43-46];

        c.   Violating the terms of 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 and its authorizing statutes by failing to provide procedural protections required for persons arrested without a warrant for civil immigration violations [¶¶ 25-26, 50-56];

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH

      d.    Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 due to persons who were arrested on criminal or other state law charges and whose County custody is prolonged as a result of an immigration detainer [¶¶ 26, 50-56]; and

      e.    Causing persons to be detained in County custody, or causing their detention to be prolonged, based on immigration detainers for four days without notice of the charges against them and an opportunity to respond [¶¶ 26, 50-56].

154.    Plaintiff Sanchez-Lopez seeks compensatory and punitive damages against Defendant Merendino in his personal capacity and Plaintiffs Sanchez-Lopez and Sonato-Vega seek compensatory and punitive damages against Defendants Huelga and unknown ROES in their personal capacities for violations of their rights to due process under the Fifth Amendment of the United States Constitution including, but not limited to:

      a.    Arresting them or causing their arrest for civil immigration violations without a warrant and without reason to believe they are likely to escape before a warrant can be obtained [¶¶ 76-78 (Sanchez-Lopez); ¶¶ 92-95 (Sonato-Vega)];

      b.    Ordering them to be held in the custody of Defendants County and Cogbill through issuance of immigration detainers that violate 8 C.F.R. § 287.7 and 8 U.S.C. § 1357 [¶¶ 76-80 (Sanchez-Lopez); ¶¶ 95-96 (Sonato-Vega)];

      c.    Denying procedural protections due to them as civil immigration arrestees who were arrested without a warrant in violation of 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 [¶ 81 (Sanchez-Lopez); ¶ 98 (Sonato-Vega)]; and

      d.    Causing them to be held for four days in the Sonoma County jail without notice of the charges against them or an opportunity to respond [¶ 81 (Sanchez-Lopez); ¶ 98 (Sonata-Vega)].

155.    Plaintiff Medel seeks damages against unknown ROES in their personal capacities for violations of their rights to due process under the Fifth Amendment of the United States Constitution including, but not limited to:

a. Failing to provide procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 in violation of his right to due process of law under the Fourteenth Amendment of the United States Constitution [¶¶ 107-108] and;

b. Causing his detention in the Sonoma County jail to be prolonged for four days without notice of the charges against him or an opportunity to respond [¶¶ 107-108].

156.     Plaintiffs do not seek damages from ICE under this claim for relief.

**SEVENTH CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 2000d *et seq.* (Title VI)**

**All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

157.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

158.     Upon information and belief, Sonoma County and the Sonoma County Sheriff's Department and their programs or activities, including MAGNET, receive financial assistance and funding from the United States government.  As a recipient of federal financial assistance, Sonoma County, the Sonoma County Sheriff's Department, and their programs or activities are required to conduct their activities in a racially non-discriminatory manner pursuant to Title VI of the Civil Rights Act of 1964.

159.     Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from discrimination on the basis of race, ethnicity, or national origin including but not limited to:

a. Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Latino [¶¶ 29-31, 33-34, 57-59];

b. Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status [¶¶ 29-31, 33-35, 57-59];

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH

c.   Using race as a motivating factor in deciding to contact ICE agents to seek immigration detainers for individuals County Defendants encounter in the field and for whom they lack probable cause to arrest for criminal activity [¶¶ 36, 57-59];

d.   Using race, Spanish surname, or national origin as motivating factors in classifying arrestees as gang members and for making decisions regarding placement in the jail [¶¶ 60, 62, 79, 96-97, 110];

e.   Using race, Spanish surname or national origin as motivating factors in recommending to ICE that certain inmates in the jail be considered as subjects of immigration detainers [¶¶ 47-48, 60, 62].

160.   Plaintiff Sanchez-Lopez seeks compensatory damages against Defendant Sonoma County for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a.   Stopping the car in which he was a passenger based on the race of its occupants, including Sanchez-Lopez's [¶ 70];

b.   Agreeing to, participating in, and/or acquiescing to the use of Francisco's race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 72-75];

c.   Using his race as a motivating factor for his arrest, inaccurate designation as a gang member, and placement with other persons perceived to be Sureños in the County jail [¶¶ 76-79].

161.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a.   Using his race as a motivating factor to detain him [¶¶ 87-89, 92-93, 95];

b.   Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 87-90, 92-93, 95]; and

      c.   Using his race, Spanish surname, and/or perceived national origin as motivating factors for his arrest, inaccurate designation as a gang member, and placement with other persons perceived to be Sureños in the County jail [¶¶ 96-97].

162.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

      a.   Using his race as a motivating factor for his inaccurate designation as a gang member and placement with other persons perceived to be Sureños in the County jail [¶¶ 109-110]; and

      b.   Using his race, Spanish surname, and/or perceived national origin as motivating factors in deciding to refer Medel to ICE for consideration as the subject of an immigration detainer [¶¶ 107, 109].

163.   Plaintiffs do not seek damages against individual defendants in their personal capacities under this claim.

### EIGHTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983, 42 U.S.C. § 1985(3) (Conspiracy)

### All Plaintiffs Against All Defendants

164.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

165.   Defendants County, Cogbill, Salkin, and DOES 1-50 conspired with Defendants ICE, Huelga, Merendino, and ROES 1-50 by entering into a mutual understanding and agreement and committing overt acts in furtherance of their agreement to violate Plaintiffs' constitutional and statutory rights, including their right to equal protection under law, in violation of 42 U.S.C. § 1985(3), according to proof, including and not limited to the following:

      a.   The establishment of a joint operation by Defendants County, Cogbill, DOES 1-50, ICE, and ROES 1-50 to target undocumented Latino immigrant gang members through the policy and practice of using race, ethnicity, or national

origin as a motivating factor to initiate contact with and determine subsequent actions against individuals [¶¶ 29-31], subjecting individuals to unlawful searches and seizures [¶ 31, *see* Claims for Relief 1 and 4], and denying individuals substantive and procedural due process [*see* Claims for Relief 2-3, 5-6].

b. The joint participation of Defendants Salkin, DOES 1-50, Huelga, Merendino, and ROES 1-50 on multiple occasions during which these individual Defendants engaged in the unlawful use of race, ethnicity, or national origin as a motivating factor to initiate contact with and determine subsequent actions against individuals [¶¶ 69-70, 92-95, 109-110], subjected individuals to unlawful searches and seizures [¶¶ 72-75, 93], and denied individuals substantive and procedural due process [*see* Claims for Relief 2-3, 5-6].

c. The knowledge or witness of and the failure to prevent or stop the ongoing unlawful use of race, ethnicity, or national origin as a motivating factor to initiate contact with and determine subsequent actions against individuals [¶¶ 57-63, 69-70, 92-95, 109-110], unlawful searches and seizures [¶¶ 57-63, 72-75, 93], and the denial of substantive and procedural due process [*see* Claims for Relief 2-3, 5-6] by Defendants County, Cogbill, Salkin, DOES 1-50, ICE, Huelga, Merendino, and ROES 1-50.

166.    As a direct and proximate result of the aforementioned conspiracy between Defendants through individual actions and policies and practices, Plaintiffs Sanchez-Lopez, Sonato-Vega, and Medel have been deprived of their rights to be free from unreasonable and unlawful searches and seizures, to equal protection under the laws, and to substantive and procedural due process rights, as secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

167.    Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against Defendants County and ICE and against Defendants Cogbill, Salkin, DOES 1-50, Huelga, Merendino, and ROES 1-50 in their official capacities, enjoining them from continuing

1   to engage in the above-described conspiracy to violate the constitutional and statutory rights of

2   Plaintiffs and Sonoma County residents.

3         168.    Plaintiff Sanchez-Lopez seeks compensatory damages against Defendant Sonoma

4   County and compensatory and punitive damages against Defendants Cogbill, Salkin, DOES 1-

5   50, Huelga, Merendino, and ROES 1-50 for conspiring to violate his constitutional and statutory

6   rights according to proof, including but not limited to:

7               a.   Agreeing to and intentionally subjecting Sanchez-Lopez to discriminatory

8                   treatment on the basis of his race, ethnicity, or national origin [¶¶ 69-70, 75];

9               b.   Agreeing to and intentionally subjecting Sanchez-Lopez to unreasonable

10                 searches and seizures [¶¶ 72-74, 76-77];

11              c.   Agreeing to and intentionally denying Sanchez-Lopez substantive and

12                 procedural due process [*see* Claims for Relief 2-3, 5-6].

13         169.    Plaintiff Sonata-Vega seeks compensatory damages against Defendant Sonoma

14   County and compensatory and punitive damages against Defendants Cogbill, Salkin, DOES 1-

15   50, Huelga, and ROES 1-50 for conspiring to violate his constitutional and statutory rights

16   according to proof, including but not limited to:

17               a.   Agreeing to and intentionally subjecting Sonato-Vega to discriminatory

18                 treatment on the basis of his race, ethnicity, or national origin [¶ 87, 95-96];

19               b.   Agreeing to and intentionally subjecting Sonato-Vega to unreasonable

20                 searches and seizures [¶¶ 92-93];

21               c.   Agreeing to and intentionally denying Sonato-Vega substantive and

22                 procedural due process [*see* Claims for Relief 2-3, 5-6].

23         170.    Plaintiff Medel seeks compensatory damages against Defendant Sonoma County

24   and compensatory and punitive damages against Defendants Cogbill, DOES 1-50, and ROES 1-

25   50 for conspiring to violate his constitutional and statutory rights according to proof, including

26   but not limited to:

27               a.   Agreeing to and intentionally subjecting Medel to discriminatory treatment on

28                 the basis of his race, ethnicity, or national origin [¶¶ 109-110];

b.   Agreeing to and intentionally subjecting Medel to unreasonable searches and
     seizures [¶¶ 111-113];

c.   Agreeing to and intentionally denying Medel substantive and procedural due
     process [*see* Claims for Relief 2-3, 5-6].

**NINTH CLAIM FOR RELIEF**

**California Constitution, Art. I, § 13**

**(Unreasonable Search and Seizure)**

**All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

171.   Plaintiffs incorporate by reference the allegations in the paragraphs above as
though fully set forth here.

172.   Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory
relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official
capacities, enjoining them from continuing to engage in the above-described policies, practices
and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from
unreasonable searches and seizures under Article 1, § 13 of the California Constitution:

a.   Stopping persons and vehicles without reasonable suspicion of criminal
     activity or traffic infraction [¶¶ 24, 29-31, 33-34, 57-59];

b.   Making pretextual stops for traffic or other infractions for the purpose of
     detaining and questioning individuals regarding their immigration status [¶¶
     24, 29-31, 33-34, 57-79];

c.   Unreasonably prolonging traffic and other stops beyond the time they would
     otherwise take in order to question individuals about manners unrelated to the
     purported purpose of the stop or other criminal activity, specifically their
     citizenship and immigration status [¶¶ 29-31, 35, 57-59];

d.   Conducting personal and vehicle searches without probable cause to believe
     that that the areas searched contain evidence of criminal activity or without a
     reasonable belief that the person searched or car's occupants are dangerous
     and may gain  access to a weapon in the area searched [¶¶ 29-31, 33-35, 57-

59];

e.  Unreasonably arresting individuals without probable cause of criminal activity and without authority to arrest for civil immigration violations [¶¶ 19-22, 24, 32, 36, 38, 42, 57-59, 61];

f.  Holding persons in the County jail without a criminal basis for custody and based only on suspected civil immigration violations [¶¶ 23-24, 32, 38, 57-59, 61];

g.  Holding persons in custody for more than 48 hours without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 26, 50-53, 57-61]; and

h.  Prolonging the local custody of individuals for more than 48 hours beyond when they would otherwise be released, based on immigration detainers, and without bringing them before a neutral magistrate for a probable cause determination [¶¶ 26, 50-53, 57-61].

173.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for violations of his right to be free from unreasonable searches and seizures according to proof, including but not limited to:

a.  Detaining him without reasonable suspicion of criminal activity [¶¶ 92-93];

b.  Subjecting him to a pat-down searches of his person and his wallet without lawful justification [¶¶ 93-94];

c.  Unreasonably arresting him without probable cause of criminal activity and without authority to arrest for civil immigration violations [¶¶ 92-95];

d.  Holding him in custody for approximately four days without authority under state or federal law [¶¶ 96, 100]; and

e.  Holding him in custody for more than 48 hours without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 26, 50-53, 98].

174.     Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill and unknown DOES in their personal capacities for violating his right to be free from unreasonable searches and seizures according to proof by holding him in custody for more than 48 hours after he would have been released from custody on his criminal arrest based on an immigration detainer and without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 26, 50-53, 106-108].

175.     Plaintiff Sanchez-Lopez does not seek damages under this claim.

### TENTH CLAIM FOR RELIEF

### California Constitution, Art. I, § 7(a)

### (Equal Protection)

### All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50

176.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

177.     As Latinos, the individual Plaintiffs and many members of the Committee are members of a protected class.

178.     Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to equal protection under Article I, § 7(a) of the California Constitution, including but not limited to:

    a.   Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Latino [¶¶ 29-31, 33-34, 57-59];

    b.   Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status [¶¶ 29-31, 33-35, 57-59];

    c.   Using race as a motivating factor in deciding to contact ICE agents to seek immigration detainers for individuals County Defendants encounter in the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1           field and for whom they lack probable cause to arrest for criminal activity [¶¶

2           36, 57-59];

3        d.  Using race, Spanish surname, or national origin as motivating factors in

4           classifying arrestees as gang members and for making decisions regarding

5           placement in the jail [¶¶ 60, 62, 79, 96-97, 110];

6        e.  Using race, Spanish surname or national origin as motivating factors in

7           recommending to ICE that certain inmates in the jail be considered as subjects

8           of immigration detainers [¶¶ 47-48, 60, 62].

9        179.    Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma

10  County, and compensatory and punitive damages against Defendants Cogbill, Salkin and

11  unknown DOES in their personal capacities for violations of his right to be free from

12  discrimination on the basis of race, ethnicity, or national origin race according to proof,

13  including but not limited to:

14        a.  Using his race as a motivating factor to detain him [¶¶ 92-93];

15        b.  Using his race as a motivating factor for his prolonged detention, search and

16           interrogation [¶¶ 92-93, 95]; and

17        c.  Using his race, Spanish surname, and/or perceived national origin as

18           motivating factors for his arrest, inaccurate designation as a gang member,

19           and placement with other persons perceived to be Sureños in the County jail

20           [¶¶ 96-97].

21        180.    Plaintiff Medel seeks compensatory damages against Defendant Sonoma County,

22  and compensatory and punitive damages against unknown DOES in their personal capacities for

23  violations of his right to be free from discrimination on the basis of race, ethnicity, or national

24  origin race according to proof, including but not limited to:

25        a.  Using his race as a motivating factor for his inaccurate designation as a gang

26           member and placement with other persons perceived to be Sureños in the

27           County jail [¶¶ 109-110]; and

28

1            b.   Using his race, Spanish surname, and/or perceived national origin as

2                motivating factors in deciding to refer Medel to ICE for consideration as the

3                subject of an immigration detainer [¶¶ 107, 109].

4       181.   Plaintiff Sanchez-Lopez does not seek damages under this claim.

5    **ELEVENTH CLAIM FOR RELIEF**

6    **California Constitution Art. I, § 7(a)**

7    **(Due Process)**

8    **All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

9       182.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

10   though fully set forth here.

11      183.   Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory

12   relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official

13   capacities, enjoining them from continuing to engage the above-described policies, practices and

14   conduct of County Defendants violating the rights of Plaintiffs and Sonoma County residents to

15   due process under Article I, § 7(a) of the California, including but not limited to:

16           a.   Arresting and detaining individuals without probable cause of criminal

17               activity and for civil immigration violations without any lawful authority, in

18               violation of the arrestees' rights to substantive due process [¶¶ 19-22, 24, 32,

19               36, 38, 42, 57-59, 61];

20           b.   Aiding and abetting ICE and its agents in denying procedural protections due

21               civil immigration arrestees who are arrested without a warrant [¶¶ 37-38, 40-

22               42, 61];

23           c.   Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3

24               due to persons who were arrested on criminal or other state law charges and

25               whose County custody is prolonged as a result of an immigration detainer [¶¶

26               50-56, 62]; and

27           d.   Failing to provide persons held in the Sonoma County jail on suspected civil

28               immigration violations notice of the charges against them, information

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    regarding the possible consequences of their arrests, and an opportunity to be

2    heard within a reasonable period after their arrests or the initiation of

3    immigration detainer-based detentions [¶¶ 26, 50-56, 60, 62].

4    184.    Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma

5    County, and compensatory and punitive damages against Defendants Cogbill, Salkin, and

6    unknown DOES in their personal capacities for violations of his right to due process under the

7    California Constitution including, but not limited to:

8        a.    Arresting and holding him in custody for four days without lawful authority

9            [¶¶ 96, 100];

10       b.    Aiding and abetting ICE and its agents in denying procedural protections due

11           to him as a civil immigration arrestee who was arrested without a warrant [¶

12           98]; and

13       c.    Failing to provide him with notice of the charges against him, information

14           regarding the possible consequences of his arrest, or an opportunity to be

15           heard within a reasonable time after his arrest [¶ 98].

16   185.    Plaintiff Medel seeks compensatory damages against Defendant Sonoma County,

17   and compensatory and punitive damages against Defendants Cogbill and unknown DOES in

18   their personal capacities for violations of his right to due process under the California

19   Constitution including, but not limited to:

20       a.    Aiding and abetting ICE and its agents in denying procedural protections

21           under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 due to him [¶¶ 107-108]; and

22       b.    Failing to provide him with notice of the charges against him, information

23           regarding the possible consequences of his immigration detainer, or an

24           opportunity to be heard within a reasonable time after the beginning of his

25           prolonged detention pursuant to immigration detainer [¶¶ 107-108].

26   186.    Plaintiff Sanchez-Lopez does not seek damages under this claim.

27   ///

28

**TWELFTH CLAIM FOR RELIEF**

**Violation of Bane Act, California Civil Code § 52.1**

**All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

187.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

188.   Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory relief pursuant to California Civil Code § 52.1 against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage the above-described policies, practices and conduct interfering with the exercise and enjoyment of the rights of Plaintiffs and other Sonoma County residents under the U.S. and California Constitutions, according to proof and including but not limited to:

    a.   Subjecting individuals to stops, detention, interrogation, and arrest for suspected civil immigration violations without reasonable suspicion or probable cause of criminal activity and without lawful authority [¶¶ 19-22, 24, 29-34, 36, 38, 42, 57-59, 61]; and

    b.   Prolonging the local custody of individuals for more than 48 hours beyond when they would otherwise be released, based on immigration detainers, and without a probable cause determination or notice of the charges against them and an opportunity to respond [¶¶ 26, 50-61].

189.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County and compensatory, statutory, and treble damages against Defendants Cogbill, Salkin, and unknown DOES in their personal capacities for violations of the Bane Act, according to proof and including but not limited to:

    a.   Subjecting him to unreasonable searches and seizures without reasonable suspicion of criminal activity or that he posed a threat of safety [¶¶ 97-95];

    b.   Arresting and holding him in custody for four days without lawful authority [¶¶ 96, 100];

c.  Failing to bring him before a magistrate or non-arresting ICE officer within 48 hours of his arrest for a probable cause determination [¶¶ 98-100]; and

d.  Failing to provide him with notice of the charges against him, information about what consequences would follow from his arrest, or an opportunity to be heard within a reasonable time after his arrest [¶¶ 98-100].

190.  Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory, statutory, and treble damages against Defendants Cogbill and unknown DOES in their personal capacities for violations of the Bane Act, according to proof and including but not limited to:

a.  Failing to bring him before a magistrate or non-arresting ICE officer within 48 hours of the beginning of his prolonged detention based on an immigration detainer [¶¶ 107-108]; and

b.  Failing to provide him with notice of the charges against him, information about what consequences would follow from his immigration detainer, or an opportunity to be heard within a reasonable time after the beginning of his prolonged detention pursuant to immigration detainer [¶¶ 107-108].

**THIRTEENTH CLAIM FOR RELIEF**

**California Government Code § 11135 and Its Implementing Regulations**

**All Plaintiffs Against Defendant Sonoma County**

191.  Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

192.  California Government Code § 11135 provides, in relevant part: "No person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

193.   California Code of Regulations §§ 98101(i)(1) and (2) prohibit recipients of state funding from utilizing criteria or methods of administration which have the effect of discriminating against protected groups.

194.   Upon information and belief, Defendant Sonoma County and the Sonoma County Sheriff's Department receive financial assistance from the State of California, thus subjecting it to the prohibitions of Cal. Gov't Code § 11135 and its implementing regulations.

195.   Plaintiffs are informed and believe and thereon allege that the policies, practices, and customs Defendants County and Cogbill have adopted in furtherance of their collaboration with ICE to target undocumented immigrant gang members, including but not limited to their use of immigration detainers to initiate and prolong custody in the County jail, have a disparate impact on Latinos in Sonoma County.

196.   Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct in violation of Cal. Gov't Code § 11135 and its implementing regulations, including but not limited to:

    a.   Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Latino [¶¶ 29-31, 33-34, 57-59];

    b.   Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status [¶¶ 29-31, 33-35, 57-59];

    c.   Using race as a motivating factor in deciding to contact ICE agents to seek immigration detainers for individuals County Defendants encounter in the field and for whom they lack probable cause to arrest for criminal activity [¶¶ 36, 57-59];

    d.   Using race, Spanish surname, or national origin as motivating factors in classifying arrestees as gang members and for making decisions regarding placement in the jail [¶¶ 60, 62, 79, 96-97, 110];

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH

e.   Using race, Spanish surname or national origin as motivating factors in recommending to ICE that certain inmates in the jail be considered as subjects of immigration detainers [¶¶ 47-48, 60, 62]; and

f.   Adopting and implementing policies, practices, and customs that have a disparate impact on Latino residents of Sonoma County on account of their race, ethnicity, or national origin [¶¶ 29-30, 57, 67].

197.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for violations of his rights under Cal. Gov't Code § 11135 and its implementing regulations according to proof, including but not limited to:

a.   Using his race as a motivating factor to detain him [¶¶ 92-93, 95];

b.   Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 92-93, 95]; and

c.   Using his race, Spanish surname, and/or perceived national origin as motivating factors for his arrest, inaccurate designation as a gang member, and placement with other persons perceived to be Sureños in the County jail [¶¶ 96-97]; and

d.   Application of policies, practices, and customs that had a disparate impact on him on account of his race, ethnicity, or national origin.

198.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against unknown DOES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin race according to proof, including but not limited to:

a.   Using his race as a motivating factor for his inaccurate designation as a gang member and placement with other persons perceived to be Sureños in the County jail [¶¶ 109-110]; and

b.   Using his race, Spanish surname, and/or perceived national origin as motivating factors in deciding to refer Medel to ICE for consideration as the

1    subject of an immigration detainer [¶¶ 107, 109]; and

2        c.   Application of policies, practices, and customs that had a disparate impact on

3            him on account of his race, ethnicity, or national origin.

4    **FOURTEENTH CLAIM FOR RELIEF**

5    **False Imprisonment (Cal Gov't Code § 815.2)**

6    **Plaintiffs Sonato-Vega and Medel Against**

7    **Defendants Sonoma County,Cogbill, Salkin, and DOES 1-50**

8        199.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

9    though fully set forth here.

10       200.   Pursuant to California Government Code § 815.2, a public entity is liable for

11   injury proximately caused by an act or omission of an employee of the public entity within the

12   scope of his employment.  All of the conduct alleged in this First Amended Complaint by

13   employees of Sonoma County, including Defendants Cogbill, Salkin, and DOES 1-50, was

14   undertaken in the course and scope of their employment.

15       201.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant County

16   and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES

17   in their personal capacities for inflicting personal injury on him by subjecting him to false arrest

18   and imprisonment according to proof by acts including but not limited to:

19       a.   Detaining him without reasonable suspicion of criminal activity [¶¶ 57-62, 92-

20           93];

21       b.   Unreasonably arresting him without probable cause of criminal activity and

22           without authority to arrest for civil immigration violations [¶¶ 95-96]; and

23       c.   Holding him in custody for approximately four days without authority under

24           state or federal law [¶¶ 98-102];

25       d.   Holding him in custody for more than 48 hours without an independent

26           probable cause determination by a non-arresting ICE officer or neutral

27           magistrate [¶¶ 98-102].

28

202.     Plaintiff Medel seeks compensatory damages against Defendant County and compensatory and punitive damages against Defendants Cogbill and unknown DOES in their personal capacities for subjecting him to false imprisonment according to proof by holding him in custody for more than 48 hours after he would have been released from custody on his criminal arrest based on an immigration detainer and without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 57-62, 107-108].

**FIFTEENTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress (Cal Gov't Code § 815.2)**

**Plaintiffs Sonato-Vega and Medel Against**

**Defendants Sonoma County, Cogbill, Salkin, and Does 1-50**

203.     Plaintiffs incorporate by reference the allegations in the paragraphs above, as though fully set forth here.

204.     Plaintiff Sonato-Vega seeks compensatory damages against Defendant County and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for actually causing and/or proximately causing Sonato-Vega to suffer severe emotional distress by subjecting him to extreme and outrageous conduct with the intent to cause, or alternatively a reckless disregard of the probability of causing, emotional distress according to proof by acts, including but not limited to:

    a.  using his race and/or perceived national origin as a motivating factor to detain, question, search, and arrest him and in inaccurately designating him as a criminal gang member [¶¶ 92-93, 95-97];

    b.  unreasonable searches and seizures [¶¶ 92-93];

    c.  deprivations of substantive and procedural due process protections, such as holding him in custody for approximately four days without lawful authority and without notice of the charges against him, the possible consequences of his detention, and an opportunity to respond [¶¶ 96, 98-100]; and

    d.  humiliating and abusive treatment [¶¶ 94, 99];

205.   Plaintiff Medel seeks compensatory damages against Defendant County and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for actually causing and/or proximately causing Medel to suffer severe emotional distress by subjecting him to extreme and outrageous conduct with the intent to cause, or alternatively a reckless disregard of the probability of causing, emotional distress according to proof by acts, including, but not limited to:

      a.   subjecting him to discriminatory treatment, such as the use of his race, Spanish surname, and/or perceived national origin to inaccurately designate him as a gang member and detain him with other inmates perceived to be Sureños [¶¶ 109-110]; and

      b.   prolonging his detention for four days based on an immigration detainer without a probable cause determination and without notice of the charges against him, information regarding the possible consequences of his prolonged detention, and an opportunity to respond [¶¶ 107-108, 112].

**SIXTEENTH CLAIM FOR RELIEF**

**Negligence (Cal Gov't Code § 815.2)**

**Plaintiffs Sonato-Vega and Medel Against**

**Defendants Sonoma County, Cogbill, Salkin, and Does 1-50**

206.   Plaintiffs incorporate by reference the allegations in the paragraphs above, as though fully set forth here.

207.   Defendants Cogbill, Salkin and DOES 1-50 have a duty to act with reasonable care and not subject persons to personal injury in the course of their law enforcement duties and the legal duties not to subject them to discriminatory treatment on the basis of his race, ethnicity, or perceived national origin; unreasonable searches and seizures; deprivations of liberty without due process; to adequately train and supervise employees; and to adopt and enforce policies so as to prevent the occurrence of constitutional violations and tortious actions.

208.   Plaintiff Sonato-Vega seeks compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for severe emotional

peptide segment

distress he suffered as a result of their breaches of their above-described duties to him according to proof including but not limited to:

        a.  using his race and/or perceived national origin as a motivating factor to detain, question, search, and arrest him and in inaccurately designating him as a criminal gang member [¶¶ 92-93, 95-97];

        b.  unreasonable searches and seizures [¶¶ 92-93];

        c.  deprivations of substantive and procedural due process protections, such as holding him in custody for approximately four days without lawful authority and without notice of the charges against him, the possible consequences of his detention, and an opportunity to respond [¶¶ 96, 98, 100]; and

        d.  humiliating and abusive treatment [¶¶ 94, 99].

209.    Plaintiff Medel seeks compensatory and punitive damages against Defendants Cogbill and unknown DOES in their personal capacities for severe emotional distress he suffered as a result of their breaches of their above-described duties to him according to proof including but not limited to:

        a.  subjecting him to discriminatory treatment, such as the use of his race, Spanish surname, and/or perceived national origin to inaccurately designate him as a gang member and detain him with other inmates perceived to be Sureños [¶¶ 109-110]; and

        b.  prolonging his detention for four days based on an immigration detainer without a probable cause determination and without notice of the charges against him, information regarding the possible consequences of his prolonged detention, and an opportunity to respond [¶¶ 107-108, 112].

///

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

1.  Issue preliminary and permanent injunctions against the County Defendants and any of their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, prohibiting them from:

    a.  Detaining persons or vehicles without reasonable suspicion of criminal activity; prolonging traffic or other stops for the purpose of questioning individuals about their immigration status; conducting personal or vehicle searches without probable cause to believe that the areas searched contain evidence of criminal activity or a reasonable belief that the car's occupants are dangerous or may gain access to a weapon in the area searched; arresting or taking custody of individuals based on suspected civil immigration violations or based on an immigration detainer issued by ICE or its agents; or prolonging the custody of individuals in the County jail for more than 48 hours based on an immigration detainer without a probable cause determination;

    b.  Using a person's Latino race or appearance, Spanish surname, or national origin as a factor to initiate a traffic or other stop, prolong a detention, question about matters not related to the purpose of the detention such as immigration status, engage in a search of a person or person's property or car, designate or classify someone as a gang member or make decisions about his placement in the County jail, or refer a person or inmate to ICE for consideration as a subject of an immigration detainer; and

    c.  Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 due to persons who were arrested on criminal or other state law charges and whose County custody is prolonged as a result of an immigration detainer and; detaining or prolonging the detention of individuals in custody of the County pursuant to immigration violations

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    without notice of the charges against them and an opportunity to respond

2    within a reasonable time after the initiation of the immigration detainer-

3    based detention.

4    2.   Issue preliminary and permanent injunctions against the Federal Defendants and

5    any of their officers, agents, successors, employees, representatives and any and

6    all persons acting in concert with them, prohibiting them from:

7         a.   Directing local law enforcement agencies to make arrests for civil

8              immigration violations without a warrant;

9         b.   Issuing immigration detainers ordering local law enforcement agencies to

10             arrest or take custody of persons who are not already in local custody on

11             independent criminal or other state law grounds;

12        c.   Making warrantless arrests without reason to believe that the person

13             arrested is a noncitizen in the United States without authorization

14        d.   Making warrantless arrests without reason to believe that the person is

15             likely to escape before a warrant can be obtained;

16        e.   Failing to provide procedural protections required by 8 U.S.C. § 1357 and

17             8 C.F.R. § 287.3 to persons in local custody pursuant to an immigration

18             detainer;

19        f.   Stopping and searching persons and vehicles without reasonable suspicion

20             of criminal activity or of their being noncitizens present in the United

21             States without authorization, or without probable cause to believe that that

22             the areas searched contain evidence of criminal activity or a reasonable

23             belief that the person searched or car's occupants are dangerous and may

24             gain access to a weapon in the area searched; and

25        g.   Using a person's Latino race or appearance, Spanish surname, or national

26             origin as a factor to initiate contact for purposes of immigration

27             enforcement or in considering whether to issue an immigration detainer.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH

3.  Issue a judicial declaration that Defendants' actions as alleged in this Complaint violate the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution; 42 U.S.C. § 1983; 42 U.S.C. § 2000d; 42 U.S.C. § 1985(3), Article I, Sections 7, 13, and 15 of the California Constitution; California Civil Code § 52.1; and California Government Code § 11135 and its implementing regulations.

4.  Declare that Defendant ICE's use of 8 C.F.R. § 287.7 to initiate County custody of individuals violates 8 U.S.C. §1357 and 8 C.F.R. § 287.7 and therefore also violates due process under the Fifth Amendment to the United States Constitution.

5.  Declare that Defendants Sonoma County and Cogbill are not authorized to arrest or take custody of individuals based on alleged civil immigration violations and that doing so violates the arrestees' rights to substantive due process.

6.  Award Plaintiffs nominal, compensatory, special, statutory, and punitive damages under 42 U.S.C. § 1983, 42 U.S.C. § 2000d, California Civil Code § 52.1, California Government Code § 11135, and the California torts of false imprisonment, intentional infliction of emotional distress and negligence, except that no damages are sought against ICE and no punitive damages are sought against the County;

7.  Award pre-judgment and post-judgment interest to the extent permitted by law;

8.  Award Plaintiffs their costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988 and the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

9.  Award such further and additional relief as is just and proper.

///

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), and Northern District Local Rule 3-6(a),

plaintiffs hereby demand a jury trial on all issues triable by a jury.

Dated:  August 31, 2009

By /s/ Alfred C. Pfeiffer
Alfred C. Pfeiffer, Jr.

LATHAM & WATKINS LLP
Alfred C. Pfeiffer
Melissa N. Chan
Mary Elizabeth Heard
Jason L. Daniels
Casey R. O'Connor


By /s/ Julia Harumi Mass
Julia Harumi Mass

Julia Harumi Mass
Alan L. Schlosser
Andre I. Segura
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA

Attorneys for Plaintiffs

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FIRST AMENDED COMPLAINT
CASE NO. 08-4220-PJH