1   LATHAM & WATKINS LLP
      Alfred C. Pfeiffer, Jr. (State Bar No. 120965)
2     Melissa N. Chan (State Bar No. 240228)
      Mary Elizabeth Heard (State Bar No. 255793)
3     Jason L. Daniels (State Bar No. 258377)
      Casey R. O'Connor (State Bar No. 261755)
4   505 Montgomery Street, Suite 2000
    San Francisco, California  94111
5   Telephone:  (415) 391-0600
    Facsimile:  (415) 395-8095
6   Email: al.pfeiffer@lw.com
    Email: melissa.chan@lw.com
7   Email: maryelizabeth.heard@lw.com
    Email: jason.daniels@lw.com
8   Email: casey.oconnor@lw.com

9   Julia Harumi Mass (State Bar No. 189649)
    Alan L. Schlosser (State Bar No. 49957)
10  Andre I. Segura (State Bar No. 247681)
    AMERICAN CIVIL LIBERTIES UNION
11  FOUNDATION OF NORTHERN CALIFORNIA
    39 Drumm Street
12  San Francisco, California  94111
    Telephone:  (415) 621-2493
13  Facsimile:  (415) 255-8437
    Email: jmass@aclunc.org
14  Email: aschlosser@aclunc.org
    Email: asegura@aclunc.org

15  Attorneys for Plaintiffs

16

UNITED STATES DISTRICT COURT

17

NORTHERN DISTRICT OF CALIFORNIA

18

| | |
|---|---|
| 19  COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY, FRANCISCO SANCHEZ-LOPEZ, CHRISTYAN SONATO-VEGA, and SAMUEL MEDEL MOYADO, | CASE NO. 08-4220 PJH |
| 20 | SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES |
| 21          Plaintiffs, | |
| 22      v. | **DEMAND FOR JURY TRIAL** |
| 23  COUNTY OF SONOMA; SHERIFF-CORONER BILL COGBILL and DEPUTY SHERIFF MORRIS ERIC SALKIN, individually and in their official capacities; UNITED STATES OF AMERICA; U.S. DEPARTMENT OF HOMELAND SECURITY, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT; SPECIAL AGENT MARIO HUELGA and SPECIAL AGENT CHRIS MERENDINO, individually and in their official capacities; DOES 1-50; and ROES 1-50, inclusive, | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28          Defendants. | |

**INTRODUCTION**

1.     This is an action to challenge ongoing policies and practices of Immigration and Customs Enforcement ("ICE") agents and Sonoma County Sheriff's Department personnel that exceed both agencies' lawful authority and violate the constitutional and statutory rights of Latino residents in Sonoma County.  The policies and practices challenged in this lawsuit include:

- Sheriff's deputies and ICE agents using race as a motivating factor for traffic stops and other detentions, in violation of constitutional and statutory guarantees of equal protection;

- Sheriff's deputies and ICE agents stopping, interrogating, searching, and arresting persons without adequate justification;

- Sheriff's deputies arresting and holding individuals in the County jail without any lawful basis for detention; and

- Denial of due process to people arrested on suspected immigration violations and improperly held in the custody of the Sheriff.

2.     This action is brought by the Committee for Immigrant Rights of Sonoma County, which has waged a long-standing campaign to promote the rights of immigrants and to end local immigration enforcement practices that undermine public safety and the willingness of Sonoma County's large immigrant community to report crime to local law enforcement agencies.  This action is also brought by individuals, including members of the Committee, who have been subjected to the Defendants' discriminatory practices and unreasonable searches and seizures.

3.     Plaintiffs seek an end to Defendants' unlawful and discriminatory policies and practices.  Secondarily, this action seeks monetary damages for the individual plaintiffs.  The specific relief sought by each Plaintiff against each Defendant is alleged herein.

**JURISDICTION**

4.     This Court has jurisdiction over the claims alleged in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. § 2201 (declaratory relief), 42 U.S.C. § 1983, 28 U.S.C. § 1346, 28 U.S.C. § 1651, and 5 U.S.C. § 702

1   (Administrative Procedure Act).  Supplemental jurisdiction over the pendant state law claims is

2   proper pursuant to 28 U.S.C. § 1367.

3                          **VENUE AND INTRA-DISTRICT ASSIGNMENT**

4           5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because

5   Defendant U.S. Department of Homeland Security, Bureau of Immigration and Customs

6   Enforcement resides in and can be found in this judicial district.  This action arises in Sonoma

7   County and assignment in either the Oakland Division or San Francisco division is appropriate

8   pursuant to Local Rule 3-2.

9                                        **PARTIES**

10          6.      Plaintiff Committee for Immigrant Rights of Sonoma County ("Committee") is a

11  community-based, non-profit membership organization, comprised of Sonoma County residents

12  and organizations whose mission is to mobilize and educate the community around legal and

13  social issues related to the rights of immigrants in Sonoma County and to promote the rights of

14  immigrants and others who are affected by immigration enforcement practices.  The

15  Committee's membership includes persons who have been and/or are imminently susceptible to

16  being injured by Defendants' unlawful practices, as well as family members of such persons.

17          7.      Plaintiff Francisco Sanchez-Lopez is a 22-year old Latino male who resides in

18  Sonoma County, in the State of California.  He resided in Sonoma County during the events

19  relevant to this Complaint and described herein.

20          8.      Plaintiff Christyan Sonato-Vega is a 24-year old Latino male who resided in

21  Sonoma County, in the State of California, during the events relevant to this Complaint and

22  described herein.  Sonato-Vega does not seek injunctive or declaratory relief against Defendants,

23  as discussed below.

24          9.      Plaintiff Samuel Medel Moyado is a 23-year old Latino male who resided in

25  Sonoma County, in the State of California, during the events relevant to this Complaint and

26  described herein.

27          10.     Defendant County of Sonoma ("Sonoma County" or "County") is a political

28  subdivision of the State of California that can sue and be sued in its own name.  Upon

1   information and belief, Defendant Sonoma County includes, operates, governs, and is

2   responsible for the Sonoma County Sheriff's Department ("Sheriff's Department") pursuant to

3   the laws of the State of California and Sonoma County.

4        11.   Defendant Sheriff Bill Cogbill is Sheriff-Coroner of the Sonoma County Sheriff's

5   Department and is responsible for the policies, practices and customs of the Sonoma County

6   Sheriff's Department.  Defendant Cogbill also directs the hiring, screening, training, retention,

7   supervision, discipline, counseling and control of the deputy sheriffs under his supervision and

8   command.  Defendant Cogbill also directs the processing, care and management of individuals

9   held at the Main Adult Detention Facility ("MADF") and the North County Detention Facility

10   ("NCDF") (collectively, "the Sonoma County jail").  At all relevant times, Defendant Cogbill

11   was acting under color of law.  He is sued in his individual and official capacities.

12        12.   Defendant Deputy Sheriff Morris E. (Eric) Salkin is a deputy sheriff with the

13   Sonoma County Sheriff's Department.  At all relevant times, Defendant Salkin was acting under

14   color of law.   He is sued in his individual and official capacities.

15        13.   Defendant United States Bureau of Immigration and Customs Enforcement

16   ("ICE"), a federal agency charged with the administration, investigation and enforcement of

17   federal immigration laws as adopted in the Immigration and Nationality Act, 8 U.S.C. § 1101 *et*

18   *seq*., is a division of the United States Department of Homeland Security ("DHS").  ICE was at

19   all times relevant herein a division of DHS, organized and existing under the laws of the United

20   States.

21        14.   Defendant Special Agent Christopher Merendino is a senior special agent of ICE.

22   At all relevant times, Defendant Merendino was acting under color of law, as an agent, employee

23   and/or representative of the United States.  He is sued in his individual and official capacities.

24        15.   Defendant Special Agent Mario Huelga is a special agent of ICE.  At all relevant

25   times, Defendant Huelga was acting under color of law, as an agent, employee and/or

26   representative of the United States.  He is sued in his individual and official capacities.

27        16.   At all relevant times, Defendants DOES 1 through 50 (also "DOE defendants")

28   were agents, employees, or otherwise representatives of the Sheriff and/or County.  At all

1 | relevant times, DOES 1 through 50 were acting under color of law. Upon information and

2 | belief, Plaintiffs allege that many, if not all, of DOES 1 through 50 are residents of the Northern

3 | District of California. Upon information and belief, Plaintiffs allege that DOES 1 through 50,

4 | inclusive, are legally responsible for the wrongs committed against Plaintiffs, as alleged herein.

5 | When Plaintiffs become aware of the true identities of one or more DOE defendants, Plaintiffs

6 | will amend this complaint to add or substitute them as named Defendants.

7 | 17. At all relevant times, Defendants ROES 1 through 50 (also "ROE defendants")

8 | were agents, employees, or otherwise representatives of ICE. At all relevant times, ROES 1

9 | through 50 were acting under color of law. Upon information and belief, Plaintiffs allege that

10 | many, if not all, of ROES 1 through 50 are residents of the Northern District of California. Upon

11 | information and belief, Plaintiffs allege that ROES 1 through 50, inclusive, are legally

12 | responsible for the wrongs committed against Plaintiffs, as alleged herein. When Plaintiffs

13 | become aware of the true identities of one or more ROE defendants, Plaintiffs will amend this

14 | complaint to add or substitute them as named Defendants.

15 | 18. Defendant United States of America exists under the Constitution of the United

16 | States of America and laws enacted by the United States Congress. ICE was at all times relevant

17 | herein a division of DHS, organized and existing under the laws of the United States. Individual

18 | defendants Merendino, Huelga and ROES 1-50 were at all relevant times acting as agents,

19 | employees, and/or representatives of Defendant United States of America and in engaging in the

20 | conduct herein alleged were acting within the scope of their agency and employment and with

21 | the knowledge, consent, permission, authorization or ratification, either express or implied, of

22 | Defendant United States of America.

23 | 19. Plaintiffs are informed and believe and thereon allege that each of the Defendants

24 | caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries alleged

25 | herein, by, among other things, personally participating in said conduct or acting jointly with

26 | others who did so; by authorizing, acquiescing or setting in motion policies, plans or actions that

27 | led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing

28 | or refusing with deliberate indifference to maintain adequate training and supervision; and/or by

1    ratifying the unlawful conduct taken by employees under his or her direction and control.

2    Plaintiffs are informed and believe and thereon allege that Defendants' actions were pursuant to

3    a policy, custom, or usage of the Sheriff's Department or ICE or other related agencies.

4    <center>**CIVIL IMMIGRATION ENFORCEMENT – LEGAL BACKGROUND**</center>

5    **Local Law Enforcement Agencies' Lack of Authority to Enforce Immigration Law**

6       20.  State and federal law do not authorize local authorities such as Defendants

7    Sonoma County, including the Sonoma County Sheriff's Department, and Sheriff Cogbill and

8    the employees under his supervision, including Deputy Sheriff Salkin, to arrest or detain

9    individuals based on suspected civil immigration violations.

10      21.  Federal law preempts local law enforcement agencies from enforcing civil

11   immigration law except as specifically provided by statute.  Local law enforcement agencies may

12   enforce *criminal* immigration law within the restrictions of state law.

13      22.  In California, local law enforcement authorities may make warrantless arrests

14   only where they have probable cause to believe the arrestee has committed a crime in their

15   presence or a felony offense outside their presence.  California Penal Code § 836.

16      23.  Neither the County nor the Sonoma County Sheriff's Department have entered

17   into a written agreement with ICE pursuant to 8 U.S.C. § 1357(g) to authorize County employees

18   to enforce civil immigration law.

19      24.  Neither the County nor the Sonoma County Sheriff's Department have entered

20   into a written agreement with ICE, known as an "Inter-Governmental Service Agreement,"

21   designating the Sonoma County Jail as a detention facility for individuals in federal immigration

22   custody.

23      25.  According to Protocol 99-1 of the Sonoma County Law Enforcement Chiefs'

24   Association, "Sonoma County Law Enforcement personnel shall not arrest or detain any person

25   based solely on violation of Title 8, United States Code, Section 1325 (illegal entry)" and

26   "Sonoma County law enforcement personnel shall not undertake any interrogation of any person

27   for the sole purpose of ascertaining his/her immigrant status."  According to Section 428 of the

28   Sonoma County Sheriff's Department policies, "The fact that an individual is suspected of being

1   an undocumented alien alone shall not be the basis for contact, detention, or arrest."  Upon

2   information and belief, Defendants Sonoma County and Cogbill have officially abandoned,

3   ignored and contravened these written policies to the extent that they conflict with the other

4   policies, practices and conduct described in this Complaint.

5   **Limits on ICE Agents' Authority to Make Warrantless Arrests and Issue Immigration**

6   **Detainers**

7        26.     ICE agents are authorized to arrest individuals without a warrant only if they (a)

8   have reason to believe that the individuals are in the United States in violation of immigration

9   law, and (b) have reason to believe that the individuals are likely to escape before a warrant can

10  be obtained for their arrest.  8 U.S.C. § 1357.

11       27.     ICE must provide certain procedural protections to individuals arrested for civil

12  immigration violations without a warrant.  These protections include: the right to be examined by

13  a non-arresting officer without unnecessary delay; notice of the charges against them and their

14  right to a hearing with counsel at their own expense; lists of available pro bono counsel and free

15  legal services; and notice that statements made by the arrestee may be used against him in a

16  subsequent proceeding.  8 U.S.C. §§ 1226, 1229, 1357; 8 C.F.R. § 287.3.  A bond determination

17  and a decision whether to issue a Notice to Appear must be made within 48 hours of arrest

18  except in the case of emergency or extraordinary circumstances.  *Id.*

19       28.     8 C.F.R. § 287.7 allows ICE agents to issue immigration detainers requesting that

20  other law enforcement agencies maintain custody of a suspected noncitizen already within that

21  law enforcement agency's custody on an independent civil or criminal charge, to permit ICE to

22  assume custody of the suspected noncitizen.  8 C.F.R. § 287.7 does not authorize ICE agents to

23  issue immigration detainers to instruct local law enforcement agencies to detain or arrest

24  individuals who are not already in the custody of those agencies.

25       **DEFENDANTS' UNLAWFUL POLICIES, CUSTOMS, AND PRACTICES**

26       29.     For at least the past four years, the Sonoma County Sheriff's Department -- under

27  the direction of Sheriff Bill Cogbill -- has been working with ICE and its officers to enforce civil

28  immigration law against Latino persons in Sonoma County, in excess of local authority.  This

1  collaboration takes place in the field in two ways: (1) by Sheriff's deputies participating in joint

2  patrols with ICE agents that specifically target Latino residents of Sonoma County, and (2) by

3  Sheriff's deputies identifying and arresting persons suspected of being unauthorized noncitizens

4  outside the presence of ICE officers, but with the agency's approval.

5  **Joint Patrols Staffed By Local and Federal Officers**

6         30.    Defendant Sheriff Cogbill and his deputies, including Defendant Salkin,

7  participate in joint operations with ICE agents, including Defendants Merendino and Huelga, on

8  a regular basis as part of an ongoing enforcement initiative known as the Multi-Agency Gang

9  Enforcement Team ("MAGNET") or the "Gang Task Force."  Several agencies, including the

10 Sonoma County Sheriff's Department and ICE, participate in MAGNET operations.  Defendants

11 Salkin, Huelga and Merendino are regular field participants or personnel in MAGNET

12 operations.

13        31.    MAGNET's purported primary goal is stop gang-related violence and associated

14 criminal activity.  However, MAGNET's participants, including Defendants Salkin, Merendino

15 and Huelga, do not limit their enforcement activities to such criminal activity.  Specifically, in

16 furtherance of a stated goal to arrest "undocumented alien gang members," MAGNET targets

17 Latinos in Sonoma County who are not engaged in criminal activity.  Upon information and

18 belief, Defendant Sheriff's deputies and ICE agents working together on MAGNET patrols enter

19 areas of Sonoma County that have high Latino populations and target young Latino males or

20 young males who appear to be Latino for traffic stops, often without any reasonable suspicion of

21 criminal activity or traffic infraction.  After stopping such individuals, Defendants interrogate

22 and search them, even where there is no reasonable suspicion that such individuals are engaged

23 in criminal activity or present a threat to safety.

24        32.    Defendants have adopted the policy, practice and custom of relying on the

25 impermissible factors of race, color and/or ethnicity to stop, detain, question and/or search

26 persons who are or appear to be Latino and to prolong their initial stops to probe into their

27 immigration status without reasonable suspicion that they have committed a crime or are

28 noncitizens without lawful immigration status.

33. After such initial stops, prolonged detentions for immigration questioning, and searches, Defendants have the policy and practice of arresting and placing individuals in the Sonoma County jail without criminal charges or any actual or purported criminal basis, simply because they are suspected of violating civil immigration laws. Defendant ICE and its agents also engage in the policy and practice of arresting individuals or causing them to be arrested without warrants and causing them to be held in the Sonoma County jail without reason to believe that such individuals are present in the United States without authorization and without reason to believe they are likely to escape before a warrant can be obtained.

**Civil Immigration Enforcement By Sheriff's Deputies Unaccompanied By ICE Agents**

34. In addition to the joint operations described above, Defendants Cogbill and County employees working under his supervision, including Defendant Salkin, have adopted the policy, practice and custom of stopping, detaining, questioning and/or searching persons who are or appear to be Latino and interrogating them about their immigration status outside the presence of ICE agents.

35. These racially-motivated stops are frequently unsupported by reasonable suspicion or probable cause that the person or persons stopped have violated any criminal law.

36. Even where such stops may be initially supported by reasonable suspicion of criminal activity or traffic infraction, Defendants Cogbill and the County employees under his supervision, including Defendant Salkin, have adopted the policy, practice and custom of prolonging the initial stop to interrogate individuals about their immigration status and conducting searches of their persons and vehicles despite having neither any criminal basis to prolong the detention nor any investigatory or safety justification for the searches. Upon information and belief, the individual's actual or apparent Latino descent is a motivating factor for Sheriff's deputies' prolonged detention, interrogation, and search of such individuals.

37. Defendants Cogbill and the County employees under his supervision, including Defendant Salkin, have also adopted the policy, practice and custom of contacting ICE agents to seek approval to execute warrantless arrests for civil immigration violations. Upon information and belief, these calls to ICE agents are motivated by the individual's actual or apparent Latino

descent, Spanish surname, or Latin American country of origin, and Latino residents of Sonoma County are disproportionately affected by this practice.

**Individuals Arrested for Civil Immigration Violations During Joint Patrols or by Sheriff's Deputies Alone Held in the Sonoma County Jail**

38.     Federal Defendants ICE, Huelga, Merendino, and unknown ROES have adopted the policy, practice and custom of requesting that Sonoma County Sheriff's Department personnel take physical custody of individuals suspected of civil immigration violations and hold them in the Sonoma County jail without any criminal basis for arrest.  This practice and custom includes issuance of immigration detainers under the purported authority of 8 C.F.R. § 287.7 for persons that are not already in County custody on an independent arrest pursuant to criminal law or other state law.

39.     County Defendants County of Sonoma, Cogbill, Salkin, and DOES 1-50 have adopted the policy, practice and custom of transporting, booking, and holding individuals in the Sonoma County jail without a warrant or probable cause of criminal activity, based only on Federal Defendants' request and issuance of an immigration detainer under the purported authority of 8 C.F.R. 287.7.

40.     Defendants ICE, Sonoma County, and Sheriff Cogbill do not provide adequate training to the deputy sheriffs regarding the law and regulations governing ICE detainers, or any federal immigration law.

**Warrantless Civil Immigration Arrests Made Without Flight Risk Assessment**

41.     Whether encountered as a part of a joint MAGNET operation including ICE agents or arrested by Sheriff's deputies with ICE's approval, Defendants have adopted the policy, practice and custom of placing civil immigration arrestees in local custody without meeting federal requirements for the warrantless arrest of noncitizens suspected of violating federal immigration laws, *i.e.,* probable cause and a determination that the person is likely to escape before an arrest warrant can be obtained.  8 U.S.C. § 1357.

42.     Upon information and belief, Defendants United States and ICE do not provide adequate training to ICE agents regarding the types of evidence necessary to establish reasonable

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   suspicion or probable cause that a person is a noncitizen in the United States without

2   authorization or that the person poses a flight risk as required for warrantless arrests based on

3   suspected civil immigration violations.

4           43.     In addition to directing the illegal enforcement of civil immigration law by deputy

5   sheriffs, Defendants Sonoma County, Sheriff Cogbill, United States and ICE do not provide

6   training to deputy sheriffs working with ICE agents regarding the types of evidence necessary to

7   establish reasonable suspicion or probable cause that a person is a noncitizen in the United States

8   without authorization or that the person poses a flight risk as required for warrantless arrests

9   based on suspected civil immigration violations.

10  **Invalid Use of Immigration Detainers**

11          44.     Defendants purport to justify holding individuals in the Sonoma County jail

12  without criminal charges -- whether arrested by joint patrols or by Sheriff's deputies acting on

13  their own -- by the issuance of immigration detainers pursuant to 8 C.F.R. § 287.7.  However, by

14  the express terms of that regulation, local authorities may only use immigration detainers to

15  retain custody over individuals who are already in local custody pursuant to a valid criminal

16  arrest after they would otherwise be released from local custody.  Moreover, 8 C.F.R. § 287.7

17  does not allow ICE to issue detainers to initiate custody for persons not already in the custody of

18  a law enforcement agency on independent criminal or other state law grounds.

19          45.     A detainer is not an "arrest warrant," a "criminal detainer," *see* Pub. L. No. 91-

20  538, 84 Stat. 1397 (1970), or an "administrative warrant," *see* 8 U.S.C. § 1226, 8 C.F.R. § 236.1.

21  ICE may only issue immigration detainers to request that another law enforcement agency

22  maintain custody of an individual already held by that agency on independent grounds.  8 C.F.R.

23  § 287.7.  In violation of 8 C.F.R. §287.7, Defendants have adopted the policy, practice and

24  custom of using immigration detainers as "warrants," in an effort to allow local law enforcement

25  officers to initiate County custody of individuals without meeting applicable constitutional,

26  statutory, and regulatory requirements.

27

28

46.     Upon information and belief, Defendant ICE does not generally interpret 8 C.F.R. § 287.7 to authorize local law enforcement to initiate custody of individuals for civil immigration violations.

47.     Upon information and belief, Defendants' use of immigration detainers to initiate custody of individuals who are not already in the custody of local law enforcement independently of the detainer as described in this Second Amended Complaint is not a common practice elsewhere in the country.

**Racially-Motivated Targeting of Criminal Arrestees for Immigration Detainers**

48.     Defendants also use immigration detainers for inmates of the Sonoma County jail who are in custody after arrests for independent criminal or other state law grounds.  Upon information and belief, County Defendants have adopted the policy, practice and custom of identifying individuals held in the Sonoma County jail based on their Latino race or appearance, Spanish surname, and/or birth in a Latin American country for questioning regarding their immigration status and referral to ICE for a determination of whether to issue a detainer.

49.     Upon information and belief, for those individuals who are already in custody of local law enforcement pursuant to a purported criminal arrest, Defendant ICE and its agents have adopted the policy, practice, and custom of using Latino race or appearance, Spanish surnames, and Latin American national origin as motivating factors for initiating interrogations or other review of inmates as potential subjects of immigration detainers and for the issuance of immigration detainers.

**Denial of Procedural Protections**

50.     With respect to persons arrested and held in the Sonoma County jail for suspected civil immigration violations -- whether by joint ICE/Sheriff's Department teams or by Sheriff's deputies alone -- Defendants have adopted the policy, practice and custom of maintaining local custody for approximately four days before transferring the arrestees to ICE for the initiation of removal proceedings under federal immigration law.

51.     Once booked into the Sonoma County jail, civil immigration arrestees are -- by Defendants' policy, practice and custom -- denied notice of any charges against them,

examination by a neutral magistrate or non-arresting ICE officer, notice that statements they make may be used against them in removal proceedings, a list of low or no-cost immigration legal services, or notice that they have a right to a hearing or bond determination.  Such procedural protections are required for individuals arrested without a warrant on suspected immigration violations pursuant to 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 and would be provided to arrestees taken immediately into ICE custody.  Under the policy, practice, and custom adopted by Defendants, the issuance of these procedural protections is, on information and belief, delayed for approximately four days while civil immigration arrestees are held in the Sonoma County jail.

52.     With respect to persons originally held in the Sonoma County jail for criminal or other state law violations, Defendants have adopted the policy, practice, and custom of prolonging the detention of persons against whom immigration detainers have been issued for four days after they otherwise would have been released from local custody.  These four day detentions are not justified by the original state law basis for the individuals' initial arrests and are not supported by a separate probable cause determination by a non-arresting ICE officer or a neutral magistrate. These immigration detainees are not provided the procedural protections required by 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 for individuals arrested by ICE without a warrant.  Upon information and belief, standards used by ICE and its agents for the issuance of immigration detainers for persons held on criminal or other state law grounds in the Sonoma County jail are insufficient to establish probable cause for the prolonged detentions.

53.     The procedural protections set forth in 8 C.F.R. § 287.3 are important to allow civil immigration detainees to determine the reasons why they are being detained, to understand their rights to remain silent, to seek out legal representation and advice on the effect of criminal charges on the detainee's immigration status, and their right to post bond such that they do not have to remain in custody pending removal proceedings.  These notices are necessary underpinnings to each civil immigration arrestee's right to a meaningful immigration hearing before being deprived of liberty through removal from the United States.

54.     In addition, the United States and California Constitutions impose requirements that are not being met under Defendants' policies, practices, and customs regarding immigration detainers.  As a matter of federal and state constitutional law, persons who are detained on immigration detainers—or whose detention is prolonged based on an immigration detainer—are entitled to a probable cause determination within 48 hours of the beginning of the immigration detainer-based detention, as well as notice of the charges against him or her and an opportunity to respond.

55.     Upon information and belief, after having been held without authorization in Sonoma County jail for four days without notice of the charges against them, their right to a hearing and counsel, their right to post bond, and other required notices before being transferred into ICE custody, civil immigration arrestees are more easily coerced into waiving their constitutional right to a hearing prior to removal than they would be if they were timely provided the procedural protections which are due them as warrantless immigration arrestees.

56.     Upon information and belief, after having their detentions prolonged for four days pursuant to an immigration detainer without notice of the charges against them, their right to a hearing and counsel, their right to post bond, and other required notices before being transferred into ICE custody, individuals are more easily coerced into waiving their constitutional right to a hearing prior to removal than they would be if they were timely provided the procedural protections set forth in 8 C.F.R. § 287.3.

57.     Upon information and belief, the financial and administrative costs of providing the procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 to persons who are held in the Sonoma County jail pursuant to immigration detainers would be insubstantial relative to the harm to their due process rights resulting from the denial or delay of these procedural protections.

58.     Defendants' failure to provide procedural protections required by 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 to civil immigration detainees arrested, or subjected to prolonged detention on the basis of an immigration detainer, without a warrant violate those detainees' due process

1    rights, as guaranteed under the Fifth and Fourteenth Amendments of the United States

2    Constitution and Article I, section 7 of the California Constitution.

3    **Defendants' Racially-Motivated Classification of Immigration Detainees as Gang Members**

4         59.    Upon information and belief, Defendants have adopted the policy, practice, and

5    custom of using race, Spanish surname, and/or national origin as factors to inaccurately classify

6    Latinos who are arrested through MAGNET operations as gang members.

7         60.    Upon information and belief, Defendants County, Cogbill, Salkin, and DOES 1-

8    50 have adopted the policy, practice, and custom of using race, Spanish surname, and/or national

9    origin as factors to inaccurately classify Latinos who are booked into the jail—on criminal or

10   other state law charges or on immigration detainers—as gang members.

11        61.    In addition to being stigmatizing and causing other injuries, Defendants' racially-

12   motivated and inaccurate classification of inmates as gang members has an impact on their

13   placement within the jail and, as a matter of state law, could impact their sentencing in any

14   subsequent criminal proceedings.

15   **Sheriff's Knowledge and Direction of Challenged Policies, Practices and Customs**

16        62.    Defendant Sheriff Cogbill directs the operations, staffing and investigations

17   conducted by MAGNET, and provides updates as to MAGNET and other immigration

18   enforcement activities at Sonoma County Law Enforcement Chiefs' Association meetings.

19        63.    On October 5, 2007, at a meeting with representatives of Plaintiff Committee for

20   Immigrant Rights of Sonoma County, Defendant Sheriff Cogbill and other members of the

21   Sonoma County Sheriff's Department, with counsel, confirmed that Defendant Sheriff's

22   Department had regularly engaged in joint patrols with ICE for the previous three years, had

23   arrested individuals based on suspected immigration violations without a criminal basis for arrest

24   outside the presence of ICE agents, and has adopted the policy and practice of holding

25   individuals in the Sonoma County jail based on suspected civil immigration violations, and

26   without any criminal basis for arrest, at the request of ICE agents.

27

28

64.     Defendant Sheriff Cogbill also has personally received memoranda from his employees informing him of the practices of the Sheriff's Department, including the detention of individuals without a criminal basis for the arrest.

65.     Defendant Sheriff Cogbill also directs the practices of deputy sheriffs in the Sheriff's Department's Detention Division, which manages the processing, care and management of arrestees held in the Sonoma County jail.

66.     Defendants Sonoma County and Sheriff Cogbill failed to train deputy sheriffs of the Sonoma County Sheriff's Department including Defendant Salkin on the requirements imposed on ICE agents for warrantless arrests of persons suspected of civil immigration violations and the terms and limitations of 8 C.F.R. § 287.7.

67.     Upon information and belief, Defendants Sonoma County and Sheriff Cogbill failed to adequately train deputy sheriffs of the Sheriff's Department on the due process and equal protection rights of inmates held at the Sonoma County jail.

68.     Plaintiffs allege that Sheriff Cogbill is liable in his personal capacity for the actions of his subordinates and ICE agents acting in concert with Sheriff's Department personnel as alleged herein because he was intimately familiar with, approved of, and ratified the policies, practices and customs described herein and failed to take any remedial action to stop ongoing constitutional violations.

## INDIVIDUAL PLAINTIFFS' EXPERIENCES

**Ongoing Injury to the Committee for Immigrant Rights and Its Members**

69.     Plaintiff Committee for Immigrant Rights of Sonoma County ("Committee") was founded in 2006 in response to federal immigration reform proposals that would have raised penalties for illegal immigration and classified undocumented immigrants and those who assist them as felons.  The Committee's mission has been to oppose anti-immigrant legislation and policies at both federal and local levels.  Since its inception, the Committee has worked to educate the public, including immigrant communities in Sonoma County, about immigration law and policies and to inform them about their rights.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

70.     Through its Know Your Rights Campaign, the Committee has held a series of house meetings and public forums to distribute information to the Latino community in Sonoma County concerning individual rights, including the right to be free from unreasonable searches and detentions, the right to remain silent when questioned by police or immigration agents, and the right to be represented by a lawyer when accused or interrogated in custody.

71.     The Committee launched a County of Refuge Campaign in 2007, calling for an end to local law enforcement's assistance in civil immigration enforcement through weekly vigils and public forums.  This campaign was the Committee's response to the Sonoma County Sheriff's Department practice of arresting and detaining young Latino members of the community based solely on their immigration status, which is the product of an active and open collaboration between the Sheriff and ICE.

72.     Members of the Committee have personally witnessed and been subjected to Defendants' unlawful practices, and the Committee's membership includes a constituency of persons, namely Latino residents of Sonoma County, who are especially likely to be subjected to these practices.  The Committee's membership includes several Latino families who live in the neighborhoods of Sonoma County where Defendants' regularly patrol.  In addition, the Committee itself has been, and continues to be, harmed by Defendants' practices because those practices undermine the Committee's organizational mission and divert the Committee's resources from the pursuit of other, related goals.

73.     The Committee seeks only injunctive and declaratory relief from Defendants, as discussed below.

**The Unlawful Stop and Detention of Francisco Sanchez-Lopez**

74.     On September 28, 2006, Plaintiff Francisco Sanchez-Lopez ("Sanchez-Lopez") was riding as a passenger in a car in Santa Rosa.  A group of officers working together as part of a MAGNET team stopped the car near West 9th Avenue in Santa Rosa.  The group included ICE agents, including Defendants Huelga and Merendino; Sheriff's deputies, including Defendant Salkin; and at least one California Highway Patrol ("CHP") officer.

75.     Upon information and belief, the MAGNET team, including Defendants Merendino, Huelga, and Salkin, stopped the car in part due to the race and/or ethnicity of its occupants, including Sanchez-Lopez.

76.     After stopping the car, a CHP officer approached the driver.  The CHP officer told the driver that he was not permitted to have a "For Sale" sign in the car's rear window, and proceeded to interrogate the driver about whether he had gang affiliations.  The driver did not receive a ticket for the "For Sale" sign.

77.     An officer, who upon information and belief was Defendant Huelga, approached Sanchez-Lopez on the passenger side of the vehicle.  Though Sanchez-Lopez had committed no crime and posed no threat, Defendant Huelga asked Sanchez-Lopez for his name and then asked him if he was on probation.  Sanchez-Lopez provided his name and admitted that he was on probation.  Huelga did not ask the reasons behind Sanchez-Lopez's probation, nor seek to verify Sanchez-Lopez's name or probation terms by radio or with other officers.  The terms of Sanchez-Lopez's probation did not require him to submit to searches by law enforcement.

78.     Without probable cause or reasonable suspicion of any civil or criminal violation, without any reason to believe Sanchez-Lopez was in the United States without documentation, and without any reason to believe that Sanchez-Lopez was armed or dangerous, Huelga ordered Sanchez-Lopez out of the car.  Huelga asked Sanchez-Lopez if he was in a gang and if he had any tattoos, and instructed him to show them the tattoos.  Sanchez-Lopez said he was not in a gang, and showed Huelga his tattoos.  Without reasonable suspicion that Sanchez-Lopez posed a threat to the officers' safety, probable cause of criminal activity, or Sanchez-Lopez's consent, Huelga subjected Sanchez-Lopez to a pat-down search and confiscated his wallet.  Huelga searched Sanchez-Lopez's wallet and removed an ID card.

79.     Huelga instructed Sanchez-Lopez to go over to Defendant Merendino.  Merendino interrogated Sanchez-Lopez about his immigration status and family background.

80.     Upon information and belief, Defendants Huelga and Merendino subjected Sanchez-Lopez to prolonged detention, search, and interrogation based in part on his Latino appearance and Spanish surname.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SECOND AMENDED COMPLAINT
CASE NO. 08-4220-PJH

81.     Following the interrogation and search of Sanchez-Lopez's wallet, Merendino and Huelga directed Defendant Salkin to arrest Sanchez-Lopez and book him into custody at the Sonoma County jail based solely on his suspected immigration status. There was no actual or even purported criminal basis for Sanchez-Lopez's arrest, and neither Merendino nor Huelga made a determination that Sanchez-Lopez presented a flight risk within the meaning of 8 U.S.C. § 1357. At the time of Sanchez-Lopez's arrest, ICE had not issued a Notice to Appear or an arrest warrant for Sanchez-Lopez.

82.     Defendant Salkin put Sanchez-Lopez in handcuffs and walked him over to a Sonoma County Sheriff's patrol car. No one told Sanchez-Lopez that he was under arrest or why he was under arrest and no one gave Sanchez-Lopez notice of his Miranda rights. As Salkin was walking Sanchez-Lopez to the patrol car, a passenger in the car, Sanchez-Lopez's then-girlfriend, asked why Sanchez-Lopez was being taken. In response, several officers ridiculed and laughed at Sanchez-Lopez, including Defendant Salkin, who responded "He knows why," in a laughing manner.

83.     Defendant Salkin took physical custody of Sanchez-Lopez and drove him to the Sonoma County jail. Merendino accompanied Salkin and Sanchez-Lopez in Salkin's vehicle. Sanchez-Lopez arrived at the jail at about 6:00 p.m. on September 28, 2006.

84.     Despite the lack of indicia of gang membership and Sanchez-Lopez's repeated denial of any gang affiliations, Defendants Salkin and Merendino characterized Sanchez-Lopez as a gang member based on his Latino appearance and descent. He was housed with Sureño inmates in the Sonoma County jail.

85.     Around the time of the arrest, Defendant Merendino issued and signed an immigration detainer, Form I-247, for Sanchez-Lopez which indicates September 28, 2006 as the date the detainer was filed. Sonoma County jail records of Sanchez-Lopez's arrest list Merendino as the arresting officer.

86.     Sanchez-Lopez spent four nights in the custody of Defendants County and Cogbill at the Sonoma County jail before being transferred to ICE custody on October 2, 2006. During this time Sanchez-Lopez did not receive notice of any charges against him, examination

by a neutral magistrate or non-arresting ICE officer, notice that statements he made could be used against them in removal proceedings, a list of low or no-cost immigration legal services, or notice that he had a right to a hearing or a bond determination.

87.     Being in jail for four nights without any information about what was happening to him, or what would be coming next, and knowing he had not violated any criminal laws, Sanchez-Lopez was extremely frightened and anxious.  No one told Sanchez-Lopez how long he could expect to stay in jail or whether he would have an opportunity to clear his name.  He feared losing his job and falling behind in school.  He did not know that he had any rights as a person who might be put into immigration proceedings, and he was very anxious about what would happen in the future.  He had trouble sleeping while he was in jail, and he ate very little because he felt so nervous.  The first day he was in County custody, he did not have access to medication for a chronic kidney condition, which also caused him worry and distress.

88.     Once in ICE custody, Sanchez-Lopez remained in custody for approximately one week, posted bond, and was issued a Notice to Appear.

89.     In his immigration proceedings, Sanchez-Lopez sought to suppress evidence regarding his immigration status that was gained during the above-described searches, seizures, and interrogations on the basis that the evidence was gained through egregious violations of the Fourth Amendment.  On or about March 17, 2008, the immigration judge presiding over Sanchez-Lopez's removal proceedings granted Sanchez-Lopez's motion to suppress and ordered his removal proceedings terminated.  On or about May 7, 2009, the Board of Immigration appeals denied ICE's appeal of the immigration judge's decision.  The deadline for the government to petition for review of the BIA's decision to the Ninth Circuit Court of Appeals lapsed on or about June 6, 2009.

90.     Sanchez-Lopez and members of his family have been settled residents of Sonoma County and members of the Committee for approximately two years.  During the relevant events alleged in paragraphs 74-89 above, Sanchez-Lopez was employed in Sonoma County, lived in Sonoma County, had friends in the community, and made no attempt to flee.  Based on these factors, Sanchez-Lopez was not a flight risk.  Sanchez-Lopez's only previous law enforcement

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  record was in connection to violations for driving without a license.  Sanchez-Lopez is not, and

2  has never been, a gang member.

3        91.     Sanchez-Lopez is and appears to be of Latino descent and a person of color.

4  **The Unlawful Stop and Detention of Christyan Sonato-Vega**

5        92.     In or about July, 2007 Christyan Sonato-Vega ("Sonato-Vega") was a passenger

6  in a car driven by his fiancée.  She parked the car and they got out at a bakery in Santa Rosa,

7  intending to purchase a cake.  They were ordered to stop by two MAGNET officers, Defendant

8  Salkin and an unknown DOE Defendant, who, upon information and belief, stopped Sonato-

9  Vega because he appeared to be of Latino descent.

10        93.     Without reasonable suspicion to believe Sonato-Vega was engaged in criminal

11  activity or posed a threat of danger, Salkin immediately ordered Sonato-Vega to "stop."  Sonato-

12  Vega continued walking, and Salkin repeated, "Stop and put your hands on your head."  Sonato-

13  Vega, feeling he had no choice, complied with the order and stopped walking.  Defendant Salkin

14  walked over to Sonato-Vega, held Sonato-Vega's hands on top of his head, and walked him to

15  the car.  Salkin asked him if he had any weapons.  Sonato-Vega said, "No," and Salkin ordered

16  Sonata-Vega to empty his pockets.  Sonato-Vega emptied his pockets and placed his hands back

17  on his head.  Salkin searched through the contents of Sonata-Vega's pockets and did a pat-down

18  search of his body.  Salkin asked Sonato-Vega to spread his legs for the pat-down search and

19  Sonato-Vega complied, but Salkin kicked Sonato-Vega's legs apart further and pulled Sonato-

20  Vega's hands back, causing Sonato-Vega pain.

21        94.     Salkin questioned Sonato-Vega about his immigration status, his tattoos, and

22  whether he was a gang member.  Sonato-Vega told Salkin that he was not a gang member and

23  exercised his legal right not to answer Salkin's questions about his immigration status.  Salkin

24  threatened that if Sonato-Vega did not cooperate, they would arrest his fiancée.

25        95.     Following this search and interrogation, Salkin left Sonato-Vega and his fiancée

26  in the care of the other deputy sheriff and searched the car without their consent.  Salkin also

27  questioned Sonato-Vega about the contents of the car.  The entire detention lasted between 10

28  and 20 minutes and then Salkin told Sonato-Vega he and his fiancée were free to go.

96. The deputy sheriffs did not issue any citation to Sonato-Vega or his fiancée during this encounter.

97. On or about Thursday, August 2, 2007, Defendants Salkin and Huelga approached Sonato-Vega at his place of employment, a gas station in Rohnert Park, California. Without reasonable suspicion that Sonato-Vega was engaged in criminal activity or was a non-citizen without authorization to be in the United States, Defendants Salkin and Huelga detained Sonato-Vega and interrogated him about his immigration status and his family.

98. When Salkin and Huelga arrived at the gas station, they ordered Sonato-Vega to "stop" and told him he was under arrest. They made him empty his pockets and handcuffed him. Salkin subjected Sonato-Vega to a pat-down search, searched his wallet, and asked him about his immigration status and the status of his parents. During the course of this interrogation, Sonato-Vega refused to answer questions concerning his immigration status.

99. Defendant Huelga also subjected Sonato-Vega to a pat-down search before putting him in the patrol car. During the encounter, Huelga ridiculed Sonato-Vega, saying, "Oh look, he's shaking. He ain't that tough." When Sonato-Vega asked why he was being arrested, Huelga responded, with profanity, that Sonato-Vega is "illegal" and "is not allowed to be here."

100. Defendants Salkin and Huelga arrested Sonato-Vega and booked him into the Sonoma County jail based on suspected civil immigration violations alone and without any actual or even purported criminal basis for arrest. Upon information and belief, Salkin and Huelga made this warrantless arrest without probable cause to believe that Sonato-Vega was a noncitizen without authorization to be in the United States and without making a determination that he was likely to escape before an arrest warrant could be obtained. Upon information and belief, Huelga and Salkin subjected Sonato-Vega to the stop, interrogation, search, and arrest because of his Latino appearance and Spanish surname.

101. Around the time of the arrest, Huelga issued and signed an immigration detainer, Form I-247, for Sonato-Vega which indicates August 2, 2007 as the date the detainer was filed. Sonoma County jail records of Sonato-Vega's arrest list Huelga as the arresting officer.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

SECOND AMENDED COMPLAINT
CASE NO. 08-4220-PJH

102.    Despite the lack of reliable indicia of gang membership and Sonato-Vega's denial of any gang affiliations, DOE Defendants and Salkin and Huelga characterized Sonato-Vega as a gang member based on his Latino appearance and descent.

103.    In response to a DOE Defendant's questions at booking about what Latino gang members Sonato-Vega would prefer to be housed with, Sonato-Vega responded that he was not a gang member, that he knew people that were both Norteños and Sureños, and that he would prefer to be housed with non-gang-affiliated inmates.  Contrary to Sonato-Vega's request, Defendants County, Cogbill, and DOE Defendants housed him with Sureño inmates who were in criminal custody.  Some of the criminal detainees told Sonato-Vega that he would end up in prison.

104.    While he was in custody at the Sonoma County jail, Sonato-Vega asked County jail employees what the charges were against him.  However, while in County custody, Sonato-Vega did not receive notice of the charges against him, an examination by a neutral magistrate or non-arresting ICE officer, a list of low or no-cost immigration legal services, or notice that he had a right to a hearing or a bond determination.

105.    Being in jail for four days without a clear sense of the charges against him, knowing he had not hurt anyone or violated any criminal laws to cause his arrest, Sonato-Vega felt angry and agitated, as well as extremely nervous and anxious.  No one told Sonato-Vega how long he could expect to stay in jail and he did not know he had any rights as a person being held for civil immigration violations.  He had trouble sleeping while he was in the Sonoma County jail and ate very little due to his emotional distress and worry.

106.    Defendants held Sonato-Vega in Defendant Cogbill's custody at the Sonoma County jail until on or about Monday, August 6, 2007, when they transferred him to San Francisco's ICE facility.

107.    While in ICE detention, Sonato-Vega was threatened by unknown ICE agents ROES with further and prolonged detention and relocation to a facility far away from his home if he did not agree to sign a form.  Defendants ROES told Sonato-Vega that he could not challenge his inevitable removal, and that if he signed the form, he would be released from jail sooner.

Upon information and belief, these ICE agents made these threats to coerce Sonato-Vega into waiving his rights to a hearing and stipulating to removal. After an extended period of detention, and out of desperation to achieve freedom from confinement, Sonato-Vega stipulated to removal without knowing, voluntary or informed consent. Sonato-Vega's experience of having spent four days in the Sonoma County Jail without notice of the charges against him or his rights as a warrantless civil immigration detainee contributed to his desperation and susceptibility to coercion when he was transferred to ICE custody.

108. Because Sonato-Vega was denied notice of the charges against him, an examination by a neutral magistrate or non-arresting ICE officer, a list of low or no-cost immigration legal services, or notice that he had a right to a hearing or a bond determination, Sonato-Vega, through counsel, later sought to reopen his removal proceedings. Sonato-Vega ultimately negotiated a change in his removal designation from "stipulated removal" to "voluntary departure."

109. During the relevant events alleged in paragraphs 92-108 above, Sonato-Vega and members of his family were settled residents of Sonoma County, and Sonato-Vega was employed in Sonoma County. Sonato-Vega also was engaged to a U.S. citizen. Sonato-Vega therefore was not a flight risk.

110. Prior to August 2007, Sonato-Vega had no prior police record other than for driving without a license. Sonato-Vega is not, and never has been, a gang member.

111. Sonato-Vega is and appears to be of Latino descent and a person of color.

**The Unlawful Detention of Samuel Medel Moyado**

112. On the evening of August 8, 2007, Plaintiff Samuel Medel Moyado ("Medel") was arrested on a minor non-drug charge, pursuant to California Penal Code § 647(f).

113. Despite a lack of indicia of gang membership and Medel's denial of any gang affiliations, unknown ROE and DOE Defendants, upon information and belief, characterized Medel as a gang member based on his Latino appearance and descent. Despite the fact that Medel was wearing a red t-shirt when he was arrested and that red is the color known to be

associated with Norteño gang members, Defendants County, Cogbill and DOES placed Medel in detention with members of the Sureño gang (whose favored color is widely known to be blue).

114.   Upon information and belief, an unknown DOE Defendant, motivated by Medel's race, national origin, and/or Spanish surname, questioned Medel about his immigration status and referred him to ICE for investigation and consideration for issuance of an immigration detainer.

115.   Upon information and belief, Defendants ICE and a ROE Defendant interrogated Medel about his immigration status while he was in the Sonoma County Jail and issued an immigration detainer for Medel based in part on his Latino appearance and Spanish surname and without a determination that he presented any flight risk.

116.   At Medel's court hearing on the morning of August 10, 2007 the judge told Medel he was free to leave because no charges had been filed against him.  However, relying on an immigration detainer that had been issued pursuant to 8 C.F.R. § 287.7(d), Sheriff's Department personnel continued to detain Medel in Defendant Cogbill's custody, transferred him to another Sheriff's facility and kept him in custody until August 14, when they transferred him to ICE's custody.

117.   While he was in custody at the Sonoma County jail, Medel did not receive notice of the immigration charges against him, notice that statements he made could be used against him in removal proceedings, a list of low or no-cost immigration legal services, or notice that he had a right to a bond determination.

118.   Defendants did not bring Medel before a neutral magistrate or non-arresting ICE officer for a probable cause determination or provide him notice of the charges against him and an opportunity to respond within 48 hours of the initiation of his prolonged local custody pursuant to immigration detainer.

119.   Being in detention for days without a clear sense of the charges against him or what would happen to him, Medel felt nervous and agitated and suffered emotional distress from the uncertainty.

120.     Although Medel attempted to post bond while he was in detention in San Francisco on or about August 14, Defendants ICE and unidentified ROE Defendants did not give Medel the opportunity until after they transferred him to ICE's Eloy Detention Center in Arizona, over a week after his arrest.  Defendants did not release Medel until the evening of Thursday, August 16, 2007, in Arizona, after he posted bond.

121.     As a result of Defendants' actions, Medel was deprived of his right to post bond until he had already been transferred to Arizona, was unnecessarily deprived of his liberty before he was given opportunity to post bond, and was forced to incur travel expenses in returning from Arizona to his home in Santa Rosa.

122.     Medel is a member of the Committee.  During the events alleged in paragraphs 112-121 above, Medel had also been a long-time resident of Sonoma County, with ties to the community and in a serious relationship with a U.S. citizen.  Medel, therefore, was not a flight risk.

123.     Prior to August 8, 2007, Medel had no police record as an adult.  Medel is not, and never has been, a gang member.

124.     Medel is and appears to be of Latino descent and a person of color.

## REQUISITES FOR RELIEF

125.     As a result of the general and specific conduct of Defendants described above, Plaintiffs have been denied their constitutional and civil rights.  Defendants' conduct is the result of ongoing policies, practices, conduct and acts that have resulted and will continue to result in irreparable injury to Plaintiffs, including but not limited to further threats to and violations of their constitutional and civil rights.  Plaintiffs have no plain, speedy, or adequate remedy at law to redress the violations alleged herein, and therefore seek injunctive relief restraining Defendants from continuing to engage in the unlawful and unconstitutional policies, practices, conduct and acts described in this Second Amended Complaint.

126.     An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.  Plaintiffs contend that Defendants' policies, practices, conduct and acts alleged herein violate Plaintiffs' constitutional and civil rights.  Defendants

1  contend the opposite and have indicated their intent to continue engaging in the challenged

2  conduct.

3      127.    On or about January 29, 2008, Medel filed an administrative claim with

4  Defendant Sonoma County pursuant to California Government Code § 910 *et seq.*  Sonoma

5  County rejected Medel's claim on or about March 5, 2008.

6      128.    On or about January 29, 2008, Sonato-Vega filed an administrative claim with

7  Defendant Sonoma County pursuant to California Government Code § 910 *et seq.*  Sonoma

8  County rejected Sonato-Vega's claim on or about April 2, 2008.

9      129.    On or about October 23, 2008, Medel filed an administrative claim with the

10 Department of Homeland Security pursuant to 28 U.S.C. § 2675.  The failure of the Department

11 of Homeland Security to make final disposition of Medel's claim within six months after it was

12 filed is deemed a final denial of the claim.  28 U.S.C. § 2675(a).

13     130.    On or about October 23, 2008, Sanchez-Lopez filed an administrative claim with

14 the Department of Homeland Security pursuant to 28 U.S.C. § 2675.  The failure of the

15 Department of Homeland Security to make final disposition of Sanchez-Lopez's claim within six

16 months after it was filed is deemed a final denial of the claim.  28 U.S.C. § 2675(a).

17     131.    On or about October 23, 2008, Sonato-Vega filed an administrative claim with the

18 Department of Homeland Security pursuant to 28 U.S.C. § 2675.  The failure of the Department

19 of Homeland Security to make final disposition of Sonato-Vega's claim within six months after

20 it was filed is deemed a final denial of the claim.  28 U.S.C. § 2675(a).

21     132.    The acts of Defendants were willful, wanton, malicious and oppressive and done

22 with conscious disregard and deliberate indifference for Plaintiffs and their rights.

23     133.    As a direct and proximate result of Defendants' knowing and intentional conduct

24 with deliberate or reckless indifference to Plaintiffs' civil and constitutional rights, Plaintiffs the

25 Committee, Sanchez-Lopez, Sonato-Vega and Medel have been injured and will continue to be

26 injured, and therefore seek injunctive relief as described below.  Also as a direct and proximate

27 result of Defendants' conduct, Plaintiffs Sanchez-Lopez, Sonato-Vega and Medel have suffered

28

1  damages in an amount according to proof, and seek damages against Defendants as described

2  below.

### FIRST CLAIM FOR RELIEF

### Fourth Amendment (42 U.S.C. § 1983)

### (Unreasonable Search and Seizure)

### All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50

7       134.    Plaintiffs incorporate by reference the allegations in the paragraphs above as

8  though fully set forth here.

9       135.    Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory

10  relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official

11  capacities, enjoining them from continuing to engage in the above-described policies, practices

12  and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from

13  unreasonable searches and seizures under the Fourth Amendment of the United States

14  Constitution, including but not limited to:

15         a.  Stopping persons and vehicles without reasonable suspicion of criminal

16            activity or traffic infraction [¶¶ 25, 30-32, 34-35, 62-64];[1]

17         b.  Unreasonably prolonging traffic and other stops beyond the time they

18            would otherwise take in order to question individuals about matters

19            unrelated to the purported purpose of the stop or other criminal activity,

20            specifically their citizenship and immigration status [¶¶ 30-32, 34, 62-64];

21         c.  Conducting personal and vehicle searches without probable cause to

22            believe that that the areas searched contain evidence of criminal activity or

23            without a reasonable belief that the person searched or car's occupants are

24            dangerous and may gain access to a weapon in the area searched [¶¶ 30-

25            32, 34-36, 62-64];

---

[1]  For convenience and increased clarity, Plaintiffs have tried to refer the Court to the most relevant factual allegations, but such reference is not exhaustive.  Other allegations may be relevant to the claims and defenses and as such all allegations are expressly incorporated by reference.

d.  Unreasonably arresting individuals without probable cause of criminal activity and without authority to arrest for civil immigration violations [¶¶ 20-23, 25, 33, 37, 39, 43, 62-64, 66];

e.  Holding persons in the County jail without a criminal basis for custody and based only on suspected civil immigration violations [¶¶ 24-25, 33, 39, 62-64, 66];

f.  Arresting and holding persons in the County jail on immigration detainers for more than 48 hours without independent probable cause determinations by a non-arresting ICE officer or neutral magistrate [¶¶ 27, 50-54, 62-66]; and

g.  Prolonging the local custody of individuals for more than 48 hours beyond when they would otherwise be released, based on immigration detainers, and without bringing them before a neutral magistrate for a probable cause determination [¶¶ 27, 50-54, 62-66].

136.   Plaintiff Sanchez-Lopez seeks compensatory damages against Defendant Sonoma County and compensatory and punitive damages against Defendants Cogbill, Salkin, and unknown DOES in their personal capacities for violations of his right to be free from unreasonable searches and seizures according to proof, including but not limited to:

a.  Detaining him without reasonable suspicion of criminal activity [¶¶ 75-78];

b.  Agreeing to, participating in, and/or acquiescing to a pat-down search of his person and search of his wallet without lawful justification [¶¶ 78, 89];

c.  Unreasonably agreeing to, participating in, and/or acquiescing to his prolonged detention beyond the time they would otherwise take to question him about matters unrelated to the purported purpose of the stop, specifically his citizenship and immigration status [¶¶ 77-80];

d.  Unreasonably arresting him without probable cause of criminal activity and without authority to arrest for civil immigration violations [¶¶ 81-83];

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

e.   Holding him in custody for approximately four days without authority under state or federal law [¶¶ 81, 86]; and

f.   Holding him in custody for more than 48 hours without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 27, 51, 54, 86].

137.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for violations of his right to be free from unreasonable searches and seizures according to proof, including but not limited to:

a.   Detaining him without reasonable suspicion of criminal activity [¶¶ 92-93, 96, 97-98];

b.   Subjecting him to multiple pat-down searches of his person and his wallet without lawful justification [¶¶ 93, 98-99];

c.   Unreasonably prolonging his detention beyond the time they would otherwise take to question him about matters unrelated to any lawful purpose, specifically, his citizenship and immigration status [¶¶ 93-96];

d.   Unreasonably arresting him without probable cause of criminal activity and without authority to arrest for civil immigration violations [¶¶ 97-100];

e.   Holding him in custody for approximately four days without authority under state or federal law [¶¶ 101, 106]; and

f.   Holding him in custody for more than 48 hours without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 27, 51, 54, 104].

138.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill and unknown DOES in their personal capacities for violating his right to be free from unreasonable searches and seizures according to proof by holding him in custody for more than 48 hours after he would have been released from custody on his criminal arrest based on an immigration detainer and without an

independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 27, 51, 54, 115-118].

### SECOND CLAIM FOR RELIEF

### 14th Amendment (42 U.S.C. § 1983)

### (Equal Protection)

**All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

139.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

140.    As Latinos, the individual Plaintiffs and many members of the Committee are members of a protected class.

141.    Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from discrimination on the basis of race, ethnicity, or national origin including but not limited to:

    a.    Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Latino [¶¶ 30-32, 34-35, 62-64, 68, 75, 77-80, 92-94, 97-98];

    b.    Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status [¶¶ 30-32, 34-36, 62-64, 68, 77-80, 92-95, 97-98, 100];

    c.    Using race as a motivating factor in deciding to contact ICE agents to seek immigration detainers for individuals County Defendants encounter in the field and for whom they lack probable cause to arrest for criminal activity [¶¶ 37, 62-64, 68, 81];

    d.    Using race, Spanish surname, or national origin as motivating factors in classifying arrestees as gang members and for making decisions regarding placement in the jail [¶¶ 48-49, 59-65, 67-68, 84, 102-103, 113];

e. Using race, Spanish surname or national origin as motivating factors to interrogate inmates regarding their immigration status and recommend to ICE that certain inmates in the jail be considered as subjects of immigration detainers [¶¶ 48-49, 62-65, 67-68, 114-115].

142. Plaintiff Sanchez-Lopez seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill, Salkin, and unknown DOES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a. Stopping the car in which he was a passenger based on the race of its occupants, including Sanchez-Lopez's [¶ 75];

b. Agreeing to, participating in, and/or acquiescing to the use of Sanchez-Lopez's race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 77-80];

c. Using his race as a motivating factor for his arrest, inaccurate designation as a gang member, and placement with other persons perceived to be Sureños in the County jail [¶¶ 81-84].

143. Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin race according to proof, including but not limited to:

a. Using his race as a motivating factor to detain him [¶¶ 92-94, 97-98, 100];

b. Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 92-95, 97-98, 100]; and

c. Using his race, Spanish surname, and/or perceived national origin as motivating factors for his arrest, inaccurate designation as a gang member,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SECOND AMENDED COMPLAINT
CASE NO. 08-4220-PJH

1  and placement with other persons perceived to be Sureños in the County jail

2  [¶¶ 102-103].

3  144.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County,

4  and compensatory and punitive damages against unknown DOES in their personal capacities for

5  violations of his right to be free from discrimination on the basis of race, ethnicity, or national

6  origin according to proof, including but not limited to:

7  a.   Using his race as a motivating factor for his inaccurate designation as a gang

8  member and placement with other persons perceived to be Sureños in the

9  County jail [¶ 113]; and

10  b.   Using his race, Spanish surname, and/or perceived national origin as

11  motivating factors in deciding to interrogate Medel about him immigration

12  status and refer him to ICE for consideration as the subject of an immigration

13  detainer [¶¶ 114-115].

14  **THIRD CLAIM FOR RELIEF**

15  **14th Amendment (42 U.S.C. § 1983)**

16  **(Due Process)**

17  **All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

18  145.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

19  though fully set forth here.

20  146.   Arresting and detaining individuals without lawful authority is a violation of the

21  substantive due process rights of those arrested and detained.

22  147.   Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory

23  relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official

24  capacities, enjoining them from continuing to engage the above-described policies, practices and

25  conduct of County Defendants violating the rights of Plaintiffs and Sonoma County residents to

26  due process of law under the 14th Amendment of the United States Constitution including but

27  not limited to:

28

a.   Arresting and detaining individuals without probable cause of criminal activity and for civil immigration violations without any lawful authority, in violation of the arrestees' rights to substantive due process [¶¶ 20-23, 25, 33, 35, 39, 43, 62-64, 66];

b.   Aiding and abetting ICE and its agents in denying procedural protections due civil immigration arrestees who are arrested without a warrant [¶¶ 38-39, 41-43, 66];

c.   Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 due to persons who were arrested on criminal or other state law charges and whose County custody is prolonged as a result of an immigration detainer [¶¶ 50-58, 67] and;

d.   Detaining or prolonging the detention of individuals in custody of the County pursuant to immigration violations without notice of the charges against them and an opportunity to respond within a reasonable time after the initiation of the immigration detainer-based detention [¶¶ 27, 50-58, 67].

148.   Plaintiffs Sanchez-Lopez and Sonato-Vega seek compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill, Salkin, and unknown DOES in their personal capacities for violations of their rights to due process under the 14th Amendment to United States Constitution according to proof including, but not limited to:

a.   Arresting and holding them in custody for four days without lawful authority [¶¶ 81, 86 (Sanchez-Lopez), ¶¶ 101, 106 (Sonato-Vega)];

b.   Aiding and abetting ICE and its agents in denying procedural protections due to them as civil immigration arrestees who were arrested without a warrant [¶ 86 (Sanchez-Lopez); ¶ 104 (Sonato-Vega)]; and

c.   Detaining them for four days without notice of the charges against them or an opportunity to respond [¶ 86 (Sanchez-Lopez); ¶ 104 (Sonata-Vega)].

149.    Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill and unknown DOES in their personal capacities for violations of his right to due process under the 14th Amendment to United States Constitution according to proof including, but not limited to:

    a.    Denying him procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 [¶¶ 115, 117, 118]; and

    b.    Prolonging his detention for four days based on an immigration detainer without notice of the charges underlying the prolonged detention or an opportunity to respond [¶¶ 115, 117, 118].

## FOURTH CLAIM FOR RELIEF

**Fourth Amendment and 8 U.S.C. § 1357 (*Bivens* and 5 U.S.C. § 702)**

**(Unreasonable Search and Seizure)**

**All Plaintiffs Against Defendants ICE, Huelga, Merendino, and ROES 1-50**

150.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

151.    Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory relief against the above-described policies, practices and conduct of Defendant ICE and Defendants Huelga, Merendino, and ROES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, including but not limited to:

    a.    Stopping persons and vehicles without reasonable suspicion of criminal activity or of their being noncitizens present in the United States without authorization [¶¶ 26, 30-32, 42];

    b.    Conducting personal and vehicle searches without probable cause to believe that that the areas searched contain evidence of criminal activity or a reasonable belief that the person searched or car's occupants are dangerous and may gain access to a weapon in the area searched [¶¶ 30-32];

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SECOND AMENDED COMPLAINT
CASE NO. 08-4220-PJH

c. Unreasonably arresting individuals without warrants and without probable cause to believe they are noncitizens present in violation of civil immigration laws [¶¶ 33, 42];

d. Unreasonably arresting individuals for suspected civil immigration violations without warrants and without reason to believe they are likely to escape before a warrant can be obtained [¶¶ 26, 41-42];

e. Causing individuals to be held in the Sonoma County jail without a criminal basis for custody and based only on suspected civil immigration violations [¶¶ 28, 38];

f. Causing individuals to be held in custody on immigration detainers for more than 48 hours without a bond determination and before a decision is made whether to issue a Notice to Appear and absent any emergency or other extraordinary circumstance [¶¶ 27, 51-52];

g. Failing to bring individuals who were arrested without a warrant for a civil immigration violation before a non-arresting ICE agent or neutral magistrate without unreasonable delay or within 48 hours [¶¶ 27, 51-54]; and

h. Ordering prolonged local custody of individuals beyond when they would otherwise be released through issuance of immigration detainers without an adequate probable cause determination for the immigration detention within 48 hours of the initiation of the immigration detainer-based prolonged detention [¶¶ 27, 51-54].

152. Plaintiff Sanchez-Lopez seeks compensatory and punitive damages against Defendants Huelga and Merendino and unknown ROES in their personal capacities for violations of his right to be free from unreasonable searches and seizures according to proof, including but not limited to:

a. Detaining him without reasonable suspicion of criminal activity or that he or other occupants of the car in which he was a passenger were noncitizens present in the United States without authorization [¶¶ 75-78];

1         b.  Subjecting him to a pat-down search of his person and search of his wallet

2              without lawful justification [¶¶ 78, 89];

3         c.  Unreasonably arresting him or causing him to be arrested for suspected civil

4              immigration violations without a warrant and without reason to believe that he

5              was likely to escape before a warrant could be obtained for his arrest [¶¶ 81-

6              83, 85];

7         d.  Causing him to be held in custody of the County for approximately four days

8              without a criminal basis for custody and based only on suspected civil

9              immigration violations without authority under state or federal law [¶¶ 81,

10             86];

11        e.  Arresting him or causing him to be arrested and held in custody for more than

12             48 hours without a probable cause determination [¶¶ 27, 50-54, 86];

13        f.  Arresting him or causing him to be arrested without a warrant and held in

14             custody without an examination by a non-arresting ICE officer without

15             unreasonable delay [¶¶ 50-54, 86]; and

16        g.  Causing him to be held in custody for more than 48 hours without a bond

17             determination and before a decision was made whether to issue a Notice to

18             Appear and absent any emergency or other extraordinary circumstance [¶¶ 27,

19             50-54, 86].

20      153.    Plaintiff Sonato-Vega seeks compensatory and punitive damages against

21 Defendant Huelga and unknown ROES in their personal capacity for Sonato-Vega's violations of

22 his right to be free from unreasonable searches and seizures according to proof, including but not

23 limited to:

24         a.  Detaining him without reasonable suspicion of criminal activity or that he was

25             a noncitizen present in the United States without authorization [¶¶ 97-98];

26        b.  Subjecting him to a pat-down search of his person and search of his wallet

27             without lawful justification [¶¶ 98-99];

28

  c. Unreasonably arresting him or causing him to be arrested for suspected civil immigration violations without a warrant and without reason to believe that he was likely to escape before a warrant could be obtained for his arrest [¶¶ 97-101];

  d. Causing him to be held in custody of the County for approximately four days without a criminal basis for custody and based only on suspected civil immigration violations without authority under state or federal law [¶¶ 101, 106];

  e. Arresting him or causing him to be arrested and held in custody for more than 48 hours without a probable cause determination [¶¶ 27, 50-54, 104];

  f. Arresting him or causing him to be arrested without a warrant and held in custody without an examination by a non-arresting ICE officer without unreasonable delay [¶¶ 50-54, 104]; and

  g. Causing him to be held in custody for more than 48 hours without a bond determination and before a decision was made whether to issue a Notice to Appear and absent any emergency or other extraordinary circumstance [¶¶ 27, 50-54, 104].

154. Plaintiff Medel seeks compensatory and punitive damages against Defendants ROES in their personal capacities for violations of his right to be free from unreasonable searches and seizures according to proof, including but not limited to:

  a. Causing his prolonged detention in the Sonoma County jail for approximately four days after he otherwise would have been released through the issuance of an immigration detainer without a probable cause determination within 48 hours of the initiation of the prolonged immigration detainer-based detention [¶¶ 27, 50-54, 115-119].

155. Plaintiffs do not seek damages from Defendant ICE under this claim for relief.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FIFTH CLAIM FOR RELIEF**

**Fifth Amendment (*Bivens* and 5 U.S.C. § 702)**

**(Equal Protection)**

**All Plaintiffs Against Defendants ICE, Huelga, Merendino, and ROES 1-50**

156.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

157.    Plaintiff Committee, Sanchez-Lopez, and Medel seek declaratory and injunctive relief against Defendant ICE and Defendants Huelga, Merendino, and ROES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from discrimination on the basis of race, ethnicity, or national origin under the Fifth Amendment of the United States Constitution, including but not limited to:

        a.   Using race as a motivating factor to stop, detain, interrogate,  search and/or arrest persons who appear to be Latino [¶¶ 30-32, 75, 77-80, 92-94, 97-98];

        b.   Using race as a motivating factor to inaccurately designate individuals and gang members [¶¶ 48-49, 59-61, 84, 102-103, 113]; and

        c.   Using race, Spanish surname or national origin as motivating factors in determining whether to question and issue immigration detainers for persons in the custody of Sonoma County [¶¶ 48-49].

158.    Plaintiff Sanchez-Lopez seeks compensatory and punitive damages against Defendants Huelga and Merendino and unknown ROES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

        a.   Stopping the car in which he was a passenger based on the race of its occupants, including Sanchez-Lopez's [¶ 75];

        b.   Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 77-80];

c. Using his race as a motivating factor for his arrest and inaccurate designation as a gang member [¶¶ 81-84].

159. Plaintiff Sonato-Vega seeks compensatory and punitive damages against Defendant Huelga and unknown ROES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a. Using his race as a motivating factor to detain him [¶¶ 97-98];

b. Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 97-98, 100]; and

c. Using his race, Spanish surname, and/or perceived national origin as motivating factors for his arrest and inaccurate designation as a gang member [¶¶ 102-103].

160. Plaintiff Medel seeks compensatory and punitive damages against unknown Defendants ROES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a. Using his race as a motivating factor for his inaccurate designation as a gang member [¶ 113]; and

b. Using his race, Spanish surname, and/or perceived national origin as motivating factors in their decisions to subject him to interrogation and to issue an immigration detainer ordering his prolonged detention in the Sonoma County Jail [¶ 114-115].

161. Plaintiffs do not seek damages from ICE under this claim for relief.

///

**SIXTH CLAIM FOR RELIEF**

**Fifth Amendment, 8 U.S.C. § 1357, 8 C.F.R. § 287.3, 8 C.F.R. § 287.7**

**(*Bivens* and 5 U.S.C. § 702)**

**(Due Process)**

**All Plaintiffs Against Defendants ICE, Huelga, Merendino, and ROES 1-50**

162.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

163.    A federal agency's failure to follow its own governing statutes and regulations violates due process of law guaranteed by the Fifth Amendment of the United States Constitution.

164.    Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory relief against Defendant ICE and Defendants Huelga, Merendino, and ROES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to due process under the Fifth Amendment of the United States Constitution, including but not limited to:

    a.    Violating 8 U.S.C. § 1357 by making warrantless arrests without reason to believe that the person arrested is likely to escape before a warrant can be obtained [¶¶ 26, 41-43];

    b.    Violating the terms of 8 C.F.R. § 287.7 by issuing immigration detainers to Defendants County and Cogbill for persons not already in County custody pursuant to an independent criminal or other state law arrest [¶¶ 28, 33, 38, 40, 44-47];

    c.    Violating the terms of 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 and its authorizing statutes by failing to provide procedural protections required for persons arrested without a warrant for civil immigration violations [¶¶ 26-27, 50-58];

d. Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 due to persons who were arrested on criminal or other state law charges and whose County custody is prolonged as a result of an immigration detainer [¶¶ 27, 50-58]; and

e. Causing persons to be detained in County custody, or causing their detention to be prolonged, based on immigration detainers for four days without notice of the charges against them and an opportunity to respond [¶¶ 27, 50-58].

165. Plaintiff Sanchez-Lopez seeks compensatory and punitive damages against Defendant Merendino in his personal capacity and Plaintiffs Sanchez-Lopez and Sonato-Vega seek compensatory and punitive damages against Defendants Huelga and unknown ROES in their personal capacities for violations of their rights to due process under the Fifth Amendment of the United States Constitution including, but not limited to:

a. Arresting them or causing their arrest for civil immigration violations without a warrant and without reason to believe they are likely to escape before a warrant can be obtained [¶¶ 81-83 (Sanchez-Lopez); ¶¶ 97-100 (Sonato-Vega)];

b. Ordering them to be held in the custody of Defendants County and Cogbill through issuance of immigration detainers that violate 8 C.F.R. § 287.7 and 8 U.S.C. § 1357 [¶¶ 81-85 (Sanchez-Lopez); ¶¶ 100-01 (Sonato-Vega)];

c. Denying procedural protections due to them as civil immigration arrestees who were arrested without a warrant in violation of 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 [¶ 86 (Sanchez-Lopez); ¶ 104 (Sonato-Vega)]; and

d. Causing them to be held for four days in the Sonoma County jail without notice of the charges against them or an opportunity to respond [¶ 86 (Sanchez-Lopez); ¶ 104 (Sonata-Vega)].

166. Plaintiff Medel seeks damages against unknown ROES in their personal capacities for violations of their rights to due process under the Fifth Amendment of the United States Constitution including, but not limited to:

a.  Failing to provide procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 [¶¶ 117-118] and;

b.  Causing his detention in the Sonoma County jail to be prolonged for four days without notice of the charges against him or an opportunity to respond [¶¶ 117-118].

167.  Plaintiffs do not seek damages from ICE under this claim for relief.

**SEVENTH CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 2000d *et seq.* (Title VI)**

**All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

168.  Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

169.  Upon information and belief, Sonoma County and the Sonoma County Sheriff's Department and their programs or activities, including MAGNET, receive financial assistance and funding from the United States government.  As a recipient of federal financial assistance, Sonoma County, the Sonoma County Sheriff's Department, and their programs or activities are required to conduct their activities in a racially non-discriminatory manner pursuant to Title VI of the Civil Rights Act of 1964.

170.  Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from discrimination on the basis of race, ethnicity, or national origin including but not limited to:

a.  Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Latino [¶¶ 30-32, 34-35, 62-64, 68, 75, 77-80, 92-94, 97-98];

b.  Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status [¶¶ 30-32, 34-36, 62-64, 68, 77-80, 92-95, 97-98, 100];

c. Using race as a motivating factor in deciding to contact ICE agents to seek immigration detainers for individuals County Defendants encounter in the field and for whom they lack probable cause to arrest for criminal activity [¶¶ 37, 62-64, 68, 81];

d. Using race, Spanish surname, or national origin as motivating factors in classifying arrestees as gang members and for making decisions regarding placement in the jail [¶¶ 48-49, 59-65, 67-68, 84, 102-103, 113];

e. Using race, Spanish surname or national origin as motivating factors in interrogating inmates about their immigration status and recommending to ICE that certain inmates in the jail be considered as subjects of immigration detainers [¶¶ 48-49, 62-65, 67-68, 114-115].

171. Plaintiff Sanchez-Lopez seeks compensatory damages against Defendant Sonoma County for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a. Stopping the car in which he was a passenger based on the race of its occupants, including Sanchez-Lopez's [¶ 75];

b. Agreeing to, participating in, and/or acquiescing to the use of Francisco's race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 77-80];

c. Using his race as a motivating factor for his arrest, inaccurate designation as a gang member, and placement with other persons perceived to be Sureños in the County jail [¶¶ 81-84].

172. Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin according to proof, including but not limited to:

a. Using his race as a motivating factor to detain him [¶¶ 92-94, 97-98 100];

b. Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 92-94, 97-98, 100]; and

1    c.  Using his race, Spanish surname, and/or perceived national origin as

2        motivating factors for his arrest, inaccurate designation as a gang member,

3        and placement with other persons perceived to be Sureños in the County jail

4        [¶¶ 102-103].

5    173.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County

6    for violations of his right to be free from discrimination on the basis of race, ethnicity, or

7    national origin according to proof, including but not limited to:

8    a.  Using his race as a motivating factor for his inaccurate designation as a gang

9        member and placement with other persons perceived to be Sureños in the

10       County jail [¶ 113]; and

11   b.  Using his race, Spanish surname, and/or perceived national origin as

12       motivating factors in interrogating him about his immigration status and

13       deciding to refer him to ICE for consideration as the subject of an immigration

14       detainer [¶¶ 114-115].

15   174.   Plaintiffs do not seek damages against individual defendants in their personal

16   capacities under this claim.

17                              **EIGHTH CLAIM FOR RELIEF**

18                                    **5 U.S.C. § 706**

19                        **Plaintiffs Sanchez-Lopez, Medel and Committee**

20                   **Against Defendants ICE, Huelga, Merendino, and ROES 1-50**

21   175.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

22   though fully set forth here.

23   176.   A federal agency's failure to follow its own regulations can be enjoined under the

24   Administrative Procedure Act, 5 U.S.C. § 706 ("APA").

25   177.   Defendants ICE, Huelga, Merendino, and ROES 1-50 have, through the above-

26   described policies, practices and customs engaged in "agency actions" or "failures to act" that

27   should be enjoined under the APA.

28

178.    Issuance of immigration detainers for persons not already in custody of a local law enforcement agency exceeds the authority provided in 8 U.S.C. § 1357 and 8 C.F.R. § 287.7 and violates the terms of 8 C.F.R. § 287.7 and is therefore agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law;" "contrary to constitutional right, power, privilege, or immunity;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" and "without observance of procedure required by law." 5 U.S.C. § 706(2).

179.    Arresting individuals for civil immigration violations without a warrant and without making a flight risk determination as required by 8 U.S.C. § 1357 is agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law;" "contrary to constitutional right, power, privilege, or immunity;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" and "without observance of procedure required by law." 5 U.S.C. § 706(2).

180.    Failure to provide procedural protections required by 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 and its authorizing statutes for persons held in the Sonoma County jail on immigration detainers after being arrested without a warrant is agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law;" "contrary to constitutional right, power, privilege, or immunity;" "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;" and "without observance of procedure required by law." 5 U.S.C. § 706(2).

181.    Under the above-described polices, practices, and customs, the procedural protections required by 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 and its authorizing statutes due persons held in the Sonoma County jail on immigration detainers after being arrested without a warrant or whose prolonged detention for immigration violations is not supported by their original arrests, are "agency actions" "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

182.    Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory relief against Defendant ICE and Defendants Huelga, Merendino, and ROES 1-50 in their

1   official capacities, enjoining them from continuing to engage in the above-described policies,

2   practices and conduct that systematically violate statutory and regulatory requirements upon ICE

3   and its agents including but not limited to:

4          a.  Making warrantless arrests without reason to believe that the person arrested

5             is likely to escape before a warrant can be obtained [¶¶ 26, 41-42];

6          b.  Issuing immigration detainers to Defendants County and Cogbill for persons

7             not already in County custody  pursuant to an independent criminal or other

8             state law arrest [¶¶ 28, 33, 38, 40, 44-47];

9          c.  Failing to provide procedural protections required for persons arrested without

10            a warrant for civil immigration violations including but not limited to

11            examination by non-arresting ICE officer, notice of the reasons for the arrest,

12            the right to be represented by counsel at a hearing, a list of free available legal

13            services, notice that statements made can be used against them at a subsequent

14            hearing, and a bond determination within 48 hours of arrest [¶¶ 27, 50-58];

15            and

16         d.  Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3

17            due to persons who were arrested on criminal or other state law charges and

18            whose County custody is prolonged as a result of an immigration detainer [¶¶

19            27, 50-58].

20       183.   Plaintiffs do not seek damages under this claim.

21                      **NINTH CLAIM FOR RELIEF**

22            **42 U.S.C. § 1983, 42 U.S.C. § 1985(3) (Conspiracy)**

23                 **All Plaintiffs Against All Defendants**

24       184.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

25  though fully set forth here.

26       185.   Defendants County, Cogbill, Salkin, and DOES 1-50 conspired with Defendants

27  ICE, Huelga, Merendino, and ROES 1-50 by entering into a mutual understanding and

28  agreement and committing overt acts in furtherance of their agreement to violate Plaintiffs'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

constitutional and statutory rights, including their right to equal protection under law, in violation of 42 U.S.C. § 1985(3), according to proof, including and not limited to the following:

    a.  The establishment of a joint operation by Defendants County, Cogbill, DOES 1-50, ICE, and ROES 1-50 to target Latino immigrant gang members through the policy and practice of using race, ethnicity, or national origin as a motivating factor to initiate contact with and determine subsequent actions against individuals [¶¶ 30-33], subjecting individuals to unlawful searches and seizures [¶ 32, *see* Claims for Relief 1 and 4], and denying individuals substantive and procedural due process [*see* Claims for Relief 3 and 6].

    b.  The joint participation of Defendants Salkin, DOES 1-50, Huelga, Merendino, and ROES 1-50 on multiple occasions during which these individual Defendants engaged in the unlawful use of race, ethnicity, or national origin as a motivating factor to initiate contact with and determine subsequent actions against individuals [¶¶ 75, 97-100, 114-115], subjected individuals to unlawful searches and seizures [¶¶ 77-80, 98], and denied individuals substantive and procedural due process [*see* Claims for Relief 3 and 6].

    c.  The knowledge or witness of and the failure to prevent or stop the ongoing unlawful use of race, ethnicity, or national origin as a motivating factor to initiate contact with and determine subsequent actions against individuals [¶¶ 62-68, 75, 97-100, 114-115], unlawful searches and seizures [¶¶ 62-68, 77-80, 98], and the denial of substantive and procedural due process [*see* Claims for Relief 2-3, 5-6] by Defendants County, Cogbill, Salkin, DOES 1-50, ICE, Huelga, Merendino, and ROES 1-50.

186.    As a direct and proximate result of the aforementioned conspiracy between Defendants through individual actions and policies and practices, Plaintiffs Sanchez-Lopez, Sonato-Vega, and Medel have been deprived of their rights to be free from unreasonable and unlawful searches and seizures, to equal protection under the laws, and to substantive and

1   procedural due process rights, as secured by the Fourth, Fifth, and Fourteenth Amendments to

2   the United States Constitution.

3        187.     Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory

4   relief against Defendants County and ICE and against Defendants Cogbill, Salkin, DOES 1-50,

5   Huelga, Merendino, and ROES 1-50 in their official capacities, enjoining them from continuing

6   to engage in the above-described conspiracy to violate the constitutional and statutory rights of

7   Plaintiffs and Sonoma County residents.

8        188.     Plaintiff Sanchez-Lopez seeks compensatory damages against Defendant Sonoma

9   County and compensatory and punitive damages against Defendants Cogbill, Salkin, DOES 1-

10   50, Huelga, Merendino, and ROES 1-50 for conspiring to violate his constitutional and statutory

11   rights according to proof, including but not limited to:

12           a.   Agreeing to and intentionally subjecting Sanchez-Lopez to discriminatory

13               treatment on the basis of his race, ethnicity, or national origin [¶¶ 74-75, 80];

14           b.   Agreeing to and intentionally subjecting Sanchez-Lopez to unreasonable

15               searches and seizures [¶¶ 77-81];

16           c.   Agreeing to and intentionally denying Sanchez-Lopez substantive and

17               procedural due process [*see* Claims for Relief 2-3, 5-6].

18        189.     Plaintiff Sonata-Vega seeks compensatory damages against Defendant Sonoma

19   County and compensatory and punitive damages against Defendants Cogbill, Salkin, DOES 1-

20   50, Huelga, and ROES 1-50 for conspiring to violate his constitutional and statutory rights

21   according to proof, including but not limited to:

22           a.   Agreeing to and intentionally subjecting Sonato-Vega to discriminatory

23               treatment on the basis of his race, ethnicity, or national origin [¶¶ 92, 100-

24               102];

25           b.   Agreeing to and intentionally subjecting Sonato-Vega to unreasonable

26               searches and seizures [¶¶ 97-98, 100];

27           c.   Agreeing to and intentionally denying Sonato-Vega substantive and

28               procedural due process [*see* Claims for Relief 2-3, 5-6].

190.     Plaintiff Medel seeks compensatory damages against Defendant Sonoma County and compensatory and punitive damages against Defendants Cogbill, DOES 1-50, and ROES 1-50 for conspiring to violate his constitutional and statutory rights according to proof, including but not limited to:

    a.   Agreeing to and intentionally subjecting Medel to discriminatory treatment on the basis of his race, ethnicity, or national origin [¶¶ 113-115];

    b.   Agreeing to and intentionally subjecting Medel to unreasonable searches and seizures [¶¶ 116-120];

    c.   Agreeing to and intentionally denying Medel substantive and procedural due process [*see* Claims for Relief 2-3, 5-6].

## TENTH CLAIM FOR RELIEF

### California Constitution, Art. I, § 13

### (Unreasonable Search and Seizure)

**All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

191.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

192.     Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to be free from unreasonable searches and seizures under Article 1, § 13 of the California Constitution:

    a.   Stopping persons and vehicles without reasonable suspicion of criminal activity or traffic infraction [¶¶ 25, 30-32, 34-35, 62-64];

    b.   Making pretextual stops for traffic or other infractions for the purpose of detaining and questioning individuals regarding their immigration status [¶¶ 25, 30-32, 34-35, 62-64];

    c.   Unreasonably prolonging traffic and other stops beyond the time they would otherwise take in order to question individuals about matters unrelated to the

1        purported purpose of the stop or other criminal activity, specifically their

2        citizenship and immigration status [¶¶ 30-32, 36, 62-64];

3    d.  Conducting personal and vehicle searches without probable cause to believe

4        that that the areas searched contain evidence of criminal activity or without a

5        reasonable belief that the person searched or car's occupants are dangerous

6        and may gain  access to a weapon in the area searched [¶¶ 30-32, 34-36, 62-

7        64];

8    e.  Unreasonably arresting individuals without probable cause of criminal activity

9        and without authority to arrest for civil immigration violations [¶¶ 20-23, 25,

10       33, 37, 39, 43, 62-64, 66];

11   f.  Holding persons in the County jail without a criminal basis for custody and

12       based only on suspected civil immigration violations [¶¶ 24-25, 33, 39, 62-64,

13       66];

14   g.  Holding persons in custody for more than 48 hours without an independent

15       probable cause determination by a non-arresting ICE officer or neutral

16       magistrate [¶¶ 27, 50-54, 62-66, 68]; and

17   h.  Prolonging the local custody of individuals for more than 48 hours beyond

18       when they would otherwise be released, based on immigration detainers, and

19       without bringing them before a neutral magistrate for a probable cause

20       determination [¶¶ 27, 50-54, 62-68].

21   193.  Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma

22   County, and compensatory and punitive damages against Defendants Cogbill, Salkin and

23   unknown DOES in their personal capacities for violations of his right to be free from

24   unreasonable searches and seizures according to proof, including but not limited to:

25   a.  Detaining him without reasonable suspicion of criminal activity [¶¶ 97-98];

26   b.  Subjecting him to a pat-down searches of his person and his wallet without

27       lawful justification [¶¶ 98-99];

28

c.   Unreasonably arresting him without probable cause of criminal activity and without authority to arrest for civil immigration violations [¶¶ 97-100];

d.   Holding him in custody for approximately four days without authority under state or federal law [¶¶ 101, 106]; and

e.   Holding him in custody for more than 48 hours without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 27, 50-54, 104].

194.     Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill and unknown DOES in their personal capacities for violating his right to be free from unreasonable searches and seizures according to proof by holding him in custody for more than 48 hours after he would have been released from custody on his criminal arrest based on an immigration detainer and without an independent probable cause determination by a non-arresting ICE officer or neutral magistrate [¶¶ 27, 50-54, 112-19].

195.   Plaintiff Sanchez-Lopez does not seek damages under this claim.

## ELEVENTH CLAIM FOR RELIEF

### California Constitution, Art. I, § 7(a)

### (Equal Protection)

### All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50

196.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

197.   As Latinos, the individual Plaintiffs and many members of the Committee are members of a protected class.

198.   Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs and Sonoma County residents to equal protection under Article I, § 7(a) of the California Constitution, including but not limited to:

a.  Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Latino [¶¶ 30-32, 34-35, 62-64, 68, 75, 77-80, 92-94, 97-98];

b.  Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status [¶¶ 30-32, 34-36, 62-64, 68, 77-80, 92-95, 97-98, 100];

c.  Using race as a motivating factor in deciding to contact ICE agents to seek immigration detainers for individuals County Defendants encounter in the field and for whom they lack probable cause to arrest for criminal activity [¶¶ 37, 62-64, 68, 81];

d.  Using race, Spanish surname, or national origin as motivating factors in classifying arrestees as gang members and for making decisions regarding placement in the jail [¶¶ 48-49, 59-65, 67-68, 84, 102-103, 113];

e.  Using race, Spanish surname or national origin as motivating factors in questioning inmates about their immigration status and recommending to ICE that certain inmates in the jail be considered as subjects of immigration detainers [¶¶ 48-49, 62-65, 67-68, 114-115].

199.  Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin race according to proof, including but not limited to:

a.  Using his race as a motivating factor to detain him [¶¶ 97-98, 100];

b.  Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 97-98, 100]; and

c.  Using his race, Spanish surname, and/or perceived national origin as motivating factors for his arrest, inaccurate designation as a gang member,

1    and placement with other persons perceived to be Sureños in the County jail

2    [¶¶ 102-103].

3    200.    Plaintiff Medel seeks compensatory damages against Defendant Sonoma County,

4 and compensatory and punitive damages against unknown DOES in their personal capacities for

5 violations of his right to be free from discrimination on the basis of race, ethnicity, or national

6 origin race according to proof, including but not limited to:

7    a.   Using his race as a motivating factor for his inaccurate designation as a gang

8    member and placement with other persons perceived to be Sureños in the

9    County jail [¶ 113]; and

10    b.   Using his race, Spanish surname, and/or perceived national origin as

11    motivating factors in deciding to question Medel about his immigration status

12    and refer Medel to ICE for consideration as the subject of an immigration

13    detainer [¶¶ 114-115].

14    201.    Plaintiff Sanchez-Lopez does not seek damages under this claim.

15 **TWELFTH CLAIM FOR RELIEF**

16 **California Constitution Art. I, § 7(a)**

17 **(Due Process)**

18 **All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

19    202.    Plaintiffs incorporate by reference the allegations in the paragraphs above as

20 though fully set forth here.

21    203.    Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory

22 relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official

23 capacities, enjoining them from continuing to engage the above-described policies, practices and

24 conduct of County Defendants violating the rights of Plaintiffs and Sonoma County residents to

25 due process under Article I, § 7(a) of the California, including but not limited to:

26    a.   Arresting and detaining individuals without probable cause of criminal

27    activity and for civil immigration violations without any lawful authority, in

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    violation of the arrestees' rights to substantive due process [¶¶ 20-23, 25, 33,

2    37, 39, 43, 62-64, 66];

3    b.   Aiding and abetting ICE and its agents in denying procedural protections due

4    civil immigration arrestees who are arrested without a warrant [¶¶ 38-39, 41-

5    43, 66];

6    c.   Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3

7    due to persons who were arrested on criminal or other state law charges and

8    whose County custody is prolonged as a result of an immigration detainer [¶¶

9    50-58, 67]; and

10   d.   Failing to provide persons held in the Sonoma County jail on suspected civil

11   immigration violations notice of the charges against them, information

12   regarding the possible consequences of their arrests, and an opportunity to be

13   heard within a reasonable period after their arrests or the initiation of

14   immigration detainer-based detentions [¶¶ 27, 50-58, 65, 67].

15   204.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma

16   County, and compensatory and punitive damages against Defendants Cogbill, Salkin, and

17   unknown DOES in their personal capacities for violations of his right to due process under the

18   California Constitution including, but not limited to:

19   a.   Arresting and holding him in custody for four days without lawful authority

20   [¶¶ 101, 106];

21   b.   Aiding and abetting ICE and its agents in denying procedural protections due

22   to him as a civil immigration arrestee who was arrested without a warrant [¶

23   104]; and

24   c.   Failing to provide him with notice of the charges against him, information

25   regarding the possible consequences of his arrest, or an opportunity to be

26   heard within a reasonable time after his arrest [¶ 104].

27   205.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County,

28   and compensatory and punitive damages against Defendants Cogbill and unknown DOES in

their personal capacities for violations of his right to due process under the California Constitution including, but not limited to:

    a.  Aiding and abetting ICE and its agents in denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 due to him [¶¶ 117-118]; and

    b.  Failing to provide him with notice of the charges against him, information regarding the possible consequences of his immigration detainer, or an opportunity to be heard within a reasonable time after the beginning of his prolonged detention pursuant to immigration detainer [¶¶ 117-118].

206.    Plaintiff Sanchez-Lopez does not seek damages under this claim.

## THIRTEENTH CLAIM FOR RELIEF

### Violation of Bane Act, California Civil Code § 52.1

### All Plaintiffs Against Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50

207.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

208.    Plaintiffs Committee, Sanchez-Lopez, and Medel seek injunctive and declaratory relief pursuant to California Civil Code § 52.1 against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage the above-described policies, practices and conduct interfering with the exercise and enjoyment of the rights of Plaintiffs and other Sonoma County residents under the U.S. and California Constitutions, according to proof and including but not limited to:

    a.  Subjecting individuals to stops, detention, interrogation, and arrest for suspected civil immigration violations without reasonable suspicion or probable cause of criminal activity and without lawful authority [¶¶ 20-23, 25, 30-37, 39, 43, 62-64, 66]; and

    b.  Prolonging the local custody of individuals for more than 48 hours beyond when they would otherwise be released, based on immigration detainers, and without a probable cause determination or notice of the charges against them and an opportunity to respond [¶¶ 27, 50-58].

1    209.    Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma

2  County and compensatory, statutory, and treble damages against Defendants Cogbill, Salkin, and

3  unknown DOES in their personal capacities for violations of the Bane Act, according to proof

4  and including but not limited to:

        a.    Subjecting him to unreasonable searches and seizures without reasonable

            suspicion of criminal activity or that he posed a threat of safety [¶¶ 97-100];

        b.    Arresting and holding him in custody for four days without lawful authority

            [¶¶ 101, 106];

        c.    Failing to bring him before a magistrate or non-arresting ICE officer within 48

            hours of his arrest for a probable cause determination [¶¶ 104-106]; and

        d.    Failing to provide him with notice of the charges against him, information

            about what consequences would follow from his arrest, or an opportunity to

            be heard within a reasonable time after his arrest [¶¶ 104-106].

14    210.    Plaintiff Medel seeks compensatory damages against Defendant Sonoma County,

15  and compensatory, statutory, and treble damages against Defendants Cogbill and unknown

16  DOES in their personal capacities for violations of the Bane Act, according to proof and

17  including but not limited to:

        a.    Failing to bring him before a magistrate or non-arresting ICE officer within 48

            hours of the beginning of his prolonged detention based on an immigration

            detainer [¶¶ 115-118]; and

        b.    Failing to provide him with notice of the charges against him, information

            about what consequences would follow from his immigration detainer, or an

            opportunity to be heard within a reasonable time after the beginning of his

            prolonged detention pursuant to immigration detainer [¶¶ 115-118].

25    211.    Plaintiff Sanchez-Lopez does not seek damages under this claim.

26  ///

# FOURTEENTH CLAIM FOR RELIEF

## California Government Code § 11135 and Its Implementing Regulations

### All Plaintiffs Against Defendant Sonoma County

212.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

213.    California Government Code § 11135 provides, in relevant part: "No person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

214.    California Code of Regulations §§ 98101(i)(1) and (2) prohibit recipients of state funding from utilizing criteria or methods of administration which have the effect of discriminating against protected groups.

215.    Upon information and belief, Defendant Sonoma County and the Sonoma County Sheriff's Department receive financial assistance from the State of California, thus subjecting it to the prohibitions of Cal. Gov't Code § 11135 and its implementing regulations.

216.    Plaintiffs are informed and believe and thereon allege that the policies, practices, and customs Defendants County and Cogbill have adopted in furtherance of their collaboration with ICE to target immigrant gang members, including but not limited to their use of immigration detainers to initiate and prolong custody in the County jail, have a disparate impact on Latinos in Sonoma County.

217.    Plaintiffs Committee, Sanchez-Lopez and Medel seek injunctive and declaratory relief against the County and against Defendants Cogbill, Salkin, and DOES 1-50 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct in violation of Cal. Gov't Code § 11135 and its implementing regulations, including but not limited to:

a. Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Latino [¶¶ 30-32, 34-35, 62-64, 68, 75, 77-80, 92-94, 97-98];

b. Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status [¶¶30-32, 34-36, 62-64, 68, 77-80, 92-95, 97-98, 100];

c. Using race as a motivating factor in deciding to contact ICE agents to seek immigration detainers for individuals County Defendants encounter in the field and for whom they lack probable cause to arrest for criminal activity [¶¶ 37, 62-64, 68, 81];

d. Using race, Spanish surname, or national origin as motivating factors in classifying arrestees as gang members and for making decisions regarding placement in the jail [¶¶ 48-49, 59-65, 67-68, 84, 102-103, 113];

e. Using race, Spanish surname or national origin as motivating factors in questioning inmates about their immigration status and recommending to ICE that certain inmates in the jail be considered as subjects of immigration detainers [¶¶ 48-49, 62-65, 67-68, 114-115]; and

f. Adopting and implementing policies, practices, and customs that have a disparate impact on Latino residents of Sonoma County on account of their race, ethnicity, or national origin [¶¶ 30-31, 62, 72].

218. Plaintiff Sonato-Vega seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for violations of his rights under Cal. Gov't Code § 11135 and its implementing regulations according to proof, including but not limited to:

a. Using his race as a motivating factor to detain him [¶¶ 97-98 100];

b. Using his race as a motivating factor for his prolonged detention, search and interrogation [¶¶ 97-98 100]; and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SECOND AMENDED COMPLAINT
CASE NO. 08-4220-PJH

c.   Using his race, Spanish surname, and/or perceived national origin as motivating factors for his arrest, inaccurate designation as a gang member, and placement with other persons perceived to be Sureños in the County jail [¶¶ 102-103]; and

d.   Application of policies, practices, and customs that had a disparate impact on him on account of his race, ethnicity, or national origin.

219.   Plaintiff Medel seeks compensatory damages against Defendant Sonoma County, and compensatory and punitive damages against unknown DOES in their personal capacities for violations of his right to be free from discrimination on the basis of race, ethnicity, or national origin race according to proof, including but not limited to:

a.   Using his race as a motivating factor for his inaccurate designation as a gang member and placement with other persons perceived to be Sureños in the County jail [¶ 113]; and

b.   Using his race, Spanish surname, and/or perceived national origin as motivating factors in deciding to question Medel about his immigration status and refer him to ICE for consideration as the subject of an immigration detainer [¶¶ 114-115]; and

c.   Application of policies, practices, and customs that had a disparate impact on him on account of his race, ethnicity, or national origin.

220.   Plaintiff Sanchez-Lopez does not seek damages under this claim.

**FIFTEENTH CLAIM FOR RELIEF**

**False Imprisonment (Cal Gov't Code § 815.2)**

**Plaintiffs Sonato-Vega and Medel Against**

**Defendants Sonoma County, Cogbill, Salkin, and DOES 1-50**

221.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

222.   Pursuant to California Government Code § 815.2, a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the

1   scope of his employment.  All of the conduct alleged in this Second Amended Complaint by

2   employees of Sonoma County, including Defendants Cogbill, Salkin, and DOES 1-50, was

3   undertaken in the course and scope of their employment.

4      223.   Plaintiff Sonato-Vega seeks compensatory damages against Defendant County

5   and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES

6   in their personal capacities for inflicting personal injury on him by subjecting him to false arrest

7   and imprisonment according to proof by acts including but not limited to:

8           a.   Detaining him without reasonable suspicion of criminal activity [¶¶ 92-96];

9           b.   Unreasonably arresting him without probable cause of criminal activity and

10              without authority to arrest for civil immigration violations [¶¶ 97-100]; and

11          c.   Holding him in custody for approximately four days without authority under

12              state or federal law [¶¶ 100, 105];

13          d.   Holding him in custody for more than 48 hours without an independent

14              probable cause determination by a non-arresting ICE officer or neutral

15              magistrate [¶¶ 100, 104, 105].

16     224.   Plaintiff Medel seeks compensatory damages against Defendant County and

17  compensatory and punitive damages against Defendants Cogbill and unknown DOES in their

18  personal capacities for subjecting him to false imprisonment according to proof by holding him

19  in custody for more than 48 hours after he would have been released from custody on his

20  criminal arrest based on an immigration detainer and without an independent probable cause

21  determination by a non-arresting ICE officer or neutral magistrate [¶¶ 116-119].

22              **SIXTEENTH CLAIM FOR RELIEF**

23     **Intentional Infliction of Emotional Distress (Cal Gov't Code § 815.2)**

24              **Plaintiffs Sonato-Vega and Medel Against**

25          **Defendants Sonoma County, Cogbill, Salkin, and Does 1-50**

26     225.   Plaintiffs incorporate by reference the allegations in the paragraphs above, as

27  though fully set forth here.

28

226.     Plaintiff Sonato-Vega seeks compensatory damages against Defendant County and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for actually causing and/or proximately causing Sonato-Vega to suffer severe emotional distress by subjecting him to extreme and outrageous conduct with the intent to cause, or alternatively a reckless disregard of the probability of causing, emotional distress according to proof by acts, including but not limited to:

       a.   Using his race and/or perceived national origin as a motivating factor to detain, question, search, and arrest him and in inaccurately designating him as a criminal gang member [¶¶ 92-96, 97-100, 102-103];

       b.   Unreasonable searches and seizures [¶¶ 93-95, 98-99];

       c.   Deprivations of substantive and procedural due process protections, such as holding him in custody for approximately four days without lawful authority and without notice of the charges against him, the possible consequences of his detention, and an opportunity to respond [¶¶ 100, 104-105]; and

       d.   Humiliating and abusive treatment [¶¶ 99, 105, 107];

227.     Plaintiff Medel seeks compensatory damages against Defendant County and compensatory and punitive damages against Defendants Cogbill, Salkin and unknown DOES in their personal capacities for actually causing and/or proximately causing Medel to suffer severe emotional distress by subjecting him to extreme and outrageous conduct with the intent to cause, or alternatively a reckless disregard of the probability of causing, emotional distress according to proof by acts, including, but not limited to:

       a.   Subjecting him to discriminatory treatment, such as the use of his race, Spanish surname, and/or perceived national origin to inaccurately designate him as a gang member and detain him with other inmates perceived to be Sureños [¶¶ 113-115]; and

       b.   Prolonging his detention for four days based on an immigration detainer without a probable cause determination and without notice of the charges

1  against him, information regarding the possible consequences of his prolonged

2  detention, and an opportunity to respond [¶¶ 116-119].

### SEVENTEENTH CLAIM FOR RELIEF

**Negligence (Cal Gov't Code § 815.2)**

**Plaintiffs Sonato-Vega and Medel Against**

**Defendants Sonoma County, Cogbill, Salkin, and Does 1-50**

7  228.    Plaintiffs incorporate by reference the allegations in the paragraphs above, as

8  though fully set forth here.

9  229.    Defendants Cogbill, Salkin and DOES 1-50 have a duty to act with reasonable

10  care and not subject persons to personal injury in the course of their law enforcement duties and

11  the legal duties not to subject them to discriminatory treatment on the basis of his race, ethnicity,

12  or perceived national origin; unreasonable searches and seizures; deprivations of liberty without

13  due process; to adequately train and supervise employees; and to adopt and enforce policies so as

14  to prevent the occurrence of constitutional violations and tortious actions.

15  230.    Plaintiff Sonato-Vega seeks compensatory and punitive damages against

16  Defendants Cogbill, Salkin and unknown DOES in their personal capacities for severe emotional

17  distress he suffered as a result of their breaches of their above-described duties to him according

18  to proof including but not limited to:

19  a.   Using his race and/or perceived national origin as a motivating factor

20  to detain, question, search, and arrest him and in inaccurately

21  designating him as a criminal gang member [¶¶ 92-96, 97-100, 102-

22  103];

23  b.   Unreasonable searches and seizures [¶¶ 94-95, 98];

24  c.   Deprivations of substantive and procedural due process protections,

25  such as holding him in custody for approximately four days without

26  lawful authority and without notice of the charges against him, the

27  possible consequences of his detention, and an opportunity to respond

28  [¶¶ 10, 104-105]; and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

62

1          d.   Humiliating and abusive treatment [¶¶ 99, 105, 107].

2          231.   Plaintiff Medel seeks compensatory and punitive damages against Defendants

3    Cogbill and unknown DOES in their personal capacities for severe emotional distress he suffered

4    as a result of their breaches of their above-described duties to him according to proof including

5    but not limited to:

6                 a.   Subjecting him to discriminatory treatment, such as the use of his race,

7                      Spanish surname, and/or perceived national origin to inaccurately

8                      designate him as a gang member and detain him with other inmates

9                      perceived to be Sureños [¶¶ 113-115]; and

10                b.   Prolonging his detention for four days based on an immigration

11                     detainer without a probable cause determination and without notice of

12                     the charges against him, information regarding the possible

13                     consequences of his prolonged detention, and an opportunity to

14                     respond [¶¶ 116-119].

15                      **EIGHTEENTH CLAIM FOR RELIEF**

16          **False Imprisonment (Federal Tort Claims Act, 28 U.S.C. § 1346)**

17               **Plaintiffs Sanchez-Lopez, Sonato-Vega and Medel**

18                    **Against Defendant United States of America**

19          232.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

20   though fully set forth here.

21          233.   The United States is liable for torts committed by federal employees acting within

22   the course and scope of employment.  28 U.S.C. § 1346(b).

23          234.   Plaintiff Sanchez-Lopez seeks compensatory damages against the United States

24   for the actions of its agents, Defendants Huelga and Merendino and unknown ROES, that

25   inflicted personal injury on him by subjecting him to false arrest and imprisonment according to

26   proof by acts taken in the course and scope of employment including but not limited to:

27

28

a. Detaining him without reasonable suspicion of criminal activity or that he or other occupants of the car in which he was a passenger were noncitizens present in the United States without authorization [¶¶ 74-80];

b. Unreasonably arresting him or causing him to be arrested for suspected civil immigration violations without a warrant and without reason to believe that he was likely to escape before a warrant could be obtained for his arrest [¶¶ 81-83];

c. Causing him to be held in custody of the County for approximately four days without a criminal basis for custody and based only on suspected civil immigration violations without authority under state or federal law [¶¶ 86-87];

d. Arresting him or causing him to be arrested and held in custody for more than 48 hours without a probable cause determination [¶¶ 81, 82, 86];

e. Arresting him or causing him to be arrested without a warrant and held in custody without an examination by a non-arresting ICE officer without unreasonable delay [¶¶ 81, 82, 86]; and

f. Causing him to be held in custody for more than 48 hours without a bond determination and before a decision was made whether to issue a Notice to Appear and absent any emergency or other extraordinary circumstance [¶¶ 86].

235.    Sonato-Vega seeks compensatory damages against the United States for the actions of its agents, Defendants Huelga and unknown ROES, that inflicted personal injury on him by subjecting him to false arrest and imprisonment according to proof by acts taken in the course and scope of employment including but not limited to:

a. Detaining him without reasonable suspicion of criminal activity or that he was a noncitizen present in the United States without authorization [¶¶ 92-96];

b. Unreasonably arresting him or causing him to be arrested for suspected civil immigration violations without a warrant and without reason to believe that he

1   was likely to escape before a warrant could be obtained for his arrest [¶¶ 97-

2   100];

3   c.   Causing him to be held in custody of the County for approximately four days

4   without a criminal basis for custody and based only on suspected civil

5   immigration violations without authority under state or federal law [¶¶ 100,

6   104-105];

7   d.   Arresting him or causing him to be arrested and held in custody for more than

8   48 hours without a probable cause determination [¶¶ 100, 101, 105];

9   e.   Arresting him or causing him to be arrested without a warrant and held in

10   custody without an examination by a non-arresting ICE officer without

11   unreasonable delay [¶¶ 100, 101, 104, 105, 106]; and

12   f.   Causing him to be held in custody for more than 48 hours without a bond

13   determination and before a decision was made whether to issue a Notice to

14   Appear and absent any emergency or other extraordinary circumstance [¶¶

15   104, 108].

16   236.   Plaintiff Medel seeks compensatory damages against the United States for the

17   actions of its agents, unknown ROE Defendants, taken in the course and scope of employment

18   that inflicted personal injury on him by subjecting him to false arrest and imprisonment

19   according to proof by acts including but not limited to holding him in custody for more than 48

20   hours after he would have been released from custody on his criminal arrest based on an

21   immigration detainer and without an independent probable cause determination by a non-

22   arresting ICE officer or neutral magistrate [¶¶ 116-119].

23   **NINETEENTH CLAIM FOR RELIEF**

24   **Intentional Infliction of Emotional Distress (Federal Tort Claims Act, 28 U.S.C. § 1346)**

25   **Plaintiffs Sanchez-Lopez and Sonato-Vega**

26   **Against Defendant United States of America**

27   237.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

28   though fully set forth here.

238.     Plaintiff Sanchez-Lopez seeks compensatory damages against the United States for the actions of its agents, Defendants Huelga, Merendino, and unknown ROES, for actually causing and/or proximately causing Sanchez-Lopez to suffer severe emotional distress by subjecting him to extreme and outrageous conduct with the intent to cause, or alternatively a reckless disregard of the probability of causing, emotional distress according to proof by acts taken in the course and scope of employment, including but not limited to:

 a. Using his race and/or perceived national origin as a motivating factor to detain, question, search, and arrest him and in inaccurately designating him as a criminal gang member [¶¶ 75, 77, 78, 80-82, 84];

 b. Unreasonable searches and seizures [¶¶ 77, 78. 81];

 c. Deprivations of substantive and procedural due process protections, such as causing him to be held in custody for approximately four days without lawful authority and without notice of the charges against him, the possible consequences of his detention, and an opportunity to respond [¶¶ 86]; and

 d. Humiliating and abusive treatment [¶¶ 77, 82, 84, 87];

239.     Sonato-Vega seeks compensatory damages against the United States for the actions of its agents, Defendants Huelga and unknown ROES, for actually causing and/or proximately causing Sonato-Vega to suffer severe emotional distress by subjecting him to extreme and outrageous conduct with the intent to cause, or alternatively a reckless disregard of the probability of causing, emotional distress according to proof by acts taken in the course and scope of employment, including but not limited to:

 a. Using his race and/or perceived national origin as a motivating factor to detain, question, search, and arrest him and in inaccurately designating him as a criminal gang member [¶¶ 97-100, 102-103];

 b. Unreasonable searches and seizures [¶¶ 98-99];

 c. Deprivations of substantive and procedural due process protections, such as holding him in custody for approximately four days without lawful authority and without notice of the charges against him, the possible consequences of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   his detention, and an opportunity to respond [¶¶ 100, 104-105]; and

2       d.  Humiliating and abusive treatment [¶¶ 99, 105, 107];

3   **TWENTIETH CLAIM FOR RELIEF**

4   **Negligence (Federal Tort Claims Act, 28 U.S.C. § 1346)**

5   **Plaintiffs Sanchez-Lopez, Sonato-Vega and Medel**

6   **Against Defendant United States of America**

7   240.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

8   though fully set forth here.

9   241.   ICE agents have a duty to act with reasonable care and not subject persons to

10   personal injury in the course of their law enforcement duties.  ICE agents have legal duties not to

11   subject people to discriminatory treatment on the basis of race, ethnicity, or perceived national

12   origin; unreasonable searches and seizures; deprivations of liberty without due process; to

13   adequately train and supervise employees; and to prevent the occurrence of constitutional

14   violations and tortious actions.

15   242.   Plaintiff Sanchez-Lopez seeks compensatory damages against the United States

16   for severe emotional distress he suffered as a result of the breaches of ICE agents' above-

17   described duties to him in the course and scope of employment according to proof including but

18   not limited to:

19       a.  Using his race and/or perceived national origin as a motivating factor to

20           detain, question, search, and arrest him and in inaccurately designating him as

21           a criminal gang member [¶¶ 75, 77, 78, 80-82, 84];

22       b.  Unreasonable searches and seizures [¶¶ 77, 78, 81];

23       c.  Deprivations of substantive and procedural due process protections, such as

24           causing him to be held in custody for approximately four days without lawful

25           authority and without notice of the charges against him, the possible

26           consequences of his detention, and an opportunity to respond [¶¶ 86]; and

27       d.  Humiliating and abusive treatment [¶¶ 77, 82, 84, 87];

28

243.     Plaintiff Sonato-Vega seeks compensatory damages against the United States for severe emotional distress he suffered as a result of the breaches of ICE agents' above-described duties to him in the course and scope of employment according to proof including but not limited to:

       a.   Using his race and/or perceived national origin as a motivating factor to detain, question, search, and arrest him and in inaccurately designating him as a criminal gang member [¶¶ 97-100, 102, 103];

       b.   Unreasonable searches and seizures [¶¶ 98, 99];

       c.   Deprivations of substantive and procedural due process protections, such as holding him in custody for approximately four days without lawful authority and without notice of the charges against him, the possible consequences of his detention, and an opportunity to respond [¶¶ 100, 104, 105]; and

       d.   Humiliating and abusive treatment [¶¶ 99, 105, 107].

244.     Plaintiff Medel seeks compensatory damages against the United States for severe emotional distress he suffered as a result of the breaches of ICE agents' above-described duties to him in the course and scope of employment according to proof including but not limited to:

       a.   Knowingly participating in a system of collaboration with Sonoma County Sheriff employees through which race, Spanish surname and/or perceived national origin were motivating factors for questioning by such County employees regarding immigration status and/or decisions to refer persons to ICE for consideration as the subjects of immigration detainers;

       b.   Causing his detention to be prolonged for four days by issuing a immigration detainer without a probable cause determination and without notice of the charges against him, information regarding the possible consequences of his prolonged detention, and an opportunity to respond [¶¶ 116-119].

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

SECOND AMENDED COMPLAINT
CASE NO. 08-4220-PJH

**TWENTY-FIRST CLAIM FOR RELIEF**

**Deprivation of Civil Rights Through Intimidation, Threats and Coercion**

**(Federal Tort Claims Act; Cal. Civ. Code § 52.1)**

**Plaintiffs Sanchez-Lopez, Sonato-Vega and Medel**

**Against Defendant United States of America**

245.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

246.   The United States is liable for acts committed by its agents in the scope and course of their employment for which private persons would be liable for damages under state law.  California Civil Code § 52.1 creates a private right of action against private individuals for interfering with the exercise and enjoyment of rights under both the U.S. and California Constitutions.

247.   Plaintiff Sanchez-Lopez seeks compensatory damages against the United States for violations of the Bane Act committed by Defendants Huelga and Merendino and unknown ROES in the scope and course of their employment, according to proof including but not limited to:

  a.  Subjecting him to unreasonable searches and seizures without reasonable suspicion of criminal activity or that he posed a threat of safety [¶¶ 77-80];

  b.  Arresting and holding him in custody for four days without lawful authority [¶¶ 82-86];

  c.  Failing to bring him before a magistrate or non-arresting ICE officer within 48 hours of his arrest for a probable cause determination [¶¶ 86-87]; and

  d.  Failing to provide him with notice of the charges against him, information about what consequences would follow from his arrest, or an opportunity to be heard within a reasonable time after his arrest [¶¶ 86-87].

248.   Plaintiff Sonato-Vega seeks compensatory damages against the United States for violations of the Bane Act committed by Defendant Huelga and unknown ROES in the course and scope of their employment, according to proof including but not limited to:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1          a.   Subjecting him to unreasonable searches and seizures without reasonable

2              suspicion of criminal activity or that he posed a threat of safety [¶¶ 97-100];

3          b.   Arresting and holding him in custody for four days without lawful authority

4              [¶¶ 101, 106];

5          c.   Failing to bring him before a magistrate or non-arresting ICE officer within 48

6              hours of his arrest for a probable cause determination [¶¶ 104-106]; and

7          d.   Failing to provide him with notice of the charges against him, information

8              about what consequences would follow from his arrest, or an opportunity to

9              be heard within a reasonable time after his arrest [¶¶ 104-106].

10      249.   Plaintiff Medel seeks compensatory damages against the United States for

11  violations of the Bane Act committed by unknown ROES in the course and scope of their

12  employment, according to proof including but not limited to:

13          a.   Causing his custody in the Sonoma County jail to be prolonged for four days

14              without a probable cause determination on the basis for his prolonged

15              detention within 48 hours after the beginning of his prolonged detention

16              pursuant to immigration detainer; [¶¶ 115-118]; and

17          b.   Causing his custody in the Sonoma County jail to be prolonged for four days

18              without notice of the charges against him, information about what

19              consequences would follow from his immigration detainer, or an opportunity

20              to be heard within a reasonable time after the beginning of his prolonged

21              detention pursuant to immigration detainer [¶¶ 115-118].

22                    **TWENTY-SECOND CLAIM FOR RELIEF**

23                    **Assault and Battery (Federal Tort Claims Act)**

24                    **Plaintiffs Sanchez-Lopez and Sonato-Vega**

25                    **Against Defendant United States of America**

26      250.   Plaintiffs incorporate by reference the allegations in the paragraphs above as

27  though fully set forth here.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

251.     Plaintiff Sanchez-Lopez seeks compensatory damages against the United States for the actions of its agents, Defendants Huelga and Merendino, who intended to and did cause offensive and unlawful physical contact with Sanchez-Lopez in the course and scope of employment [¶¶ 78, 80, 81].

252.     Plaintiff Sonato-Vega seeks compensatory damages against the United States for the actions of its agent, Defendant Huelga, who intended to and did cause offensive and unlawful physical contact with Sonato-Vega in the course and scope of employment [¶¶ 98, 99].

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

1.  Issue preliminary and permanent injunctions against the County Defendants and any of their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, prohibiting them from:

    a.  Detaining persons or vehicles without reasonable suspicion of criminal activity; prolonging traffic or other stops for the purpose of questioning individuals about their immigration status; conducting personal or vehicle searches without probable cause to believe that the areas searched contain evidence of criminal activity or a reasonable belief that the car's occupants are dangerous or may gain access to a weapon in the area searched; arresting or taking custody of individuals based on suspected civil immigration violations or based on an immigration detainer issued by ICE or its agents; or prolonging the custody of individuals in the County jail for more than 48 hours based on an immigration detainer without a probable cause determination;

    b.  Using a person's Latino race or appearance, Spanish surname, or national origin as a factor to initiate a traffic or other stop, prolong a detention, question about matters not related to the purpose of the detention such as immigration status, engage in a search of a person or person's property or car, designate or classify someone as a gang member or make decisions

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      about his placement in the County jail, or refer a person or inmate to ICE

2      for consideration as a subject of an immigration detainer; and

3          c.   Denying procedural protections under 8 U.S.C. § 1357 and 8 C.F.R. §

4      287.3 due to persons who were arrested on criminal or other state law

5      charges and whose County custody is prolonged as a result of an

6      immigration detainer and; detaining or prolonging the detention of

7      individuals in custody of the County pursuant to immigration violations

8      without notice of the charges against them and an opportunity to respond

9      within a reasonable time after the initiation of the immigration detainer-

10      based detention.

11     2.   Issue preliminary and permanent injunctions against Defendants Huelga,

12      Merendino, and ROES 1-50 in their official capacities, ICE and any of their

13      officers, agents, successors, employees, representatives and any and all persons

14      acting in concert with them, prohibiting them from:

15          a.   Directing local law enforcement agencies to make arrests for civil

16      immigration violations without a warrant;

17          b.   Issuing immigration detainers ordering local law enforcement agencies to

18      arrest or take custody of persons who are not already in local custody on

19      independent criminal or other state law grounds;

20          c.   Making warrantless arrests without reason to believe that the person

21      arrested is a noncitizen in the United States without authorization

22          d.   Making warrantless arrests without reason to believe that the person is

23      likely to escape before a warrant can be obtained;

24          e.   Failing to provide procedural protections required by 8 U.S.C. § 1357 and

25      8 C.F.R. § 287.3 to persons in local custody pursuant to an immigration

26      detainer;

27          f.   Stopping and searching persons and vehicles without reasonable suspicion

28      of criminal activity or of their being noncitizens present in the United

States without authorization, or without probable cause to believe that that the areas searched contain evidence of criminal activity or a reasonable belief that the person searched or car's occupants are dangerous and may gain access to a weapon in the area searched; and

    g.  Using a person's Latino race or appearance, Spanish surname, or national origin as a factor to initiate contact for purposes of immigration enforcement or in considering whether to issue an immigration detainer.

3.  Issue a judicial declaration that Defendants' actions as alleged in this Complaint violate the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution; 42 U.S.C. § 1983; 42 U.S.C. § 2000d; 42 U.S.C. § 1985(3), Article I, Sections 7, 13, and 15 of the California Constitution; California Civil Code § 52.1; and California Government Code § 11135 and its implementing regulations.

4.  Declare that Defendant ICE's use of 8 C.F.R. § 287.7 to initiate County custody of individuals violates 8 U.S.C. §1357 and 8 C.F.R. § 287.7 and therefore also violates due process under the Fifth Amendment to the United States Constitution.

5.  Declare that Defendants Sonoma County and Cogbill are not authorized to arrest or take custody of individuals based on alleged civil immigration violations and that doing so violates the arrestees' rights to substantive due process.

6.  Award Plaintiffs nominal, compensatory, special, statutory, and punitive damages under 42 U.S.C. § 1983, 42 U.S.C. § 2000d, California Civil Code § 52.1, California Government Code § 11135, 28 U.S.C. § 1346(b) and the California torts of false imprisonment, intentional infliction of emotional distress and negligence, except that no damages are sought against ICE and no punitive damages are sought against the County.

7.  Award pre-judgment and post-judgment interest to the extent permitted by law.

8.  Award Plaintiffs their costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988 and the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412.

9.   Award such further and additional relief as is just and proper.

**DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), and Northern District Local Rule 3-6(a), plaintiffs hereby demand a jury trial on all issues triable by a jury.

Dated:  September 14, 2009

By /s/ Alfred C. Pfeiffer
  Alfred C. Pfeiffer, Jr.

  LATHAM & WATKINS LLP
  Alfred C. Pfeiffer
  Melissa N. Chan
  Mary Elizabeth Heard
  Jason L. Daniels
  Casey R. O'Connor


By /s/ Julia Harumi Mass
  Julia Harumi Mass

  Julia Harumi Mass
  Alan L. Schlosser
  Andre I. Segura
   AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION OF
   NORTHERN CALIFORNIA

  Attorneys for Plaintiffs