1   JOSEPH P. RUSSONIELLO (CABN 44332)
    United States Attorney
2   ILA C. DEISS (NYSBN 3052909)
    Assistant United States Attorney
3   450 Golden Gate Avenue, Box 36055
    San Francisco, CA 94102-3495
4   Tel:  (415) 436-7124
    Fax: (415) 436-7169
5   E-mail: ila.deiss@usdoj.gov

6   Attorneys for the United States and
    Defendants Huelga and Merendino
7
    MICHAEL F. HERTZ
8   Deputy Assistant Attorney General,
    Civil Division
9   DAVID J. KLINE
    Director
10  JOSHUA E.T. BRAUNSTEIN
    Assistant Director
11  COLIN A. KISOR (DC 497145)
    Senior Litigation Counsel
12  LANA LUNSKAYA VAHAB (DC 976203)
    Trial Attorney
13  Office of Immigration Litigation
    Civil Division, Justice Department
14  P.O. Box 878, Ben Franklin Station
    Washington, D.C.  20044
15  Tel:  (202) 532-4331
    Fax:  (202) 305-7000
16  E-mail: colin.kisor@usdoj.gov

17  Attorneys for the United States

18                UNITED STATES DISTRICT COURT

19                NORTHERN DISTRICT OF CALIFORNIA

20                       OAKLAND DIVISION

21  COMMITTEE FOR IMMIGRANT RIGHTS        )
    OF SONOMA COUNTY; FRANCISCO           )     Case No. CV 08-4220 PJH
22  SANCHEZ-LOPEZ; CHRISTYAN SONATO-      )
    VEGA, and SAMUEL MEDEL MOYADO,        )     **[CORRECTED] FEDERAL**
23                                        )     **DEFENDANTS' NOTICE OF**
                         Plaintiffs,      )     **MOTION TO DISMISS THE**
24                                        )     **SECOND AMENDED**
                                          )     **COMPLAINT; MEMORANDUM**
25              v.                        )     **OF POINTS AND**
                                          )     **AUTHORITIES IN SUPPORT**
26                                        )     **THEREOF**
    COUNTY OF SONOMA; SHERIFF-            )
27  CORONER BILL COGBILL and DEPUTY       )     Date:   February 17, 2010
    SHERIFF MORRIS ERIC SALKIN,           )     Time:  9:00 am
28  individually and in their official capacities; U.S. )  Place:  Courtroom 3, 3rd Floor
    DEPARTMENT OF HOMELAND SECURITY       )     Judge: The Hon. Phyllis J. Hamilton

1

BUREAU OF IMMIGRATION AND                    )
CUSTOMS ENFORCEMENT;                         )

2

SPECIAL AGENT MARIO HUELGA and               )
SPECIAL AGENT CHRIS MERENDINO,               )

3

individually and in their official capacities; )
DOES 1-50; and ROES 1-50, inclusive,          )

4

                                              )
                   Defendants.                )

5

_____ )

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

NOTICE OF MOTION

ISSUES TO BE DECIDED

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.  General Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   A.  Legal Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   B.  This Court should dismiss Plaintiffs' request for injunctive relief because this request
      predicated on Plaintiffs' misunderstanding of the regulations at issue . . . . . . . . . . . . . . 5

      1.   8 C.F.R. §287.7 permits ICE to issue detainers to local law enforcement agencies
         "at any time" for illegal aliens, regardless of whether they are already in custody
         for a state law crime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      2.   Any deviation by ICE from the procedures outlined in 8 C.F.R. § 287.3 would
         not create enforceable rights to warrant injunctive relief . . . . . . . . . . . . . . . . . . 8

      3.   The remainder of Plaintiffs' allegations of constitutional violations lack a factual
         foundation and are instead supported by nothing more than a request for a
         sweeping injunction to obey the law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   C.  The Court must dismiss Plaintiffs' claims against the Federal Defendants for alleged
      violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) . . . . . . . . . . . . . . . . . . . . . . 11

      1.   Plaintiffs have abandoned their claim under 42 U.S.C. § 1983 . . . . . . . . . . . . . 12

      2.   Plaintiffs' Conspiracy Claim Under 42 U.S.C. §1985 (3) Fails Because Plaintiffs'
         SAC Fails to Provide any New Allegations That Might Remedy the Court's
         Earlier Dismissal of This Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   D.  Defendants Huelga and Merendino are Entitled to Qualified Immunity . . . . . . . . . . . 17

   E.  Plaintiffs' FTCA Claims Fail to State a Claim for Relief . . . . . . . . . . . . . . . . . . . . . . 20

      1.   Plaintiffs do not Plead Facts Sufficient to State a Claim for False Imprisonment
         or Assault and Battery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      2.   Plaintiffs do not State Facts Sufficient to State a Claim for Intentional Infliction
         of Emotional Distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      3.   Plaintiffs' Negligence Claim Fails Because There Is Not Special Relationship
         Between Federal Defendants and Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1

    4.      The United States is Immune from Actions Brought Against it for Violations of Constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2

3

    5.      The FTCA Does Not Extend to Conduct Governed Exclusively by Federal Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

Anderson v. Creighton,
    483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

4

5

Arnsburg v. United States,
    757 F.2d 971 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

6

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (May 18, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, *passim*

7

8

Ashoff v. City of Ukiah,
    130 F.3d 409 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9

Balistreri v. Pacifica Police Dep't,
    901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

10

11

Barren v. Harrington,
    152 F.3d 1193 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999) . . . . . . . . . . . . . . 18

12

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 11, 17

13

14

Billings v. U.S.,
    57 F.3d 797 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,
    403 U.S. 388 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16

17

Block v. North Dakota,
    461 U.S. 273 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18

Bowles v. Seminole Rock & Sand Co.,
    325 U.S. 410 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19

20

Bray v. Alexandria Women's Health Clinic,
    506 U.S. 263 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

21

Butler v. Elle,
    281 F.3d 1014 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

22

23

Cabrera v. Martin,
    973 F.2d 735 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

24

Chairez v. INS,
    790 F.2d 544 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

25

Chevron U.S.A. v. NRDC,
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26

27

Comm. for Immigrant Rights of Sonoma County v. County of Sonoma,
    __F. Supp. 2d __, 2009 WL 2382689 (N.D. Cal. July 31, 2009) . . . . . . . . . . . . . . . . 1

28

<u>Dalehite v. United States</u>,
    346 U.S. 15 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Danner v. Moore</u>,
    306 F. Supp. 433 (W.D. Pa. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>Delta Savings Bank v. United States</u>,
    265 F.3d 1017 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Dye v. U.S.</u>,
    516 F. Supp. 2d 61 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Federal Deposit Ins. Corp. v. Meyer</u>,
    510 U.S. 471 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Feres v. United States</u>,
    340 U.S. 135 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>Flores v. Morgan Hill Unified Sch. District</u>,
    324 F.3d 1130 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>Fogel v. Collins</u>,
    531 F.3d 824 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Griffin v. Breckenridge</u>,
    403 U.S. 88 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Grossman v. City of Portland</u>,
    33 F.3d 1200 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

<u>Harlow v. Fitzgerald</u>,
    457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Harris v. Roderick</u>,
    126 F.3d 1189 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Hauptmann v. Wilentz</u>,
    570 F. Supp. 351 (D.N.J. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Henig v. Odorioso</u>,
    385 F.2d 491 (3d Cir. 1967)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

<u>INS v. Lopez-Mendoza</u>,
    468 U.S. 1032 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Ivey v. Bd. of Regents</u>,
    673 F.2d 266 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>Manning v. City of Rohnert Park</u>,
    2007 WL 1140434 (N.D. Cal. Apr. 17, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>MGM Studios Inc. v. Grosker</u>,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Miller v. Cal. Speedway Corp.</u>,
    536 F.3d 1020 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Molnar v. Care House,
　　574 F. Supp. 2d 772 (E.D. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Moreno v. Baca,
　　431 F.3d 633 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

Muynua v. United States,
　　2005 WL 43960 (N.D. Cal. Jan. 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs. et al.,
　　545 U.S. 967 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Navarro-Chalan v. Ashcroft,
　　359 F.3d 19 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,
　　564 F. Supp. 2d 544 (E.D.Va. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Osolinski v. Kane,
　　92 F.3d 934 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Reno v. American-Arab Anti-Discrimination Comm.,
　　525 U.S. 471 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Robertson v. Dean Witter Reynolds, Inc.,
　　749 F.2d 530 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Romero v. Kitsap County,
　　931 F.2d 624 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Saucier v. Katz,
　　533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

Scheuer v. Rhodes,
　　416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Scott v. Rosenberg,
　　702 F.2d 1263 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Sever v. Alaska Pulp Corp.,
　　978 F.2d 1529 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Stack v. Lobo,
　　903 F. Supp. 1361 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Swift and Co. v. U.S.,
　　196 U.S. 375 (1905) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Thomas Jefferson Univ. v. Shalala,
　　512 U.S. 504 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S. v. Brignoni-Ponce,
　　422 U.S. 873 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 16

U.S. v. Turner,
　　104 F.3d 1180 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 16

United States v. Arenas-Ortiz,
    339 F.3d 1066 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Donaldson,
    493 F. Supp. 2d 998 (W.D. Ohio 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Olson,
    546 U.S. 43 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United Steelworkers of Am. v. Phelps Dodge,
    865 F.2d 1539 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

U.S. v. Armstrong,
    517 U.S. 456 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

White v. Lee,
    227 F.3d 1214 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wigfal v. City and County of San Francisco,
    2007 WL 174434 (N.D. Cal. Jan. 22, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Will v. Michigan Dep't of State Police,
    491 U.S. 58 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Wilson v. Layne,
    526 U.S. 603 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATE CASES**

Artiglio v. Corning Inc.,
    18 Cal. 4th 604 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Ballard v. Uribe,
    41 Cal. 3d 564 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Brown v. Ransweiler,
    171 Cal. App. 4th 516, 89 Cal. Rptr. 3d 801 (Cal. Ct. App. 2009) . . . . . . . . . . . . . . . 21

Cole v. Fair Oaks Fire Protection Dist.,
    43 Cal. 3d 148 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Davidson v. City of Westminster,
    32 Cal. 3d 197 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fermino v. Fedco, Inc.,
    7 Cal. 4th 701 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Johnson v. County of Los Angeles,
    143 Cal. App. 3d 298 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Lowry v. Standard Oil Co. of California,
    63 Cal. App. 2d 1, 146 P.2d 57 (Cal. Ct. App. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lugtu v. California Highway Patrol,
    26 Cal. 4th 703 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

McCorkle v. City of Los Angeles,
    70 Cal. 2d 252 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Sakiyama v. AMF Bowling Centers, Inc.,
    110 Cal. App. 4th 398 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Scott v. County of Los Angeles,
    27 Cal. App. 4th 125 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## FEDERAL STATUTES

8 C.F.R. § 101, *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 C.F.R. § 287.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

8 C.F.R. § 287.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, *Passim*

8 C.F.R. § 287.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *Passim*

8 C.F.R. § 287.7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8 C.F.R. § 287.7(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

8 U.S.C. § 1101 *et. seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 U.S.C. § 1103(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8 U.S.C. § 1103(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8 U.S.C. § 1226(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

8 U.S.C. § 1252(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 U.S.C. § 1357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, *Passim*

8 U.S.C. § 1357(g)(10)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8 U.S.C. § 1357(g)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8 U.S.C. § 1357(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

8 U.S.C. § 1357(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 2674 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 2680(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 12, 13, 17

42 U.S.C. § 1985(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14, 17

## STATE STATUTES

California Penal Code § 647(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on **February 17, 2010**, at 9:00 am in Courtroom 3, 3rd floor, 1301 Clay Street, Oakland, California, Defendants, the United States, the United States Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"), Special Agent Mario Huelga, Special Agent Chris Merendino, and ROES 1-50 (collectively, "Federal Defendants"), will move this Court for an order dismissing the Second Amended Complaint ("SAC") for lack of jurisdiction and failure to state a claim upon which relief may be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this notice, the following memorandum of points and authorities, the pleadings and papers on file in this action, the reply, and such oral argument as the Court may permit.

### ISSUES TO BE DECIDED

1.   Does ICE have the authority to issue detainers for illegal aliens who are not already in the custody of state or local law enforcement agencies?

2.   Would ICE's deviation from its internal guidance on detention procedures set forth in 8 C.F.R. § 287.3 create enforceable rights that illegal aliens may assert in federal court?

3.   Should this Court issue a sweeping injunction simply requiring ICE to obey the law?

4.   Do Plaintiffs' 42 U.S.C. §§ 1983 and 1985(3), conspiracy claims fail as a matter of law because they have failed to allege that Defendants acted under color of state law, conspired, or acted with racial animus toward Plaintiffs?

5.   Are Defendants Huelga, Merendino, and Roes 1-50 entitled to dismissal of all claims against them in their personal capacities based on qualified immunity?

6.   Should this Court dismiss all of Plaintiffs' Federal Tort Claims Act ("FTCA") claims either because they are barred or because Plaintiffs have failed to allege sufficient facts in the pleading to support their claims?

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.   INTRODUCTION**

3     On July 31, 2009, the Court dismissed Plaintiffs' complaint, finding in relevant part: (1)

4  the Court had jurisdiction over claims seeking monetary damages against ICE, DHS, and federal

5  officers in their official capacities, but not those based on officers' individual capacities; (2)

6  *Bivens*[1] claims seeking injunctive and declaratory relief against DHS and ICE were not subject to

7  dismissal based on sovereign immunity; (3) the organization had representational and

8  organizational standing to assert claims on behalf of its members, and standing to assert its own

9  claims; (4) the regulation authorizing certain immigration officers to issue detainers to any other

10  federal, state, or local law enforcement agency is valid; (5) the claim for alleged unlawful

11  withholding or unreasonable delay of hearings was not cognizable under the Administrative

12  Procedure Act ("APA"); (6) the federal officers were entitled to qualified immunity; and (7)

13  Plaintiffs failed to state a claim for conspiracy to deprive immigrants of their constitutional rights.

14  *Comm. for Immigrant Rights of Sonoma County v. County of Sonoma*, __ F. Supp. 2d ___, 2009

15  WL 2382689 (N.D. Cal. July 31, 2009) ("July Order").[2]

16     Federal Defendants now move to dismiss, with prejudice, Plaintiffs' claims in the SAC for

17  lack of subject matter jurisdiction and/or failure to state a claim.

18  **II.   FACTS**

19     **A. General Allegations**

20     This case remains one of first impression, presenting the question of whether the

21  Immigration and Nationality Act ("INA")[3] and its implementing regulations[4] broadly authorize the

22  _____

23     [1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

24     [2] In the first motion to dismiss, Federal Defendants asserted the 8 U.S.C. § 1252(g)
  jurisdictional bar and challenged Plaintiffs' standing in various respects. (Dkt. No. 31.) The

25  Court ruled that 8 U.S.C. § 1252(g) did not apply and that Plaintiffs had standing the court thus
  denied that aspect of Federal Defendants' motion. (July Order at 12, 17, 18.)  Out of an

26  abundance of caution, and to ensure that the issues are preserved for appeal, Defendants hereby
  reassert that 8 U.S.C. § 1252(g) bars judicial review, and that all Plaintiffs lack standing to bring

27  injunctive relief claims.

     [3] 8 U.S.C § 1101, *et. seq.*

28     [4] 8 C.F.R. § 101, *et seq.*

FEDERAL DEFENDANTS' MOTION TO DISMISS SAC; MEMORANDUM OF LAW IN SUPPORT THEREOF
Case No. C 08-4220 PJH                -1-

1    Secretary of DHS ("Secretary") to issue detainers for illegal aliens and place them in the

2    temporary custody of state or local law enforcement agencies before they are moved to an

3    immigration detention facility.  Plaintiffs Francisco Sanchez-Lopez and Christian Sonato-Vega are

4    illegal aliens who were arrested by members of an anti-gang task force comprised of ICE agents

5    and Sonoma County Sheriff's deputies known as Multi-Agency Gang Enforcement Team

6    ("MAGNET").  MAGNET is a multi-agency task force designed to reduce gang-related violence

7    and associated criminal activity.  Several agencies, including the Sonoma County Sheriff's

8    Department and ICE, participate in MAGNET operations.  (SAC at ¶¶ 30-31).

9          ICE agents issued detainers for Sanchez-Lopez and Sonato-Vega under 8 C.F.R. § 287.7.[5]

10    Sonoma County Jail then detained them before they were transferred to ICE custody.

11          Plaintiff Medel Moyado was arrested on August 8, 2007, for violating California Penal

12    Code § 647(f).[6]  (SAC at ¶ 112).  At a state court hearing on August 10, 2007, a California judge

13    informed Medel Moyado that he was "free to leave."  Because Medel Moyado was an illegal alien,

14    Sonoma County Jail nevertheless held him pursuant to an immigration detainer until transferring

15    him to ICE custody.  (SAC at ¶ 116).

16          According to the SAC,[7] on September 28, 2006, Plaintiff Sanchez-Lopez was a passenger

17    in a car that was stopped by a Sonoma County Sheriff's Deputy for an improperly displayed "for

18    sale" sign.  (SAC at ¶¶ 74-76).  ICE officers, who were at the scene when the Sheriff's Deputies

19    questioned him, then detained him as an illegal alien in the Sonoma County Jail until transferring

20    him to ICE custody.[8]  (SAC at ¶¶ 77-86).  A Sonoma County Sheriff's Deputy and an ICE Agent

21    took Plaintiff Sonato Vega into custody on August 2, 2007, for being an illegal alien, and held him

---

[5] An immigration judge terminated Plaintiff Sanchez-Lopez's removal proceedings, but he currently has no legal status in the United States.  Plaintiff Sonato-Vega accepted voluntary departure in lieu of removal and returned to Mexico on April 11, 2008.  If he is in the United States now, he is here illegally.

[6] Cal. Penal Code § 647(f) generally prohibits being drunk and disorderly in public. Plaintiff Moyado was, at the time, an illegal alien, but after DHS placed him in removal proceedings, the DHS adjusted his status to that of a legal permanent resident based on his subsequent marriage to a U.S. citizen.

[7] Because this is a motion to dismiss filed at the pleadings stage, the facts set forth herein are as alleged in the SAC.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

[8] During the stop, Sanchez-Lopez also admitted to being on probation.  (SAC at ¶ 77).

at the Sonoma County Jail until he was transferred to an ICE facility.  (SAC at ¶ 100).  MAGNET members initially stopped and questioned Plaintiff Sonato-Vega in July 2007 about, among other things, his tattoos.  (SAC at ¶ 92-96).  In August 2007, a county officer and Defendant Huelga approached Sonato-Vega at his workplace.  Defendant Huelga allegedly patted him down, searched his wallet, and asked him about his immigration status.  (SAC at ¶¶ 97-100).  Defendant Huelga allegedly stated, "oh look, he is shaking.  He ain't that tough."  (SAC at ¶ 99).  Defendant Huelga and the county officer arrested him and transferred him to the Sonoma County Jail before ICE eventually issued a detainer.  (SAC at ¶¶ 100-101).  While in ICE custody, Sonato-Vega admitted that he was in this country illegally and stipulated to an order of removal.  (SAC at ¶ 107).

Plaintiffs allege, *inter alia*, that in each of these cases ICE lacked the power to issue the detainer authorized by 8 C.F.R. § 287.7.  (SAC at ¶ 44).  Plaintiffs conclude that the detainer was unauthorized because it kept Plaintiffs in the Sonoma County Jail pending a transfer to an ICE facility despite the fact that they were not otherwise already in State custody for an independent criminal charge.  (SAC at ¶ 44).  Plaintiffs further allege that Defendants violated their rights by denying them the procedural protections "required for individuals arrested without a warrant on suspected immigration violations pursuant to 8 U.S.C. § 1357 and 8 C.F.R. § 287.3."  (SAC at ¶¶ 51-52, 58).  Plaintiffs concede, as they must, that the INA authorizes ICE to arrest suspected illegal aliens without a warrant.  (SAC at ¶ 26).  They also concede, as they must, that ICE may issue immigration detainers asking other law enforcement agencies to briefly continue to detain those who are suspected of immigration violations to permit ICE to take them into custody.  (SAC at ¶ 28).  However, according to Plaintiffs, ICE and its agents apprehended each of them purely as a result of racial profiling.  (SAC at ¶¶ 80, 84, 92, 100, 102, 113, 115, 188(a), 189(a), and 190(a)).  But, none of the three individual Plaintiffs assert that any ICE agent uttered any racial epithets, used excessive force, or made any derogatory remarks about any group (especially Hispanic/Latino immigrants) in the course of apprehending or detaining them.

Also, according to the SAC, Plaintiff Committee for Immigrant Rights of Sonoma County ("CIR" or "Committee") is a "community-based" organization "comprised of Sonoma County

residents and organizations." (SAC at ¶ 6). It was founded in 2006, ostensibly in response to federal immigration reform proposals. (SAC at ¶ 69). The CIR's stated mission is "to oppose anti-immigrant legislation" and, in particular, to "reform proposals that would have raised penalties for illegal immigration and classified undocumented immigrants and those who assist them as felons." (SAC at ¶ 69). Plaintiffs assert that the CIR (as a whole) is being harmed because its members have witnessed, and been subjected to, Defendants' alleged "unlawful practices." (SAC ¶ 72). Plaintiffs allege that the CIR members reside in Sonoma County where Defendants "regularly patrol," and that Defendants' practices "undermine the CIR's organizational mission" and "divert the CIR's resources." (SAC at ¶ 72).

Plaintiffs allege that members of the CIR "have personally witnessed and been subjected to Defendants' unlawful practices." (SAC at ¶ 72). The CIR is only seeking injunctive and declaratory relief because this Court already ruled that the CIR does not have standing to pursue any claim for monetary damages. (SAC at ¶ 73).

## III.   ARGUMENT

### A.   Legal Standards.

Under Federal Rule of Civil Procedure 12(b)(1), a court should dismiss a complaint where a plaintiff has failed to establish the court's subject matter jurisdiction. *See Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997). In determining whether it has subject matter jurisdiction, a court is not limited to the allegations in the complaint. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2001). Rather, the court is permitted to look beyond the complaint to extrinsic evidence, and need not assume the truth of the complaint's allegations. *Lee*, 227 F.3d at 1242.

A court should grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)). That standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  While the material factual allegations are construed in the non-movant's favor, allegations that are conclusory, vague or speculative are insufficient to survive a motion to dismiss.  *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982); *Stack v. Lobo*, 903 F. Supp. 1361, 1369 (N.D. Cal. 1995).

**B.  This Court should dismiss Plaintiffs' request for injunctive relief because this request is predicated on Plaintiffs' misunderstanding of the regulations at issue**.

1.  8 C.F.R. § 287.7 permits ICE to issue detainers to local law enforcement agencies "at any time" for illegal aliens, regardless of whether they are already in custody for a state law crime.

This Court has already rejected Plaintiffs' contention that 8 C.F.R. § 287.7 is *ultra vires* to the INA because 8 U.S.C. § 1357 does not restrict ICE detainers to aliens arrested for controlled substance violations.  (July Order at 19-24).  Now Plaintiffs ask this Court to issue injunctive and declaratory relief because, they contend, the Agency (and the ICE agents) violates 8 C.F.R. § 287.7 whenever ICE issues a detainer for an illegal alien who is "not already in County custody pursuant to an independent criminal or other state law arrest."  (SAC at ¶¶ 164(b), 151(e), 178, 182(b)).  Plaintiffs are incorrect because 8 C.F.R. § 287.7 broadly allows ICE agents to issue detainers for illegal aliens who are not otherwise detained and to issue the detainers at any time.  The regulation states, in relevant part:

> (d) Temporary detention at Department request.  Upon a determination by the Department to issue a detainer *for an alien not otherwise detained by a criminal justice agency*, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays and holidays, in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(d) (emphasis added).  Further, the regulation states, "[a]ny authorized immigration officer may *at any time* issue a Form I-247 Immigration detainer – notice of action, to any other Federal, State, or local law enforcement agency."  8 C.F.R. § 287.7(a) (emphasis added).  The plain language "not otherwise detained by a criminal justice agency" and "at any time" is broadly written so that ICE may adequately carry out its mission, which includes apprehending illegal aliens.  This is because the Secretary has "the power and duty to control and guard the boundaries and borders of the United States against the illegal entry of aliens."  8 U.S.C. § 1103(a)(4).  Plaintiffs point to nothing in 8 C.F.R § 287.7 that requires an illegal alien to be in state or local custody for another crime before ICE may issue a detainer.  Indeed, 8 C.F.R. § 287.7

1    cannot be read to restrict ICE to issuing detainers only for those illegal aliens already in Sonoma

2    County custody "pursuant to an independent criminal or other state law arrest."  (SAC at ¶¶

3    164(b), 182(b)).  While that may be Plaintiffs' preferred reading of the regulation, the language of

4    8 C.F.R. § 287.7 does not provide for this interpretation.

5         As noted, the INA confers broad authority on the Secretary to enforce the immigration

6    laws.  Recognizing the Secretary's vast responsibilities, Congress conferred upon the Secretary the

7    discretion to "establish such regulations . . . and perform such other acts as [s]he deems necessary

8    for carrying out [her] authority under the provisions of this chapter."  *See* 8 U.S.C. § 1103(a)(3).

9    The Secretary has determined that 8 C.F.R § 287.7, authorizing ICE agents to issue detainers to

10   other law enforcement agencies, is necessary to control the borders.  And, as explained above, in

11   promulgating 8 C.F.R. § 287.7, DHS in no way limited ICE's authority to issue detainers only to

12   those aliens who had already been arrested by state or local law enforcement for other crimes.

13        Plaintiffs contend that ICE has, under the purported authority of 8 C.F.R. § 287.7, "adopted

14   the policy, practice and custom of requesting that Sonoma County Sheriff's Department personnel

15   take physical custody of individuals suspected of civil immigration violations and hold them in the

16   Sonoma County Jail without any criminal basis for arrest."  (SAC at ¶ 38).  Plaintiffs' assertion

17   does not state a claim upon which this Court may grant relief  because this Court cannot find, as a

18   matter of law, that ICE has misinterpreted 8 C.F.R. §287.7 and – if it has – that it acted illegally in

19   doing so.

20        When dealing with an agency's interpretation of its own regulations, this Court must give

21   the agency's interpretation "controlling weight unless it is plainly erroneous or inconsistent with

22   the regulation."  *Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008) (citing

23   *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).  This means that this Court must

24   defer to the Agency unless "an alternative reading is compelled by the regulation's plain language

25   or by other indications of the agency's intent at the time of the regulation's promulgation."  *Id.*

26   (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).[9]  In this case, the plain

27   ─────────────
          [9] Notably, an agency's interpretation of its own regulation is entitled to a higher standard
28   of deference than that required for statutes under *Chevron U.S.A. v. NRDC*, 467 U.S. 837 (1984).
     *Chevron* requires a court to accept an agency's construction of an ambiguous statute if the
                                                                              (continued...)

language of the regulation "not otherwise detained by a criminal justice agency" and "at any time" does not compel the restrictive interpretation of the regulation urged by Plaintiffs. It compels just the opposite interpretation.

Moreover, adopting Plaintiffs' restrictive and unfounded interpretation of 8 C.F.R. § 287.7 would produce absurd results that were not intended by the Agency and would significantly impair ICE's ability to carry out its statutory mission. It is certainly reasonable for the Secretary to promulgate a regulation that grants immigration officers the authority to issue detainers for illegal aliens because, as the Supreme Court has repeatedly stated, an illegal alien's presence in the United States is a continuing violation of the immigration laws. *Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 489 (1999) ("[i]n deportation proceedings the consequence [of the potential for delay] is to permit and prolong a continuing violation of United States law."); *see also INS v. Lopez-Mendoza,* 468 U.S. 1032, 1039 (1984) ("[t]he purpose of deportation is not to punish past transgressions but rather to put an end to a continuing violation of immigration laws."). If this Court somehow finds 8 C.F.R. § 287.7 ambiguous as to whether an alien must already be in criminal custody before ICE issues a detainer, "the Agency's interpretation controls so long as it is reasonable." *Miller*, 536 F.3d at 1028 (citations omitted). Just as the Agency's interpretation in this case is reasonable, Plaintiffs' preferred reading of the regulation is patently unreasonable. And it flies in the face of 8 U.S.C. § 1357, which provides: "[n]othing in this subsection shall be construed to require an agreement under this subsection in order for any [state or local] officer . . . otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(B).

Accordingly, even taking Plaintiffs' conclusory factual allegations as true (and assuming that ICE follows this policy), this Court must accept the Agency's reasonable construction and decline to adopt Plaintiffs' overly restrictive interpretation of the regulation. The Court should dismiss the claims because the challenge to ICE's putative policy lacks a "cognizable legal theory"

---

[9] (...continued)
particular statute is within the agency's jurisdiction to administer, and the agency's construction is reasonable. *See id*; *see also Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005).

1   upon which relief can be granted.  *See Balistreri*, 901 F. 2d at 699 (stating that dismissal under

2   Fed. R. Civ. P. 12(b)(6) can be based upon a lack of cognizable legal theory).

3              2.        Any deviation by ICE from the procedures outlined in 8 C.F.R. § 287.3
                        would not create enforceable rights or warrant injunctive relief.

4        Plaintiffs assert that ICE violated 8 C.F.R. § 287.3 in various ways in the way it handled

5   Plaintiffs Sanchez-Lopez, Sonato-Vega and Medel Moyado during their detentions.  (*See generally*

6   SAC).  Plaintiffs Committee, Sanchez-Lopez, and Medel Moyado seek a vague but broad,

7   generalized order from the Court "enjoining [Defendants] from continuing to engage in the above-

8   described policies, practices and conduct . . . including but not limited to . . . [conduct which does

9   not comply with 8 C.F.R. § 287.3]."  (SAC at ¶¶ 151(f)(g)(h), 164(c)(d)(e), 182(c)(d)).[10]  In other

10  words, Plaintiffs seek a broad injunction from this Court ordering ICE to strictly comply with 8

11  C.F.R. § 287.3 in the future.  Whatever ICE's policies, practices, or procedures may be, the Court

12  should decline to do this because the regulation at issue is no more than ICE's internal guidance.

13  Indeed the regulation does not confer any rights upon illegal aliens whatsoever, so any ostensible

14  noncompliance on ICE's part cannot give rise to a cause of action, much less injunctive relief and

15  monetary damages.  8 C.F.R. § 287.12 states:

16              [w]ith regard to this part, these regulations provide internal guidance on
17              specific areas of law enforcement authority.  These regulations do not, are not
                intended to, and shall not be construed to exclude, supplant, or limit otherwise
18              lawful activities of the Department or the Secretary.  These regulations do not,
                are not intended to, shall not be construed to, and may not be relied on to
19              create any rights, substantive or procedural, enforceable at law by any party
                in any matter, civil or criminal. The Secretary shall have exclusive authority
20              to enforce these regulations through such administrative and other means as
                he may deem appropriate.

21  8 C.F.R. § 287.12; *see generally Navarro-Chalan v. Ashcroft,* 359 F.3d 19, 23 (1st Cir. 2004)

22  (noting in *dicta* that even if § 287.3 were applicable and were violated in a particular case,

23  § 287.12 states that § 287.3 does not create enforceable substantive or procedural rights for aliens

24  to assert); *see also United States v. Donaldson*, 493 F. Supp. 2d 998, 1002 (W.D. Ohio 2006)

25  (holding that the failure of the Department of Justice to send a defendant a target letter, contrary to

26  its own regulations, did not create an enforceable right for the defendant to assert).  Here, contrary

27  to the plain language of § 287.12, Plaintiffs seek a ruling that would, in effect, create enforceable

28  _____
     [10] Plaintiff Sonato-Vega does not seek injunctive relief, presumably because he has been
     deported and lacks standing.

1    rights for illegal aliens for any deviation by ICE from the guidance provided in 8 C.F.R. § 287.3.

2         Accordingly, because the regulation does not create enforceable rights for Plaintiffs, the

3    Court should dismiss with prejudice Plaintiffs' claim for injunctive relief – mandating that ICE

4    strictly comply with 8 C.F.R § 287.3 – contained in SAC paragraphs 151(f)(g)(h), 164(c)(d)(e) and

5    182(c)(d).

6              3.        The remainder of Plaintiffs' allegations of constitutional violations lack a
                         factual foundation and are instead supported by nothing more than a request
7                        for a sweeping injunction to obey the law.

8         Again without adequate factual support to satisfy Rule 8, Plaintiffs seek an injunction from

9    this Court to enjoin ICE from committing various acts which Plaintiffs baldly allege are

10   constitutional violations.  Their sweeping request demands that ICE refrain from:

11        (1) stopping persons or vehicles without reasonable suspicion that they are engaged in

12   criminal activity or that the occupants are illegally present in the United States; (SAC at ¶ 151(a));

13        (2) conducting personal and vehicular searches without probable cause to believe that the

14   areas searched contain evidence of criminal activity or a reasonable belief that the person searched

15   or the car's occupants are dangerous and may gain access to a weapons; (SAC at ¶ 151(b));

16        (3) unreasonably arresting individuals without warrants and without probable cause to

17   believe they are non-citizens present in violation of civil immigration laws; (SAC at ¶ 151(c));

18        (4) unreasonably arresting individuals for suspected civil immigration violations without

19   warrants and without reason to believe they are likely to escape before a warrant can be obtained;

20   (SAC at ¶¶ 151(e),164(a), and 182(a));

21        (5) using race as a motivating factor to stop, detain, interrogate, search and/or arrest

22   persons who appear to be Latino; (SAC at ¶ 157(a));

23        (6) using race as a motivating factor to inaccurately designate individuals as gang

24   members; (SAC at ¶ 157(b));

25        (7) using race, Spanish surname, or national origin as motivating factors in determining

26   whether to question and issue immigration detainers for persons in the custody of Sonoma County.

27   (SAC at ¶ 157(c)).

28        This Court should dismiss the above claims for relief with prejudice.  First, Plaintiffs do

1 not allege sufficient facts required under *Twombly* to support any kind of constitutional violation

2 or racial profiling claim. *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (May 18, 2009).

3 All Plaintiffs provide are labels and conclusions, which are devoid of any substance. (SAC at ¶¶

4 32, 48, 49). But Rule 8 "requires more than labels and conclusions, and a formulaic recitation of

5 the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Because they cannot

6 meet the well-pled complaint requirement of Rule 8, Plaintiffs simply fall back on a misguided

7 request for a sweeping injunction that would require ICE to follow the law.

8        Even if Plaintiffs could merely skip the requirement that they plead sufficient facts to pass

9 Rule 8 muster (they cannot), their request for relief is still inadequate and fatally defective. The

10 Supreme Court has long held that a sweeping injunction to obey the law would be improper

11 because it would be necessarily vague and overly broad. *See, e.g., Swift and Co. v. U.S.*, 196 U.S.

12 375, 396 (1905); *see also MGM Studios Inc. v. Grosker*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal.

13 2007) ("[b]lanket injunctions to obey the law are disfavored."). Thus, even if Plaintiffs had pled

14 sufficient facts to otherwise survive a motion to dismiss, their request for a blanket injunction is

15 still facially (and fatally) flawed because it is so vague and broad that it would prohibit even some

16 lawful activity. As to the latter point, for example, immigration officers may stop persons and

17 vehicles without reasonable suspicion of criminal activity if they have a reasonable suspicion that

18 the occupants have violated immigration law. *See* 8 U.S.C. § 1357. In making this determination,

19 ICE officers may rely on the occupant's race, among other factors. *See e.g. U.S. v. Brignoni-

20 Ponce*, 422 U.S. 873, 884 (1975) (finding that a Border Patrol officer can stop a vehicle if the

21 officer has a reasonable suspicion to believe that at least one of the occupants is an undocumented

22 immigrant). Under Plaintiffs' desired injunction, under no circumstances – even those that the

23 Supreme Court found permissible – could ICE consider race, even among other factors.

24        Likewise, Plaintiffs' request that this Court enjoin Defendants from "using race as a

25 motivating factor to inaccurately designate individuals and gang members" fails. (SAC at ¶

26 157(b)). For one thing, it is not at all clear just what Plaintiffs mean by the term "motivating

27 factor." If they mean that race may never play any role in any law enforcement activity, they are

28 simply wrong. Indeed, Courts have recognized that criminal gangs sometimes organize

themselves along

ethnic or racial lines. *See U.S. v. Turner*, 104 F. 3d 1180 (9th Cir. 1997) (noting that the targeting of African-American gangs in order to abate the sale of crack-cocaine is not improper where "defendants have shown no more than the consequences of the investigation of violent street gangs, not that they were targeted because of race").

Both because Plaintiffs do not plead sufficient facts and because their request for injunctive relief is flawed and inadequate, this Court should dismiss with prejudice Plaintiffs' request for injunctive relief contained in their Fourth, Fifth, Sixth, and Eighth claims for relief in the SAC.

### C.   The Court must dismiss Plaintiffs' claims against the Federal Defendants for alleged violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).[11]

This Court previously dismissed Plaintiffs' conspiracy claims for "failure to state a claim upon which relief may be granted," finding Plaintiffs' conspiracy claims to be "largely conclusory" and plagued by Plaintiffs' failure to plead "sufficient facts to establish that the federal officer defendants violated any of plaintiffs' constitutional rights." (July Order at 31). The Court granted Plaintiffs leave to amend to try to "allege specific facts to support the existence of the claimed conspiracy and the required state claim." *Id.* Unfortunately, having failed to heed the Court's admonitions, Plaintiffs' SAC is still devoid of specific allegations. Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, in order to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S.

---

[11] Plaintiffs' heading for the Ninth Claim for relief is styled: "All Plaintiffs Against All Defendants." To the extent that Plaintiffs' heading is meant to signify their intent to proceed against the United States, it is clearly erroneous because the United States cannot be sued under § 1983 or § 1985 – the United States is not a person, and these provisions do not waive sovereign immunity. *Cuevas v. Dep't of Homeland Sec.*, 233 Fed. Appx 642 (9th Cir. 2007) (holding that since the government has not waived its sovereign immunity, the district court's dismissal of plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 was proper) (*citing Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989) (holding that states and state officials in their official capacities are immune from action under section 42 U.S.C. §§ 1983 and 1985)); *see also Dye v. U.S.*, 516 F. Supp. 2d 61, 71 (D.D.C. 2007) (holding that Plaintiffs' reliance on 42 U.S.C. §§ 1983 and 1985(3) also is misplaced because these provisions neither authorize suits challenging actions taken under color of federal law nor waive the United States' sovereign immunity) (internal citations omitted).

at 555; *see also Iqbal*, 129 S. Ct.  at 1951 ( "'[f]ormulaic recitation of the elements' of a constitutional discrimination claim" will not suffice).

          1.        Plaintiffs have abandoned their claim under 42 U.S.C § 1983.

       Although Plaintiffs refer to 42 U.S.C § 1983 in the Ninth Claim heading, they make no mention of this claim in their allegations.  As a result, it appears that Plaintiffs abandoned § 1983 as a basis for relief.  Even if Plaintiffs did not intend to abandon this claim, they have made no attempt to allege any facts to support this claim, and have thus abandoned it inadvertently.  As noted in the Court's Order, "federal officers acting under federal authority are immune from suit under § 1983 unless the state or its agents significantly participated in the challenged activity." (July Order at 31 n. 6).  The level of state participation necessary to bring federal officers under the purview of "color of state law" must go beyond "cooperative action."  *Danner v. Moore*, 306 F. Supp. 433, 436 (W.D. Pa. 1969) (citing *Henig v. Odorioso*, 385 F.2d 491, 492 (3d Cir. 1967)) (FBI agents did not act "under color of state law" when they cooperated with township police, but where the complaint failed to allege "that the federal agents became officers or agents of the state, or that their actions were controlled by the state, or that they derived their powers from state statutes").

       Likewise, merely sharing information between federal and state agents does not mean that federal agents were acting under color of state law where the federal agents were able to request information from state agents because the federal agents were "clothed with the authority of federal law."  *Scott v.  Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983) (finding that FCC employees were not acting under color of state law where they cooperated with the state Attorney General in investigating the donation records of a televangelist).[12]

       Plaintiffs' allegations are insufficient to state a claim that the federal agents acted under the purview of state law.  According to Plaintiffs, ICE and its agents relied on 8 U.S.C. § 1357 and  8

---

[12] *See also Cabrera v.  Martin*, 973 F.2d 735, 743 (9th Cir. 1992) (noting that the court had "not found a single precedent which would support a holding that a federal agency acting under its own guidelines could be considered to have acted 'under color of state law' merely because it was induced by the actions of state actors . . . the state must be a significant participant, if not the chief actor, to transform a federal defendant into a state actor").

C.F.R. § 287.3 to justify their actions, including their decision to issue detainers.  (*See* SAC ¶¶ 26-28, 38-41, 44-45, and 66).  In fact, 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 are the very federal law and regulation that are at the heart of Plaintiffs' complaint; that is, the fact that Plaintiffs explicitly challenge ICE's interpretation and actions under 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 contradicts any allegation that ICE and it agents were acting under color of state law.[13]   This Court should therefore dismiss Plaintiffs' 42 U.S.C. § 1983 claims.

> 2.      Plaintiffs' conspiracy claim under 42 U.S.C. § 1985(3) fails because Plaintiffs' SAC fails to provide any new allegations that might remedy the Court's earlier dismissal of this claim.

To state a claim under section 1985(3), Plaintiffs must allege a conspiracy to deprive them of their civil rights, motivated by race-based animus.  *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993); *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002).  Specifically, to succeed on this cause of action, a plaintiff must allege the following elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any persons or class of persons of the equal protection of the laws, or equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; and (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1989).  Plaintiffs have failed to allege facts to support any of these elements.

Plaintiffs must state specific facts to support the existence of the claimed conspiracy and must plead with particularity "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of [their] constitutional rights . . . ."  *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1989).  The SAC simply does not sufficiently allege a conspiracy.  Indeed, Plaintiffs make no specific allegations of any agreement between the parties, and this Court must therefore dismiss the claim.  Plaintiffs have likewise failed to provide any evidence of an overt act

---

[13] *See Billings v. U.S.*, 57 F.3d 797, 801 (9th Cir. 1995) (Secret Service agents did not act under color of state law where they initiated the arrest of a protestor, despite the fact that the county sheriff's officers "eventually took the [protestor] into custody" because the "[Sheriff's officers] were clearly acting at the behest and under the direction of the federal agents.  If the Secret Service agents and the Sheriff's officers acted jointly, it was under the color of federal law.") (internal citations omitted).  Because Plaintiffs' allegations do not differ in substance from the facts in *Billings*, they can find no support under § 1983.

necessary to support a conspiracy claim. Instead of making specific allegations to support their conspiracy claim, Plaintiffs point to the cooperation between federal and state agents, which occurred when federal and state agents engaged in joint operations under the MAGNET program (SAC at ¶¶ 30, 31, 41, 59, and 62). But law enforcement cooperation does not amount to a conspiracy. *See Molnar v. Care House*, 574 F. Supp. 2d 772, 788 (E.D. Mich. 2008) (a "protocol" of law enforcement cooperation does not amount to conspiracy). This is particularly true where, as here, the cooperation is explicitly authorized by statute. *See* 8 U.S.C. § 1357(g)(10) and § 1373. Plaintiffs have erroneously concluded that, because Defendants' cooperation would have given them the opportunity and the ability to conspire with state actors, this opportunity and ability alone are adequate to prove that a conspiracy actually took place. It is well-established, however, that the ability and opportunity to conspire are, standing alone, insufficient to prove the existence of a conspiracy. *United Steelworkers of Am. v. Phelps Dodge*, 865 F.2d 1539, 1547 (9th Cir. 1989).

Even assuming Plaintiffs have allege a conspiracy of any sort (which they have not), they fail to allege that it was motivated by racial animus, which is required by the second element of § 1985(3). Section 1985(3) provides a remedy only if there is "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The term "animus" does not appear once in Plaintiffs' complaint, which is nonetheless filled with conclusory allegations of racial profiling of Latinos as gang members, criminals, and illegal immigrants.

Also fatal to Plaintiffs' SAC is that they do not, and cannot, support their racial profiling claim with the essential showing that Federal Defendants have treated similarly situated individuals or groups differently. For example, Plaintiffs do not allege that similarly situated people are pulled over, questioned, detained, or placed in removal proceedings less frequently than Plaintiffs. And invidious discrimination is not necessarily present whenever there is a "disproportion" between the racial composition of the pool of persons prosecuted and the general public at large. Rather, the focus must be on the pool of "similarly situated individuals of a different race [who] were not prosecuted." *U.S. v. Armstrong*, 517 U.S. 456, 465-66 (1996). "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.*; *see also United States v. Arenas-Ortiz*,

339 F.3d 1066, 1068-69 (9th Cir. 2003) (refusing to permit discovery in a discriminatory prosecution case where plaintiff failed to show that non-Hispanic males who: (1) were aliens, (2) had been removed or deported from the United States, and (3) had re-entered without the consent of the Attorney General "could have been prosecuted, but were not").

Plaintiffs do, however, continually remind the Court that Sanchez-Lopez, Sonato-Vega, and Medel Moyado are and appear to be "Latino" and "person[s] of color."  (SAC at ¶¶ 7-9, 91, 102, 111, and 124).   Plaintiffs devote numerous paragraphs of the SAC to unsupported, blanket assertions that ICE singles out Latinos generally, and individual Plaintiffs specifically, based on their "Latino appearance," "Spanish surname," "color and/or ethnicity," and "national origin" to enforce criminal and immigration laws.  (SAC at ¶¶ 29, 32, 35-37, 185(a), 188(a), 189(a), and 190(a)).  But as Plaintiffs themselves admit, these charges are based on no more than "information and belief."  (SAC ¶¶ 31, 49, 59-60, 80, 92, 100, 113, and 115).  This does not pass muster under Rule 8(a).  *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 549 (E.D. Va. 2008) (granting a motion to dismiss and finding that "bald allegations" followed by the "generic statement" . . . "upon information and belief" are "insufficient to meet the Rule 8(a) requirements").

According to the SAC, neither Plaintiff Sanchez-Lopez nor Medel Moyado allege that any Defendants made any remarks about their race which might lead them to believe that Agent Merendino's or Officer Huelga's actions were motivated by racial animus.  Plaintiff Sonato-Vega does allege that ICE agents used profanity and said he was "illegal and not allowed to be here." But he does not allege that any agent said anything that might reflect racial animus.  (SAC at ¶ 99). Based on Plaintiffs' allegations, there is no more reason to believe that the alleged conspiracy, assuming one existed, was motivated by racial animus rather than the desire to minimize gang-related crime, reduce illegal immigration, or some other facially legitimate motive.  *See Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D. N.J. 1983) (finding that plaintiff had not pleaded sufficient facts to support the allegation that the prosecutor had conspired with other law enforcement agents "because of his German heritage, rather than because he was found with the ransom money or because they needed a scapegoat, or for some other reason").

Even assuming that Plaintiffs adequately alleged that Defendants relied on race as a component of their decisions, doing so does not itself amount to discrimination or racial animus. Courts have found that not all racially motivated actions reflect racial animus *per se*. *See U.S. v. Turner*, 104 F. 3d 1180 (9th Cir. 1997) (noting that targeting African-American gangs in order to abate the sale of crack-cocaine is not improper where "defendants have shown no more than the consequences of the investigation of violent street gangs, not that they were targeted because of race. That such gangs should be targeted is a neutral, nonracial law enforcement decision").[14]

And although racial profiling is strictly prohibited, the U.S. Department of Justice's *Guidance Regarding the Use of Race by Federal Law Enforcement Agencies* does not prohibit any and all consideration of race in law enforcement activities.[15]  This Guidance, which is aimed at eradicating racial profiling in law enforcement, specifically allows the use of race where a law enforcement agency is "conducting an ongoing investigation into a specific criminal organization whose membership has been identified as being overwhelmingly of one ethnicity." *Id.*[16]  Based on Plaintiffs' own allegations, MAGNET was a program designed to reduce the incidence of Latino (Sureño specifically) gang violence in Sonoma County.  (SAC at ¶¶ 30-31).

Thus, it is insufficient for Plaintiffs to simply point out that they are Latino and then expect the Court to conclude that federal agents' actions toward them must have necessarily been motivated by racial animus.  *See Brignoni-Ponce*, 422 U.S. at 881-87 (finding that while an investigatory immigration stop solely based on race is prohibited under current law, the consideration of race coupled with other factors is allowed).

---

[14] *See also Iqbal,* 129 S. Ct. at 1951 (finding that because the September 11th attacks were perpetrated by Muslims who were part of an all-Muslim organization, "it should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims").

[15] *See* U.S. DEP'T OF JUSTICE, CIVIL RIGHT DIV. GUIDANCE REGARDING THE USE OF RACE BY FEDERAL LAW ENFORCEMENT AGENCIES 9 (2003), *available at* http://www.justice.gov/crt/split/documents/guidance_on_race.php.

[16] This guidance is intended only to improve the internal management of the executive branch.  It is not intended to, and does not, create any right, benefit, trust, or responsibility, whether substantive or procedural, enforceable at law or equity by a party against the United States, its departments, agencies, instrumentalities, entities, officers, employees, or agents, or any person, nor does it create any right of review in an administrative, judicial or any other proceeding.  *Id.* at n. 2.

Finally, as the Court noted in its Order, sections 1983 and 1985 require Plaintiffs to show that Defendants violated their constitutional rights. Like their original complaint, Plaintiffs' SAC fails to allege specifically which constitutional rights Defendants have violated. (July Order at 31). Aside from conclusory legal statements about the violation of their constitutional rights, Plaintiffs' allegations amount to nothing more than "'formulaic recitation of the elements' of a constitutional discrimination claim." *Ashcroft v. Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555).

The Court should then dismiss Plaintiffs' Ninth Claim for relief.

### D.    Defendants Huelga and Merendino are entitled to qualified immunity[17]

Plaintiffs assert *Bivens* claims against Defendants Huelga, Merendino and the unknown ROES 1-50 for compensatory and punitive damages in their personal capacities for violations of their right "to be free from unreasonable searches and seizures." (SAC at ¶¶ 152, 153, 154). Defendants Huelga and Merendino are entitled to qualified immunity and should be dismissed from this action.

ICE agents, like all federal officials, are entitled to qualified immunity as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, regardless of whether the constitutional violation occurred, a federal official should prevail if the right asserted by a plaintiff was not "clearly established" or the officer could have reasonably believed that his particular conduct was lawful. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). The test to determine whether a federal official is entitled to qualified immunity involves a two-step analysis. *See Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First, the court must determine whether, taking the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right. *Id.* at 638. Second, if the officer violated the plaintiff's constitutional rights, the court must determine whether the right was clearly established at the time the alleged violation occurred. *Id.*

---

[17] This argument applies to Defendants ROES 1-50, to the extent they are sued in their individual capacities.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In order for a court to find that a right is clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In its analyses, this Court "need not find a prior case with identical, or even 'materially similar' facts," but the right must be established with sufficient specificity, and in a "particularized [ ] sense," so that "the government officials have 'fair and clear warning' that their conduct is unlawful." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003). The inquiry into whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

In assessing established law, this Court will turn to Supreme Court and Ninth Circuit precedent that existed at the time of the challenged conduct. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996). In the absence of binding precedent, this Court should look to available decisions of other circuits to ascertain whether the law is clearly established. *Id.*

Here, as an initial matter, Plaintiffs have failed to allege sufficient facts to make a threshold showing that the conduct of the individual Federal Defendants violated their constitutional rights. They thus fail at the first step of the *Moreno* analysis. *See Moreno*, 431 F.3d at 638. To state a claim against Defendants Huelga and Merendino in their personal capacities, Plaintiffs must allege facts indicating that each of them participated in, or personally directed, the alleged constitutional violation, or had personal knowledge of the violation and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.") *(*cert. *denied*, 525 U.S. 1154 (1999)).

Specifically, Plaintiff Sanchez-Lopez alleges that Defendants Huelga and Merendino unlawfully stopped and searched him, and then directed his arrest. (SAC at ¶¶ 77-89). Plaintiff Sonato-Vega likewise alleges that Defendant Huelga unlawfully stopped and searched him, andthen directed his arrest. (SAC at ¶¶ 97-99). Plaintiff Moyado asserts claims against ROES 1-50 challenging his four-day detention before his transfer to ICE custody. (SAC at ¶ 154).

As discussed above, pursuant to 8 U.S.C. § 1357(a)(1), ICE agents may, without a warrant, interrogate any alien or person they believe is an alien about his right to be in the United States.

ICE agents may also arrest any alien whom they believe to be in the United States illegally and who they believe is likely to escape before a warrant can be obtained. *See* 8 U.S.C. § 1357(a)(2). Because ICE has broad legal authority to detain illegal aliens and to issue detainers for illegal aliens to other law enforcement agencies, it was reasonable for Defendants Huelga and Merendino to believe that they could lawfully stop and to issue detainers for the named alien Plaintiffs. *See* 8 C.F.R. § 287.7. Further, the INA addresses the apprehension and detention of aliens and contemplates that the Attorney General may issue a warrant to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." *See* 8 U.S.C. § 1226(a).

"[T]here must be some parallel or comparable factual pattern to alert an officer that a series of actions would violate an existing constitutional right." *Fogel v. Collins*, 531 F.3d 824 (9th Cir. 2008). Where, as here, the Federal Defendants have reasonably relied on Congress's determination that a statute is constitutional (and the Secretary's decision to issue regulations explaining Congress's statutes), they should be shielded from personal liability. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) (citations omitted). It was manifestly reasonable for Defendants Huelga and Merendino, as MAGNET members, to stop, question, and arrest Plaintiffs as provided by the law. To the extent that named Plaintiffs allege that Defendants Huelga and Merendino violated their Fourth Amendment rights by failing to comply with 8 U.S.C. § 1357 and 8 C.F.R. § 287.3, they again fail to recite the relevant legal provision that Defendants Huelga and Merendino allegedly violated. Nor have Plaintiffs set forth facts explaining how Defendants Huelga and Merendino violated this provision, whichever it may be. Such pleading does not state a Fourth Amendment claim that is plausible on its face. *See Iqbal*, 129 S. Ct. 1937, 1949 (2009) (in order to state a claim for relief that is plausible on its face, the complaint must plead factual allegations that allow the court to draw the reasonable inference that defendant is liable for the misconduct alleged).

Even if this Court were to find that the arrest or detainer authority granted by 8 U.S.C. § 1357 and 8 C.F.R. § 287.7 is unconstitutional, and/or that 8 C.F.R. § 287.7(d) authorizes ICE to issue detainers only for aliens who are already in criminal custody, Defendants Huelga and

1   Merendino reasonably relied on those laws, and they are thus entitled to qualified immunity.  *See*

2   *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (holding that officers who followed a media ride-along

3   policy were entitled to qualified immunity, despite the Court's determination that the policy was

4   unconstitutional); *Grossman v. City of Portland*, 33 F.3d at 1209 (officers who enforced local

5   ordinance regarding public gatherings were entitled to qualified immunity, though the ordinance

6   was unconstitutional).  Here, not only is there no legal precedent (concerning the use of

7   immigration detainers to hold suspected aliens who were not charged or held for criminal

8   violations), but immigration detainers have also been used in the way Plaintiffs have challenged

9   for at least thirty years.  *See Chairez v. INS*, 790 F.2d 544, 545 n. 2 (6th Cir. 1986) ("[f]rom the

10  first, the plaintiff's arrest [by state law enforcement officers] was based solely on suspicion of his

11  illegal status, noting that 'immigration hold' was the only justification for his incarceration.")

12  Neither the court in *Chairez*, nor any court since, has held unconstitutional the practice of using

13  immigration detainers to hold individuals who were not already being held on criminal charges.

14      Because they acted in a manner consistent with the Constitution, and because they could

15  not reasonably have known that statutorily-authorized action ran afoul of the Constitution, the

16  individual Federal Defendants Huelga and Merendino and ROES 1-50 are entitled to dismissal

17  of all claims against them in their personal capacities based on qualified immunity.

18      **E.    Plaintiffs' FTCA claims fail to state a claim for relief.**

19      "The basic rule of federal sovereign immunity is that the United States cannot be sued at all

20  without the consent of Congress." *Block v. N.D.*, 461 U.S. 273, 287 (1983).  The FTCA provides

21  that the United States is only liable for a tort in those instances where a private party would be

22  liable for the same tort under state law.  *See* 28 U.S.C. § 2674; *see also U.S. v. Olson*, 546 U.S. 43

23  (2005) (holding that the federal government waives sovereign immunity only where local law

24  would make a private person liable in tort).  The FTCA limits the Government's liability to

25  instances where wrongful acts by "investigative or law enforcement officer[s]" give rise to claims

26  of "assault, battery, false imprisonment, false arrest, abuse of process or malicious

27  prosecution." 28 U.S.C. § 2680(h); *see also Arnsburg v. United States*, 757 F.2d 971, 978 (9th Cir.

28  1985) ("By its terms, section 2680(h) limits the liability of the United States to instances where

1

law enforcement officials act tortiously.").

2

        1.      Plaintiffs do not plead facts sufficient to state a claim for false imprisonment or assault and battery.

3

4

California law defines false imprisonment as "nonconsensual, intentional confinement of a

5

person, *without lawful privilege,* for an appreciable length of time, however short." *Fermino v.*

6

*Fedco, Inc.*, 7 Cal.4th 701, 703 (Cal. 1994) (emphasis added). Plaintiffs fail to allege facts

sufficient to support an inference of liability under California law.

7

The Court noted in its July Order that Federal Defendants had broad legal authority to

8

arrest and detain Plaintiffs under 8 U.S.C. § 1357. Plaintiffs cannot therefore allege facts

9

sufficient to state a claim for false imprisonment because they were not arrested without lawful

10

privilege. In addition, Plaintiff Medel Moyado was lawfully arrested pursuant to California Penal

11

Code 647(f). Plaintiffs concede as much in the SAC. (SAC at ¶ 112). Therefore, Plaintiff Moyado

12

clearly cannot state a claim for false imprisonment because he was not arrested without lawful

13

privilege.

14

To prevail on an assault claim, a plaintiff must establish that (1) the defendant "acted,

15

intending to cause harmful or offensive contact," and (2) the plaintiff "reasonably believed that he

16

was about to be touched in a harmful or an offensive manner." CACI 1301 (Dec. 2008 ed.); *see*

17

*also Lowry v. Standard Oil Co. of Cal.*, 146 P.2d 57 (Cal. Ct. App. 1944). There are three

18

essential elements of a claim for battery: (1) an intentional "act which resulted in a harmful or

19

offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; (3) the

20

harmful or offensive contact caused injury, damage, loss or harm to the plaintiff." BAJI 7.50

21

(Fall 2009 ed.); *Brown v. Ransweiler*, 171 Cal. App.4th 516, 89 Cal. Rptr.3d 801 (Cal. Ct. App.

22

2009).

23

In the context of the Federal Agents, the only relevant contact alleged is that: Officer

24

Huelga patted down Plaintiff Sanchez-Lopez and removed his wallet and (2) Officer Huelga patted

25

down Plaintiff Sonato Vega (SAC at ¶¶ 79, 99). Plaintiffs allege no facts to reflect Agent

26

Huelga's intent to cause harm to Plaintiffs Sanchez-Lopez and Sonato Vega. While Agent

27

Merendino allegedly questioned Plaintiff Sanchez-Lopez, (SAC at ¶ 79), Plaintiffs fail to allege

28

any offensive contact between Agent Merendino and the named Plaintiffs. There are also no

allegations of offensive contact between the Agents and Plaintiff Model Moyado.

Because Plaintiffs fail to allege facts which arguably meet the elements for assault and battery, the Court should dismiss Plaintiffs' claim Eighteen and Twenty-Two for relief for failure to state a claim.

> 2.   Plaintiffs do not state facts sufficient to state a claim for intentional infliction of emotional distress.

The elements of a cause of action for intentional infliction of emotional distress in California are: (1) *extreme and outrageous* conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress. *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 155 (Cal. 1970) (emphasis added). To be outrageous, conduct must be so extreme as to "exceed all bounds that are usually tolerated in a civilized society." *Davidson v. City of Westminster,* 32 Cal.3d 197, 208 (Cal. 1982).

The SAC does not plead sufficient facts to establish that ICE agents' conduct was "so extreme as to exceed all bounds that are usually tolerated in a civilized society." *Id.* The facts Plaintiffs allege suggest that Officers Huelga and Merendino were simply attempting to arrest persons who were illegally in the United States and that they lawfully issued a detainer for Plaintiff Model Moyado. Specifically, Plaintiffs assert that the agents used race and/or national origin as a motivating factor for the stops, but as discussed above, the SAC fails to assert sufficient facts to support this allegation. Plaintiffs also allege that they were subject to unreasonable searches and seizures and "humiliating and abusive treatment." The factual allegations that Plaintiffs have provided in support of such allegations, however, fall far short of supporting an inference that the conduct was "extreme and outrageous." Plaintiffs have likewise failed to articulate how their alleged emotional distress manifested itself. Finally, Plaintiff Model Moyado ties his emotional distress claim to his four-day detention. But his detention was neither unlawful nor outrageous. Plaintiffs have thus failed to allege sufficient facts to sustain an intentional infliction of emotional distress claim, and the Court should dismiss the Nineteenth Claim for relief.

3.      Plaintiffs' negligence claim fails because there is not special relationship between Federal Defendants and Plaintiffs.

In California, actionable negligence requires proof of: (1) a legal duty to use due care; (2) a breach of such legal duty; and (3) the breach as the proximate cause or legal cause of the resulting injury.  *See Sakiyama v. AMF Bowling Ctrs. Inc*., 110 Cal. App. 4th 398, 405 (Cal. Ct. App. 2003).  The threshold element of the existence of duty is a question of law to be resolved by the court.  *Artiglio v. Corning Inc.*, 18 Cal. 4th 604, 614 (Cal. 1998).  Duty "is not an immutable fact of nature but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."  *Ballard v. Uribe*, 41 Cal.3d 564, 572 n. 6, (Cal. 1986).  Here, a duty does not automatically arise between ICE agents and Plaintiffs Sanchez-Lopez and Sonato Vega because, under California case law, a person is under no legal duty to aid another unless there is a "special relationship" between them.[18]  A special relationship will not arise based on a person's membership in a particular class, but because a public entity voluntarily assumes a duty towards a particular person.[19]

Plaintiffs here have presented no evidence to support their argument that the Federal Defendants voluntarily assumed a specific duty to Plaintiffs above the general protection offered to all aliens during questioning.  Thus, no special relationship existed between Plaintiffs and Federal Defendants to support a negligence claim and the Court should dismiss the Twentieth Claim for relief.

4.      The United States is immune from actions brought against it for violations of constitutional rights.

Plaintiffs assert that the United States is liable for damages under the FTCA for

---

[18] Plaintiff Model Moyado was not arrested by the Federal Agents.

[19] *See, e.g., Lugtu v. Cal. Highway Patrol*, 26 Cal.4th 703, 717 (Cal. 2001) (holding that a police officer who stopped a car by the median of a highway rather on the safer shoulder had a reasonable duty of care to protect the occupant from being hit by other cars); *McCorkle v. City of Los Angeles*, 70 Cal.2d 252 (Cal. 1969) (police officer had a special relationship with the plaintiff because the officer instructed the plaintiff to follow the officer into an intersection where the plaintiff was hit by a car); *Scott v. County of Los Angeles*, 27 Cal.App.4th 125, 148 (Cal. Ct. App. 1994) (addressing the duty to protect owed by a social worker to a child placed in foster care by a county entity); *Johnson v. County of Los Angeles*, 143 Cal.App.3d 298 (Cal. Ct. App. 1983) (addressing the special relationship between a jailer and an inmate when the jailer knew about the inmate's serious psychiatric condition and promised to take care of the inmate).

deprivations of their civil rights under the California and U.S. Constitutions. (SAC at ¶ 246). But Plaintiffs have not identified which sections of the California Constitution ICE allegedly violated. They may have intended to cite Art. 1, Sec. 13, which mirrors the Fourth Amendment to the U.S. Constitution, and/or Art. 1, Sec. 7(a), which contains due process language similar that found in the Fifth and Fourteenth Amendments to the U.S. Constitution. In any event, the California Supreme Court held in *Katzberg v. Regents of Univ. of Cal.* that no tort-based action for damages arises from the violation of Art. 1, section 7(a) of the California Constitution. *See* 29 Cal. 4th 300, 329 (Cal. 2002). California courts have not addressed the same issue for Art. 1, Sec. 7(a) (Due Process), but the United States District court for the Northern District of California has, on two occasions, declined to establish an action for damages arising from the violation of Art. 1, Sec. 7(a).[20] In addition, it is well-established that violations of the United States Constitution do not give rise to liability under the FTCA. *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477-78 (1984).

Here, Plaintiffs attempt to bring constitutional claims under the FTCA by first pushing them through California Civil Code § 52.1, which provides a private cause of action for interference with a person's exercise of enjoyment of rights secured by the United States or California Constitutions. This approach has been tried and rejected. *See Delta Sav. Bank v. United States*, 265 F.3d 1017, 1024 (9th Cir. 2001); *Muynua v. U.S.*, 2005 WL 43960 (N.D. Cal. Jan. 10, 2005). Accordingly, this Court must dismiss Plaintiffs' Twenty-First Claim for relief.

5. The FTCA does not extend to conduct governed exclusively by federal law.

Finally, with respect to all allegations of an intentional tort, any duty that ICE purportedly owed to Plaintiffs during their administrative arrest and immigration processing is federal in nature. The FTCA, however, does not extend to conduct "governed exclusively by federal law," *Feres v. United States*, 340 U.S. 135, 146 (1950), or to conduct "of a governmental nature of function." *Dalehite v. United States*, 346 U.S. 15, 28 (1953). The SAC mentions 8 U.S.C. § 1357 and the detainer regulations as sources of the United States' liability, and it also refers to the

---

[20] See *Manning v. City of Rohnert Park*, 2007 WL 1140434, at *1 (N.D. Cal. Apr. 17, 2007); *Wigfal v. City and County of San Francisco*, 2007 WL 174434, at *6 (N.D. Cal. Jan. 22, 2007).

1  Fourth Amendment of the Constitution.  But federal statutes, regulations, and constitutional

2  provisions are insufficient to confer subject matter jurisdiction to this Court.  *See Delta Sav.*, 265

3  F.3d at 1024 (Plaintiffs cannot "suggest, without support, that an FTCA claim can be brought for

4  violations of federal statutes that provide private federal causes of action, even if there is no

5  analogous state law.").  Therefore, this Court should dismiss Plaintiffs' FTCA claim entirely.

6

7  **IV.    CONCLUSION**

8      This Court should DISMISS entirely Plaintiffs' "FOURTH," "FIFTH," "SIXTH,"

9  "EIGHTH,"" NINTH," and "EIGHTEENTH" through "TWENTY-SECOND" claims for relief,

10  and all claims against Defendants Huelga, Merendino and Roes 1-50 in their personal capacities.

11  DATED: November 3, 2009                  Respectfully submitted,

12
    JOSEPH P. RUSSONIELLO                    MICHAEL F. HERTZ
13  United States Attorney                   Deputy Assistant Attorney General, Civil Division
                                             DAVID J. KLINE
14      _____/s/_____           Director

15  ILA C. DEISS                             JOSHUA E.T. BRAUNSTEIN
    Assistant United States Attorney         Assistant Director
16
                                             _____/s/_____
17  Attorneys for the United States          COLIN A. KISOR
    and Defendants Huelga & Merendino        Senior Litigation Counsel
18

19                                           _____/s/_____
20                                           LANA L. VAHAB
                                             Trial Attorney
21
                                             Attorneys for the United States
22

23

24

25

26

27

28