LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr. (State Bar No. 120965)
Melissa N. Chan (State Bar No. 240228)
Tienlon Ho (State Bar No. 240997)
Mary Elizabeth Heard (State Bar No. 255793)
Jason L. Daniels (State Bar No. 258377)
Casey R. O'Connor (State Bar No. 261755)
505 Montgomery Street, Suite 2000
San Francisco, California  94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
Email: al.pfeiffer@lw.com
Email: melissa.chan@lw.com
Email: tienlon.ho@lw.com
Email: maryelizabeth.heard@lw.com
Email: jason.daniels@lw.com
Email: casey.oconnor@lw.com

Julia Harumi Mass (State Bar No. 189649)
Alan L. Schlosser (State Bar No. 49957)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California  94111
Telephone:  (415) 621-2493
Facsimile:  (415) 255-8437
Email: jmass@aclunc.org
Email: aschlosser@aclunc.org

Attorneys for PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY, FRANCISCO SANCHEZ-LOPEZ, CHRISTYAN SONATO-VEGA, and SAMUEL MEDEL MOYADO,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SONOMA; SHERIFF-CORONER BILL COGBILL and DEPUTY SHERIFF MORRIS ERIC SALKIN, individually and in their official capacities; U.S. DEPARTMENT OF HOMELAND SECURITY, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT; SPECIAL AGENT MARIO HUELGA and SPECIAL AGENT CHRIS MERENDINO, individually and in their official capacities; DOES 1-50; and ROES 1-50, inclusive,<br><br>Defendants. | CASE NO. 08-4220 PJH<br><br>**PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS**<br><br><br>Date:      February 17, 2010<br>Time:      9:00 a.m.<br>Judge:    Hon. Phyllis J. Hamilton |

# **TABLE OF CONTENTS**

Page

I.      STANDARD OF REVIEW ................................................................. 2

II.     8 C.F.R. § 287.7 DOES NOT AUTHORIZE THE USE OF
        IMMIGRATION DETAINERS TO INITIATE LOCAL CUSTODY. ........................... 3

        A.      By Definition, Immigration Detainers Are Issued for Persons
                Already in Custody of Another Law Enforcement Agency. ................................ 3

        B.      Plaintiffs' Position is in Accord with the Agency's Interpretation at
                the Time the Regulation Was Promulgated. ................................. 4

        C.      Defendants' Interpretation – Treating Detainers as Warrants –
                Conflicts with Congress's Clear Limits on Civil Immigration
                Arrests. .............................................................................. 5

        D.      The Agency's Purported Interpretation is a *Post Hoc*
                Rationalization Not Entitled to Deference. ................................. 8

III.    8 C.F.R. § 287.3 CREATES SUBSTANTIVE, ENFORCEABLE
        RIGHTS. ...................................................................................... 9

        A.      Section 287.3 Constitutes a Substantive Rule. ................................. 9

        B.      Section 287.12 Cannot  Effectively Disclaim the Rights in Section
                287.3. .................................................................................. 10

IV.     ICE AGENTS CANNOT RELY ON THE UNAUTHORIZED ACTIONS
        OF LOCAL LAW ENFORCEMENT AGENCIES TO OVERCOME
        STATUTORY LIMITS ON THEIR AUTHORITY ................................. 12

V.      PLAINTIFFS HAVE STATED CONSTITUTIONAL CLAIMS
        AGAINST FEDERAL DEFENDANTS FOR INJUNCTIVE RELIEF
        AND DAMAGES. ....................................................................... 13

        A.      Plaintiffs Have Already Overcome a Challenge to Their
                Constitutional Claims for Injunctive Relief. ................................. 13

        B.      Plaintiffs Have Alleged Violations of Clearly Established Fourth
                Amendment Rights By Individual Federal Agents. ................................. 13

                1.      Plaintiffs Have Alleged a Series of Fourth Amendment
                        Violations. ................................................................. 13

                2.      Federal Defendants' Reliance on Their Purported
                        Interpretation of 8 C.F.R. § 287.7 Does Not Confer
                        Immunity. .................................................................. 15

        C.      Plaintiffs Have Stated Equal Protection Claims Under the Fifth
                Amendment. ................................................................. 16

        D.      Federal Defendants Fail to Identify Any Defect in Plaintiffs' Due
                Process Claims. ................................................................. 18

VI.   PLAINTIFFS' CONSPIRACY CLAIMS UNDER 42 U.S.C. §§ 1983
      AND 1985(3) AGAINST DEFENDANTS HUELGA AND
      MERENDINO ARE PROPER. ................................................................... 19

            1.     Plaintiffs' Conspiracy Claims Are Based on Conduct Under
                   Color of State Law. ............................................................... 19

            2.     Plaintiffs Have Sufficiently Alleged Existence of an
                   Agreement to Satisfy §§ 1983 and 1985(3). ........................... 20

VII.  THE PLAINTIFFS HAVE STATED THEIR CLAIMS AGAINST THE
      UNITED STATES UNDER THE FEDERAL TORT CLAIMS ACT
      ("FTCA"). .............................................................................................. 21

      A.    The SAC Alleges False Imprisonment. .......................................... 21

      B.    The SAC Adequately Alleges the Assault and Battery Claims. ......... 22

      C.    Plaintiffs Have Pleaded Intentional Infliction of Emotional
            Distress. ..................................................................................... 22

      D.    Federal Defendants Owed a Duty of Care to the Plaintiffs. .............. 23

      E.    Federal Defendants Tortiously Interfered with Plaintiffs'
            Constitutional Rights Under California Law. ................................... 24

      F.    Defendants' Actions Do Not Qualify for Any Exception to the
            FTCA. ....................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

**Page**

3

4

*Accardi v. Shaughnessy*,
  347 U.S. 260 (1954).......................................................................................9, 18

5

*Alcorn v. Anbro Engineering, Inc.*,
  2 Cal. 3d 493 (1970) ..........................................................................................23

6

7

*Alterauge v. Los Angeles Turf Club*,
  97 Cal. App. 2d 735 (Cal. Ct. App. 1950) .........................................................21

8

9

*Ariz. Grocery Co. v. Atchison*,
  284 U.S. 370 (1932).............................................................................................9

10

*Awaboly v. City of Adelanto*,
  368 F.3d 1062 (9th Cir. 2004) ...........................................................................17

11

12

*Ayer v. Robinson*,
  163 Cal. App. 2d 424 (2nd Dist. 1958)..............................................................22

13

14

*Bailey v. United States*,
  516 U.S. 137 (1995).............................................................................................6

15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................2

16

17

*Billings v. United States*,
  57 F.3d 797 (9th Cir. 1995) ...............................................................................19

18

19

*Boyd v. Benton County*,
  374 F.3d 773 (9th Cir. 2004) .............................................................................14

20

*Burgess v. Superior Court*,
  2 Cal. 4th 1064 (1992) .......................................................................................23

21

22

*Cabrera v. Martin*,
  973 F.2d 735 (9th Cir. 1992) .............................................................................19

23

24

*Camara v. Municipal Court*,
  387 U.S. 523 (1967)...........................................................................................14

25

*Campos v. I.N.S.*,
  62 F.3d 311 (9th Cir. 1995) .................................................................................4

26

27

*Carchman v. Nash*,
  473 U.S. 716 (1985).............................................................................................4

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

iii

PLAINTIFFS' OPPOSITION TO FEDERAL MOTION TO DISMISS
CASE NO. 08-4220-PJH

*Carey v. Nevada Gaming Control Bd.*,
    279 F.3d 873 (9th Cir. 2002) ......................................................... 16

*Cervantez v. J.C. Penney Co.*,
    24 Cal. 3d 579 (1979) ............................................................... 23

*Chairez v. INS*,
    790 F.2d 544 (6th Cir. 1986) .................................................... 9, 16

*Cole v. Doe*,
    387 F. Supp. 2d 1084 (N.D. Cal. 2005) ................................... 22, 24

*Colonnade Catering Corp. v. United States*,
    397 U.S. 72 (1970) ...................................................................... 14

*County of Riverside v. McLaughlin*,
    500 U.S. 44 (1991) ...................................................................... 15

*Cunningham v. Gates*,
    229 F.3d 1271, 1289 (9th Cir. 2000) .......................................... 24

*Dalehite v. United States*,
    346 U.S. 15 (1953) ...................................................................... 25

*Danner v. Moore*,
    306 F. Supp. 433 (W.D. Penn. 1969) .......................................... 19

*Davidson v. City of Westminster*,
    32 Cal. 3d 197 (1982) ................................................................. 24

*DeBartolo Corp. v. Florida Gulf Coast Trades Council*,
    4854 U.S. 568 (1988) .................................................................... 7

*Defenders of Wildlife v. Norton*,
    258 F.3d 1136 (9th Cir. 2001) ...................................................... 9

*Delta Savings Bank v. United States*,
    265 F.3d 1017 (9th Cir. 2001) .................................................... 24

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ..................................................................... 7

*FDIC v. Meyer*,
    510 U.S. 471 (1994) .................................................................... 21

*Feres v. United States*,
    340 U.S. 135 (1950) .................................................................... 25

*Fermino v. Fedco, Inc.*,
    Cal. 4th 701 (1994) ............................................................... 21, 22

*Florida v. Royer*,
    460 U.S. 491 (1983)................................................................................ 14

*Garcia v. United States*,
    826 F.2d 806 (9th Cir. 1987) ............................................................... 25

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ................................................................. 2

*Golden Day Schs., Inc. v. Prillo*,
    118 F. Supp. 2d 1037 (C.D. Cal. 2000) ............................................... 16

*Greater Boston Television Corp. v. FCC.*,
    444 F.2d 841 (D.C. Cir. 1970) ............................................................ 12

*Grossman v. City of Portland*,
    33 F.3d 1200 (9th Cir. 1994) ............................................................... 15

*Hampton v. Hanrahan*,
    600 F.2d 600 (7th Cir. 1979) ............................................................... 19

*Heckler v. Matthews*,
    465 U.S. 728 (1984)............................................................................. 23

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) ............................................................. 17

*Hopkins v. Bonvicino*,
    573 F.3d 752 (9th Cir. 2009) ............................................................... 14

*I.N.S. v. Cardoza-Fonseca*,
    480 U.S. 421 (1987)............................................................................... 8

*In re Garcia Flores*,
    17 I. & N. Dec. 325 (BIA 1980) .......................................................... 10

*In re Grand Jury Subpoena, Judith Miller*,
    438 F.3d 1141 (D.C. Cir. 2006) ........................................................... 11

*Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*,
    799 F.2d 547 (9th Cir. 1986) ................................................................. 6

*Jacobs v. City of Chicago*,
    215 F.3d 758 (7th Cir. 2000) ............................................................... 16

*Jolly v. Listerman*,
    672 F.2d 935 (D.C. Cir. 1982) ............................................................ 10

*Katzberg v. Regents of Univ. of California*,
    29 Cal. 4th 300 (2002) ........................................................................ 24

*KOVR-TV, Inc. v. Superior Court*,
  31 Cal. App. 4th 1023 (1995) ................................................................. 23

*Landry v. Duncan*,
  No. 87-4031 (9th Cir. March 9, 1989) .................................................... 19

*Lau v. INS*,
  445 F.2d 217 (D.C. Cir. 1971), *cert denied*, 404 U.S. 864 (1971) ........... 12

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
  507 U.S. 163 (1993) ................................................................................ 16

*Manning v. City of Rohnert Park*,
  2007 WL 1140434 (N.D. Cal. Apr. 17, 2007) ....................................... 24

*Marceau v. Blackfeet Hous. Auth.*,
  540 F.3d 916 (9th Cir. 2008) ................................................................... 9

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................................ 18

*Mendocino Envtl. Ctr. v. Mendocino County*,
  192 F.3d 1283 (9th Cir. 1999) ............................................................... 20

*Michigan v. Tyler*,
  436 U.S. 499 (1978) ................................................................................ 14

*Miller v. Cal. Speedway Corp.*,
  536 F.3d 1020 (9th Cir. 2008) ............................................................ 3, 5

*Moore v. Apfel*,
  216 F.3d 864 (9th Cir. 2000) ................................................................. 10

*Morton v. Ruiz*,
  415 U.S. 199 (1974) .................................................................................. 9

*Motor Vehicle Mfrs. Ass'n. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ................................................................................. 12

*Mountain High Knitting v. Reno*,
  51 F.3d 216 (9th Cir. 1995) ................................................................... 14

*Muynua v. U.S.*,
  2005 WL 43960 (N.D. Cal. Jan. 10, 2005) ............................................ 24

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
  524 F.3d 917 (9th Cir. 2008) ................................................................... 4

*Navarro-Chalan v. Ashcroft*,
  359 F.3d 19 (1st Cir. 2004) .................................................................... 11

*Neighbarger v. Irwin Industries, Inc.*,
    8 Cal. 4th 532 (1994) ................................................................................ 23

*Nelson v. City of Irvine*,
    143 F.3d 1196 (9th Cir. 1998) .................................................................... 22

*Nicacio v. INS*,
    797 F.2d 700 (9th Cir. 1985) ............................................................... 12, 17

*Orhorhaghe v. INS*,
    38 F.3d 488 (9th Cir. 1994) ........................................................................ 14

*Pa. Dep't of Pub. Welfare v. Davenport*,
    495 U.S. 552 (1990)...................................................................................... 4

*Papst v. Bay*,
    354 F. Supp. 2d 1175 (D. Or. 2005) ........................................................... 16

*Payton v. United States*,
    679 F.2d 475 (5th Cir. 1982) ...................................................................... 25

*People v. Lavin*,
    88 Cal. App. 4th 609 (2001) ......................................................................... 4

*People v. Rodriguez*,
    21 Cal. App. 4th 232 (4th Dist. 1993)........................................................ 12

*Pool v. City of Oakland*,
    42 Cal 3d 1051 (1986) ................................................................................ 23

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ................................................................................. 23

*Prescott v. United States*,
    959 F.2d 793 (9th Cir. 1992) ...................................................................... 25

*Ramaprakash v. FAA*,
    346 F.3d 1121 (D.C. Cir. 2003) ................................................................. 12

*Rhoden v. United States*,
    55 F.3d 428 (9th Cir. 1995) ............................................................ 15, 22, 25

*Sneed v. Carpenter*,
    274 F.2d 414 (9th Cir. 1960) ........................................................................ 2

*State v. Montes-Mata*,
    41 Kan. App. 2d 1078 (2009) ....................................................................... 4

*State v. Sanchez*,
    110 Ohio St. 3d 274 (2006) .......................................................................... 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

vii

PLAINTIFFS' OPPOSITION TO FEDERAL MOTION TO DISMISS
CASE NO. 08-4220-PJH

*Steenholdt v. FAA,*
     314 F.3d 633 (D.C. Cir. 2003) ............................................................................... 9

*Terry v. Ohio,*
     392 U.S. 1 (1968) ................................................................................................ 14

*U.S. v. Dingwall,*
     54 M.J. 949 (Army Ct. Crim. App. 2001) .............................................................. 15

*U.S. v. Khan,*
     324 F. Supp. 2d 1177 (D. Colo. 2004) ................................................................. 14

*United States  v. Alameda Gateway Ltd.,*
     213 F.3d 1161 (9th Cir. 2000) .............................................................................. 10

*United States v. Adekunle,*
     2 F.3d 559 (5th Cir. 1993) ................................................................................... 15

*United States v. Brignoni-Ponce,*
     422 U.S. 873 (1975) ....................................................................................... 14, 17

*United States v. Contreras,*
     197 F. Supp. 1173 (N.D. Iowa 2002) .................................................................... 15

*United States v. Donaldson,*
     493 F. Supp. 2d 998 (W.D. Ohio 2006) ................................................................ 11

*United States v. Fifty-Three (53) Ecletus Parrots,*
     685 F.2d 1131 (9th Cir. 1982) ............................................................................... 9

*United States v. Montero-Camargo,*
     208 F.3d 1122 (9th Cir. 2000) .............................................................................. 17

*United States v. Onyema,*
     766 F. Supp. 76 (E.D.N.Y. 1991) ......................................................................... 15

*United States v. Ortiz-Hernandez,*
     276 F. Supp. 2d 1113 (D. Or. 2003) ..................................................................... 17

*United States v. Robinson,*
     414 U.S. 218, 226 (1973) ..................................................................................... 15

*United States v. Rodriguez,*
     976 F.2d 592 (9th Cir. 1992) ................................................................................ 12

*United Steelworkers of Am. v. Phelps Dodge,*
     865 F.2d 1539 (9th Cir. 1989) .............................................................................. 20

*Venegas v. County of Los Angeles,*
     32 Cal. 4th 820 (2004) ......................................................................................... 24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

viii

PLAINTIFFS' OPPOSITION TO FEDERAL MOTION TO DISMISS
CASE NO. 08-4220-PJH

*Village of Arlington Heights v. v. Metropolitan Housing Development Corp.*,
    429 U.S. 252 (1977) ............................................................................................ 17

*Virginia v. Moore*,
    553 U.S. 164 (2008) ............................................................................................ 15

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959) .............................................................................................. 9

*Ware v. Dunn*,
    80 Cal. App. 2d 936 (Cal. Ct. App. 1947) ........................................................ 22

*Weirum v. RKO General*,
    15 Cal. 3d 40 (1975) ........................................................................................... 24

*Western Radio Services Co. v. Espy*,
    79 F.3d 896 (9th Cir. 1996) .............................................................................. 10

*Ybarra v. Illinois*,
    444 U.S. 85 (1979) ............................................................................................... 6

**STATUTES**

11 U.S.C. § 1328(a) ................................................................................................ 4

18 U.S.C. 924(c) ..................................................................................................... 6

28 U.S.C. § 1346(b) .............................................................................................. 21

28 U.S.C. § 2680(h) .............................................................................................. 25

42 U.S.C. § 1983 ............................................................................................. 1, 20

42 U.S.C. § 1985(3) ..................................................................................... 1, 20, 21

8 C.F.R. § 287.1(d) ................................................................................................. 5

8 U.S.C. § 1226 ....................................................................................................... 5

8 U.S.C. § 1226(a) .................................................................................................. 6

8 U.S.C. § 1229(a) .................................................................................................. 5

8 U.S.C. § 1357 .............................................................................................. 10, 22

8 U.S.C. § 1357(a)(2) ............................................................................................. 6

8 U.S.C. § 1357(d) ................................................................................................. 6

8 U.S.C. § 1357(g) [INA 287(g)] .......................................................................... 8

8 U.S.C. § 1357(g)(10) [INA 287(g)(10)] .................................................................. 8

Cal. Civ. Code § 1714(a) ........................................................................................... 23

Cal. Civ. Code § 52.1 ................................................................................................. 24

## OTHER AUTHORITIES

5 Wright and Miller, Federal Practice and Procedure § 1224 (3d ed. 2009) .............................. 3

*IMMIGRATION ENFORCEMENT: Better Controls Needed Over Program
    Authorizing State and Local Enforcement of Federal Immigration Laws,*
    United States Government Accountability Office (January 2009)
    http://www.gao.gov/new.items/d09109.pdf 13 ........................................................... 8

U.S. Department of Justice, Civil Rights Division, *Guidance Regarding the Use
    of Race by Federal Law Enforcement Agencies* (June 2003) (updated July 25,
    2008) ("*DOJ Guidance*"),
    http://www.justice.gov/crt/split/documents/guidance_on_race.php .................................... 16

## RULES

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 2, 16

## REGULATIONS

22 Fed. Reg. 9808 (Dec. 6, 1957) .............................................................................. 11

53 Fed. Reg. 9281 (1988) .......................................................................................... 5

55 Fed. Reg. 43326 (Oct. 29, 1990) ............................................................................ 5

59 Fed. Reg. 42406 (1994) ......................................................................................... 5

59 Fed. Reg. 42406 (Aug. 17, 1994) ........................................................................... 11

59 Fed. Reg. 42407 (1994) ......................................................................................... 5

8 C.F.R. § 236.1(b) .................................................................................................... 5

8 C.F.R. § 287 .................................................................................................... 1, 11

8 C.F.R. § 287.11 ...................................................................................................... 11

8 C.F.R. § 287.12 .......................................................................................... 10, 11, 12

8 C.F.R. § 287.3 ................................................................................................. passim

8 C.F.R. § 287.3 ...................................................................................................... 11

8 C.F.R. § 287.3(c) .................................................................................................. 10

8 C.F.R. § 287.7 ................................................................................................ passim

8 C.F.R. § 287.7(a) ...................................................................................................... 3

8 C.F.R. § 287.7(d) ................................................................................................. 3, 11

**CONSTITUTIONAL PROVISIONS**

Cal. Const. Art. I, § 13 .............................................................................................. 24

Cal. Const. Art. I, § 7 ................................................................................................ 24

PLAINTIFFS' OPPOSITION TO FEDERAL MOTION TO DISMISS
CASE NO. 08-4220-PJH

1    **INTRODUCTION**

2         This case involves an ongoing collaboration between the Sonoma County Sheriff's

3    Department and U.S. Immigration and Customs Enforcement ("ICE") whereby the local and

4    federal spheres work together to overcome inherent limitations in their respective authority.  While

5    some level of collaboration between local police and ICE *is* permitted by law, Defendants here

6    exceeded their joint authority and have acted contrary to the statutory and regulatory protections

7    that apply to civil immigration detainees.  In the process they have violated – and continue to

8    violate – the constitutional and statutory rights of those with whom they come into contact, among

9    them the rights to be free from unreasonable searches and seizures, the right to be free from racial

10   discrimination, and the right to due process.  Therefore, Federal Defendants' Motion to Dismiss

11   ("Fed. Mot.") Plaintiffs' Second Amended Complaint ("SAC") should be denied.

12   **STATEMENT OF ISSUES TO BE DECIDED**

13   1.  Does 8 C.F.R. § 287.7 authorize the issuance of immigration detainers to initiate – as
     opposed to prolong – local law enforcement custody?
14   2.  Are the procedural protections of 8 C.F.R. § 287 and 8 U.S.C. § 1357 enforceable through
     the Administrative Procedure Act and/or the Due Process Clause of the Fifth Amendment?
15   3.  Have Plaintiffs stated constitutional claims against ICE for injunctive relief and Defendants
     Merendino and Huelga in their personal capacities?
16   4.  If ICE agents rely on local law enforcement agents' authority to stop individuals for
     criminal activity in order to make contact for immigration enforcement purposes, are they
17   "acting under color of state law" for purposes of 42 U.S.C. §§ 1983 and 1985(3)?
     5.  Have Plaintiffs stated a claim for conspiracy?
18   6.  Have Plaintiffs stated Federal Tort Claims Act claims against the United States?

19   **STATEMENT OF FACTS**

20        For at least the last four years, ICE has worked with the Sonoma County Sheriff's

21   Department, making use of local officers' authority to stop people for traffic infractions and other

22   matters unrelated to immigration enforcement to make contact with perceived "undocumented alien

23   gang members."  SAC ¶¶ 29-31.  This teamwork takes place through both joint patrols – where

24   Defendants Huelga and Merendino and other ICE agents patrol *with* County employees such as

25   Defendant Salkin – and separately, such as where a County officer identifies an individual and

26   seeks ICE authorization to arrest that person *on the basis of a suspected civil immigration violation*.

27   SAC ¶¶ 30-33, 34-37.  ICE agents purport to authorize county officers to make arrests without

28   meeting the requirements of warrantless immigration arrests, *i.e.,* probable cause that the arrestee is

present in violation of the immigration laws *and* "likely to escape before a warrant can be obtained."  SAC ¶¶ 41-43 (citing 8 U.S.C. § 1357).  Under both schemes, suspected civil immigration violators are arrested and taken into custody by County employees and held in the County jail for approximately four days, before they are transferred into ICE custody for civil immigration proceedings.  *Id.*  The only purported justification for holding these immigration detainees in County custody is an immigration detainer, Form I-247.  SAC ¶¶ 39, 45, 85, 101.  *See* Decl. of Julia Harumi Mass (filed March 12, 2009), Ex. A (Doc No. 63).

Once booked into the County jail, civil immigration detainees do not receive notices that are required for warrantless immigration arrestees in federal custody.  SAC ¶¶ 50-53. They are also denied any probable cause hearing, notice of the charges against them, notices concerning their rights in immigration proceedings, or even information about how long they will remain in County custody.  SAC ¶¶ 54-55, 82, 86, 99, 104.  For Plaintiffs Francisco Sanchez-Lopez and Christyan Sonato-Vega, being arrested and placed in the County jail without explanation and without having been engaged in (or charged with) any criminal offense was extremely distressing.  SAC ¶¶ 87, 105.  Adding insult to injury, County and Federal Defendants misclassify arrestees who are not gang members *as* gang members and cause them to be housed with Sureños in the County jail. SAC ¶¶ 59-61, 84, 102.

## ARGUMENT

## I.     STANDARD OF REVIEW

Rule 12(b)(6) motions are viewed with disfavor and are rarely granted.  *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (citations omitted).  The moving party – here, Federal Defendants – has the burden of identifying defects in the complaint in support of its position that a claim has not been stated.  *Sneed v. Carpenter*, 274 F.2d 414, 418 (9th Cir. 1960).  A complaint need only include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Legal conclusions can provide the complaint's framework, but they must be supported by factual allegations; a court should assume that all well-

pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.[1]  *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949-50 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).

## II.   8 C.F.R. § 287.7 DOES NOT AUTHORIZE THE USE OF IMMIGRATION DETAINERS TO INITIATE LOCAL CUSTODY.

### A.   By Definition, Immigration Detainers Are Issued for Persons Already in Custody of Another Law Enforcement Agency.

Where the text of a regulation is clear, there is no reasonable basis to defer to an agency's interpretation that is contrary to its terms.  *See Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008) (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).  The language of 8 C.F.R. § 287.7 clearly defines the scope of immigration detainers, and Defendants provide no justification for straying from it.  Subsection (a) of the regulation offers the only explicit definition of the term "detainer" in the agency's regulations:

> A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien *presently in the custody of that agency*, for the purpose of arresting and removing the alien.  The detainer is a request that such agency advise the Department *prior to release of the alien,* in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a) (emphasis added).  Subsection (d) describes the non-immigration law enforcement agency's required actions once ICE has made the determination to issue a detainer:

> Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency *shall maintain custody* of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays and holidays, in order to permit assumption of custody by the Department.

8 C.F.R. § 287.7(d) (emphasis added).  Defendants' interpretation of Subsection (d) entirely ignores and renders superfluous both subsection (a)'s definition of detainer and subsection (d)'s use of

---

[1]   Federal Defendants suggest that Plaintiffs may not make allegations upon "information and belief."  Fed Mot. at 15.  Governing pleading standards say otherwise.  *See, e.g.,* 5 Wright and Miller, Federal Practice and Procedure § 1224 (3d ed. 2009) ("permitting allegations on information and belief is a practical necessity").

1  "maintain" to describe the local agency's custody over an alien pursuant to a detainer and thus runs

2  afoul of the canon of regulatory interpretation that every word be given effect.  *See, e.g., Nat'l*

3  *Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 932 (9th Cir. 2008); *Pa. Dep't of*

4  *Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990), *superseded by* 11 U.S.C. § 1328(a).

5  Moreover, the language quoted in isolation by Defendants – "for an alien not otherwise detained by

6  a criminal justice agency" – is easily read to be consistent with the remainder of the regulation and

7  the statutory scheme from which it derives: the local agency maintains custody for an additional 48

8  hours based on an immigration detainer when the criminal law basis for the detention has expired,

9  *i.e.*, the person is no longer being "otherwise detained."

10      Plaintiffs' interpretation is consistent with courts' treatments of immigration detainers as

11  well.  *See State v. Sanchez*, 110 Ohio St. 3d 274, 279 (2006) (a detainer does not cause a person to

12  come into the immigration authority's custody, because it is only "a notice that the federal

13  immigration authorities will seek custody in the future"); *accord State v. Montes-Mata*, 41 Kan.

14  App. 2d 1078 (2009); *Campos v. I.N.S.*, 62 F.3d 311, 314 (9th Cir. 1995) (issuance of detainer for

15  federal prisoner does not sufficiently place the inmate in INS custody for purposes of habeas

16  jurisdiction).[2]

17      **B.    Plaintiffs' Position is in Accord with the Agency's Interpretation at the Time
18            the Regulation Was Promulgated.**

19      ICE's predecessor agency, the Immigration and Naturalization Service ("INS"), recognized

20  at the time it promulgated 8 C.F.R § 287.7 that it had the authority to issue detainers only against

21  persons already in the custody of another law enforcement agency.[3]  The INS commentary

22  establishing § 287.7 stated:

23

24  [2]  Similarly, in the Interstate Agreement on Detainers, a criminal detainer is "a notification filed
25      with the institution *in which a prisoner is serving a sentence*, advising that he is wanted to face
        pending criminal charges in another jurisdiction."  *People v. Lavin*, 88 Cal. App. 4th 609, 613
26      (2001) (quoting *United States v. Mauro*, 436 U.S. 340, 359 (1978) (emphasis added).  *See also
        Carchman v. Nash*, 473 U.S. 716, 727 (1985).

27  [3]  This authority is derived from 8 U.S.C. § 1357(d) which authorized issuance of detainers: "[i]n
        the case of an alien *who is arrested by a Federal, State, or local law enforcement official* for
28      violation of any law related to controlled substances . . . ."  Anti-Drug Abuse Act of 1986, Pub.
        L. No. 99-570 (Oct. 27, 1986) (emphasis added).

1
2
3
4
5

> The term "arrested by a federal, state, or local law enforcement official" has been defined [by Congress] to require that an alien must have been (1) physically taken into custody, and (2) officially booked or charged, or (3) accorded an initial appearance before a judicial officer where the alien has been informed of the charges and the right to counsel.  The term has been defined in this manner to *ensure that the Service is not required to react to situations involving assumption of custody, and possible removal, of an alien whose civil rights may have been violated through illegal or unconstitutional detention by law enforcement officials.*  Requiring that the alien(s) be officially processed minimizes such concerns.

6     *See* 53 Fed. Reg. 9281 (1988) (emphasis added); *see also* 8 C.F.R. § 287.1(d) (setting forth the

7     above-described definitions).

8         Even if 8 U.S.C. § 1357(d) permitted broader implementation of detainer authority – it does

9     not – the agency has never attempted to expand its interpretation through promulgation of a

10    regulation that would permit the initiation of custody through warrantless arrests.  In 1990, the INS

11    noted that a "detainer is merely a notice to an alien's custodian that the Service is interested in

12    assuming custody of the alien *when he is released from his incarceration*."  *See* 55 Fed. Reg. 43326

13    (Oct. 29, 1990) (emphasis added).  Four years later, the INS cited commentary stating, "A detainer

14    is the mechanism by which the Service requests that the detaining agency notify the Service of the

15    date, time, or place of release of an alien *who has been arrested or convicted under federal, state,*

16    *or local law*."  *See* 59 Fed. Reg. 42406, 42407 (Aug. 17, 1994) (emphasis added).  There have been

17    no further amendments to the regulation to suggest that the agency has since supplemented its

18    understanding of detainers.

19        Because Defendants' purported interpretation of the regulation is directly at odds with the

20    agency's understanding at the time of its promulgation and even subsequent amendments, it is

21    entitled to no deference by this Court.  *See Miller v. Cal. Speedway Corp.*, 536 F.3d at 1028 (citing

22    *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

23
24

    **C.**   **Defendants' Interpretation – Treating Detainers as Warrants – Conflicts with Congress's Clear Limits on Civil Immigration Arrests.**

25        Congress has set out clear limitations on the arrest authority of immigration agents.  First,

26    arrests may be made pursuant to a warrant issued by the Attorney General under specified

27    circumstances.  *See* 8 U.S.C. § 1226; 8 C.F.R. § 236.1(b) (arrest warrants may be executed "[a]t the

28    time of issuance of the notice to appear, or any time thereafter and up to the time removal

1 proceedings are completed"); 8 U.S.C. § 1229(a) (notice to appear must include nature of

2 proceedings, legal authority for proceedings, acts or conduct alleged to be in violation of law,

3 charges against the alien and statutory provisions at issue).[4]

4       Second, Congress has identified specific conditions under which immigration agents can

5 make arrests for civil immigration violations *without* a warrant – namely, where agents have

6 probable cause to believe both (1) that the arrestee is present in the United States in violation of

7 immigration law, and (2) that the arrestee is likely to escape before a warrant could be obtained for

8 his arrest.  8 U.S.C. § 1357(a)(2).  Warrantless arrestees must be taken "without unreasonable

9 delay" before a nonarresting ICE agent for a probable cause determination.  *See* 8 U.S.C.

10 § 1357(a)(2).  Thus, Congress provided procedures to ensure that immigration arrests be supported

11 by probable cause, with or without a warrant.

12       By contrast, immigration detainers can be issued "at any time" to seek notification when a

13 person *in custody* of a local, state or federal law enforcement agency is going to be released.

14 8 C.F.R. § 287.7.[5]  The detainer authorizes prolonging the detention no more than a few days in

15 order to allow ICE to take custody of the person.[6]  The face of the detainers indicate that the reason

16 for the detainer could be (1) that an *investigation has been initiated* to determine whether the

17 person is subject to removal, (2) that a Notice to Appear or other charging document was served on

18 the person, (3) that a warrant of arrest has been served on the person, or (4) the person has been

19 ordered removed from the United States.  *See* Mass Decl., Ex. A (Doc. No. 63).  Because it is not

20 intended to initiate custody, there are *no standards* governing the level of suspicion an immigration

21 agent must have to initiate an investigation that warrants issuance of a detainer.

22

23

24   [4]  Particularized probable cause is necessary for administrative search warrants that authorize
individual immigration arrests.  *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), *Int'l Molders' and
Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 552 n.5 (9th Cir. 1986).

25   [5]  Because Congress expressly used the words "detainer" and "warrant" in separate provisions of

26 the INA, the Court may assume "it intended each to have a particular, nonsuperfluous
meaning."  *See Bailey v. United States*, 516 U.S. 137, 146 (1995), *superseded by* 18 U.S.C.

27 924(c).  *Cf.* 8 U.S.C. § 1357(d)(detainers) and 8 U.S.C. §1226(a) (authorizing issuance of
warrants).

28   [6]  Plaintiffs do not concede the constitutionality of prolonging local custody for four days where
there is not probable cause for the new grounds of detention.

1    Since Congress imposed requirements for immigration arrests, § 287.7 cannot be read to

2    allow the use of immigration detainers to *initiate* local custody of persons suspected only of civil

3    immigration violations.  If § 287.7 conferred such authority, the specific rules governing the

4    issuance of arrest warrants would be rendered mere surplusage: ICE agents would always be able to

5    use detainers to avoid complying with the standards governing warrants.  Detainers also could be

6    used to authorize warrantless arrests without probable cause by local law enforcement agencies,

7    raising serious constitutional concerns.  *DeBartolo Corp. v. Florida Gulf Coast Trades Council*,

8    485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)) ("every

9    reasonable construction must be resorted to, in order to save a statute from unconstitutionality").

10   Defendants' interpretation would frustrate the scheme Congress has established to govern arrests,

11   and is contrary to law.[7]

12   Federal Defendants suggest their proposed interpretation – if valid – would be a reasonable

13   exercise of the Secretary's authority because, "an illegal alien's presence in the United States is a

14   continuing violation of the immigration laws."  Fed. Mot. at 7 (citing *Reno v. American-Arab Anti-*

15   *Discrimination Comm.*, 525 U.S. 471, 489 (1999)).  Whether it *would* be a reasonable regulation is

16   not the point, because § 287.7 simply does not authorize issuance or use of detainers to initiate

17   local custody.  Such a reading conflicts with both the regulation's language and the statutory

18   scheme in which it resides.  "Regardless of how serious the problem an administrative agency seeks

19   to address . . . it may not exercise its authority 'in a manner that is inconsistent with the

20   administrative structure that Congress enacted into law.'"  *FDA v. Brown & Williamson*, 529 U.S.

21   120, 125 (2000).  Moreover, Defendants' misreading of the regulation is totally unnecessary to

22   address concerns regarding the continuing presence of unauthorized aliens.  Any individual for

23   whom an ICE agent has probable cause of unlawful presence and flight risk can be arrested without

24   a warrant, taken directly into federal custody, and provided the procedural protections due

25   warrantless immigration arrestees.

26

27   _____

28   [7]   Courts do not lightly infer a delegation from Congress to an agency to broadly affect the rights
     of so many out of plain sight of the democratic process.  *See Brown & Williamson Tobacco
     Corp.*, 529 U.S. at (2000).

**D.     The Agency's Purported Interpretation is a *Post Hoc* Rationalization Not Entitled to Deference.**

Federal Defendants argue that Plaintiffs' position conflicts with the disclaimer language in INA § 287(g)(10).[8]  Fed. Mot. at 7.  But § 287(g) agreements contemplate local/federal immigration collaboration to identify civil immigration violations of persons who are already in local custody for *criminal arrests*, not authorizing local officers to make civil immigration arrests.  In response to concerns about racial profiling and "[t]o address concerns that individuals may be arrested for minor offenses as a guise to initiate removal proceedings," the current administration has specified in its § 287(g) form Memorandum of Agreement that the *criminal* arrests that initiate local custody be pursued to completion by local authorities *before* immigration authorities assume custody.  *See* DHS Press Release, "Secretary Napolitano Announces New Agreement for State and Local Immigration Enforcement Partnerships & Adds 11 New Agreements" (July 10, 2009).[9]

Finally, Plaintiffs have alleged that Defendants' stated interpretation is not the common practice elsewhere in the country.  *See* SAC ¶¶ 46-47.  Assuming this fact is true, as the Court must, Federal Defendants' interpretation should not be entitled to deference in light of the agency's historical understanding of detainers.  *See I.N.S. v. Cardoza-Fonseca,* 480 U.S. 421, 446 n.30 (1987) ("An additional reason for rejecting the INS's request for heightened deference to its position is the inconsistency of the positions the BIA has taken through the years.  An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view") (citations omitted).

---

[8]      § 287(g)(10) of the INA, 8 U.S.C. § 1357(g)(10) states that nothing in subsection (g), which creates the authority for formal agreements through which local law enforcement agencies can be authorized to carry out immigration enforcement functions "to the extent consistent with State and local law," shall be construed to require an agreement for local law enforcement agencies to "communicate" or "cooperate" with the Attorney General in furtherance of immigration enforcement.  Nothing in subsection (g) or (g)(10) extends authority to local law enforcement agencies that is not found elsewhere in state or federal law.

[9]      *See* http://www.dhs.gov/ynews/releases/pr_1247246453625.shtm; *also IMMIGRATION ENFORCEMENT: Better Controls Needed Over Program Authorizing State and Local Enforcement of Federal Immigration Laws*, United States Government Accountability Office (January 2009), at http://www.gao.gov/new.items/d09109.pdf at 13 ("according to ICE officials and other ICE documentation, 287(g) [§ 1357(g)] authority is to be used in connection with an arrest for a state offense" and "the processing of individuals for possible removal is to be in connection with a conviction of a state or federal felony offense").

As a newly-minted, *post hoc* justification for its practices first advanced in litigation, Defendants'
reading of the regulation is simply not entitled to *any* deference.  *See Defenders of Wildlife v.
Norton*, 258 F.3d 1136, 1146 n.11 (9th Cir. 2001) ("Nor do we owe deference to the interpretation
of the statute now advocated by the Secretary's counsel – newly minted, it seems, for this lawsuit,
and inconsistent with prior agency actions – as we ordinarily will not defer 'to agency litigating
positions that are wholly unsupported by regulations, rulings, or administrative practice'").

### III.   8 C.F.R. § 287.3 CREATES SUBSTANTIVE, ENFORCEABLE RIGHTS.

#### A.   Section 287.3 Constitutes a Substantive Rule.

As with their unauthorized use of immigration detainers, Federal Defendants continue to
ignore limitations on their authority by disobeying ICE's own administrative rules under 8 C.F.R. §
287.3.  "Where the rights of individuals are affected, it is incumbent upon agencies to follow their
own procedures.  This is so even where the internal procedures are possibly more rigorous than
otherwise would be required."  *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *Vitarelli v. Seaton*, 359
U.S. 535, 539-540 (1959); *see also Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954); *Ariz.
Grocery Co. v. Atchison*, 284 U.S. 370, 389 (1932); *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C.
Cir. 2003) (Accardi doctrine "requires federal agencies to follow their own rules, *even gratuitous
procedural rules* that limit otherwise discretionary actions") (emphasis added).[10]

Agency pronouncements are held to be enforceable against agencies when they
1) "prescribe substantive rules" and 2) "conform to certain procedural requirements."  *United States
v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982) (quoting *Rank v. Nimmo*,
677 F.2d 692, 698 (9th Cir. 1982)).  "To satisfy the first requirement the rule must be legislative in
nature, affecting individual rights and obligations; to satisfy the second, it must have been
promulgated pursuant to a specific statutory grant of authority and in conformance with the
procedural requirements imposed by Congress."  *Id.*  As § 287.3 was promulgated pursuant to

---

[10]   Agency rule and regulations are enforceable under the Administrative Procedure Act (APA)
and the Due Process Clause of the Fifth Amendment.  *See Accardi*, 347 U.S. at 268 (Due
Process Clause), *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 928 (9th Cir. 2008) (APA).
Thus, this discussion relates to Plaintiffs' Sixth and Eighth Claims for Relief.  By contrast,
*Chairez v. INS*  involved the question whether § 1357(a)(2) created a private right of action for
damages and did not address whether that provision would be enforceable through the APA or
Due Process Clause. 790 F.2d 544 (6th Cir. 1986).

1    rulemaking authority conferred by Congress under the terms of the Administrative Procedures Act,

2    the second requirement is satisfied.

3           As to the first, § 287.3 is a legislative rule that affects substantive rights.  By its terms,

4    § 287.3 sets out the obligations of agency officers and the rights of aliens who are arrested without

5    a warrant.  Published in the Code of Federal Regulations, it is not hidden from public view in an

6    agency manual, as in the typical case where an internal guidance is found to be non-binding.  *Cf.*

7    *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) (manual for agency appellate staff not binding on

8    agency), *Western Radio Services Co. v. Espy*, 79 F.3d 896, 900-01 (9th Cir. 1996) (Forest Service

9    handbooks and manuals not binding on agency).  The Board of Immigration Appeals has held that

10   § 287.3(c), which requires that aliens arrested without a warrant be notified of their right to

11   counsel, is specifically intended to benefit aliens.  *See In re Garcia Flores*, 17 I. & N. Dec. 325,

12   329 (BIA 1980).  Thus, the provisions of this regulation do not merely inform aliens of their rights

13   and officers of their duties, but set out substantive rights that can be enforced in courts.  *Cf. Jolly v.*

14   *Listerman*, 672 F.2d 935, 940-41 (D.C. Cir. 1982) (merely informative pronouncements not

15   enforceable).  Accordingly, 8 C.F.R. § 287.3 is not mere "internal guidance," and is binding upon

16   the agency.

17        **B.    Section 287.12 Cannot  Effectively Disclaim the Rights in Section 287.3.**

18          Defendants claim that their obligation to follow § 287.3 is excused by the agency's own

19   pronouncement in § 287.12 that the regulation amounts to "internal guidance" and does not create

20   enforceable rights.[11]  Fed. Mot. at 9.  However, courts look beyond an agency's own

21   characterization of a rule to determine whether the rule in question is a binding regulation that the

22   agency must follow.  *See United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir.

23   2000) (citing *Mt. Diablo Hosp. Dist. v. Bowen*, 860 F.2d 951, 956 (9th Cir. 1988)).

24          Disclaimers that abrogate substantive rights should not be given effect by a court when its

25   application would insulate egregious government action from any review.  Federal Defendants'

26

27   [11]   Federal Defendants' legal arguments concerning the operation of 8 C.F.R. §§ 287.7 and 287.12
        appears to be the only basis for dismissal Plaintiffs' Sixth and Eighth Claims for Relief.
28      Plaintiffs seeks compliance with the flight risk determination requirements for warrantless
        arrests under § 1357 under the APA and Due Process Clause as well.

1    interpretation of § 287.12 would render § 287.7 merely advisory as well, thereby eviscerating the

2    48-hour (plus weekend) limitation for local custody based on immigration detainers and allowing

3    local law enforcement to detain people *indefinitely* in local custody on the basis of pending

4    "investigations" of possible civil immigration violations.  *See* 8 C.F.R. § 287.7(d).  Boilerplate

5    disclaimers of the enforceability of regulations have been given effect only when the regulations in

6    question do not affect substantive rights, or are committed to the agency's prosecutorial discretion,

7    *i.e.* they would not be enforceable *even without a disclaimer. Kaiser Foundation Health Plan, Inc.*

8    *v. Sebelius*, 2009 WL 2044699, at *10 (N.D. Cal. 2009) (manual not binding on agency because it

9    does not confer substantive rights); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141,

10   1152-53 (D.C. Cir. 2006) (regulations for issuing subpoenas not reviewable because they are within

11   the exercise of prosecutorial discretion and not intended to benefit others).[12]  The disclaimer in §

12   287.12 purports to do away with substantive rights.  In this sense it is *sui generis* – Plaintiffs have

13   not found, nor have Defendants cited, any cases giving effect to an agency's disclaimer that a

14   substantive regulation published in the Code of Federal Regulations is not enforceable.[13]

15           Critically, the operation of § 287.12 as written would amount to a change in the agency's

16   position with respect to the obligations of its agents and the rights of aliens without a reasoned

17   basis.  The protections set out in 8 C.F.R. § 287.3 date back to 1957.  *See* 22 F.R. 9808 (Dec. 6,

18   1957).  The disclaimer of enforceability in § 287.12 did not come into effect until 1995 when it was

19   originally codified as 8 C.F.R. § 287.11.  *See* 59 FR 42406, 42420 (Aug. 17, 1994).  Assuming

20   *arguendo* that § 287.12 were valid, the provisions of § 287.3 would have been enforceable by

21   courts for *decades* until they suddenly weren't.  When an agency changes course, it "must supply a

22   reasoned basis indicating that prior policies and standards are being deliberately changed, not

---

[12]  Similarly, *United States v. Donaldson*, 493 F.Supp.2d 998 (W.D. Ohio 2006), is inapposite, as it involves the Justice Department's failure to follow an internal manual, rather than a substantive regulation published in the Code of Federal Regulations.

[13]  Defendants only cite dicta from one case, *Navarro-Chalan v. Ashcroft*, 359 F.3d 19 (1st Cir. 2004), in support of their argument.  *See* Fed. Mot. at 10.  *Navarro-Chalan* addressed the rights of an arrested alien held pursuant to a *warrant*, and therefore § 287 did not apply.  *See Navarro-Chalan*, 359 F.3d at 23 (leaving open whether  § 287.12 could bar a plaintiff from "pursuing remedies for regulatory violations where constitutional rights are at stake or where the violation affects the overall fairness of the proceeding") (citing *Navia-Duran v. INS*, 568 F.2d 803, 808 (1st Cir. 1977)) (internal quotes omitted).

1   casually ignored[.]"  *See Greater Boston Tel. Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970);

2   *Motor Vehicle Mfrs. Ass'n. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983);

3   *also Ramaprakash v. FAA*, 346 F.3d 1121, 1124-25 (D.C. Cir. 2003) (Roberts, J.).  As there is

4   nothing in the record that sets out a reasoned analysis explaining why the provisions of § 287.3

5   should have become unenforceable, the disclaimer of § 287.12 is invalid as a matter of law.

6   **IV.  ICE AGENTS CANNOT RELY ON THE UNAUTHORIZED ACTIONS OF LOCAL LAW ENFORCEMENT AGENCIES TO OVERCOME STATUTORY LIMITS ON THEIR AUTHORITY.**

7

8   Plaintiffs brought suit against both County and Federal actors because the ongoing

9   violations challenged in this case are grounded in a collaborative scheme in which the authority of

10  local officers to make traffic stops is used as an opportunity for federal immigration enforcement.

11  It is a reciprocal arrangement: where there is no criminal basis for arrest and prosecution, the

12  Sheriff's Department uses civil immigration law as a tool to eliminate people from the community

13  that it sees as threatening.  MAGNET's stated goal of targeting "undocumented alien gang

14  members" supports this view of the relationship.  SAC ¶ 31.

15  In California, it is not a *crime* to be a gang member, and indicia of gang membership do not

16  justify stops and searches under the Fourth Amendment.  *People v. Rodriguez*, 21 Cal. App. 4th

17  232, 239 (1993).  Even stops made in the course of joint operations aimed at targeting

18  undocumented gang members must be supported by reasonable suspicion of criminal activity or

19  unlawful presence. *Id.; Lau v. INS*, 445 F.2d 217 (D.C. Cir. 1971), *cert. denied*, 404 U.S. 864

20  (1971).  That suspicion cannot be predicated on the detained person's racial characteristics or

21  location in a particular neighborhood, and questioning regarding immigration status can only be

22  justified by reasonable suspicion regarding the legitimately detained person's immigration status.

23  *United States v. Rodriguez*, 976 F.2d 592 (9th Cir. 1992); *Nicacio v. INS*, 797 F.2d 700, 703 (9th

24  Cir. 1985) (Mexican appearance insufficient to justify stop in areas where INS suspected high

25  concentration of illegal aliens).  The string of circumstances here – that suspected gang

26  membership is not a basis for state law stops, MAGNET's stated goal of targeting "undocumented

27  alien gang members," the experience of Plaintiff *non*-gang members being targeted, searched, and

28  seized without compliance with legal standards, and Defendants' mischaracterization of Plaintiffs

*as* gang members by Defendants – raises a strong inference of systemic Fourth Amendment and Equal Protection violations.

## V.   PLAINTIFFS HAVE STATED CONSTITUTIONAL CLAIMS AGAINST FEDERAL DEFENDANTS FOR INJUNCTIVE RELIEF AND DAMAGES.

### A.   Plaintiffs Have Already Overcome a Challenge to Their Constitutional Claims for Injunctive Relief.

As already held by this Court in its July 31, 2009 Order (Doc. No. 121), Plaintiffs have sufficiently pleaded for purposes of injunctive relief that Federal Defendants "engaged in a pattern or practice of constitutional violations or policies promoting constitutional violations including racial profiling" to withstand a motion to dismiss.  July 31 Order at 18 (citing *Rodriguez v. California Highway Patrol*, 89 F.Supp.2d 1131, 1142 (N.D. Cal. 2000) (noting that plaintiffs were entitled to proceed with discovery to attempt to establish an evidentiary basis for their claims for injunctive relief)).  Plaintiffs have sought an order enjoining extremely specific conduct.  If Plaintiffs prevail in proving that the alleged conduct is ongoing and violates the law, the Court can certainly enjoin that conduct.  *See* Tr. of Proceedings (April 22, 2009) at 48, ll. 9-12 (Doc. No. 79) ("If you can prove that they violated the Fourth Amendment, then I guess in the way in which the Fourth Amendment was violated, I can indeed enjoin specific conduct").  Further argument regarding the propriety of relief sought under Plaintiffs' equal protection claims is addressed below. *See infra* at 16.

### B.   Plaintiffs Have Alleged Violations of Clearly Established Fourth Amendment Rights By Individual Federal Agents.

#### 1.   Plaintiffs Have Alleged a Series of Fourth Amendment Violations.

The Fourth Amendment rights and violations alleged by Plaintiffs in the SAC are "clearly established," for qualified immunity purposes.  Plaintiffs allege that Huelga and Merendino participated in the stopping of the car in which Sanchez-Lopez was a passenger without having a reasonable suspicion that its occupants were present without authorization and without their County counterparts having reasonable suspicion of criminal activity or a traffic infraction .[14]  *United*

---

[14]   The Ninth Circuit's "integral participant" rule "extends liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves."  *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir.

1   *States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) (border patrol officers "may stop vehicles only

2   if they are aware of specific articulable facts, together with rational inferences from those facts, that

3   reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country");

4   *Terry v. Ohio*, 392 U.S. 1, 26 (1968) (exception to probable cause requirement allowing limited

5   seizure where there is "articulable suspicion that a person has committed or is about to commit a

6   crime").  Huelga and Merendino also subjected Sanchez-Lopez to a prolonged detention unrelated

7   to the purpose of the stop and a search without the requisite level of cause. SAC ¶¶ 77-80; *Florida*

8   *v. Royer*, 460 U.S. 491, 500 (1983) (*Terry* stop should be "temporary" and last only as long as

9   "necessary to effectuate the purpose" of stop); *Terry*, 392 U.S. at 26, (personal and vehicle searches

10   only reasonable where there is probable cause to believe areas searched contain evidence of

11   criminal activity or a reasonable belief the person searched is armed and dangerous).[15]

12        Defendants Huelga and Merendino correctly set forth the circumstances in which they may

13   make arrests for civil immigration violations – either with a warrant, or with probable cause to

14   believe the person is present without authorization and "likely to escape before a warrant can be

15   obtained."  Fed. Mot. at 20 (citing 8 U.S.C. § 1357(a)(2)).  It is well established that a warrantless

16   immigration arrest is unauthorized absent a flight risk determination, and therefore, unreasonable

17   under the Fourth Amendment.  *Mountain High Knitting v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995)

18   (flight risk determination required element of warrantless immigration arrest), *U.S. v. Khan*, 324

19   F.Supp.2d 1177, 1187-88 (D. Colo. 2004) (suppressing statements made within 48 hours of

20   unlawful arrest where no probable cause of flight risk).[16]  Huelga and Merendino's instruction to

21   _____

22   2009).  *See also Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  For some of
      Plaintiffs' claims, Defendants Huelga and Merendino are liable under this rule for constitutional
      violations committed by groups or teams of which they were members.

23   [15]   In his immigration proceedings, Plaintiff Sanchez Lopez successfully moved to suppress
24   information gained through the stop at issue in this case, SAC ¶ 89, despite a higher standard
      for suppression of evidence in immigration proceedings.  *See Orhorhaghe v. INS*, 38 F.3d 488,
25   490-91 (9th Cir. 1994) (only "egregious" violations of the Fourth Amendment justify
      suppression of evidence in immigration proceedings).

26   [16]   The Supreme Court has recognized that the reasonableness of warrantless administrative arrests
      depends on compliance with congressionally mandated standards.  *See, e.g., Michigan v. Tyler*,
27   436 U.S. 499, 506 n.5, 508 (1978) (recognizing that for administrative searches enforcing local
      codes, probable cause exists *if* the officers satisfy "reasonable legislative or administrative
28   standards for conducting" the search in question) (quoting *Camara v. Municipal Court*, 387
      U.S. 523, 538 (1967)); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 74, 77 (1970)

1    Salkin to arrest Sanchez-Lopez and Huelga and Salkin's joint arrest of Sonato-Vega were thus

2    unreasonable under clearly-established Fourth Amendment law.  SAC ¶¶ 81, 100.  Moreover, the

3    searches conducted by Huelga and Merendino cannot be justified by the "search incident to arrest"

4    doctrine, in that the arrests of Sanchez-Lopez and Sonato-Vega themselves violated the Fourth

5    Amendment.  *Cf. United States v. Robinson*, 414 U.S. 218, 226 (1973).

6          Finally, Plaintiffs state a claim under the Fourth Amendment for Federal Defendants'

7    failure to provide them a probable cause determination within 48 hours of a warrantless arrest.

8    *County of Riverside v. McLaughlin*, 500 U.S. 44, 56, 57 (1991) (officials have presumptively

9    unconstitutionally delayed hearing if they wait longer than 48 hours to provide probable cause

10   hearing).[17]  Merendino and Huelga, as arresting officers, should have been responsible for ensuring

11   that their warrantless arrestees were given a proper probable cause hearing.  Indeed, 8 U.S.C. §

12   1357(a)(2) and C.F.R. § 287.3 also demand it.[18]

13          **2.     Federal Defendants' Reliance on Their Purported Interpretation of
                      8 C.F.R. § 287.7 Does Not Confer Immunity.**

14          Defendants claim qualified immunity for *all* Fourth Amendment violations based on their

15   reliance on an unreasonable interpretation of their detainer power, even though that interpretation

16   could only be a defense to Plaintiffs' unlawful detention in the County Jail.  Fed. Mot. at 18, 21.

17   Regardless, the plain language of the regulation is enough to put a reasonable ICE agent on notice

18   of its intended scope.  Where "an officer . . . unlawfully enforces an ordinance in a particularly

19   egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds

20   of the ordinance," qualified immunity does not apply.  *Grossman v. City of Portland*, 33 F.3d 1200,

21   1210 (9th Cir. 1994)  Courts routinely decline to shield officers from personal liability when, as

22   _____

23   (holding constitutionally unreasonable a seizure that did not comport with the search and
     seizure standards fashioned by Congress).

24   [17]  The *McLaughlin* rule is not limited to criminal arrests, and has been applied to customs
     detentions in the interior of the country.  *See United States v. Adekunle*, 2 F.3d 559, 562 (5th

25   Cir. 1993) (holding *McLaughlin*'s 48-hour time limit applicable to border detention by customs
     officials to determine reasonableness of detention); *United States v. Contreras*, 197 F. Supp.

26   1173, 1173-76 (N.D. Iowa 2002).  *But see Rhoden v. United States*, 55 F.3d 428, 432 n.7 (9th
     Cir. 1995) (*McLaughlin* did not apply to detention at the border).

27   [18]  Plaintiff Committee for Immigrants Rights retains injunctive relief claims for Fourth
     Amendment violations stemming from the immigration detainer-based prolonged detention of

28   persons who would otherwise be released from local custody, including Defendants' failure to
     provide a probable cause determination within 48 hours under *McLaughlin*.  *See* SAC ¶ 151(h).

1   here, their actions are based on unreasonable or overly broad interpretation of a statute or regulation

2   or when their actions violate fundamental constitutional principles. *See Carey v. Nevada Gaming*

3   *Control Bd.*, 279 F.3d 873, 882 (9th Cir. 2002); *Golden Day Schs., Inc. v. Prillo*, 118 F.Supp.2d

4   1037, 1046-47 (C.D. Cal. 2000)); *Papst v. Bay*, 354 F.Supp.2d 1175, 1177-78 (D. Or. 2005).[19]

5   Moreover, given the questions raised about the agency's *true* interpretation of 8 C.F.R. § 287.7,

6   Plaintiffs should have an opportunity to explore Defendants' training and knowledge through

7   discovery.[20]

8       **C.    Plaintiffs Have Stated Equal Protection Claims Under the Fifth Amendment.**

9       Federal Defendants' argument against Plaintiffs' equal protection claims focuses on the

10  scope of Plaintiffs' proposed injunction and Plaintiffs' conspiracy claim.  Defendants do not,

11  however, dispute the involvement of Defendants Huelga and Merendino or otherwise raise a

12  qualified immunity defense specific to equal protection.  Instead, Defendants' mischaracterize

13  Plaintiffs' legal positions and disregard the specific facts Plaintiffs' have alleged which are

14  sufficient to raise an inference of race discrimination.

15      Plaintiffs do not contend, as Defendants suggest, that race may never play a role in law

16  enforcement activity.  *See* Fed. Mot. at 16.  For example, Plaintiffs agree that race is an appropriate

17  factor to consider as one of many identified characteristics in a particular suspect's profile.[21]

18  Instead, Plaintiffs allege that ICE agents, including Defendants Huelga and Merendino,

19  impermissibly use race as a factor to target Latinos where they do not have the requisite basis for a

20  _____

21  [19]  Defendants' citation to *Chairez v. INS* for proposition that an immigration hold can serve as the
      sole basis for a state official to arrest an individual is misleading. *Chairez* did not address

22      whether an immigration hold can be lawfully used for this purpose, but simply noted that it had
        occurred. 790 F.2d at 545 n.2.

23  [20]  Any doubt as to the ripeness of the qualified immunity claim should weigh in favor of denial of
        Defendants' motions, until additional discovery is conducted to develop the factual record.

24      "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."
        *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000); *see also Leatherman v. Tarrant*

25      *County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168-69 (1993).

26  [21]  This is consistent with Federal Defendants' own internal guidance, which states: "Federal law
        enforcement officers may not use race or ethnicity *to any degree*, except that officers may rely

27      on race and ethnicity in a *specific suspect description*.  This prohibition applies even where the
        use of race or ethnicity might otherwise be lawful." U.S. Department of Justice, Civil Rights

28      Division, *Guidance Regarding the Use of Race by Federal Law Enforcement Agencies* (June
        2003) (updated July 25, 2008) ("*DOJ Guidance*"), available at
        http://www.justice.gov/crt/split/documents/guidance_on_race.php.

1    stop for suspected immigration violations (and where their fellow MAGNET members do not have

2    reasonable suspicion of criminal activity to justify a stop).  Use of race to reach reasonable

3    suspicion is expressly barred.  *Brignoni-Ponce*, 422 U.S. at 885-86; *United States v. Montero-*

4    *Camargo*, 208 F.3d 1122, 1132, 1134-35 (9th Cir. 2000) ("Hispanic appearance is of little or no use

5    in determining which particular individuals among the vast Hispanic populace should be stopped

6    by law enforcement officials on the lookout for illegal aliens"); *Nicacio v. I.N.S.*, 797 F.2d 700,

7    703 (9th 1985) ("Hispanic-looking appearance and presence in an area where illegal aliens

8    frequently travel are not enough to justify a stop to interrogate the occupants of a vehicle."),

9    *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

10        "Determining whether invidious discriminatory purpose was a motivating factor demands a

11   sensitive inquiry into such circumstantial and direct evidence of intent as may be available."  *Vill.*

12   *of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  As it is rare that direct

13   evidence of discrimination exists, such as a racist remark or other "smoking gun," a plaintiff

14   making such allegations generally relies on circumstantial evidence.  *See, e.g., United States v.*

15   *Ortiz-Hernandez,* 276 F.Supp.2d 1113, 1117 (D. Or. 2003) (finding stop, arrest, and search of

16   defendant who had done nothing incriminating based at least in part on race and thus unlawful even

17   though direct evidence, such as discriminatory remarks, was absent).

18        Plaintiffs also need not allege that "similarly situated" non-Latinos were treated differently,

19   as suggested by Federal Defendants.  Fed. Mot. at 12, 16, 17 (citing *U.S. v. Turner*, 104 F.3d 1180

20   (9th Cir. 1997) and *U.S. v. Armstrong*, 517 U.S. 456 (1996)).  This standard, used in "selective

21   prosecution" rather than "selective enforcement" cases, does not apply here.  *See Awaboly v. City of*

22   *Adelanto*, 368 F.3d 1062, 1071 (9th Cir. 2004); *Rodriguez*, 89 F. Supp. 2d at 1141 (rejecting

23   argument that plaintiffs must satisfy "similarly situated" requirement).  While evidence of disparate

24   impact may be useful evidence of discrimination in a racial profiling case – and Plaintiffs have

25   alleged such impact – it is not a requirement.  *Rodriguez*, 89 F.Supp.2d at 1141. *See, e.g.,* SAC ¶¶

26   72, 216.

27        Plaintiffs have alleged facts that support both the elements of an equal protection claim –

28   that Defendants target Latinos for unjustified and/or pretextual stops, searches, and detentions

based on their race, and that race motivates Defendants' conduct.  Plaintiffs allege that Federal

Defendants, under the guise of a "Gang Task Force," conduct and participate in regular patrols in a

known Latino community.  SAC ¶¶ 31, 72.  Plaintiffs are Latino, were settled residents of Sonoma

County at the time of the relevant events, and are *not* gang members.  SAC ¶¶ 90, 109-11.

Plaintiffs Sonato-Vega and Sanchez-Lopez also allege that they, as *passengers* in cars whose

drivers were never cited for any traffic or other violation, were targeted by a teams of ICE and

Sheriff's Department officers and then searched without reasonable suspicion that they were armed

and dangerous.  SAC ¶¶ 30-32, 34-35, 62-64, 68, 75 77-80, 84, 92-94, 97-98, 103.[22]  Because these

and other allegations in the SAC raise an inference of discrimination, Federal Defendants' motion

to dismiss Plaintiffs' Equal Protection claims should be denied.

### D.   Federal Defendants Fail to Identify Any Defect in Plaintiffs' Due Process Claims.

Although they seek the dismissal of Plaintiffs' Sixth Claim for Relief with prejudice,

Federal Defendants' motion does not specifically identify any defect in the claim.  As set forth in

the SAC, Plaintiffs' due process claims against the Federal Defendants relate to ICE officials'

failure to comply with statutory and regulatory requirements, denying procedural protections due

civil immigration arrestees, and causing people to be detained in County custody for four days

without notice of the charges against them and an opportunity to respond.  SAC ¶¶163-166.  *See*

*Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Mathews v. Eldridge*, 424 U.S. 319 (1976) (notice

and opportunity to be heard).  In addition, the Committee seeks injunctive and declaratory relief

against the use of immigration detainers to prolong local custody of persons arrested on state law

grounds without notice and an opportunity to be heard.  SAC ¶ 164(e).

---

[22]   Because Sonato-Vega was first targeted by Defendant Salkin without a federal officer physically present, and during that initial (and subsequent) encounter, Sonato-Vega at no time revealed information about his immigration status, a jury could reasonably infer that any initial or subsequent conclusion regarding immigration status stemmed from the same invalid misuse of race to target people believed to be "undocumented alien gang members." *See Murillo v. Musegades*, 809 F.Supp. 487, 498-99 (W.D. Tex. 1992) (reasonable suspicion cannot be based on individual's refusal to answer questions or cooperate with immigration officer).

**VI.    Plaintiffs' Conspiracy Claims Under 42 U.S.C. §§ 1983 and 1985(3) Against Defendants Huelga and Merendino Are Proper.**[23]

**1.    Plaintiffs' Conspiracy Claims Are Based on Conduct Under Color of State Law.**

Plaintiffs' conspiracy claims are properly brought against Federal Defendants because County Defendants' purported authority to make traffic and other non-immigration-related stops is essential to the collaborative scheme that leads to the constitutional violations at issue in this case. *See Cabrera v. Martin*, 973 F.2d 735, 744 (9th Cir. 1992) (conduct under color of state law depends on if local actors play a "significant role") (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  "[W]hen federal officers are engaged in a conspiracy with state officials to deprive constitutional rights, the state officials provide the requisite state action to make the entire conspiracy actionable under section 1983." *Landry v. Duncan*, No. 87-4031, slip op. at 1 (9th Cir. March 9, 1989) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979), *rev'd in part on other grounds, cert. denied*, 446 U.S. 754 (1980).

Here, by engaging in a regular and ongoing practice of relying on the County's authority to stop people who appear to be "undocumented alien gang members" in furtherance of immigration enforcement, ICE agents are acting under color of state law.  County officers and ICE agents jointly stop drivers together based on the purported authority of the local officers to enforce traffic laws, both types of officers question and search individuals, and arrestees are booked in the *County* jail solely on the authority of immigration detainers.  *See*, *e.g.*, SAC ¶¶ 75, 82, 92, 93, 103.[24]  *See also Pls.' Opp. to County Mot.* at 8-9 (filed concurrently herewith).

---

[23]  Plaintiffs' conspiracy claim is not brought against the United States, as suggested by Federal Defendants. (Fed. Mot. at 11 n. 11). In addition, it should be noted while Plaintiffs' equal protection allegations are relevant to the conspiracy analysis, Plaintiffs' equal protection claims do not depend on the success of the conspiracy claim.

[24]  The case law upon which Federal Defendants rely (Fed. Mot. at 12) does not control this case. *See*, *e.g.*, *Danner v. Moore, 306 F.Supp. 433* (W.D. Penn. 1969) (involving "bare conclusory allegation of conspiracy with police," and nowhere requiring plaintiff to allege particular federal agent actions); *Billings v. United States*, 57 F.3d 797, 801(9th Cir. 1995) (where arrest in question was "initiated and effected *solely* by the Secret Service Agents, pursuant to the procedures and protocols of their [federal] agency") (emphasis added).

2.      **Plaintiffs Have Sufficiently Alleged Existence of an Agreement to Satisfy §§ 1983 and 1985(3).**

To prove the existence of a conspiracy, even at the summary judgment stage, proof of an agreement to conspire need not be overt and may be inferred on the basis of circumstantial evidence such as the actions of the defendants.  *See Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301-02 (9th Cir. 1999) (citations omitted); *Hampton v. Hanrahan,* 600 F.2d at 621 ("a plaintiff is not required to provide direct evidence of the agreement between the conspirators").[25]  "[S]howing that the alleged conspirators have committed acts that are unlikely to have been undertaken without an agreement may allow a jury to infer the existence of a conspiracy."  *Mendocino,* 192 F.3d at 1301 (citing *Kunik v. Racine County,* 946 F.2d 1574, 1580 (7th Cir. 1991)).

Plaintiffs allege several facts that make clear an agreement is in place between ICE agents and County Sheriff's officers, with the direct participation of Defendants Huelga and Merendino: regular joint patrols ongoing for at least the past four years and the concerted actions taken by Defendants Salkin, Merendino, Huelga and other officers on patrol, including their joint decisions to stop Latinos on apparently pretextual grounds, their mutual silence with respect to rights or charges when taking Plaintiffs' into custody, and their understood arrangement to issue or procure immigration detainers in order to initiate custody of Plaintiffs in County Jail before turning them over to ICE custody.  SAC ¶¶ 29, 64, 74, 82, 93, 99, 100.

Plaintiffs also allege the remaining required elements to state a claim under §§ 1985(3) and 1983.  Plaintiffs have specifically alleged a conspiracy, acts in furtherance of it, and the constitutional and statutory rights, including their rights to equal protection under the laws, Defendants have violated.  *See, e.g.,* SAC, Claims for Relief Nos. 1-6.  Plaintiffs' allegations in support of their equal protection claims lead to the reasonable inference that race-based animus underlies Defendants' conspiracy, *i.e.* that County and Federal Defendants shared an understanding that race was an appropriate factor for identifying individuals to contact, question, search, detain,

---

[25]  Again, the legal authority cited by Federal Defendants weighs in favor of denial of their motion.  *See, e.g., United Steelworkers of Am. v. Phelps Dodge*, 865 F.2d 1539, 1547 (9th Cir. 1989) (plaintiff's evidence of defendant's ability and opportunity to conspire with police buttressed direct evidence and permissible inferences arising from it).

1   and arrest in furtherance of their ongoing joint goal of targeting "undocumented alien gang

2   members."[26]

3          Because claims survive "so long as there is a possibility that the jury can 'infer from the

4   circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an

5   understanding' to achieve the conspiracy's objectives,'" Plaintiffs should be entitled to test their

6   allegations through discovery, and Federal Defendants' motion to dismiss the Ninth Claim should

7   be denied. *Hampton*, 600 F.2d at 621 (citations omitted); *see Twombly*, 550 U.S. at 569 n.14.

8   **VII.   THE PLAINTIFFS HAVE STATED THEIR CLAIMS AGAINST THE UNITED
           STATES UNDER THE FEDERAL TORT CLAIMS ACT ("FTCA").**

9          The FTCA permits lawsuits against the United States for tortious acts of government

10  employees within the scope of their official duties when a private person would be liable under the

11  same circumstances.  28 U.S.C. §§ 1346(b); *FDIC v. Meyer*, 510 U.S. 471 (1994).  Federal

12  Defendants argue that "[t]he facts Plaintiffs allege suggest that Officers Huelga and Merendino

13  were simply attempting to arrest persons who were illegally in the United States" and that their

14  actions were legal. Fed. Defs. MTD at 23.[27]  But the SAC alleges otherwise.  Federal Defendants

15  searched, arrested, and incarcerated Plaintiffs without lawful authority, motivated by improper

16  race-based discrimination.  These actions were tortious, and Plaintiffs' pleadings satisfy Rule 8.

17         **A.     The SAC Alleges False Imprisonment.**

18         False imprisonment occurs if "the defendant unlawfully detains the [plaintiff] for an

19  unreasonable period of time," even after an otherwise legal seizure or arrest.  *Fermino v. Fedco,*

20  *Inc.*, 7 Cal. 4th  701, 715 (1994); *Alterauge v. Los Angeles Turf Club*, 97 Cal. App. 2d 735, 736

21  (1950) (15 minute detention unreasonable).  Here, Federal agents caused the arrest and

22  imprisonment of Plaintiffs Sonato-Vega and Sanchez-Lopez outside the scope of their lawful

23

24  [26]  Contrary to Federal Defendants' insistence, "animus" is a term of art that need not be pleaded
         formulaically and does not require any malevolence on the part of the actor, much less overtly
25       racist statements.  Federal Mot. at 14.  The Supreme Court has made clear that this motivation
         requirement of § 1985(3) is not a test of "specific intent to deprive a person of a federal right
26       made definite by decision or other rule of law" and does not require "willfulness."  *Griffin*, 403
         U.S. at 102 n.10 (citations omitted); *see also Bray v. Alexandria Women's Health Clinic*, 506
27       U.S. 263, 272 (1993).

28  [27]  Indeed, the Federal Defendants claim – erroneously – that this Court ruled on the legality of the
         arrests in this case.  Fed. Mot. at 22.

privilege under 8 U.S.C. § 1357[28] caused their detention in the County jail without lawful privilege.[29]  SAC ¶¶ 20-68; 74-111.

### B.    The SAC Adequately Alleges the Assault and Battery Claims.

The SAC alleges that Federal Defendants intended to and caused harmful and offensive contact to Plaintiffs.  CACI 1301 (Dec. 2008 ed.) (elements of assault); BAJI 7.50 (Fall 2009 ed.) (elements of battery).  With Somona County police officers, Federal Defendants searched, arrested, and handcuffed Plaintiff Sanchez-Lopez.  SAC ¶¶ 78-83.  Federal Defendants and Sonoma County officers held, searched, kicked, handcuffed, and arrested Plaintiff Sonato-Vega, including painfully pulling Sonato-Vega's arms, all without legal privilege.  SAC ¶¶ 92-100, *see also* SAC ¶¶ 29-33, 37, 38-61, 63, 68.[30]  Those intentional acts caused harmful and offensive contact as well as emotional and physical suffering.  *Id*.  Plaintiffs provided no consent and were compelled to submit to the defendants' legal authority.  SAC ¶¶ 74-111; *Cole v. Doe*, 387 F.Supp.2d 1084, 1103 (N.D. Cal. 2005) (holding that consent was fact issue).

Law enforcement officers' entitlement to use reasonable force to make a valid arrest is irrelevant here.  Assault and battery claims lie when it is alleged that law enforcement acted unreasonably in violation of the Fourth Amendment.  *Nelson v. City of Irvine*, 143 F.3d 1196, 1207-08 (9th Cir. 1998); *see also Cole*, 387 F.Supp.2d at 1101.  Federal Defendants' illegal, non-consensual searches violated the Fourth Amendment and support these claims.  SAC ¶¶ 29-33, 37, 38-61, 63, 68, 74-111.[31]

### C.    Plaintiffs Have Pleaded Intentional Infliction of Emotional Distress.

The SAC properly alleges each element of intentional infliction of emotional distress

---

[28]  California courts apply federal law to determine whether an arrest by a federal officer was legally justified.  *Rhoden v. United States*, 55 F.3d 428, 431 (9th Cir. 1995).

[29]  Even assuming *arguendo* that any of the arrests were valid, a legal arrest does not cure subsequent false imprisonment.  *Fermino*, 7 Cal. 4th  at 715 (1994).

[30]  A party injured by an unjustified assault "may recover damages not only from the actual assailant, but from any other person who aids, abets, counsels, or encourages the assault."  *Ayer v. Robinson*, 163 Cal. App. 2d 424, 428 (2nd Dist. 1958).

[31]  Although physical pain is alleged, assault and battery claims do not require physical injury to be harmful or offensive.  Rather, injury is sufficient even if "only the feelings of such persons are injured by the act."  *Ware v. Dunn*, 80 Cal. App. 2d 936, 943 (1947).

1   ("IIED").  Federal Defendants' conduct was extreme and outrageous with intentional or reckless

2   disregard for the emotions of Plaintiffs.  *See, e.g.*, SAC ¶¶ 82-87, 94, 99, 102-107.  *See Cervantez*

3   *v. J.C. Penney Co.*, 24 Cal. 3d 579, 593 (1979) (elements of IIED).  Even when the evidence is in

4   conflict, allegations of an arrest "either with knowledge that plaintiff had not committed any

5   offense or with reckless disregard of whether he had or not" substantiates an IIED claim.  *KOVR-*

6   *TV, Inc. v. Superior Court*, 31 Cal. App. 4th 1023, 1028, 1031-1032 (1995); *Cervantez*, 24 Cal. 3d

7   at 593-594.  Furthermore, ICE's "position of … authority" over and intentional humiliation and

8   racial profiling of Plaintiffs are all factors that aggravate the outrageousness Federal Defendants'

9   conduct.  *Alcorn v. Anbro Engineering, Inc.*, 2 Cal. 3d 493, 498-499 (1970); *see also Heckler v.*

10  *Matthews*, 465 U.S. 728, 739-40, 740 n.7 (1984) (explaining harm caused by "discrimination

11  itself"); *see, e.g.*, SAC ¶¶ 82, 99.  Particularly egregious were ICE agents' threats to prolong

12  Sonato-Vega's detention and relocate him to a facility far from home if he did not agree to waive

13  his rights.  SAC ¶ 107.  Ultimately, if reasonable people may differ, the jury must decide if the

14  conduct is outrageous.  *Alcorn* , 2 Cal. 3d at 499.

15          Plaintiffs' allegations of humiliation, rough treatment, fear, anxiety, lack of sleep, inability

16  to eat, and foregoing legal rights out of desperation are sufficient to plead severe emotional distress.

17  *See, e.g.*, SAC ¶¶ 82, 84, 87, 92-97, 99, 102-105, 107; *Potter v. Firestone Tire & Rubber Co.*, 6

18  Cal. 4th 965, 1004 (1993).  Moreover, the California Supreme Court held that a "[p]laintiff's own

19  susceptibility to racial slurs *and other discriminatory conduct* is a question for the trier of fact, and

20  cannot be determined on demurrer."  *Alcorn*, 2 Cal. 3d at 499, n.4 (emphasis added).  Federal

21  Defendants' suggestion that the SAC only makes conclusory allegations is false, *see* Fed. Mot. at

22  24, and their arguments must fail.

23          **D.      Federal Defendants Owed a Duty of Care to the Plaintiffs.**

24          Federal Defendants' argument that there was no duty owed to the Plaintiffs must be rejected

25  because, in California, every person owes a duty of care to avoid harming others.  Cal. Civ. Code

26  1714(a); *Neighbarger v. Irwin Industries, Inc*., 8 Cal. 4th 532, 536 (1994).  *Lutgu v. California*

27  *Highway Patrol*, 26 Cal. 4th  703, 716, 718 (2001); *see also Pool v. City of Oakland*, 42 Cal. 3d

28  1051 (1986); *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1079-80 (1992); *Weirum v. RKO*

1   *General*, 15 Cal. 3d 40, 49 (1975) (distinguishing misfeasance from nonfeasance).  "Police officers

2   have a duty to intercede when their fellow officers violate the constitutional rights of a suspect."

3   *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (citation omitted).  The SAC alleges

4   that Federal Defendants' illegal detentions, searches, seizures, physical contacts, and incarcerations

5   were negligent actions – not inaction – in violation of the U.S. and California constitutions and

6   statutes, and the general duty not to harm others.  SAC ¶¶ 40, 42, 43, 66, 67, 240-44.[32]

7         **E.**    **Federal Defendants Tortiously Interfered with Plaintiffs' Constitutional Rights**

8                     **Under California Law.**

9         The United States is liable for damages under the FTCA for coercive interference with

10   Plaintiffs' rights under the California Constitution, a tort in California pursuant to Cal. Civ. Code §

11   52.1.[33]  *See Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004) (permitting a cause of

12   action under § 52.1 for unreasonable search and seizure though there was no claim that the police

13   used excessive force);  *Cole*, 387 F.Supp.2d at 1103 (violations of Article I, § 13 are enforceable

14   under § 52.1).  It is irrelevant whether a "tort based action for damages arises from the violation of

15   [the] California Constitution," because the source of liability in Plaintiffs' 21st Claim for Relief is

16   California's Bane Act, which created a statutory tort enforceable against private persons whether or

17   not acting under color of law.[34]  Fed. Mot. at 25.  Under the FTCA, the United States is liable

18   under Cal. Civ. Code § 52.1 just as if it were a private person.  28 U.S.C. §§ 1346(b).[35]

19

20

---

21   [32]  Although not necessary, the SAC alleges facts that show special relationships, because Federal
     Defendants created the foreseeable peril of causing Plaintiffs emotional distress.  *See Davidson
     v. City of Westminster*, 32 Cal. 3d 197, 207-08 (1982); *Ting v. United States*, 927 F.2d 1504,
22   1511 (9th Cir. 1991) (state's custodial relationship can create special relationship).

23   [33]  It is sufficiently clear from the SAC that the interfered with provisions of the California
     Constitution are Article I, §§ 7 and 13.  Federal Defendants admit as much.  Fed. Mot at 25.

24   [34]  For this reason, Federal Defendants' citations to *Katzberg v. Regents of Univ. of California*, 29
     Cal. 4th 300 (2002) (not discussing § 52.1), and *Manning v. City of Rohnert Park*, 2007 WL
25   1140434 (N.D. Cal. Apr. 17, 2007) (no discussion of § 52.1), are unavailing.

26   [35]  Federal Defendants' cases also fail to support their position.  In *Muynua v. U.S.* the plaintiff had
     failed to plead adequate facts to state a claim; the court did not identify any problem with
27   enforcing § 52.1 through the FTCA. 2005 WL 43960 (N.D. Cal. Jan. 10, 2005). Similarly, in
     *Delta Savings Bank v. United States*, 265 F.3d 1017 (9th Cir. 2001), the  Ninth Circuit held that
28   Cal. Civ. Code § 52.1 did not incorporate the Federal Civil Rights Act, but did *not* hold that §
     52.1 was not enforceable through the FTCA.  *Id.* at 1024.

1

**F.      Defendants' Actions Do Not Qualify for Any Exception to the FTCA.**

2          Despite their "governmental function," the FTCA provides liability for certain intentional

3   torts committed by federal investigative or law enforcement officers – including immigration

4   enforcement agents.  28 U.S.C. 2680(h); *Rhoden v. United States*, 55 F.3d 428 (9th Cir. 1995)

5   (applying FTCA when immigration officers detained plaintiff).  Federal Defendants have similarly

6   not met their burden to show that the discretionary functions exception should apply.  *See Prescott*

7   *v. United States*, 959 F.2d 793, 797, 799 (9th Cir. 1992) (burden on government to establish

8   exception).  It is well established that law enforcement decisions, though involving some element

9   of judgment, do not involve the sort of "social, economic, and political policy choices that

10  Congress intended to exempt from tort liability."  *Garcia v. United States*, 826 F.2d 806, 809 (9th

11  Cir. 1987).  When Defendants Huelga and Merendino decided to stop, search, arrest, and order

12  Plaintiffs to be held in the County jail, they also were not making the sort of policy choices

13  Congress intended to exempt from liability under the FTCA.[36]

14                              **CONCLUSION**

15         For the foregoing reasons, Plaintiffs respectfully request that the Federal Defendants'

16  Motion to Dismiss Plaintiffs' Second Amended Complaint be denied.

17  Dated:  December 16, 2009

18                              By /s/ Alfred C. Pfeiffer
                                   Alfred C. Pfeiffer, Jr.

19                                 LATHAM & WATKINS LLP
                                   Alfred C. Pfeiffer

20                              By /s/ Julia Harumi Mass
21                                 Julia Harumi Mass

22                                 Julia Harumi Mass
                                   Alan L. Schlosser
23                                    AMERICAN CIVIL LIBERTIES UNION
                                      FOUNDATION OF NORTHERN
                                      CALIFORNIA
24                                 Attorneys for Plaintiffs

25  ─────────────────
    [36] *Dalehite v. United States*, 346 U.S. 15, 28 (1953), cited by Defendants, established a broad
26  discretionary function exception, but has since been significantly narrowed.  *See Payton v.*
    *United States*, 679 F.2d 475, 479-480 (5th Cir. 1982) (describing narrowing by Supreme Court
27  and holding that conduct performed at "operational level" is not discretionary).  *Feres v. United*
    *States*, also cited by Defendants, involved the "relationship of military personnel to the
28  Government [which] has been governed exclusively by federal law," is inapposite.  340 U.S.
    135 (1950).