1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2  JOANN M. SWANSON (CSBN 88143)
   Chief, Civil Division
3  ILA C. DEISS, (NY SBN 3052909)
   Assistant United States Attorney
4  450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
5  Telephone: (415) 436-7124
   Fax: (415) 436-7169
6  E-mail: ila.deiss@usdoj.gov

7  Attorneys for the United States and
   Defendants Huelga and Merendino
8
   MICHAEL F. HERTZ
9  Deputy Assistant Attorney General, Civil Division
   DAVID J. KLINE
10 Director
   JOSHUA E. BRAUNSTEIN
11 Assistant Director
   COLIN A. KISOR (DC 497145)
12 Senior Litigation Counsel
   LANA VAHAB (DC 976203)
13 Trial Attorney
   Office of Immigration Litigation
14 Civil Division, Justice Department
   P.O. Box 878, Ben Franklin Station
15 Washington, D.C. 20044
   Tel: (202) 532-4331
16 Fax: (202) 305-7000
   Email: colin.kisor@usdoj.gov
17
   Attorneys for the United States
18
                 UNITED STATES DISTRICT COURT
19
                NORTHERN DISTRICT OF CALIFORNIA
20
                       OAKLAND DIVISION
21
   COMMITTEE FOR IMMIGRANT          )
22 RIGHTS OF SONOMA COUNTY,         )   No. C 08-4220 PJH
   FRANCISCO SANCHEZ-LOPEZ, and     )
23 CHRISTYAN SONATO-VEGA,           )
                                    )   **FEDERAL DEFENDANTS' REPLY TO**
24          Plaintiffs,             )   **PLAINTIFFS' OPPOSITION TO THE**
                                    )   **MOTION TO DISMISS THE SECOND**
25    v.                            )   **AMENDED COMPLAINT**
                                    )
26 COUNTY OF SONOMA; SHERIFF-       )   Date:  February 17, 2010
   CORONER BILL COGBILL and DEPUTY  )   Time:  9:00 a.m.
27 SHERIFF MORRIS ERIC SALKIN,      )   Place: Courtroom 3, 3rd floor
                                    )
28                                  )

1  | individually and in their official capacities;  )
2  | U.S. DEPARTMENT OF HOMELAND  )
   | SECURITY BUREAU OF IMMIGRATION )
3  | AND CUSTOMS ENFORCEMENT;  )
   | SPECIAL AGENT MARIO HUELGA and  )
4  | SPECIAL AGENT CHRIS MERENDINO,  )
   | individually and in their official capacities;  )
5  | DOES 1-50; and ROES 1-50, inclusive,  )
   | )
6  | Defendants.  )
   | )

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A.  Plaintiffs Have Failed to Articulate a Claim Under the Administrative Procedure Act Against the Federal Defendants Because the Federal Defendants' Use Of Detainers is in Accordance With the Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       1.  8 C.F.R. § 287.7 permits ICE to issue detainers to local law enforcement agencies "at any time" for illegal aliens, regardless of whether they are already in custody for a state law crime.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       2.  Allegations that Federal Defendants violated 8 C.F.R. § 287.3 does not give rise to a cognizable claim under the APA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       3.  Plaintiffs' have failed to state claims against the Federal Defendants for injunctive relief.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   B.  Plaintiffs Have Failed to Articulate a Claim Under 8 U.S.C. § 1983 and 8 U.S.C. § 1985 Against the Federal Defendants.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   C.  Plaintiffs' *Bivens* Claims Against Defendants Huelga and Merendino and Unknown ROES for Constitutional Violations Fail.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   D.  Plaintiffs Sanchez-Lopez and Sonato-Vega Have Failed to State Claims Against the United States Under the FTCA.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       1.  The FTCA's Waiver of Sovereign Immunity Does Not Apply to Plaintiffs' False Imprisonment Claim to the Extent it Challenges Detention Pursuant to Immigration Detainers.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       2.  Plaintiffs Have Failed to Articulate and Intentional Infliction of Emotional Distress and Assault and Battery Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       3.  The FTCA's Waiver of Sovereign Immunity Does Not Apply to Plaintiffs' Negligence Claim or Plaintiffs' California Constitutional Rights Claim.. . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ashcroft v. Iqbal,
  129 U.S. 1937 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

Askew v. Bloemker,
  548 F.2d 673 (7th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Awaboly v. City of Adelanto,
  368 F.3d 1062 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Berkovitz v. U.S.,
  486 U.S. 531 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Billings v. U.S.,
  57 F.3d 797 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cabrera v. Martin,
  973 F.2d 735 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Cato v. United States,
  70 F.3d 1103 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Chevron U.S.A. v. NRDC,
  467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Chrysler Corp. v. Brown,
  441 U.S. 281 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Closeout, Inc. v. DHS,
  513 F.3d 940 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Daly-Murphy v. Winston,
  837 F.2d 348 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Delta Sav. Bank v. US,
  265 F.3d 1017 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Doe v. See,
  557 F.3d 1066 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

FDIC v. Meyer,
  510 U.S. 471 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Gen. Dynamics Corp. v. U.S.,
  139 F.3d 1280 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gibson v. U.S.,
  781 F.2d 1334 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Griffin v. Breckenridge,
403 U.S. 88 (1971).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harlow v. Fitzgerald,
457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McCarthy v. United States,
850 F.2d 558 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Miller v. Cal. Speedway Corp.,
536 F.3d 1020 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mountain High Knitting, Inc. v. Reno,
51 F.3d 216 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Nat'l Cable & Telecom. Assn. v. Brand X Internet Servs,
545 U.S. 967 (2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Nurse v. United States,
226 F.3d 996 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Orsay v. United States Dep't of Justice,
289 F.3d 1125 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sabow v. United States,
93 F.3d 1445 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Scott v. Rosenberg,
702 F.2d 1263 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Terbush v. United States,
516 F.3d 1125 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Arenas-Ortiz,
339 F.3d 1066 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Encarnacion,
239 F.3d 395 (1st Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Gaubert,
499 U.S. 315 (1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Sotoj-Lopez,
603 F.2d 789 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V-1 Oil Co. v. Smith,
114 F.3d 854 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Vickers v. United States,
228 F.3d 944 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

W. Radio Servs. Co. v. U.S. Forest Serv.,
578 F.3d 1116 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Washington v. Davis,
426 U.S. 229 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wilkie v. Robbins,
    551 U.S. 537 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**STATE CASES**

Cochran v. Cochran,
    65 Cal. App. 4th 488, 76 Cal. Rptr. 2d 540 (1998). . . . . . . . . . . . . . . . . . . . . 13

Davidson v. City of Westminster,
    32 Cal. 3d 197 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fermino v. FEDCO, Inc.,
    7 Cal. 4th 701 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL RULES & REGULATIONS**

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9

Fed. R. Civ. P. 41(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Crim. P. 5(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**FEDERAL STATUTES**

8 C.F.R. § 287.12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

8 C.F.R. § 287.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

8 C.F.R. § 287.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

8 U.S.C. § 1103(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 U.S.C.  § 1103(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 U.S.C. §1357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

8 U.S.C. § 1357(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

8 U.S.C. § 1357 (g)(10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8 U.S.C. § 1985. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 U.S.C. §§ 702, 704, 706(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. §2680(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 2680(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATE STATUTES**

Cal. Civ. Code § 52.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

## INTRODUCTION

The Federal and County Defendants have moved to dismiss the Second Amended Complaint ("SAC"). Plaintiffs have opposed the motion ("Opposition"), and the Federal Defendants hereby Reply to the Opposition.[1]

As an initial matter, on December 22, 2009, the Court dismissed Plaintiff Medel Moyado and all of his claims from this action pursuant to Fed. R. Civ. P. 41(a)(2).

## ARGUMENT

**A.    Plaintiffs Have Failed to State a Claim Under the Administrative Procedures Act Against the Federal Defendants Because the Federal Defendants Use Detainers in Accordance With the Law.**

Defendants may issue detainers for illegal aliens at any time, and this Court should not enjoin the use of immigration detainers to initiate local custody of illegal aliens. *See* 8 C.F.R. § 287.7. Plaintiffs Committee for Immigrant Rights of Sonoma County and Sanchez-Lopez seek injunctive and declaratory relief under the Administrative Procedure Act ("APA") against Defendants ICE, Huelga, Merendino, and Roes 1-50, alleging violations of the Fourth and Fifth Amendments and the Immigration and Nationality Act ("INA") (SAC ¶¶ 151, 157, 164, 182).[2] This Court should decline to issue any relief, and should dismiss this case.

> 1.        8 C.F.R. § 287.7 permits ICE to issue detainers to local law enforcement agencies "at any time" for illegal aliens, regardless of whether they are already in custody for a state law crime.

The immigration detainer regulation was written broadly and flexibly in order to give maximum effect to the Secretary of the Department of Homeland Security's ("DHS") "power and duty to control and guard the boundaries and borders of the United States against the illegal entry of aliens." 8 U.S.C. § 1103(a)(4). Plaintiffs, however, ask this Court to read the regulation

---

[1] This Reply Brief addresses several of the arguments made by Plaintiffs in their Opposition. Any failure to address other arguments made in Plaintiffs' Opposition should not be construed as a concession regarding the merits of those arguments or claims. Rather, the Federal Defendants believe those arguments are adequately addressed in the Federal Defendants' motion to dismiss ("MTD").

[2] Plaintiff Sonato-Vega is no longer in the United States and Plaintiff Sanchez-Lopez is in the United States, but without legal immigration status. (SAC ¶¶ 89,108.)

1   restrictively and hold that ICE agents may not use a detainer to "initiate local custody" of an

2   illegal alien. (Opposition at 3.) Plaintiffs further state that their position is in "accord" with the

3   agency's "interpretation at the time the regulation was promulgated." (Opposition at 4.)

4   Plaintiffs point to some 1988 commentary in the Federal Register as purported support for their

5   position. (Opposition at 5.) Plaintiffs are wrong, because the current, applicable version of this

6   regulation clearly states that a detainer may be issued "at any time." 8 C.F.R. § 287.7(a).

7        First, the language from the Federal Register Plaintiffs rely on discusses the regulation as

8   it existed in 1989, when the regulation limited the INS's ability to issue detainers "only . . . in the

9   case of an alien who is amenable to exclusion or deportation proceedings" and it prohibited the

10  use of a detainer where the alien was eligible to apply for legalization or special agricultural

11  worker status. *See* 8 C.F.R. § 287.7(a) (1989). But the Plaintiffs ignore that 8 C.F.R. § 287.7

12  was amended to its current form in 1997, at which point the "at any time" language was added.

13  *See* 8 C.F.R. § 287.7 (1998). Clearly, the Agency intended to broaden the regulation at that time

14  to permit – as it states – detainers to be issued "at any time." In the current version, the other

15  restrictions in the regulation, regarding whether the alien was amendable to deportation or not,

16  were likewise deleted, providing further evidence that the Agency intended to broaden

17  application of the regulation. This Court should tehrefore hold that the plain language of 8

18  C.F.R. § 287.7 allows immigration agents to issue detainers for illegal aliens at *any time*, even if

19  that serves to cause local law enforcement to take "temporary detention at service request" of an

20  alien who is "not otherwise detained" by that agency. 8 C.F.R. § 287.7(d).

21       Plaintiffs argue that the Agency's interpretation of 8 C.F.R. § 287.7 is not entitled to

22  deference because Federal Defendants' "purported interpretation is a *post hoc* rationalization not

23  entitled to deference." (Opposition at 8.) In support of their argument, Plaintiffs point to a DHS

24  press release from July 10, 2009. (*Id.*) First, this press release sheds no light on this case

25  because it cannot – and does not purport to – interpret (let alone amend) the regulation. But

26  even if the regulation is ambiguous with respect to whether the Court should read an implied

27  restriction or qualifier into to the "at any time" language of the regulation, the Court must give

28  the Agency's interpretation "controlling weight unless it is plainly erroneous or inconsistent with

1  the regulation." *Miller v. Cal. Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008).  Given the

2  Agency's statutory duty to find and remove illegal aliens from this country its interpretation is

3  sound; rather it is Plaintiffs' narrow interpretation of the regulation that is inconsistent with the

4  very purpose of the regulation.

5         Moreover, the premise of Plaintiffs' detainer/arrest argument is flawed because the sum

6  of their argument boils down to their objection tot he facility they were temporarily housed in.

7  Plaintiffs acknowledge that immigration agents may arrest illegal aliens; and they do not quarrel

8  with the fact that as illegal aliens, Plaintiffs Sanchez-Lopez and Sonato-Vega were subject to

9  arrest.  Rather, Plaintiffs attempt to create a cause of action from the temporary, lawful detention

10  of these two men in the Sonoma County Jail.  Notably, Plaintiffs also do not contend that it

11  would have been illegal for ICE agents to arrest them and house them in an ICE detention

12  facility.[3]  But Plaintiffs have provided no support for their apparent argument that they should be

13  permitted to choose which local jail they are temporarily housed in pending immigration removal

14  proceedings.  Because the regulation expressly permits an ICE agent to issue a detainer "at any

15  time" this Court should dismiss Plaintiffs' causes of action that are founded on their erroneous

16  interpretation of 8 C.F.R. § 287.7.


18                    2.      Allegations that Federal Defendants violated 8 C.F.R. § 287.3 does not
                              give rise to a cognizable claim under the APA.

20         Without question, 8 C.F.R. § 287.12 precludes a cause of action under the APA by

21  Plaintiffs for any alleged violation of 8 C.F.R. § 287.3.  Section 287.12 states, in relevant part

22  that "[t]hese regulations do not, are not intended to, shall not be construed to, and may not be

23  relied on to create any rights, substantive or procedural, enforceable at law by any party in any

─────────────────────────

24         [3]  According to 8 C.F.R. § 287.7(d), the temporary detention is for a period "not to exceed

25  48 hours, excluding Saturdays, Sundays, and holidays."  Plaintiffs continue to refer to their "four

26  day" detention as "prolonged." (SAC ¶¶ 54-56.) However, Plaintiffs allege that Sanchez-Lopez was

27  detained in the Sonoma County Jail from "about 6:00pm on September 28, 2006" (a Thursday) until

28  "transferred to ICE custody on October 2, 2006" (a Monday).  (SAC ¶¶ 83, 86.)  Likewise, Plaintiff

Sonato-Vega was detained by ICE in the Sonoma County Jail from a Thursday to a Monday (August
2-6, 2007) (SAC ¶¶ 101, 106.)  Thus, neither Plaintiff  can allege that he was held in the Sonoma
County Jail for greater than 48 hours, excluding the weekends, as expressly permitted by the
regulation.

1   matter, civil or criminal." 8 C.F.R. § 287.12. Plaintiffs assert for the first time that "the

2   disclaimer of § 287.12 is invalid as a matter of law." (Opposition at 12.) The regulation is only

3   invalid if it is *ultra vires* to the INA. It is not. This Court should uphold 8 C.F.R. § 287.12 and

4   find that any violation of 8 C.F.R. § 287.3 does not create a cause of action for Plaintiffs.

5          The Supreme Court has stated that a grant of legislative authority to a federal agency need

6   not be specific before regulations the agency promulgates will be binding on courts, so long as

7   "the reviewing court [can] reasonably be able to conclude that the grant of authority contemplates

8   the regulation issued." *Chrysler Corp. v. Brown,* 441 U.S. 281, 308 (1979). Congress has

9   directed the Secretary of the Department of Homeland Security to "establish such regulations . . .

10  and perform such other acts as he deems necessary for carrying out his authority under the

11  provisions of this chapter." 8 U.S.C. § 1103(a)(3). Thus, the scope of 8 C.F.R. § 287.12 reflects

12  the Secretary's broad authority to do just that.

13         Further, the Secretary's interpretation of the statutes relating to the administration of

14  immigration laws and the powers to detain illegal aliens is entitled to deference under *Chevron*

15  *U.S.A. v. NRDC,* 467 U.S. 837 (1984); *see also Closeout, Inc. v. DHS,* 513 F.3d 940, 942 (9th

16  Cir. 2008). To the extent that there is any ambiguity as to whether or not the INA authorizes the

17  Secretary to determine the scope of the regulations promulgated in accordance with the INA,

18  *Chevron* requires a federal court to accept an agency's construction of an ambiguous statute if the

19  particular statute is within the agency's jurisdiction to administer, and the agency's construction

20  is reasonable. *See Nat'l Cable & Telecom. Assn. v. Brand X Internet Servs*, 545 U.S. 967, 980

21  (2005).

22         Because 8 C.F.R. § 287.12 does not exceed the scope of the Secretary's broad authority to

23  implement regulations to enforce immigration law, it is not *ultra vires* or in excess of the

24  statutory grant of authority. Accordingly, this Court should decline Plaintiffs' implicit invitation

25  to strike down 8 C.F.R § 287.12 and dismiss Plaintiffs' causes of action which arise under the

26  APA for any purported violations of 8 C.F.R. § 287.3.

27

28

3.    Plaintiffs' have failed to state claims against the Federal Defendants for injunctive relief.

The SAC does not allege sufficient facts required under Fed. R. Civ. P. 8 and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), to support any kind of constitutional violation or racial profiling claim for any remaining Plaintiff. *See Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct. 1937, 1949 (2009). The gravamen of Plaintiffs' Due Process claim relates to ICE officials' alleged failure to comply with 8 C.F.R. §§ 287.3 and 287.7(d), which would not have a constitutional dimension, even if those regulations created enforceable rights, which they do not. *See* 8 C.F.R. § 287.12; *see generally V-1 Oil Co. v. Smith,* 114 F.3d 854, 857 (9th Cir. 1997) (noting that "a violation of a statute or regulation is not a *per se* constitutional violation"). Moreover, Federal Defendants did not violated 8 C.F.R. § 287.7(d) because ICE may issue detainers at any time and Plaintiffs were held by the County for under 48 hours, excluding weekends.

Further, to sustain an Equal Protection claim, Plaintiffs must show that Federal Defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose. *See Washington v. Davis*, 426 U.S. 229, 239-42 (1976); *see generally United States v. Arenas-Ortiz*, 339 F.3d 1066 (9th Cir. 2003). To show discriminatory effect, Plaintiffs must demonstrate that they are members of a protected class and that similarly situated members of an unprotected class were treated dissimilarly. Plaintiffs must then demonstrate a discriminatory purpose, which requires them to show that Federal Defendants targeted them because of their race. *Washington,* 426 U.S. at 239. Even if Plaintiffs are correct that, under *Awaboly v. City of Adelanto*, 368 F.3d 1062 (9th Cir 2004),[4] they only need to show the second prong of an Equal Protection claim (that Federal Defendants were motivated by a discriminatory purpose) (Opposition at 17), the mere allegation that anti-gang officers arrested two Latino individuals almost a year apart falls well short of the mark.[5] Moreover, Plaintiffs' allegation that Defendants have the "policy, practice and custom of identifying individuals held in the Sonoma County Jail based on their Latino race

---

[4] More recent Ninth Circuit cases have stated that in selective enforcement cases, a plaintiff must show both a discriminatory effect and a discriminatory purpose. *See Richards v. City of Los Angeles,* 261 Fed Appx 63 (9th Cir. Dec. 3, 2007) (unpublished).

[5] Further, as noted above, Plaintiff Sonato-Vega is not seeking injunctive relief.

1    or appearance and or birth in a Latin American country for questioning regarding their

2    immigration status" is exactly the kind of vague allegation that fails to satisfy Rule 8.[6]  Rule 8

3    "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

4    of action will not do." *Twombly*, 550 U.S. at 555.  Because Plaintiffs do not meet the well-pled

5    complaint requirement of Rule 8, this Court should dismiss this case.

6            **B.**        **Plaintiffs Have Failed to Articulate a Claim Under 8 U.S.C. § 1983 and
     8 U.S.C. § 1985 Against the Federal Defendants.**

7            Plaintiffs have now had four chances to plead enough facts to support their allegation that

8    agents Merendino and Huelga were acting under the color of state law, which required them to

9    have a "symbiotic relationship" with state officials.  *See Cabrera v. Martin*, 973 F.2d 735, 743

10   (9th Cir. 1992).  Short of alleging facts to support a symbiotic relationship, Plaintiffs merely offer

11   the conclusory allegation that the federal and state agents engaged in "collaborative action" in

12   order to carry out a conspiracy to racially profile Latinos.[7]  The Court should dismiss the Section

13   1983 claim because Plaintiffs simply cannot show that Agents Merendino and Huelga acted

14   under color of state law.

15           In their Opposition, and for the first time, Plaintiffs attempt to spell out their theory of

16   state action.  In essence, Plaintiffs claim that ICE agents needed state officials to collaborate with

17   them because "County Defendants' purported authority to make traffic and other non-

18   immigration-related stops is essential" to the enforcement scheme which purportedly violated

19   Plaintiffs' constitutional rights.  (Opposition at 19.)  Even assuming that their theory was

20   sufficient to support the allegation of  state action (it is not), the conclusory statements Plaintiffs

21   rely on to support this theory do not pass Rule 8 muster.  In addition, the theory on its face cannot

22   support the state action element of the claim because under this theory Huelga and Merendino

---

25      [6] Plaintiffs' contention that this Court already found that they have properly pled a pattern
     and practice claim, Opposition at 13, misconstrues this Court's July 31, 2009, decision.  In that
26   decision, this Court merely determined that, contrary to the Defendants' arguments, Plaintiffs had
     standing to bring an injunctive relief claim.
27

28      [7] In the Opp Plaintiffs also attempt to discredit the Section 1983 'color of state law' cases
     cited by Defendants, but they do not cite a single case from the Ninth Circuit or any other circuit,
     where federal agents were found to be acting under color of state law.

1    were engaged in lawful enforcement of federal immigration law with legally permissible help

2    from state officials, and thus, they were at all times acting under color of federal law.

3           Plaintiffs' state action theory is based on the following conspiracy premises: (1) the

4    assistance of state agents was "essential" to the federal agents' enforcement scheme; (2) they

5    conspired to get this assistance from state agents; and (3) the assistance came in the form of

6    collaboration as manifested by the joint task force.  The Ninth Circuit, however, has clearly

7    stated that "vague and conclusory conspiracy allegations" cannot be the basis for an allegation

8    that federal agents acted under color of state law.  *See Gibson v. U.S.*, 781 F.2d 1334, 1343 (9th

9    Cir. 1986 (finding that federal agents did not act under color of state law based on the plaintiffs'

10   vague and conclusory allegations that federal agents conspired with state agents to harass them in

11   order to discourage their political activities.)

12          Likewise, while Plaintiffs here repeatedly allege that there existed a conspiracy between

13   Federal and County Defendants.  In support of this, they offer only evidence of cooperation

14   between federal and state agents which falls far short of an illegal conspiracy.  Specifically,

15   Plaintiffs point to the fact that county officers and ICE agents engaged in "joint patrols," "jointly

16   made decisions to stop Latinos," were "mutua[lly] silen[t] with respect to rights and charges

17   when taking Plaintiffs into custody," and had an "arrangement to issue or procure immigration

18   detainers in order to initiate custody." (Opposition at 20.)  The Ninth Circuit, however, has made

19   very clear that where federal officials request assistance from state officials it is under power

20   possessed by virtue of federal law.  *See Scott v. Rosenberg*, 702 F.2d 1263, 1269 (9th Cir. 1983)

21   (finding that FCC employees were not acting under color of state law where they cooperated and

22   exchanged information with California officials in an investigating of the donation records of a

23   televangelist).  Thus, mere evidence of collaboration would not support Plaintiffs' conspiracy

24   theory, under which the Court could conclude that Agents Huelga and Merendino acted under

25   color of state law.

26          Even assuming Plaintiffs have pled sufficient facts to support their theory that ICE agents

27   needed the collaboration of state officials to carry out a scheme to stop and detain illegal

28   immigrants, this theory merely proves that ICE agents acted under federal law, with cooperation

     from state agents.  *See Cabrera* at 973 F.2d at 743 (noting that the court could not find a "single

FEDERAL DEFENDANTS' REPLY
Case No. C 08-4220 PJH                                    7

1  precedent which would support a holding that a federal agency acting under its own guidelines

2  could be considered to have acted 'under color of state law' merely because it was induced by the

3  actions of a state actor . . . the state must be a significant participant if not the chief actor to

4  transform a federal defendant into a state actor").  Thus, even when fully credited, this theory

5  does not support the allegation that federal agents acted under color of state law.  *See Billings v.*

6  *U.S.*, 57 F.3d 797, 801 (9th Cir. 1995) (county Sheriffs who took a protester into custody "at the

7  behest and under the direction of [Secret Service] agents" were acting under "color of federal

8  law"); *Askew v. Bloemker*, 548 F. 2d 673, 677 (7th Cir 1976) (finding that state agents were

9  acting under federal law where they were assigned to a federal agency on a full-time basis).

10  Furthermore, 8 U.S.C. § 1357 (g)(10) and §1373 give ICE the authority to request cooperation

11  from state officials, thus making yet clearer that County Sheriffs were acting at the behest of the

12  federal agents and not the other way around.

13       As explained above, Plaintiffs have failed to adequately allege a conspiracy, which is an

14  essential element of Section 1985(3) and therefore this claim must also fail.  In addition,

15  Plaintiffs' Opposition does nothing to remedy their failure to plead the racial animus element of

16  Section 1985(3).  Plaintiffs have not adequately pled racial animus as required by *Griffin*.  *See*

17  *Griffin v. Breckenridge*, 403 U.S. 88 (1971); (Motion to Dismiss, DKT 145 at 14-16.)  Plaintiffs

18  gloss over this argument in their Opposition by simply pointing to their equal protection claims

19  and arguing that these claims are sufficient to prove racial animus.  (Opposition at 20.)  However,

20  as explained in Section A3, Plaintiffs' equal protection claims are devoid of factual allegations

21  that pass muster under Rule 8.  As such, by bootstrapping their 1985(3) claim to their vague and

22  conclusory equal protection claims, Plaintiffs also doom their 1985(3) claims to failure.

23  Plaintiffs also accuse Defendants of misunderstanding the racial animus requirement of *Griffin*.

24  (Opposition at 21 n.26.)  Specifically, Plaintiffs set up a straw-man argument by arguing that

25  Defendants insist that Plaintiffs plead "specific intent" and "willfulness."  However, *Griffin*

26  holds that while § 1985(3) does not require "scienter in relation to deprivation of rights," it does

27  require "invidiously discriminatory animus."  *Griffin*, 403 U.S. at 102 n.10.  Plaintiffs have

28  simply failed to plead facts sufficient to support the animus requirement and have merely pointed

out that Sanchez-Lopez and Sonato-Vega are of Latino appearance and therefore their arrests,

1   which occurred almost a year apart, must necessarily have been motivated by individous

2   discrimination.  These allegations are insufficient to support the inference of racial animus.

3   Therefore this Court should dismiss the Section 1985(3) claim.

4       **C.    Plaintiffs' *Bivens* Claims Against Defendants Huelga and Merendino and
        Unknown ROES for Constitutional Violations Fail.**

5       This Court should hold that Plaintiffs' Bivens claims fail because and alternate remedy

6   exists, they fail to satisfy Rule 8, and Defendants Huelga and Merendino are entitled to qualified

7   immunity.  Claims Four, Five and Six of the SAC are brought under the APA and *Bivens*,

8   asserting violations of the Fourth and Fifth Amendment and violations of 8 U.S.C. § 1357 and 8

9   C.F.R. § 287.7 and 287.3.   Because the APA creates a remedy for seeking judicial redress of

10  alleged constitutional violations by federal agencies,  *see* 5 U.S.C. §§ 702, 704, 706(2)(B), no

11  *Bivens* remedy against Agents Merendino and Huelga is available in these circumstances.  *See W.*

12  *Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1123-25 (9th Cir. 2009) ("[T]he APA

13  leaves no room for Bivens claims based on agency action or inaction.") (applying *Wilke v.*

14  *Robbins*, 551 U.S. 537, 550 (2007).

15      Alternatively, the *Bivens* claims should be dismissed because they do not meet the

16  pleading requirements set forth in the recent Supreme Court's decision in *Ashcroft v. Iqbal*,

17  *supra*.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

18  statements, do not suffice" to make out a *Bivens* claim.  *Iqbal*, 129 S.Ct. at 1949; *see also* July

19  31, 2009 Order at 25.  To state a private cause of action under *Bivens*, plaintiff must allege: (1)

20  that a right secured by the Constitution of the United States was violated, and (2) that the

21  violation was committed by a federal actor.  *See Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th

22  Cir. 1988).  As noted above, Plaintiffs have failed to plead a violation of a Constitutional right

23  because Federal Defendants lawfully issued the immigration detainers, unpon which Plaintiffs

24  base their *Bivens* claims.  Further, with respect to Merendino, Plaintiffs continue to simply assert

25  that he questioned Sanchez-Lopez about his immigration status (SAC ¶ 79), issued an

26  immigration detainer (SAC ¶ 85), and rode in Deputy Salkin's car to the jail (SAC ¶ 83.)  These

27  allegations do not satisfy Rule 8.  *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.  Thus,

28  the *Bivens* claims asserted against Merendino must be dismissed for failure to state a claim upon

1   which relief may be granted.

2        As for Defendant Huelga, the SAC does not allege sufficient facts to show that he

3   violated any of the Plaintiffs' constitutional rights.  Defendant Huelga allegedly subjected

4   Sanchez-Lopez and Sonato-Vega to pat-downs (SAC ¶¶ 78, 99), confiscated Sanchez-Lopez's

5   wallet (SAC ¶ 78) and issued an immigration detainer for Sonato-Vega.  (SAC ¶ 101.)[8]

6        Should the Court find that Plaintiff have sufficiently pled *Bivens* claims against

7   Defendants Merendino and Huelga, these Defendants are entitled to qualified immunity.  Under

8   the doctrine of qualified immunity, state officials performing discretionary functions generally

9   are shielded from liability for civil damages "insofar as their conduct does not violate clearly

10  established statutory or constitutional rights of which a reasonable person would have known."

11  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A *Bivens* remedy is not "an automatic

12  entitlement" and should not be implied in a novel situation when "special factors" counsel

13  hesitation.  *Wilkie v. Robbins*, 551 U.S. at 550.  As discussed above, Defendants Huelga and

14  Merendino properly relied on 8 U.S.C. § 1357, and 8 C.F.R. §§ 287.7 and 287.3 to issue a

15  discretionary immigration detainer so the County would hold Plaintiffs until ICE could assume

16  custody.  Both Plaintiffs were detained for fewer than 48 hours, weekends excluded.  Nothing in

17  the allegations reflect a known statutory or constitutional right they could have violated, much

18  less any actual violation of statutory or constitutional rights.

19       Plaintiffs rely *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995) for

20  the proposition that a warrantless immigration arrest must involve a flight risk determination or

21  that arrest is *per se* unreasonable under the Fourth Amendment.  (Opposition at 14.)  That case

22  held that "although the lack of documentation or other admission of illegal presence may be

23  some indication of illegal entry, it does not, without more, provide probable cause of the criminal

24  violation of illegal entry."  *Id.*  However, this holding does not apply to civil immigration

25

---

26       [8]Plaintiffs contend that they "have stated Equal Protection Claims under the Fifth
    Amendment." (Opposition at 16-17.)  But Plaintiffs' bald assertions that Defendant Huelga stopped
27  the car Sanchez-Lopez's was riding in based on his race and Huelga used his race to prolong his
    detention, (SAC ¶ 158), are simply unsupported by the facts Plaintiffs allege.  The allegation that
28  Defendant Huelga used race to prolong Plaintiff Sonato-Vega's detention, (SAC ¶ 159), is also a
    conclusory allegation.

1    proceedings, such as here, where the alien is charged only with a status, rather than a criminal,

2    offense. *See United States v. Sotoj-Lopez*, 603 F.2d 789, 790 (9th Cir. 1979) (holding that, in the

3    context of civil status offenses, 8 U.S.C. § 1357(a)(2) relaxes Federal Rule of Criminal Procedure

4    5(a)).[9]  Therefore, the *Bivens* claims against Defendants Huelga and Merendino should be

5    dismissed.

6         **D.    Plaintiffs Sanchez-Lopez and Sonato-Vega Have Failed to State Claims
               Against the United States Under the FTCA.**

7         1.    The FTCA's Waiver of Sovereign Immunity Does Not Apply to Plaintiffs' False
               Imprisonment Claim to the Extent it Challenges Detention Pursuant to
8               Immigration Detainers.

9

10        Plaintiffs argue that the United States unlawfully detained them for an unlawful period of

11   time.[10]  (Opposition at 21.)  Even if this were true, the Federal Defendants' actions are entitled to

12   the discretionary function exception to the FTCA.  The "discretionary function exception," is

13   where the United States is immune from "'[a]ny claim . . . based upon the exercise or

14   performance or the failure to exercise or perform a discretionary function or duty on the part of a

15   federal agency or an employee of the Government, whether or not the discretion involved be

16   abused.'"  *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (alterations in original)

17   (quoting 28 U.S.C. § 2680(a)).[11]  Courts apply a two-part test to determine if the discretionary

18

19

20        [9] Notably, in *United States v. Encarnacion*, 239 F.3d 395, 400 (1st Cir. 2001), the First
     Circuit held that because defendant alien's warrentless arrest was civil, rather than criminal, the court
21   had "little trouble" holding that his subsequent eight-day detention prior to being allowed to appear
     before a federal magistrate was not unlawful under 8 U.S.C. § 1357(a)(2).

22
          [10] As noted above, Plaintiffs were held under the detainer for less than 48 hours, in
23   accordance with 8 C.F.R. § 287.7.

24
          [11]Because the discretionary function exception affects the Court's subject matter jurisdiction,
25   the Court can consider matters outside of the pleadings when resolving this issue. *See Gen.
     Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) (Subject matter "[j]urisdiction
26   does not exist when the claim is based upon the exercise or the failure to exercise or perform a
     discretionary function." (quotation omitted)); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.
27   1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not
     restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony,
28   to resolve factual disputes concerning the existence of jurisdiction.").

1    function exception applies.  *See United States v. Gaubert*, 499 U.S. 315, 323-324 (1991);

2    *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  First, the challenged conduct must be

3    discretionary – that is, a court must determine whether the conduct "is a matter of choice for the

4    acting employee."  *Berkovitz*, 486 U.S. at 536.  If it is, then it is discretionary and comes within

5    the exception.  If, on the other hand, the conduct involves "a federal statute, regulation, or policy

6    [that] specifically prescribes a course of action for an employee to follow," then the exception

7    does not apply because "the employee has no rightful option but to adhere to the directive."  *Id.*

8           Second, "assuming that the challenged conduct involves an element of judgment, a court

9    must determine whether that judgment is of the kind that the discretionary function exception

10   was designed to shield."  *Berkovitz*, 486 U.S. at 536.  The exception protects discretionary

11   actions or decisions that are "based on considerations of public policy," *i.e.*, decisions that are

12   "grounded in social, economic and political policy."  *Id.* at 537.  When the applicable statutes,

13   regulations, or agency guidelines permit the exercise of discretion, "it must be presumed that the

14   agents' acts are grounded in policy when exercising that discretion."  *Id.* at 324.  "For a

15   complaint to survive a motion to dismiss, it must allege facts which would support a finding that

16   the challenged actions are not the kind of conduct that can be said to be grounded in the policy of

17   the regulatory regime."  *Id.* at 1130 (quotation omitted); *see also Doe v. See*, 557 F.3d 1066,

18   1084 (9th Cir. 2009) (*per curiam*) ("[A] plaintiff must advance a claim that is facially outside the

19   discretionary function exception in order to survive a motion to dismiss." (quotation omitted)).

20          Here, the plain language of 8 C.F.R. § 287.7 shows that it is discretionary: "Any

21   authorized immigration officer may at any time issue [an immigration detainer] to any other

22   Federal, State or local law enforcement agency."  Further, Defendants Huelga and Marino are

23   and were required to balance their duty to enforce the INA with the resources of the agency.

24   There is no policy currently in place to guide Huelga and Merendino's decisions as to whether to

25   issue a detainer and which agency to issue it to.  Further, Plaintiffs point to no statute, regulation,

26   or policy prescribing a specific course of conduct the agent must follow in these circumstances.

27   *See, e.g., Vickers v. United States*, 228 F.3d 944, 953 (9th Cir. 2000) ("[A]lthough INS

28   investigators undoubtedly enjoy discretion in the conduct of an investigation, this discretion does

not extend to . . . mandatory requirements proscribed by agency regulations as implemented by

1   policy guidelines."); *Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996) (holding

2   investigators had discretion because manual did not contain mandatory terms and made clear

3   officers were entitled to discretion).  Thus whether to issue a detainer and what agency to serve it

4   on falls squarely within the discretionary function exception to the waiver of sovereign

5   immunity.  So any claims brought under the FTCA that challenge the issuance of the detainers

6   are therefore barred and this Court must dismiss them.

7         Moreover, Plaintiffs fail to state a claim for false imprisonment, because the agents who

8   arrested them were privileged to do so.  Immigration officers have legal authority to perform

9   warrantless arrests of aliens, if they have reason to believe the alien is subject to removal.  8

10  U.S.C. § 1357(a)(2).  Here, Plaintiffs do not dispute that they were in the country illegally and,

11  thus, Defendants Huelga and Merendino had reason to arrest them.  *See id.*  Therefore, Plaintiffs

12  were not falsely imprisoned, because Defendants had "lawful privilege" to arrest them.  *See*

13  *Fermino v. FEDCO, Inc.*, 7 Cal.4th 701, 715 (1994).

              2.      Plaintiffs Have Failed to Articulate an Intentional Infliction of Emotional
14                    Distress and Assault and Battery Claims.

15        Plaintiffs assert that Defendants Huelga's and Merendino's "conduct was extreme and

16  outrageous with intentional or reckless disregard for the emotions of Plaintiffs."  (Opposition at

17  23.)  Plaintiff Sanchez-Lopez asserts that Defendant Huelga patted him down, used profanity and

18  said that he was "illegal."  (SAC ¶ 99.)[12]  Under California law, the tort of intentional infliction

19  of emotional distress includes three elements: (1) extreme and outrageous conduct by the

20  defendant with the intention of causing, or reckless disregard of the probability of causing,

21  emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the

22  plaintiff's injuries actually and proximately caused by the defendant's outrageous conduct.

23  *Cochran v. Cochran*, 65 Cal.App.4th 488, 494, 76 Cal.Rptr.2d 540 (1998) (citation omitted).  To

24  establish the first element, the conduct "must be so extreme as to exceed all bounds of that

25  usually tolerated in a civilized community."  *Id.*  "The tort does not extend to mere insults,

26

27  ──────────────

28        [12] In the Opposition, Plaintiffs refer the Court to alleged actions of Defendant Salkin or things
    that occurred at the county jail, neither of which are within the purview of the claims against the
    Federal Defendants.  (*See* Opposition at 23.)

1   indignities, threats, annoyances, petty oppressions and other trivialities." *Id.* at 496, 76 Cal.

2   Rptr.2d 540 (internal quotation marks, alterations, and citations omitted.)  Nothing described by

3   Plaintiffs rises to the level of "outrageous" as required to sustain an IIED claim. *See Davidson v.*

4   *City of Westminster,* 32 Cal.3d 197, 209 (1982) (Stating that for "[c]onduct to be outrageous [it]

5   must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.")

6   Plaintiffs have failed to allege conduct sufficient to satisfy the element of the IIED tort requiring

7   outrageous conduct on the part of the Defendants Huelga and Merendino and the claim should be

8   dismissed.

9       Plaintiffs assert the Defendants "intended to and caused harmful and offensive contact to

10  Plaintiffs" and, once again, they refer the Court to the alleged conduct of Defendant Salkin.

11  (Opposition at 22.)  In any event, Officer Huelga allegedly patted down Plaintiff Sanchez-Lopez

12  and removed his wallet and (2) Officer Huelga patted down Plaintiff Sonato-Vega (SAC at ¶¶ 79;

13  99.)  Plaintiffs allege no facts to reflect Agent Huelga's intent to cause harm to Plaintiffs

14  Sanchez-Lopez and Sonato-Vega. While Agent Merendino allegedly questioned Plaintiff

15  Sanchez-Lopez, (SAC at ¶ 79), Plaintiffs fail to allege any putatively offensive contact between

16  Agent Merendino and Sonato-Vega.

17      When Congress expressly permitted tort claims under the FTCA with respect to actions

18  of federal law enforcement officials, Congress also could have waived federal law enforcement

19  privileges at the same time, but it did not.  *See* 28 U.S.C. § 2680(h).  Indeed, as the Ninth Circuit

20  has held, section 2680(h) was intended to provide remedies for victims of law enforcement

21  abuses, not for the routine and lawful exercise of law enforcement privileges.  *Orsay v. United*

22  *States Dep't of Justice*, 289 F.3d 1125, 1134-35 (9th Cir. 2002).  A pat-down and questioning fall

23  squarely into the routine exercise of the law.

24      Because Plaintiffs fail to allege facts which arguably meet the elements for IIED and

25  assault and battery, the Court should dismiss Plaintiffs' claims Eighteen and Twenty-Two for

26  failure to state a claim.

27

28
       3.     The FTCA's Waiver of Sovereign Immunity Does Not Apply to Plaintiffs'
           Negligence Claim or Plaintiffs' California Constitutional Rights Claim.

    Plaintiffs' Twentieth Claim is that the United States has a duty "not to subject people to

1   discriminatory treatment on the basis of race . . .; unreasonable searches and seizures;

2   deprivations of liberty without due process; to adequately train and supervise employees; and to

3   prevent the occurrence of constitutional violations and tortious actions." (SAC ¶ 241.) To the

4   extent Plaintiffs are couching their constitutional tort claims as negligence claims, the FTCA

5   does not include a waiver of sovereign immunity for constitutional tort claims. *See FDIC v.*

6   *Meyer*, 510 U.S. 471, 478 (1994) (rejecting applicability of FTCA to a tort based on a

7   constitutional violation, because "federal law, not state law, provides the source of liability for a

8   claim alleging the deprivation of a federal constitutional right"); *see also Cato v. United States*,

9   70 F.3d 1103, 1111 (9th Cir.1995.) To the extent that Plaintiffs allege that ICE  negligently

10  trained and supervised agents who issue detainers, the Ninth Circuit has consistently held that

11  decisions related to the training and supervision of employees involve policy judgment that "fall

12  squarely within the discretionary function exception" and should be dismissed. *Nurse v. United*

13  *States*, 226 F.3d 996, 1101-02 (9th Cir. 2000); *Vickers v. United States*, 228 F.3d 944, 950 (9th

14  Cir. 2000).

15       Plaintiffs' Twenty-First Claim is styled "Deprivation of Civil Rights Through

16  Intimidation, Threats and Coercion. (SAC ¶¶ 247-249.) In that claim Plaintiffs assert that

17  "Federal Defendants tortiously interfered with Plaintiffs' constitutional rights under California

18  Law." (Opposition at 24.) Again, it is well-settled that the FTCA does not provide a waiver of

19  sovereign immunity for constitutional claims. *See FDIC v. Meyer,* 510 U.S. at 478; *Delta Sav.*

20  *Bank v. US*, 265 F.3d 1017, 1024 (9th Cir. 2001). Plaintiffs' claims under Cal. Civ. Code § 52.1

21  fail because they are premised on the same constitutional claims which the FTCA bars. *See id.* at

22  1026. Thus, Plaintiffs' Twentieth and Twenty-First Claims should be dismissed for lack of

23  subject matter jurisdiction.

24                              **CONCLUSION**

25       This Court should DISMISS entirely Plaintiffs' "FOURTH," "FIFTH," "SIXTH,"

26  "EIGHTH,"" NINTH," and "EIGHTEENTH" through "TWENTY-SECOND" claims for relief,

27  and all claims against Defendants Huelga, Merendino and Roes 1-50 in their personal capacities.

28

DATED: January 20, 2010             Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

By:        /s/
ILA C. DEISS
Assistant United States Attorney

Attorneys for the United States
and Defendants Huelga
and Merendino

MICHAEL F. HERTZ
Deputy Assistant Attorney General, Civil Division

DAVID J. KLINE
Director

JOSHUA E.T. BRAUNSTEIN
Assistant Director

By:        /s/
COLIN A. KISOR
Senior Litigation Counsel

By:        /s/
LANA L. VAHAB
Trial Attorney

Attorneys for the United States