1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COMMITTEE FOR IMMIGRANT RIGHTS
OF SONOMA COUNTY, et al.,

        Plaintiffs,

        v.

SONOMA COUNTY, et al.,

        Defendants.

_____/

No. C 08-4220 PJH

**ORDER RE MOTIONS TO DISMISS**

    Defendants' motions to dismiss the second amended complaint came on for hearing before this court on March 3, 2010. Plaintiffs appeared by their counsel Julia Mass and Melissa N. Chan; the Federal defendants appeared by their counsel Colin Kisor, Ila Deiss, Lana Vahab, and Erik Gantzel; and the County defendants appeared by their counsel Anne Keck and Richard Osman. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the Federal defendants' motion in part and DENIES it in part, and GRANTS the County's motion in part and DENIES it in part.

**BACKGROUND**

    This is a case alleging constitutional violations and other federal and state law claims, filed by plaintiffs Committee for Immigrant Rights of Sonoma County; and two

1  individuals – Francisco Sanchez-Lopez ("Sanchez-Lopez"), and Christyan Sonato-Vega

2  ("Sonato-Vega")[1] – against defendants United States of America; U.S. Department of

3  Homeland Security ("DHS" or "the Agency"); Bureau of Immigration and Customs

4  Enforcement ("ICE"); and ICE Special Agents Mario Huelga ("Huelga") and Chris

5  Merendino ("Merendino") (collectively, the "Federal defendants"); and against the County of

6  Sonoma; Sonoma County Sheriff Bill Cogbill, and Deputy Sheriff Morris Salkin (collectively,

7  the "County defendants").

8  　　　The factual background is summarized in the court's July 31, 2009 order granting in

9  part and denying in part defendants' motions to dismiss the original complaint.  Briefly,

10  Sanchez-Lopez and Sonato-Vega were arrested by members of an anti-gang task force

11  known as the Multi-Agency Gang Enforcement Team ("MAGNET"), which was/is composed

12  of ICE agents and Sonoma County Sheriff's deputies.  Sanchez-Lopez was arrested in

13  September 2006, and Sonato-Vega in August 2007.  ICE issued immigration detainers for

14  Sanchez-Lopez and Sonato-Vega under 8 C.F.R. § 287.7.  They were detained in the

15  Sonoma County Jail, and then transferred to ICE custody.[2]

16  　　　Plaintiffs challenge what they claim are ongoing policies and practices of ICE and

17  the Sonoma County Sheriff's Department that allegedly violate the constitutional and

18  statutory rights of Latino residents of Sonoma County.  Plaintiffs assert that ICE and

19  Sheriff's deputies use race as a "motivating factor" for traffic stops and other detentions;

20  stop, interrogate, search, and arrest persons without adequate justification; hold individuals

21  in the County jail without any lawful basis for detention; and deny due process to people

22  arrested on suspected immigration violations and improperly held in the custody of the

23  Sheriff.

24  　　　The broad question raised by plaintiffs in this case is whether the Immigration and

25

26  　　　[1] Former individual plaintiff Samuel Medel Moyado sought, and obtained, an order of dismissal without prejudice on December 22, 2009.

27

28  　　　[2] An immigration judge terminated Sanchez-Lopez's removal proceedings, but he currently has no legal status in the United States.  Sonato-Vega accepted voluntary departure in lieu of removal, and returned to Mexico on April 11, 2008.

1    Nationality Act ("INA"), 8 U.S.C. § 1101, et seq., and its implementing regulations (8 C.F.R.

2    § 101, et seq.) authorize the Secretary of DHS to issue detainers for illegal aliens who are

3    not in custody and place them in the temporary custody of state or local law enforcement

4    agencies before they are moved to an immigration detention facility.

5        The narrower issue is whether the federal and county defendants violated Sanchez-

6    Lopez's and Sonato-Vega's constitutional and civil rights when they arrested and detained

7    them.  Principally, plaintiffs claim that the ICE agents and Sheriff's deputies had no lawful

8    reason to detain them, and that the agents were motivated solely by considerations of

9    plaintiffs' race.

10        The original complaint was filed on September 5, 2008, and asserted 17 causes of

11   action.  The complaint was dismissed, with leave to amend, on July 31, 2009.  Plaintiffs

12   filed a first amended complaint ("FAC") on August 31, 2009.  On September 3, 2009, the

13   court granted plaintiffs' motion for reconsideration, to the extent of withdrawing a portion of

14   the discussion in the July 31, 2009 order relating to the eighth cause of action.  Plaintiffs

15   filed a 74-page second amended complaint ("SAC") on September 14, 2009.

16        Plaintiffs allege 22 causes of action in the SAC:

17        (1)    a Fourth Amendment claim of unlawful search and seizure, under 42 U.S.C. §

18   1983, by all plaintiffs against Sonoma County, Sheriff Cogbill, and Deputy Salkin;

19        (2)    a Fourteenth Amendment claim of denial of equal protection rights, under

20   § 1983, by all plaintiffs against Sonoma County, Sheriff Cogbill, and Deputy Salkin;

21        (3)    a Fourteenth Amendment claim of violation of due process rights, under

22   § 1983, by all plaintiffs against Sonoma County, Sheriff Cogbill, and Deputy Salkin;

23        (4)    a Fourth Amendment and 8 U.S.C. § 1357 claim of unlawful search and

24   seizure, under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403

25   U.S. 388 (1971), and the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, by all

26   plaintiffs against ICE, Huelga, and Merendino;

27        (5)    a Fifth Amendment claim of denial of equal protection rights, under Bivens

28   and the APA, 5 U.S.C. § 702, by all plaintiffs against ICE, Huelga, and Merendino;

1  (6)  a Fifth Amendment, 8 U.S.C. § 1357, and 8 C.F.R. §§ 287.3 and 287.7 claim

2  of violation of due process rights, under Bivens and the APA, 5 U.S.C. § 702, by all

3  plaintiffs against ICE, Huelga, and Merendino;

4  (7)  a claim under 42 U.S.C. § 2000d, et seq. (Title VI), by all plaintiffs against

5  Sonoma County, Sheriff Cogbill, and Deputy Salkin;

6  (8)  a claim under the APA, 5 U.S.C. § 706, by plaintiffs Committee and Sanchez-

7  Lopez against ICE, Huelga, and Merendino;

8  (9)  a claim of conspiracy, under 42 U.S.C. §§ 1983 and 1985(3), by all plaintiffs

9  against all defendants;

10  (10)  a claim of unreasonable search and seizure, under Art. I, § 13 of the

11  California Constitution, by all plaintiffs against Sonoma County, Sheriff Cogbill, and Deputy

12  Salkin;

13  (11)  a claim of violation of equal protection rights, under Art. I, § 7(a) of the

14  California Constitution, by all plaintiffs against Sonoma County, Sheriff Cogbill, and Deputy

15  Salkin;

16  (12)  a claim of violation of due process rights, under Art. 1, § 7(a) of the California

17  Constitution, by all plaintiffs against Sonoma County, Sheriff Cogbill, and Deputy Salkin;

18  (13)  a claim under the Bane Act, California Civil Code § 52.1, by all plaintiffs

19  against Sonoma County, Sheriff Cogbill, and Deputy Salkin;

20  (14)  a claim under California Government Code § 11135 and its implementing

21  regulations, by all plaintiffs against Sonoma County;

22  (15)  a claim of false imprisonment, under California Government Code

23  § 815.2, by Sonato-Vega against Sonoma County, Sheriff Cogbill, and Deputy Salkin;

24  (16)  a claim of intentional infliction of emotional distress, under California

25  Government Code § 815.2, by Sonato-Vega against Sonoma County, Sheriff Cogbill, and

26  Deputy Salkin;

27  (17)  a claim of negligence, under California Government Code § 815.2, by Sonato-

28  Vega against Sonoma County, Sheriff Cogbill, and Deputy Salkin;

1    (18)    a claim of false imprisonment under the Federal Tort Claims Act ("FTCA"), by

2    Sanchez-Lopez and Sonato-Vega, against the United States;

3    (19)    a claim of intentional infliction of emotional distress under the FTCA, by

4    Sanchez-Lopez and Sonato-Vega, against the United States;

5    (20)    a claim of negligence under the FTCA, by Sanchez-Lopez and Sonato-Vega,

6    against the United States;

7    (21)    a claim of deprivation of civil rights through intimidation, threats, and coercion

8    under the FTCA and California Civil Code § 52.1, by Sanchez-Lopez and Sonato-Vega,

9    against the United States; and

10    (22)    a claim of assault and battery under the FTCA, by Sanchez-Lopez and

11    Sonato-Vega, against the United States.

12    Plaintiffs seek injunctive and declaratory relief, and also seek compensatory and

13    punitive damages.

14    The county defendants and the federal defendants each now seek an order

15    dismissing the claims asserted against them in the SAC.

16                                            **DISCUSSION**

17    A.    Legal Standard

18    A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

19    alleged in the complaint. <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

20    Review is limited to the contents of the complaint. <u>Allarcom Pay Television, Ltd. v. Gen.</u>

21    <u>Instrument Corp.</u>, 69 F.3d 381, 385 (9th Cir. 1995).  To survive a motion to dismiss for

22    failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

23    requirements of Federal Rule of Civil Procedure 8.  Rule 8(a)(2) requires only that the

24    complaint include a "short and plain statement of the claim showing that the pleader is

25    entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26    Specific facts are unnecessary – the statement need only give the defendant "fair

27    notice of the claim and the grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89,

28    93 (2007) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  All allegations

1  of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the

2  grounds of his entitlement to relief "requires more than labels and conclusions, and a

3  formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 550 U.S.

4  at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be

5  enough to raise a right to relief above the speculative level." Id.

6  A motion to dismiss should be granted if the complaint does not proffer enough facts

7  to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the well-

8  pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

9  the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"

10  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

11  B.    Defendants' Motions

12  Notwithstanding the court's detailed analysis and guidance in the July 31, 2009

13  order dismissing the original complaint, the SAC is lengthy and complex to a degree that

14  makes it impossible to determine the contours of all the claims. Possibly as a consequence

15  of this impenetrable thicket of allegations and legal claims presented by the plaintiffs,

16  defendants have not addressed the individual claims in a manner that would enable the

17  court to analyze those claims under the Rule 12(b)(6) standard. Rather, they have opted

18  for broad, largely policy-based attacks on, for example, the myriad requests for injunctive

19  relief included in the allegations for 14 of the 22 causes of action and in the prayer for

20  injunctive relief; and have also relied on fact-driven arguments that would be better suited

21  to a motion for summary judgment.

22  The Federal defendants make four main arguments in support of their motion – that

23  the court should dismiss the request for injunctive relief because the request is predicated

24  on plaintiffs' misunderstanding of the regulations at issue, particularly, 8 C.F.R. § 287.7;

25  that the court should dismiss the § 1983 and § 1985(3) claims against the Federal

26  defendants, because the SAC does not allege any actions taken under color of state law

27  and does not plead facts showing a conspiracy that was motivated by racial animus; that

28  the Bivens claims do not meet the pleading requirements set forth in Iqbal, or, in the

6

1   alternative, that Huelga and Merendino are entitled to qualified immunity; and that the

2   FTCA claims fail to state a claim for relief.

3       The County defendants also make four main arguments – that the court lacks

4   jurisdiction over the injunctive relief claims because plaintiffs have not alleged a case or

5   controversy for injunctive relief, and because the claims for injunctive relief are not

6   justiciable; that the SAC fails to allege plausible claims under § 1983 because plaintiffs

7   plead no facts showing that defendants were acting under color of state law, and because

8   plaintiffs fail to state a claim for any constitutional violations against either the County or

9   against Sheriff Cogbill and Deputy Salkin; that the SAC fails to allege actionable claims

10  under the California Constitution; and that the statutory claims are without merit because

11  plaintiffs fail to allege a viable claim of conspiracy under § 1985(3), and because the

12  County defendants are immune from suit under various provisions of the California

13  Government Code.

14      The leitmotif of this action is the interpretation and application of the federal

15  regulations to be found at 8 C.F.R. §§ 287.3, 287.7, and 287.12.  Section 287.3 sets forth

16  certain procedures relevant to the "disposition of cases of aliens arrested without a

17  warrant."  8 C.F.R. § 287.3

18      Section 287.12 provides that "[w]ith regard to [8 C.F.R. Part 287], these regulations

19  provide internal guidance on specific areas of law enforcement authority" and "do not, are

20  not intended to, shall not be construed to, and may not be relied upon to create any rights,

21  substantive or procedural, enforceable at law by any party in any matter, civil or criminal."

22  The Secretary has "exclusive authority to enforce these regulations through such

23  administrative and other means as he may deem appropriate."  8 C.F.R. § 287.12.

24      Section 287.7 provides, in relevant part,

25      (a)  Detainers in general.  Detainers are issued pursuant to sections 236 and
        287 of the Act and this chapter 1.  Any authorized immigration officer may at
26      any time issue a Form I-247, Immigration Detainer-Notice of Action, to any
        other Federal, State, or local law enforcement agency.  A detainer serves to
27      advise another law enforcement agency that the Department seeks custody
        of an alien presently in the custody of that agency, for the purpose of
28      arresting and removing the alien.  The detainer is a request that such agency

                                          7

1    advise the Department, prior to release of the alien, in order for the
2    Department to arrange to assume custody, in situations when gaining
    immediate physical custody is either impracticable or impossible.

3    . . . .

4    (d) Temporary detention at Department request. Upon a determination by
    the Department to issue a detainer for an alien not otherwise detained by a
5    criminal justice agency, such agency shall maintain custody of the alien for a
    period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in
6    order to permit assumption of custody by the Department.

7  8 C.F.R. § 287.7.

8         Although the parties do not clearly make this distinction, the claim regarding

9  § 287.7 appears to challenge the regulation in two separate ways. First, plaintiffs allege in

10  the SAC that an immigration detainer may be issued only for an individual who is already in

11  custody pursuant to an independent criminal or other state law arrest. See, e.g., SAC

12  ¶ 164(b) (also citing SAC ¶¶ 28, 33, 38, 40, 44-47); SAC ¶ 165(b) (also citing SAC ¶¶ 81-

13  85, 100-101); SAC ¶ 178.

14         Plaintiffs assert that the issuance of a detainer for any individual not already in

15  custody pursuant to an independent arrest violates that individual's constitutional and

16  statutory rights; and also constitutes agency action that is "arbitrary and capricious, an

17  abuse of discretion, or otherwise not in accordance with the law;" "contrary to constitutional

18  right, power, privilege, or immunity;" "in excess of statutory jurisdiction, authority, or

19  limitations, or short of statutory right;" or "without observance of procedure required by law,"

20  in violation of the APA.

21         Defendants reject this interpretation, arguing that § 287.7 broadly allows ICE agents

22  to issue immigration detainers for illegal aliens who are "not otherwise detained," and to

23  issue detainers "at any time," and that it does not preclude the issuance of a detainer at the

24  time that the individual is being taken into custody.

25         In the second part of their challenge, plaintiffs allege that defendants'

26  implementation of § 287.7 was unlawful in that it violated plaintiffs' statutory and

27  constitutional rights. In particular, plaintiffs assert that in the course of arresting and

28  holding them pursuant to the detainers issued by ICE, defendants acted without probable

1  cause, targeted them because of their race, and denied them due process protections.

2  In their motions, defendants contend that the SAC does not allege facts sufficient to

3  state a claim under any of the constitutional or statutory causes of action, suggesting that

4  any claim regarding the implementation of § 287.7 must be dismissed.

5  It is not the task of the court to "decide which among several competing

6  interpretations best serves the regulatory purpose." Thomas Jefferson Univ. v. Shalala,

7  512 U.S. 504, 512 (1994). The court must give an agency's interpretation of its own

8  regulations "controlling weight" unless that interpretation is "plainly erroneous or

9  inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414

10  (1945); Miller v. California Speedway Corp., 536 F.3d 1020, 1028 (9th Cir. 2008).

11  That is, the court must defer to the agency's interpretation unless an alternative

12  reading is compelled by the regulation's plain language or by other indications of the

13  agency's intent at the time of the regulation's promulgation. Miller, 536 F.3d at 1028 (citing

14  Thomas Jefferson Univ., 512 U.S. at 512). "When the meaning of regulatory language is

15  ambiguous, the agency's interpretation controls 'so long as it is "reasonable," that is, so

16  long as the interpretation sensibly conforms to the purpose and wording of the regulations.'"

17  Oregon Paralyzed Veterans of Am. v. Regal Cinemas, Inc., 339 F.3d 1126, 1131 (9th Cir.

18  2003) (quoting Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144,

19  150-51 (1991)).

20  Here, the court finds that the plain language of § 287.7 authorizes, and does not

21  preclude, the issuance of immigration detainers for individuals who are not already in

22  custody pursuant to an independent arrest. Under § 287.7, an authorized immigration

23  officer "may at any time issue a Form I-247 Immigration Detainer - Notice of Action, to any

24  other Federal, State, or local law enforcement agency," 8 C.F.R. § 287.7(a); and an

25  immigration detainer may be issued "for an alien not otherwise detained by a criminal

26  justice agency," id. § 287.7(d).

27  The court finds that the Agency's interpretation of § 287.7 is not unreasonable, and

28  that the provisions authorizing the issuance of immigration detainers "at any time" for

9

1    persons who are "not otherwise detained by a criminal justice agency" permits the issuance

2    of immigration detainers for individuals not already in custody.  There is no suggestion in

3    the regulation that the category of aliens "not otherwise detained by a criminal justice

4    agency" refers only to those aliens who were previously detained by a criminal justice

5    agency, but are in the process of being released from custody.

6            Nor is the court persuaded by plaintiffs' argument that their interpretation is in accord

7    with the Agency's interpretation at the time the regulation was promulgated, as plaintiffs

8    have not pointed to any earlier interpretation of the language in § 287.7 that conflicts with

9    the current interpretation of the same language.

10           Accordingly, to the extent that defendants seek an order dismissing any claim in the

11   SAC in which plaintiffs assert that 8 C.F.R. § 287.7 does not permit ICE to issue

12   immigration detainers for individuals who are not already in custody pursuant to an

13   independent criminal or state law arrest, the motion is GRANTED.  Put another way,

14   plaintiffs may not proceed with any direct challenge to defendants' interpretation of 8 C.F.R.

15   § 287.7, as permitting the issuance of an immigration detainer for an individual not already

16   in custody (prior to the issuance of the detainer) pursuant to an independent arrest.

17           As for the claims that derive from the allegations that defendants' implementation of

18   § 287.7 (or § 287.3) violated plaintiffs' constitutional and statutory rights, the court finds, as

19   an initial matter, that the provisions of § 287.12 bar any claim directly premised on an

20   alleged violation of § 287.7 (or § 287.3) – though not constitutional or statutory claims that

21   are otherwise independently actionable.  With regard to the latter, the court finds that the

22   question whether defendants' implementation of § 287.7 (or 287.3) violated plaintiffs'

23   constitutional or statutory rights is not appropriate for decision in a Rule 12(b)(6) motion.

24           Because the regulations cannot trump the U.S. Constitution or the provisions of the

25   INA under which the regulations were implemented, the court is persuaded that defendants'

26   reasonable interpretation of § 287.7 does not dispose of each and every constitutional and

27   statutory claim raised by plaintiffs.  Accordingly, the court GRANTS the motions to the

28   extent that defendants seek a ruling that plaintiffs may not bring a claim alleging violation of

1 § 287.7 (or § 287.3). The court DENIES the motions to the extent that defendants assert

2 that plaintiffs may not bring a claim alleging that defendants' implementation of the

3 regulations violated their constitutional or statutory rights.[3]

4 Similarly, the motions to dismiss the various constitutional and statutory claims are

5 DENIED, as the court finds, to the extent that claims are comprehensible, that the issues

6 raised by defendants in their motions are not amenable to resolution through a Rule

7 12(b)(6) motion.[4] At this stage of the litigation, it is impossible to determine whether any of

8 the constitutional claims asserted against the individual defendants are barred by qualified

9 immunity, which actions were or were not taken under color of state law, or whether the

10 County defendants are immune from suit based on any of the Government Code

11 provisions.

12 The court is unwilling to pore through the SAC in an attempt to identify every claim

13 and every legal theory asserted, in order to determine which acts alleged to be

14 unconstitutional would necessarily fall within the reasonable interpretation of the regulations

15 (particularly since the moving parties were unwilling to do so in the first instance), but finds

16 in general that plaintiffs have stated a claim sufficient to withstand dismissal under Rule

17 12(b)(6).

18 Finally, because the court finds that the validity of the claims for injunctive relief

19 cannot be determined until the questions regarding the alleged constitutional and statutory

20

21     [3] For example, plaintiffs seek damages for violations of their due process rights by
arresting them without warrants and ordering them to be held in the custody of Sonoma County

22 and Sheriff Cogbill through issuance of immigration detainers that violate 8 C.F.R. §§ 287.3
and 287.7 and 8 U.S.C. § 1357; and by denying them procedural protections. See SAC ¶ 165.

23

24     [4] For example, plaintiffs seek injunctive and declaratory relief, as well as damages, in
connection with their claims that defendants have implemented a policy and practice of

25 stopping persons and vehicles without reasonable suspicion of criminal activity or traffic
infraction; unreasonably prolonging traffic and other stops beyond the time they would

26 otherwise take in order to question individuals about matters unrelated to the purported
purpose of the stop or other criminal activity; conducting personal and vehicle searches without

27 probable cause to believe that the areas searched contain evidence of criminal activity or
without a reasonable belief that the person searched or the car's occupants are dangerous and

28 may gain access to a weapon in the area searched; unreasonably arresting individuals without
probable cause; and holding persons in the County jail on immigration detainers for more than
48 hours without a probable cause determination. See SAC ¶¶ 135-137.

violations have been resolved, the court DENIES the motion to dismiss for lack of subject matter jurisdiction without prejudice.

## CONCLUSION

In accordance with the foregoing, the court GRANTS defendants' motions in part and DENIES them in part.

All parties may now proceed with discovery.

**IT IS SO ORDERED.**

Dated: March 10, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12