**\*\*E-filed 06/11/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMITTEE FOR IMMIGRANT RIGHTS OF SONOMA COUNTY, et al.,<br><br>    Plaintiffs,<br>v.<br><br>COUNTY OF SONOMA, et al.,<br><br>    Defendants. | No. C 08-4220 RS<br><br>**ORDER RE MOTIONS FOR RECONSIDERATION** |

## I. INTRODUCTION

Prior to reassignment of this action to the undersigned, the prior presiding judge issued an order on March 10, 2010 granting in part and denying in part motions to dismiss that had been brought by two groups of defendants (the "March 10th Order). Contending that order failed to reach certain issues, defendants sought and obtained leave to file reconsideration motions. While full consideration of the arguments defendants advance in their reconsideration motions is appropriate, with limited exception, dismissal of additional claims or defendants is not warranted.

## II. BACKGROUND

This action arises from cooperation between the County of Sonoma's sheriff's department and officers of the federal Bureau of Immigration and Customs Enforcement ("ICE") in detaining

and arresting individuals for immigration violations.  Plaintiffs are two individuals[1] who were arrested in such cooperative efforts, as well as an advocacy group that focuses on immigrants' rights ("the Committee").  Plaintiffs originally challenged ICE's practice of issuing immigration detainers for individuals who are not already in custody for some other reason.  The prior presiding judge, however, found that federal regulations 8 C.F.R. §§ 287.3, 287.7, and 287.12 authorize that practice, and accordingly dismissed all claims based on an assertion "that 8 C.F.R. § 287.7 does not permit ICE to issue immigration detainers for individuals who are not already in custody pursuant to an independent criminal or state law arrest."  March 10th Order at 10:11-13.  Although plaintiffs intend to challenge that ruling on appeal, it is not a subject of these reconsideration motions.

The previously assigned judge went on to find that plaintiffs may pursue their claims that the arrests carried out in the cooperation between ICE and Sonoma sheriffs were wrongful to the extent they rely on grounds independent of their arguments regarding the use of immigration detainers.  Defendants contend that in so finding, the Court failed to address adequately various other defenses they had raised.

The  March 10th Order defendants challenge issued in response to two motions to dismiss, one brought by Defendants Sonoma County, Sheriff-Coroner William Cogbill, and Deputy Sheriff Morris Eric Salkin, (collectively "the County") and one brought by the United States of America; U.S. Department of Homeland Security; ICE; and ICE Special Agents Mario Huelga and Chris Merendino (collectively, the "Federal defendants").  At issue is the second amended complaint, defendants having obtained dismissal of a prior complaint through an earlier set of motions to dismiss.

---

[1] A third individual plaintiff has withdrawn from the case.

### III. DISCUSSION

A. <u>Propriety of reconsideration</u>

This Court's order granting leave to file these motions reserved the question of whether the prerequisites for reconsideration exist. Reconsideration generally lies only where (1) it is supported by newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law. *Sch. Dist. No. 1J v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); see also N.D. Cal. L.R. 7-9(b). Here, despite defendants' strenuous arguments that the presiding judge simply failed to decide various issues, it appears that to a large degree she *did* consider and decide those matters, just not in a manner that defendants find appropriate. Thus, it likely would not be an abuse of discretion to deny these motions in whole or in part simply on the basis that defendants have no *entitlement* to what is at least to a significant degree, a second bite at the apple. That said, a newly assigned judge "must conscientiously carry out his judicial function in a case over which he is presiding," and it is therefore not an abuse of discretion to reconsider a prior ruling upon becoming "firmly convinced that an error of law has been committed." *Castner v. First National Bank of Anchorage*, 278 F.2d 376 (1960). As will become evident below, this court largely agrees with and confirms the results reached in the March 10th Order. To ensure a clear record, however, it is appropriate under the circumstances of this case to reach the merits of defendants' arguments in support of reconsideration.

B. <u>The County</u>

The County presents five issues it asserts the March 10th Order failed to address.

1. <u>Injunctive relief</u>

The County argues there is no subject matter jurisdiction over plaintiffs' claims for injunctive relief because they have not alleged facts sufficient to show a justiciable "case or controversy." Specifically, the County contends plaintiffs have not shown a likelihood of future injury or any injury which could be "redressable by a favorable decision."

3

The former presiding judge rejected these basic arguments when proffered by the federal defendants in the initial round of motions to dismiss, as part of a challenge to plaintiffs' standing. In the second round of motions to dismiss, the County expressly acknowledged the Court's prior rejection of those arguments, but advocated that a different result was warranted in light of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and in light of "clarifications" in the second amended complaint that purportedly show there is no case or controversy.[2]

The County's argument is three-fold. First, the County contends plaintiffs have alleged only two past instances of joint sheriff-ICE patrols, and therefore cannot show any ongoing wrongful conduct or a likelihood of injury to support a right to injunctive relief. This argument overlooks paragraph 62 of the second amended complaint, which alleges:

> On October 5, 2007, at a meeting with representatives of Plaintiff Committee for Immigrant Rights of Sonoma County, Defendant Sheriff Cogbill and other members of the Sonoma County Sheriff's Department, with counsel, confirmed that Defendant Sheriff's Department had regularly engaged in joint patrols with ICE for the previous three years, had arrested individuals based on suspected immigration violations without a criminal basis for arrest outside the presence of ICE agents, and has adopted the policy and practice of holding individuals in the Sonoma County jail based on suspected civil immigration violations, and without any criminal basis for arrest, at the request of ICE agents.

While some of the matter alleged in this paragraph relates to the dismissed claims that it is improper *per se* for defendants to use immigration holds in the absence of an independent basis to arrest, the basic allegation is that the County has *admitted* to ongoing and regular participation in the joint patrols with ICE that give rise to the arrests plaintiffs contend are unlawful for other reasons as well.

Second, the County contends that the injunctive relief requested is either overbroad in that it would prohibit lawful police conduct, or that it merely restates existing law as to what the police cannot do. While the precise contours of any injunctive relief would have to be tailored to avoid

---

[2] *Iqbal* issued after the prior motions were argued and submitted, but before the order on the first motions to dismiss. The County, however, submitted a copy of the *Iqbal* decision to the Court more than two months before her decision was filed, and the order discussed *Iqbal* at some length. It is therefore not clear why the County considered *Iqbal* an "intervening event" that warranted reexamination of the standing question, even assuming *Iqbal* represented a change in the law.

4

1  overbreadth, and would need to require something more than general fidelity to existing law,
2  plaintiffs have adequately pleaded wrongful conduct that is occurring as a result of policy and
3  regular practices, such that there potentially is a basis for injunctive relief.

4  Finally, the County argues that plaintiffs' true agenda is to stop the Sonoma Sheriff's
5  department from cooperating with ICE, which it contends presents a non-justiciable political issue.
6  The County may very well have correctly identified plaintiffs' actual goal, but the civil rights claims
7  plaintiffs have pleaded do not present issues of executive (or legislative) policy beyond the purview
8  of the courts.

10  2. Eleventh Amendment

11  The County contends that the first three claims for relief of the second amended complaint,
12  (unreasonable search and seizure, equal protection, and due process), all brought under 42 U.S.C.
13  §1983, are barred by the Eleventh Amendment. Although prior Ninth Circuit precedent did not treat
14  sheriffs as state officers for purposes of that constitutional provision, the California Supreme Court
15  has since concluded that sheriffs are state officers in circumstances like these. *Venegas v. County of*
16  *Los Angeles*, 32 Cal.4th 820 (2004). While some district courts have continued to follow prior
17  circuit law, the more persuasive analysis is that even though the Court need not "blindly accept" the
18  *Venegas* decision, it represents the correct statement of the function of California sheriffs. *See*
19  *Walker v. County of Santa Clara*, 2005 WL 2437037, *4 (N.D.Cal. 2005).

20  Apart from relying on pre-*Venegas* authority that sheriffs are not state officers, plaintiffs
21  argue that the Eleventh Amendment does not bar claims for injunctive relief or claims against the
22  individuals in their personal capacities. The County concedes that claims against the individuals in
23  their personal capacities may go forward, but argues that the rule of *Ex Parte Young*, 209 U.S. 123
24  (1908) permitting claims for injunctive relief is inapplicable here, supposedly because plaintiffs "do
25  not seek to enjoin the enforcement of a constitutionally deficient state law." The *Ex Parte Young*
26  exception, however, applies where a "state official [is] acting inconsistently with federal law,"
27  *Papasan v. Allain*, 478 U.S. 265, 277 (1986), which is what plaintiffs are alleging here.
28  Accordingly, the first three claims for relief will be dismissed to the extent they seek damages from

the County defendants in their official capacities, but will be permitted to go forward against the County defendants in their personal capacities and with respect to the claims for injunctive relief.

### 3. Qualified Immunity

The County's original argument in support of qualified immunity was primarily based on the contention that it was not "clearly established" law that the sheriff could not honor an ICE immigration detainer without an independent basis to make an arrest. Because the prior presiding judge has found that not to be a constitutional violation, that portion of the qualified immunity argument is moot.

The County also contends that a finding of immunity is warranted because the complaint lacks sufficient facts to show wrongdoing by the individual defendants. For example, the County suggests that "racial profiling" has only been alleged in conclusory terms, with insufficient facts to make the claim "plausible" under *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

While couched in terms of entitlement to qualified immunity, this portion of the County's argument focuses on the threshold premise that no constitutional violation has been sufficiently alleged in the first instance. Regardless of whether the issue is placed in the context of immunity or of the sufficiency of the allegations of wrongdoing, the second amended complaint alleges sufficient facts to allow the claims against the County defendants to go forward. Even under *Iqbal* and *Twombly* a plaintiff need not plead evidentiary matters or be able to prove a case at the pleading stage. Here, while plaintiffs may be relying on certain *inferences* to support their conclusions of constitutionally impermissible detentions and arrests, that does not render the complaint subject to dismissal.

### 4. Sufficiency of facts

In a separately numbered section of its motion for reconsideration, the County further develops its argument that insufficient facts have been pleaded to show any constitutional violation. The County proffers two basic points. First, the County contends the allegations show the sheriffs were not acting under color of *state* law, but rather under color of *federal* law. In the underlying

motion to dismiss the County relied on *Billings v. United States*, 57 F.3d 797 (9th Cir. 1995) to support this argument. In *Billings*, however, the question was whether *federal* defendants could be liable under section 1983 where they directed state officers to arrest the plaintiff. The *Billings* court rejected the argument that the *federal* officers acted under the color of state law simply because they requested state officers to carry out the arrest. 57 F.3d at 801. *Billings* did not consider or address whether the *state* officers in that case could have been held to be acting under color of state law.

When a Santa Rosa sheriff's deputy stops, detains, arrests, or jails an individual he or she is cloaked with the authority of state law, regardless of whether an ICE agent requested the action. The officer's uniform, badge, gun, vehicle, are all provided by the state or county, not federal authorities. The power to engage in law enforcement activities comes from the state. Although the Santa Rosa sheriffs may have been working with ICE agents to enforce federal law, they necessarily acted under color of state law.

The second prong of the County's argument is merely a repetition of the contention discussed in the proceeding section that insufficient facts are alleged to establish any wrongdoing. As stated above, plaintiffs have adequately alleged a factual basis for their claims, even under the standard of *Iqbal* and *Twombly*.

5. <u>State immunities</u>[3]

The County contends it is has statutory immunity as to the claims brought under state law. Relying on Cal. Government Code § 820.2, the County contends it is immune with respect to "any claims resulting from the Sheriff's policy decisions to cooperate with ICE." That may be, but the second amended complaint does not assert liability based on the policy decision to cooperate with ICE but instead on constitutional violations committed in the course of carrying out that cooperation. The County cites Cal. Government Code § 820.4, which expressly does not apply to claims for false arrest or imprisonment, to argue it is immune as to claims arising from "compliance with ICE directions, orders, or immigration detainers issued under § 287.7." Again, that may be so,

---

[3] Although not memorialized in the March 10th Order, the parties are in agreement that plaintiffs may not seek damages under their state constitutional claims.

7

1  but at least the claims remaining in the second amended complaint after the March 10th Order are
2  not based on the sheriff's mere compliance with immigration detainers.

3  The County further relies on Government Code § 820.6, but that section expressly requires
4  the government employees to have acted in good faith, a subjective inquiry not subject to resolution
5  at the pleading stage.  Finally, while the County points to Government Code § 821.6, that section
6  does not provide immunity for claims arising from wrongful arrest and imprisonment.  *Asgari v.
7  City of Los Angeles*, 15 Cal.4th 744, 846-47 (1997).[4]  Accordingly, there is no basis to dismiss the
8  state law claims at this juncture.

## B. Federal defendants

The Federal defendants join in the County's motion and specifically assert further that the qualified immunity arguments of the individual federal defendants must be addressed.  The Federal defendants lay heavy emphasis on the prior presiding judge's characterization of the complaint as an "impenetrable thicket," to argue that their immunity claims were not properly considered.  As with the County, however, the Federal defendants' qualified immunity arguments were largely premised on the notion that no clearly established law precluded the use of immigration holds in the manner being employed. It would, however, violate clearly established law to engage in racial profiling and to stop, interrogate, search, or arrest persons without the requisite level of justification. Accordingly, qualified immunity is not a basis for dismissal, at least at this stage of the proceedings.

## IV.  CONCLUSION

Reconsideration has been granted in the sense that the Court has considered all of defendants' arguments on the merits.  The Eleventh Amendment applies to plaintiffs' claims against the County defendants, but does not bar claims for injunctive relief, or damages claims

---

[4] The County contends that California law recognizes acting under a facially valid warrant to be a defense to wrongful arrest and suggests that sheriffs acting pursuant to facially valid immigration holds likewise should face no liability.  Even if that is correct, it would not provide a defense to the claims that persons were stopped without probable cause and based on racial profiling before immigration holds were issued.

8

against the individual defendants in their personal capacities. Plaintiffs are precluded from seeking damages under their state constitutional claims. In all other respects, the Court reaffirms the results reached in the March 10th Order. The discovery stay previously imposed is hereby lifted. Defendants shall file answers to the second amended complaint within twenty days of the date of this order.

IT IS SO ORDERED.

Dated: 06/11/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE